## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| EDDIE L. BOLDEN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:17-cv-00417 |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF CHICAGO, MICHAEL BAKER, | ) | |
| GEORGE KARL, EDWARD HICKS, | ) | |
| MICHAEL KILL, JAMES OLIVER, | ) | |
| ANGELO PESAVENTO, EDWARD | ) | |
| SIWEK, BARBARA TEMPLE and | ) | JURY TRIAL DEMANDED |
| AS-YET UNKNOWN CURRENT OR | ) | |
| FORMER EMPLOYEES OF THE CITY | ) | |
| OF CHICAGO | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff, Eddie L. Bolden, by his attorneys, Riley Safer Holmes & Cancila, LLP, files this Complaint against Defendants, City of Chicago, Chicago Police Officers Michael Baker, Edward Hicks, George Karl, Michael Kill, James Oliver, Angelo Pesavento, Edward Siwek, Barbara Temple, and As-Yet Unknown City of Chicago Employees (collectively, "Defendant Officers") and states as follows:

## INTRODUCTION

1.      Plaintiff Eddie L. Bolden spent 22 years, 1 month, and 22 days in prison for crimes he did not commit. Mr. Bolden was wrongfully convicted for the murders of Derrick Frazier and Ledell Clayton, and the attempted murder of Clifford Frazier. Mr. Bolden received a natural life sentence for the alleged murders, to run consecutively with a thirty-year sentence for the attempted murder. This miscarriage of justice was the direct result of police misconduct in accordance with the pattern and practice of the Chicago Police Department.

2.      Not a single piece of physical or forensic evidence linked Mr. Bolden to these crimes.  Instead, Mr. Bolden's wrongful conviction rested solely upon evidence created by the Defendants, including Clifford Frazier's false identification of Mr. Bolden during a tainted lineup. The tainted lineup was intentionally engineered by the Defendants pursuant to the City of Chicago's widespread policy at the time, which called for "solving" crimes at all costs, regardless of a suspect's guilt or innocence.

3.      The Defendants, determined to frame Mr. Bolden for these crimes and "close" the case, decided to engineer the tainted lineup after Clifford Frazier described his attacker as someone who looked nothing like Mr. Bolden and after he failed to identify Mr. Bolden in a photo array provided by the police.  The Defendant Officers intentionally walked Clifford Frazier past Mr. Bolden immediately before the lineup, physically blocked Mr. Bolden's attorney from viewing the lineup, and called Mr. Bolden by name during the lineup in order to ensure Clifford Frazier's false identification.

4.      In addition to engineering the false lineup, the Defendant Officers intentionally caused Mr. Bolden's wrongful conviction by offering perjured testimony at trial about the propriety of the lineup, by disregarding and failing to investigate credible eye-witness testimony that would have cleared Mr. Bolden of all charges, and by destroying and withholding critical information and evidence that proved Mr. Bolden's innocence.

5.      Now exonerated, and having been granted a Certificate of Innocence, Mr. Bolden brings this lawsuit to redress the injustice and hardship that has been inflicted upon him due to Defendants' misconduct.

**Jurisdiction and Venue**

6.      This action is brought pursuant to 42 U.S.C. § 1983 and Illinois law to redress the deprivation of Mr. Bolden's rights secured by the United States Constitution.

7.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction of the state law claims pursuant to 28 U.S.C. § 1367.

8.      Venue is proper under 28 U.S.C. § 1391(b) because Mr. Bolden resides in this judicial district and Defendant City of Chicago is a municipal corporation located here. Additionally, the events and omissions giving rise to Mr. Bolden's claims occurred within this judicial district.

**The Parties**

9.      Plaintiff Eddie L. Bolden is 47 years old and he lives in Maywood, Illinois. At the time of his conviction, he was just 27 years old and had his whole life ahead of him.

10.      At all relevant times, Defendants Michael Baker, Edward Hicks, George Karl, Michael Kill, James Oliver, Angelo Pesavento, Edward Siwek, and Barbara Temple were duly sworn Chicago Police Officers employed by Defendant City of Chicago and acting within the scope of their employment and under color of law. These Defendants, collectively with As-Yet Unknown City of Chicago Employees, are referred to as the "Defendant Officers."

