```
                 IN THE UNITED STATES DISTRICT COURT
                FOR THE NORTHERN DISTRICT OF ILLINOIS
                           EASTERN DIVISION

   EDDIE L. BOLDEN,                    )   No. 17 C 417
                                       )
                  Plaintiff,           )   Chicago, Illinois
                                       )   May 26, 2017
                                       )   9:25 o'clock a.m.
   -vs-                                )
                                       )
   CITY OF CHICAGO, et al.,            )
                                       )
                  Defendants.          )


           TRANSCRIPT OF PROCEEDINGS - MOTION/STATUS
            BEFORE THE HONORABLE MILTON I. SHADUR

  APPEARANCES:

  For the Plaintiff:        RILEY SAFER HOLMES & CANCILA LLP
                            BY:  MR. RONALD S. SAFER
                                 MR. ELI J. LITOFF
                                 MS. VALARIE HAYS
                            Three First National Plaza
                            70 West Madison Street
                            Suite 2900
                            Chicago, Illinois 60602

  For Defendant             GREENBERG TRAURIG, LLP
  City of Chicago:          BY:  MS. ELIZABETH S. RALPH
                                 MR. ELAN A. SHPIGEL
                            77 West Wacker Drive
                            Suite 3100
                            Chicago, Illinois 60601

  For Defendants            HALE LAW LLC
  Baker, Oliver,            BY:  MR. ALEXANDER W. TAPLING
  Pesavento, Siwek,              MR. MOHAMMED KHAN
  Temple & Barnes:          53 West Jackson Boulevard
                            Suite 330
                            Chicago, Illinois 60604

  Court Reporter:           ROSEMARY SCARPELLI
                            219 South Dearborn Street
                            Room 2304A
                            Chicago, Illinois  60604
                            (312) 435-5815
```

1             THE CLERK:  17 C 417, Bolden versus City of
2    Chicago.
3             MR. SAFER:  Good morning, your Honor, Ron Safer,
4    Val Hays and Eli Litoff on behalf of Mr. Bolden.
5             MR. TAPLING:  Good morning, your Honor, Alexander
6    Tapling and Mohammed Khan on behalf of the defendant officers
7    Baker, Barnes, Oliver, Pesavento, Roman, Siwek and Temple.
8             MS. RALPH:  Good morning, your Honor, Elizabeth
9    Ralph on behalf of the City of Chicago.
10            MR. SHPIGEL:  And Elan Shpigel on behalf of the
11   City of Chicago.
12            That is Mohammed Khan.
13            MR. KHAN:  Yes, Mohammed Khan.
14            THE COURT:  Okay.  Why don't you all sit down so I
15   can tell you something, and then I will hear from you.  Okay?
16            MR. SAFER:  Thank you.
17            THE COURT:  I don't want this to be taken too much
18   in the nature of criticism because I recognize the function
19   of the advocate to advance whatever arguments can
20   legitimately be advanced on behalf of a client.  I find much
21   of what has been said by Bolden's counsel in opposition to
22   the City's motion for entry of a guarantee, and I guess
23   guarantee of satisfaction of judgment, suffers somewhat from
24   hyperbole and I think -- I won't say it puts an inappropriate
25   light on the thing, but let me remind you that I never spoke

1  in terms of bifurcation.

2  When I made the suggestion that the parties might
3  think about the entry of the kind of arrangement that the
4  City sought to do in connection with their tender, the notion
5  that I had was one that if the parties really reached that
6  kind of understanding, that the City would really become an
7  active non-litigant and that the case could be then resolved
8  -- and I was thinking ahead to what we often encounter in
9  jury situations in cases of this kind where a Monell is --
10 may I say there but not there.

11 You know, one of the things that you have to guard
12 against in connection with jury cases in this sort of
13 situation is it used to be we were concerned about deep
14 pocket.  I am not sure how the deep pocket operates now given
15 the City's ills in terms of financing.  But remember that
16 when there is a claim, for example, for punitive damages, you
17 always have to make sure that the jury knows that punitive
18 damages can't be assigned against the City.

