```
                                                                 1

 1                 UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF ILLINOIS
 2                       EASTERN DIVISION

 3   EDDIE L. BOLDEN,                )
                                     )
 4                  Plaintiff,       )
                                     )
 5        vs.                        )  No. 17 C 417
                                     )
 6   CITY OF CHICAGO, et al.,        )  Chicago, Illinois
                                     )  January 11, 2018
 7                  Defendants.      )  9:36 o'clock a.m.

 8
                       TRANSCRIPT OF PROCEEDINGS
 9             BEFORE THE HONORABLE MANISH S. SHAH

10
     APPEARANCES:
11
     For the Plaintiff:      RILEY SAFER HOLMES
12                               & CANCILA, L.L.P.
                             BY:  MR. RONALD S. SAFER
13                                MS. VALARIE HAYS
                                  MR. ELI J. LITOFF
14                           70 West Madison Street, Suite 2900
                             Chicago, Illinois  60602
15                           (312) 471-8736

16   For Defendant City:     GREENBERG TRAURIG, L.L.P.
                             BY:  MS. TIFFANY S. FORDYCE
17                                MR. ELAN A. SHPIGEL
                             77 West Wacker Drive, Suite 3100
18                           Chicago, Illinois  60601
                             (312) 456-8400
19
     For Defendants Baker,   HALE LAW, L.L.C.
20   Oliver, Pesavento,      BY:  MS. BARRETT E. BOUDREAUX
     Siwek, Barnes, and           MR. ALEXANDER W. TAPLING
21   Rowan:                  53 West Jackson Boulevard, Suite 330
                             Chicago, Illinois  60604
22                           (312) 870-6906

23   For Defendant Kill:     MR. GEORGE E. BECKER
                             33 North LaSalle Street, Suite 3300
24                           Chicago, Illinois  60602
                             (312) 236-2803
25
```

Colleen M. Conway, Official Court Reporter

```
 1   APPEARANCES (Continued):

 2

 3   For Defendant Temple:    RAVITZ & PALLES
                              BY:  MR. ERIC S. PALLES
 4                            203 North LaSalle Street, Suite 2100
                              Chicago, Illinois   60601
 5                            (312) 558-1689
```

COLLEEN M. CONWAY, CSR, RMR, CRR
Official Court Reporter
219 South Dearborn Street, Room 1714
Chicago, Illinois   60604
(312) 435-5594
*colleen_conway@ilnd.uscourts.gov*

Colleen M. Conway, Official Court Reporter

1         (Proceedings heard in open court:)
2             THE CLERK:  17 C 417, Bolden versus City of Chicago.
3             MS. BOUDREAUX:  Good morning, Your Honor.  Barrett
4    Boudreaux on behalf of individual defendants except Hicks,
5    Temple, and Kill.
6             MS. FORDYCE:  Good morning, Your Honor.  Tiffany
7    Fordyce on behalf of the City of Chicago.
8             MR. TAPLING:  Good morning, Your Honor.  Alexander
9    Tapling on behalf of the same individual defendants.
10            MR. SHPIGEL:  Good morning, Your Honor.  Elan Shpigel
11   on behalf of the City of Chicago.
12            MR. BECKER:  Good morning, Judge.  George Becker on
13   behalf of Michael Kill.
14            MR. SAFER:  Good morning, Your Honor.  Ron Safer,
15   Valarie Hays, and Eli Litoff on behalf of the -- Mr. Bolden.
16            MR. PALLES:  And Eric Palles on behalf of Defendant
17   Barbara Temple.
18            THE COURT:  Okay.  Good morning.  Thanks for waiting.
19            We don't have counsel for Defendant Hicks here, but
20   there's a motion to dismiss --
21            MS. BOUDREAUX:  Correct.
22            MR. SAFER:  Yes.
23            THE COURT:  -- Defendant Hicks.  Since he's not --
24   his counsel isn't here, I -- have you communicated with them?
25   Do you know if it's opposed in any way?

