IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| EDDIE L. BOLDEN, | ) | |
| | ) | |
| Plaintiff, | ) | **Case No. 1:17-cv-00417** |
| | ) | |
| v. | ) | |
| | ) | Hon. Manish S. Shah |
| | ) | |
| | ) | Hon. Mag. Susan Cox |
| CITY OF CHICAGO et al. | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANT CITY OF CHICAGO'S RENEWED MOTION TO BIFURCATE AND STAY PLAINTIFF'S *MONELL* CLAIM

Defendant City of Chicago ("the City") respectfully renews its motion to bifurcate Plaintiff Eddie L. Bolden's ("Bolden") *Monell* claims from the other claims in this case and to stay all discovery on those claims. The City respectfully requests the Court grant its Motion for the reasons set forth herein and in the attached Memorandum of Law and further states as follows:

1. Bolden brought this lawsuit against the City and the Defendant Officers (collectively "Defendants"), arising from Bolden's arrest, conviction, and incarceration for the murders of Derrick Frazier and Ledell Clayton and the attempted murder of Clifford Frazier. *See* Dkt. No. 40 (First Amended Complaint ("FAC")). Bolden alleges claims for violation of due process, failure to intervene, conspiracy to deprive constitutional rights, false arrest and imprisonment, federal malicious prosecution, as well as various state law claims against the Defendant Officers. *Id*. at ¶¶ 63-85, 93-115. As to the City, Bolden asserts state law claims for *respondeat superior,* indemnification, and claims under *Monell v. Department of Social Services of City of New York,* 436 U.S. 658 (1978), alleging that the City's policies and practices were the

CHI 68868236v1

underlying causes of the constitutional violations purportedly suffered by Bolden. FAC at ¶¶ 86-92.

2. At a status conference on April 19, 2017, the Court indicated its general preference for bifurcating *Monell* claims in Section 1983 actions and further stated that entry of the Consent would be an efficient way to accomplish it. All parties agreed to entry of the Consent in open court. *See* Memorandum Exhibit A, Transcript of Proceedings in *Bolden v. City of Chicago et al.*, 17-cv-00417, before Hon. Milton I. Shadur, dated April 19, 2017, at 4:3-6:6. Bolden, however, subsequently revoked his stipulation. *See* Memorandum Exhibit B. On May 24, 2017, the City filed a Motion for Entry of Guaranty of Satisfaction of Judgment in an attempt to enforce Bolden's prior agreement. *See* Dkt. 84. On May 26, 2017, the Court declined to enter the Guaranty for reasons unrelated to the merits of the City's arguments concerning bifurcation; instead the Court held that under principles of contract law, the parties had not reached a meeting of the minds on the Consent. *See* Memorandum Exhibit C, Transcript of Proceedings before the Hon. Milton I. Shadur in *Bolden v. Chicago, et al.* (17 C 417), dated May 26, 2017, at 5:22-6:14. The Court cautioned the parties that, in propounding discovery, they should not ask "for the whole world." *Id.* at 12:1-12:11. Bolden's counsel failed to heed this admonition. On July 13, 2017, the City filed a Motion to Bifurcate Plaintiff's *Monell* Claims, arguing that bifurcation did not require the consent of all parties. *See* Dkt. 95. On August 2, 2017, without any legal analysis or other detailed explanation, the Court denied the City's Motion, and transferred the case to this Court. *See* Dkt. 103.

3. Throughout the course of discovery, the City has produced more than 20,000 pages of documents. Bolden, however, continues to serve new, and increasingly burdensome, discovery requests. Bolden first served his overbroad *Monell* discovery requests on or about

April 17, 2017 and May 4, 2017. The City responded to these requests on June 5, 2017, largely asserting objections to the extremely overbroad *Monell* discovery requests. On August 21, 2017, nearly two months later, and weeks after the Court denied the Motion to Bifurcate, Bolden's counsel sent a brief letter to defense counsel asking for a telephonic meet and confer, and outlining the discovery responses that Bolden's counsel wanted to discuss on the call. Bolden only contested a few *Monell*-related discovery responses relating to the City's policies. The parties participated in a telephonic conference on August 23, 2017, and reached agreement on the majority of the issues raised by Bolden. On September 7, 2017, the City supplemented its responses to Plaintiff's First Set of Requests for Production of Documents, in accordance with the parties' agreement, while maintaining its objections to other *Monell* requests that Bolden had not questioned.

4. Because Bolden did not object to the City's supplemental discovery responses, the City believed that the parties had reached agreement about the appropriate scope of *Monell* discovery. But two months later, on November 15, 2017, Bolden sent correspondence to the City raising new issues with the City's *Monell* discovery responses, which Bolden had not raised in the August 2017 discussions. The City responded to Bolden's letter on November 27, 2017, with a supplemental response and an invitation to engage in a conference, to which Bolden asserted new objections. The parties held a telephonic conference on December 6, 2017 in which Bolden once again raised new objections based on the prior discovery responses that the City had first served in June.

5. Although Bolden's counsel agreed to narrow his *Monell* discovery somewhat, the requests remain overbroad and threaten to overwhelm this litigation. Compounding the problem, Bolden served new *Monell* discovery requests on November 27, 2017 and December 1, 2017.

