**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| EDDIE L. BOLDEN,<br><br>                        Plaintiff,<br><br>   vs.<br><br>CITY OF CHICAGO, et al.,<br><br>                    Defendants. | Case No. 17-cv-00417<br><br><br><br>Honorable Manish S. Shah<br>Honorable Susan E. Cox |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT CITY OF CHICAGO'S RENEWED MOTION TO BIFURCATE PLAINTIFF'S *MONELL* CLAIM

Plaintiff Eddie L. Bolden, by and through his attorneys, respectfully submits this Response in Opposition to Defendant City of Chicago's Renewed Motion to Bifurcate Plaintiff's *Monell* Claim (Dkt. 152) and states as follows:

### INTRODUCTION

The City's renewed motion to bifurcate is thinly-veiled forum shopping. Contrary to the City's assertions, the "discovery landscape" has not changed since Judge Shadur issued his ruling denying the City's motion to bifurcate. In the City's first motion to bifurcate, it repeatedly characterized Mr. Bolden's *Monell* requests as "colossal" and overly burdensome, just as it does now.[1] The only change since Judge Shadur's ruling is that six additional months have passed, and the City has yet to produce any *Monell* discovery other than its written policies and complaint

---

[1] Mr. Bolden adopts the City's characterization of certain discovery requests as "*Monell* requests" for ease of reference. However, many of the requests the City characterizes as *Monell* discovery are in fact requests that are relevant to proving Mr. Bolden's claims against the Individual Defendants. This disconnect between what the City and Mr. Bolden consider to be "*Monell*" discovery is one of many reasons why judicial economy and efficiency are not served by bifurcation. These disputes will require judicial intervention to undertake what can be an impossible task – separating "*Monell* discovery" from "non-*Monell* discovery." *See Ott v. City of Milwaukee*, 09 C 870, 2010 WL 5095305, at *3 (E.D. Wis. Dec. 8, 2010) (finding it "likely that bifurcating discovery in this case will lead to more disputes as to whether certain discovery requests relate to the permissible individual claims or the impermissible *Monell* claims").

registers for the detectives and officers involved in this case—most of which would be discoverable absent a *Monell* claim. Before filing its renewed motion, the City never indicated that it believed the parties were at an impasse with respect to Mr. Bolden's outstanding *Monell* discovery requests. Indeed, during the last Meet and Confer, the parties discussed and agreed on ways to limit the scope of the requests. The City's inaccurate portrayal of new, insurmountable *Monell* discovery hurdles is nothing more than an attempt to make the same bifurcation arguments that Judge Shadur rejected six months ago.

The City further contends that Judge Shadur denied the City's original motion "without providing any legal analysis." (Dkt. 153 at 3.) As Judge Shadur demonstrated throughout his tenure on the bench, he did not issue any opinions without careful, thoughtful, and thorough legal analysis. In denying the City's motion, Judge Shadur explained that there was no need for a lengthy opinion, because he fully adopted the legal analysis set forth in Mr. Bolden's brief:

> Bolden's Response has presented a persuasive case for the denial of bifurcation in this action. There is really no need to recount the several arguments advanced by Bolden's counsel in their 12-page Response. This Court has given full consideration to the arguments in the Motions and to the counter contentions in the Response and finds that the latter convincingly overcome both (1) the arguments in support of the Motions and (2) this Court's already-referred-to general inclination to view such motions as serving the best interests of both parties in many Section 1983 cases. Accordingly, the Motions are denied.

(Dkt. 103.)

With the exception of two new document requests, which Mr. Bolden offered to narrow based on what the City could search electronically, all of Mr. Bolden's *Monell* discovery requests were served in April and May of 2017—months before Judge Shadur denied the City's motion to bifurcate. There are no new developments to justify reconsideration of Judge Shadur's prior decision. The City's motion should be denied.

