IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EDDIE L. BOLDEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 17 C 00417 |
| v. | ) | |
| | ) | Honorable Manish S. Shah |
| | ) | |
| CITY OF CHICAGO, JAMES OLIVER, | ) | |
| ANGELO PESAVENTO, and EDWARD SIWEK | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT OFFICERS' RESPONSE TO PLAINTIFF'S MOTION *IN LIMINE* NO. 1
TO BAR REFERENCE TO PLAINTIFF'S CRIMINAL HISTORY**

Defendants James Oliver, Angelo Pesavento, and Edward Siwek, (collectively "Defendant Officers") by their attorneys, in response to Plaintiff's Motion *in Limine* to bar reference to Plaintiff's criminal history, state as follows:

On September 7, 1985, Plaintiff shot and killed Laferre Boyd. Plaintiff confessed to the murder, and subsequently pled guilty to voluntary manslaughter in return for a fifteen-year sentence. He was released from IDOC custody on November 2, 1992. On January 29, 1994, less than fourteen months after Plaintiff was released, Derrick Frazier and Ledell Clayton were murdered and Clifford Frazier was shot twice.

Evidence that Plaintiff killed Boyd and was convicted of voluntary manslaughter is directly probative of Plaintiff's malicious prosecution and Section 1983 claims. Defendant Officers do not seek to admit this evidence to create an inference of propensity toward such conduct or to impeach Plaintiff's credibility under Rule 609(a). Instead, Plaintiff's prior conduct is admissible because it is "relevant to [several] specific purpose[s] other than [his] character or propensity to behave in a

certain way." *United States v. Gomez*, 763 F.3d 845, 856 (7th Cir. 2014). Relevance to key issues in this case, including Plaintiff's guilt in the Clayton/Frazier murders, alleged damages, and the existence of probable cause is established without relying on any forbidden propensity inference. *Id*. at 860 (other acts evidence are admissible if relevance is established through a "propensity-free chain[s] of reasoning.")

I. **Evidence of Plaintiff's Prior Voluntary Manslaughter Conviction is Not Being Offered as Propensity Evidence.**

Plaintiff's role in the Boyd homicide, as well as his confession, conviction and incarceration, are relevant to explain: (1) Plaintiff's relationship with Anthony Williams, the individual who orchestrated the Clayton/Frazier murders; (2) Plaintiff's consciousness of guilt demonstrated through his attempt to manipulate and intimidate witnesses; (3) alleged damages; (4) the existence of probable cause to arrest and prosecute Plaintiff; and (5) Plaintiff's failure to testify at his criminal trial.

   A. **The circumstances of the Boyd homicide and Plaintiff's resulting conviction should be admitted to show the evolution of Plaintiff's relationship with Anthony Williams.**

Evidence exists that the Clayton/Frazier murders were the result of the victims' failure to pay a street tax on their drug sales to the Gangster Disciples and that the murders were orchestrated by Anthony Williams, a governor of the Gangster Disciples. Plaintiff denies that he was Anthony's accomplice, claiming that another individual, Roderick Stewart, committed the murders. The circumstances of the Boyd murder are admissible under Rule 404(b) to show Plaintiff's relationship with Anthony Williams and to explain why Anthony Williams would have trusted Plaintiff to murder Frazier and Clayton.

Evidence of prior crimes is admissible to show a criminal relationship between individuals and to provide context for a crime they committed together under Rule 404(b). *United States v.*

