**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| EDDIE L. BOLDEN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17 C 00417 |
| | ) | |
| vs. | ) | Honorable Manish S. Shah |
| | ) | |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF HIS MOTION IN LIMINE NO. 1
TO BAR REFERENCES TO PRIOR CRIMINAL HISTORY**

Plaintiff Eddie L. Bolden, by his undersigned counsel and pursuant to Federal Rules of Evidence 402, 403, and 404,[1] respectfully submits this reply in support of his Motion seeking an Order *in limine* barring Defendants from moving into evidence, questioning witnesses, or arguing to the jury any references to Mr. Bolden's 1985 conviction for involuntary manslaughter.

**I.      Mr. Bolden's prior conviction is not relevant to liability or damages.**

Defendants attempt to construct a theory connecting Mr. Bolden's 35-year-old conviction to the events at issue in this civil lawsuit.  Their strained logic lacks support in both the record and the law.  Mr. Bolden's criminal history is irrelevant to any fact of consequence in determining either liability or damages, and thus, it is inadmissible.

**A. The 1985 conviction has no bearing on Defendants' probable cause
determination.**

Defendants contend that Mr. Bolden's criminal history is relevant to his Fourth Amendment and malicious prosecution claims because, in their view, a reasonable person would

---

[1] Defendants confirmed that they will not seek to admit Mr. Bolden's prior conviction pursuant to Rule 609 (Dkt. 278 at 1), so Mr. Bolden has limited his reply to Defendants' arguments related to Rules 402, 403, and 404.

1

take prior convictions into account when assessing probable cause. *See* Defs. Br. at 8 (quoting *United States v. Wagers*, 452 F.3d 534, 541 (6th Cir. 2006)). However, in this case, there is no evidence in the record to suggest that any of the Defendants knew about or considered Mr. Bolden's prior conviction in deciding to arrest and initiate the prosecution against him.

It is both well-established and undisputed that probable cause exists where "the facts and circumstances within [the arresting officer's] knowledge . . . [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *United States v. Faison*, 195 F.3d 890, 893 (7th Cir. 1999). This evaluation turns on whether the officer had "actual knowledge of facts sufficient to support probable cause." *Richardson v. Bonds*, 860 F.2d 1427, 1430-31 (7th Cir. 1988); *see also Beiles v. City of Chicago*, 987 F. Supp. 2d 830, 835 (N.D. Ill. 2013) ("The existence of probable cause turns on the information known to the officer at the moment the arrest is made, not on subsequently received information."); *Harris v. Clark*, No. 06-C-529, 2009 WL 1683233, at *1 (E.D. Wis. June 19, 2009) (excluding evidence of prior conviction where "defendants do not argue that Clark knew about plaintiffs' [sic] prior convictions at the time of his arrest").

Defendants assert in their opposition that they considered Mr. Bolden's criminal history in "developing probable cause to arrest" him. This assertion is contradicted by the record. During Defendant Pesavento's deposition he was asked to identify all information that he relied upon in making the decision to arrest Mr. Bolden. In answering this question, Detective Pesavento never mentioned Mr. Bolden's prior conviction. *See* Excerpts from Jan. 9, 2018 Deposition of Angelo Pesavento, attached hereto as Exhibit 1, at 24:22-27:6. The documentary evidence further supports that Defendants did not consider Mr. Bolden's criminal history in deciding to arrest him. CPD policy requires that all investigative documents must be included in the investigative file. *See*

Special Order No. 86-3, attached hereto as Exhibit 2, at 2. While the investigative file includes a criminal history for one of the victims, it does not include Mr. Bolden's criminal history—thus confirming that it was not a factor in his arrest.

Defendant Pesavento also testified before the grand jury that he "acquired [his] information in this matter" by interviewing Clifford Frazier. *See* Mar. 23, 1994 Grand Jury Testimony of Phil Pesavento, attached hereto as Exhibit 3, at 6:18-21. Likewise, ASA Beligratis testified that he approved first-degree murder charges against Mr. Bolden based on his review of the police reports and interviews with Clifford Frazier and Mr. Bolden. *See* Excerpts from May 21, 2018 Deposition of James Beligratis, attached hereto as Exhibit 4, at 30:8-34:11. None of the police reports prepared as of that date reference Mr. Bolden's criminal history, nor does ASA Beligratis' summary of his interviews with Mr. Bolden and Clifford Frazier.[2]

Defendants identify no basis from which a jury could conclude that Mr. Bolden's criminal history influenced their decision to arrest and pursue charges against him. The 1985 conviction, therefore, is irrelevant to the Mr. Bolden's Fourth Amendment and malicious prosecution claims.

