# EXHIBIT B

Case: 1:17-cv-00417 Document #: 297-2 Filed: 10/09/19 Page 2 of 6 PageID #:8550

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

EDDIE L. BOLDEN,            )
                            )
        Plaintiff,          )
                            )
   vs.                      )  No. 17-cv-00417
                            )
CITY OF CHICAGO, et al.,    )
                            )
        Defendants.         )


THIS DEPOSITION CONTAINS CONFIDENTIAL MATERIAL

      The discovery deposition of
ANGELO PESAVENTO, taken in the above-entitled cause, before SUSAN HASELKAMP, Certified Shorthand Reporter for the State of Illinois, on January 9, 2018, beginning at the hour of 9:00 a.m. and ending at the hour of 4:26 p.m., at 70 West Madison Street, Suite 2900, Chicago, Illinois, pursuant to notice.

Reported by: Susan Haselkamp, CSR

License No.: 084-004022

## Page 2

```
 1        APPEARANCES:
 2
          RILEY SAFER HOLMES & CONCILA, LLP, by
 3           MS. VALERIE HAYS,
             MR. ELI J. LITOFF,
 4           MS. VALERIE BRUMMEL,
             70 West Madison Street
 5           Suite 2900
             Chicago, Illinois  60602
 6           (312) 471-8700
             vhays@rshc-law.com
 7           elitoff@rshc-law.com
             vbrummel@rshc-law.com
 8
                Representing the Plaintiff;
 9
          GREENBERG TRAURIG, P.C., by
10           MR. ELAN SHPIGEL,
             77 West Wacker Drive
11           Suite 3100
             Chicago, Illinois  60601
12           (312) 456-8400
             shpigele@gtlaw.com
13
                Representing the Defendant,
14              City of Chicago;
15
          HALE LAW, LLC, by
16           MS. BARRETT ELIZABETH BOUDREAUX,
             MR. ALEXANDER TAPLING,
17           MS. CELESTE S. STACK,
             53 West Jackson Boulevard
18           Suite 330
             Chicago, Illinois  60654
19           (312) 341-9646
             bboudreaux@ahalelaw.com
20           atapling@ahalelaw.com
21              Representing the Defendants,
                Michael Baker, Joseph Barnes,
22              James Oliver, Angelo Pesavento,
                Michael Rowan, Edward Siwek
23              and Barbara Temple;
24
```

## Page 3

```
 1        APPEARANCES CONTINUED:
 2
          LEINENWEBER BARONI & DAFFADA LLC, by
 3           MR. THOMAS MORE LEINENWEBER,
             120 North LaSalle Street
 4           Suite 2000
             Chicago, Illinois  60602
 5           (312) 786-3705
             thomas@ilesq.com
 6
                Representing the Defendant,
 7              Edward Hicks;
 8
          LAW OFFICES OF GEORGE E. BECKER, by
 9           MR. GEORGE E. BECKER,
             33 North LaSalle Street
10           Suite 3300
             Chicago, Illinois  60602
11           (312) 236-2803
             george_becker@sbcglobal.net
12
                Representing the Defendant,
13              Michael Kill;
14
          RAVITZ & PALLES, P.C., by
15           MR. GARY RAVITZ,
             203 North LaSalle Street
16           Suite 2100
             Chicago, Illinois  60601
17           (312) 558-1689
             gravitz@ravitzpalles.com
18
                Representing the Defendant,
19              Barbara Temple.
20
21
22
23
24
```

## Page 4

```
 1                  I N D E X
 2   WITNESS                     EXAMINATION
 3   ANGELO PESAVENTO,
 4       By Ms. Hays...........................5
         By Mr. Ravitz......................250
 5       By Ms. Hays........................270
         By Ms. Boudreaux...................271
 6       By Ms. Hays........................281
 7
                   E X H I B I T S
 8
 9   NUMBER              MARKED FOR ID
10   Pesavento Deposition Exhibit
11       No.  1...........................16
         No.  2...........................19
12       No.  3...........................29
         No.  4...........................33
13       No.  5...........................42
         No.  6...........................45
14       No.  7...........................54
         No.  8...........................57
15       No.  9...........................69
         No. 10...........................76
16       No. 11...........................83
         No. 12...........................87
17       No. 13...........................90
         No. 14...........................93
18       No. 15..........................105
         No. 16..........................112
19       No. 17..........................127
         No. 18..........................150
20       No. 19..........................150
         No. 20..........................235
21       No. 21..........................247
22             CONFIDENTIAL PAGES
23       Pages 230 to Page 241
         Pages 242 to Page 245
24
```

