IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EDDIE L. BOLDEN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17 C 00417 |
| | ) | |
| vs. | ) | Honorable Steven C. Seeger |
| | ) | |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MOTION *IN LIMINE* NO. 7 TO BAR REFERENCE
TO COUNSEL'S INVOLVEMENT IN THE GANGSTER DISCIPLES INVESTIGATION**

Plaintiff Eddie L. Bolden, by his undersigned counsel, respectfully requests an Order *in limine* excluding any reference to the role of Plaintiff's counsel, Ronald Safer, in the investigation of the leaders of the Gangster Disciples street gang when he was an Assistant United States Attorney.

**BACKGROUND**

A. The Federal Gangster Disciples Investigation

This Section 1983 civil rights case touches upon, but not more than that, the Gangster Disciples street gang. Anthony Williams, the person to whom the two murder victims, Derrick Frazier and Ledell Clayton, were attempting to sell drugs, was, at one time, a high-ranking member of the Gangster Disciples. One of various theories about the reason the victims were killed revolved around the Gangster Disciples—*e.g.*, they may not have been paying "street tax" to the gang for the drugs they sold. At one time, Mr. Bolden was also—like nearly every youngster growing up on the South and West sides of Chicago during that era—a Gangster Disciple. Those facts are of, at most, tangential relevance to this lawsuit, which alleges a deprivation of Mr. Bolden's civil rights and malicious prosecution, among other causes of action, by the Defendants.

1

In the 1980's and until the mid-1990's, the Gangster Disciples street gang was the largest monolithic gang in the nation, with a membership of over 30,000. Federal law enforcement launched two investigations into the leadership of the Gangster Disciples in the late 1980's, one spearheaded by the Drug Enforcement Administration ("DEA"), and one conducted by the Federal Bureau of Investigation ("FBI"). These investigations were conducted separately. In approximately 1992, Mr. Safer was the lead prosecutor in DEA's investigation. Various wiretaps conducted in late 1993 garnered pivotal evidence against the top leadership of the gang. In early 1994, the United States Attorney's Office enlisted the aid of the Cook County State's Attorney's Office and the Chicago Police Department ("CPD") in proving that the Gangster Disciples' operation was more than just the talk captured on those wiretaps. The negotiations between the top officials of the United States Attorney's Office, the Cook County State's Attorney's Office, CPD, and DEA took some time. It required the cross-designation of an Assistant State's Attorney. After that was accomplished, sometime in March 1994, two squads of officers were assigned to DEA's investigation. The first meeting of that team was held March 22, 1994, approximately two months after the Frazier/Clayton murders, and almost a month after the investigation into those murders ended with Mr. Bolden's arrest.

The team of law enforcement personnel assigned to the Gangster Disciples investigation continued to expand as the investigation neared culmination in August 1995. At some point, Defendant James Oliver joined the team of CPD officers assigned to DEA's investigation. Defendant Oliver was not in attendance at the March 22, 1994 meeting. It is not clear when, if ever, he started attending the meetings that were held periodically—first monthly, then bi-weekly, then weekly—in the months leading up to the August 31, 1995 take down of the Gangster Disciples leadership. To the best of Mr. Safer's recollection, Defendant Oliver was never used as an affiant

for a search warrant or wiretap, or as a witness at any of the numerous federal trials. Defendant Oliver, however, at some point well after the events in the instant case, became a member of a team that accomplished its goal of incarcerating the 39 top leaders of the gang.

### B. Defendant Oliver's Conduct Relevant to this Motion

Defendant Oliver was one of the individuals who investigated the Frazier/Clayton homicide case. He spoke with witnesses on the night of the murders on January 29, 1994. He had extensive contact with Clifford Frazier, the key defense witness in this case, during the following weeks. He escorted Clifford Frazier to the lineup on February 26, 1994, which led directly to Mr. Bolden's arrest on that day for a crime he did not commit.

During his deposition in this case, Clifford Frazier testified that in the days following the murders, Defendant Oliver brought him a safety deposit key that Defendant Oliver took from Derrick Frazier's body the night of the murders. *See* Exhibit A, Excerpts of Deposition of Clifford Frazier, at 32:7-17. Defendant Oliver told Clifford Frazier that he could get Clifford Frazier into the bank. *Id.* at 32:24-33:7, 34:23-35:15. Clifford Frazier refused Defendant Oliver's invitation to get this drug money. *Id.* at 33:8-15. Defendant Oliver never inventoried this safety deposit box key. Defendant Oliver later saw Clifford Frazier speaking with an Internal Affairs investigator. Defendant Oliver pulled Clifford Frazier aside and threatened Clifford Frazier with violence. *Id.* at 42:12-43:2, 47:18-48:4.

