IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EDDIE L. BOLDEN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17 C 00417 |
| | ) | |
| vs. | ) | Honorable Steven C. Seeger |
| | ) | |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MOTION *IN LIMINE* NO. 5 TO EXCLUDE
CYNTHIA STEWARD'S TESTIMONY BASED ON SPECULATION AND HEARSAY**

Plaintiff Eddie L. Bolden, by his undersigned counsel, respectfully requests an Order *in limine* barring Cynthia Steward from testifying (1) that she believes Mr. Bolden was involved in the murders of Derrick Frazier and Ledell Clayton, (2) that Mr. Bolden was involved in drug deals with Derrick Frazier and Ledell Clayton prior to the date of their murders, January 29, 1994, and (3) that the victims knew Mr. Bolden. This testimony is based on inadmissible hearsay rather than her personal knowledge and is irrelevant and unfairly prejudicial.

**BACKGROUND**

This Section 1983 case arises out of Mr. Bolden's wrongful conviction for the murders of Derrick Frazier and Ledell Clayton and the attempted murder of Clifford Frazier. At the time of his death on January 29, 1994, Mr. Clayton was engaged to Cynthia Steward. Ms. Steward has testified that she was aware that Mr. Clayton and Derrick Frazier were selling drugs to Anthony Williams on the night they were killed. During Mr. Bolden's criminal trial, she also testified that between August and December 1993, she accompanied Mr. Clayton and Derrick Frazier on three occasions when they sold drugs to Anthony Williams at the J&J Fish restaurant at 64th and Cottage Grove Avenue. On each occasion, Ms. Steward, Mr. Clayton, and Derrick Frazier picked up the

1

drugs from Clifford Frazier's house, drove to J&J Fish, and delivered the drugs to Anthony Williams. On the first two occasions, Ms. Steward entered the restaurant and observed the transaction. On the third occasion, she waited in the car. Ms. Steward testified that Mr. Clayton and Derrick Frazier always carried weapons during these transactions.

Ms. Steward was not present during the drug deal and subsequent shooting on January 29, 1994. Instead, she was planning a birthday party for Mr. Clayton at a restaurant near 65th Street and Racine Avenue, several miles from J&J Fish. Detectives arrived at the party that evening to tell Ms. Steward that Mr. Clayton had been shot, and she left with them in their car.

## ARGUMENT

This Court should preclude Ms. Steward from testifying to matters beyond her personal knowledge. First, during her deposition in this case, defense counsel asked Ms. Steward who she "believed" killed Mr. Clayton and Derrick Frazier. Ms. Steward admitted that she "wasn't there," but testified that she "believed" Mr. Bolden, Roderick Stewart, and Anthony Williams were "all connected," and she "fe[lt] like all three of them killed [Mr. Clayton]." *See* Ex. A, Excerpts of Deposition of Cynthia Steward, at 52:22-53:14. Ms. Steward later testified that she "believe[d]" that Clifford Frazier, Anthony Williams, and Mr. Bolden were all involved in the crime, but "only God knows the truth." *Id.* at 165:7-12. Ms. Steward's testimony, as well as the documentary evidence in the case, makes clear that she has no personal knowledge of the identity of the person who killed Mr. Clayton and Derrick Frazier. Her opinion appears to be based solely on information provided by third parties well after the events in question. Indeed, she also testified that she was interviewed by the Defendant Officers and other police officers multiple times shortly after the events in question and gave them the names of the individuals she believed at that time were responsible for ordering the murders, as well as the names of the people who might be responsible

2

for carrying out the murders—Mr. Bolden's name was not one of them. *Id.* at 136:16-139:5, 160:4-24. In fact, Ms. Steward testified that when the investigating officers showed her Mr. Bolden's photograph,[1] she told them that he did not look familiar to her and the person who committed the murders should look familiar to her because the victims were not going to let "some strange person in the back of the car" when they knew a hit was out on them. *Id.* at 145:22-147:16. Accordingly, not only is Ms. Steward's new position about Mr. Bolden's potential involvement in the murders unsupported by any personal knowledge, but it also contradicts her previous statements that were based on personal knowledge. Her conclusion that Mr. Bolden was involved in the murders is, therefore, inadmissible under Federal Rule of Evidence 602. It is also an inadmissible lay opinion. It is not rationally based on the perceptions of Ms. Steward, nor would her unsupported opinion be helpful to the jury in determining a fact in issue. *See* Fed. R. Evid. 701.

Second, based on defense counsel's line of questioning during Ms. Steward's deposition, Plaintiff anticipates that Defendants may attempt to elicit testimony from Ms. Steward that Mr. Bolden was involved in drug deals with Mr. Clayton and Derrick Frazier in the past. Her deposition testimony on this question is murky at best and based entirely on hearsay. In response to defense counsel's leading question "So sometimes Irving or Derrick would say they dealt with Roderick or Bolden instead of Anthony Williams," Ms. Steward responded, "Yeah." *Id.* at 61:7-12. Shortly before that question, she was asked how she knew Roderick Stewart, Mr. Bolden and Anthony Williams were connected and she responded, "Well, I mean . . . Irving and Derrick, they used to talk. And Irving used to be like . . . if Ant wasn't there, Roderick, somebody be up there when they dropped off whatever they would drop off, as far as the drugs. If Ant wasn't there, he would say, Roderick, or Bolden, or – Ant got a brother, I can't think of his name." *Id.* at 60:8-19.

---

[1] She later testified she might just have been shown a sketch purporting to be Mr. Bolden.

