. IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EDDIE L. BOLDEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 17 C 00417 |
| v. ) | |
| ) | Honorable Steven Seeger |
| ) | |
| CITY OF CHICAGO, JAMES OLIVER, ) | |
| ANGELO PESAVENTO, and EDWARD SIWEK ) | |
| ) | |
| Defendants. ) | |

**DEFENDANT OFFICERS' MOTION *IN LIMINE* NO. 4
TO PRECLUDE CERTAIN EVIDENCE AND ARGUMENT
BASED ON THE COURT'S SUMMARY JUDGMENT RULING**

Defendants James Oliver, Angelo Pesavento, Edward Siwek, the Estate of George Karl, and the Estate of Michael Kill (collectively "Defendant Officers") by their attorneys, move this Court *in limine* to bar certain evidence and argument based on Judge Shah's summary judgment ruling. In support thereof Defendant Officers state as follows:

**I. INTRODUCTION**

Defendant Officers filed a motion for summary judgment on Count I of the complaint, which alleges a violation of the Fourteenth Amendment. Judge Shah granted the motion as to all claims that Defendant Officers fabricated, destroyed or withheld exculpatory evidence, leaving only the claim of a suggestive line-up as a violation of due process. Judge Shah's finding that there is insufficient evidence that Defendant Officers destroyed, withheld, or fabricated evidence in violation of Plaintiff's due process rights applies equally to the remaining claims, and all such evidence must be barred.

**II. ARGUMENT**

Given Judge Shah's summary judgment opinion, any allegedly destroyed, fabricated or withheld evidence is relevant only if it tends to prove the remaining Fourth Amendment[1] and malicious prosecution claims. Plaintiff will likely seek to introduce this evidence, which did not support a due process claim, as relevant to malice or lack of probable cause. The latter is relevant to the Fourth Amendment claim, and both are relevant to malicious prosecution. ." *Brown v. Selfridge*, 224 U.S. 189, 191-92, 32 S. Ct. 444, 446 (1912) ("The plaintiff must show that the defendant acted from malicious motives in prosecuting him, and that he had no sufficient reason to believe him to be guilty"). However, the factual findings which failed to support a due process claim also doom them as evidence of malice or probable cause.

"Malice is defined as the initiation of a prosecution for any reason other than to bring a party to justice." *Rodgers v. Peoples Gas, Light & Coke Co.*, 733 N.E.2d 835, 842 (Ill. App. Ct. 2000); *Salmen v. Kamberos*, 565 N.E.2d 6, 10 (Ill. App. Ct. 1990). Probable cause, which relates to both the Fourth Amendment claim and the malicious prosecution claim, exists when "the facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Williams v. City of Chi.*, No. 10 C 1051, 2012 U.S. Dist. LEXIS 39227, at *14-15 (N.D. Ill. Mar. 22, 2012). Applying the factual findings in Judge Shah's summary judgment opinion to these standards demonstrates that the evidence in question is no more relevant to the malicious prosecution and Fourth Amendment claims than it was to the failed due process claims.

    **A. Any evidence or argument that certain evidence was destroyed or not preserved should be barred.**

---

[1] Count V, previously titled "Federal Malicious Prosecution," was limited to claims under the Fourth Amendment by Judge Shah's order on the motion to dismiss. Since that ruling, the Seventh Circuit has clarified that there is no tort of federal malicious prosecution, "only a Fourth Amendment claim—the absence of probable cause that would justify the detention." *Manuel v. City of Joliet*, 903 F.3d 667, 670 (7th Cir. 2018).

Plaintiff's complaint alleges that certain evidence was destroyed and/or not preserved prior to his criminal trial. Specifically, Plaintiff claims that Defendant Officers, as well as Detectives Karl and Kill, (collectively "Officers") destroyed 1) a tape recording of Plaintiff's 911 call; 2) a gun used by Clifford Frazier, one of the victims; 3) a control card showing which detectives signed out the investigative file; and 4) interview notes of various witnesses. Judge Shah found that there was not sufficient evidence for a jury to determine that Defendant Officers destroyed or failed to retain any exculpatory evidence. This ruling was based on one or more of the following factual findings: the evidence in question was not destroyed by any defendant; the defendants did not act in bad faith; and the exculpatory value of the evidence was unknown. The logic behind these findings makes the destruction of evidence irrelevant to the issues of probable cause and malice. For this reason, and those explained below, Plaintiff should be barred from introducing evidence or arguing that any evidence was destroyed.

