IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EDDIE L. BOLDEN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17 C 00417 |
| | ) | |
| vs. | ) | Honorable Steven Seeger |
| | ) | |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION *IN LIMINE* NO. 10 TO PRECLUDE CERTAIN TESTIMONY FROM WILLIAM GAUT**

Now comes Defendants Angelo Pesavento, James Oliver, Edward Siwek, the Estate of George Karl, and the Estate of Michael Kill (collectively "Defendant Officers"), by their attorneys, move this Honorable Court for an order precluding Plaintiff's expert, William Gaut, to testify concerning certain opinions. In support of this motion, defendants state as follows:

**BACKGROUND**

Plaintiff alleges deprivations of his constitutional rights, along with state common law claims, against the Defendant Officers. Specifically, Plaintiff alleges he was wrongfully convicted of the double murder of Derrick Frazier and Ledell Clayton and the attempted murder and aggravated battery of Clifford Frazier. Plaintiff claims that these convictions stem from the unduly suggestive identification procedures employed by the Defendant Officers. Thus, Plaintiff alleged in his operative complaint that the Defendant Officers violated his due process right to a fair trial by employing unduly suggestive identification procedures.

Plaintiff has also alleged that the Defendant Officers failed to intervene to prevent the unduly suggestive identification procedures and a conspiracy among the Defendant Officers to employ unduly suggestive identification procedures. Moreover, Plaintiff alleges a Fourth

Amendment claim for pretrial detention absent probable cause. Regarding the state law claims, Plaintiff alleged a common law malicious prosecution claim, a common law intentional infliction of emotional distress claim, and common law conspiracy claim.

### A. William Gaut's Opinions

Dr. Gaut opines that certain Defendant Officers utilized improper identification procedures which led to Clifford Frazier identifying Plaintiff as the offender. *See* Gaut's Expert Report, pg. 9-15, attached hereto as Exhibit A. Part of this opinion is based on Dr. Gaut's opinion that Plaintiff would have been able to see through the "one-way mirror" when Plaintiff sat for a lineup viewed by Clifford on February 26, 1994. *Id.* at p. 14.

### ARGUMENT

A district court's decision to exclude expert testimony is governed by Federal Rules of Evidence 702 and 703, as construed in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). When evaluating the admissibility of expert evidence, the district court considers whether the expert is qualified, whether his methodology is scientifically reliable, and whether the testimony will assist the jury in understanding the evidence or in determining the fact in issue. *Hartman v. EBCSO Indus., Inc.*, 758 F.3d 810, 817 (7th Cir. 2014). A district court's inquiry under *Daubert* is a flexible one and courts have wide latitude in performing this gate-keeping function. *Id.* at 818. "The key to the gate is not the ultimate correctness of the expert's conclusions," but rather "it is the soundness and care with which the expert arrived at her opinion." *C.W. ex rel. Wood v. Textron, Inc.*, 807 F.3d 827, 834 (7th Cir. 2015). The proponent of the expert evidence bears the burden of demonstrating that the expert's testimony would satisfy the *Daubert* standard by a preponderance of the evidence. *Lewis v. Citgo Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).

**A.     Dr. Gaut's Opinion that Plaintiff Could See Thru the One Way Mirror During the February 26, 1994 Lineup Should be Barred as it is Unreliable.**

Rule 703 requires an expert to rely on facts or data as opposed to subjective impressions. *Brown v. Burlington No. Santa Fe Ry. Co.*, 765 F.3d 765, 772 (7th Cir. 2014). Although an expert's opinion must be founded on sufficient facts or data, the soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact. *Manpower, Inc. v. Ins. Co. of Penn.*, 732 F.3d 796, 806 (7th Cir. 2013). A district court enjoys broad latitude in deciding how to determine reliability and in making the ultimate reliability determination. *Higgins v. Koch Dev. Corp.*, 794 F.3d 687, 704 (7th Cir. 2015).

In his expert report, Dr. Gaut explains that one-way mirrors work "if the difference in the amount of light between the two rooms is great enough." *See* Ex. A at p. 15. Dr. Gaut concluded that Plaintiff could see through the one-way mirror on February 26, 1994, based on two things: first, Plaintiff's investigator was able to see through the one-way mirror on September 5, 2018, when he inspected the lineup room and mirror; second, Plaintiff's investigator took light readings of the participant room on September 5, 2018. *Id.* Dr. Gaut concluded that Plaintiff's investigator's inspection of the lineup room corroborates Plaintiff's testimony. *Id*.

