IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EDDIE L. BOLDEN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17 C 00417 |
| | ) | |
| vs. | ) | Honorable Steven C. Seeger |
| | ) | |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION *IN LIMINE* NO. 3 TO BAR EVIDENCE OF RODERICK STEWART'S PRIOR
CONVICTIONS, OUT-OF-COURT STATEMENTS, AND OTHER ALLEGED ACTS**

Plaintiff Eddie L. Bolden, by his undersigned counsel, respectfully submits this Response in Opposition to Defendants' Motion *in Limine* No. 3 to Bar Evidence of Roderick Stewart's Prior Convictions, Out-of-Court Statements, and Other Alleged Acts (Dkt. 310).

**INTRODUCTION**

Defendant Officers ("Defendants") request from this Court both a sword and a shield. In a case that is supposed to be about Defendants' improper conduct, their strategy is to re-try Plaintiff for the double homicide. In doing so, they plan to go as far as to call Roderick Stewart as a witness, the man Plaintiff saw fighting with Clifford Frazier ("Clifford") on January 29, 1994 while Plaintiff was inside J&J Fish. Defendants' position is that the man who fought with Clifford is the person who shot Clifford, Derrick Frazier, and Ledell Clayton, and therefore, they label Plaintiff's prior statements about seeing Stewart fighting with Clifford as Plaintiff's false identification of the murderer. Even though Plaintiff has no intention of calling Stewart in his case-in-chief, Defendants plan to elicit the testimony by questioning Plaintiff about Stewart's identity and then calling Stewart for the sole purpose of asking him if he committed the murders. Not surprisingly,

1

Stewart will testify that he did not commit the murders. Yet Defendants simultaneously want to raise a shield and preclude Plaintiff from challenging Stewart's credibility, including that he has been convicted of ten crimes and that he repeatedly lied about those convictions under oath during his deposition in this case. Although most of these crimes and the resulting terms of imprisonment date back more than ten years, Stewart's lies about them are recent, and thus, highly probative of his untruthfulness.

Defendants also inexplicably seek to exclude evidence that Stewart previously admitted to committing the murders. They want to call Stewart to deny committing the murders and then preclude Plaintiff from impeaching that testimony by asking Stewart about his prior statements to Raphael Taylor, Plaintiff's brother, admitting that he did commit the murders. In an attempt to justify this remarkable position, they confuse the rules of evidence and cite to Federal Rule of Evidence 608(b), which precludes extrinsic evidence to prove a witness's character for untruthfulness. That is not what Plaintiff will be doing. Plaintiff will question Stewart about his prior admission to Taylor to impeach his court testimony and then call Taylor to perfect that impeachment. This is exactly what Federal Rule of Evidence 613 allows. *See* Fed. R. Evid. 613 (stating that extrinsic evidence of a witness's prior inconsistent statement is admissible if the witness is given an opportunity to explain or deny it).

## **BACKGROUND**

Defendants' representations about Stewart's criminal history are incorrect as to both the quantity of convictions and the underlying crimes. Defendants assert that Stewart has eight convictions that are older than ten years. Mot. at 2. However, Stewart's criminal history report reveals at least ten convictions. First, on June 8, 1989, Stewart was found guilty of criminal trespass to a vehicle. When asked about his criminal history at his deposition, Stewart failed to

2

include this conviction. *See* Ex. A, Excerpts of Deposition Roderick Stewart, at 56:10–21.

On January 30, 1995, Stewart was found guilty of possession of cannabis and sentenced to one day of imprisonment. On March 28, 1996, Stewart was again convicted of possession of cannabis as well as possession of cocaine with intent to distribute and was sentenced to four years imprisonment. When questioned at his deposition, Stewart admitted to possession of cannabis but denied the cocaine. *See id.* at 53:2–20. Stewart instead claimed that the police officers "found it in the hallway" and falsely accused him. *See id.*

On February 11, 1999, Stewart was convicted of unlawful use of a weapon by a felon, aggravated battery in a public place, and aggravated battery of a police officer. For these crimes, Stewart was sentenced to two years imprisonment. But at his deposition, Stewart denied committing aggravated battery of a police officer, claiming instead that a police officer choked him while he was handcuffed. *See id.* at 54:10–55:15. Stewart also denied his unlawful use of firearms conviction, claiming that the gun found in his car did not belong to him and that the police officers falsely accused him due to his criminal history. *See id.* at 55:16–56:5.

