IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EDDIE L. BOLDEN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17 C 00417 |
| | ) | |
| vs. | ) | Honorable Steven C. Seeger |
| | ) | |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT OFFICERS'
MOTION *IN LIMINE* NO. 11 TO BAR THE TESTIMONY OF DALE TIPTON**

Plaintiff Eddie L. Bolden, by his undersigned counsel, respectfully submits this Response in Opposition to Defendant Officers' Motion *in Limine* No. 11[1] to Bar the Testimony of Dale Tipton (Dkt. 318).

## INTRODUCTION

Defendants seek to bar the testimony of former Federal Bureau of Investigation ("FBI") agent Dale Tipton because he was not disclosed as a potential witness until after the close of fact discovery. This argument fails because the fact discovery deadline was extended by agreement of the parties. Furthermore, any delay was justified because it was caused by the City's discovery and production failures. Finally, the delay was not prejudicial to Defendants.

Defendants also contend that Tipton's testimony is irrelevant, despite the fact that Defendant Edward Siwek provided Tipton with a copy of a report reflecting a Chicago Police Department ("CPD") interview of Clifford Frazier ("Clifford") that was never disclosed to Plaintiff despite its exculpatory contents. Tipton will testify that based on his own report of his meeting

---

[1] Defendants' motion is incorrectly labeled No. 14.

1

with Siwek and the organization of his investigative materials, he can tell that Siwek provided him with the Clifford interview report. Defendants' sole basis for claiming irrelevance is that Tipton is speculating that the order in which his case materials were produced in this litigation (and the order in which they were subsequently shown to Tipton) is the same order in which they appeared in his original FBI file. At best, this argument goes to the weight and not the admissibility of the evidence. It certainly does not make Tipton's testimony irrelevant.

## BACKGROUND

### I. Delays in Receiving the FBI Production

During this litigation, Plaintiff learned that at the time Derrick Frazier and Ledell Clayton were murdered on January 29, 1994, the FBI was conducting an investigation into Anthony Williams, the purported buyer of the cocaine being sold by Frazier and Clayton that evening. After obtaining this information, Plaintiff served a subpoena and *Touhy* Request on the FBI on November 28, 2017, seeking, among other things, information in the FBI's possession related to the murders of Frazier and Clayton. Ex. A, Nov. 28, 2017 FBI Subpoena.

The FBI made its first production in response to the subpoena on March 16, 2018. Among the heavily-redacted documents produced was a report authored by CPD Officer Maurice Willis ("the Willis Report"). Ex. B, Willis Report. The report reflected an interview of Clifford conducted by Willis and Defendant James Oliver on the night of the shooting. The Willis Report appeared in the FBI's production amongst a group of CPD reports immediately following a report by FBI Special Agent Dale Tipton, in which Tipton describes meeting with Siwek on March 4, 1994 and receiving information from Siwek about the Frazier/Clayton homicides and arrest of Plaintiff ("the Tipton Report"). *See* Ex. C, Tipton Report. Plaintiff's counsel continued to negotiate with the FBI over the scope of its redactions, and on April 16, 2018, the FBI finally

2

produced an unredacted copy of the Willis Report.

The Willis Report was relevant and favorable to Plaintiff for several reasons. In the report, Clifford described the offender as wearing a white coat, which directly contradicted the only eyewitness at the Minerva crime scene, who described the offender as wearing dark-colored clothing. The report also said that Clifford described the offender as having a medium complexion, when on the very same night Clifford told Defendants' partner that the offender had a light complexion. Furthermore, the Willis Report was the only report that documented Clifford as describing the shooter as short as 5'10", several inches shorter than Plaintiff. Additionally, the Willis report stated that Clifford identified Anthony Williams as the buyer of the cocaine on the night in question. Pesavento and Karl omitted this information about Williams from their own report of Clifford's statements, which raised questions about their motives with respect to Williams and called into further question their failure to question Williams about the drug transaction and the murders. The report also indicated that Clifford had been read his Miranda rights, further supporting the fact that he was arrested by Willis and Oliver on the night of the shootings, and thus, had additional incentives to cooperate with the police to avoid being charged. Finally, the Willis Report showed that Clifford falsely identified David McCray as the person who kicked his gun under the icy machine inside of J&J Fish. McCray was arrested and charged with unlawful use of a weapon on the basis of that false identification, whereas Clifford, *the owner of the gun*, was never charged with anything. This provided further evidence of an agreement between Clifford and the police. Plaintiff's counsel continued to negotiate with the FBI for several months over the scope of its production, and the FBI made supplemental productions.

