IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EDDIE L. BOLDEN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17 C 00417 |
| | ) | |
| vs. | ) | Honorable Steven C. Seeger |
| | ) | |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT OFFICERS' MOTION *IN LIMINE* NO. 9 TO BAR EVIDENCE REGARDING CHICAGO POLICE DEPARTMENT INTERNAL RULES AND REGULATIONS**

Plaintiff Eddie L. Bolden, by his undersigned counsel, respectfully submits this Response in Opposition to Defendant Officers' Motion *in Limine* No. 9 to Bar Evidence Regarding Chicago Police Department Internal Rules and Regulations (Dkt. 316).

**INTRODUCTION**

Defendants seek to bar all references to their numerous violations of Chicago Police Department's ("CPD") internal policies and procedures during the investigation into the Frazier/Clayton homicides. Defendants rely on case law holding that a policy violation does not equate to a Constitutional violation. But Plaintiff makes no such claim. Regarding the only pertinent inquiry, whether evidence of policy violations is relevant, Defendants ignore clear case law from the Seventh Circuit and its district courts that Defendants' policy violations are probative of their intent. That intent is relevant both to liability and punitive damages as to Plaintiff's remaining claims. These cases also hold that this evidence is probative of probable cause, an element of Plaintiff's Fourth Amendment illegal detention claim as well as his state law malicious

1

prosecution claim.[1]

## BACKGROUND

Despite their assertion that all CPD policies and procedures (and violations thereof) are irrelevant, Defendants fail to address any policies specifically. Plaintiff provides the following non-exhaustive summary of the policy evidence he may introduce at trial.

### I. The Investigative File Policy

CPD's investigative file policy in effect during the relevant time period required that detectives working on homicide investigations maintain one central and official file for all "reports, notes, memoranda, and miscellaneous documents generated or received by" a detective during the investigation. Ex. A, Excerpts of Detective Division Standard Operating Procedures, at § 18.2(A). The policy contemplated that this file would be produced to the State's Attorney's Office and defense counsel in criminal cases. *Id.* Defendants received formal training on this policy. Ex. B, Excerpts of Deposition of James Hickey, at 39:12-17; Ex. C, Excerpts of Deposition of Angelo Pesavento, at 20:9-21:8.

The policy stated that detectives were required to "record and preserve all relevant information during their investigations." Ex. A, at § 18.3(C)(1). Detectives were required to place all reports and handwritten notes in the investigative file to be produced to defendants prior to trial. Ex. D, Excerpts of Deposition of Patrick Loftus, at 42:1-9. This included any information obtained from a witness that might aid in the defense of the accused. *Id.* at 67:13-19. To standardize the

---

[1] In addition to violating CPD's internal policies and procedures, Defendants departed from reasonable police practices during their investigation. There is overlap between these concepts because in many instances CPD's written policies are in accord with reasonable police practices. That said, this Response only addresses Defendants' violations of CPD's internal policies and procedures. Defendants' departures from reasonable police practices are discussed in greater detail in Plaintiff's Responses to Defendants' Motions *in Limine* Nos. 4, 7, and 10.

2

note-taking process, the investigative file policy also directed detectives to take handwritten notes when possible on General Progress Report forms and include them in the investigative file. Ex. A at §§ 18.2(E), 18.3(C)(2)-(4).

The policy also required the detectives working on a homicide investigation to maintain an Investigative File Control Card. *Id.* at § 18.2(F). This card kept a record of which detectives accessed the file and when: each time a detective removed the investigative file, he or she was required to sign the card and "assume responsibility for the contents of the investigative file." *Id.* at § 18.3(C)(5).

