**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| EDDIE L. BOLDEN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17 C 00417 |
| | ) | |
| vs. | ) | Honorable Steven C. Seeger |
| | ) | |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT OFFICERS'
MOTION *IN LIMINE* NO. 4 TO PRECLUDE CERTAIN EVIDENCE
AND ARGUMENT BASED ON THE COURT'S SUMMARY JUDGMENT RULING**

## <u>TABLE OF CONTENTS</u>

Page

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................... 2

ARGUMENT ..................................................................................................................... 4

I.      Defendants' Attempt to Bring a New Dispositive Motion Disguised as a Motion *in Limine* Should Be Rejected................................................................................ 4

II.     Defendants' Suppression of Evidence Is Relevant to Plaintiff's Remaining Causes of Action. .................................................................................................... 6

      A.     The Willis Report.................................................................................... 6

      B.     Clifford's Informant Status ................................................................... 8

      C.     Cynthia Steward's Statements to Defendants ....................................... 9

III.    Evidence Related to the 911 Recording and Dispatch Card is Relevant to Plaintiff's Remaining Causes of Action. ......................................................... 11

IV.    Evidence Related to Clifford Frazier's Guns and the Inventory Report Is Relevant to Plaintiff's Remaining Causes of Action. ...................................... 12

      A.     Clifford's .40 Caliber Gun ................................................................. 12

      B.     Clifford's Mach-11 Gun ..................................................................... 13

      C.     The Inventory Report .......................................................................... 15

V.     Evidence Related to Defendants' Destruction of Witness Interview Notes Is Relevant to Plaintiff's Remaining Causes of Action. ....................................... 16

VI.    Evidence Related to Defendants' Failure to Report the Items Seized from Cynthia Steward's Home Is Relevant to Plaintiff's Remaining Causes of Action ....................... 18

VII.   Evidence Related to the Missing Inventory Control Card Is Relevant to Plaintiff's Remaining Causes of Action. ......................................................... 18

      A.     Background on the Control Card .......................................................... 19

      B.     The Significance of the Control Card ................................................... 19

      C.     The Control Card's Relevance in This Matter ..................................... 20

VIII.    Defendants' Fabrication of Evidence is Relevant to Plaintiff's Remaining Causes of
Action.................................................................................................................. 21

    A.    Fabrication in Supplemental Report ..................................................... 21

    B.    Fabrication During Lineup.................................................................... 23

IX.    The Evidence at Issue Is Not Precluded by Rule 403.................................... 24

CONCLUSION ............................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**CASES**

*Adams v. Sussman & Hertzberg, Ltd.*,
 292 Ill. App. 3d 30 (1st Dist. 1997) ................................................................. 8

*BeVier v. Hucal*,
 806 F.2d 123 (7th Cir. 1986) ......................................................................... 10

*Bradley v. Pittsburgh Bd. of Educ.*,
 913 F.2d 1064 (3d Cir. 1990) .......................................................................... 6

*Davis v. Zonfrilli*,
 No. 13-2155, 2014 WL 12738905 (C.D. Ill. Aug. 6, 2014) .................................. 22

*Dochak v. Polskie Linie Lotnicze LOT S.A.*,
 No. 15 C 4344, 2017 WL 2362570 (N.D. Ill. May 30, 2017) ............................... 24

*Dunn ex rel. Albery v. State Farm Mut. Auto. Ins. Co.*,
 264 F.R.D. 266 (E.D. Mich. 2009) ............................................................. 6, 13

*Feltmeier v. Feltmeier*,
 207 Ill. 2d 263 (2003) .................................................................................... 8

*Harbor Ins. Co. v. Cont'l Bank Corp.*,
 No. 85 C 7081, 1991 WL 222260 (N.D. Ill. Oct. 25, 1991) ............................... 5, 6

*Jimenez v. City of Chicago*,
 732 F.3d 710 (7th Cir. 2013) .............................................................. 10, 12, 18

*Kelsay v. Consol. Rail Corp.*,
 749 F.2d 437 (7th Cir. 1984) ......................................................................... 25

*La Playita Cicero, Inc. v. Town of Cicero, Ill.*,
 175 F. Supp. 3d 953 (N.D. Ill. 2016) ............................................................... 22

*Louzon v. Ford Motor Co.*,
 718 F.3d 556 (6th Cir. 2013) ........................................................................ 5, 6

*Mack v. First Sec. Bank of Chi.*,
 158 Ill. App. 3d 497 (1st Dist. 1987) ................................................................. 7

*Manning v. Dye*,
 No. 02 C 372, 2004 WL 2496456 (N.D. Ill. Nov. 5, 2004) ......................... 7, 10, 21

*Mid-Am. Tablewares, Inc. v. Mogi Trading Co.*,
 100 F.3d 1353 (7th Cir. 1996) ......................................................................... 4

*Quad/Graphics, Inc. v. One2One Commc'ns, LLC*,
 No. 09-CV-99-JPS, 2011 WL 4478440 (E.D. Wis. Sept. 23, 2011) ......................... 5

*United States v. Karamuzis*,

No. 02 C 7993, 2004 WL 2203413 (N.D. Ill. Sept. 29, 2004)................................................... 5

*Weeks v. Angelone*,
528 U.S. 225 (2000)............................................................................................... 24

*Whitehead v. Bond*,
680 F.3d 919 (7th Cir. 2012) ............................................................................. 13, 14

**STATUTES**

Fed. Civ. Jury Instr. of the 7th Cir. § 7.08 ........................................................ 8, 10, 22

Fed. Civ. Jury Instr. of the 7th Cir. § 7.14 ................................................................. 3

Fed. Civ. Jury Instr. of the 7th Cir. § 7.28 ................................................................. 8

**RULES**

Fed. R. Evid. 403 ........................................................................................................ 24

Plaintiff Eddie L. Bolden, by his undersigned counsel, respectfully submits this Response in Opposition to Defendant Officers' Motion *in Limine* No. 4 to Preclude Certain Evidence and Argument Based on the Court's Summary Judgment Ruling (Dkt. 311).

## INTRODUCTION

Defendant Officers ("Defendants") attempt to extrapolate limited factual findings Judge Shah made in his written summary judgment opinion into a basis to exclude the central evidence that proves Plaintiff's remaining causes of action. In order to do so, Defendants ignore the context of those findings and oftentimes misstate Judge Shah's rulings. Defendants only filed a motion for summary judgment on the Fourteenth Amendment due process claim (Count I), presumably recognizing at the time the strength of Plaintiff's evidence on the remaining causes of action. Judge Shah, therefore, only addressed the facts as they related to the elements of proof for Count I. But that did not deter Defendants from filing a motion *in limine* seeking to exclude all of the evidence at the heart of Plaintiff's case based upon misstatement and misapplication of Judge Shah's focused prior rulings.

