**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| EDDIE L. BOLDEN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17 C 00417 |
| | ) | |
| Vs. | ) | Honorable Steven Seeger |
| | ) | |
| CITY OF CHICAGO, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION *IN LIMINE* NO. 2 TO BAR
REFERENCE TO PLAINTIFF'S GANG AFFILIATION AND DRUG ACTIVITY**

Defendants Angelo Pesavento, James Oliver, Edward Siwek, the Estate of George Karl, and the Estate of Michael Kill (collectively, "Defendant Officers"), by and through their attorneys, hereby respond to Plaintiff's Motion *in limine* No. 2 to bar reference to Plaintiff's gang affiliation and drug activity, as follows:

**INTRODUCTION**

After injecting into this case a gang motive for the underlying double homicide, gang evidence of the key players in the underlying two kilogram drug transaction, and gang involvement in securing testimony on Plaintiff's behalf in his underlying criminal trial, Plaintiff now seeks to prevent the jury from hearing his affiliation with the Gangster Disciple street gang. Plaintiff's request to elicit testimony that the murder victims knew that a gang hit was placed on them, but hide the fact that Plaintiff was a member of that gang should be denied.

Specifically, Plaintiff alleged that the Defendant Officers "failed to investigate whether the shootings were the result of *gang* retaliation, despite the fact that Defendant Officers had information suggesting that Derrick Frazier and Ledell Clayton had a *gang-related* hit on them at the time of the shootings…." (Third Am. Compl., Dkt. # 236, at ¶ 60) (emphasis added) In fact,

1

Defendant Pesavento testified at the grand jury that the police developed information that the double murder was retaliation for Derrick and Ledell refusing to pay a street tax to the Gangster Disciples. (*See* GJ Test. of Pesavento, p. 7, March 23, 1994, attached hereto as Exhibit A.) Cynthia Steward testified that she informed the police that the murders were a gang-related hit ordered by the Gangster Disciples because Derrick and Ledell's refusal to pay the gang portions of their drug sales. (*See* Steward Dep. at p. 69, attached hereto as Exhibit B) Steward testified that she and Ledell spoke with Andre Kimbrough, a regent in the Gangster Disciples, who informed them that Anthony Williams ("Ant") and other governors in the gang, put a hit on Ledell and Derrick. (Ex. B. p. 134)

      Ant, the owner of High Rollers (the beeper shop) and the J&J Fish restaurant, was the supposed purchaser of the two kilograms of narcotics that Derrick and Ledell were selling on the night they were murdered. Ant, as a governor of the Gangster Disciples, would not actually commit the double murder, but would instead have someone else commit the murders. (*See* Ex. B at p. 136) Plaintiff was a member of the Gangster Disciple street gang. Plaintiff was also a "close associate" of Ant's, who was observed by the Federal Bureau of Investigation accompanying Ant to court at 26th and California. (*See* FBI Report, EB-FBI 000040, attached hereto as Exhibit C.) The Chicago Police Department was provided with positive information as it related to Plaintiff which led to his arrest for the double murder. (*Id*.)

      Additionally, Plaintiff admitted that the Gangster Disciples influenced testimony from at least one defense witness at his criminal trial. Specifically, Plaintiff stated in a recorded Illinois Department of Corrections phone call that Edna Williams and "them" could not remember anything about the shooting until Robert Dordies, also known as Cold Black, a board member[1] of

---

[1] Board members are a higher rank in the Gangster Disciples than governors and regents.

the Gangster Disciples, "made" them testify on Plaintiff's behalf at his criminal trial. (*See* Trans. of Pl.'s IDOC phone call, p. 4-7, May 7, 2012, attached hereto as Exhibit D) In spite of Plaintiff's admission, he has alleged it was the Defendant Officers' faulty interviews of his witnesses that contributed to his prosecution and conviction. (Third Am. Compl., Dkt. # 236, at ¶ 56)