11.      Defendant City of Chicago is an Illinois municipal corporation that is or was the employer of each of the Defendant Officers.

**FACTUAL BACKGROUND**

**The Murder of Derrick Frazier and Ledell Clayton**

12.      On the evening of January 29, 1994, a drug deal was to take place. Derrick Frazier, Clifford Frazier and Ledell Clayton were attempting to sell multi-kilograms of cocaine to a buyer.

3

All three men were heavily armed. Clifford Frazier, brother of Derrick Frazier, stored his brother's guns and drugs for the drug operation and was acting as security for this drug deal.

13.    Clifford Frazier kept lookout while Derrick Frazier and Ledell Clayton entered the J & J Fish restaurant near 64th and Cottage Grove.  The prospective drug purchaser then entered the restaurant and, after a few minutes, Derrick Frazier, Ledell Clayton, and the drug purchaser drove off in Derrick Frazier's car.

14.    Derrick Frazier and Ledell Clayton apparently knew and trusted the drug purchaser, because they allowed the purchaser to enter and sit in the backseat of their car while they sat in front. Mr. Bolden had never met either Derrick Frazier or Ledell Clayton.

15.    Once in the backseat of the car, the drug purchaser shot and killed Derrick Frazier and Ledell Clayton. He also returned to the original scene and exchanged gunfire with Clifford Frazier. Clifford Frazier was shot in the back and ran into J & J Fish to seek help.

16.    At all times during the criminal activity described above, Mr. Bolden was in J & J Fish playing a video game.  In fact, Mr. Bolden was still present in J & J Fish when Clifford Frazier entered the store seeking assistance, and Mr. Bolden used the telephone inside J & J Fish to call 911 seeking assistance for Frazier.

### Investigation Provides No Link to Mr. Bolden

17.    After Clifford Frazier's entrance into J&J Fish, the Defendant Officers and other police officers descended on the restaurant, collected evidence, and interviewed several witnesses, *including Mr. Bolden*. None of the witnesses identified Mr. Bolden or anyone matching Mr. Bolden's description as the man engaged in the gunfight with Clifford Frazier.

18.    To the contrary, Tenesha Gatson, a worker at J & J Fish, told the Defendant Officers that Mr. Bolden arrived at the restaurant earlier that evening and had remained in the restaurant

4

throughout the evening. Gatson told the Defendant Officers that Mr. Bolden was in the restaurant when Clifford Frazier entered the restaurant seeking help.

19. The Defendant Officers interviewed Clifford Frazier at the restaurant and again in the hospital. Clifford Frazier said he got a "good look" at the shooter, and described him as clean-shaven with a light complexion.  He told the police that the shooter had low-cut hair and was 5 feet 10 inches to 6 feet tall, with a medium build.  In stark contrast, Mr. Bolden was 6 feet 2 inches tall, very thin, dark-complected, bald, and had a mustache. In other words, Clifford Frazier gave a description of someone other than Mr. Bolden.

20. Clifford Frazier subsequently met with an FBI sketch artist who created a picture based on Clifford Frazier's description; that sketch looked nothing like Mr. Bolden.

21. Not only did the police investigation yield zero witness statements linking Mr. Bolden to the crime, it yielded absolutely no physical or forensic evidence implicating Mr. Bolden. There were no fingerprints, no blood, no DNA – there was simply nothing connecting Mr. Bolden to the murders.

### The False Identification and Arrest of Mr. Bolden

22. Undaunted by the lack of evidence against Mr. Bolden, the Defendant Officers set out on their mission – pursuant to the pattern and practice in the Chicago Police Department at the time – to close the case at all costs. In this case, that meant framing Mr. Bolden for a crime he did not commit.

23. On or about February 3, 1994, the Defendant Officers purportedly received an anonymous tip that Mr. Bolden was involved in the murders. On February 3, 1994, the Defendant Officers showed a photo array, which included a photo of Mr. Bolden, to Clifford Frazier. Clifford Frazier did not recognize any of the depicted individuals and was unable to identify Mr. Bolden.