19 I have always felt that the -- that sensible
20 jurors, when they hear that kind of special instruction which
21 is carefully couched, that the immediate question is, well,
22 what does that mean in terms of the City's responsibility in
23 terms of compensatory damages?  So I have always made part of
24 the jury instruction process again a carefully-couched
25 cautionary instruction that says it is not their role to

1  figure out who can afford to pay something if they rule for a
2  plaintiff.  Their role is to find out how much does the
3  plaintiff legitimately claim in the way of damages and that
4  they are not to up the ante because they think there is
5  somebody with responsibility staying behind it.  They are not
6  to bum rap plaintiff's potential recovery because they
7  recognize policemen are not the best paid people in the
8  universe.
9           So it has always been my thought and my practice in
10 connection with cases of this kind to deal -- and we talk
11 about it, of course, at the jury instruction conference -- to
12 deal with the idea of giving very careful cautionary
13 instructions.  And it was precisely with that in mind that I
14 suggested that if the parties saw their way clear to entering
15 into this kind of arrangement, that would essentially take
16 the City out of the case.
17          Now, that is different from bifurcation, isn't it?
18 And so all of the talk about bifurcation is really very much
19 beside the mark.
20          There is also, for example -- I noted at Page 2 of
21 the Bolden memorandum the reference to the weight of
22 authority in this district as it came post the Court of
23 Appeals' opinion in Thomas.  Now, that is a mislabel.
24 Authority in this district is not provided by district
25 judges.  We are regularly reminded, and quite properly

1    reminded, by our Court of Appeals that we are not
2    precedential, that we are also non-presidential I guess.
3         But it is very true that I don't cite my own cases
4    in my opinions.  Why?  Because the whole effect of any
5    district court ruling is persuasive to judge No. 2 only to
6    the extent that judge No. 2 finds what judge No. 1 has said
7    in the case carries persuasiveness.  So I not only don't cite
8    my colleague's cases, with no disrespect intended of course,
9    I don't cite my own cases.  And for a very good reason.  The
10   -- you know, the thing stands on its own in terms of
11   reasoning.
12        So to reflect what has character -- what has
13   happened in this district as the weight of authority is a
14   mislabel.  And it is a good thing I think for lawyers to keep
15   that in mind in terms of how they characterize the existence
16   and effect of district -- what district courts do.  We are
17   not authority in jurisprudential terms.  And I think that it
18   -- and it is a good reminder, by the way, for people on this
19   side of the bench.  I think it is a good reminder for people
20   on the other side of the bench.  Those things, however,
21   really don't go to the decision on this thing.
22        What is very clear here is that no agreement as
23   such was reached, that is, no agreement in the form of an
24   enforceable contractual relationship.  What was stated the
25   first time around was a statement of intention that seems

that -- and I got this from both sides -- that it seemed that that could be a very good idea, and so I expected them to -- the parties to go back and to consider it and reach a final agreement, an enforceable contractual arrangement, if that were so.

So a great deal of what has been said here, including the nice provision of what so many of my colleagues have done in other cases, is appreciative reading. And so I have looked at those, but they really don't bear on the issue which I think is in this sense a quite simple one.

Short answer is no such deal was reached. I am not saying this in a critical sense, but the -- that is -- that is what -- you know, contracts require a mutuality of agreement.

I do want to go on, however. When I was talking about problematic aspects, I wanted to go on with something that has to do with some of the grounds that were advanced in the Bolden memorandum about what might be the occasion for Monell rearing its ugly or lovely head, if you -- depends on how you think about it.