1  MR. LITOFF: We sent him an e-mail yesterday telling
2  him about the motion. We didn't receive a response.
3  THE COURT: The motion to dismiss Defendant Hicks
4  without prejudice is granted. So he will be terminated as a
5  party in the case.
6  Are you on track with the depositions that seem to be
7  scheduled as laid out in the motion to extend the fact
8  discovery date at paragraph 6?
9  MR. SAFER: We are, Your Honor. We -- with regard to
10  the ones that have already been scheduled, we're on track.
11  There are minor -- there's minor movement, but basically we're
12  on track.
13  THE COURT: It's a fair number of depositions to get
14  done between now and February 22nd, a few to be determined and
15  then I know that there is a point of contention over the other
16  non-noticed or scheduled depositions that the defendants want
17  to take.
18  I tend to agree with the plaintiff that it's not
19  altogether obvious from the defendants', individual defendants'
20  motion that these witnesses are, in fact, crucial to the
21  defense. And if you're not going to get agreement on the
22  number of depositions, you're going to have to justify why you
23  need to take some of these people. But it is, at least for our
24  present purposes, clear enough to me that there are going to be
25  a fair number of depositions to take, and you're -- we're not

1 going to get it done on the current schedule.

2 So that's -- so as far as that goes, that's fine. I
3 do think it makes sense, though, to talk about the *Monell* piece
4 of this case together with what has been called non-*Monell*, but
5 I want to put a bit of a pin in that because when we call
6 something non-*Monell* discovery, I don't want to suggest that
7 when they take a deposition of an individual defendant officer,
8 they can't ask questions about policies and practices and
9 training.

10 MS. BOUDREAUX: And they have been.

11 THE COURT: I imagine they have been.

12 MS. BOUDREAUX: Yes.

13 THE COURT: But when we start using labels like
14 "non-*Monell*," I don't want anyone to think that I called
15 something non-*Monell* and that meant certain subject matters
16 were not fair game, because right now, there is not a
17 bifurcation order and all topics are fair game.

18 I think we're using -- everyone's using the term
19 "non-*Monell*" simply for convenience to articulate the
20 differences between -- the individual facts of the conduct of
21 the named defendants and the global *Monell* issues are slightly
22 different.

23 So I just wanted to make that comment so that we
24 don't get into any disputes about that down the road.

25 MR. SAFER: Your Honor --

1  THE COURT: With respect to the *Monell*, I gather the
2  City is going to take another run at bifurcation.
3  MS. FORDYCE: That's right, Your Honor. We plan to
4  renew our bifurcation motion. I had hoped to get it on file
5  today, but it will certainly be on file by early next week.
6  And the difference, as you'll see in our papers, from
7  where we were at before and where we are now is just that the
8  scope of *Monell* discovery has grown.
9  I don't want to go into too much detail, but at a
10 50,000-foot view, when we responded to our *Monell* discovery,
11 there was a gap of approximately three months between when the
12 bifurcation motion was denied and we supplemented our
13 responses, and we started to get pushback from plaintiff, heavy
14 pushback on the, quote-unquote, *Monell* discovery. And just for
15 purposes of this discussion, I'm talking about other CRs,
16 interrogatories about why policy changes were made, questions
17 about lawsuits. It is extremely broad.
18 We have engaged in a lot of meet-and-confer with
19 plaintiff's counsel. We've spent the last several weeks,
20 including over the holidays, trying to wrap our mind around
21 even this narrow discovery, which, from our perspective, is
22 still too broad, but, you know, can we reach a compromise here.
23 Even the narrowed request is still, you know, extremely
24 overbroad.
25 And just by way of example, Your Honor, in their