Like Bolden's prior *Monell* requests, this new discovery is breathtaking in scope. Furthermore, the issues raised in Bolden's *Monell* discovery expand the scope of this case, and cover numerous topics unrelated to the non-*Monell* claims. Use of this information, including allegations related to physical abuse and torture, would be prejudicial.

6. The scope of Bolden's *Monell* discovery requests has expanded since the Court's denial of the City's prior motion, as evidenced by Bolden propounding new *Monell* discovery, Bolden's shifting position on the acceptability of the City's prior discovery responses, a failure by Bolden to reasonably narrow his *Monell* discovery, and disclosures made by Bolden indicating his intention to use *Monell* as a vehicle to introduce irrelevant and prejudicial evidence into this case. For all these reasons, the Court should grant the City's Motion to Bifurcate.

7. The Court has broad discretion to bifurcate *Monell* claims. Bifurcation of the *Monell* claims and a stay of discovery related to those claims will best serve the interests identified in Rule 42(b) of convenience, economy, expedition, and avoidance of prejudice, and granting the City's motion represents a sound exercise of the Court's broad authority to control its docket. *See Krocka v. City of Chicago*, 203 F. 3d 507, 516 (7th Cir. 2000).

8. The defense of Bolden's *Monell* claims is involving colossal discovery, including which is completely overwhelming what otherwise is a straightforward Section 1983 action. *See Ojeda-Beltran v. Lucio*, No. 07 C 6667, 2008 U.S. Dist. LEXIS 54116 (N.D. Ill. July 16, 2008).

9. Bifurcation will promote judicial economy by eliminating the need for judicial intervention on discovery disputes and by dispensing with the need for this Court to preside over a trial that will be lengthier and more complex. Litigating Bolden's *Monell* claims will require this Court to preside over numerous mini-trials on issues not necessary to the resolution of the

remainder of the claims. *See Fuery v. City of Chicago,* 2015 U.S. Dist. LEXIS 18938, *7 (N.D. Ill. Feb 17, 2015).

10. Bifurcation will not impact Bolden's ability to recover any damages. Bolden cannot prevail against the City on his *Monell* claims without first prevailing on his claims against the Defendant Officers. As a matter of law, Bolden is not entitled to recover more than nominal damages if he prevails against the City on his *Monell* claims after a finding of liability against the Defendant Officers. *Medina v. City of Chicago,* 100 F.Supp.2d 893, 895-96 (N.D. Ill. 2000). Furthermore, because of the grievous and blatant nature of alleged constitutional violations Bolden alleges he suffered, no Defendant Officer is likely to successfully assert a qualified immunity defense in this case. Bifurcation will discourage wasteful pre-trial activities and help minimize any potential abuse of the fee-shifting provisions in Section 1988.

11. Bifurcation will prevent unfair prejudice against the Defendant Officers that would be caused by introducing at trial decades worth of alleged bad acts purportedly committed by individuals who had no involvement in Bolden's arrest or conviction, including those relating to coercive interrogations and torture, allegations unrelated to Bolden's claims. *See Harris v. City of Chicago,* 2016 WL 3261522, *3 (N.D. Ill. June 14, 2016). Bifurcation would also prevent prejudice against the City. The allegations against the Defendant Officers are serious and if such allegations are proven at trial, it may cause the jury to hold the City liable on the *Monell* claim without giving the claim its due deliberation and contemplation because the jurors would be motivated by the Defendant Officers' conduct. *Monell* would devolve into a *respondeat superior* claim despite the law requiring that it not. *EG Milestone*, 665 F.3d at 780.

12. In support of its Motion, the City also submits its proposed Limited Consent to Entry of Judgment Against Defendant City of Chicago, ("Consent"), attached as Exhibit 1.

Under the Consent, if a jury finds that the Defendant Officers violated Bolden's constitutional rights, the City will consent to entry of a judgment against it for the amount of damages caused by the violation, plus reasonable attorneys' fees and nominal damages. The Consent mandates the City pay a Defendant Officer's compensatory damages even in the unlikely event that the officer prevails on a qualified immunity defense.

Wherefore, for these reasons and the reasons detailed more fully in the City's Memorandum of Law filed concurrently herewith and incorporated herein by reference, the City asks this Court to grant its motion to bifurcate Bolden's *Monell* claim against it and to stay discovery related thereto.

Dated: January 17, 2018

Respectfully submitted,

CITY OF CHICAGO

By: */s/ Elan Shpigel*
John F. Gibbons (Attorney No. 06190493)
gibbonsj@gtlaw.com
Tiffany S. Fordyce (Attorney No. 235063)
fordycet@gtlaw.com
Elan Shpigel (Attorney No. 6321514)
shpigele@gtlaw.com

Greenberg Traurig, LLP
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
Tel: (312) 456-8400
Fax: (312) 456-8435

Attorneys for Defendant City of Chicago

## CERTIFICATE OF SERVICE

I, Elan Shpigel, an attorney, hereby certify that on January 17, 2018, I caused the foregoing *Defendant City of Chicago's Renewed Motion to Bifurcate and Stay Plaintiff's Monell Claims* to be served through the ECF system on all attorneys of record.

                                                        */s/ Elan Shpigel*