## FACTUAL BACKGROUND

Mr. Bolden issued his First Set of Requests for Production ("RFPs") to the City of Chicago on April 17, 2017.  On May 4, 2017, he issued his First Set of Interrogatories.  These RFPs and Interrogatories contain the vast majority of the *Monell* discovery requests at issue in the City's motion.

On May 19, 2017, the City filed a Motion for Entry of Guaranty in Satisfaction of Judgment, which it contended would "resolv[e] all matters" related to Plaintiff's *Monell* claim. (Dkt. 75.)  The Court denied the City's motion and ordered that *Monell* discovery go forward.  The City then represented to Judge Shadur that it would "work with the plaintiff to narrow some of [his] Monell discovery."  Exhibit A, at 13:9-14.  But the City never did so.  Instead, on June 5, 2017, the City served discovery responses that objected to any request that the City deemed *Monell* discovery and declared its intent to file a motion for bifurcation.  After the parties fully briefed the bifurcation issue, Judge Shadur denied the City's motion on August 2, 2017.  (Dkt. 103.)

The following week, on August 10, 2017, counsel for Mr. Bolden requested a Meet and Confer with defense counsel.  The parties held a Meet and Confer on August 23, 2017.  After the meeting, the City agreed to "begin engaging in *Monell* discovery."  On September 7, 2017, the City served Supplemental Responses to Plaintiff's First Set of RFPs.  These supplemental responses amended some, but not all, of the City's *Monell*-related objections.  The City **never** amended its responses to Mr. Bolden's First Set of Interrogatories to remove its *Monell* objections, despite its promise to do so.

In early October and November 2017, the City made two large document productions, which Mr. Bolden's counsel analyzed over the next several weeks.  The City's responses and productions indicated that the City was only willing to produce written policies and complaint register files for the police officers involved in this case.  Claiming undue burden, the City refused

3

to produce any *Monell* discovery that would expose it to *Monell* liability, including information for the relevant time frame pertaining to (1) the adequacy of training the City provided to police officers related to protecting the accused's constitutional rights, (2) lawsuits filed against the City related to police misconduct, (3) the individuals responsible for policy making at the City, (4) studies conducted regarding the prevalence of police misconduct within the Chicago Police Department, and (5) data to evaluate whether there was a pattern and practice of police officers engaging in the types of misconduct alleged in this case.

On November 15, 2017, counsel for Mr. Bolden asked the City to supplement its responses to Mr. Bolden's *Monell*-related interrogatories (nos. 15 through 19). On November 27, 2017, the City served interrogatory responses that supplemented certain non-*Monell* interrogatories but ignored the *Monell*-related interrogatories. The parties subsequently scheduled a Meet and Confer for December 6, 2017, to address the City's deficient *Monell* interrogatory responses and RFP responses. On December 1, 2017, Mr. Bolden served two additional *Monell*-related discovery requests, one of which the City concedes is "largely duplicative" of an existing request. (Dkt. 152 at 7.) Recognizing that the new requests were broad in scope, Mr. Bolden's counsel offered to "discuss options for narrowing these requests in ways that will minimize the burden to the City while ensuring that Mr. Bolden receives the documents relevant to his *Monell* claims." Exhibit B.

On December 6, 2017, the parties participated in a Meet and Confer. Mr. Bolden agreed to narrow the scope of certain requests, and the City's counsel agreed to confer with its client regarding methods of searching the City's internal systems so that Mr. Bolden could further narrow his requests. Mr. Bolden's counsel summarized the parties' agreements and remaining issues in a letter dated December 11, 2017 and requested that the City respond to the issues set forth in the

letter by December 20, 2017.  Exhibit C.  On December 15, 2017, counsel for the City stated that it would respond to Mr. Bolden's December 11 letter "in a substantive manner" once it conferred with its client.