*Foster*, 652 F.3d 776, 783 (7th Cir. 2011); *see also United States v. Alamo*, 872 F.2d 202, 207 (7th Cir. 1989) (other acts evidence admissible to show "cocaine working relationship"); *United States v. Scop*, 940 F.2d 1004, 1009 (7th Cir. 1991) ("other acts evidence admissible to complete the story of defendants' familiarity or relationship"). In *Foster*, the defendant's accomplice testified that defendant had recruited her to participate in a bank robbery. *Foster*, 652 F.3d at 783. The accomplice had previously worked for the defendant cashing fraudulent checks, which explained why defendant approached her to participate in the robbery. *Id*. at 783-84. The Court found that the check-cashing scheme was properly admitted for the non-propensity purpose of "show[ing] how the criminal relationship between defendant and [the accomplice] developed." *Id*. The check-cashing scheme evidence explained the trusting relationship between the defendant and the accomplice, and why "[the defendant] would have approached [the accomplice], of all people, with his plan to rob [the bank]: the two knew one another well not merely in a social setting but in an ongoing criminal relationship." *Id*. at 785; *see also United States v. Grissom*, 760 F. App'x 448, 452 (7th Cir. 2019) (prior burglaries admissible to show relationship between parties and "why [defendant] recruited these co-conspirators") *United States v. Torres-Chavez*, 744 F.3d 988, 991 (7th Cir. 2014) (uncharged criminal offenses admitted to "establish[] the trusting relationship" between defendant and witness.); *United States v. Liefer*, 778 F.2d 1236, 1252 (7th Cir. 1985) (prior drug transactions admissible to "explain[] why [witness] trusted [defendant] with large amounts of marijuana on a consignment basis.").

Similarly in this case, the relationship between Plaintiff and Anthony Williams evolved from a social connection to a criminal endeavor. Plaintiff, Anthony Williams, and Louis Williams (Anthony's brother), were childhood friends who grew up together in the Stateway Gardens. In 1985, at the direction of a Gangster Disciple leader at the Stateway Gardens, Plaintiff and Louis

Williams, both armed with guns, confronted Laferre Boyd. Plaintiff shot Boyd in the head as Boyd was running away. In his statements to police and an assistant state's attorney, Plaintiff makes no mention of Louis Williams' involvement, however, he does mention other individuals who were involved.

When Plaintiff was released from IDOC custody in late 1992, the Williams family allowed Plaintiff to live in an apartment above the J&J Fish. During this time, Anthony Williams, on occasion, would provide Plaintiff with narcotics to sell. Finally, the night before the Clayton/Frazier murders, Anthony approached Plaintiff and requested his assistance in luring two gang members outside of a party where they would then be murdered.

As can be seen, Plaintiff's protection of Louis Williams on the Boyd homicide earned him the trust of Louis' brother, Anthony Williams. It not only explains Plaintiff's relationship with Anthony, but also explains why Anthony "approached [Plaintiff], of all people, with his plan" to murder Clayton and Frazier. *Foster*, 652 F.3d at 785. This is a propensity-free purpose for offering evidence of the Boyd case.

### B. Plaintiff's Statements Regarding the Boyd Murder are Relevant to his Attempt to Manipulate and Intimidate Prosecution Witnesses.

In 1997, while his appeal was pending, Plaintiff spoke with and wrote letters to Cynthia Steward. Ms. Steward was the fiancé of Irving Clayton and a friend of Clifford Frazier. In a letter to Ms. Steward dated November 12, 1997, Plaintiff indicated that his appeal strategy was to attack her and Clifford's testimony. (*See* Plaintiff Letter dated November 12, 1997, at p. 3, attached hereto as Exhibit A) He claimed he did not want to attack her testimony, because the State would prosecute her for perjury. (*Id*. at 3-4) Instead, he wanted her to intimidate Clifford Frazier. (*Id*. at 2-3) Plaintiff asked Ms. Steward to set up a meeting with Clifford and members of Clayton's family. (*Id*.) Plaintiff instructed that Ms. Steward should lie to Clifford about the existence of a

4

surveillance videotape which contradicts his testimony. (*Id.*) Ms. Steward was then to threaten Clifford that Plaintiff's "people" said that Clifford had two days to go to Plaintiff's attorney's office and sign an affidavit telling the "truth." (*Id.* at 3)