### B. Mr. Bolden's prior conviction does not establish a "criminal relationship" with Anthony Williams.

Defendants contend that they seek to admit evidence of Mr. Bolden's prior conviction to explain why Anthony Williams might have solicited his help in planning a hit against Ledell Clayton and Derrick Frazier. Defendants' theory, however, is based entirely on attenuated speculation, untethered to any actual evidence. This is insufficient to justify admission under Rule 404(b). *See United States v. Algood*, 19 F. App'x 419, 426 (7th Cir. 2001) (prior bad acts evidence not admissible under Rule 404(b) exceptions where "link" is "entirely speculative"); *Barlow v.*

---

[2] The felony review form dated February 26, 1994 includes a handwritten note: "(Δ on parole for manslaughter)." ASA Beligratis testified that he did not write that note. *See id.* at 66:14-68:8.

*Riley*, No. 12-2058, 2013 WL 2295447, at *4 (C.D. Ill. May 24, 2013) (evidence of prior crimes not admissible where it is "marginally relevant, at best, and grounded in nothing more than speculation").

Specifically, Defendants assert that Anthony Williams' brother, Louis Williams, participated with Mr. Bolden in the 1985 homicide and that this somehow reflects on Mr. Bolden's relationship with Anthony Williams. (Dkt. 278 at 3-4.) The next speculative leap they make is that Mr. Bolden's protection of Louis Williams must have been the reason Anthony Williams gave Mr. Bolden a place to live and narcotics to sell when he was released from prison. There is no support in the record for this conclusion, and Defendants ignore the more obvious explanation that, as they acknowledge, Mr. Bolden and Anthony Williams were childhood friends who grew up together. (*Id.* at 3.) Finally, they speculate that Anthony Williams trusted Mr. Bolden as a result of him protecting Louis Williams. (*Id.* at 4.) Again, there is nothing in the record to support this. Defendants' speculative and attenuated theory is merely a thinly veiled attempt to admit highly prejudicial propensity evidence.

### C. Mr. Bolden's letter to Cynthia Steward does not suggest consciousness of guilt.

Defendants' argument regarding the admissibility of Mr. Bolden's communications with Cynthia Steward about his prior conviction is similarly based on a convoluted and unsupported theory. Mr. Bolden wrote a letter to Ms. Steward, briefly referencing his prior conviction, in which he solicited her help to persuade Clifford Frazier to "tell the truth" about who was responsible for the Clayton/Frazier homicides. (*See* Dkt. 278-1 at 3-4.) Defendants characterize this letter as an attempt to intimidate or manipulate both Ms. Steward and Clifford Frazier, and therefore admissible (including its reference to the 1985 conviction) as evidence of "consciousness of guilt." (*See* Dkt. 278 at 5.)

4

But Defendants fail to recognize that the letter itself entirely debunks this theory. Mr. Bolden asked Ms. Steward to arrange a meeting with Clifford Frazier, referred to in the letter as "Fat Boy." (*See* Dkt. 278-1 at 2.) He asked her to tell Clifford Frazier that she had seen a surveillance video from J & J Fish, and it supported Mr. Bolden's description of the events of the night of the shooting—namely, that he was inside the restaurant at the time of the shooting and when Clifford Frazier entered (for the first time) after the shooting. (*Id.* at 2-3.) He further asked her to tell Clifford Frazier that if he did not contact Mr. Bolden's attorney within two days to "tell the truth," Mr. Bolden would arrange to release the videotape to "all news stations." (*Id.* at 3.)

As for Ms. Steward, Mr. Bolden wrote that his attorney was planning to challenge the veracity of her testimony, but Mr. Bolden asked him to "hold on" because while Mr. Bolden "[didn't] know if what [Ms. Steward] said at court was all true or not . . . it had nothing to do with" him. (*Id.* at 3-4.) At no point did Mr. Bolden suggest that Ms. Steward should change her testimony, nor did he express any animosity toward her.

In short, not once did Mr. Bolden threaten either Clifford Frazier or Ms. Steward. Far from suggesting "consciousness of guilt," Mr. Bolden's efforts support the exact opposite inference: Mr. Bolden wanted Clifford Frazier to believe there was a video of the events in question because he wanted Mr. Frazier to tell the truth, and the truth would be reflected on a video. Furthermore, Mr. Bolden's passing reference to his prior conviction in his letter to Ms. Steward has absolutely no bearing on these issues. Defendants offer nothing more than speculation regarding the reason Mr. Bolden referenced Boyd demanding dues in his letter. It does not show consciousness of Mr. Bolden's guilt related to the murders of Derrick Frazier and Ledell Clayton.

### D.  Mr. Bolden's reasons for not testifying at his criminal trial are irrelevant.

Mr. Bolden's reasons for not testifying at his criminal trial are irrelevant for purposes of determining liability or damages in this case, and thus, are inadmissible.  Accordingly, there is no reason that the testimony about Roderick Stewart that Defendants seek to rebut would be introduced.