## Page 5

```
 1              (Whereupon, the witness was duly
 2                sworn.)
 3           ANGELO PESAVENTO,
 4   having been first duly sworn, was examined and
 5   testified as follows:
 6                   EXAMINATION
 7   BY MS. HAYS:
 8       Q.  Good morning.  Could you please state
 9   and spell your last name for the record.
10       A.  My name is Angelo Pesavento.  The last
11   name is spelled, P-E-S-A-V, as in Victor,
12   E-N-T-O.
13       Q.  How old are you, Mr. Pesavento?
14       A.  77.
15       Q.  Are you currently taking any
16   medications that would interfere with your
17   ability to give truthful answers to my questions
18   today?
19       A.  No.
20       Q.  If at any point during this deposition,
21   you need a break, please let me know and we'll
22   take one.
23       A.  I will.  Thank you.
24       Q.  And if you don't understand any of my
```

Page 26

1  in the reports in the file?
2       MS. BOUDREAUX: I'm going to object to
3  foundation, calling for speculation.
4       You can answer.
5       THE WITNESS: I assume so, yes.
6  BY MS. HAYS:
7     Q. So you mentioned the lineup, the
8  assistance from gang crimes and you also
9  mentioned interviews with other witnesses and
10 people. What other witness statements or
11 people -- people's statements did you rely upon
12 other than Clifford Frazier's when making the
13 decision to arrest Mr. Bolden, if anyone?
14    A. The interviews we had with the people
15 that were at the scene.
16    Q. Any other evidence that we've not
17 already discussed?
18    A. I guess the physical evidence, shell
19 casings.
20    Q. And how did the shell casings assist
21 you in your determination to arrest Eddie
22 Bolden?
23    A. All the shell casings recovered were
24 fired from the same gun.

Page 27

1     Q. And how was that linked to Mr. Bolden?
2     A. It's linked to him through the
3  identification that Clifford Frazier made.
4     Q. Any other links besides Clifford
5  Frazier's ID?
6     A. No, I don't think so.
7     Q. At the time you arrested Mr. Bolden,
8  did you have any evidence to suggest that he
9  might not have committed the crimes?
10    A. That suggested?
11    Q. Yes.
12    A. No.
13    Q. If your investigation had revealed
14 leads to potentially exculpatory evidence for
15 Mr. Bolden, were you required by CPD policies at
16 that time to pursue those leads?
17    A. To a certain extent, yes.
18    Q. What do you mean to a certain extent?
19    A. It's hard to break down specifically.
20 I know there was one girl, a witness there at
21 the time of the shooting at the J&J Fish. She
22 said that he was there the whole time, which
23 wasn't specific as far as when he was there and
24 then, you know, when he wasn't there.

Page 28

1     Q. She said he was there for the whole
2  time through Clifford Frazier coming into the
3  restaurant?
4     A. I'd have to look at the report.
5     Q. Would that be an important question to
6  ask her during the interview?
7     A. To ask her?
8     Q. Yes.
9     A. I don't know. I think you would
10 determine that.
11    Q. I'm asking you as the investigator on
12 this case if you had an eyewitness who told you
13 that Mr. Bolden was at J&J Fish all the time,
14 did you follow-up and clarify that that included
15 through the time Clifford Frazier came into the
16 store after the shooting?
17    A. I'd have to look at the reports again.
18    Q. Do you think that based on your
19 practices as an investigator for 33 years, would
20 that be a question you think would be important
21 to ask?
22    A. Sure. But there's a lot of other
23 factors that come in.
24    Q. If your investigation had revealed