## ARGUMENT

Plaintiff's counsel disclosed as a potential motion *in limine* Plaintiff's position that no witness or attorney should reference the fact that Mr. Safer and Defendant Oliver worked on the same federal Gangster Disciples investigation. Plaintiff's counsel expected that this would not be controversial, and that defense counsel would agree that any such mention would be inappropriate,

3

distracting, and confusing to the jury. Surprisingly, that is not what transpired. Defense counsel have indicated that if Mr. Bolden challenges the credibility of Defendant Oliver—a challenge which is evident from the allegations in the operative Complaint—then Defendants intend to put on evidence that Mr. Safer worked with Defendant Oliver and never reported him to any judge or investigatory body as corrupt or dishonest. It is difficult to frame this issue because Defendants' theory of admissibility defies definition. In essence, Defendants seek to infer and then admit into evidence Mr. Safer's purported opinion that Oliver had not committed crimes or other misconduct. Both the premise and the conclusion of this argument are flawed.

First, there is no evidence that Mr. Safer knew anything about Defendant Oliver's conduct related to this case. The Frazier/Clayton homicides occurred and the investigation concluded before any CPD officer was assigned to the DEA Gangster Disciples investigation led by Mr. Safer. Defendant Oliver concealed his manipulation of witnesses in the homicide investigation at issue from everyone involved in the DEA case. It is unlikely he would have confessed it to a federal prosecutor with whom he worked after that conduct was long over. Further, Mr. Safer and Defendant Oliver had very little personal contact. Mr. Safer had no first-hand knowledge of anything Defendant Oliver did with regard to witnesses in the Frazier/Clayton homicide case, or even in the Gangster Disciples investigation.

Second, Mr. Safer's opinion regarding Defendant Oliver's credibility is irrelevant and inadmissible in this Section 1983 civil rights case. Mr. Safer's personal opinion of Defendant Oliver, if he had one, has no bearing on any of the issues in dispute in this case. Further, Mr. Safer is not a witness in this case, nor was he ever identified by Defendants under Federal Rule of Civil Procedure 26(a)(1) as an individual likely to have personal knowledge relevant to the case. Yet Defendants effectively are attempting to shoehorn Mr. Safer into the role of a witness—

4

introducing a supposed opinion by inference, without actually calling Mr. Safer to the stand. Moreover, this inference bears on the credibility of another witness. The Seventh Circuit is clear that this type of opinion testimony is inadmissible. *See United States v. Freitag*, 230 F.3d 1019, 1024 (7th Cir. 2000) ("Because credibility questions are for the jury, it is improper to ask one witness to comment on the veracity of the testimony of another witness."); *United States v. Hall*, 165 F.3d 1095, 1107 (7th Cir. 1999) ("[T]he credibility of eyewitness testimony is generally not an appropriate subject matter for expert testimony because it influences a critical function of the jury—determining the credibility of witnesses."); *see also United States v. Scheffer*, 523 U.S. 303, 313 (1998) ("Determining the weight and credibility of witness testimony . . . has long been held to be the 'part of every case [that] belongs to the jury, who are presumed to be fitted for it . . . .'").

Finally, even if this evidence had any probative value, it would be far outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, and wasting time at trial. If Defendants are allowed to proceed down this path—arguing that Defendant Oliver must have been a model police officer because Mr. Safer never filed a complaint about him—they will open the door to admission of Defendant Oliver's disciplinary history. *See Betts v. City of Chicago*, 784 F. Supp. 2d 1020, 1031 (N.D. Ill. 2011) ("[T]he defendants' disciplinary history is excluded unless the defendants suggest that they are exemplary police officers, in which case the defendants will have opened the door to Betts' presentation of evidence to the contrary."). This line of inquiry will inevitably devolve into a mini-trial that has no bearing on the claims or defenses in this lawsuit. *See Jones v. Hamelman*, 869 F.2d 1023, 1027 (7th Cir. 1988) (excluding evidence under Rule 403 where admitting the testimony at issue "may have very well necessitated a 'trial within a trial'" on an issue with only "slight probative value"); *Montgomery v. City of Chicago*, No. 86 C 3872, 1993 WL 98213, at *4 (N.D. Ill. Apr. 1, 1993) (excluding evidence under Rule 403 due to "the potential

5

for satellite litigation" on "issues that are collateral to those required to be tried") (quoting *Sims v. Mulcahy*, 902 F.2d 524, 531 (7th Cir. 1990)).

      For the foregoing reasons, Plaintiff Eddie L. Bolden respectfully asks this Court to enter an Order granting his motion *in limine*.

Dated: October 9, 2019

Respectfully Submitted,

*/s/ Valarie Hays*
Ronald S. Safer
Valarie Hays
Eli J. Litoff
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison Street, Suite 2900
Chicago, Illinois 60602
(312) 471-8700
rsafer@rshc-law.com
vhays@rshc-law.com
elitoff@rshc-law.com

Sandra L. Musumeci (*pro hac vice*)
RILEY SAFER HOLMES & CANCILA LLP
1330 Avenue of the Americas, 6th Floor
New York, New York 10019
(212) 660-1000
smusumeci@rshc-law.com

*Attorneys for Eddie L. Bolden*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 9, 2019, I caused the foregoing document to be electronically filed using the CM/ECF system, which will send notice of this filing to all counsel of record.

                                              */s/ Valarie Hays*
                                              Valarie Hays