3

Exactly what Ms. Steward meant by these statements is unclear, but there is no question that any knowledge she has on this topic is based on hearsay and not her own personal knowledge.

Ironically, the State called Ms. Steward at Mr. Bolden's trial to establish that Derrick Frazier and Ledell Clayton had done drug deals exclusively with Anthony Williams, and not Mr. Bolden, prior to the events of January 29, 1994. The State thought this supported a theory that the drug deal on January 29 involving Anthony Williams and the victims was just a "ruse," since it brought in a new player: the shooter, whom the State claimed was Mr. Bolden. *See* Ex. B, Excerpt of State's Rebuttal Argument, at 170:9-21; Ex. C, Trial Testimony of Cynthia Steward, at 58:13-19, 62:18-63:20. It was clear from the evidence the State presented at trial that Ms. Steward had never told law enforcement that the victims had engaged in prior drug deals with Mr. Bolden. Accordingly, not only is Ms. Steward's deposition testimony on this topic vague, elicited from leading questions by defense counsel, and based solely on hearsay, but it is also unreliable and contradicted by the information she provided to law enforcement when the events were much fresher in her mind.

Finally, Plaintiff anticipates that Defendants will seek to establish through Ms. Steward's testimony, which is based on inadmissible hearsay, that the victims knew Mr. Bolden prior to January 29 and, therefore, they allowed Mr. Bolden in the backseat of their car on the night of the murders. This is an extremely critical point in this case. Mr. Bolden did not know the victims. The victims did not know him. There was no evidence to the contrary presented at Mr. Bolden's criminal trial, even though Ms. Steward was a witness for the prosecution. The fact that the victims and Mr. Bolden did not have a prior relationship supports Mr. Bolden's innocence. Specifically, the victims knew there was a hit out on them, and it is improbable that they allowed a stranger with a loaded gun into the backseat of their car under the circumstances, especially when they were

4

unarmed. *See* Ex. A at 145:22-148:6. In other words, the absence of a trusted relationship between Mr. Bolden and the victims further demonstrates his innocence.

But now through leading questions and the passage of 25 years, Defendants have sought to eke out some vague evidence through Ms. Steward indicating that Mr. Bolden and the victims knew each other. The best they got from Ms. Steward (in addition to the testimony referenced above) was the following:

> Q: Do you know if Irving had met Eddie Bolden before the date of the murder?
>
> A: I've heard him say that, you know, who all was up in J&J's. You know, his family. Because, you know, you hear all kind of names. Roderick, you know. But like I said, I didn't -- I never like socialized with him, so you know, I didn't know them personally, no.
>
> Q: Okay. But based on conversations you had with Irving, you had heard him mention Bolden by name?
>
> Ms. Hays: Objection. Form.
>
> Q: Is that correct?
>
> A: Yes.
>
> Q: Okay. How about Derrick? Had you ever heard Derrick mention Eddie Bolden or Eddie Lynier Bolden by name prior to the date of the indictment?
>
> A: No.

*Id.* at 58:16-59:11.

To the extent this testimony establishes that Ms. Steward heard Mr. Clayton say that Mr. Bolden was at J&J's at some unknown point in time prior to the events in question, it is inadmissible hearsay and cannot form the basis for her testimony that Mr. Clayton knew Mr. Bolden. It would necessarily be offered for the truth of the matter asserted, namely that Mr. Clayton knew who Mr. Bolden was. The statement also is irrelevant. The fact that Mr. Clayton knew Mr. Bolden's name does not in any way establish that he actually knew Mr. Bolden

5

personally, had ever met with him, or had any relationship with him, let alone a relationship that was close enough for Mr. Clayton and Derrick Frazier to allow Mr. Bolden into the backseat of their car when they were unarmed and being extra cautious due to the hit out on them. Even if Ms. Steward's testimony had some marginal relevance, it is substantially outweighed by the danger of an unfairly prejudicial effect, and thus, should also be excluded under Federal Rule of Evidence 403. Essentially, counsel for the Defendants would use testimony elicited from Ms. Steward 25 years after the events in question, which is based on a vague hearsay statement from a deceased individual, to falsely argue a central and critically important issue in the case to the jury—that the victims knew Mr. Bolden. This blatant attempt to bolster the weak evidence against Mr. Bolden in violation of the Federal Rules of Evidence should be precluded, especially in a case that should be focused on the Defendants' conduct, rather than re-trying Mr. Bolden.

## CONCLUSION

For the foregoing reasons, Plaintiff Eddie L. Bolden respectfully asks this Court to enter an Order granting his motion *in limine* precluding Ms. Steward's testimony on the three topics addressed herein.

Dated: October 9, 2019

Respectfully Submitted,

*/s/ Valarie Hays*
Ronald S. Safer
Valarie Hays
Eli J. Litoff
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison Street, Suite 2900
Chicago, Illinois 60602
(312) 471-8700
rsafer@rshc-law.com
vhays@rshc-law.com
elitoff@rshc-law.com

Sandra L. Musumeci (*pro hac vice*)
RILEY SAFER HOLMES & CANCILA LLP

6

                                              1330 Avenue of the Americas, 6th Floor
                                              New York, New York 10019
                                              (212) 660-1000
                                              smusumeci@rshc-law.com

                                              *Attorneys for Eddie L. Bolden*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 9, 2019, I caused the foregoing document to be electronically filed using the CM/ECF system, which will send notice of this filing to all counsel of record.

                                                */s/ Valarie Hays*
                                                Valarie Hays