1. *911 Recording*

Recordings of all 911 calls related to this incident were destroyed after thirty days, in accordance with the City's retention policy. There is no evidence that any Officers destroyed the recording or caused it to be destroyed. The claim that Officers destroyed this evidence was dismissed on defendants' motion. At the summary judgment stage, Plaintiff made a slightly different argument: that Defendant Pesavento and Officer Karl failed to take action to preserve the recording after being made aware that Plaintiff had made the phone call.

Judge Shah's factual findings in the summary judgment opinion show that the recording is not probative of the existence of probable cause or malice. Judge Shah found that there was no evidence that any officer directed the destruction of the tapes or even knew that the tapes would be destroyed after thirty days. (Dkt. 276 at 22-23.) Instead, the evidence "show[ed] only that the

3

detectives sat idly by" and "procrastinate[ed]." (*Id*. at 21, 23.) This does not describe intentional conduct or deliberate, reckless indifference; rather it was at most negligence. (*Id*. at 21.) As a result, the Court found "there can be no reasonable inference of bad faith" from the failure to preserve the recording. (*Id*. at 23.) In other words, there was no "official animus or … conscious effort to suppress exculpatory evidence" and "no subjective knowledge that the evidence in question had exculpatory value at the time it was lost or destroyed." (*Id*. at 17 (citing *United States v. Cherry*, 920 F.3d 1126, 1140 (7th Cir. 2019).)

Because the officers did not have subjective knowledge that the 911 recording was exculpatory, this evidence is irrelevant to probable cause, which concerns only "the facts and circumstances within the officer's knowledge." *Williams*, No. 10 C 1051, 2012 U.S. Dist. LEXIS 39227, at *14-15. In addition, the Officers did not act in bad faith, or demonstrate animus, conscious effort to suppress, recklessness or deliberate indifference, in failing to preserve the 911 recording. Thus, the destruction of the 911 recording could not possibly support a finding of malice. As a result, any evidence related to the destruction of or failure to preserve the 911 recording should be barred as irrelevant.

### 2. *Clifford's gun and inventory report*

Plaintiff's due process claim for the destruction of Clifford's gun failed for reasons similar to those at issue with the 911 recording. The gun's destruction was not caused by any Officers. Instead, the gun was destroyed pursuant to court order in another case, and there is no evidence that any officer knew of the destruction order, or had any reason to believe the gun would not be preserved. Plaintiff claimed the gun could have been linked to the offender by analyzing blood evidence on the gun, which was noted in an allegedly suppressed inventory report. However, this was the victim's gun, not the offender's. Judge Shah found "no evidence that defendants thought

4

analysis could yield exculpatory results for Bolden." (Dkt. 276 at 24.) As a result, "defendants could not have failed to preserve the gun in bad faith without knowing that it had exculpatory value." (*Id*.) For the same reason, the inventory report's notation of blood on the gun was not exculpatory, and there was no duty to disclose the report. (*Id*.) Because facts within the Officers knowledge related to this gun were not exculpatory, they are not probative of probable cause. Moreover, the officers were not responsible for the gun's destruction, and were not on notice that it would be destroyed. Nor did they have any reason to believe that the blood on the gun was exculpatory. There is no evidence that officers engaged in any action at all with regard to the gun, thus the destruction is not probative of any motivation by defendants, much less a nefarious one. As a result, Plaintiff should be barred from presenting any evidence that the gun was destroyed or that the inventory report was not properly disclosed.

   3. Interview notes

As with the other allegedly destroyed evidence, Judge Shah found that there was no basis from which a jury could infer that the detectives' interview notes were exculpatory or destroyed by Defendant Officers. (Dkt 276 at 25.) Without any evidence of the content of the notes, Plaintiff cannot establish that these notes would have impacted the officers' probable cause determination. Nor would it be proper to infer that officers acted with malice from the mere fact that the notes were destroyed. "[T]he contents of [the] notes are a mystery," and their existence and destruction are therefore irrelevant. (Dkt. 276 at 25.) With no evidence as to when, how, why or by whom the notes were destroyed, these notes are not probative of any issue in this case. As a result, Plaintiff should be barred from any evidence or implication that officers took notes of interviews or that such notes are missing or destroyed.