Although Dr. Gaut attempts to tie his opinion that Plaintiff could see through the one-way mirror on February 26, 1994, to the factual underpinnings as reported by Plaintiff's investigator in September 2018, he is unable to do so given the nearly 25 year gap between the two events. Plaintiff's investigator's inspection and the light readings for one day under one particular set of circumstances are not "factual underpinnings" for which one can determine whether an individual could see through the one-way mirror twenty-five years prior under a different set of circumstances. For example, Dr. Gaut does not in any way take into account or even mention the

twenty-five year gap or the different circumstances between the lineup and inspection, like changes in the artificial lighting in the participant room or the differences in the natural lighting.

Moreover, Dr. Gaut's opinion that Plaintiff could see through the one-way mirror as Plaintiff described is improper as it is merely an attempt to bolster Plaintiff's credibility. The weight and credibility of witness testimony is the exclusive province of the jury and experts are not permitted to offer opinions as to the believability and truthfulness of witness testimony. *See United States v. Hall*, 165 F.3d 1095, 1107 (7th Cir. 1999) ("[T]he credibility of eyewitness testimony is generally not an appropriate subject matter for expert testimony because it influences a critical function of the jury – determining the credibility of witnesses.").

In this case, the parties dispute whether a participant could see through the one-way mirror during the lineup on February 26, 1994. Plaintiff testified that he could, but another participant in the lineup, Joseph Barnes, testified that one could not see through the one-way mirror. Although Dr. Gaut could properly choose either of the competing testimony in reaching his conclusions that is not what he did. *See* Fed. R. Evid. 702, advisory committee's note (2000 amends) (stating when facts are in dispute, experts can reach different conclusions based on competing versions of facts). Rather, Dr. Gaut concluded that Plaintiff's investigator's "inspection of Area 2 thus provides corroboration for Mr. Bolden's version of the events." Ex. A at p. 15. In essence, Dr. Gaut is opining that the jury should believe Plaintiff's version of the lineup over Barnes' version because Plaintiff's investigator's inspection of the lineup room corroborated Plaintiff's version. Such an opinion is not permissible under Rule 702.

**B.    Dr. Gaut's Opinion that the Defendants Violated their Obligations Under *Brady* Should be Barred as the District Court Previously Granted Judgment in Favor of the Defendants as to Plaintiff's *Brady* Claim.[1]**

---

[1] Defendant Officers have separately moved *in limine* to bar evidence that any evidence was destroyed, suppressed or fabricated based on the factual findings in the district court's summary judgment ruling. *See* Defendant Officers Motion *in Limine* No. 4. Defendant Officers incorporate the arguments in their Motion in Limine No. 4 as though

Dr. Gaut devotes approximately ten pages of his report to opining and discussing the Defendants' conduct as it relates to their *Brady* obligations. *See*. Ex. A at p. 17-27. Dr. Gaut begins by stating "Officers' obligations under *Brady* were well known in 1994, and generally accepted police practices in 1994 made clear that police officers had a duty to provide all material evidence to prosecutors and defendants." *Id*. at p. 17. Dr. Gaut then opines that "[t]he evidence demonstrates that defendants violated these duties and substantially departed from generally accepted law enforcement standards by withholding, failing to preserve, and/or destroying material evidence in this case." *Id*. Dr. Gaut then goes on to discuss a number of pieces of evidence for which he opines that the Defendants withheld, concealed, or destroyed in violation of *Brady*. *Id*. at p. 17-27.

However, Dr. Gaut's *Brady* opinions will not assist the jury in understanding the evidence or in determining a fact in issue, because the district court already granted judgment in favor of Defendants on Plaintiff's *Brady* claim. *See* Dkt. No. 276. Thus, Dr. Gaut's opinions on the specific pieces of evidence which were allegedly destroyed, suppressed, or withheld are irrelevant.