On March 27, 2002, Stewart pleaded guilty to possession of cocaine and was sentenced to 18 months imprisonment. When questioned at his deposition, Stewart claimed that police officers pinned the crime on him because he ran away from them. *See id.* at 51:8–52:9. Stewart also testified that he pleaded guilty despite his innocence because his lawyer told him he "wouldn't have to do that much time." *Id.* at 51:1–7. Subsequently that year, on May 14, 2002, Stewart was found guilty of domestic battery and sentenced to five years imprisonment.

On September 1, 2004, Stewart was found guilty of violating an order of protection, theft, negligent driving, and criminal trespass to vehicle. For these crimes, Stewart received a sentence of fifteen years imprisonment, his longest term of imprisonment to date. At his deposition, Stewart

3

admitted only to violating the order of protection and denied the other three crimes, claiming that he was wrongfully convicted through false eyewitness testimony. *See id.* at 49:1–50:6.

In addition to Stewart's prior convictions, Defendants' motion seeks to exclude the testimony of Plaintiff's brother, Raphael Taylor.[1] At his deposition, Taylor testified that a few months after Plaintiff's arrest in 1994, Stewart confronted Taylor at the Stateway Gardens housing project, told him to leave the premises, and pointed a gun at his face saying, "I caught you with your guard down. Let your brother know that." Ex. B, Excerpts of Deposition of Raphael Taylor, at 52:23–53:8. Taylor also testified that Stewart threatened Plaintiff's family members and beat up Plaintiff's father. *Id.* at 65:9–67:13.[2] Taylor further testified that before Plaintiff's criminal trial, he unexpectedly bumped into Stewart at a shopping mall. At that time, Stewart admitted that he had committed the crimes for which Plaintiff had been wrongfully convicted, saying something to the effect of, "I'm sorry your brother had to go to jail for something he didn't do, but I can't turn myself in." *Id.* at 47:10–22. Taylor's memory of Stewart's admission is memorialized in a sworn affidavit from April 1997, which provides that in January 1997, Stewart approached Taylor and said, "It's too bad that Lynier [referring to Plaintiff] . . . got life for those murders that I did, but it is better him than me!" *Id.* at 50:8–52:1; *see also* Ex. C, Affidavit of Raphael Taylor.

## ARGUMENT

### I. Stewart's Prior Convictions Are Admissible Pursuant to Rule 609 for Purposes of Impeachment.

Defendants incorrectly assert that all of Stewart's prior convictions are governed by

---

[1] Plaintiff does not intend to call Taylor as a witness in his case-in-chief. However, if Defendants call Stewart as a witness in their case-in-chief, Plaintiff may call Taylor as a rebuttal witness.

[2] Plaintiff does not intend to question Stewart about his prior threats or assaults on Plaintiff's family members or offer rebuttal testimony on these topics unless Stewart opens the door by suggesting that he is a non-violent person.

Federal Rule of Evidence 609(b)(1), which addresses the admissibility of a witness's prior convictions if more than ten years have passed since the conviction or the witness's release from confinement. Fed. R. Evid. 609(b)(1). For Stewart's most recent conviction in 2004, he was sentenced to fifteen years of imprisonment, and therefore, it appears that he was released less than ten years ago. Accordingly, Rule 609(a)(1)(A) governs that conviction. For this particular conviction to be admissible, its probative value must outweigh its prejudicial effect. Fed. R. Evid. 609(a)(1)(A). For the other nine convictions, their probative value, supported by specific facts and circumstances, must substantially outweigh their prejudicial effect. Fed. R. Evid. 609(b)(1). For purposes of responding to Defendants' arguments, this is a distinction without a difference because all of Stewart's prior convictions are admissible under the more stringent standard set forth in Rule 609(b)(1).