Plaintiff's negotiations with the FBI regarding its production did not conclude until June 5, 2018. In August and September of 2018, Plaintiff sought further information from the FBI

regarding Tipton's interactions with Siwek, specifically seeking confirmation that Siwek was the officer that provided the CPD reports in the FBI file to Tipton. The FBI was unresponsive, so Plaintiff retained a private investigator to attempt to locate Tipton. Finally, on September 27, 2018, Plaintiff's counsel spoke to Tipton for the first time. After the interview concluded, Tipton signed an affidavit and Plaintiff's counsel produced a copy of the affidavit to all parties the same day. *See* Ex. D, Sept. 27, 2018 Email from Eli Litoff to Opposing Counsel. The affidavit confirms that based on Tipton's standard practices at the time, he would have prepared the Tipton Report after meeting with Siwek, and he would have included any documents provided by Siwek in his file immediately following the report. *See* Mot. Ex. A, at ¶ 4.

Remarkably, neither the CPD, the Cook County State's Attorney's Office, nor the Cook County Public Defender's Office produced a copy of the Willis Report during this litigation. The FBI's copy was the only copy produced. In his summary judgment ruling, Judge Shah held that the report was exculpatory and that a reasonable jury could conclude that Oliver and Siwek suppressed the exculpatory information from prosecutors and from Plaintiff. *See* Dkt. 276, at 37-38. As discussed in Plaintiff's Response to Defendant's Motion *in Limine* No. 4, although Judge Shah held that the concealment of this evidence was insufficient to support Plaintiff's due process claim because timely disclosure of the report would not have changed the outcome of Plaintiff's criminal trial (due to impeachment evidence of Clifford being cumulative), Siwek's intentional suppression of this exculpatory information and Oliver's knowledge of the contents of the report remain relevant to Plaintiff's remaining claims.

    **II.**    **The City's Conflicting and Constantly Shifting Positions During Discovery.**

In order to understand the timing of Plaintiff's disclosure of Tipton as a potential witness, it is first critical to understand the City's course of conduct during discovery. Plaintiff's efforts to

4

obtain relevant files from the City began back in April 2017, when Plaintiff issued requests for production seeking, among other things, copies of all official and unofficial files relating to the crimes for which Plaintiff was wrongfully convicted. The City's policies and procedures describe the existence of two distinct files—an "Investigative File" and a "RD File."[2] Plaintiff repeatedly requested information about these files through both written discovery and in informal communications with the City's counsel.[3] Throughout discovery, the City provided conflicting and constantly changing responses to Plaintiff's inquiries, severely hindering Plaintiff's investigation of this case.

On May 1, 2018, counsel for the City informed Plaintiff that the "records division file" for **both** RD numbers related to this case[4] were destroyed in 2009, and thus, could not be produced to Plaintiff. *See* Ex. E, May 1, 2018 Email from Elan Shpigel to Valarie Hays. Six weeks later, on June 15, 2018 (after the purported "close" of fact discovery), the City's counsel changed its position without explanation. It stated that both the Investigative File and the records division file for **one** of the RD numbers—the aggravated battery—had been destroyed, but that both files still existed for the double homicide. *See* Ex. F, June 15, 2018 Email from Elan Shpigel to Eli Litoff. On this same date, the City, for the first time, produced and identified the Bates range for the complete Investigative File for the double homicide. *See id*.