The evidence at trial will show that Defendants violated these policies in many important ways, including but not limited to: (1) Defendants failed to add a police report reflecting an interview of Clifford Frazier ("Clifford") to the investigative file; (2) Defendants failed to record and preserve relevant information about Clifford's informant status in the investigative file; (3) Karl and Siwek failed to record and preserve exculpatory information provided by Cynthia Steward in notes or a supplemental report in the investigative file; (4) Karl, Pesavento, and Siwek failed to record and preserve notes of interviews of other witnesses; (5) Defendants failed to add an inventory report for Clifford's .40 caliber gun to the investigative file; (6) Karl failed to record information regarding items seized from Cynthia Steward's home; and (7) Pesavento, Karl, and Siwek failed to record and preserve exculpatory information concerning the lineup in which Clifford identified Plaintiff. As a result, none of this critical information was given to defense counsel.

## II. The Detective Division Standard Operating Procedures

In addition to incorporating the investigative file policy, the Detective Division Standard Operating Procedures ("SOP") set forth detailed rules governing how detectives conduct investigations. Among other things, the SOP provided that detectives will: (1) "diligently

3

investigate all cases they receive for follow up. Their investigation must be thorough, careful and objective"; (2) "analyze all information obtained during the preliminary and follow-up investigation to determine what additional investigative steps may be necessary to identify the offender"; (3) "pursue all investigative leads"; and (4) "thoroughly investigat[e] the case and pursu[e] all leads uncovered." Ex. A, at §§ 8.1(B), 8.3(G), 8.3(I), 8.3(K). The SOP also required:

> Before calling the assistant state's attorney for Felony Review, the assigned detective will gather and review all available evidence and will determine what additional information is necessary and obtainable to support the felony charge and initiate steps to gather the additional evidence.

*Id.* at § 8.8(C).

The evidence at trial will show that Defendants violated these policies in many ways, including but not limited to: (1) failing to review a 911 recording; (2) ignoring Clifford's inconsistent descriptions of his attacker; (3) failing to investigate other suspects; (4) failing to interview known eyewitnesses to the events of January 29, 1994; (5) failing to order blood, fingerprint, or DNA testing on Clifford's gun; (6) fabricating witness statements in police reports; and (7) conducting a biased and suggestive lineup.

### III. The Lineup Policy

The Defendants also violated CPD's lineup procedures in myriad ways. First, CPD's procedures required that each eyewitness viewing a lineup or photo spread sign a written form confirming that he received specific warnings, including that "[t]he suspect might not be in the lineup or photo spread and the eyewitness is not obligated to make an identification." Ex. E, General Order 88-18 at § I(B)(b). Not only did Pesavento admit that he violated this requirement when administering both the photo spread and live lineup to Clifford (*see* Ex. C, at 107:13-110:1, 111:18-112:2), but Clifford also testified that Oliver actually did the ***exact opposite*** of what the policy required, telling Clifford "we got the guy." Ex. F, Excerpts of Deposition of Clifford

4

Frazier, at 20:13-17. Second, Defendants violated the requirement that "[s]uspects in a lineup or photo spread should not appear to be substantially different from 'fillers' or 'distractors' in the lineup or photo spread." Ex. E, at § I(B)(c). For Plaintiff's lineup, the heights and weights of the fillers were significantly different from Plaintiff's height and weight. Third, Defendants promised Plaintiff's attorney he could observe the lineup to induce Plaintiff to participate in the rigged lineup and then broke this promise, even though CPD policy allowed the suspect's attorney to be present for the lineup. *See id.* at § II(B). Fourth, the policy provides that "[n]o suspect will be seen with police officers prior to the lineup," *id.* at § II(E), but Defendants arranged for Clifford to walk past Plaintiff in the hallway of the police station before the lineup. Fifth, the policy provides that the detectives' supplementary report regarding the lineup should contain "any comments made by counsel for the arrestee." *Id.* at § II(J)(8). Pesavento admitted that Plaintiff's attorney was irate after his exclusion from the lineup and made several angry comments to Pesavento, yet no such information was included in the supplementary report. Finally, CPD's procedures also required that "[a]ll lineups shall be photographed or otherwise recorded." *Id.* at §I(B)(a). But Defendants did not photograph or record the lineup in which Plaintiff participated and instead photographed the participants in the hallway of the police station after the lineup had concluded.