Defendants contend that Judge Shah ruled "that there is insufficient evidence that Defendant Officers destroyed, withheld, or fabricated evidence in violation of Plaintiff's due process rights." Mot. at 1. They further contend that these findings apply equally to Plaintiff's remaining claims. *Id.* Their argument misleadingly suggests that Judge Shah ruled that there was insufficient evidence that Defendants suppressed or fabricated evidence. He did not. In fact, Judge Shah ruled that there was sufficient evidence that Defendants suppressed and fabricated evidence. He simply ruled that this suppression and fabrication of evidence was insufficient to establish a Fourteenth Amendment violation (*e.g.*, the evidence was cumulative, and therefore, would not have changed the outcome of the trial). Judge Shah's reasoning in no way applies to Plaintiff's

remaining causes of action, which have different elements of proof from the due process claim. Yet Defendants take the remarkable position that their suppression and fabrication of evidence is "irrelevant" to Plaintiff's remaining causes of action, even though these causes of action have intent-related elements of proof. Furthermore, by focusing on the sufficiency of the evidence, Defendants are in effect filing an untimely dispositive motion under the guise of a motion *in limine*, which courts across the country consistently have precluded. In filing this motion, Defendants have ignored the rules of evidence and civil procedure and wasted substantial resources asserting positions that are unsupported by legal precedent and depend on misrepresentations of Judge Shah's prior rulings.

## BACKGROUND

Defendants only moved for summary judgment on Count I of the Third Amended Complaint, which set forth a Fourteenth Amendment due process cause of action for a violation of the right to a fair trial. This cause of action was based on claims that Defendants destroyed evidence, failed to preserve evidence, suppressed evidence, fabricated evidence, and conducted an unduly suggestive lineup. Judge Shah ruled that the unduly suggestive lineup claim could go forward. Dkt. 276, at 50. He also ruled that there was sufficient evidence of the following: (1) Defendants Pesavento and Karl knew the 911 recording had exculpatory value (*id.* at 22); (2) it is reasonable to infer that handwritten interview notes once existed (*id.* at 25); (3) the evidence related to Clifford Frazier's ("Clifford") status as an informant was favorable to Plaintiff and not disclosed (*id.* at 33-37); (4) Defendants Oliver and Siwek suppressed Clifford's statements in the Willis report (*id.* at 38); (5) the Willis report was favorable to Plaintiff because it could have impeached Clifford (*id.* at 37); (6) Pesavento and Karl fabricated certain statements allegedly made by three different witnesses in their supplementary report (*id.* at 45); and (7) Defendants engaged in a bad faith approach to the investigation (*id.* at 48).

Despite these favorable factual findings, Judge Shah concluded that Plaintiff was not able to establish certain elements of proof for the non-lineup due process claims. These due process claims required proof that the destruction, withholding, and fabrication of evidence was material and noncumulative, meaning that "there is a reasonable likelihood that the result in the criminal proceeding would have been different if the evidence had been disclosed." Fed. Civ. Jury Instr. of the 7th Cir. § 7.14. Additionally, for a due process violation, the evidence that was withheld had to be either exculpatory evidence or impeachment evidence that was not available to Plaintiff through the exercise of reasonable diligence. *Id.* For the fabrication claim, the fabricated evidence had to be used against Plaintiff in his criminal case. *Id*. Plaintiff's remaining causes of action require different elements of proof, and Judge Shah did not address the evidence as it pertained to Plaintiff's other causes of action. Judge Shah certainly never held that Defendants' suppression and fabrication of evidence was irrelevant for purposes of proving the intent-related elements of Plaintiff's remaining causes of action.[1] These intent-related elements include malice, the absence of probable cause, extreme and outrageous conduct, and intentional infliction of emotional distress. *See* Plaintiff's Response to Defendants' Motion *in Limine* No. 7, at 7-8, for further discussion of the elements of proof.

Not only was Judge Shah's written opinion crystal clear as to its limited scope, he explicitly recognized the limits in open court during a status hearing. He indicated that his ruling on Count I would have no impact on the arguments related to the admissibility of the evidence offered to

---

[1] Plaintiff has nine remaining causes of action, including: (1) violation of due process based on the unduly suggestive lineup (Count I); (2) violation of the Fourth Amendment based on the illegal detention of Plaintiff (Count V); (3) failure to intervene and stop the due process and Fourth Amendment violations (Count II); (4) conspiracy to violate Plaintiff's constitutional rights (based on the due process and Fourth Amendment violations) (Count III); (5) malicious prosecution (Count VI); (6) intentional infliction of emotional distress (Count VII); (7) civil conspiracy to maliciously prosecute Plaintiff and/or inflict emotional distress (Count VIII); (8) vicarious liability (Count IX); and (9) indemnification (Count V).

support the remaining causes of action.  Specifically, Judge Shah stated:

> So I appreciate your continued patience while I keep working on the summary judgment, but I think that pretrial schedule should work.  And as I've been thinking about it, and *in looking through the motion for summary judgment*, and I'll see it when I see your pretrial filings, but *I'm not so sure how much the evidentiary landscape is going to change one way or the other.*  I at least anticipate from the plaintiff, even if some of the due process theories are not in the case as to some or even all of the defendants.  Some of the evidence there will likely to be filing motions in limine saying, admit this evidence anyway.  *So obviously we'll plan accordingly.  But I'm hopeful, and I still think that the three weeks that we blocked off in November will be enough time to get it done.*

Ex. A, June 11, 2019 Status Hrg. Tr. at 4:1–13.

## ARGUMENT

### I. Defendants' Attempt to Bring a New Dispositive Motion Disguised as a Motion *in Limine* Should Be Rejected.

Defendants' arguments in this motion focus on the *sufficiency* of Plaintiff's evidence with respect to causes of action that they did not move to dismiss during the summary judgment stage of this case.  *See, e.g.,* Mot. at 1 (stating "Judge Shah's finding that there is *insufficient evidence* that Defendant Officers destroyed, withheld, or fabricated evidence … applies equally to the remaining claims, and all such evidence must be barred.") (emphasis added).  Defendants cannot now, on what was supposed to be the eve of trial, file a new dispositive motion under the guise of a motion *in limine.*  Indeed, this Court need not consider the substance of their arguments.  Their motion should be summarily denied on procedural grounds.