## ARGUMENT

The Seventh Circuit has long recognized that under appropriate circumstances, gang evidence has probative value warranting its admission over claims of prejudice. *U.S. v. Alviar*, 573 F.3d 526, 536 (7th Cir. 2009) (citing *U.S. v. Irvin*, 87 F.3d 860, 864 (7th Cir. 1996)). For example, gang evidence is probative to show motive, bias, or the existence of a conspiracy. *See United States ex rel Hairston v. Warden*, 597 F.2d 604, 607-08 (7th Cir. 1979) (evidence of gang membership admissible to show motive for murder); *U.S. v. Montgomery*, 390 F.3d 1013 (7th Cir. 2004) (evidence of gang membership admissible to show defendant's motive for carrying weapon); *Clark v. O'Leary*, 852 F.2d 999 (7th Cir. 1988) (witness' membership in rival gang admissible for purposes of impeachment to show bias); *U.S. v. Suggs*, 374 F.3d 508, 517 (7th Cir. 2004) (evidence of defendants' gang affiliation admissible to show existence of a conspiracy): *U.S. v Hattaway*, 740 F.2d 1419, 1425 (7th Cir. 1984) (evidence of motorcycle gang's lifestyle admissible to provide accurate description of victim's ordeal). Gang affiliation is particularly relevant, and has been held admissible, in cases where the interrelationship between people is a central issue. *Alviar*, 573 F.3d at 536 (citing *U.S. v. Thomas*, 86 F.3d 647, 652 (7th Cir. 1996)). On the other hand, evidence is unfairly prejudicial if it will induce the jury to decide the case on an improper basis, rather than the evidence presented. *U.S. v. Thomas*, 321, F.3d 627, 630 (7th Cir. 2003).

Evidence of Plaintiff's membership in the Gangster Disciple street gang is relevant and its probative value is substantially outweighed by any danger of unfair prejudice for three reasons. First, Plaintiff has alleged in his operative complaint that the double murder of Derrick and Ledell was gang-related. Specifically, Plaintiff alleged Cynthia Steward told police officers that at the time of their murders, Derrick and Ledell had a gang-related hit on them. (Third Am. Compl., Dkt. # 236, at ¶ 60). Steward provided the police with names of high-ranking Gangster Disciples who could have ordered the hit on Derrick and Ledell. (*See* Ex. B., Steward Dep. at p. 69) Ant was one of names of high-ranking Gangster Disciples that Steward provided to the police. (*Id*.) As Judge Shah recognized, "[i]f the Gangster Disciples had a hit out on the murder victims, then Bolden's gang involvement would have become relevant, since he was a member of the Gangster Disciples." (Dkt. #276 at p. 43) Plaintiff should not be able to inject into this case a gang-related motive for the double murder, and then claim that evidence of his own membership into that gang unfairly prejudices him. Allowing him to do so would prevent the Defendant Officers from presenting to the jury one of Plaintiff's motives for committing these murders, *i.e.*, that he was ordered to by his close associate and a governor of the Gangster Disciples, Anthony Williams. *See Hairston*, 597 F.2d 607-08 (concluding evidence of gang membership admissible to show motive for murder).

Second, evidence of Plaintiff's gang membership is admissible to show Plaintiff's relationship with key players in the murders, namely Ant and his family. On the night of the murders, Ant was a governor of the Gangster Disciples. Derrick and Ledell went to 64th and Cottage Grove intending to sell two kilograms of narcotics to Ant. Clifford observed Derrick and Ledell meeting with Ant when an individual walked from High Rollers to the Williams' family J&J Fish and joined the meeting. Shortly thereafter, Clifford observed this individual get in the

backseat of a car with Derrick and Ledell in the front seat. Minutes later, this individual returned alone and began shooting at Clifford. Part of the defense in this case is to show the jury the close relationship between Ant and Plaintiff to explain why Ant would have Plaintiff, of all people, murder Derrick and Ledell, and why Plaintiff would agree to commit the murders. Part of this close relationship is that Ant and Plaintiff are bound together by their gang membership in the Gangster Disciples. *See Alviar*, 573 F.3d at 537 (stating the fact that four individuals were members of the same gang made it more likely that they participated in a conspiracy).