24.     The Defendant Officers subsequently showed up at Mr. Bolden's residence, but Mr. Bolden was not home. The Defendant Officers told Mr. Bolden's mother that they wanted to question Mr. Bolden about the murders.

25.     Mr. Bolden hired attorney Charles Ingles to represent him in his encounter with the police. Mr. Ingles agreed to make Mr. Bolden available for questioning at the Area 2 Violent Crimes Unit.

26.     On February 26, 1994, Mr. Ingles accompanied Mr. Bolden to Area 2. The Defendant Officers directed Ingles and Bolden to wait in the waiting room. While sitting in the waiting room, a Defendant Officer walked Clifford Frazier (although neither Bolden nor Ingles knew it was Clifford Frazier at the time) directly past Bolden and Ingles so that Clifford Frazier could see Mr. Bolden.

27.     The Defendant Officers subsequently asked Mr. Bolden to participate in a lineup. Mr. Bolden agreed to participate in the lineup so long as the Defendant Officers allowed Mr. Ingles to observe. The Defendant Officers agreed to this condition and promised to allow Mr. Ingles to observe the lineup.

28.     Mr. Bolden joined the other participants in the lineup room, and Clifford Frazier entered the adjacent room, where witnesses view the persons selected for the lineup. Mr. Ingles attempted to follow Frazier into the viewing room as agreed, but Defendant Pesavento physically blocked his path and prevented him from entering the room.

29.     With Mr. Ingles successfully neutralized, the Defendant Officers ensured that Clifford Frazier would not fail to identify Mr. Bolden again. Twice during the lineup, and in the presence of Clifford Frazier, Defendant Karl asked Mr. Bolden (the man Clifford Frazier had just seen in the waiting room), "you, Eddie Bolden, right?"

6

30.     Clifford Frazier positively identified Mr. Bolden and the Defendant Officers subsequently arrested and charged Mr. Bolden with the murders of Derrick Frazier and Ledell Clayton, and the attempted murder of Clifford Frazier.

### The Destruction of *Brady* Material

31.     The police recovered two firearms during the investigation – a Mac 11 nine millimeter pistol recovered from Clifford Frazier's Cadillac near 64th Street and Cottage Grove, and Clifford Frazier's .40 caliber pistol recovered from inside the J & J Fish restaurant.

32.     The State's ballistics expert tested these weapons and determined that neither one fired the shots that killed Derrick Frazier and Ledell Clayton. After Mr. Bolden's attorney requested production of these weapons, the Defendant Officers destroyed them, preventing Mr. Bolden from obtaining his own expert to test the State's opinion that these guns – linked not to Mr. Bolden but to Clifford Frazier – were not the murder weapons.

33.     The Defendant Officers also destroyed or withheld exculpatory interview notes. On the night of the murders, Defendant Temple conducted interviews inside J & J Fish, including interviewing Mr. Bolden.  She also interviewed Clifford Frazier before he went to the hospital. Officer Temple's interview notes were obviously *Brady* material; they proved that Mr. Bolden was in the fish store during the shootings.  Notes of Officer Temple's interviews, however, were never produced to the State's Attorney or to Mr. Bolden's attorney.  This was part of the Chicago Police Department's pattern and practice of concealing exculpatory evidence from defendants.

34.     Additionally, the Defendant Officers caused the destruction of the critical 911 recording that would have proved Mr. Bolden's innocence. When Mr. Bolden first retained Mr. Ingles, Mr. Bolden informed him that he made a 911 call from inside J & J Fish on the night in question. Mr. Ingles in turn informed the Defendant Officers that there would be a recording of

7

Mr. Bolden's call to 911. The Defendant Officers, however, intentionally failed to act on that information so that the recording would be destroyed under the City of Chicago Policy at the time, which called for the destruction of 911 recordings after 30 days where no request for preservation was made. As a direct result, Mr. Bolden's trial attorney was unable to obtain the recording via subpoena, and the jury was unable to hear this critical evidence.