Take, for example, the kind of hypothetical predicates for City liability in Monell terms if no constitutional violation by one of the named officer defendants is found by a jury. In that sense the arguments that I saw advanced sort of conveniently ignore the element

1  of causality.  It won't do, for example, in evidentiary terms
2  for counsel to argue maybe.  I mean take a look at memorandum
3  -- at Page 4 that gives hypotheticals about what might happen
4  if some other officer has conducted a violation.
5         Suppose that is so.  How does that one go about
6  proving an unnamed and unknown officer has been motivated by
7  the existence of a pattern that, you know, all of us who have
8  read newspaper accounts and who have dealt with the thing in
9  real-world terms?  I think I was the first one who blew the
10 whistle on John Burge many years ago, and regrettably it took
11 them years to catch up with that.
12        But the point is that if you think through what has
13 to be done in order to prove the existence of a
14 constitutional violation by an unknown, unnamed hypothetical
15 officer, I think that that creates a real -- a real problem,
16 a real difficulty.  And obviously I am not doing anything in
17 terms of any ruling at this point.  We are very early in the
18 day in terms of this lawsuit.
19        But I just want you to keep in mind that the --
20 that the likelihood of being able to follow through with
21 actual proof, evidentiary proof, as contrasted with lawyer
22 argument because all of us know that lawyers don't testify.
23 It is a -- it is really quite a serious problem and it is one
24 that I think is glossed over by what I saw, for example, over
25 here on page -- I think it is Page 4 maybe of the

1  memorandum -- yes, when it talks about unidentified officers
2  could have done this, unidentified officers could have done
3  that.  I mean that is not how we -- that is not how we
4  present cases to finders of fact in the federal system.
5          So I am not going to dump the Monell thing, but it
6  seems to me that what I have just said has to be kept in mind
7  because when push comes to shove and it is a matter of proof,
8  it is not going to be an easy task to overcome the hurdle
9  that I just suggested can exist when you are dealing with
10 hypotheticals.
11         Anyway, bottom line, however, is that the motion
12 for entry of a guarantee of satisfaction of judgment and the
13 exhibits is denied.  I am not charging either side with
14 anything other than appropriate advocacy in support of their
15 respective positions.  But this to me boiled down to a simple
16 question in Contracts 101, that is, no enforceable agreement
17 was reached.
18         And so I am -- I am going to avoid any kind of
19 critical discussion of the terms that were suggested by the
20 City and that -- and the resistance that was offered up on
21 behalf of Mr. Bolden.
22         Anyway, that is my say.  And I don't know if
23 anybody has -- I am perfectly willing to listen to anything
24 that anybody has to say about it, but it struck me, in
25 candor, as I say, Contracts 101.  So I had the feeling of

1     déjà vu all over again.  I did once go through Contracts 101
2     before Noah's Flood.
3                Okay.  Anybody have anything to add?
4                MR. SAFER:  No.  No, your Honor.
5                MS. RALPH:  Your Honor, I guess I just would like
6     to -- on behalf of the City -- and I can move this closer if
7     that helps.  You know, I understand your comments about the
8     lack of an enforceable agreement.  And I think what the City
9     attempted to do here is file actually something that really
10    wasn't an agreement, an irrevocable and unconditional
11    guarantee, that regardless of whether accepted, you know,
12    would be effective and --
13               THE COURT:  I am not being critical --
14               MS. RALPH:  Right.
15               THE COURT:  -- but you see absent a dual sign-on, I
16    really don't have something other than your volunteered
17    aspect.  And I respect your volunteering it.  But all I am
18    saying is it doesn't have legal effect.  And so if, for
19    example, there is something -- there is some ingredient that
20    from the other side's point of view is lacking in it, so you
21    have got a document that is there, but I don't know to what
22    end.
23               MS. RALPH:  Understood, your Honor.  And I think my
24    point was only that based on the last status hearing the City
25    proceeded down one path of preparing a guarantee and filing