1  latest round of discovery that we answered yesterday or the day
2  before, they want every area file of any -- "area file" being
3  the police file -- from Area 2 of all homicides during a
4  four-year period.
5          Another example, an interrogatory that asks for every
6  policy change that related to any, quote-unquote, police
7  misconduct. Why was that policy change made? You know, what
8  was the thought process? And did a superintendent do it as a
9  result of a lawsuit or a complaint?
10         You know, I mean, these are just examples. But it's
11 too broad. And this was not something that was at play when
12 the bifurcation motion was last up.
13         And so we just want to present our position to the
14 Court on this. I think that *Monell* here is grossly
15 overwhelming the case. I think it's overshadowing the
16 individual claims. And when you look at the amount of
17 discovery that, I think, both sides contend need to be done by
18 way of oral discovery, if we're going to throw *Monell* on top of
19 that, I don't even think 120 days is going to do it.
20         MS. BOUDREAUX: I actually agree with that.
21         And just to give you a broader perspective of what's
22 going on, in the last few weeks, we've gotten 5,000 documents
23 produced by the plaintiff; and in the last month, we have
24 gotten 9,000 documents produced by the Cook County State's
25 Attorney's Office and the Department of Corrections.

1  So we are just getting through those documents now
2  and that is sort of generating the -- I don't want to say
3  necessarily overinclusive list that you see in this motion, but
4  we wanted to file this certainly as a placeholder, as we're
5  going through these documents which contain names of
6  individuals, some of whom plaintiff contends to be alibi
7  witnesses, that we're just sort of learning about for the first
8  time in these 14,000 pages of documents.
9      MR. SAFER: So --
10      THE COURT: Well, you know -- and I know the
11  plaintiff is chomping at the bit --
12      MR. SAFER: Right.
13      THE COURT: -- to get the plaintiff's position out
14  there, and I assure you, you will have an opportunity. What I
15  don't want to happen is given -- given the staffing on the
16  case -- and the individual defendant officers have their
17  counsel, the City has its counsel -- that's not -- that tells
18  me that we can do the individual defendants, what we've called
19  the non-*Monell* claims, full speed ahead and get that done
20  within -- I know you're asking for 120 days. The plaintiff
21  thinks that should be done within another 60. I'll -- I am
22  going to give the 120-day date, but right now, that's
23  everything.
24      MS. BOUDREAUX: Yes.
25      THE COURT: And that includes, right now, *Monell*.

1    And that shouldn't really slow down all the incentives that are
2    in place for both the plaintiff and the individual defendants
3    to get these depositions done sooner than the full 120-day
4    period because there might be other things that you will want
5    to do towards the end that are more targeted toward *Monell* if
6    that's not bifurcated or stayed.
7            So with that, I'll turn it over to the plaintiff to
8    give me an update on where things stand and how you have a
9    vision for moving forward.
10           With respect to the forthcoming bifurcation motion,
11   what I would suggest we do is let them file it.  I could either
12   take a written response or we could just find a date and time
13   to get together and talk it through.  Whichever is more
14   cost-effective is what I would suggest.  But --
15           MR. SAFER:  Thank you, Your Honor.
16           There are, I think, two separate issues.  One is the
17   timing of the regular discovery, as we put it.  And it is true,
18   we've produced documents.  We've received a lot of documents
19   very recently from the Cook County State's Attorney's Office
20   which may, in fact, lead to an amendment of the complaint.  So
21   120 days is not unreasonable.  And that is proceeding apace.
22           And we do agree that based on that material, there
23   are going to need to be some additional depositions beyond
24   which the defendants have noticed, and they're entitled to
25   additional ones.  We're just -- the volume is all we're

1  objecting to.

2  That's that issue. *Monell*, Your Honor, is a
3  completely different issue because the defendant, the City, has
4  self-helped and bifurcated discovery in contravention of the
5  Court's order.

6  In April, we served our requests. April of last
7  year, we served -- we had the bulk of our *Monell* requests. In
8  May, the government -- the State came before -- or the City,
9  sorry, came before Judge Shadur and had a motion to -- for a
10 guarantee to obviate *Monell*. The judge denied that motion.
11 They then filed a motion to bifurcate. The judge denied that
12 motion. And yet, we have received a trickle of *Monell*
13 discovery in the interim. They have, in essence, bifurcated
14 discovery in contravention of the Court's order, and it
15 shouldn't continue.