Over the next few weeks, Mr. Bolden's counsel asked the City to respond to its December 11 letter on multiple occasions.  These requests were ignored.  Instead of providing any response, the City simply served discovery responses on the evening of January 9, 2018, again refusing to respond to *Monell*-related requests and stating for the first time that it planned to file another motion to bifurcate.  On January 11, shortly before the status hearing in this case and ***more than five months*** after Judge Shadur denied the City's bifurcation motion, the City sent Mr. Bolden's counsel an email announcing that "the City does not intend to respond to Plaintiff's *Monell* discovery requests."  Exhibit D.  In recent days, the City has taken its position to an even further extreme and objected to certain deposition topics for a particular witness, based on the mistaken conclusion that the topics were related to Mr. Bolden's *Monell* claims.  Exhibit E.

## STANDARD OF REVIEW

As the proponent of bifurcating the *Monell* claims, the City bears "the burden of showing that judicial economy would be served and the balance of potential prejudice weighs in favor of bifurcation."  *Trading Techs. Intern., Inc. v. eSpeed, Inc.*, 431 F. Supp. 2d 834, 836 (N.D. Ill. 2006).  The majority of courts in this district "hold[] that bifurcation is now heavily disfavored." *See Awalt v. Marketti*, No. 11 C 6142, 2012 WL 1161500, at *10 & n.2 (N.D. Ill. Apr. 9, 2012). Bifurcation is improper where it would "prejudice the non-moving party."  *Chlopek v. Fed. Ins. Co.*, 499 F.3d 692, 700 (7th Cir. 2007).

## ARGUMENT

The City's second bifurcation motion is not based on any changes in the law or a contention that Judge Shadur's ruling was erroneous.  In fact, the City's renewed motion largely ignores the

primary reason Judge Shadur denied bifurcation in the first place. Based on the facts of this case, bifurcation creates a risk of two rounds of discovery and two trials on related issues, because the City can be liable under *Monell* even if the Defendant Officers are found to be not liable.[2] Under these circumstances, a second trial could not be avoided with the City's offer of a "Limited Consent for Entry of Judgment," which is dependent on a finding of individual defendant liability. The City failed to address this issue in its renewed motion beyond a cryptic footnote, as discussed below.

## I.     The City Again Fails to Adequately Address the Risks of Bifurcation.

The City acknowledges in a footnote that there is the potential for *Monell* liability against the City even if there is a finding in favor of the Defendant Officers, but it goes on to vaguely assert that "given the nature of Bolden's claims…such a scenario is extremely unlikely." (Dkt. 153, at 13 n.5) The City does not provide any reasoning for this assertion and fails to address the three scenarios that Mr. Bolden offered in his response to the City's first bifurcation motion to demonstrate how there could be a finding of *Monell* liability against the City regardless of the Defendant Officers' liability. (Dkt. 102, at 4-5.)

The City's footnote also attempts to distinguish the cases on which Mr. Bolden relied in his original response brief by arguing that the constitutional harm was different and the *Monell* discovery in those cases was less voluminous. However, the City fails to provide any analysis as to why the difference in constitutional harms is a meaningful distinction. The City also fails to point to any language in those opinions indicating that the volume of discovery was a factor that the courts considered when denying bifurcation. In fact, the court in *Awalt v. Marketti* stated,

---

[2] "[A] municipality can be held liable under *Monell*, even when its officers are not, unless such a finding would create an inconsistent verdict." *Thomas v. Cook County Sheriff's Department*, 604 F.3d 293, 304 (7th Cir. 2010). To make this determination, the court looks to "the nature of the constitutional violation, the theory of municipal liability, and the defenses set forth." *Id.*

"Although considerations of the cost of the defense is one concern to take into account, ***those considerations dissipate*** if it is determined that the parties may have to litigate the *Monell* claims irrespective of the bifurcation decision, and thus incur the costs nonetheless, just at a later date." 2012 WL 2261500, at *10 (emphasis added). Similar to its first bifurcation brief, the City's second brief is void of any legal or factual analysis related to the potential for *Monell* liability irrespective of the Defendant Officers' liability. Because a verdict in favor of the Defendant Officers would not prevent the need to litigate Mr. Bolden's *Monell* claim, concerns regarding efficiency and judicial economy do not weigh in favor of bifurcation.