To gain Ms. Steward's cooperation in his scheme to intimidate Clifford, Plaintiff attempted to convince her that he was innocent. Because Ms. Steward knew that he had killed before, Plaintiff explained the Boyd murder in a manner that he believed would persuade her that he could not have killed Clayton and Frazier. (*Id.* at 4) Ms. Steward had previously told Plaintiff that she believed Clayton and Frazier were killed because they refused to pay gang dues. Plaintiff falsely wrote that he shot Boyd because Boyd was demanding dues, and Plaintiff did not believe in paying dues. (*Id.*) Plaintiff hoped that this lie would convince Ms. Steward that he was also against paying dues, and that he would never kill Clayton and Frazier because of that. By offering this false explanation to support his lack of motive, Plaintiff made the true circumstances of the Boyd murder directly relevant to his involvement in the Clayton/Frazier murders.

This is because Plaintiff's attempt to manipulate and intimate Steward and Clifford is probative evidence of his guilt in the Clayton/Frazier murders. *See United States v. Mokol*, 646 F.3d 479, 483 (7th Cir. 2011) (stating it is a widely recognized principle that an individual's attempts to intimidate potential witnesses are probative of his consciousness of guilt). The inference of consciousness of guilt, in turn, raises an inference of actual guilt. *United States v. Harmon*, 721 F.3d 877, 884 (7th Cir. 2013). The Boyd killing was used by Plaintiff to try to convince Ms. Steward to relay a threat to Clifford. Plaintiff's ultimate goal was to intimidate Clifford so he would recant his testimony that Plaintiff shot him. Plaintiff's consciousness of guilt and actual guilt can be inferred from this attempt to manipulate and intimidate witnesses, of which his discussion of the false circumstances of the Boyd murder was an integral part.

### C. Plaintiff's Prior Conviction for Voluntary Manslaughter is Relevant to his Claim for Damages

Plaintiff's voluntary manslaughter conviction is relevant to the issue of damages. *Cobige v. City of Chicago*, 651 F.3d 780 (7th Cir. 2011). In *Cobige*, the plaintiff brought a section 1983 claim and state law claims against police officers and the city of Chicago seeking damages for the decedent's death in police lockup. The defendants sought to introduce evidence of the decedent's police record and evidence of drug addiction for purposes of attacking damages. The trial court, relying on Rules 404(b) and 609 excluded the evidence. *Id.* at 784. The defendants appealed arguing that the trial court erred in barring admission of the decedent's criminal record and evidence of drug use.

The Seventh Circuit reversed and remanded the case for a new trial on damages. The Seventh Circuit reasoned that the district court erroneously relied on Rules 404(b) and 609 as those rules had no bearing on whether the evidence was admissible for damages. *Id*. The court found that the decedent's police record and prior drug use were relevant to damages. *Id*. at 784-85. Regarding Rule 403, the Seventh Circuit found that the evidence did not unfairly prejudice the plaintiff because it bore directly on the appropriate amount of damages. *Id*. at 785.

Other courts have applied this principle to allow a plaintiff's criminal history into evidence to undermine the claim for damages. For instance, in *Graves v. City of Waterloo, Iowa*, No C10-2014, 2011 WL 556346 (N.D. Iowa, Nov. 15, 2011), the plaintiff filed a section 1983 claim against a police officer for fabricating evidence. The plaintiff filed a motion in limine to prevent the defendants from offering any evidence of the plaintiff's past criminal convictions, which included convictions from the 1970s, 1980s and 2000s. The district court found the convictions relevant to the issue of damages reasoning that the plaintiff was less likely to suffer extreme emotional distress from the reversed conviction since he had previously been convicted of other crimes. *Id*. at *5; *see*

*also Redmond v. City of Chicago*, No. 06 C 3611, 2008 U.S. Dist. LEXIS 14550, at *5-6 (N.D. Ill. Feb. 26, 2008) (denying motion *in limine* to bar prior and subsequent arrests as they were relevant to damages because "the trier of fact could conclude from such evidence that [plaintiff] would not have been as emotionally traumatized by [the arrest at issue]").