### E.  Mr. Bolden's 1985 conviction is not relevant to his damages based on this wrongful conviction.

Defendants contend that they should be permitted to introduce evidence of Mr. Bolden's prior conviction if he testifies that he suffered heightened emotional distress due to the State's decision to seek the death penalty for the Clayton/Frazier homicides.  This argument is moot.  Mr. Bolden does not intend to ask the jury to consider his eligibility for the death penalty in evaluating his damages.

Defendants also contend that, regardless of the death penalty issue, Mr. Bolden's prior conviction is relevant to his emotional distress damages based on his wrongful conviction.  The authorities Defendants cite for this position are inapposite—in fact, none of them even involve wrongful conviction claims.  For example, in *Cobige v. City of Chicago*, 651 F.3d 780 (7th Cir. 2011), the plaintiff's mother died of a heart arrythmia while in police custody, and plaintiff sued for wrongful death, seeking damages for (among other things) loss of companionship.  At trial, plaintiff testified that his mother was "a friend as well as a parent, a bulwark of support and a role model throughout his life."  *Id.* at 784.  The City sought to introduce evidence that plaintiff's mother was a heroin addict who served multiple extended prison sentences.  *Id.*

The Seventh Circuit held that the district court erred in excluding this evidence because it was relevant to understand the nature of plaintiff's relationship with his mother, including "just what kind of 'role model' she could have been" and, by extension, "how much loss Cobige's estate

6

and son suffered by her death." *Id.* In other words, her criminal history became relevant when plaintiff sought damages based on her character and the closeness (or lack thereof) of their relationship during the years she was in and out of prison. The Seventh Circuit did not address whether a prior conviction has any bearing on the emotional distress suffered as the result of a wrongful one; that question was not at issue in this case.

Likewise, in *Graves v. City of Waterloo*, No. C10-2014, 2011 WL 5563546 (N.D. Iowa, Nov. 15, 2011), the plaintiff claimed he was arrested and wrongfully prosecuted on a drug charge based on fabricated evidence. He claimed he suffered emotional distress due to the damage to his reputation and developed alcoholism as a result. *Id.* at *1. The defendants sought to admit evidence of plaintiff's prior convictions for murder and drunk driving, arguing that (1) "any shame stemming from being accused of possession and selling marijuana, could not conceivably tarnish his reputation any further than his prior murder conviction," and (2) the prior drunk driving convictions suggested that plaintiff's alcohol problems predated his wrongful arrest and therefore were not caused by it. *Id.* at *2. The district court agreed. *Id.* Again, the plaintiff in *Graves* did not seek damages based on a wrongful conviction and imprisonment. Rather, his criminal history became relevant due to the specific types of injury (reputational harm and alcoholism) that he claimed he suffered.

Finally, in *Redmond v. City of Chicago*, No. 06 C 3611, 2008 WL 539164 (N.D. Ill. Feb. 26, 2008), the plaintiff claimed he was arrested without probable cause and charged with "drinking on a public way." The charges were later dismissed. *Id.* at *1. At trial, he sought to exclude evidence of other arrests before and after the incident at issue. The district court concluded this evidence was relevant because a jury could conclude that plaintiff's familiarity with the "arrest process" mitigated the fear and uncertainty he might otherwise have experienced. *Id.* at *2. The

court further found that evidence of subsequent arrests was relevant to plaintiff's damages because he contended that he "continued to suffer" emotional distress. *Id.* Mr. Bolden does not seek damages because he was traumatized by the experience of being arrested; he seeks compensation for the 22 years of his life that was stolen from him when he was wrongfully convicted.

None of the cases cited by Defendants stands for the proposition that an individual's prior and unrelated conviction and imprisonment somehow mitigates the trauma and emotional anguish of being wrongfully imprisoned for a crime he did not commit. *See Betts v. City of Chicago*, 784 F. Supp. 2d 1020, 1025 (N.D. Ill. 2011) ("Indeed, this court is not aware of, and the defendants do not point to, any evidence that supports the proposition that a person who has been *wrongfully* arrested is less traumatized by the experience simply because s/he has been *lawfully* arrested before"). In fact, the district court in *Betts* confronted this issue head on, noting the utter lack of empirical evidence to support this argument. *Id.* Further, as the Seventh Circuit has recognized, admitting evidence of a prior conviction "on this theory of relevance . . . would seemingly permit any civil-rights plaintiff's criminal history to come in on the issue of emotional-distress damages." *Nelson v. City of Chicago*, 810 F.3d 1061, 1068-69 (7th Cir. 2016) ("This, of course, would be contrary to our prior statements instructing courts to proceed carefully when deciding to admit evidence of a § 1983 plaintiff's criminal past.").