Page 29

1  leads to potentially exculpatory evidence for
2  Mr. Bolden, putting aside whatever policies were
3  in place, would you have wanted to pursue those
4  leads?
5     A. Sure. Yes.
6     Q. I'm showing you what's been marked as
7  Exhibit 3.
8          (Whereupon, Pesavento Deposition
9           Exhibit No. 3 was marked for
10          identification.)
11 BY MS. HAYS:
12    Q. Do you recognize this document?
13    A. No, not off -- I haven't had a chance
14 to --
15    Q. Please take your time and review it.
16    A. Do you want me to just read this whole
17 thing or what?
18    Q. My question at this point was just do
19 you recognize that document?
20    A. Well, I recognize that it's part of
21 this investigation, yes.
22    Q. Do you recognize that as answers
23 that -- interrogatory answers that Mr. Bolden's
24 attorneys sent to your attorneys and you were

Page 70

1 the lineup that took place on February 26th?
2    A. Yes.
3    Q. Okay. And does this report refresh
4 your recollection as to which detectives
5 participated in the lineup?
6    A. Yes.
7    Q. And who were they?
8    A. Well, we have three names down here,
9 Siwek, Karl and myself.
10    Q. Is that consistent with your
11 recollection?
12    A. Yes.
13    Q. Why did --
14    A. No, but it doesn't mean that someone
15 else didn't assist in the sense that they moved
16 somebody from one room to another.
17    Q. Sure.
18    A. It doesn't, no.
19    Q. Do you remember who assisted in moving
20 someone from one room to another?
21    A. No.
22    Q. Why did you make the decision to do a
23 live lineup with Mr. Bolden in it?
24    A. Because he was suspected of being the

Page 71

1 shooter.
2    Q. How did he become a suspect?
3    A. He was identified, you know, by name.
4 We had gone to Clifford Frazier, showed him a
5 photo array. Clifford Frazier said that he
6 couldn't make an identification from pictures
7 but he would have to see the person live or have
8 to see the suspect in person. That didn't mean
9 that he didn't -- he couldn't recognize anybody,
10 but he wanted to see him in person. That's the
11 way I interpreted his answer to be.
12    Q. He wanted to see a live lineup?
13    A. Yes. He wanted to see the person --
14 the suspect in person.
15    Q. You're not testifying, though, that
16 Clifford Frazier, when he was shown specifically
17 the picture of Mr. Bolden, pointed him out and
18 said I want to see that person in a live
19 lineup --
20    A. No.
21    Q. -- right?
22       You're just saying he said, I can't
23 tell if it's anyone, I need to see people live,
24 right?

Page 72

1    A. Yes.
2    Q. Okay. So you put Mr. Bolden in a
3 lineup because you said someone identified him
4 by name. Are you talking about someone referred
5 to Lynier and then later Lynier was determined
6 to be Mr. Bolden, is that what you're talking
7 about?
8    A. Yes.
9    Q. Okay. Is it your position that
10 Mr. Bolden became a suspect after someone told
11 you that an individual named Lynier had been
12 speaking with Anthony Williams in J&J Fish on
13 the evening of January 29th?
14       MS. BOUDREAUX: I'll just object to
15 that characterization.
16       You can answer.
17       THE WITNESS: Yes, he was someone that
18 we wanted to interview.
19       MS. HAYS: What's the basis of your
20 objection?
21       MS. BOUDREAUX: I'm sorry, what?
22       MS. HAYS: You said you objected to
23 characterization, so I just want to make sure I
24 address your objection on this because it's an

Page 73

1 important question.
2       MS. BOUDREAUX: Just the
3 characterization of suspect, but I think he
4 cleared it up.
5       MS. HAYS: Okay. I just want to make
6 sure we're --
7       MS. BOUDREAUX: Okay.
8       MS. HAYS: -- accurate on this.
9 BY MS. HAYS:
10    Q. Could you turn to Exhibit 4. Again,
11 this is your transcript of your trial testimony
12 from Mr. Bolden's case.
13    A. Yeah.
14    Q. I'm going to direct your attention to
15 Page 153. Did you give the answer -- directing
16 your attentions to Line 11 -- starting at
17 Line 11. We developed information that there
18 was an individual in the J&J Fisheries who had
19 been speaking with Anthony Williams who fit the
20 description of the man who shot Clifford Frazier
21 in front of J&J Fisheries. And then you were
22 asked the question, did you have a name at that
23 time? And you responded, just Lynier. Do you
24 remember giving that testimony?