   4. Items Seized in Search of Clayton's home

5

Cynthia Steward testified that officers searched her home after the incident, and seized some papers and a safe deposit box key, and noted some names and phone numbers. Judge Shah rejected Plaintiff's attempt to tie this evidence to the due process claim, because "[w]ithout evidence of what the seized documents were or whose names the officers took down, a jury cannot infer the evidence's value to Bolden." (Dkt 276 at 28.) There was also no evidence that the key was used to open the safe deposit box, or what the contents of the box were, and the negative credibility inference that officers intended to steal money from Clayton was unfounded. (*Id.*) In sum, "[t]o find that the seized evidence had potential exculpatory value to Bolden, that defendants knew that, or that defendants were personally involved in the destruction of the evidence, would be sheer conjecture." (*Id.*) These findings apply equally to Plaintiff's remaining claims. Plaintiff cannot introduce evidence of the search, because its only link to probable cause, malice, or credibility is through speculation and conjecture. As a result, any evidence of the search of Clayton's home, including but not limited to the evidence recovered and interactions with Ms. Steward during the search, should be barred as irrelevant.

    5. *Control Card*

In 1994, the investigative file contained a control card, indicating which detectives signed out the investigative file. This card was not in the investigative file when it was produced in this litigation. In his summary judgment response, Plaintiff acknowledged that the control card was not relevant to his due process claim, conceding that he could not establish that the contents of the card were exculpatory and that officers were responsible for its absence from the file. Nonetheless, Plaintiff claimed he would offer it as evidence of bad faith and spoliation at trial. Neither purpose is viable.

Bad faith cannot be established without evidence that an officer had subjective knowledge

of the contents of the card, believed the contents to be exculpatory, and engaged in some action to cause its destruction. *Cherry*, 920 F.3d at 1140 (bad faith "requires proof of an official animus or a conscious effort to suppress exculpatory evidence, and necessarily turns on an official's subjective knowledge that the evidence in question had exculpatory value at the time it was lost or destroyed.") Absent some evidence of bad faith and an intentional act by officers, Plaintiff is not entitled to a spoliation instruction. *Spesco, Inc. v. Gen. Elec. Co.*, 719 F.2d 233, 239 (7th Cir. 1983) (spoliation instruction properly rejected because the Seventh Circuit "requires a showing of an intentional act by the party in possession of the allegedly lost or destroyed evidence to support the tendered instruction.") Plaintiff offers nothing but speculation as to what, if anything was on the control card, or what happened to the control card, between 1994 and this litigation. As a result, the missing control card is not probative of bad faith, does not support a spoliation instruction, and is otherwise irrelevant and inadmissible.

**B. Any evidence or argument that officers withheld or suppressed evidence should be barred.**

Judge Shah found that none of the evidence Plaintiff claims was suppressed was material to the outcome of his criminal case. Plaintiff alleged three categories of evidence were suppressed: 1) evidence of "Clifford's role as an informant;" 2) a report related to an interview with Clifford Frazier; and 3) Cynthia Steward's statements about the gang hit. All of this evidence, considered collectively, did not exculpate Plaintiff. (Dkt. 276 at 44, n. 17.) In fact, none of the evidence was found to be exculpatory, to the extent it was relevant it was for impeachment purposes only. As a result, none of this evidence is relevant to the issue of malice, which can be inferred only where the evidence withheld is exculpatory. *Sneed v. Rybicki*, 146 F.3d 478, 481 (7th Cir. 1998). Nor is it significant for purposes of probable cause, as mere inconsistencies do not defeat probable cause. *Spiegel v. Cortese*, 196 F.3d 717, 725 (7th Cir. 1999).