### 1. Information Related to Cynthia Steward

Dr. Gaut opines that the defendants violated generally accepted police practices and standards by withholding, concealing, and destroying exculpatory information obtained from Steward. Although Detectives Karl and Siwek documented one interview of Steward, she was interviewed on four other occasions none of which were documented. *Id*. at p. 17-18. During one of the undocumented interviews, Steward allegedly stated that Anthony Williams ordered at hit on the victims and another individual, Andre Kimbrough, was asked to carry out the hit. *Id*. at

---

fully set forth herein.

18. During another interview, officers searched, took, and suppressed keys belonging to Ledell Clayton, possibly for a safety deposit box, and Clayton's bank records. *Id*. During this interview, the officers took notes of phone numbers and other information. *Id*. at p. 19. Finally, Steward told the officers that $100,000.00 of drug sale proceeds were stored at Derrick and Clifford Frazier's mother's house. *Id*. at 18-19. None of this information was contained in any of the police reports. *Id*. at 17-19.

   The district court, in its summary judgment order addressed and rejected all of the issues raised by Dr. Gaut relating to Steward. First, regarding Stewart's information that the victims had a gang hit placed on them by Anthony Williams, the district court found that this evidence was not exculpatory and immaterial. Dkt. No. 276 at p. 42. In fact, this evidence may have been inculpatory to Plaintiff as it would have put his gang involvement at issue. *Id*. at p. 43. The court also concluded that whether the detectives followed-up on the leads provided by Steward, it would not have made a difference, because the State's theory of the case was Anthony Williams directed Plaintiff to commit the murders, thus providing Plaintiff with the opportunity to discredit the investigation he had the opportunity to do so. *Id*. at p. 44.

   Second, regarding the search of Clayton's house, the district court found there was "no evidence of who destroyed" the items recovered. Dkt. No. 276 at p. 27. Specifically, the district court found that Plaintiff was missing several links between the seized key and any issue in this case. Dkt. No. 276 at p. 28. The court reasoned that Plaintiff was attempting to argue that Karl or Oliver took the key to gain access to Clayton's safety deposit box in order to steal Clayton's money. *Id*. However, the court found there was no evidence to support such a claim. *Id*. Regarding the search findings, the district court found that "there was no evidence of what the seized evidence was." Dkt. No. 276 at p. 28. The court, having reviewed the record found that

Steward testified that the officers "took different papers" bus she did not know what those papers were. *Id*. (citing Dkt. 254-17 at 118:2-6). She also testified that the officers took down names and phone numbers, but Plaintiff offered no evidence of whose names they were and from where they came. *Id*. The court concluded that without evidence of what the seized documents were and whose names the officers took down, a jury could not infer the evidence's value to Plaintiff. *Id*. The court concluded that "to find that … defendants were personally involved in the destruction of the [seized] evidence, would be sheer conjecture. *Id*.

    2.    *Evidence Related to Clifford Frazier*

Similar to the issues with Cynthia Steward, Dr. Gaut gives several opinions regarding evidence related to Clifford Frazier. Ex. A at p. 19-21. First, Dr. Gaut opines that "[t]he evidence also indicates that Pesavento, Karl, Siwek, and Oliver suppressed a police report authored by Officer Maurice Willis on January 30, 1994, reflecting an interview he conducted with [] Oliver of Clifford Frazier." Ex. A at p. 19. Second, Dr. Loftus states that Pesavento, Karl, and Siwek failed to disclose the property inventory report for Clifford Frazier's .40 caliber handgun. *Id*. at 20. Third, Dr. Gaut states that Oliver concealed that he took a safety-deposit key from Derrick Frazier and requested Clifford's assistance to gain access to the safety-deposit box. *Id*. Finally, Dr. Gaut states that the assigned detectives would have been informed and should have documented that other police officers recovered 30 guns from Clifford Frazier subsequent to the double murder. *Id*. at 21. Dr. Gaut opines that this information was not properly documented or was actually suppressed. *Id*. at p. 19-21.