Defendants contend that Stewart's prior convictions are "stale" and that crimes such as drug possession, unlawful use of a weapon, and battery "have little to do with truthfulness." Mot. at 3. It is not the fact of Stewart's convictions alone that reflect on his untruthfulness but also his false denials about the prior convictions during his deposition testimony that is probative here. Defendants have stated their intent to call Stewart as a witness to testify that he did not commit the murders for which Plaintiff was wrongfully convicted. Plaintiff should be permitted to challenge Stewart's credibility by pointing out his repeated denials of his past criminal acts.

The Seventh Circuit has held that a witness's untruthfulness at a deposition can be used to impeach his credibility at trial, even if the deposition testimony referred to a collateral matter. For example, in *Zahran v. Cleary Building Corporation*, defense counsel sought to attack the credibility of a witness by referencing his prior deposition testimony about his college degree and *alma mater*, facts largely irrelevant to the underlying claims in the case. Nos. 97-2813, 98-2122,

182 F.3d 923, 1999 WL 439402, at *3 (7th Cir. 1999). The plaintiffs argued that the defense line of questioning was "irrelevant, highly prejudicial, and that opposing counsel's use of the [deposition] transcript amounted to the improper admission of extrinsic evidence to prove up a collateral matter." *Id.* The Seventh Circuit affirmed the district court's finding that the prior testimony "was relevant insofar as it pertained to [the witness's] character for truthfulness or untruthfulness." *Id.*; *see also Allen v. Chi. Transit Auth.*, 317 F.3d 696, 703 (7th Cir. 2003) ("Perjury [at a deposition] is a circumstance to be weighed by the jury in determining a witness's credibility . . . ."); *Holmes v. Sood*, No. 02 C 7266, 2006 WL 1988716, at *2 (N.D. Ill. July 11, 2006) (suggesting that prior convictions more than ten years old may be admissible as impeachment evidence if the witness lied about them during his deposition or attempted to mislead counsel); *Byrd v. Wis. Dep't of Veterans Affairs*, 98 F. Supp. 3d 972, 988 (W.D. Wis. Apr. 3, 2015) ("[The witness] attended her deposition, and generally answered [defendant's] questions. If her answers were untruthful, or if she claimed to have no knowledge of events that she obviously experienced first-hand, then [defendant] is free to use this evidence to impeach [the witness's] credibility."). In the same way, Plaintiff should be able to present an argument to the jury that, given Stewart's repeated claims that he did not commit crimes to which he either pleaded guilty or was convicted, they should not believe his testimony that he did not shoot Ledell Clayton, Derrick Frazier, and Clifford Frazier. Granting Defendants' motion *in limine* would preclude Plaintiff from this valid line of impeachment.

Nor is Stewart's testimony about his prior convictions more prejudicial than probative. Defendants contend that Stewart's prior convictions will cause the jury to "improperly infer that Stewart committed the homicides." Mot. at 3. But as Defendants themselves point out, most of Stewart's convictions are from more than ten years ago, with several dating back to the mid-1990s.

6

Almost all the convictions relate to illegal drug possession and battery, crimes which are not likely to inflame a jury's passions. *Macon v. City of Fort Wayne*, No. 1:11-CV-119, 2012 WL 3745375, at *3 (N.D. Ind. Aug. 28, 2012) (rejecting defendant's argument that "domestic battery is inherently inflammatory and prejudicial"); *Jones v. Sheahan*, Nos. 99 C 3669, 01 C 1844, 2003 WL 21654279, at *5 (N.D. Ill. July 14, 2003) ("Certainly, evidence of a conviction for drug use does not carry with it the same potential for inflaming the jury as do convictions for murder or for sexual crimes."). Nor are the crimes similar enough to persuade a jury that due to his criminal history, Stewart had a propensity for murder. *See United States v. Smalls*, 752 F.3d 1227, 1240 (10th Cir. 2014) (affirming district court's decision that defendant's prior convictions for aggravated battery against household member was "dissimilar enough from the murder charge such that a jury would not convict [defendant] on the basis of propensity reasoning"); *United States v. Brooks*, 125 F.3d 484, 499 (7th Cir. 1997) (finding that "probative value was far outweighed by the prejudicial effect" where the drug use evidence in dispute was not similar to the charged act of bank robbery). Plaintiff will not argue that the commission of these crimes make it more likely that Stewart committed these murders. Rather, Plaintiff will argue that Stewart's credibility is suspect because he engaged in this criminal conduct and, more recently, lied about his prior conduct.