---

[2] RD File is short for "Records Division" File. This is also referred to as a "Permanent Retention File."

[3] These document requests included production, "as they are kept in the usual course of business," of all CPD case materials, the official file for the investigation, unofficial "working" or "street" files, destroyed case materials, and the identifying features of the investigative file. Additionally, Plaintiff issued an interrogatory requesting that the City identify any responsive documents that have been "lost, discarded, or destroyed" and provide detailed information concerning the circumstances under which the documents were lost, discarded, or destroyed. Finally, Plaintiff sought similar information in his 30(b)(6) notice.

[4] An "RD Number" is a records division number generated by the Chicago Police Department for each criminal case investigated by the CPD. In this case, there were two RD Numbers created: one for the murders of Derrick Frazier and Ledell Clayton, and one for the aggravated battery of Clifford Frazier.

5

On June 25, 2018, counsel for the City again represented, in a court filing, that the Investigative File for the aggravated battery was destroyed in 2009. *See* Dkt. 208 at 4. The City further represented that there was no harm to Plaintiff because the aggravated battery Investigative File "was produced to the State's Attorney's Office in the mid-90s" and the State's Attorney's Office had recently produced its files to all parties. *Id.* at 5. Contrary to the City's assertion, no such file was produced by the State's Attorney's Office. On July 17, 2018, after numerous requests by Plaintiff's counsel to identify the bates range for the Investigative File that was purportedly in the State's Attorney's production, counsel for the City sent Plaintiff's counsel a letter detailing all of the reports that they believed may have been part of the "destroyed" Investigative File. *See* Ex. G, July 17, 2018 Letter from Tiffany Fordyce to Valarie Hays.

Finally, in a stunning turn of events, on August 30, 2018, the City changed positions yet again, with no notice and no explanation. The City's 30(b)(6) representative, Patrick Loftus, testified that there was ***only one*** Investigative File ever created for Plaintiff's case, and that ***all reports for both RD numbers had been combined into that single file***. *See* Ex. H, Excerpts of Deposition of Patrick Loftus, at 71:14–72:12. In other words, there was never any Investigative File that had been destroyed pursuant to the City's retention policies, and the Investigative File produced in this litigation should have contained **all** "official Department reports, notes, memoranda, and miscellaneous documents generated or received" by the detectives during the course of investigating **both** the double homicide and the aggravated battery. *See* Ex. I, Excerpt of Detective Division Standard Operating Procedures, at § 18.2(A). Furthermore, this file should have been provided to "all parties engaged in [Plaintiff's] criminal proceeding (including the judge, state's attorney, defense attorney, and [Chicago Police] Department members)." *Id.* As detailed below, only at this point did Plaintiff have conclusive proof of Siwek's intentional

6

withholding of exculpatory evidence.

## ARGUMENT

### I. Tipton's Testimony Should Not Be Barred Due to Late Disclosure.

Defendants contend Tipton's testimony should be barred because he was not disclosed as a potential witness before the close of fact discovery. As an initial matter, Plaintiff's disclosure of Tipton was timely, because fact discovery continued well past the original deadline. But in any event, as Defendants concede, a witness's testimony should not be precluded due to late disclosure if the delay was "substantially justified" or "harmless." Mot. at ¶ 9; *see also* Fed. R. Civ. P. 37(c)(1). A district court has broad discretion in determining whether late disclosure is substantially justified or harmless. *David v. Caterpillar*, 324 F.3d 851, 857 (7th Cir. 2003). The Seventh Circuit has indicated that the following factors guide the court's discretion: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *Id.* In this case, Plaintiff's delay in disclosing Tipton as a potential witness was both justified and harmless, and thus, his testimony should not be barred even if the disclosure was untimely.