## ARGUMENT

Defendants' argument relies on *Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006), where the Seventh Circuit held that violations of CPD policies were "immaterial as to the question of whether a violation of the federal constitution has been established." Defendants ignore that in the 13 years since *Thompson*, the Seventh Circuit has clarified and significantly limited *Thompson's* scope. In recent years, the Seventh Circuit has made clear that evidence regarding CPD policies may be admitted for several purposes, including to assist the jury in

determining Defendants' intent, whether Defendants acted reasonably, and whether Plaintiff should be awarded punitive damages.[2]

    **I.    Defendants' Violation of CPD Policies and Procedures Is Relevant to Their Intent.**

Defendants' violations of CPD policies are probative of their intent, which is an element of Plaintiff's state law claims and is also central to the jury's determination of punitive damages. The Seventh Circuit recently confirmed that "there is no per se rule against the admission of police policies or training," and that "*Thompson* did not address whether evidence of police policy or training can be relevant to intent." *United States v. Proano*, 912 F.3d 431, 439 (7th Cir. 2019). To the contrary, the Seventh Circuit expressly stated that "a rule [barring evidence of policies and training] would be especially excessive … where an officer's intent is at issue." *Id.* Accordingly, where a plaintiff's claim requires proof of the officer's intent, violations of CPD training and policies are relevant. *See id.* ("If, as here, an officer has been trained that officers should not do several things … yet he does those things anyway, the fact that he broke from his training could make it more likely that he acted willfully."); *see also Hobgood v. Ill. Gaming Bd.*, 731 F.3d 635, 645 (7th Cir. 2013) ("Significant, unexplained or systematic deviations from established policies or practices can no doubt be relative [*sic*] and probative circumstantial evidence of [unlawful] intent."). Indeed, the Seventh Circuit has expressly rejected the premise of defendant's argument

---

[2] Defendants' motion seeks to bar any evidence "regarding" CPD policies and procedures, but their arguments focus only on evidence of CPD policy *violations*. Accordingly, this Response only focuses on policy violations. But evidence of a particular CPD policy (not just an officer's violation thereof) could be admissible for a number of reasons, including providing context and background information to the jury. *See Whitehead v. Bond*, 680 F.3d 919, 930 (7th Cir. 2012) ("Even where evidence is not directly related to a disputed fact, it may be relevant when it provides background information.") For example, as set forth in Plaintiff's Response to Defendants' Motions *in Limine* Nos. 4, 7, and 10, Plaintiff's expert will opine that Defendants' failure to review the 911 recording related to this case was a departure from reasonable police practices. It would assist the jury in assessing Plaintiff's expert's opinion to know that CPD policies provided a mechanism by which Defendants could have reviewed the 911 recording. *See* Ex. G, CPD General Order 93-8, Addendum 8.

6

that violation of a rule is irrelevant if that violation does not amount to a constitutional tort. In *Mays v. Springborn*, the Court stated:

> [A]though violation of the prison's rule against public searches was not, by itself, a violation of the constitution, it was relevant evidence on which the jury could have relied to conclude that the searches were done with an intent to harass.

575 F.3d 643, 650 (7th Cir. 2009).

Defendants' intent is directly at issue in this case. Plaintiff's malicious prosecution claim requires him to prove that Defendants acted with malice, meaning they "had 'any motive other than that of bringing a guilty party to justice.'" *Williams v. City of Chicago*, 733 F.3d 749, 759-60 (7th Cir. 2013). This determination includes an assessment of whether "the circumstances are inconsistent with actions made in good faith." *Manning v. Dye*, No. 02 C 372, 2004 WL 2496456, at *15 (N.D. Ill. Nov. 5, 2004). Plaintiff's intentional infliction of emotional distress claim requires proof that Defendants intended to inflict emotional distress on Plaintiff or knew there was a high probability that their conduct would do so. *See, e.g.*, *Adams v. Sussman & Hertzberg, Ltd.*, 684 N.E.2d 935, 941 (Ill. App. Ct. 1997). Notably, during negotiations on jury instructions, Defendants insisted on an instruction that this cause of action also requires proof that Defendants' conduct was willful and wanton.[3] Ex. H, Excerpt of Defendant Officers' Proposed Jury Instructions.