Motions *in limine* serve a specific purpose.  They are intended only to resolve evidentiary issues of admissibility—they are not a vehicle to argue the merits of the case or to litigate issues that are more properly raised by dispositive motions.  *See Mid-Am. Tablewares, Inc. v. Mogi Trading Co.*, 100 F.3d 1353, 1363 (7th Cir. 1996) (denying motion *in limine* challenging "the sufficiency of [plaintiff's] evidence" because, while defendant's argument "might be a proper argument for summary judgment or for judgment as a matter of law, it is not a proper basis for a

motion to exclude evidence prior to trial"). A motion *in limine* should be denied where the defendant is merely "attempting to argue the merits of his case and is seeking to preclude Plaintiff from presenting its case." *United States v. Karamuzis*, No. 02 C 7993, 2004 WL 2203413, at *4 (N.D. Ill. Sept. 29, 2004). When a "motion *in limine* is really a motion for summary judgment in disguise," the movant has employed an "[un]acceptable procedure," and "there is no reason to consider the merits of [the] motion." *Harbor Ins. Co. v. Cont'l Bank Corp.*, No. 85 C 7081, 1991 WL 222260, at *4 (N.D. Ill. Oct. 25, 1991).

That is precisely what Defendants have done here. Defendants are "cloaking [their] argument in the language of the Federal Rules of Evidence" by asserting that various evidence is "not probative of probable cause or malice" or "any issue in the case." *See, e.g.*, Mot. at 3, 5, 7, 12, 14; *see also Quad/Graphics, Inc. v. One2One Commc'ns, LLC*, No. 09-CV-99-JPS, 2011 WL 4478440, at *9 (E.D. Wis. Sept. 23, 2011). But Defendants give away their true argument in their Introduction—they are not arguing the *probative value* of the evidence, they are arguing the *sufficiency* of the evidence. Mot. at 1. The sufficiency of Plaintiff's evidence for his remaining claims was never challenged on summary judgment and is not the proper subject of a motion *in limine*. For example, in *Louzon v. Ford Motor Co.,* Ford filed a motion *in limine* to exclude evidence related to certain Ford employees that plaintiff contended were comparable to him and supported his discrimination claim. 718 F.3d 556, 560 (6th Cir. 2013). The district court granted the motion and the Sixth Circuit reversed, rejecting Ford's attempt to turn what was really a dispositive motion into an evidentiary matter by misleadingly characterizing the argument as a relevance dispute. *Id.* at 562-63. In ruling for plaintiff, the court reasoned that "if these tactics were sufficient, a litigant could raise any matter *in limine*, as long as he included the duplicative argument that the evidence relating to the matter at issue is irrelevant. Where, as here, the motion

*in limine* is no more than a rephrased summary-judgment motion, the motion should not be considered." *Id.* at 563.

The same is true here. Defendants are arguing that a large portion of Plaintiff's evidence must be excluded because Judge Shah's opinion renders it insufficient to support Plaintiff's claims—claims that Judge Shah never considered. Plaintiff, however, is not required to defend the sufficiency of his evidence in response to a motion in *limine*. Nor is he required to marshal all of the evidence in support of his claims outside of the procedural safeguards of a summary judgment proceeding and after the dispositive motion deadline has passed. *See Harbor Ins. Co.*, 1991 WL 222260, at *4 ("Continental's motion *in limine* is really a motion for summary judgment in disguise. As the deadline for dispositive motions has passed, this is not acceptable procedure."); *see also Louzon*, 718 F.3d at 561 ("Allowing a party to litigate matters that have been or should have been resolved at an earlier stage … deprives their opponents of the procedural protections that attach at summary judgment."); *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069–70 (3d Cir. 1990) (same); *Nuutinen v. CBS Corp.*, No. 97-C-678, 2015 WL 3645899, at *8 (same); *Dunn ex rel. Albery v. State Farm Mut. Auto. Ins. Co.*, 264 F.R.D. 266, 274–75 (E.D. Mich. 2009) (same). For this reason alone, Defendants' motion should be denied. For the sake of completeness, Plaintiff discusses the sufficiency and relevance of the evidence at issue below.

## II. Defendants' Suppression of Evidence Is Relevant to Plaintiff's Remaining Causes of Action.

### A. *The Willis Report*

Judge Shah ruled that a reasonable jury could conclude that Oliver and Siwek suppressed a police report related to an interview of Clifford that was favorable to Plaintiff (the "Willis report") (Dkt. 276, at 37-38), but Defendants still assert, without logic or caselaw support, that this evidence is irrelevant to Plaintiff's remaining causes of action that require proof of Defendants'

improper intent. Mot. at 7, 10. It appears that in making this argument Defendants are attempting to focus on *Brady* due process claim terminology and distinguish between "favorable" impeachment evidence and "exculpatory" evidence, suggesting that only suppressed exculpatory evidence can reflect on improper intent. *See, e.g.*, Mot. at 8. Not only is there no material distinction between the two types of evidence in a *Brady* analysis, but, more importantly, Defendants miss the point that a *Brady* analysis is inapplicable here. This evidence will be offered in support of non-due process claims so whether the suppressed evidence was exculpatory or impeaching (as opposed to simply relevant to the investigation) has no place in evaluating the admissibility of that evidence.

Although Judge Shah found that the Willis report was suppressed and favorable to Plaintiff, he ruled that this suppression did not establish a ***due process*** claim because Plaintiff's criminal defense attorney had other avenues to impeach Clifford at trial, and thus, the suppressed information in the Willis report was cumulative and would not have changed the outcome of the trial. Dkt. 276, at 40. This ruling in no way addresses whether the evidence is relevant for purposes of establishing elements of Plaintiff's remaining causes of action.

The fact that Oliver and Siwek withheld a favorable and relevant interview report helps establish multiple elements of Plaintiff's remaining causes of action. First, the evidence is relevant to establishing the malice element of Plaintiff's malicious prosecution claim. "Malice may be inferred from an absence of probable cause when the circumstances ***are inconsistent with actions made in good faith***." *Manning v. Dye*, No. 02 C 372, 2004 WL 2496456, at *15 (N.D. Ill. Nov. 5, 2004) (citing *Mack v. First Sec. Bank of Chi.*, 158 Ill. App. 3d 497, 501 (1st Dist. 1987)) (emphasis added). Second, the evidence of suppression is relevant to establishing Plaintiff's claim for intentional infliction of emotional distress, namely, that Oliver's and Siwek's conduct was

extreme and outrageous and they intended to inflict emotional distress. *See, e.g.*, *Adams v. Sussman & Hertzberg, Ltd.*, 292 Ill. App. 3d 30, 38 (1st Dist. 1997). "A pattern, course, or accumulation of acts" can make an individual's conduct extreme, even if "one instance of such behavior might not be." *See Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 274 (2003). Third, the evidence of suppression supports a finding of intentional and reckless conduct on the part of Oliver, which must be established for the jury to award punitive damages with respect to Oliver's conduct. *See* Fed. Civ. Jury Instr. of the 7th Cir. § 7.28. Finally, the evidence is relevant to the probable cause analysis, which requires the jury to assess "what Defendant[s] knew" (Fed. Civ. Jury Instr. of the 7th Cir. § 7.08), which in this case included the favorable information in the suppressed report.