Third, Plaintiff's membership in the Gangster Disciple street gang is admissible to explain Edna Williams' supposed exculpatory testimony at Plaintiff's criminal trial. Plaintiff has admitted that Edna Williams (Ant's mother) and "others" initially told the police that they had no information about the shooting. It was not until Robert Dordies allowed[2] witnesses to provide testimony on Plaintiff's behalf did Edna state that Plaintiff was inside the J&J Fish at the time of the shooting. Without evidence that Plaintiff was also a member of the Gangster Disciples, the jury would be left in the dark as to why a Gangster Disciple board member was giving permission to individuals to testify on Plaintiff's behalf at his criminal trial. Moreover, this evidence would also go to Edna's bias and motive to testify favorably for Plaintiff. *See U.S. v. Ozuna*, 674 F.3d 677, 681 (7th Cir. 2012) (gang evidence admissible to show bias, interest, or motive).

Furthermore, even if Plaintiff had not injected gang-related allegations here, his membership in the Gangster Disciples and relationship with Ant (which was uncovered during the course of the investigation and before Plaintiff's arrest) is evidence relevant to the issue of

---

[2] In spite of this admission, Plaintiff has alleged that the Defendant Officers' supposed faulty investigation was the reason why Edna initially did not tell the police that Plaintiff was inside the J&J Fish at the time of the shooting. (3d Am. Compl., Dkt. # 236, at ¶ 56)

probable cause, an element of Plaintiff's malicious prosecution and Fourth Amendment claims.

Plaintiff also moves to bar evidence that Ant, on a number of occasions, provided narcotics for Plaintiff to sell. This evidence is admissible to show a criminal relationship between Ant and Plaintiff. *See U.S. v. Foster*, 652 F.3d 776, 783 (7th Cir. 2011). As such, Plaintiff's reliance on *Lopez* is misplaced. (*See* Pl.'s MIL 2, Dkt. #295, at p. 3-4.) In *Lopez*, the court barred admission of Plaintiff's prior drug sales because Defendants were offering such evidence to undermine Plaintiff's claim for emotional distress due to his confinement. *Lopez v. City of Chicago*, No. 01 C 1823, 2005 WL 563212, *7 (N.D. Ill. March 8, 2005). Thus, the plaintiff's drug sales were of limited relevance. *Id*. Here in contrast, the Defendant Officers are not offering Plaintiff's prior drug sales to undercut Plaintiff's claim for emotional distress. Rather, the evidence will be offered to show the nature and extent of Plaintiff's criminal relationship with Ant. As mentioned above, Defendant Officers will have to explain why Ant chose Plaintiff to carry out these murders and Plaintiff's motive for doing so. Plaintiff's relationship and criminal activity with Ant is relevant to those issues.

Accordingly, the Defendant Officers respectfully request that this Court deny Plaintiff's motion in limine number 2.

Dated: November 8, 2019          /s/ Brian J. Stefanich
                                                         One of the attorneys for the Defendant Officers

Andrew M. Hale (ahale@ahalelaw.com)
Barrett Boudreaux (bboudreaux@ahalelaw.com)
William E. Bazarek (wbazarek@ahalelaw.com)
Brian J. Stefanich (bstefanich@ahalelaw.com)
Hale & Monico, LLC
53 W. Jackson Blvd., Suite 330
Chicago, IL 60604
T: (312) 870-6908

6

## CERTIFICATE OF SERVICE

I, Brian J. Stefanich, an attorney, hereby certify that I caused a copy of the foregoing Defendant Officer's Response to Plaintiff's Motion *in Limine* Number 2, to be filed with the Court's CM/ECF system on November 8, 2019, which provided notice and a copy to all counsel of record.

/s/ Brian J. Stefanich