### The Refusal to Investigate Mr. Bolden's Alibi

35.     As explained above, the police interviewed Tenesha Gatson inside J & J Fish on the night of the murders. Gatson told the police that Mr. Bolden was inside the restaurant throughout the evening, including when the shots were fired outside the restaurant and when Clifford Frazier entered the restaurant seeking help.

36.     Yet, the Defendant Officers – in conformance with their pattern and practice of ignoring exculpatory evidence – refused to investigate Ms. Gatson's assertions or to conduct follow-up interviews with any one of the several witnesses inside J & J that could have corroborated Mr. Bolden's alibi.

37.      On the night of the murders, the police performed a perfunctory interview of another individual inside J & J Fish, Vondell Goins, but never asked Goins about Mr. Bolden. The Defendant Officers never attempted to contact Ms. Goins again. Had the Defendant Officers asked Ms. Goins about Mr. Bolden, she would have explained that she was speaking with Mr. Bolden inside J & J fish at the time she heard shooting outside the restaurant and at the time that Clifford Frazier entered the restaurant.

38.     Within one week of the murders, the Defendant Officers interviewed Octavia Jackson, who was with Ms. Goins and spoke to Mr. Bolden inside J & J Fish on the night of the

murders. After that interview, the Defendant Officers never attempted to contact Ms. Jackson again.

39.     Todd Henderson was also in J & J Fish on the night of the murders. Mr. Henderson saw Ms. Goins and Ms. Jackson inside the restaurant, and also witnessed the fight between Frazier and his attacker outside the restaurant. At the time, Mr. Henderson could have described the individuals involved in the fight, including their clothes and identifying features. Nonetheless, when the police arrived at J & J Fish at the time of the murders, a detective simply took down Mr. Henderson's name and contact information and did nothing more. None of the Defendant Officers ever contacted Mr. Henderson again.

40.     The Defendant Officers also ignored that Edna Williams, an owner of J & J Fish, could corroborate that Mr. Bolden was present in the restaurant during the shootings.

<b>The Malicious Prosecution</b>

41.     In October of 1996, Mr. Bolden's case was tried before a jury. The only evidence directly implicating Mr. Bolden was the engineered and flawed testimony of Clifford Frazier identifying Mr. Bolden as the shooter. Clifford Frazier's testimony was bolstered by the perjured testimony of the Defendant Officers, who knowingly lied under oath about the propriety of the lineup in which Clifford Frazier identified Mr. Bolden.

42.     Clifford Frazier admitted to being an active participant in a multi-kilogram narcotics transaction.  He admitted to being an integral part of a larger narcotics conspiracy by housing cocaine and weapons at his residence.  Had he been charged with this conduct, he would have been eligible for incarceration for several decades.  In exchange for his false testimony against Mr. Bolden, Clifford Frazier was not charged with any crime.  He received other benefits from the defendants including personal protection.  The existence of these benefits were intentionally

9

withheld from Mr. Bolden and his counsel in accordance with the policies and practice of the City of Chicago.

43.     On October 30, 1996, Mr. Bolden was found guilty of First Degree Murder of Derrick Frazier and Ledell Clayton, attempted First Degree Murder of Clifford Frazier, and Aggravated Battery with a Firearm of Clifford Frazier. On December 2, 1996, Mr. Bolden was sentenced to natural life for the first degree murder counts and 30 years, to run consecutively, for the attempted murder count.

**Mr. Bolden's Exoneration**

44.     After his direct appeals were denied, Mr. Bolden filed a *pro se* post-conviction petition on November 1, 1999. Mr. Bolden's post-conviction petition was dismissed by the Cook County Circuit Court on November 20, 2012, but the Appellate Court of Illinois, First District, Third Division, reversed the Circuit Court's decision and remanded with instructions to hold a stage three evidentiary hearing.

45.     On remand, evidentiary hearings were held before the Honorable Alfredo Maldonado. On January 21, 2016, Judge Maldonado ordered Mr. Bolden's convictions be reversed and further ordered a new trial on the charges against Mr. Bolden.