1  that. And I guess I am just, you know, questioning if the
2  City had taken a different path if we might still have an
3  opportunity to file a motion for bifurcation and, you know,
4  once we get into what sort of Monell discovery might be
5  required in this case, perhaps make a case that bifurcation
6  under the circumstances of this case might be warranted.
7        THE COURT: Well, we don't know what the future is
8  going to bring in this thing. All I am doing is I am -- I am
9  not putting the raps on anybody in terms of taking matters
10 out of the case because it is -- I think it is inappropriate
11 to think in those terms.
12       Now having said that and with the pending motion
13 having been resolved, tell me where you stand in terms of
14 moving forward on the discovery path, you know, moving this
15 case forward in terms of pointing to its ultimate resolution.
16 Tell me where do you -- where do you stand, either side?
17 Yes?
18       MR. LITOFF: Good morning, your Honor. On
19 discovery the defendant officers have produced their first
20 production to the plaintiff, and they informed me this
21 morning that there might be some more production coming. The
22 City has not yet responded to any of plaintiff's
23 interrogatories or document requests. But we reached an
24 agreement that the City would do so by June 5th. And
25 plaintiff has also received document requests and

1    interrogatories from the defendant officers, and plaintiff
2    intends to respond to those by June 5th as well with at least
3    a first production and rolling productions after that.
4        THE COURT:  I don't know whether I have had
5    occasion to say this in this case because in that sense all
6    cases tend to merge, you know, but my regular message to
7    everybody, which is by now I trust no surprise, is my
8    bewilderment at what the authors of Rule 16 had in mind when
9    they set up a requirement that the Court initially set up
10   deadlines for this, that and the other thing.  I -- my
11   favorite example, which I may or may not have given, is a
12   case that I inherited from my dear friend Bill Hibbler --
13   well, I got -- as always, you know, we live with cases from
14   day one under our system.  As you know, they get assigned to
15   a calendar.  So when you get another case that has not been,
16   the natural thing is to order up a printout of the docket to
17   see what it shows.
18       So I get a case in which -- it is a ten months old
19   case in which becoming -- being a devotee of the rule and
20   following the rules, as I didn't, an order gets entered, you
21   know, setting a schedule for the -- all the things that are
22   talked about.  And then 60 days later another order is
23   entered that vacates the first one and sets a new deadline.
24   So I get a ten-month old case with five of these orders, one
25   superseding each other one.  And to no end.

1           You know, when I deal with responsible lawyers as
2    we have in this case, the extent to which you are cooperating
3    is great, and what I do only in terms of scheduling is not to
4    incorporate, for example, what you have told me about your
5    June 5th expectation, not to put that on paper -- that is
6    among counsel, and that is great -- but simply to allow for
7    the fact that when that happens, you then engage in paper
8    discovery that follows up by not asking for the whole world.
9    You have gotten part of the universe with the advance
10   disclosures.  And then when that happens, of course that
11   kicks in a 30-day time frame for response.
12          So I will typically set out a next status date
13   something more like two and a half, three months for status
14   which is just a reporting date as to how far down the
15   discovery road you have traveled, with the understanding that
16   if anything erupts in the meantime, just come in on a motion.
17   Set it up on a presentment date, and I will deal with it.
18          So with that in mind I would think that probably
19   maybe three months from the June 5th would be a sensible next
20   status date simply for reporting purposes, that is, maybe the
21   first week in September.  Let me take a look here.  Yes, the
22   first full week in September of course starts with Labor Day
23   on the 4th.  The remaining four days that run from Tuesday
24   the 5th through Friday the 8th you can have any day other
25   than Wednesday the 6th which would be 9:15 for status.

1            Is that a good week, a bad week for people?  Tell
2    me.
3            MR. TAPLING:  Defendant officers have no problem
4    with that week,
5            MR. SHPIGEL:  That is fine for the City, your
6    Honor.
7            MR. LITOFF:  Give me one moment, your Honor.
8            THE COURT:  Sure.
9            MR. SHPIGEL:  If I may, your Honor, in regards to
10   June 5th, the City is in the process of gathering documents.
11   But in light of today's ruling we will have to work with the
12   plaintiff to narrow some of their Monell discovery which is,
13   you know, truly sweeping in scope and which there is no way
14   we will be able to produce by the 5th.
15           THE COURT:  As I say, if a problem arises, bring it
16   in.  Otherwise I will expect you will work things out.
17           MR. LITOFF:  Your Honor, the week of September 11th
18   would be better for plaintiff.
19           THE COURT:  The week of the 11th through the 15th
20   is wide open in exactly the same way.  9:00 o'clock any day
21   other than Wednesday the 13th which would be 9:15.  Any
22   preference?
23           MR. LITOFF:  Any day is fine with plaintiff, your
24   Honor.
25           MR. TAPLING:  Any day that week works for

1  defendants.