16 And yes, they were broad requests regarding Area 2,
17 served with a cover letter that said, "Look, this is broad. We
18 will" -- "We should discuss, and we want to discuss, ways that
19 we can get this to the specific issues that apply to this case.
20 Let's do that." And we have engaged in meet-and-confers for
21 months before they say, "Oh, no. These discovery requests,"
22 most of which they had since April, "are" -- "we're going to
23 move," again, for the third time, "to bifurcate." That's just
24 wrong.

25 MS. FORDYCE: So, Your Honor --

1 MR. SAFER: They -- I'm sorry. One more thing.

2 This isn't the City's first rodeo on any of this.

3 THE COURT: It's --

4 MR. SAFER: I mean, they --

5 THE COURT: I get it. The motion for an extension of
6 time of the discovery cutoff is granted. I'll extend the fact
7 discovery cutoff to June 8th. For now, that includes all
8 issues, both non-*Monell*, individual-defendant-specific, and
9 *Monell*.

10 We'll see the motion for bifurcation. Do you want to
11 do a written response? Do you want to -- let me -- but let me
12 give you a preview of where I come down on the *Monell*
13 bifurcation issues.

14 I have generally been favorable to bifurcating *Monell*
15 discovery in those cases where it seems the cost-effective
16 management of the case would be to focus on the individual --
17 the claims against the individual officers to get everybody's
18 arms around the theories of liability that are going to attach
19 to then get a sense for the economic value on a *Monell* claim.

20 If we're going to have very thorny qualified immunity
21 issues which would make the likelihood of a possible individual
22 defendant having no liability, but *Monell* and policy liability
23 becoming a real potential, then there's a reason to plow ahead
24 and get it all done now.

25 If it's unlikely that there are going to be -- there

1  is going to be a scenario where an individual defendant is not
2  liable, but the City could also be liable, then I think we
3  ought to just resolve the case as to the individual defendant
4  officers.
5      The second thing that concerns me in these cases when
6  we're talking about the time and money involved is to get
7  everybody in a position to have a meaningful settlement
8  discussion, and that often is more cost-effective where the
9  fees haven't been expended in a way that make it difficult to
10 compromise positions when a lot of time and effort has been
11 spent on *Monell*.  But I also want everybody to have done the
12 fact discovery that's sufficient to get a sense for what's this
13 case going to look like in a real-world sense down the road.
14     So those are the things that are on my mind when I
15 deal with those bifurcation issues.  And I get that the issue
16 has been presented before, and Judge Shadur has ruled on it.  I
17 get that.  And I also appreciate parties' expectations about
18 how the case is going to be moving forward, and changing
19 rulings about case management in midstream may not be a great
20 way to run it either.
21     So I am certainly open to all of that.  So I have
22 said all of that to get a sense for whether you want to do
23 something in writing in response or do you want to just
24 reconvene and talk it through?  Whichever is plaintiff's
25 preference is fine with me.

1  MR. SAFER: I think we probably are going to want to
2  write --
3  THE COURT: That's fine.
4  MR. SAFER: -- to Your Honor.
5  THE COURT: That's fine. So -- but I want to give a
6  deadline to the City now to file this motion, because I only
7  knew it was coming because the plaintiffs told me it was
8  coming, and the individual defendants didn't flag this when
9  they filed their motion, so --
10  MS. FORDYCE: I don't even know, Your Honor, if they
11  were aware. I mean, this was -- we truly --
12  THE COURT: It's fine.
13  MS. FORDYCE: -- in good faith have been trying to
14  figure out if we can respond to these requests and -- but yes,
15  we will get it on file by Wednesday, the latest.
16  THE COURT: Okay. So that date is?
17  THE CLERK: January 17th, counsel.
18  THE COURT: Okay. How much time would you like to
19  respond?
20  MR. SAFER: I think two weeks, Your Honor.
21  THE CLERK: That's going to be the 31st, counsel.
22  THE COURT: Then two -- around two weeks after that,
23  let's find a time outside of the normal morning call.
24  THE CLERK: Everyone, how about -- 10:30 on the 14th?
25  THE COURT: (Nodding.)