## II.     The City Has Not Established That the Burden Imposed By *Monell* Discovery Is Disproportionate to the Needs of the Case.

The City asserts that Mr. Bolden's *Monell* discovery requests are overbroad and burdensome as a justification for bifurcation—just as it did in its first motion.[3] Mr. Bolden's *Monell* requests to date can be summarized into the five general categories of information referenced in the factual background section above. All of the requested categories of information are reasonable, and contrary to the City's description of an impasse, the parties have discussed viable options for narrowing the requests to minimize the City's burden. Exhibit C. Although Mr. Bolden remains hopeful that the parties can agree on a reasonable scope for his *Monell* requests, the remedy for continued discovery disputes is not bifurcation but rather a discovery ruling by the

---

[3] The City also points to burden to support its request that *Monell* discovery be stayed pending ruling on its renewed bifurcation motion. (Dkt. 153, at 2 n.4.) Mr. Bolden objects to this request. The City already has unilaterally delayed production of *Monell* discovery for six months. In support of its request for a stay, the City references "the 21 depositions that are scheduled between now and the end of February 2018." *Id.* In actuality, the City has plenty of time to focus on *Monell* discovery. Since the Court granted the Defendant Officers' request to extend the discovery schedule, counsel for the Defendant Officers have cancelled 10 of the 11 depositions they scheduled for January and early February. Furthermore, the City has delayed in scheduling certain officer depositions that Mr. Bolden's counsel seeks to take. Currently, there are only a handful of deposition scheduled for February and March, despite Mr. Bolden's counsel's efforts to schedule additional depositions.

Court.  *See, e.g.*, *Carter v. Dart*, No. 09 C 956, 2011 WL 1466599, at *5 (N.D. Ill. Apr. 18, 2011) (denying motion to bifurcate, noting that "to the extent that Plaintiff's *Monell* discovery requests are overly broad or would impose undue burden and expense, the court can tailor them as necessary"); *Terry v. Cook Cnty. Dep't of Corr.*, No. 09 C 3093, 2010 WL 2720754, at *3 (N.D. Ill. Jul. 8, 2010) (same); *Cadiz v. Kruger*, No. 06 C 5463, 2007 WL 4293976, at *3 (N.D. Ill. Nov. 29, 2000) (same).

Burden alone does not justify bifurcation.  *See Cadiz*, 2007 WL 4293976, at *3 (explaining that if increased burden "alone were sufficient to require bifurcation, then bifurcation would be automatic").  Instead, courts must look to whether the burden imposed, however great, is disproportionate to the needs of the case.  Fed. R. Civ. P. 26(b)(1).  In doing so, courts assess, among other things, "the importance of the issues at stake in the action, the amount in controversy, [and] the parties' relative access to relevant information."  *Id.*  The importance of the issues at stake includes "the significance of the substantive issues, as measured in philosophic, social, or institutional terms."  Fed. R. Civ. Pro. 26(b)(1), Advisory Committee's note to 2015 amendment (internal citations omitted).  "Thus, the rule recognizes that many cases in public policy spheres … may have importance far beyond the monetary amount involved."  *Id.*

The high stakes at issue here are readily apparent.  Mr. Bolden has lost decades of his life due to the unconstitutional conduct of the Defendants.  The claims involve allegations of pervasive misconduct within the Chicago Police Department, an entity entrusted with protecting and serving the citizens of Chicago.  Indeed, the City likely has collected and produced many of the relevant documents in other similar cases.  *See Cadle v. City of Chicago*, No. 15 C 4725, 2015 WL 6742070, at *2 (N.D. Ill. Nov. 2, 2015) ("The City is very familiar with this type of discovery, and the Court has no doubt that the City has produced similar information in other cases. The incremental burden