Similarly in this case, Plaintiff's prior conviction and time he spent in prison for that conviction is relevant to the issue of damages. Plaintiff pled guilty to voluntary manslaughter stemming from the shooting of Laferre Boyd and was sentenced to fifteen years imprisonment. Plaintiff will be asking the jury to award him millions of dollars in damages, making claims that his imprisonment for the Clayton/Frazier murders ruined his life, his relationships, and caused him severe emotional distress. Plaintiff's prior conviction relates to all of these types of damages. Importantly, the Seventh Circuit Civil Pattern Jury Instruction 7.26 (Compensatory Damages Instruction) allows a plaintiff to receive damages for "loss of a normal life." As such, Plaintiff's prior criminal conviction and time he spent in prison is relevant to undermine Plaintiff's claim of damages.

### D. Plaintiff's Criminal History Was Relevant to the Determination of Probable Cause for Plaintiff's Arrest and Prosecution.

Lack of probable cause is a necessary element of Plaintiff's Fourth Amendment and malicious prosecution claims. To prove a violation of the Fourth Amendment, Plaintiff must prove that he was detained without probable cause. *Manuel v. City of Joliet*, 2018 U.S. App. Lexis 25594 at *5 (Sept. 10, 2018). To prove malicious prosecution, Plaintiff must establish that probable cause to prosecute was lacking. *Swick*, 169 Ill. 2d at 512. Evidence of Plaintiff's criminal history is relevant to both determinations of probable cause.

"[I]nformation that defendant had committed a similar offense" is a relevant consideration in determining probable cause. *People v. Hendricks*, 253 Ill. App. 3d 79, 88-89 (1993); *see also*

7

*Hardiman v. Ford*, No. 92-1938, 1994 U.S. App. LEXIS 30076, at *11 (7th Cir. Oct. 25, 1994) ("a suspect's criminal history is a legitimate factor in a probable cause determination"). Probable cause exists where the facts and circumstances known to the arresting officer "would warrant a man of reasonable caution in the belief that an offense has been or is being committed." *United States v. Faison*, 195 F.3d 890, 893 (7th Cir. 1999). Because "a 'person of reasonable caution' would take into account predilections revealed by past crimes or convictions as part of the inquiry into probable cause," criminal history factors into the probable cause analysis. *United States v. Wagers*, 452 F.3d 534, 541 (6th Cir. 2006).

In developing probable cause to arrest Plaintiff, officers knew that the victims were at the J&J Fish to conduct a drug transaction with Anthony Williams. They also knew that Plaintiff was seen with Anthony in the J&J Fish shortly before the shootings. They were aware that Plaintiff had lived above the J&J Fish and matched the general description of the offender. Officers then discovered that the person who was with Anthony shortly before a two kilogram drug transaction occurred, who had lived above one of the crimes scenes, and whose physical characteristics matched the general description of the offender had a prior manslaughter conviction. This information was shared with assistant state's attorney Beligratis after Clifford positively identified Plaintiff in a lineup and ASA Beligratis approved first degree murder charges. As a result, Plaintiff's prior conviction is relevant factor to be considered by the jury in this case to determine whether there was probable cause to arrest and initiate a prosecution against him.

### E. Plaintiff's Prior Conviction Should be Admitted to Explain Why Plaintiff Did Not Testify at His Criminal Trial Despite Witnessing the Fight Outside the J&J Fish and Observing the Aftermath of the Shootings.