## II.    Evidence of Mr. Bolden's criminal history is substantially more prejudicial than probative.

As Mr. Bolden explained in his Motion (Dkt. 277 at 4-6), even if his prior conviction was remotely relevant to questions of liability or damage in this civil suit, its admission would unfairly prejudice Mr. Bolden by inducing the jury to decide the case on an improper basis. *See United States v. Vretta*, 790 F.2d 651, 655 (7th Cir. 1986); Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair

8

prejudice, confusing the issues, [or] misleading the jury"). In response, Defendants fail to directly engage with this issue, instead arguing that not all prejudicial evidence is "*unfairly* prejudicial."

The only case Defendants cite for this position does not support the admission of Mr. Bolden's prior conviction. In *United States v. York*, 933 F.2d 1343 (7th Cir. 1991), the court allowed the introduction of the defendant's prior murder conviction—for killing his wife, to collect her life insurance proceeds—at his trial for a second murder—for killing his business partner, to collect her life insurance proceeds. The court concluded that these similarities made evidence of the prior conviction "highly relevant to York's intent" to engage in a *nearly identical* criminal scheme to defraud another insurance company. *Id.* at 1351. The court therefore held that the significant probative value of this evidence was not outweighed by its potential for unfair prejudice, so long as the State did not attempt to "exploit the 'gruesome and unnecessary details'" of the first crime. *Id.* at 1353.

As discussed above, Mr. Bolden's 1985 conviction has minimal, if any, probative value to the facts at issue in this case. It was not relevant to Defendants' probable cause assessment; it does not establish a "criminal relationship" between Mr. Bolden and Anthony Williams; it does not suggest "consciousness of guilt;" and it is not relevant to Mr. Bolden's damages for the emotional distress he suffered as a result of his wrongful conviction and imprisonment. On the other hand, the risk of unfair prejudice would be substantial. *See, e.g.*, *United States v. Gomez*, 763 F.3d 845, 857 (7th Cir. 2014) ("Other-act evidence raises special concerns about unfair prejudice because it almost always carries some risk that the jury will draw the forbidden propensity inference."); *Barber v. City of Chicago*, 725 F.3d 702, 714 (7th Cir. 2013) ("Presenting a § 1983 plaintiff's criminal history to the jury presents a substantial risk that the jury will render a defense verdict

9

based not on the evidence but on emotions or other improper motives, such as a belief that bad people should not be permitted to recover from honorable police officers.").

This risk is particularly acute given the similarities between Mr. Bolden's prior conviction and the wrongful conviction at issue in this case—*i.e.*, both involved shooting deaths. *See United States v. Shapiro*, 565 F.2d 479, 481 (7th Cir. 1977) ("When the prior conviction and the charged act are of a similar nature, the danger increases. The jury is more likely to misuse the evidence for purposes other than impeachment, that is, to regard the prior convictions as evidence of a propensity to commit crime or of guilt, despite instructions to the contrary."); *United States v. Harding*, 525 F.2d 84 (7th Cir. 1975) ("[I]n view of the similarity between the prior offense and the present charge, the risk of unfair prejudice was especially strong."); *Bruce v. City of Chicago*, 2011 WL 3471074, at *10-11 (N.D. Ill. July 29, 2011). Unlike in *York*, where the similarities between the two homicides were relevant to illustrate York's intent to defraud the life insurance company, Defendants have identified no such probative value here. Nor can the substantial prejudice caused by this evidence be cured by a limiting instruction. *See Shapiro*, 565 F.2d at 481; *United States v. Jones*, 455 F.3d 800, 811 (7th Cir. 2006) (Easterbrook, J., concurring) ("Telling juries not to infer from the defendant's criminal record that someone who violated the law once is likely to do so again is like telling jurors to ignore the pink rhinoceros that just sauntered into the courtroom.").

## CONCLUSION

For the foregoing reasons, Plaintiff Eddie L. Bolden respectfully asks this Court to enter an Order *in limine* prohibiting evidence and/or argument related to Mr. Bolden's prior criminal history.

Dated: September 17, 2019

Respectfully Submitted,

/s/ Valarie Hays
Ronald S. Safer
Valarie Hays
Eli J. Litoff
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison Street, Suite 2900
Chicago, Illinois 60602
(312) 471-8700
rsafer@rshc-law.com
vhays@rshc-law.com
elitoff@rshc-law.com

Sandra L. Musumeci (*pro hac vice*)
RILEY SAFER HOLMES & CANCILA LLP
1330 Avenue of the Americas, 6th Floor
New York, New York 10019
(212) 660-1000
smusumeci@rshc-law.com

*Attorneys for Eddie L. Bolden*

## CERTIFICATE OF SERVICE

I hereby certify that on September 17, 2019, I caused the foregoing document to be electronically filed using the CM/ECF system, which will send notice of this filing to all counsel of record.

*/s/ Valarie Hays*
Valarie Hays