Page 118

1  A. I don't recall. I didn't -- I didn't
2  participate in that.
3  Q. You were aware that Mr. Clifford
4  admitted in his statement to being in possession
5  of two loaded guns at the time of the shootings
6  at issue, right?
7  A. I don't -- yeah, I believe -- I don't
8  recall what the exact statement was.
9  Q. Specifically I'm referring to the gun
10 that was then later found in J&J Fish and the
11 gun that was found in Mr. Frazier's car.
12 A. Yeah.
13 Q. He admitted that he had those two guns,
14 true?
15 A. He didn't admit it to me, I don't know.
16 Q. He admitted it to Detective Baker whose
17 report you later read, true?
18 A. I guess so. I'll have to go by the
19 report.
20 Q. If it's in the report, you have no
21 reason to question whether or not you knew that
22 at the time; is that fair to say?
23 A. Right.
24 Q. You were aware that Mr. Frazier also

Page 119

1  admitted to being instructed by Derrick Frazier
2  to, quote, shoot any motherfucker who came near
3  his car, true?
4  A. Yes.
5  Q. Would you agree that this information
6  adversely affected Mr. Frazier's credibility?
7  A. No.
8  Q. The fact that he was acting as the
9  watch under instruction to shoot anyone who came
10 to his car, you don't think that affected his
11 credibility?
12     MS. BOUDREAUX: Asked and answered.
13     You can answer again.
14     THE WITNESS: No.
15 BY MS. HAYS:
16 Q. Why not?
17 A. His credibility, I thought, because of
18 who was killed, his brother, I think that gave
19 him a lot more credibility. If it was just some
20 stranger, some other guy that got killed, that
21 would be one thing, but his brother got killed.
22 He didn't name anybody else, he named -- well, I
23 shouldn't -- maybe shouldn't. But he named --
24 or not named, but he identified Bolden.

Page 120

1  Q. In the live lineup --
2  A. Yes.
3  Q. -- is what you're referring to, right?
4      After he was shown the photo spread and
5  couldn't identify anyone, right?
6  A. Yes.
7  Q. Mr. Frazier was never arrested for any
8  drug or gun crimes related to the events on
9  January 29th, right?
10 A. Not that I know of.
11 Q. In assessing Mr. Frazier's credibility,
12 did you ever ask anyone why he wasn't charged or
13 confirm whether or not he was charged?
14 A. No, I don't think so. I mean, we might
15 have had a conversation but I don't recall.
16 Q. If you had a conversation about that,
17 would you have reflected that information in one
18 of your reports?
19     MS. BOUDREAUX: Object to vague.
20     THE WITNESS: Yeah, I don't -- I don't
21 know why I would put that in a report.
22 BY MS. HAYS:
23 Q. If you had a conversation with another
24 officer or detective related to the reasons why

Page 121

1  Clifford -- or Clifford Frazier was not being
2  charged with a crime related to the events of
3  January 29th, would you -- would you put that in
4  the report?
5  A. No, I don't know if I would have.
6  Q. Why not?
7  A. Because we were interested in the
8  homicide part of it.
9  Q. Clifford Frazier was the sole victim
10 and person who ultimately identified Mr. Bolden,
11 right?
12 A. Yes.
13 Q. Would you agree that his statement was
14 critically important as a result?
15 A. Of course, yes.
16 Q. And would you agree that the -- that
17 from the defense's perspective, it would be very
18 important to assess the credibility of
19 Mr. Frazier?
20 A. They would have to make that
21 determination.
22 Q. And if Mr. Frazier was not charged in
23 return for cooperating in this case in
24 identifying the perpetrator, wouldn't you agree