### 1. *Clifford's role as an informant*

Plaintiff alleged at summary judgment that defendants suppressed evidence that Clifford was acting as an informant in that he gave defendants information about drug operations and received special treatment in return. Specifically, the summary judgment opinion addressed allegations that "Clifford gave defendants information about a gun Steward had and told them what Steward might know about the shootings, defendants asked Clifford for information about Clayton and Derrick's drug supplier, Clifford met with defendants multiple times, Clifford told officers that Officer Oliver had Derrick's safe deposit box key and asked him for help recovering cash from the box, Officer Oliver threatened Clifford for telling the officers about the key, defendants recovered 30 guns from Clifford's apartment and did not arrest him for illegally possessing them, Steward told officers that illegal drug proceeds were being stored at Clifford's mother's home but defendants did not seize or report the funds, an officer escorted Clifford to a funeral, and defendants arrested Clifford in connection with the January 29 events but did not charge him." (Dkt. 276 at 32-33.) Judge Shah found that the evidence was valuable only for impeachment of Clifford, and would have been cumulative of the issues brought out at trial. (*Id*. at 37.)

Because this evidence was not exculpatory, and similar information was disclosed, there is no basis to infer that any officer acted with malice in not providing certain details of the investigation. This evidence was obtained during a gang-narcotics investigation and was only tangentially related to the double murders. The officers did not try to hide the fact that Clifford was involved in drug operations and possessed guns yet wasn't charged with a crime -- this was brought out at trial. Whether Clifford was arrested adds nothing to this impeachment. (Dkt. 276 at 36.) ("[E]ven if Clifford was arrested, there is little practical difference between being arrested and not being charged and never being arrested to begin with.") It was also no secret that Clifford

8

met with police on several occasions. The fact that Steward had information about drug operations was also known, Steward testified about her participation in prior drug deals at trial. There is no malice in failing to provide this redundant information.

Judge Shah found that the information related to Oliver's interactions with Clifford in fact bolstered Clifford's credibility, thus it is non-exculpatory, non-impeaching, and wholly irrelevant. (Dkt. 276 at 35, n. 11.) Whether Clifford's mother had drug money at her house has no bearing on any issue in this case. That this case involved high-stakes drug operations was made clear at trial. Any argument that officers let Clifford keep the money as a bribe is not supported by the evidence. (Dkt. at 36.) As to Defendant Oliver's interactions with Clifford, they could not be construed as malice toward Plaintiff. Nor did these interactions yield any evidence which would have impacted probable cause to arrest Plaintiff for the murders. Clifford was unable to provide a timeline of when these incidents occurred in relation to the line-up and Plaintiff's arrest. And Clifford refused to assist Oliver in the drug investigation. Evidence of Oliver's interactions with Clifford regarding the narcotics trade, and/or Clifford's reporting of these interactions, are not probative of any issue in this case, and are offered solely to portray Oliver as a person of bad character, in violation of Rule 404(b).

Judge Shah's findings that evidence which purportedly showed that Clifford was an informant was either cumulative, irrelevant or speculative also bar the use of this evidence to establish malice or probable cause. None of this evidence has any tendency to show that officers were motivated by anything other than a belief in Plaintiff's guilt. Accordingly, all such evidence should be barred, including but not limited to evidence or argument that: 1) Clifford gave defendants information about a gun Steward had and told them what Steward might know about the shootings; 2) defendants asked Clifford for information about Clayton and Derrick's drug

9

supplier; 3) Officer Oliver interactions with had Derrick's safe deposit box key and asked him for help recovering cash from the box; 4) Officer Oliver threatened Clifford for telling the officers about the key; 5) defendants recovered 30 guns from Clifford's apartment and did not arrest him for illegally possessing them; 6) Steward told officers that illegal drug proceeds were being stored at Clifford's mother's home but defendants did not seize or report the funds; 7) an officer escorted Clifford to a funeral; and 8) defendants arrested Clifford in connection with the January 29 events but did not charge him (including references to Miranda warnings in the Willis report and to Clifford as arrestee in an inventory report).