Once again, the district court addressed all of these issues in its summary judgment ruling. First, regarding the Willis report, the district court found that the report was not material, would have been cumulative of Detective Baker's testimony at the criminal trial, and provided

very weak impeachment of Clifford. *See* Dkt. No. 276 at p. 40, 42. Second, regarding the property inventory report for the .40 caliber handgun, the district court found that even if it was suppressed it was not material because there is little practical difference between being arrested and not being charged and never being arrested to begin, which is what Clifford testified to at trail. *Id*. at 36. Although Dr. Gaut concludes that the property inventory report would have alerted Plaintiff to request additional testing on Clifford's gun, in order to do the testing the gun would have to be available, but the gun was destroyed. "[T]here is no evidence that any of the defendants are personally responsible for the gun's unavailability. *Id.* at 23. Without any evidence that any of the defendants acted or refrained from acting intentionally to cause the gun's destruction of intent or malice for Plaintiff's state law claims.

Third, regarding the safety-deposit key, the district court found that this evidence was not impeaching to Clifford because he did not comply with Oliver's request, thus it actually bolsters Clifford's credibility. *Id*. at p. 35, fn. 11. Finally, regarding the 30 guns recovered from Clifford, the district court concluded that this information was not suppressed as Clifford testified at trial that he had guns in his apartment and Plaintiff's attorney could have then elicited the exact number of guns that he had. *Id*. at p. 35-36.

   *3. 911 Recording and Dispatch Cads*

Dr. Gaut states that the detectives failed to preserve the 911 recording for the shooting outside the J&J Fish and the corresponding dispatch card and that such failure violated standard police practices. Ex. A at p. 21-22. In its summary judgment ruling, the district court found that Plaintiff had no evidence that Pesavento and Siwek had knowledge that the tape would be destroyed. Dkt. No. 276 at p. 21. Absent such knowledge, Pesavento and Siwek's actions in not preserving the tape "would be negligence at most." *Id*. As such, Dr. Gaut's opinion on this issue

cannot support an inference of malice or intent related to Plaintiff's state law claims. *See id*. at pp. 22-23 (stating violation of general order to preserve evidence would only raise inference of bad faith if the detectives directed the recording to be destroyed or knew that the recording would be destroyed if they did not act).

    4.    *Interview Notes*

Dr. Gaut opines that the defendants destroyed various interview notes which were required to be produced to Plaintiff pursuant to Chicago police department polices. Ex. A at p. 22. Specifically, Dr. Gaut faults the detectives for not producing interview notes from (1) the canvass of the Minerva crime scene; (2) the interviews of the J&J Fish employees; (3) interviews of the Ferguson brothers; (4) an interview with Anthony Williams; and (5) multiple meetings with Clifford Frazier. *Id*. at p. 22-24. However, even with the benefit of Dr. Gaut's report at the summary judgment stage, the district court specifically found that "[t]here is no evidence that defendants were the ones who failed to preserve the notes or destroyed them." Accordingly, this Court should not allow Dr. Gaut to testify otherwise.

## Conclusion

Dr. Gaut's expert opinions should be limited and narrowed. Dr. Gaut's opinion that Plaintiff could see through the one-way mirror on February 26, 1994, based on an investigator's report and light reading from 2018 is unreliable and should be barred. Moreover, this opinion is merely an improper attempt to bolster Plaintiff's testimony and discredit Barnes' testimony. Dr. Gaut's opinions regarding the alleged withholding, failure to preserve, and destruction of certain evidence should be barred as the district court has already granted summary judgment in the Defendants' favor on Plaintiff's *Brady* claim and the lack of materiality and evidence of bad faith on the defendants' part make such opinions irrelevant to any issue regarding Plaintiff's state

law claims.

Accordingly, the Defendant Officers request that this Court grant their Motion in *Limine* preclude certain opinions from William Gaut.

Respectfully submitted,

/s/ *Brian J. Stefanich*
One of the Attorneys for Defendant Officers

Andrew M. Hale (ahale@ahalelaw.com)
Brian J. Stefanich (bstefanich@ahalelaw.com)
William E. Bazarek (wbazarek@ahalelaw.com)
Hale & Monico, LLC
53 W. Jackson Blvd., Suite 330
Chicago, IL 60604
Ph. (312) 341-9646
Fax (312) 341-9656

## **CERTIFICATE OF SERVICE**

I, Brian J. Stefanich, an attorney hereby certify that I filed the attached document on October 10, 2019, with the Court's CM/ECF system, which sent electronic copies of the same to all counsel of record.

/s/ *Brian J. Stefanich*