## II. Stewart's Prior Statements to Raphael Taylor Are Admissible for Purposes of Impeaching Stewart's Anticipated Testimony.

In seeking to exclude Stewart's prior admission to Raphael Taylor that he committed the crimes for which Plaintiff was wrongfully convicted, Defendants cite to Federal Rule of Evidence 608(b), Mot. at 8, which provides that "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." Federal Rule of Evidence 613(b), however, expressly permits the use of extrinsic

7

evidence to impeach a witness as long as he is "given an opportunity to explain or deny the [prior inconsistent] statement" and "an adverse party is given an opportunity to examine the witness about it." Fed. R. Evid. 613(b); *United States v. DeMarco*, 784 F.3d 388, 394 (7th Cir. 2015). Defendants concede that they expect Stewart to deny making any admissions to Taylor, and they do not dispute that they will have ample opportunity to examine him. Mot. at 7–8. Accordingly, Rule 613(b) authorizes Plaintiff to offer Taylor's testimony as extrinsic evidence, perfecting Stewart's impeachment. *See, e.g.*, *United States v. Fernandez*, 914 F.3d 1105, 1112 (7th Cir. 2019) ("If, at the other extreme, [a witness] denied making the statements, then of course it would have been entirely proper to ask [recipient of statement] what [the witness] had said.") (citing Fed. R. Evid. 613(b)).

Defendants nonetheless argue that Rule 613(b) should not apply. They ignore the impeachment value of the testimony and assert that Plaintiff is really offering Taylor's testimony to prove that Stewart in fact committed the crimes. They analogize this case to *Taylor v. National Railroad Passenger Corporation*, in which the Seventh Circuit stated that "impeachment should not be used as a mere subterfuge to get before the jury evidence not otherwise admissible." 920 F.2d 1372, 1376 (7th Cir. 1990) (internal quotation marks omitted). Defendants, however, fail to recognize the key distinction between *Taylor* and this case. In *Taylor*, the party that called the witness and chose to introduce the topic at issue was the same party that sought to introduce the extrinsic evidence of the contradictory statement. *See id.* at 1374. Furthermore, the line of questioning was about a "clearly collateral" matter. *Id.* at 1376. While Defendants contend that Plaintiff's goal at trial is "to show that Roderick Stewart committed the murders," Mot. at 9, they fail to recognize the import of the fact that Stewart is Defendants' witness, and it is Defendants, not Plaintiff, who wish to question Stewart on this topic. Thus, their reliance on *Taylor* is

8

misplaced. Plaintiff must be allowed to challenge Defendants' contention that Plaintiff falsely accused Stewart in the past through the impeachment of Stewart's testimony. *See United States v. Bowling*, No. 98-2110, 175 F.3d 1021, 1999 WL 164916, at *2 (7th Cir. 1999) (holding that witness who testified during direct examination that he did not know defendant had "opened the door" to impeachment by prior inconsistent statement that he and defendant had committed crimes together).

Defendants also cite to *United States v. McGee*, 408 F.3d 966, 982 (7th Cir. 2005), a case in which the court rejected the government's attempt to introduce extrinsic evidence of a prior inconsistent statement under Rule 613(b) and found instead that the evidence was prohibited by Rule 608(b). But just as in *Taylor*, the government in *McGee* chose to introduce the topic of questioning and then, when the witness denied the conduct, the government offered extrinsic evidence of the prior inconsistent statement. *Id.* at 980. In contrast, Plaintiff has no intention of calling Stewart as a witness. If Defendants call Stewart, Plaintiff's confrontation of Stewart with his prior statements directly responds to Defendants' chosen line of questioning on direct examination. Moreover, in *McGee*, the extrinsic evidence at issue was a tape recording of the witness telling his boss an "elaborate lie" then calling his wife to laugh about it. *Id.* at 982. Accordingly, the court found that "the force of the [extrinsic evidence] was not due to a comparison of [the witness's] statements on the tape and his equivocations at trial" but rather the lie "in and of itself." *Id.* Here, Taylor's testimony about Stewart's prior statements is in no way comparable to an admission of a lie that is recorded. Stewart's statements to Taylor are valuable because they contradict the testimony that Defendants plan to elicit from Stewart, namely, that he did not shoot Ledell Clayton, Derrick Frazier, and Clifford Frazier. Because Stewart's statements and Taylor's testimony fall squarely within the ambit of Rule 613(b), they should not be excluded.