#### A. Plaintiff's Disclosure Was Timely.

Defendants assert that the disclosure of Tipton as a potential witness was untimely because it came after June 8, 2018, which they contend was the close of fact discovery. While Judge Shah did order a June 8 fact discovery close, that date did not hold. As set forth above, the City's conduct during discovery caused significant delays, resulting in fact discovery continuing for several months after the original deadline.

Plaintiff was forced to file a motion to compel on June 20, 2018, seeking an order compelling the City to produce 30(b)(6) witnesses on several topics. *See* Dkt. 204. The parties

7

subsequently conducted six 30(b)(6) depositions between June 22, 2018 and August 30, 2018. Notably, after the City claimed it was struggling to find qualified 30(b)(6) witnesses to testify, Judge Shah suggested at a status hearing on July 19, 2018 that the Plaintiff simply depose certain City employees as regular fact witnesses. *See* Ex. J, July 19, 2018 Transcript of Proceedings, at 8:21-9:11. After the City ultimately failed to present sufficient 30(b)(6) witnesses, Plaintiff heeded Judge Shah's advice and sought to depose an additional fact witness, ultimately being forced to file another motion to compel on September 9, 2018. *See* Dkt. 225. Plaintiff deposed this individual on October 3, 2018.

In addition to the continued fact discovery with respect to the City's witnesses, Defendants also deposed two additional fact witnesses, Cynthia Steward and Roderick Stewart, after the purported close of fact discovery. Those depositions took place on September 6, 2018 and November 14, 2018, respectively.[5]

Accordingly, the notion that fact discovery closed on June 8, 2018 is simply incorrect. Plaintiff's disclosure of Tipton as a potential witness on September 27, 2018—amidst continued fact discovery being conducted by Plaintiff and Defendants—was timely.

### B. Any Delay in Disclosing Tipton was Substantially Justified.

Even if the continued discovery efforts discussed above do not render Tipton's disclosure timely, they certainly make the delay substantially justified. The FBI did not complete its production of documents to Plaintiff until June 5, 2018 and was not responsive when Plaintiff sought additional information thereafter. Plaintiff exercised substantial diligence in retaining a private investigator to locate Tipton, promptly interviewing him, and producing his affidavit to

---

[5] The parties also agreed to take the deposition of Brenda Lee after the completion of summary judgment briefing. Ms. Lee's deposition was delayed for some time and ultimately completed on October 11, 2019.

opposing counsel on the very same day.

Moreover, due to the City's conduct during discovery, it was not until after Patrick Loftus' deposition on August 30, 2018 that the facts concerning concealment of certain documents crystalized. The City's policies required that all "official Department reports, notes, memoranda, and miscellaneous documents generated or received" by the detectives during the course of investigating be maintained in the Investigative File, so that "all parties engaged in a criminal proceeding (including the judge, state's attorney, defense attorney, and [Chicago Police] Department members) [would have access to] the available written documentation about a criminal investigation." *See* Ex. I, at § 18.2(A). It was not until June 15, 2018 that Plaintiff was able to confirm that the City produced the complete Investigative File. *See* Ex. F. And it was not until the deposition of Patrick Loftus on August 30, 2018 that Plaintiff was able to refute the City's "innocent" explanation for why police reports like the Willis Report were not in the Investigative File. The City had always maintained that missing reports were located in the Investigative File for the aggravated battery, which had been destroyed in the ordinary course of business. Detective Loftus testified that was not true, and thus, it became clear that Siwek obtained some of the police reports that he gave to Tipton from the only Investigative File and the Willis report from another source. Despite being aware of the existence of the Willis report prior to Plaintiff's criminal trial and the fact that the report was not in the Investigative File (which was the file routinely produced to criminal defendants by the Chicago Police Department), Siwek still did not disclose the Willis report to Plaintiff or even add it to the Investigative File.