Defendants' violations of CPD policies and procedures are highly probative of their intent. *See, e.g.*, *Proano*, 912 F.3d at 439 ("[T]he fact that [an officer] broke from his training could make it more likely that he acted willfully"). For this reason, courts in this district routinely have declined to grant motions *in limine* to exclude evidence of CPD policies and procedures where the plaintiff asserts state law claims with intent requirements. *See, e.g.*, *Martinez v. City of Chicago*, No. 14-cv-369, 2016 WL 3538823, at *3 (N.D. Ill. June 29, 2016) (finding police officer's policy

---

[3] Plaintiff objects to Defendants' proposed instruction.

7

violation "arguably relevant to Plaintiff's conspiracy claim" because it was probative of whether the defendant "intended to hide his conspiratorial agreement with his co-Defendants"); *Jones v. Walters*, No. 12-cv-5283, 2016 WL 1756908, at *8 (N.D. Ill. Apr. 29, 2016) (noting that policy violations do not equate to constitutional violations, but declining to grant defendants' motion *in limine* because "[s]uch evidence may be admissible for other purposes … including to prove state law claims"); *Scott v. City of Chicago*, No. 07 C 3684, 2010 WL 3034188, at *1 (N.D. Ill. July 27, 2010) (holding that violations of CPD policies may be relevant to state law claims, including "in determining whether claimed officer misconduct is willful and wanton"); *Galvan v. Norberg*, No. 04 C 4003, 2006 WL 1343680, at *2 (N.D. Ill. May 10, 2006) (denying motion to exclude evidence of CPD policy violations, which "may bear (for example) on Galvan's claim that defendants' actions were willful and wanton—a subject of potential relevance … to Galvan's state law claims"). Because Defendants' intent is an element of liability, violations of CPD policies and procedures are highly probative.

Defendants' intent, and therefore their violations of CPD policies and procedures, is also highly probative on the issue of punitive damages. Courts in this district routinely refuse to grant motions in *limine* to exclude evidence of policy violations when punitive damages are at issue. *Via v. Lagrand*, No. 03 C 3278, 2007 WL 495287, at *5 (N.D. Ill. Feb. 12, 2007) ("*Thompson* did not address the potential admissibility of evidence showing a violation of internal agency rules and procedures with regard to a claim for punitive damages."); *see also Jones*, 2016 WL 1756908, at *8; *Brinkley v. Santiago*, No. 11 C 6282, 2013 WL 12309671, at *4 (N.D. Ill. July 11, 2013); *Rothwell v. City of Chicago*, 2011 WL 5169419, at *2 (N.D. Ill. Oct. 31, 2011); *Scott*, 2010 WL 3034188, at *1; *Galvan*, 2006 WL 1343680, at *2.

Defendants fail to acknowledge *any* of the case law set forth above. Instead, as they do

8

throughout several of their motions in *limine*, they argue the sufficiency of the evidence supporting Plaintiff's *prima facie* case, arguments that are not appropriate on a motion *in limine*. They contend that Plaintiff may not introduce evidence of their violations of CPD rules to show malice because "the Court has already rejected Plaintiff's claims that Defendant Officers fabricated, destroyed and suppressed evidence. Mot. at ¶ 3. As explained more fully in Plaintiff's Response to Defendants' Motion *in Limine* No. 4, this assertion misstates Judge Shah's ruling, which held, among other things, that evidence related to Clifford's status as an informant was favorable to Plaintiff and not disclosed (Dkt. 276 at 33-37), that Oliver and Siwek suppressed Clifford's statements in the Willis report, which was favorable to Plaintiff (*id.* at 37-38), that Pesavento and Karl fabricated statements allegedly made by three different witnesses in their supplementary report (*id.* at 45), and that Defendants engaged in a bad-faith approach to the investigation. *Id.* at 48. Judge Shah's finding that this conduct did not establish an independent due process claim for reasons specific to that claim has no bearing on the relevance of this conduct to Plaintiff's remaining claims, which were not the subject of any dispositive motion. *See* Pl.'s Resp. to Defs.' Mot. *in Limine* No. 4.