   B.    *Clifford's Informant Status*

Defendants do not dispute that they withheld certain evidence related to Clifford's role as an informant. Dkt. 276, at 33; Mot. at 8. Specifically, they withheld the following: (1) Clifford provided information to Defendants about a gun Steward possessed and also informed them that Steward might have knowledge about the shootings, (2) Clifford provided Defendants with information about the drug supplier for the transaction on January 29, 1994, (3) Clifford met with Defendants multiple times, (4) Clifford told officers in the CPD's Internal Affairs Department about Oliver asking for help with obtaining cash from victim Derrick Frazier's safety deposit box, (5) Defendants recovered 30 guns from Clifford's apartment, (6) Steward told Defendants that Clifford stored drug proceeds at his apartment, (7) Defendants escorted Clifford to a funeral, and (8) Defendants arrested Clifford but did not recommend charges be brought against him.[2]

---

[2] The relevance of the evidence related to Oliver and the safety deposit box investigation is addressed separately in Plaintiff's Response to Defendants Motion *in Limine* No. 7, at 9-11.

Judge Shah held that this evidence was favorable to Plaintiff. Dkt. 276, at 34 ("The impeachment value of the evidence lies in the existence of an agreement—explicit, tacit, or maybe just expected—between Clifford and the state, in which Clifford would testify against Bolden.") Judge Shah also noted that Defendants did not dispute in their summary judgment brief that this evidence was favorable. *Id.* at 33. As with the Willis report, Judge Shah's ruling that this evidence did not support a due process claim was based on a finding that the evidence was immaterial because it was cumulative—a ruling applicable to an element of proof in the due process claim that is not present in the remaining claims. *Id.* at 34, 37. This ruling has no effect on Plaintiff's use of this evidence to support the intent-related elements of his remaining causes of action.

C.    *Cynthia Steward's Statements to Defendants*

Defendant Karl's and Defendant Siwek's suppression of certain statements made to them by Cynthia Steward is relevant to showing their deliberate conduct.[3] Specifically, they suppressed the following evidence that Steward provided to them: (1) Anthony Williams had a hit out on the victims, (2) Andre Kimbrough was asked by Anthony Williams to carry out the hit, and (3) the names of other individuals that Steward believed may have been asked to carry out the hit, none of which were Plaintiff. As more fully set forth in Plaintiff's Response to Defendants' Motion *in Limine* No. 7, evidence that Defendants did not include Steward's statements in their report of her

---

[3] Cynthia Steward's interview report indicates that both Siwek and Karl were present for her interview. *See* Ex. B, Feb. 2, 1994 Supplementary Report. Judge Shah's summary judgment opinion states that "only Detective Siwek would be personally responsible for the suppression because he is the only defendant who was present to hear Steward's statements." Dkt. 276, at 44. Presumably, Judge Shah only referenced Siwek because no one moved for summary judgment on behalf of Karl, who was deceased at the time of summary judgment briefing. Moreover, Steward has since confirmed that this information was also provided to (and therefore suppressed by) Defendant Oliver. *See* Ex. C, Declaration of Cynthia Steward.

interview, in violation of the CPD's investigative file policy,[4] and did not investigate the information she provided about possible suspects, including that Anthony Williams ordered the hit, is relevant in establishing that Defendants engaged in intentional misconduct. *Jimenez v. City of Chicago*, 732 F.3d 710, 721 (7th Cir. 2013) (evidence about deviations from reasonable police practices "can give a jury a baseline to help evaluate whether a defendant's deviations from those standards were merely negligent or were so severe or persistent as to support an inference of intentional or reckless conduct that violated a plaintiff's constitutional rights."); *Manning*, 2004 WL 2496456, at *9, 15 (holding that a jury could infer defendant police officers' malice from "both the evidence tending to show lack of probable cause" and their use of "improper means" during investigation). Indeed, Judge Shah concluded that the evidence Plaintiff presented during summary judgment supported a finding that Defendants engaged in a "bad faith approach to the investigation." Dkt. 276, at 48.

Defendants' decision not to investigate the information provided by Steward also is relevant to the probable cause analysis. In evaluating whether probable cause existed, jurors must determine whether Defendants acted as reasonable officers in like circumstances would have acted, considering "what Defendant knew and the reasonably trustworthy information Defendant received." Fed. Civ. Jury Instr. of the 7th Cir. § 7.08. As part of this analysis, jurors can consider whether a defendant "closed [his] eyes to facts that would have helped clarify the circumstances" of the crime and whether Plaintiff's arrest and illegal detention "could have been avoided if the arresting officer[s] had conducted a proper investigation." *See BeVier v. Hucal*, 806 F.2d 123, 127-28 (7th Cir. 1986). The fact that Oliver and Siwek did not ask Anthony Williams any

---

[4] The investigative file policy states in part, "Detectives will record and preserve all relevant information during their investigations." Ex. D, Excerpt of Detective Division Standard Operating Procedures, at § 18.3(C)(1).

questions about the shootings when they interviewed him, despite having been told by Steward that he ordered the hits, and did not otherwise investigate any of the suspects provided by Steward, is relevant to establishing the absence of probable cause.

### III. Evidence Related to the 911 Recording and Dispatch Card is Relevant to Plaintiff's Remaining Causes of Action.

Defendants egregiously misstate Judge Shah's findings with respect to the 911 recording. They assert that Judge Shah ruled that Pesavento and Karl "did not have subjective knowledge that the 911 recording was exculpatory." Mot. at 4. In actuality, Judge Shah reached the opposite conclusion. He ruled that the "pivotal question in the bad-faith inquiry is whether the defendant knew the evidence's exculpatory value, **which the evidence suggests both detectives did**." Dkt. 276, at 22 (emphasis added). Defendants also inaccurately state, "the Court found 'there can be no reasonable inference of bad faith' from failure to preserve the recording." Mot. at 4. The latter portion of this statement that Defendants added on after the quoted language is inaccurate. Judge Shah did not rule that there can never be a finding of bad faith based on a failure to preserve. In fact, Judge Shah, again, stated the opposite of what the Defendants represent. Judge Shah wrote, in a § 1983 action, "a defendant can be personally responsible for a constitutional violation **by his intentional inaction** or deliberate, reckless indifference." Dkt. 276, at 20 (emphasis added).