46.     On April 19, 2016, pursuant to the State's oral motion, the Court dismissed all charges against Mr. Bolden.

47.     On September 1, 2016, the Honorable LeRoy K. Martin, Presiding Judge of the Criminal Division, held that Mr. Bolden was innocent of the crimes charged, and granted Mr. Bolden a Certificate of Innocence.

**Mr. Bolden's Damages**

48.     At the time he was wrongfully convicted, Mr. Bolden was only 27 years old with his whole life ahead of him.

49.     In serving more than two decades behind bars, Mr. Bolden was unjustly deprived of much of his life and liberty.  He was stripped of the privileges and pleasures that are part of the human experience, including the opportunity to share holidays, births, weddings, funerals, and other life events with loved ones.  He was forced to endure the extremely harsh conditions of confinement in maximum security prisons. Mr. Bolden must now attempt to rebuild his life outside of prison, but will always carry with him the scars and disadvantages associated with wrongful imprisonment.

50.     As a result of the foregoing, Mr. Bolden has suffered tremendous damage, including, but not limited to, loss of liberty, mental anguish, humiliation, degradation, physical injury, emotional distress, enduring physical and psychological injuries and other grievous injuries all proximately caused by the Defendants' misconduct.

**The City of Chicago's Policies and Practices**

51.     For decades, the Chicago Police Department's Area 2 Violent Crimes Unit – where Mr. Bolden was questioned, arrested, and charged – has been at the epicenter of the City of Chicago's unconstitutional policy and practice to secure false convictions through flawed investigations.

52.     Specifically, beginning in the 1970s, a group of Chicago Police Officers under the tutelage of Jon Burge, including some or all of the Defendant Officers in this case, engaged in a systematic pattern of coercion, fabrication of evidence, withholding and destruction of exculpatory information, and various other illegal tactics in order to "solve" cases at all costs. This practice

included keeping *Brady* material in so-called "street files" that were never disclosed to State's Attorneys or defense attorneys and were subsequently destroyed.

53.     The institutional practice to quickly "solve" crimes regardless of a suspect's guilt or innocence was known to command personnel, who themselves participated in the practice.

54.     The above-described widespread practices were so well-settled as to constitute *de facto* policy in the Chicago Police Department during the time period at issue. In addition to Mr. Bolden, there are now dozens of other known victims of similar abuses.

55.     These above-described widespread practices were able to exist because municipal policymakers with authority over the same exhibited deliberate indifference to the problem. The City of Chicago declined to implement sufficient training and/or any legitimate mechanism for oversight or punishment of the Chicago Police Officers who engaged in these practices. Indeed, the Police Department's system for investigating and disciplining police officers accused of the type of misconduct which befell Mr. Bolden was, for all practical purposes, nonexistent.

56.     The Chicago police officers who manufactured criminal cases against individuals such as Mr. Bolden had every reason to know that they not only enjoyed *de facto* immunity from criminal prosecution and departmental discipline, but they also stood to be rewarded for closing a case no matter what the cost. In this way, the system proximately caused abuses, such as the misconduct at issue in this case.

57.     As described more fully herein, Mr. Bolden's injuries were proximately caused by these above-described practices.

## COUNT 1—42 U.S.C. § 1983
## Violation of Due Process

58.     Mr. Bolden incorporates each paragraph of this Complaint as if fully restated herein.

59.     As described more fully above, the Defendant Officers, while acting individually, jointly, under color of law and within the scope of their employment, deprived Mr. Bolden of his constitutional right to a fair trial.

60.     As described more fully above, the Defendant Officers knowingly fabricated false evidence, including engineering a tainted lineup and giving testimony that they knew to be false, thereby misleading and misdirecting the criminal prosecution of Mr. Bolden and causing his wrongful conviction.

61.     As described more fully above, Defendant Officers knowingly concealed, withheld, and/or destroyed exculpatory and impeachment evidence from Mr. Bolden and from prosecutors. Notably, the Defendant officers destroyed two guns found near the murder scene *after* Mr. Bolden requested the guns be produced during discovery proceedings.  The Defendant officers further destroyed or concealed interview notes from Defendant Temple's interviews of Mr. Bolden and Clifford Frazier, and the recording of Mr. Bolden's call to 911. As a result, Mr. Bolden was unable to exercise his right to test or review material evidence, thus impeding his right to a fair trial.