2  MR. SPHIGEL: Yeah, the City is available that
3  week.

4  THE COURT: I will give you Monday September 11th
5  which I see in my calendar is marked Patriot Day. I am not
6  sure if that is an appropriate designation these days, but we
7  will mark it anyway. Okay?

8  MR. SHPIGEL: There is one other matter, your
9  Honor.

10 THE COURT: Yes?

11 MR. SHPIGEL: In regards to the City's motion to
12 dismiss the Monell claims and the opposition brief by
13 plaintiff, the City would like to request a reply. Plaintiff
14 raised actually new factual allegations in their response
15 brief that the City hasn't had a chance to meet head on, and
16 we would like the opportunity to do so.

17 THE COURT: You are talking about Monell claims in
18 substantive terms because I had anticipated that Monell on
19 the sort of basis that they have talked about is not going to
20 get pitched out of the case. So I am not sure that that
21 would really be treated as a live motion. Maybe I have
22 misunderstood.

23 MR. SHPIGEL: We had filed a motion to dismiss
24 their Monell claims, and the motion was stayed kind of
25 pending the resolution of --

1     THE COURT: I know that. But why doesn't that
2  essentially get mooted by what I have done here? What is it
3  that you are targeting?
4     MR. SHPIGEL: That they have in --
5     THE COURT: Is it some subset of Monell that you
6  are talking about, or what? I am not sure I understand.
7     MR. SHPIGEL: That they have inadequately pled
8  their Monell claims both in their Complaint in so much as
9  they are, you know, brought into the fold of the new
10 allegations raised in their response. In total they don't
11 create a sufficient, you know, factual basis for which to
12 proceed on that claim.
13    THE COURT: I will just have to go back on that,
14 but I had -- I had not thought that there was any real
15 predicate for pursuing that given what I have indicated. You
16 want some time for a reply, is that what you are saying?
17    MR. SHPIGEL: Correct, your Honor.
18    THE COURT: Well, how long do you want for a reply?
19    MR. SHPIGEL: Were you asking for a --
20    MR. TAPLING: Yes, defendant officers would also
21 like to ask for a chance to reply. Apparently plaintiff and
22 defendant officers have a different interpretation of what
23 Count One was actually entailing with respect to some of
24 their bad-faith destruction of evidence claim, and we would
25 like a chance to respond to those. I don't know, would the

1  Court entertain 21 days to file a reply?
2          THE COURT:  Sure.
3          MR. TAPLING:  Thank you.
4          MR. SHPIGEL:  The City would ask for the same, your
5  Honor.
6          THE COURT:  All right.  So I will give you then
7  until June 16th to file a reply on that.
8          MR. TAPLING:  Thank you very much, your Honor.
9          THE COURT:  Thank you all.
10         MR. SAFER:  Thank you, your Honor.
11         MR. LITOFF:  Your Honor, one more thing, if I may.
12 Given that you set the status for September, we actually do
13 have a status in July.  Would you like to strike that date?
14         THE COURT:  That is going to get vacated.  Thank
15 you.
16         MR. TAPLING:  Thank you, your Honor.
17         MS. RALPH:  Thank you, your Honor.
18         MR. LITOFF:  Thank you.
19      (Which were all the proceedings heard.)
20                       CERTIFICATE
21    I certify that the foregoing is a correct transcript
22 from the record of proceedings in the above-entitled matter.
23
24 s/Rosemary Scarpelli/         Date:  May 30, 2017
25