1  THE CLERK: Does that work? February 14th at 10:30.
2  MR. SAFER: Sure. That's fine, Your Honor.
3  MS. FORDYCE: Fine with the City, Your Honor.
4  MS. BOUDREAUX: (Nodding.)
5  MR. SAFER: With regard -- I would just note with
6  regard to settlement, Your Honor, we agree, you know, that, you
7  know, the facts of this case are largely of record. There have
8  been trials. There have been post trials. There's been a lot
9  of stuff that goes on. And that's why we sent a letter to the
10 City before these depositions got going in earnest to say,
11 "Look, we ought to sit down." There are eight lawyers for the
12 defendants at every one of these depositions. We ought to sit
13 down and talk about whether or not this case can be settled
14 now. We haven't heard. I forget about when we sent this, but
15 -- somewhere in December, and we haven't heard back.
16 THE COURT: Well, for now, I'll leave it to the
17 parties to decide how and whether they want to engage in
18 settlement discussions. But you can expect that I will bring
19 it up -- if not next time, then maybe a time after that -- and
20 we can talk about it.
21 And then I'll particularly, probably after a few more
22 of these depositions, get a preview for how it is the defense
23 is approaching the case and get a better sense for if you're
24 hostile to settlement discussions, why that is.
25 MS. FORDYCE: No, Your Honor, I think your

1  inclination is correct that, at least from the City's
2  perspective, given the numbers that have been thrown out from
3  the plaintiff, we just needed to engage in more discovery to
4  make a -- right now, where their numbers are, no, I don't think
5  settlement discussions would be fruitful.  But perhaps we
6  reassess at the -- you know, closer to the end of discovery.
7           I mean, all I can say is right now, from what we've
8  seen in the depositions, based on the numbers that have been
9  bantered around, I don't think it's fruitful now.  I don't know
10 if I would change my position up or down or, you know, where we
11 are now later.  But that's kind of their -- our position at
12 this point.
13          And, Your Honor, if I could just say one more thing?
14          THE COURT:  Go ahead.
15          MS. FORDYCE:  I just don't want my silence to be
16 construed as me agreeing with how plaintiff -- Mr. Safer was
17 characterizing the procedural history of where we got to where
18 we are.  It's all going to be laid out in our motion.  But that
19 doesn't mean that I agree with that summary.
20          THE COURT: Noted.  Okay.  I'll see you on February
21 14th.
22          MS. BOUDREAUX:  Thank you.
23          MR. BECKER:  Thank you, Your Honor.
24          THE COURT:  Is there anything else that I am missing
25 that we should cover?

1        MS. BOUDREAUX:  So we don't have to show up for the
2    Hicks motion?
3        THE COURT:  Correct.
4        MS. BOUDREAUX:  Right.  Okay.
5        MR. SAFER:  Thank you, Your Honor.
6        MS. BOUDREAUX:  Thank you.
7        MS. HAYS:  Thank you, Your Honor.
8      (Proceedings concluded.)

**Colleen M. Conway, Official Court Reporter**

C E R T I F I C A T E

I, Colleen M. Conway, do hereby certify that the foregoing is a complete, true, and accurate transcript of the proceedings had in the above-entitled case before the HONORABLE MANISH S. SHAH, one of the Judges of said Court, at Chicago, Illinois, on January 11, 2018.

_/s/ Colleen M. Conway, CSR, RMR, CRR_   _01/11/18_
Official Court Reporter   Date
United States District Court
Northern District of Illinois
Eastern Division

Colleen M. Conway, Official Court Reporter