of doing so again here does not militate heavily in favor of bifurcation."). The monetary value of the claims is also substantial. *See, e.g.*, *Patrick v. City of Chicago*, JVR No. 1706280004, 2017 WL 2928283 (N.D. Ill. Apr. 12, 2017) (recent $13.3 million verdict in favor of Deon Patrick against the City of Chicago). Furthermore, the "parties' relative access to relevant information" weighs in Mr. Bolden's favor, as the City is the only party with documents related to misconduct within the Chicago Police Department. *See* Fed. R. Civ. P. 26(b)(1). Finally, any incremental burden caused by *Monell* discovery will not have a disproportionate impact on what is already a large, complex case, involving over 50 witnesses and thousands of pages of discovery.

## III.    Prejudice Concerns Do Not Justify Bifurcation.

The City again alleges that certain *Monell* topics are prejudicial, but any potential prejudice can be mitigated by appropriate evidentiary rulings at trial. *See Cadle*, 2015 WL 6742070, at *3 (finding the City's arguments regarding prejudice "premature" and "unpersuasive" because the court could utilize evidentiary tools to limit prejudice). This issue was fully briefed by the parties in the first round of bifurcation filings, and the City's argument was rejected by Judge Shadur. (Dkt. 102, at 10.) The new examples of potential prejudice referenced by the City (Dkt. 153, at 8, 14-15) do not support a different result, nor do they materially expand discovery.[4] If the City believes certain evidence will be unduly prejudicial at trial, it can request exclusion or a limiting instruction at the appropriate time.

---

[4] In response to the City's list of prejudicial issues raised by Mr. Bolden's discovery requests, Mr. Bolden offers the following responses: (1) the Blue Ribbon Panel was referenced as an example of a CPD policy review process the City used in the past; it was not the subject of a discovery request; (2) Mr. Bolden is not seeking CPD case files related to torture or false confessions or any other Burge-related information that would materially increase the scope of *Monell* discovery; however, improper conduct by Area 2 detectives under Burge's command is relevant to the quality of the City's policies, practices and training at the time, and if the Defendant Officers engaged in these unconstitutional practices or were aware that they were taking place, it is relevant to their own credibility, intent, and willingness to abide by a "code of silence"; and (3) Mr. Bolden produced and referenced a federal civil complaint alleging torture and a false confession in Defendant Pesavento's deposition because Pesavento is a named defendant in that case.

## CONCLUSION

For the reasons set forth above, Mr. Bolden respectfully requests that this Court deny Defendant City of Chicago's Renewed Motion to Bifurcate Plaintiff's *Monell* Claim.


Dated: January 31, 2018                                    Respectfully Submitted,

                                                           */s/ Ronald S. Safer*
                                                           Ronald S. Safer
                                                           Valarie Hays
                                                           Eli J. Litoff
                                                           Valerie Brummel
                                                           RILEY SAFER HOLMES & CANCILA LLP
                                                           Three First National Plaza
                                                           70 W. Madison Street, Suite 2900
                                                           Chicago, Illinois 60602
                                                           312-471-8700
                                                           rsafer@rshc-law.com
                                                           vhays@rshc-law.com
                                                           elitoff@rshc-law.com
                                                           vbrummel@rshc-law.com

                                                           Sandra L. Musumeci (*pro hac vice*)
                                                           RILEY SAFER HOLMES & CANCILA LLP
                                                           1330 Avenue of the Americas, 6th Floor
                                                           New York, New York 10019
                                                           212-660-1000
                                                           smusumeci@rshc-law.com

                                                           *Attorneys for Eddie L. Bolden*

10

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 31, 2018, I caused the foregoing document to be electronically filed using he CM/ECF system, which will send notice of this filing to all counsel of record.

*/s/ Eli J. Litoff*
Eli J. Litoff
RILEY SAFER HOLMES & CANCILA LLP
Three First National Plaza
70 W. Madison Street, Suite 2900
Chicago, Illinois 60602
312-471-8700
elitoff@rshc-law.com