Plaintiff's current position is that he was inside the J&J Fish when the fight between Clifford and another individual, Rodrick Stewart, occurred outside the J&J Fish. Plaintiff also

8

claims he stayed inside the J&J Fish and overheard alleged inculpatory statements made by Anthony and Clifford that implicated them in the murders. Despite knowing that Rodrick Stewart, Anthony, and Clifford were all involved, Plaintiff chose not to testify. Curiously, the two witnesses who were inside the J&J Fish that Plaintiff presented to his criminal jury, Edna Williams and Tenesha Gatson, did not see Rodrick Stewart outside the J&J Fish fighting with Clifford and did not hear the alleged inculpatory statements made by Anthony and Clifford. Thus, by choosing not testify, Plaintiff chose not to present to the criminal jury two other alternative suspects, Rodrick Stewart and Clifford.

Plaintiff claims he did not testify at his criminal trial because of threats made by Rodrick Stewart against him and his family. However, prior to the criminal trial, the trial court granted the State's motion to introduce Plaintiff's prior felony conviction for impeachment purposes if Plaintiff chose to testify. Thus, had Plaintiff testified, he could have told the jury his story, but his story would have been inconsistent with Edna and Gatson's testimony and he would have been impeached with his prior felony conviction. On the advice of his counsel, Plaintiff chose to remain silent. Accordingly, Plaintiff's prior conviction should be admissible as it rebuts Plaintiff's claim that despite knowing who the "real" offenders were, he chose not to testify because of threats made by Rodrick Stewart.

## II. The Probative Value of the Prior Conviction is Not Substantially Outweighed by Alleged Unfair Prejudice.

Plaintiff's conviction for voluntary manslaughter and the facts surrounding the Boyd homicide are necessary to a full understanding of the circumstances of the Clayton/Frazier murders, Plaintiff's trial and conviction, and alleged damages. Specifically, this prior conviction is probative of Plaintiff's relationship with Anthony Williams, Plaintiff's consciousness of guilt as demonstrated by his attempt to manipulate and intimidate witnesses, damages, the existence of

9

probable cause for Plaintiff's arrest and prosecution, and why Plaintiff did not testify on his own behalf. The probative value of this evidence in serving the above purposes is not outweighed by concerns of unfair prejudice. To the contrary, excluding this evidence would "[leave] the jury with an unduly sanitized and incomplete version of the facts." *Wilson v. Groaning*, 25 F.3d 581, 584 (7th Cir. 1994).

"Rule 403 was never intended to exclude relevant evidence simply because it is detrimental to one party's case; rather, the relevant inquiry is whether any *unfair prejudice* from the evidence substantially outweighs its probative value." *Cook v. Hoppin*, 783 F.2d 684, 689 (7th Cir. 1986) (emphasis original) (internal quotation omitted). While other acts evidence typically carries some risk of prejudice through a propensity inference, not all such evidence is excludable on this basis. *United States v. Chapman*, 692 F.3d 822, 827 (7th Cir. 2012). Rule 403 requires a showing that the risk of prejudice substantially outweighs the probative value of the evidence. Fed. R. Evid. 403. "[T]he more probative the evidence, the more the court will tolerate some risk of prejudice, while less probative evidence will be received only if the risk of prejudice is more remote." *United States v. Vargas*, 552 F.3d 550, 557 (7th Cir. 2008).

In this case, the probative value of the Boyd homicide on issues of liability and damages far exceeds that addressed in the cases cited by Plaintiff in the present motion. *See Fermazin v. Menard, Inc.*, No. 15 C 7272, 2017 U.S. Dist. LEXIS 49554, at *12 (N.D. Ill. Mar. 31, 2017) (probative value limited to the minimal presumption that a convicted felon is less likely to testify truthfully); *Barber v. City of Chicago*, 725 F.3d 702, 714 (7th Cir. 2013) (subsequent conviction had "miniscule probative value" on the issue of damages where plaintiff's emotional distress claim was limited to during and shortly after the incident); *Nelson v. City of Chicago*, 810 F.3d 1061, 1069 (7th Cir. 2016) (same).