 2. *Willis report*

Officer Willis prepared a supplemental report which contained details of an interview with Clifford. Plaintiff claims that this report was not disclosed prior to trial. He does not, however, set forth any facts indicating that the report was withheld intentionally, or by whom. In ruling on summary judgment, Judge Shah found that any suppression of this report was not material to the outcome of Plaintiff's trial. (Dkt. 276 at 40.) Much of the impeachment by omission for which this report is valued was brought out at trial through Detective Baker, who also interviewed Clifford and whose report was disclosed. (*Id.*) Because this report is cumulative of a report which was disclosed, and did not contain exculpatory information, malice cannot be inferred from the nondisclosure. *Sneed v. Rybicki*, 146 F.3d 478, 481 (7th Cir. 1998). Nor would evidence which is not exculpatory be relevant to a determination of probable cause. As a result, this Court should bar any evidence or argument that the report was not disclosed.

 3. *Steward's statements about gang hit*

Cynthia Steward testified that she told officers about a conversation with Andre Kimbrough regarding a gang hit on the victims, and provided names of individuals who she or

Kimbrough thought might have been involved. At summary judgment, Plaintiff claimed these statements were suppressed because the names provided by Steward were not included in Detective Siwek's report summarizing the interview. Judge Shah found there was no suppression because the defense could have asked Steward about her fiancé's state of mind in his final days, and obtained the same information.

The failure to include these details in a typed summary of the report also does not reflect malice toward Plaintiff or a lack of probable cause. Eddie Bolden was not yet a suspect at the time this report was completed -- at most detectives had information that "Lanier" was involved in some way. Because Plaintiff was not yet a suspect, it would have been impossible for Defendant Siwek to edit this report in a manner which would be consistent with Plaintiff's guilt. Moreover, the information that was allegedly omitted from the report had the potential to inculpate Plaintiff, once he was identified as "Lanier." Steward identified Anthony Williams, a high ranking member of the Gangster Disciples street gang, as an individual who may have ordered the hit. Plaintiff considered Anthony Williams to be family, and Anthony trusted Plaintiff. The information from Steward would have strengthened the evidence against Plaintiff. As Judge Shah observed, "If the Gangster Disciples had a hit out on the murder victims, then Bolden's gang involvement would have become relevant, since he was a Gangster Disciple." (Dkt. 276at 43.) Because the information provided by Steward was neither exculpatory nor maliciously withheld, the fact that it was omitted from Siwek's report is irrelevant. As a result, Plaintiff should be barred from presenting evidence or arguing that this information was withheld.

### C. Evidence, implication or argument that any officer fabricated evidence should be barred.

Judge Shah found that Plaintiff's did not have sufficient evidence for a jury to find a due process violation based on fabrication. Plaintiff argued that two pieces of evidence were fabricated:

11

a police report containing statements which the witnesses later disavowed; and the line-up in which Clifford identified Plaintiff. For the same reasons Judge Shaw found these allegations did not sustain a due process claim, they are also not probative of the remaining claims.

  1. *Pasavento-Karl Supplemental Report*

This report summarized information from police interviews of several witnesses. Plaintiff relied on witness testimony that their statements were not accurately reported as evidence of fabrication. Specifically, Tenesha Gatson testified that she did not describe Lynier as "light-complected" as stated in the report; Lee Williams testified that the report inaccurately stated that he saw the double-murder and described the offender as a male black early twenties; and Clifford testified that he did not say the offender's gun looked like his own. Judge Shaw found that the statements in the report, even if fabricated, did not amount to a due process violation. (Dkt. 276 at 47.) Plaintiff was unable to demonstrate causation: that the prosecution would have ended sooner if the statements were proven to be false. (*Id*.)

For the same reason, these inconsistencies are not probative of probable cause or malice. There is no evidence that these statements were material to the probable cause determination. Officers identified Lynier as Plaintiff based on information in the police data base. There is no indication that Gatson's description of his skin tone was used to identify Lynier. Rather, he was identified through information from the gang crimes unit, and there is no dispute that Plaintiff is Lynier. And there is no evidence that Officers relied on the vague description attributed to Lee Williams ("male, black, early twenties"), or Clifford's description of the offender's weapon in developing probable cause. As with the due process claim, there is simply no evidence of causation. Absent a causal link, Plaintiff cannot establish relevance to probable cause. The same causal link is required to raise any inference of malice. This report was prepared before Plaintiff

12

was a suspect, thus its contents could not possibly evidence malice toward Plaintiff. Accordingly any evidence or argument that this report was fabricated should be barred.