9

Defendants also cite to *United States v. Dent*, 984 F.2d 1453, 1460 (7th Cir. 1993), in which the Seventh Circuit affirmed a district court's exclusion of evidence "not sought simply to impeach." The facts of *Dent* are clearly distinguishable. In that case, the defendant called his prior attorney as a witness purportedly to impeach his guilty plea, but the Seventh Circuit ruled that his true purpose was to prove that he did not commit the crime. *See id.* Again, this was a situation in which the party calling the witness was the same party seeking to elicit substantive testimony through the guise of impeachment. *See id.* In contrast, Plaintiff is simply seeking to attack the credibility of Defendants' witness through the witness's prior inconsistent statements.

### III. The Probative Value of Stewart's Prior Statements Is Not Substantially Outweighed by a Danger of Unfair Prejudice.

The probative value of Stewart's statements is not substantially outweighed by a danger of unfair prejudice, and therefore, the statements should not be excluded under Rule 403. Defendants assert that it would be "'impossible" for a jury presented with Stewart's prior inconsistent statements not to view them as evidence "that he committed the murders." Mot. at 9. This claim is, at best, ironic. Defendants seek to call Stewart for the sole purpose of testifying that he did not commit the murders. They then argue that evidence that contradicts that testimony would be unduly prejudicial or confusing. That tortured logic should be rejected out of hand. If the Court has any concerns about juror confusion or prejudice, they can be addressed with a limiting instruction directing the jury to consider the statements for impeachment purposes only. *See, e.g.*, *United States v. Sievert*, 82 F. App'x 492, 495 (7th Cir. 2003) ("Nothing in [appellant's] argument, moreover, convinces us that there is an overwhelming probability that the jurors could not do what the district court told them to do in plain English: consider [witness's] prior inconsistent statement only for the matter of impeachment."); *see also United States v. Nururdin*, 8 F.3d 1187, 1192 (7th Cir. 1993) ("[A]ny prejudicial effect that the introduction of the prior felony convictions could

have had was overcome by the court's limiting jury instruction, which directed that this evidence could not be used to demonstrate propensity to commit crime, but could only be used to impeach the defendant's testimony."). Moreover, a prior inconsistent statement is not prejudicial simply because it addresses the commission of a crime. *See, e.g.*, *United States v. Vasquez*, 635 F.3d 889, 897 (7th Cir. 2011) (affirming district court's decision to allow government to impeach witness with her prior inconsistent statement that defendant was "in trouble and likely to be convicted"); *Bowling*, 1999 WL 164916, at *2 (permitting impeachment of witness by prior inconsistent statement that he and defendant stole cars together). That is particularly true when the proponent of the testimony to be impeached raises the issue of the crime in direct testimony.

## **CONCLUSION**

For the foregoing reasons, Plaintiff Eddie L. Bolden respectfully asks this Court to enter an Order denying Defendants' Motion *in Limine* No. 3.

Dated: November 8, 2019

Respectfully Submitted,

*/s/ Valarie Hays*
Ronald S. Safer
Valarie Hays
Eli J. Litoff
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison Street, Suite 2900
Chicago, Illinois 60602
(312) 471-8700
rsafer@rshc-law.com
vhays@rshc-law.com
elitoff@rshc-law.com

Sandra L. Musumeci (*pro hac vice*)
RILEY SAFER HOLMES & CANCILA LLP
1330 Avenue of the Americas, 6th Floor
New York, New York 10019
(212) 660-1000
smusumeci@rshc-law.com

*Attorneys for Eddie L. Bolden*

## CERTIFICATE OF SERVICE

I hereby certify that on November 8, 2019, I caused the foregoing document to be electronically filed using the CM/ECF system, which will send notice of this filing to all counsel of record.

*/s/ Valarie Hays*
Valarie Hays