One of the factors the Court must consider is whether Plaintiff exercised "bad faith or willfulness … in not disclosing the evidence at an earlier date." *David*, 324 F.3d at 857. The circumstances demonstrate no bad faith here—to the contrary, there is nothing but diligence on the

part of Plaintiff in the face of substantial roadblocks by both the FBI and the City. Accordingly, any delay in disclosure was justified.

## C. Any Delay in Disclosing Tipton was Harmless.

Even if the delay in disclosing Tipton as a potential witness was not substantially justified, it was harmless. Defendants have tried the prejudice argument in the past, and the argument was rejected. During the summary judgment proceedings, Defendants "object[ed] to any reliance on this affidavit based on the failure to disclose Dale Tipton in Rule 26(a)(1) disclosures and the untimely production of the affidavit after the close of fact discovery." *See* Dkt. 244 at 24 n.2. Judge Shah ruled that Defendants suffered no prejudice:

> Defendants argue that I should disregard Agent Tipton's affidavit because he was not disclosed in Bolden's Rule 26(a)(1) disclosures and the affidavit was produced to defendants after fact discovery in this case closed, but ***there is no prejudice to them since they had Tipton's report, and the affidavit contains no surprises not apparent from the report.***

Dkt. 276, at 38 n.15 (emphasis added). One of the factors the court must consider is the "surprise to the party against whom the evidence is offered." *David*, 324 F.3d at 857. There is no surprise here. Defendants were in possession of the Tipton Report detailing his meeting with Siwek since March 2018, months before the purported close of fact discovery in June. Tipton's affidavit merely confirms what was otherwise obvious from the FBI's file, namely, that the CPD reports in the FBI file that follow directly behind Tipton's report were provided by Siwek.

Defendants also had "the ability … to cure" the purported prejudice by seeking to depose Tipton. *See id.* Fact discovery continued and the parties (both by agreement and by order of the Court) conducted several fact-witness depositions after June 8, including after Tipton's disclosure in September:

- June 22, 2018: Dachae Blanton
- June 25, 2018: Thomas Sadler
- August 8, 2018: Joseph Keating

10

- August 16, 2018: Joseph Perfetti
- August 28, 2018: Steve Maris
- August 30, 2018: Patrick Loftus
- October 3, 2018: James Hickey
- September 6, 2018: Cynthia Steward
- November 14, 2018: Roderick Stewart
- October 11, 2019: Brenda Lee

Yet, Defendants never sent a subpoena and *Touhy* request to the FBI, never sought Plaintiff's consent to depose Mr. Tipton, and never sought relief from the Court to conduct additional discovery after the "close" of fact discovery. The Seventh Circuit has rejected attempts to bar witnesses from testifying under these circumstances. *See David*, 324 F.3d at 857 (affirming district court's decision to allow a witness to testify where he was "listed as a potential witness nearly a year and one-half before trial" and the defendant "did not seek a continuance so that it could obtain additional information to rebut [the witness's] testimony"). Like in *David*, Tipton's disclosure occurred over a year before trial (and ultimately, will end up being nearly two years before trial), and Defendants have taken no steps to cure the purported prejudice. Thus, Defendants' contention that they were prejudiced because they were unable to depose Mr. Tipton rings hollow and should be rejected.

## II. Tipton's Testimony is Probative of the Issues in Dispute.

Defendants also assert that Tipton's testimony should be barred because it is speculative and irrelevant. This argument is without merit. As set forth in Tipton's affidavit, he is expected to testify that based on his "personal knowledge," including his "knowledge of the FBI's procedures" in 1994, he would have prepared the Tipton Report, Ex. C, after meeting with Defendant Siwek. *See* Mot. Ex. A, at ¶ 4. He is also expected to testify that based on his "standard practices at the time," he would have placed any documents provided by Siwek directly behind the Tipton Report in his file. *Id.* Therefore, if the CPD reports (including the Willis Report) appeared

11

following the Tipton Report in the file, it means Siwek provided those reports to him. *Id.* Defendants assert that because Tipton does not currently know how the documents were kept in the original FBI file but only knows how they were produced in this litigation, his testimony "is entirely speculative" and should, therefore, be excluded. Mot. at ¶ 11.