Defendants also contend that Plaintiff has not "alleged or adduced" any evidence of malice because he has not alleged that he was "coerced into confessing" or that the Defendants "harbored any ill will or bias towards him." Mot. at ¶ 8. Defendants seem to be suggesting that Plaintiff has insufficient evidence to support the malice element of his *prima facie* case of malicious prosecution. Again, that argument is not proper on a motion *in limine* and should be rejected. *See Mid-Am. Tablewares, Inc. v. Mogi Trading Co., Ltd.*, 100 F.3d 1353, 1363 (7th Cir. 1996) (denying motion *in limine* where defendant's argument went to "the sufficiency of [plaintiff's] evidence" because such an argument "might be a proper argument for summary judgment or for judgment as

9

a matter of law, [but] it is not a proper basis for a motion to exclude evidence prior to trial").

Defendants further contend that the policy evidence is inadmissible because Plaintiff does not have any evidence "that the officers intentionally failed to follow the rules and regulations in this case." Mot. at ¶ 9. To the contrary, it is the jurors' role to determine whether Defendants intentionally violated any policies. Defendants' unsupported statement that "there is no evidence" (in a motion *in limine*, no less) will not suffice. *See, e.g.*, *Rothwell*, 2011 WL 5169419, at *2 (rejecting defendants' argument that "there is no 'actual evidence' of violations of internal police department policy"). As the court stated in *Rothwell*, "[t]his argument is a non-starter, as the jury will determine whether or not the evidence presented proves such a violation." *Id.* In any event, Pesavento admitted to violating certain policies during his deposition. *See, e.g.,* Ex. C, at 107:13-110:1, 111:18-112:2. Defendants are free to assert at trial that they did not violate any CPD procedures or that such violations were innocent rather than intentional, but those are determinations for the jury to make. Defendants' violations of CPD policies are probative of their intent and evidence regarding those policy violations should be admitted.

## II. Defendants' Violation of CPD Policies and Procedures Is Relevant to the "Objective Reasonableness" Inquiry.

Defendants also assert that their failure to follow the rules and regulations is not relevant to the issue of probable cause, which is an element of both Plaintiff's Fourth Amendment illegal detention claim and his malicious prosecution claim. *See* Mot. at ¶ 6. As Defendants acknowledge, probable cause is governed by an "objective reasonableness" standard, asking whether "a reasonable person in Defendant's position would have believed" that Plaintiff committed these crimes, taking into account "what Defendant knew and the reasonably trustworthy information Defendant received" at the time. Fed. Civ. Jury Instr. of the 7th Cir. § 7.08.; *see also* Mot. at ¶ 6. Here as well, Defendants' reliance on *Thompson* is misplaced.

10

Courts in recent years have recognized that *Thompson* does not preclude policy and procedure evidence in support of the objective-reasonableness inquiry when the evidence will aid the jurors in understanding what is reasonable. *United States v. Brown*, 871 F.3d 532, 537 (7th Cir. 2017) ("Even though jurors can understand the concept of reasonableness, in some cases they may not fully grasp particular techniques or equipment used by police officers in the field."). In those cases, testimony about police training and policies can assist the trier of fact because the probable cause "standard contemplates a reasonable *officer*, not a reasonable person, so it may be useful in a particular case to know how officers typically act in like cases."[4] *Id.* Although *Brown* discussed expert testimony, its holding applies to fact witness testimony as well. *See Proano*, 912 F.3d at 439-40 (affirming district court decision to allow CPD instructors to testify about training the defendant received).