Judge Shah's ruling that the evidence does not support a due process violation was based solely on his conclusion that there was no evidence in the record that Karl and Pesavento knew about the CPD's 30-day retention policy. Dkt. 276, at 21. But this ruling that the failure to *preserve* the recording was not an independent due process violation has no bearing on Defendants' failure to even *review* the 911 recording or dispatch card in the first instance. At trial, Plaintiff's police practices expert will testify to the following:

> Standard practice in any homicide investigation is to review a 911 recording and dispatch records if they exist – in fact, it is one of the first things a detective should

> do. These records are important because they identify a potential witness to the crime. There is no reasonable explanation for the defendants ignoring these records in this case.

Ex. E, Expert Report of William T. Gaut, at 22. That Defendants made no attempt to review the 911 recording or the dispatch card, especially after Plaintiff and his attorney told them about the exculpatory nature of the evidence, can only be described as unreasonable police conduct that supports the intent elements of Plaintiff's remaining causes of action. *See, e.g.*, *Jimenez*, 732 F.3d at 721–22 (deviations from reasonable police practices "support an inference of intentional or reckless conduct" when they are "severe or persistent"). The relevance of Defendants' decision not to conduct a reasonable investigation is set forth in more detail in Plaintiff's Response to Defendants' Motion *in Limine* No. 7. Moreover, since Judge Shah's ruling only applied to Plaintiff's due process claim and Defendants failed to move for summary judgment on the other causes of action, there is nothing that precludes Plaintiff's counsel from questioning Pesavento at trial regarding his knowledge of the retention policy. If Pesavento admits to knowing about the retention policy, then Plaintiff should not be barred from also arguing that Pesavento failed to preserve the exculpatory 911 recording in bad faith.

## IV. Evidence Related to Clifford Frazier's Guns and the Inventory Report Is Relevant to Plaintiff's Remaining Causes of Action.

Defendants contend that any evidence that "the gun" was destroyed should be precluded as irrelevant. Mot. at 5. Their arguments focus on facts specific to Clifford's .40 caliber gun. In an abundance of caution, Plaintiff will address the admissibility of evidence related to both of Clifford's guns, the .40 caliber and the Mach-11.

### A. Clifford's .40 Caliber Gun

Plaintiff does not intend to argue at trial that Defendants were personally responsible for the destruction or the failure to preserve Clifford's .40 caliber gun. But Defendants go too far in

seeking exclusion of the fact that the Chicago Police Department destroyed the gun.  Mot. at 4-5.
The destruction of the .40 caliber gun is a necessary part of the background information for
Plaintiff's claims.  Plaintiff will introduce evidence, as another example of Defendants' deviations
from reasonable investigative standards, that Defendants failed to submit the gun for fingerprint,
DNA, or blood testing, even though Clifford told the police that he and the perpetrator struggled
with the guns and Defendants knew there was blood on the gun.  The relevance of Defendants'
severe and persistent departures from professional standards is addressed in Plaintiff's Response
to Defendants' Motion *in Limine* No. 7.  That the gun was destroyed before Plaintiff's trial provides
valuable background evidence—it helps explain why Plaintiff did not retain his own expert to
conduct the analyses.  *Whitehead v. Bond*, 680 F.3d 919, 930 (7th Cir. 2012) ("Even where
evidence is not directly related to a disputed fact, it may be relevant when it provides background
information.")  If Plaintiff is unable to explain to the jury what happened to the gun, it leaves a
hole in the story that the jury will fill with conjecture.  *See id.* ("[O]ne measure of relevance is
whether its exclusion would leave a chronological and conceptual void in the story.")  Even the
State's trial counsel for Plaintiff's criminal trial agreed that a stipulation about the destruction of
Clifford's .40 caliber gun was appropriate.  Ex. F, Excerpt of Oct. 24, 1996 Report of Proceedings
in *People v. Bolden*, 94 CR 8397.

> B.    *Clifford's Mach-11 Gun*

Based on the existing evidence in the record, Plaintiff does not intend to argue that
Clifford's Mach 11 gun had *exculpatory* value for Plaintiff.  However, as further support for the
intent-related elements of Plaintiff's causes of action, Plaintiff intends to offer evidence that Karl
and Pesavento were personally responsible for ordering the destruction of the Mach-11 before
Plaintiff's criminal trial, even though they knew that the gun was *relevant* evidence.  Indeed, they
listed the gun as evidence in their supplementary report. Ex. G, January 30, 1994 Supplementary

Report, at 2. In the same report, Pesavento and Karl also noted that Clifford reported that the shooter's gun looked like the Mach-11 he had in his car (*i.e.*, the gun that was destroyed). *Id.* at 5.

Despite knowing that the gun was relevant evidence, Karl and Pesavento ordered that it be destroyed in advance of Plaintiff's criminal trial. Officer Harlan Hansbrough recovered the Mach-11 from the scene and filled out the Inventory Report for the gun. Ex. H, Property Inventory No. 1275322. In the report, he marked that the gun should be preserved as evidence. Hansbrough subsequently filled out a tracer form in March 1995 asking that the gun be destroyed, which was before Plaintiff's trial. Ex. I, Recovered Property Disposition Tracer. Hansbrough testified at his deposition that he never would have asked for a gun to be destroyed in a pending case without receiving direction from the detectives assigned to the investigation, who here were Pesavento and Karl.[5] *See* Ex. J, Excerpt of Deposition of Harlan Hansbrough, at 42:20-44:17, 48:6-49:17, 77:7-16. This is consistent with CPD's policy that the recovering officer is responsible for the disposition of the property "unless relieved of the responsibility by the investigating officer." Ex. K, CPD General Order 81-1, at IV(B)(1).

That Pesavento and Karl intentionally destroyed relevant evidence prior to Plaintiff's trial and before Plaintiff had an opportunity to review or test it is relevant to the intent-related elements of Plaintiff's causes of action. It supports a finding of intentional misconduct, the absence of good faith, extreme and outrageous conduct, and recklessness. Plaintiff's expert will testify that ordering the destruction of relevant evidence before Plaintiff's trial was a substantial deviation from reasonable police practices. Furthermore, it was a violation of the Detectives' Division

---

[5] It was Pesavento who reported to the State's trial counsel for Plaintiff's criminal trial that the guns had been destroyed. Ex. L, Notes of ASA Lynda Peters.

Standard Operating Procedures, which required detectives to "record and preserve all relevant information during their investigations." Ex. D, at § 18.3(C)(1).