62.     In addition, the Defendant Officers concealed and/or fabricated additional evidence that is not yet known to Mr. Bolden.

63.     The Defendant Officers also ignored and/or failed to investigate evidence supporting Mr. Bolden's alibi.

64.     The Defendant Officers' misconduct directly and proximately resulted in the unjust criminal conviction of Mr. Bolden, thereby denying his constitutional right to a fair trial guaranteed

13

by the Fifth and Fourteenth Amendments. Absent this misconduct, the prosecution of Mr. Bolden could not have and would not have been pursued, and Mr. Bolden would not have been convicted.

65.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of Mr. Bolden, and in total disregard of the truth and Mr. Bolden's innocence.

66.     As a result of the misconduct described herein, Mr. Bolden suffered injuries, including but not limited to personal physical injury and emotional distress, as more fully alleged above.

67.     The misconduct described in this Count was undertaken by employees of the City of Chicago, including but not limited to the named Defendants, pursuant to the City of Chicago's policy and practice in the manner described more fully above and in Count IV.

## Count II—42 U.S.C. § 1983
### Failure to Intervene

68.     Mr. Bolden incorporates each paragraph of this Complaint as if fully restated herein.

69.     During the constitutional violations described herein, one or more of the Defendant Officers stood by without intervening to prevent the misconduct, even though they had a reasonable opportunity to do so.

70.     As a result of the Defendant Officers' failure to intervene to prevent the violation of Mr. Bolden's constitutional rights, Mr. Bolden was wrongfully convicted and suffered pain and injury, as well as emotional distress.  These Defendants had a reasonable opportunity to prevent this harm, but failed to do so.

71.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, and with deliberate indifference to Mr. Bolden's clearly established constitutional rights.

72.     The misconduct described in this Count was undertaken by employees of the City of Chicago, including but not limited to the named Defendants, under color of law and pursuant to the City of Chicago's policy and practice in the manner described more fully above and in Count IV.

### Count III – 42 U.S.C. § 1983
### Conspiracy to Deprive Constitutional Rights

73.     Mr. Bolden incorporates each paragraph of this Complaint as if fully restated herein.

74.     After the murders of Derrick Frazier and Ledell Clayton, the Defendant Officers, acting within the scope of their employment and under the color of law, instead of speaking to all potential witnesses or pursuing alternative leads, reached an agreement amongst themselves to frame Mr. Bolden and to thereby deprive Mr. Bolden of his constitutional rights, including his right to due process and to a fair trial, as described in this Complaint.

75.     Additionally, before and after Mr. Bolden's conviction, the Defendant Officers further conspired to deprive Mr. Bolden of exculpatory information to which he was lawfully entitled and which would have led to either his not being charged, his acquittal, or a more timely exoneration.

76.     In this manner, the Defendant Officers, acting in concert with each other and other unknown co-conspirators, conspired by concerted action to accomplish an unlawful purpose by unlawful means.

77.     In furtherance of the conspiracy, each of the co-conspirators committed overt acts, including but not limited to those set forth above, and were otherwise willful participants in joint activity.

78.     As a direct and proximate result of the illicit prior agreement referenced above, Mr. Bolden's rights were violated and he suffered loss of liberty, mental anguish, humiliation, personal physical injury and emotional distress, and other grievous injuries.

79.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to Mr. Bolden's rights.

80.     The misconduct described in this Count was undertaken by employees of the City of Chicago, including but not limited to the named Defendants, pursuant to the policy and practice of the Chicago Police Department in the manner described more fully above and in Count IV.

**Count IV – 42 U.S.C. § 1983**
***Monell* Claim**

81.     Mr. Bolden incorporates each paragraph of this Complaint as if fully restated herein.

82.     The policies and practices of the City of Chicago were underlying causes of the misconduct described in this Complaint, in that Chicago Police Department employees and agents regularly pursued wrongful convictions through flawed investigations in order to "solve" cases at all costs, and did so with the knowledge and approval of persons with final policy-making authority for the City of Chicago.