The violent nature of the crime and its alleged similarity to the Clayton/Frazier murders do not make the Boyd homicide unfairly prejudicial. A homicide is not, by its nature, *unfairly* prejudicial. *United States v. York*, 933 F.2d 1343, 1353 (7th Cir. 1991). Rather, "unfairness derives from attempts to exploit the gruesome and unnecessary details of a murder," which Defendant Officers have no intention of doing. *Id*. Likewise, unfair prejudice does not arise from similarity between the extrinsic crime and the crime at issue. To the contrary the risk of prejudice is greater "where the nature of the extrinsic evidence [is] qualitatively different than that of the [crime at issue]." *Id. at* 1353-54 (risk of unfair prejudice was minimal where evidence of prior murder "paled in contrast to the [detailed] evidence presented regarding the [murder at issue]").

The probative value of the Boyd homicide is not to impeach Plaintiff's veracity, thus the cases cited by Plaintiff are irrelevant. In *Coles v. City of Chicago*, the court found that an armed robbery conviction had limited probative value where the sole purpose was to show "felons are less likely to testify truthfully." No. 02 C 9246, 2005 U.S. Dist. LEXIS 14950, at *6, *9 (N.D. Ill. July 22, 2005). In *United States v. Shapiro*, the court held that admitting prior convictions to impeach veracity did not satisfy Rule 609(b), which permitted admission only in "exceptional circumstances." 565 F.2d 479, 481 (7th Cir. 1977). And in *United States v. Puco*, the court held that a narcotics conviction had little bearing on the veracity of a witness. 453 F.2d 539, 543 (2d Cir. 1971).

The majority of cases cited by Plaintiff address the probative value of a conviction to impeach credibility in a prisoner civil rights case, where the need for such evidence is significantly less because the plaintiff's current incarceration already provides sufficient fodder for impeachment. *See Reed-Bey v. Pramstaller*, No. 06-10934, 2013 U.S. Dist. LEXIS 159465, at 9 (E.D. Mich. Nov. 7, 2013) (probative value of state prisoner's murder conviction was low, because

11

"[v]iolent crimes generally do not reflect directly on the witness's propensity for truthfulness); *Boyd v. Louisiana*, No. 03-1249-P, 2008 U.S. Dist. LEXIS 27388, at 7 (W.D. La. Apr. 4, 2008) (conviction for violent crime had little probative value in attacking credibility of a Section 1983 plaintiff where the jury will be aware that he is currently incarcerated); *Livingston v. Lee*, No. 9:04-cv-00607-JKS, 2007 U.S. Dist. LEXIS 79578, at *3 (N.D.N.Y. Oct. 26, 2007) ("probative value [of murder conviction] on credibility [of prisoner] ranks low on the scale"); *Tabron v. Grace*, 898 F. Supp. 293, 296 (M.D. Pa. 1995) (probative value of murder conviction low because the "mere fact of incarceration in a state correctional institution . . . is a significant tool for undermining the credibility of an inmate witness"); *Espinosa v. McCabe*, No. 9:10-cv-497, 2014 U.S. Dist. LEXIS 31741, at *17 (N.D.N.Y. Mar. 12, 2014) (other acts minimally probative because "[t]he fact that the Plaintiff is a convicted felon, and that the circumstances underlying the instant matter arose while he was incarcerated, are sufficient to impeach his credibility.").

In this case, unlike *Cole* and the others cited by Plaintiff, the probative value of Plaintiff's prior crime does not lie in the fact that he was convicted, nor is it based on the proposition that a convicted felon is less likely to be truthful. Plaintiff's prior crime and his conviction serve other purposes directly relevant to the issues of liability and damages. As addressed above, the Boyd homicide is relevant to show Plaintiff's relationship with Anthony Williams, Plaintiff's consciousness of guilt through his attempts to manipulate and intimidate witnesses, damages, the existence of probable cause to arrest and prosecute Plaintiff, and to explain why Plaintiff did not testify on his own behalf.