*2. Bar fabrication of line-up or that Officers knew Bolden was innocent.*

Judge Shah granted summary judgment on Plaintiff's claim that the line-up was fabricated, finding there was insufficient evidence from which a jury could determine that Officers knew the identification was false. (Dkt. 276 at 48.) Because there has been a judicial determination that there is no evidence to "suggest that [officers] believed Bolden was innocent," (*Id*.), Plaintiff should not be permitted to imply the contrary as to any aspect of the investigation. In response to summary judgment, every fact which Plaintiff posited to show that Officers had actual knowledge that Bolden was innocent was rejected. As a result, Plaintiff should be precluded from arguing or implying that officers fabricated the line-up, or had actual knowledge or believed that Bolden was innocent at any time during their investigation.

**IV. Rule 403 bars reference to evidence which Judge Shaw found insufficient.**

In ruling on the summary judgment, Judge Shaw gave a well-reasoned and comprehensive opinion explaining how certain evidence was not competent to go to a jury. In doing so, Judge Shaw set evidentiary parameters for the remaining claims. Judge Shaw was clear that there was not sufficient evidence that any allegedly destroyed, suppressed or fabricated evidence caused Plaintiff to be denied a fair trial. As to the due process issue, Judge Shaw permitted a single claim to go to the jury: whether an unduly suggestive line-up caused Plaintiff to be denied a fair trial. Judgement was entered on all claims that Officers destroyed, suppressed or fabricated evidence, for lack of factual support which connected the conduct to the officers, demonstrated exculpatory value, causally related the conduct to Plaintiff's detention, or suggested that officers knew that or some combination thereof. Plaintiff should not be permitted to undercut Judge Shah's judgment

13

by asserting that this incompetent evidence applies to his Fourth Amendment or malicious prosecution claims.

As explained above, evidence or argument that Officers destroyed, suppressed or fabricated evidence is not probative of any element of the remaining claims. The findings that due process was not implicated also preclude admission of this evidence to show malice or lack of probable cause. Even if this Court were to find some relevance in this evidence, it is substantially outweighed by the risk of unfair prejudice, confusing the issues and misleading the jury. Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.")

Admitting this evidence would suggests that Plaintiff's trial was unfair because evidence was destroyed, suppressed or fabricated. This would confuse and mislead the jury, as Judge Shah's summary judgment plainly indicated that none of the above evidence, even considered cumulatively, impacted Plaintiff's right to a fair trial. Plaintiff's only remaining claim is that a suggestive line-up denied him a fair trial. The main (or only) purpose served by discussion of evidence which was or was not presented at the criminal trial is to demonstrate that the trial was unfair. Yet whether Plaintiff had fair access to evidence is no longer an issue in this case after Judge Shah's summary judgment ruling. Defendant Officers' potential liability was properly limited by the summary judgment order. Plaintiff should not be permitted to resurrect the dismissed due process claims under the guise of malicious prosecution. Allegations of destruction, suppression and fabrication are highly inflammatory, and it would be nearly impossible to limit the jury's consideration to a proper purpose, if any. As a result, any mention of whether Plaintiff had fair access to evidence would unfairly prejudice defendants by suggesting to the jury that

Plaintiff's due process rights were thereby violated. All such evidence should be barred.

WHEREFORE, for the reasons set forth herein, Defendant Officers respectfully request that this Court grant this motion *in limine* and bar and evidence or argument that evidence was destroyed suppressed or fabricated, or that any officer knew the Plaintiff was innocent.

                                                Respectfully submitted,

                                                DEFENDANT OFFICERS

                          BY:   /s/ Andrew M. Hale

Andrew M. Hale (ahale@ahlaelaw.com)
William E. Bazarek (wbazarek@ahalelaw.com)
Brian J. Stefanich (bstefanich@ahalelaw.com)
Hale & Monico LLC
53 West Jackson Blvd., Suite 330
(312) 870-6926

## **CERTIFICATE OF SERVICE**

I, Brian J. Stefanich, an attorney hereby certify that I filed the attached document on October 9, 2019, with the Court's CM/ECF system, which sent electronic copies of the same to all counsel of record.

/s/ <i>Brian J. Stefanich</i>