Defendants' argument is flawed for several reasons. As an initial matter, it is Defendants who have engaged in speculation by assuming that the FBI did not produce its records "as they were kept in the ordinary course of business," as provided by Rule 45. *See* Fed. R. Civ. P. 45(e)(1)(A). There is no reason to believe the FBI failed to comply with their obligation under the rules of civil procedure. Moreover, Defendants' argument ignores that "evidence need not be conclusive proof in order to be admissible." *United States v. Leonard-Allen*, 739 F.3d 948, 956 (7th Cir. 2013); *see also Tellabs Operations, Inc. v. Fujitsu Ltd.*, 283 F.R.D. 374, 390 (N.D. Ill. 2012) ("[T]o satisfy the requirement of Rule 401, the evidence need not be conclusive on a given point or have great probative weight."). That Tipton cannot conclusively state that the FBI produced its file as it was kept in the ordinary course of business does not render his testimony speculative and irrelevant. Additionally, his testimony about the circumstances under which he created the Tipton Report is independently probative. Notably, Defendants ignore that Tipton also will testify that if he had received documents from other sources, he would have created a report similar to the Tipton report and placed it in front of those documents in the file. Mot. Ex. A, at ¶ 5. No other similar reports were produced by the FBI accompanied by CPD case reports. This further demonstrates that Siwek provided the Willis Report to Tipton.

Tipton's testimony is based on his personal knowledge, including his "knowledge of the FBI's procedures" and his "standard practices at the time." *See* Mot. Ex. A, at ¶ 4. His testimony about his report, his meeting with Siwek, and his belief that Siwek provided the Willis Report has

12

sufficient foundation to assist the trier of fact in determining whether Siwek provided Tipton the Willis Report. *See, e.g.*, *United States v. Santos*, 65 F. Supp. 2d 802, 820 (N.D. Ill. 1999) (admitting witness testimony under Rule 701 where the witness offered an opinion based on personal knowledge of his employer's "standard practice" because "the record include[ed] sufficient foundations to satisfy the requirements of personal knowledge as to the operations" of his employer). That Tipton does not have personal knowledge regarding the FBI's subpoena response organization may be fodder for cross-examination, but it is not a basis to exclude his testimony. *See United States v. Lawson*, 653 F.2d 299, 303 (7th Cir. 1981) (affirming admission of FBI Agent's lay opinion testimony and finding that "[n]o more foundation was necessary" because the Federal Rules of Evidence "place great reliance on cross-examination" and the jury was free to give that testimony "whatever weight it felt appropriate" in light of points raised by counsel during cross-examination). Accordingly, Defendants' motion should be denied.

## CONCLUSION

For the foregoing reasons, Plaintiff Eddie L. Bolden respectfully asks this Court to enter an Order denying Defendant Officers' Motion *in Limine* No. 11 to Bar the Testimony of Dale Tipton.

Dated: November 8, 2019

Respectfully Submitted,

*/s/ Valarie Hays*
Ronald S. Safer
Valarie Hays
Eli J. Litoff
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison Street, Suite 2900
Chicago, Illinois 60602
(312) 471-8700
rsafer@rshc-law.com
vhays@rshc-law.com
elitoff@rshc-law.com

13

Sandra L. Musumeci (*pro hac vice*)
RILEY SAFER HOLMES & CANCILA LLP
1330 Avenue of the Americas, 6th Floor
New York, New York 10019
(212) 660-1000
smusumeci@rshc-law.com

*Attorneys for Eddie L. Bolden*

## CERTIFICATE OF SERVICE

I hereby certify that on November 8, 2019, I caused the foregoing document to be electronically filed using the CM/ECF system, which will send notice of this filing to all counsel of record.

                                            */s/ Valarie Hays*
                                            Valarie Hays