This case is the quintessential example of where evidence regarding CPD's policies would help the jury determine the reasonableness of Defendants' conduct. Defendants will assert that they had probable cause to detain Plaintiff because Clifford identified him as the offender. *See, e.g.*, Ex. C, at 190:5-11, 241:24-242:9. But the jury must determine if the circumstances surrounding Clifford's identification of Plaintiff "would lead a reasonable officer to be suspicious, making further investigation prudent." *Hebron v. Touhy*, 18 F.3d 421, 422-23 (7th Cir. 1994). If so, it would be "unreasonable—and therefore unconstitutional—to arrest [and detain] [Plaintiff] on [Clifford's] mere say-so." *Id.* at 423. Jurors "understand the concept of reasonableness," but they are not experts in identification procedures, and without testimony regarding CPD's policies,

---

[4] *Brown* referred to "widespread" and "national" practices, but the Seventh Circuit later clarified that "neither … *Brown* nor common sense limits the pool of admissible training-related evidence of intent to national, model, or interdepartmental standards." *See Proano*, 912 F.3d at 439. In any event, the Seventh Circuit doubted that CPD's policies and training could be considered "localized" and not "widely used," given that "the CPD is the second-largest police force in the country." *Id.*

"they may not fully grasp particular techniques" used by police officers during lineups. *Brown*, 871 F.3d 537. Evidence regarding CPD's policies can help a jury understand these identification techniques, and accordingly, assist them in finding whether Defendants acted reasonably.

Similarly, in assessing probable cause, the jury must determine whether Plaintiff's arrest and illegal detention "could have been avoided if the arresting officer[s] had conducted a proper investigation." *See BeVier v. Hucal*, 806 F.2d 123, 127-28 (7th Cir. 1986). Jurors are not experts in homicide investigations. So when Defendants claim that a reasonable officer, in light of Clifford's identification of Plaintiff, would not have followed up on the leads provided by Cynthia Steward, listened to the 911 recording, ordered blood and fingerprint testing on Clifford's gun, or taken various other steps, the jury must be permitted to weigh those assertions against evidence that the SOP required detectives to "diligently investigate all cases," be "thorough, careful and objective," and "pursue all investigative leads," among other things. Ex. A, at §§ 8.1(B), 8.3(I). Evidence of CPD policy violations will assist the jury with its probable cause analysis.

### III. Evidence Regarding CPD Policies and Procedures Will Not Confuse the Jury or Unfairly Prejudice Defendants.

Defendants contend that evidence regarding CPD's internal rules and regulations "has a high likelihood of confusing the issues and thereby unfairly prejudicing defendants." Mot. at ¶ 2. The Seventh Circuit Pattern Jury Instructions address this concern with a limiting instruction:

> "You have heard evidence about whether Defendant's conduct [violated a rule or regulation]. You may consider this evidence in your deliberations [as to the claim at issue] … But remember that the issue is whether Defendant [violated the Constitution], not whether [a rule or regulation] might have been [violated]."

Fed. Civ. Jury Instr. of the 7th Cir. § 7.04. Notably, the Pattern Instructions expressly account for the court's decision in *Thompson*, upon which Defendants rely. *See id.*, Committee Comment. The Committee Comment also acknowledges that evidence of policy violations may be relevant to state law claims (as opposed to federal constitutional claims) and provides that the instruction

12

can "be modified accordingly." *Id.* Defendants ignore this instruction, which alleviates their concerns regarding juror confusion or prejudice. Instead, in a single sentence without any elaboration or argument, Defendants cite Judge Dow's opinion in *Bruce v. City of Chicago* for the proposition that "this type of unfairly prejudicial evidence cannot be cured with a mere jury instruction." Mot. at ¶ 2 (citing *Bruce v. City of Chicago*, 09 C 4837, 2011 WL 3471074, at *3 (N.D. Ill. Jul. 29, 2011)). But that was not Judge Dow's holding. To the contrary, the court expressly stated that "limiting instructions may not be a viable means of overcoming Rule 403 issues, [but] the Court ***cannot conclude definitively*** that there is no scenario in which General Orders, rules, or regulations could conceivably come into this case." *Id.* (emphasis added). Accordingly, the court "reserve[d] its decision as to any such testimony, evidence, or argument in support of a punitive damages claim or in other circumstances not foreclosed by *Thompson*." *Id.*