Defendants take the unsupported position that destruction of evidence is only relevant to intent if Defendants knew the evidence was exculpatory. Mot. at 4-5. This is another attempt to extrapolate a court order focused on the elements of a due process claim to other causes of action with different elements of proof. Surely, Defendants are not arguing that it is appropriate for police officers to knowingly destroy relevant evidence before a trial as long as the evidence does not clearly exculpate the criminal defendant. In fact, the CPD's policy required detectives to preserve all "relevant" evidence, not only "exculpatory" evidence. Ex. D, at § 18.3(C)(1).

C.      The Inventory Report

Defendants failed to offer any legitimate argument that their suppression of the .40 caliber inventory report is irrelevant. As an initial matter, they describe the significance of the report as being limited to showing that there was blood on the gun. Mot. at 4-5. But that is not the only reason the report is significant. It is the only report that states Clifford was arrested on the night in question for unlawful use of a weapon. Ex. M, Property Inventory No. 1266045. With respect to the arrest, Judge Shah ruled that this evidence was favorable to Plaintiff (just not material for purposes of a due process violation). Dkt. 276, at 37. With respect to the blood on the gun, this information is certainly relevant. It provided Defendants with an additional reason to have the gun tested, but they still chose not to do this. Plaintiff's expert will testify that this was another deviation from reasonable police practices. Defendants' sole basis for excluding this evidence on relevance grounds is that Defendants had no reason to believe the blood on the gun was exculpatory. Mot. at 4-5. Not only do Defendants fail to address the relevance of the report's reference to Clifford's arrest, but they also fail to offer support for their assertion that Defendants' suppression of relevant evidence is insignificant unless that relevant evidence also is exculpatory.

This defies common sense. It is precisely their destruction of this evidence without testing that precluded anyone from knowing whether the evidence would be exculpatory. Defendants' argument also ignores CPD's policies that required Defendants to preserve all relevant evidence, regardless of whether the evidence also was believed to be exculpatory. Ex. D, at § 18.3(C)(1).

## V.      Evidence Related to Defendants' Destruction of Witness Interview Notes Is Relevant to Plaintiff's Remaining Causes of Action.

Despite Judge Shah's finding that it is reasonable to infer that interview notes once existed (but no longer exist) (Dkt. 276, at 25), Defendants assert this evidence is irrelevant because the contents of the notes are unknown. Mot. at 5. Although the inability to prove the exculpatory nature of the notes doomed Plaintiff's due process claim, the evidence is certainly relevant to proving the intent-related elements of the remaining causes of action. Plaintiff's expert will testify that destroying witness interview notes, especially when almost all of the witness interview notes for this investigation were destroyed, is a substantial departure from generally accepted police practices. It was also in direct violation of the CPD's investigative file policy.

Defendants also contend that the evidence is irrelevant because Plaintiff cannot establish Defendants' personal responsibility for the destruction. Mot. at 5. That the summary judgment record for the due process claim does not establish Defendants personally were responsible for the destruction of the notes does not preclude Plaintiff from attempting to establish their personal responsibility for the other causes of action via witness questioning at trial. Indeed, Plaintiff did not have sufficient knowledge to question Pesavento fully about the missing notes during his deposition because the City had provided Plaintiff with inaccurate information at that point, namely that there was a separate investigative file for the Clifford Frazier shooting that was destroyed during the routine course of CPD's business. *See* Ex. N, June 15, 2018 Email from Counsel for the City of Chicago. In other words, the City inaccurately stated that there was an

innocent explanation for the missing notes. After Pesavento's deposition, the City corrected its position and stated that there was only one investigative file, the one that was produced in this litigation. Ex. O, Excerpts of Deposition of Patrick Loftus, at 71:2-72:12. This file did not contain the witness interview notes at issue. *See, e.g.*, *id.* at 128:16-129:4, 137:13-22. Regardless of Pesavento's testimony, representatives of the City already have testified that it was the detectives' responsibility to submit their interview notes for inclusion in the investigative file and those notes were maintained in a centrally controlled file by neutral supervisory officers. *See, e.g.*, *id.* at 67:7-12, 68:23-70:8, 122:19-123:5. There was no realistic or likely opportunity for these notes to be removed from the file or lost by these neutral parties. *See id.* at 66:2-68:22, 69:9-70:13.

Additionally, the investigative file index indicates that Defendants never submitted the notes for inclusion in the investigative file. *See* Ex. P, Investigative File Index. Pesavento admitted during his deposition that he "assumed" he took notes during certain witness interviews. *See* Ex. Q, Excerpts of Deposition of Angelo Pesavento, at 36:18-37:9. He further admitted that "if we interviewed someone and they had something to say … we definitely take notes on it." *Id.* at 38:7-14. Plaintiff's expert also will testify that, based on his review of the record and his specialized knowledge of police procedures, Defendants took handwritten notes during their witness interviews in this case. *See* Ex. E, at 22-24. The evidence that notes were taken, combined with the investigative file index bereft of any mention of notes, demonstrates that Defendants never included their notes in the file but instead destroyed them. The sheer volume of missing interview notes is circumstantial evidence of a routine practice of not submitting the notes for inclusion in the investigative file and subsequently destroying them, rather than a few isolated instances of lost notes.

17

**VI.** **Evidence Related to Defendants' Failure to Report the Items Seized from Cynthia Steward's Home Is Relevant to Plaintiff's Remaining Causes of Action**

Judge Shah found that the evidence was sufficient to establish that Defendants Karl and Oliver engaged in a search and seizure at Cynthia Steward's home. Dkt. 276, at 27. Defendants contend that the evidence of the search should be excluded because Plaintiff cannot prove that the documents and items seized, including bank records, keys, and records of phone numbers, were exculpatory. Mot. at 6. They are essentially arguing, as with the gun, "because we violated policies and failed to preserve and inventory the evidence as required by CPD policies, we should be completely protected from the jury hearing about our misconduct at trial because no one can ever prove the evidence we concealed was exculpatory." Again, Plaintiff is not offering this evidence at trial to prove a due process claim. That Oliver and Karl searched Steward's home, took keys after asking specifically for Derrick Frazier's safety deposit key, and seized numerous documents, including bank records, but did not prepare any report of this search and did not inventory and preserve the documents, in violation of CPD's policies, is evidence of substantial departures from reasonable police practices. Ex. E, at 17-19. It helps establish the intent-related elements of Plaintiff's causes of action. *Jimenez*, 732 F.3d at 721. The evidence also corroborates Clifford's testimony about Oliver's conduct related to Derrick Frazier's safety deposit box key, as addressed in detail in Plaintiff's Response to Defendants' Motion *in Limine* No. 7.