83.     At all relevant times, the City of Chicago's interrelated *de facto* policies, practices, and customs included, but were not limited to: (1) conducting illegal or improperly coercive interrogations of witnesses, suspects, and arrestees; (2) manufacturing, fabricating, or using improper suggestive tactics to obtain false witness statements; (3) filing false reports and giving

16

false statements or testimony; (4) withholding, destroying, covering up, or suppressing evidence, including *Brady* material, and (5) perpetuating, encouraging, and condoning a "code of silence," pursuant to which Chicago Police Officers refused to report or otherwise covered-up instances of police misconduct.

84.     Pursuant to the City of Chicago's policies and practices, the Defendant Officers attempted to "solve" this case through flawed and suggestive identification procedures, false testimony, concealment of exculpatory evidence, and other illegal tactics. The cost – over 22 years of an innocent man's life.  The above-described widespread practices, which were so well-settled as to constitute *de facto* policy in the Chicago Police Department, were allowed to exist because municipal policymakers with authority over the same exhibited deliberate indifference to the misconduct, thereby effectively ratifying it.

85.     The City of Chicago also created and maintained a *de facto* custom, policy, and practice of deliberate indifference to the constitutional rights of citizens by failing to adequately train, supervise, and discipline its police officers and other employees and agents, including the individual defendants in this case, to ensure that they:

      A.  employed proper and non-suggestive identification techniques;

      B.  faithfully represented material facts when seeking criminal charges;

      C.  secured, maintained, and prevented the destruction of material evidence, including *Brady* material;

      D.  disclosed exculpatory and impeachment information to prosecutors; and

      E.  adequately investigated potential leads, including questioning alibi witnesses.

86.     The customs and practices set forth above were the moving force behind the numerous constitutional violations in this case.

87.     The City of Chicago's failure to train, discipline, and supervise its police officers adequately in their constitutional duties, and its creation and maintenance of customs, policies, and practices of fabricating evidence and failing to disclose exculpatory evidence, directly and proximately caused Mr. Bolden to suffer constitutional deprivations, including his false arrest, unfair trial, wrongful conviction, and the other grievous and permanent injuries and damages set forth above.

**Count V – 42 U.S.C. § 1983**
**False Arrest and Imprisonment**

88.     Mr. Bolden incorporates each paragraph of this Complaint as if fully restated herein.

89.     As described more fully above, Defendants, while acting individually, jointly, and in conspiracy, as well as under color of law and within the scope of their employment, caused Mr. Bolden to be falsely arrested and imprisoned in violation of his constitutional rights.

90.     As a result of this violation, Mr. Bolden suffered injuries, including but not limited to emotional distress, as is more fully alleged above.

91.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to Mr. Bolden's rights.

92.     The misconduct described in this Count was undertaken by employees of the City of Chicago, including but not limited to the named Defendants, pursuant to the policy and practice of the Chicago Police Department in the manner described more fully above and in Count IV.

## Count VI – 42 U.S.C. § 1983
## Federal Malicious Prosecution[1]

93.     Mr. Bolden incorporates each paragraph of this Complaint as if fully restated herein.

94.     The Defendant Officers accused Mr. Bolden of criminal activity and exerted influence to initiate, continue, and perpetuate judicial proceedings against Mr. Bolden without any probable cause for doing so, in violation of his rights secured by the Fourth and Fourteenth Amendments.

95.     The Defendant Officers caused Mr. Bolden to be improperly subjected to judicial proceedings for which there was no legitimate probable cause.  These judicial proceedings were instituted and continued maliciously, resulting in injury.

96.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Mr. Bolden's innocence.

97.     As a result of the misconduct described in this Count, Mr. Bolden suffered loss of liberty, mental anguish, humiliation, personal physical injury and emotional distress, and other grievous injuries.