The risk of an inference of propensity is not only tolerable in light of the high probative value of this evidence, but any unfair prejudice can be reduced or eliminated with a limiting instruction. *United States v. Vargas*, 552 F.3d 550, 557 (7th Cir. 2008) (any prejudice was

eliminated because jury "was explicitly told how to consider the evidence."). A jury instruction which states "in plain language the specific purpose for which the evidence is offered and that [the jury] should not draw any conclusions about the defendant's character or infer that on a particular occasion the defendant acted in accordance with a character trait" serves this purpose. *United States v. Gomez*, 763 F.3d 845, 860-61 (7th Cir. 2014); *see also* United *States v. Grissom*, 760 F. App'x 448, 452 (7th Cir. 2019) (court did not abuse discretion in admitting evidence of prior crimes where jury was instructed "that it could only consider this evidence to help decide identity and 'the relationship of the parties'"). A limiting instruction will prevent any unfairness, by advising the jury on the proper use of this evidence. The only prejudice would be that which is inherent in the admission of any relevant, probative evidence, and that is not unfair. *York*, 933 F.2d at 1353 (prejudice "is the natural by-product of the act" of murder and not unfair).

### III. The Circumstances of and Plaintiff's Voluntary Manslaughter Conviction Should Be Admitted if Plaintiff Offers Evidence that He Faced the Death Penalty.

If Plaintiff seeks damages for facing the death penalty or offers any evidence that he faced the death penalty for the Clayton/Frazier murders, the Defendant Officers should be allowed to offer evidence regarding Plaintiff's involvement in the Boyd murder. Approximately three months before the Plaintiff's trial for the Frazier/Clayton murders, the Cook County State's Attorney's Office advised that it would seek the death penalty. The decision to seek the death penalty was based on both statutory eligibility and aggravating factors. (*See* Death Penalty Memo, attached hereto as Exhibit B.) Plaintiff's involvement in the Boyd homicide and his resulting voluntary manslaughter conviction, as well as the fact that the Clayton/Frazier homicides occurred a mere fourteen months after Plaintiff's release from IDOC custody, were the aggravating factors relied upon in seeking the death penalty. (*Id.*) At Plaintiff's sentencing hearing the State argued the death penalty was warranted because Plaintiff shot Boyd in the back of the head while Boyd was running

13

away. If Plaintiff wishes to present evidence that he faced the death penalty, then the Defendant Officers should be permitted to present evidence regarding Plaintiff's involvement in the Boyd homicide as it was the aggravating factor in the State's decision to seek the ultimate punishment.

Wherefore, Defendant Officers respectfully requests that this Court deny Plaintiff's Motion in Limine No. 1 in its entirety, and allow Defendant Officers to present evidence of the Boyd homicide, as well as Plaintiff's resulting conviction and incarceration, as probative of issues of liability and damages, as addressed above. Alternatively, Defendant Officers request that this Court deny Plaintiff's Motion in Limine No. 1 and admit evidence of the Boyd homicide and Plaintiff's resulting conviction, if Plaintiff seeks damages for facing the death penalty or presents evidence regarding the death penalty.

Respectfully submitted,

/s/ *Brian J. Stefanich*
One of the Attorneys for Defendants Oliver, Pesavento, and Siwek

Andrew M. Hale
Barrett Boudreaux
Brian J. Stefanich
Jennifer Bitoy
HALE & MONICO, LLC
53 W. Jackson, Suite 330
Chicago, IL 60604
312-341-9646

**CERTIFICATE OF SERVICE**

     I, Brian J. Stefanich, an attorney, hereby certify that I caused a copy of the foregoing Defendant Officers' Response to Plaintiff's Motion in Limine No. 1 to Bar Reference to Plaintiff's Prior Criminal History to be filed and served on all counsel of record via the Court's CM/ECF filing system.


                                                     /s/ Brian J. Stefanich