Indeed, contrary to Defendants' assertion, Judge Dow has consistently refused to grant motions *in limine* seeking to bar evidence related to CPD policies, acknowledging that "such testimony, evidence, or argument in support of a punitive damages claim or in other circumstances" may be admissible, and instructing plaintiffs to raise those issues outside of the presence of the jury so that the court can conduct an "analysis under Rules 401 and 403." *See England v. Allen*, No. 17-cv-8911, 2019 WL 2743481, at *5 (N.D. Ill. Jul. 1, 2019); *see also Smith v. Garcia*, 15-cv-10105, 2018 WL 461230, at *5 (N.D. Ill. Jan. 18, 2018) (questioning whether policy violations would be admissible, but nevertheless holding that "the Court will not categorically foreclose such evidence in a pre-trial ruling"). In particular, Judge Dow's opinion in *Martinez v. City of Chicago* is instructive. In that case, the plaintiff alleged, pursuant to 42 U.S.C. § 1983, that the defendants entered into a conspiracy to violate plaintiff's constitutional rights by "unlawfully continu[ing] Plaintiff's seizure in the absence of probable cause." *Martinez*, 2016 WL

13

3538823, at *3. The plaintiff sought "to introduce evidence that a defendant violated a CPD General Order by failing to wear a lapel microphone during the incident in question." *Id.* at *6. Judge Dow held that this evidence was "arguably relevant to Plaintiff's conspiracy claim. *Id.* In the instant case, Plaintiff asserts a conspiracy claim and may offer evidence of policy violations by the members of the conspiracy to prove an intent to hide their conspiratorial agreement.

In the years since Judge Dow's decision in *Bruce*, courts in this district have routinely held that an appropriate limiting instruction ***does*** sufficiently address concerns about unfair prejudice and juror confusion with respect to CPD policy violations. *See, e.g.*, *Volland-Golden v. City of Chicago,* No. 13 C 1477, 2016 WL 4678299, at *6 (N.D. Ill. Sept. 7, 2016) ("CPD General Orders are admissible for evidentiary purposes other than to establish a Constitutional violation, and any perceived prejudice can be cured by Seventh Circuit Pattern Instruction No. 7.04."); *Torres v. City of Chicago*, No. 12 C 7844, 2015 WL 12843889, at *7 (N.D. Ill. Oct. 28, 2015) (denying motion *in limine* to bar evidence of CPD policy violations where plaintiff argued "that a limiting instruction—such as Seventh Circuit Pattern Instruction 7.04 … —can prevent any confusion"). Accordingly, consistent with the Seventh Circuit's instructions and the sound reasoning of other courts within this district, this Court can address any danger of prejudice to Defendants from the introduction of evidence related to CPD policies and procedures with an appropriate instruction, such as Seventh Circuit Pattern Instruction 7.04. Defendants' motion should be denied.

## CONCLUSION

For the foregoing reasons, Plaintiff Eddie L. Bolden respectfully asks this Court to enter an Order denying Defendant Officers' Motion *in Limine* No. 9.

Dated: November 8, 2019                    Respectfully Submitted,

*/s/ Valarie Hays*
Ronald S. Safer
Valarie Hays
Eli J. Litoff
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison Street, Suite 2900
Chicago, Illinois 60602
(312) 471-8700
rsafer@rshc-law.com
vhays@rshc-law.com
elitoff@rshc-law.com

Sandra L. Musumeci (*pro hac vice*)
RILEY SAFER HOLMES & CANCILA LLP
1330 Avenue of the Americas, 6th Floor
New York, New York 10019
(212) 660-1000
smusumeci@rshc-law.com

*Attorneys for Eddie L. Bolden*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 8, 2019, I caused the foregoing document to be electronically filed using the CM/ECF system, which will send notice of this filing to all counsel of record.

                                              */s/ Valarie Hays*
                                              Valarie Hays