**VII.** **Evidence Related to the Missing Inventory Control Card Is Relevant to Plaintiff's Remaining Causes of Action.**

Defendants contend that all evidence about the missing investigative file inventory control card should be excluded as irrelevant because Plaintiff cannot prove Defendants destroyed the card or believed that it contained exculpatory information. Mot. at 6-7. Plaintiff does not intend to offer the evidence to prove Defendants' bad faith destruction of exculpatory evidence because those elements of proof are specific to a due process claim, and Plaintiff is not asserting a due

process claim related to the missing control card. But Defendants' broad assertion that the missing control card is irrelevant and inadmissible for all purposes as it pertains to Plaintiff's remaining causes of action is neither supported by argument or legal precedent, and is in fact, wrong.

### A. Background on the Control Card

Pursuant to the CPD's investigative file policy, detectives were required to maintain only one investigative file for each homicide investigation. Each detective working on a particular homicide investigation was required to submit all of their case reports, notes, and all other documents related to the investigation for inclusion in this file. *See* Ex. D, at §§ 18.1(C) and 18.2(A). When detectives were not using the file, it was stored in a centralized location within the Detectives Division. Ex. O, at 68:23-70:8. It was mandatory for detectives to fill out the investigative file control card throughout the investigation. Each time they checked out the investigative file or the file exchanged hands, they were required to fill out the control card, indicating who was in possession of the file, the date they received it, and the date they returned the file. *See* Ex. D, at § 18.3(C)(5). CPD's policy specifically stated the control card was part of the investigative file. *Id.* This is critical, of course, because it helps answer the question of who could have destroyed or concealed evidence in the file. Although the Detectives Division was required to produce the entire investigative file to Plaintiff prior to his criminal trial, *see id.* at § 18.2(A); Ex. O, at 36:4-23, the control card was never produced. The City confirmed during this litigation that there was no control card in the file to be produced. Ex. R, July 25, 2018 Email from Counsel for City of Chicago.

### B. The Significance of the Control Card

The control card would have been valuable to Plaintiff during his criminal trial. Had the control card been properly completed and produced to Plaintiff before his criminal trial, it would

have shown (or should have shown) that Defendant Siwek checked out the investigative file in March 1994. Plaintiff's criminal defense counsel could have explored why Siwek checked it out at this time, which was after Defendants closed their investigation. Ex. S, Feb. 27, 1994 Supplementary Report. The evidence Plaintiff intends to produce in this case will show that in March 1994, Siwek gave a number of reports that were in the investigative file to an FBI agent. At the same time, Siwek provided the Willis report to this agent. The Willis report was not included in the investigative file or produced to Plaintiff prior to his criminal trial. The control card would have been valuable in this litigation to further demonstrate Siwek's involvement in the suppression of the Willis report.

The control card also would have shown which detectives were checking out the file to work on the investigation and when they were doing so. Plaintiff's criminal defense counsel could have used the control card to question detectives about the specifics of what investigative work they were doing on the case at particular times and/or their purpose in checking out the file at particular times. The card would have been valuable for the same purpose during this litigation.

### C. The Control Card's Relevance in This Matter

Plaintiff should be allowed to question Pesavento at trial about the control card and explore whether one was utilized in this investigation. Plaintiff did not have the opportunity to question Pesavento about this topic during his deposition. Pesavento was deposed in January 2018. Ex. Q, Excerpts of Deposition of Angelo Pesavento. Even though Plaintiff requested the complete investigative file in April 2017, the City did not produce a copy of the "complete" investigative file until June 2018 and did not confirm that the control card was missing from the original hard copy file until July 2018. Ex. T, Plaintiff's First Set of Requests for Production, at request nos. 2, 37-38; Ex. N; Ex. R. If Pesavento testifies that he did not fill out a control card, in violation of

CPD's policies and established procedures, it is relevant to showing his absence of good faith during this investigation. *See Manning*, 2004 WL 2496456, at *15 ("Malice may be inferred from an absence of probable cause when the circumstances are inconsistent with actions made in good faith.") If Pesavento testifies that he did fill out a control card and it somehow disappeared from the investigative file before the file was produced to Plaintiff during his criminal proceedings (while still in the possession of the Detectives Division), Plaintiff should be able to pursue challenging the credibility of that statement via the City's 30(b)(6) witnesses and other evidence. CPD policy puts the responsibility for maintaining the investigative file on the detectives. If they can disclaim responsibility by saying that some unknown bureaucrat "must have" lost it without proof, or even challenge, then no one can ever be held responsible for destroying (or not maintaining) a record.

**VIII.  Defendants' Fabrication of Evidence is Relevant to Plaintiff's Remaining Causes of Action.**

      *A.*    *Fabrication in Supplemental Report*

Defendants' fabrication of witness statements in a supplemental report is highly probative of their improper intent. Judge Shah explicitly found that it was reasonable to infer that Pesavento and Karl fabricated statements by three witnesses, namely, Tanesha Gatson, Lee Williams, and Clifford. Dkt. 276, at 45. Like the other rulings discussed above, Judge Shah's granting of summary judgment related to the fabrications does not shed light on the relevancy of the evidence. He ruled that Plaintiff had not established that the fabrications caused a deprivation of liberty (*i.e.*, the prosecution would have ended sooner if the fabricated witness statements had come to light). *Id.* at 45-47. But again, this ruling does not support Defendants' almost inconceivable position that their fabrication of three different witnesses' statements is not relevant to the intent-related elements of the remaining causes of action.

Defendants also understate the significance of the fabrications.  Karl and Pesavento put the fabrications in a police report that was to be shared with the prosecutor who approved the charging decision, thus falsely bolstering the strength of their case against Plaintiff.  They falsely stated that Gatson described Plaintiff as being light-skinned, which suggested her description of Plaintiff matched Clifford's description of the shooter.  *Id.* at 45.  They falsely stated that Lee Williams saw a black male in his early twenties shoot the victims from the backseat of their car while they were parked on Minerva Street and then exit the car and head in the direction of J&J Fish.  *Id.*  This provided Defendants with a purported eyewitness to the Minerva murders, which they did not really have, and corroborated Clifford's version of events (*i.e.*, he saw a black male get into the backseat of the victims' car and he saw them drive off shortly before the victims were murdered).  Finally, they falsely reported that Clifford said he got a good look at the shooter and the gun the shooter carried looked like the gun Clifford had in his car.  *Id.*  They knew these statements would help bolster the credibility of Clifford's identification of Plaintiff.  That Pesavento and Karl fabricated witness statements to strengthen their case against Plaintiff is a classic example of malice and extreme and outrageous conduct.  *See, e.g.*, *Davis v. Zonfrilli*, No. 13-2155, 2014 WL 12738905, at *5 (C.D. Ill. Aug. 6, 2014) ("A police officer's fabrication of evidence is one form of conduct that is sufficiently extreme and outrageous."); *La Playita Cicero, Inc. v. Town of Cicero, Ill.*, 175 F. Supp. 3d 953, 970 (N.D. Ill. 2016) (same).