## Count VII – State Law Claim
## Malicious Prosecution

98.     Mr. Bolden incorporates each paragraph of this Complaint as if fully restated herein.

---

[1] Plaintiff recognizes that this Circuit currently holds that malicious prosecution is not actionable under 42 U.S.C. § 1983. Other Courts of Appeals have taken the opposite position. Plaintiff pleads the claim here under the Fourth and Fourteenth Amendments to preserve the issue for reconsideration in the U.S. Court of Appeals for the Seventh Circuit or review in the Supreme Court of the United States**.**

99.     The Defendant Officers accused Mr. Bolden of criminal activity knowing those accusations to be without genuine probable cause, and they made statements to prosecutors with the intent of exerting influence to institute and continue the judicial proceedings.

100.     The Defendant Officers caused Mr. Bolden to be improperly subjected to judicial proceedings for which there was no legitimate probable cause.  These judicial proceedings were instituted and continued maliciously, resulting in injury.

101.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Mr. Bolden's innocence.

102.     As a result of the misconduct described in this Count, Mr. Bolden suffered loss of liberty, mental anguish, humiliation, personal physical injury and emotional distress, and other grievous injuries.

### Count VIII – State Law Claim
### Intentional Infliction of Emotional Distress

103.     Mr. Bolden incorporates each paragraph of this Complaint as if fully restated herein.

104.     The acts, omissions, and conduct of the Defendant Officers as set forth above were extreme and outrageous.  The Defendant Officers' actions were rooted in an abuse of power or authority, and they were undertaken with intent to cause, or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Mr. Bolden, as is more fully alleged above.

105.     As a direct and proximate result of the Defendant Officers' actions, Mr. Bolden suffered and continues to suffer emotional distress.

**Count IX – State Law Claim**
**Civil Conspiracy**

106.     Mr. Bolden incorporates each paragraph of this Complaint as if fully restated herein.

107.     As described more fully above, the Defendant Officers, acting in concert with other co-conspirators, known and unknown, reached an agreement amongst themselves to frame Mr. Bolden for a crime he did not commit and conspired by concerted action to accomplish an unlawful purpose by unlawful means. In addition, these co-conspirators agreed among themselves to protect one another from liability for depriving Mr. Bolden of these rights.

108.     In furtherance of their conspiracy, each of these co-conspirators committed overt acts, including those described in this Complaint, and were otherwise willful participants in joint activity.

109.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard for the truth and Mr. Bolden's innocence.

110.     As a result of the Defendants' misconduct described in this Count, Mr. Bolden suffered loss of liberty, mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous injuries.

**Count X – State Law Claim**
**Respondeat Superior**

111.     Mr. Bolden incorporates each paragraph of this Complaint as if fully restated herein.

112.     In committing the acts alleged in the preceding paragraphs, each of the Defendant Officers were members of, employees of, and/or agents of the Chicago Police Department and the

City of Chicago, acting at all relevant times within the scope of their employment and under color of law.

113. Defendant City of Chicago is liable as principal for all torts committed by its agents.

**Count XI – State Law Claim**
**Indemnification**

114. Mr. Bolden incorporates each paragraph of this Complaint as if fully restated herein.

115. Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

116. The Defendant Officers are or were employees of the Chicago Police Department, who acted within the scope of their employment in committing the misconduct described herein.

WHEREFORE, Plaintiff, Eddie L. Bolden, respectfully requests that this Court enter judgment in his favor and against Defendants, City of Chicago, Chicago Police Officers Michael Baker, Edward Hicks, George Karl, Michael Kill, James Oliver, Angelo Pesavento, Edward Siwek, Barbara Temple, and As-Yet Unknown City of Chicago Employees, awarding compensatory damages, attorneys' fees, and costs against each Defendant, and punitive damages against each of the individual Defendants, as well as any other relief this Court deems appropriate and just.

**Jury Demand**

Plaintiff, Eddie L. Bolden, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Respectfully Submitted,

*/s/ Ronald S. Safer*
Ronald S. Safer
Eli J. Litoff
RILEY SAFER HOLMES & CANCILA LLP
Three First National Plaza
70 W. Madison Street, Suite 2900
Chicago, Illinois 60602
312-471-8700
rsafer@rshc-law.com
elitoff@rshc-law.com

*Attorneys for Eddie L. Bolden*