It is difficult to decipher Defendants' "causation" argument as they attempt to apply it to a probable cause or malice analysis.  It appears that they are asserting that Karl and Pesavento did not rely on their own fabricated witness information in developing probable cause.  Mot. at 12.  Of course they did not rely upon their own fabricated stories.  The relevant point is that they knew they had to create fabricated evidence to justify detaining Plaintiff because there was insufficient

legitimate evidence to support probable cause.[6]

Defendants also assert that Pesavento and Karl prepared the fabricated report before Plaintiff was a suspect. That is factually inaccurate. Pesavento testified that Plaintiff became a suspect based on the information Gatson provided on the evening of January 29, Ex. Q at 75:9-14, 78:9-79:12, so when they prepared the fabricated report on January 30, *see* Ex. G, "Lynier" was already their suspect. And in any event, Plaintiff's Fourth Amendment claim is based on his wrongful post-arrest detention, so the timing is immaterial.

B.   *Fabrication During Lineup*

Defendants contend that Plaintiff should be barred from arguing or introducing evidence that Defendants believed Plaintiff was innocent because Judge Shah ruled that there was insufficient evidence presented ***in the summary judgment briefing for the due process lineup claim*** that Defendants had actual knowledge that Plaintiff was innocent. Mot. at 12. But this ruling should not in any way preclude Plaintiff from offering evidence to support Defendants' knowledge that Plaintiff was innocent with respect to Plaintiff's *other* claims that were not the subject of the summary judgment briefing. Defendants offer no legal support to suggest otherwise. Plaintiff limited his record citations in the summary judgment brief to the evidence Judge Shah indicated in his motion to dismiss would be sufficient if proven (*compare* Dkt. 133 (Motion to Dismiss Order), at 12, *with* Dkt. 253 (Opposition to Summary Judgment), at 7-8), but ultimately Judge Shah concluded at the summary judgment stage that this evidence was insufficient to show

---

[6] To the extent Defendants are asserting that the fabrications had to cause Plaintiff's illegal detention in order to be relevant, that argument also misses the mark. Regardless of whether the fabricated police report caused Plaintiff to be illegally detained, it is relevant because the probable cause analysis requires the jury to consider "what Defendant[s] knew" to determine whether they acted reasonably. *See* Fed. Civ. Jury Instr. of the 7th Cir. § 7.08. In this case, part of what they "knew" was that the police reports that seemed, on their face, to corroborate Plaintiff's guilt were fabricated, and therefore, would not have led a reasonable officer to believe Plaintiff committed the crimes.

23

that Defendants had actual knowledge Plaintiff was innocent. Dkt. 276, at 48. Plaintiff intends to offer substantial additional evidence at trial to show that Defendants knew Plaintiff was innocent. It is always a possibility that evidence offered at trial will differ from evidence presented at summary judgment. *See, e.g.*, *Dochak v. Polskie Linie Lotnicze LOT S.A.*, No. 15 C 4344, 2017 WL 2362570, at *11 (N.D. Ill. May 30, 2017) ("[I]t is possible that following their depositions, Plaintiffs remember other compensable damages. And while changes to their stories following their depositions may impact their credibility, it does not prevent Plaintiffs from testifying in that manner."). Defendants cannot foreclose this possibility by relying on a summary judgment opinion that related to only one of Plaintiff's causes of action.

## IX. The Evidence at Issue Is Not Precluded by Rule 403.

Without citation to any authority, Defendants summarily assert that admission of facts proving Defendants' destruction, suppression, and fabrication of evidence "would confuse and mislead the jury to believe Plaintiff's trial was unfair." Mot. at 14. There is no basis for that conclusory assertion. The jury will be properly instructed on the elements of Plaintiff's claims, and "[a] jury is presumed to follow its instructions." *Weeks v. Angelone*, 528 U.S. 225, 234 (2000).

As discussed above, the evidence of Defendants' destruction, fabrication, and suppression of evidence is critical to proving Defendants' intent and lack of probable cause with respect to Plaintiff's remaining claims, and thus, its probative value outweighs any danger of unfair prejudice. Attempting to diminish the probative value of this evidence, Defendants again mischaracterize the nature of Judge Shah's opinion. They state that in ruling on Plaintiff's due process claim, "Judge Shaw [*sic*] set evidentiary parameters for the remaining claims." Mot. at 13. As discussed above—the opposite is true. Judge Shah expressly stated on the record that he did not necessarily expect that "the evidentiary landscape is going to change one way or the other," in light of his summary judgment opinion. Ex. A, at 4:1–13.

There is no doubt that this evidence is unfavorable for Defendants—it is the essence of Plaintiff's case. But it is unfavorable for reasons that also make it highly probative of the issues in dispute. Rule 403 is not a basis for excluding evidence merely because it is harmful to Defendants' case. *See, e.g.*, *Kelsay v. Consol. Rail Corp.*, 749 F.2d 437, 443 (7th Cir. 1984) ("Of course, 'unfair prejudice' as used in Rule 403 is not to be equated with testimony simply adverse to the opposing party. Virtually all evidence is prejudicial or it isn't material. The prejudice must be 'unfair.'"). On the other hand, exclusion of this evidence would result in severe prejudice to Plaintiff. Defendants' motion should be denied.

## CONCLUSION

For the foregoing reasons, Plaintiff Eddie L. Bolden respectfully asks this Court to enter an Order denying Defendant Officers' Motion *in Limine* No. 4.

Dated: November 8, 2019

Respectfully Submitted,

*/s/ Valarie Hays*
Ronald S. Safer
Valarie Hays
Eli J. Litoff
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison Street, Suite 2900
Chicago, Illinois 60602
(312) 471-8700
rsafer@rshc-law.com
vhays@rshc-law.com
elitoff@rshc-law.com

Sandra L. Musumeci (*pro hac vice*)
RILEY SAFER HOLMES & CANCILA LLP
1330 Avenue of the Americas, 6th Floor
New York, New York 10019
(212) 660-1000
smusumeci@rshc-law.com

*Attorneys for Eddie L. Bolden*

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 8, 2019, I caused the foregoing document to be electronically filed using the CM/ECF system, which will send notice of this filing to all counsel of record.

*/s/ Valarie Hays*
Valarie Hays