**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| EDDIE L. BOLDEN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17 C 00417 |
| | ) | |
| vs. | ) | Honorable Steven Seeger |
| | ) | |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION *IN LIMINE* NO. 4 TO
PRECLUDE CERTAIN TESTIMONY OF DEFENDANT JAMES OLIVER**

Defendants Angelo Pesavento, James Oliver, Edward Siwek, the Estate of George Karl,

and the Estate of Michael Kill (collectively, "Defendant Officers"), by and through their

attorneys, hereby respond to Plaintiff's Motion *in limine* No. 4 to preclude certain testimony of

Defendant James Oliver, as follows:

**BACKGROUND**

In late 1993 and early 1994, there was an FBI Joint Task Force, which included members

of the Chicago Police Department, investigating the criminal operations of Anthony Williams

("Ant"). The name of the Joint Task Force operation was AntBan. This operation included

sophisticated surveillance of Ant and his "few close associates" along with information provided

by the FBI's confidential sources.

During his deposition, Defendant Oliver was asked how he "assisted in the discovery of

Mr. Bolden as a possible suspect?" (Dep. of Oliver, p. 74, Dec. 21, 2017, attached hereto as

Exhibit A) In response to that question, Defendant Oliver testified that either he or his partner,

Talmay Anderson, spoke to Mitchell McCullough, a gang crimes specialist detailed to the FBI,

and McCullough informed them that the FBI had a tip that Lanier (Plaintiff's middle name) was

1

the shooter. (Ex. A at p. 74-76) When asked what he did with this information, Defendant Oliver stated that he would have shared the information with Detective Baker because he knew that Detective Baker was assigned to the double murder. (Ex. A at p. 97) Defendant Oliver then confirmed that the information received from McCullough was documented in the investigating detectives' supplementary report in which the detectives wrote, "[i]n conjunction with Gang Crime Specialists Oliver and Anderson, the reporting detectives learned that the possible offender was a person by the name of Eddie Lynier Bolden. (Ex. A at p. 102)

Subsequent to Defendant Oliver's deposition, the FBI produced documents corroborating Defendant Oliver's deposition testimony. The FBI Report recounts information about the Frazier/Clayton double murder. (FBI Report, attached hereto as Exhibit B) Specifically, the FBI was advised by a confidential source as to individuals closely related to Ant, including Plaintiff. (Ex. B) The FBI Report then states that the "Chicago Police Department was provided with positive information as it relates to 'Lanier,' aka Edward L. Bolden. This information resulted in the arrest by CPD of an Edward L. [B]olden…." (Ex. B) Additionally, another FBI Report identifies gang crimes specialist Mitchell McCullough working on operation AntBan and communicating with detectives investigating the Frazier/Clayton double murder. (Tipton Report, attached hereto as Exhibit C)

## ARGUMENT

Plaintiff's motion *in limine* number 4 should be denied as the information that Defendant Oliver received from McCullough is not being offered as improper hearsay, is directly relevant to Plaintiff's malicious prosecution, intentional infliction of emotional distress and Fourth Amendment claims, and its probative value is not substantially outweighed by any risk of *unfair* prejudice. First, this Court should not grant Plaintiff's motion based on his one sentence hearsay

2

objection. (Dkt. #297, p. 3) As Plaintiff seemingly recognizes, this evidence is not being offered to show that Plaintiff actually murdered Frazier and Clayton and attempted to murder Clifford, but is offered for the non-hearsay purpose to demonstrate the effect on the listener and to show the course of the police investigation. *See U.S. v. Shaw*, 824 F.3d 624, 630 (7th Cir. 2016). McCullough's information had the effect of causing Defendant Oliver to inform the investigating detectives that the offender might be Plaintiff. Likewise, the course of the police investigation rationale applies when a statement is offered only to show the effect that it had on the police. *Carter v. Douma*, 796 F.3d 726, 736 (7th Cir. 2015). Thus, the information conveyed by McCullough is admissible to show that the Defendants did not randomly pick out Plaintiff as a suspect, but were led to investigate him, in part, because McCullough provided them information from a confidential FBI source which corroborated witness testimony that an individual named "Lanier" was present at the scene of the crime at some point on the night of the shooting.

Second, Defendant Oliver's testimony regarding the information provided by McCullough is relevant to Plaintiff's state law malicious prosecution and intentional infliction of emotional distress claims. Defendant Oliver's state of mind is at issue when deciding whether he acted with the requisite malice and/or intent under these state law claims. Additionally, this information is relevant to the issue of probable cause, an element of Plaintiff's malicious prosecution and Fourth Amendment claims.

Plaintiff's arguments that the McCullough information is irrelevant is unpersuasive. Plaintiff takes issue with Defendant Oliver's recollection of receiving the information from McCullough during his deposition testimony. (Dkt. #297 at p. 3) Specifically, Plaintiff argues that this evidence is inadmissible because Defendant Oliver was unable to recall whether it was he or his partner that received the information. (*Id.*) However, Plaintiff offers no explanation as

3

to why the identity of the officer actually receiving the information from McCullough matters. What is relevant to Plaintiff's claims is the Defendant Officers' states of mind, and whether Defendant Oliver heard that Plaintiff might be the offender directly from McCullough or from his partner who heard it from McCullough does not change his state of mind. Plaintiff also takes issue with the information not being documented anywhere in the "case file." (*Id.*) However, the investigating detectives' supplementary report stated that the detectives learned from Defendant Oliver and Anderson that the possible offender was Plaintiff. . (Ex. A at p. 102) The information is also documented in the FBI Report stating that the "Chicago Police Department was provided with positive information as it relates to 'Lanier,' aka Edward L. Bolden. This information resulted in the arrest by CPD of on Edward L. [B]olden…." (Ex. B) Next, Plaintiff argues that the information is irrelevant because Defendant Oliver never "went to any particular location or conducted any questionable investigative activity" as a result of receiving the information by McCullough. (Dkt. #297 at p. 3) Noticeably absent from Plaintiff's argument is any citation to any authority that Defendant Oliver had to go to any particular location or conduct any questionable investigative activity in order to make the McCullough information relevant. Irrespective of Plaintiff's lack of legal authority, Defendant Oliver did do something with the information--he passed it on to the detectives that were actually assigned to investigate the double homicide. (Ex. A at p. 97, 102)

Third, the probative value of the information that Defendant Oliver received from McCullough is not substantially outweighed by the danger of unfair prejudice to Plaintiff. Plaintiff's complaint that he "has no ability at this point to identify or challenge the informant or the veracity of Defendant's Oliver's statement that he received such a tip" is simply incorrect. (Dkt. #297, p. 4) Plaintiff could have, but chose not to, interviewed or deposed McCullough

4

about the information. Plaintiff also could have litigated the redactions that the federal government placed on the FBI documents in an attempt to further discover this information. Once again, Plaintiff made the strategic choice not to do so. More to the point, the FBI documents themselves corroborate Oliver's testimony and whether the informant was telling the truth is not relevant to the impact of the information the FBI provided on the state of mind of the officers receiving it.

Plaintiff argues that the evidence is unfairly prejudicial because the Cook County State's Attorney's Office ("CCSAO") did not disclose information about an "informant." (Dkt. #297, p. 4) As an initial matter, the State disclosed that it did not intend to call any informant as a witness in Plaintiff's criminal trial, not that no informant existed. (*See* State's Answer to Discovery, p. 4, ¶ 15, attached hereto as Exhibit D) If Plaintiff had an issue with that disclosure he should have raised it prior to his criminal trial. In any event, whether or not the CCSAO properly disclosed information prior to Plaintiff's criminal trial has nothing to do with the Defendant Officers or any claim in this action and is simply not a valid reason for barring Defendant Oliver's testimony concerning information he received during the investigation.

Finally, Plaintiff argues that allowing Defendant Oliver's testimony regarding the information he received from McCullough would "set a dangerous precedent…that the arresting officers' defense could be bolstered by unsupported 'informant' information, disclosed for the first time decades after the events in question." (Dkt. #297, p. 5) What would "set a dangerous precedent" is barring a defendant's testimony that he received information from another officer working on an FBI task force investigating a key subject in a double murder, and the defendant's testimony about this is corroborated by the investigating detectives' supplementary report and FBI records. Plaintiff had the investigating detectives' supplementary report prior to his criminal

trial and could have investigated the source of Oliver and Anderson's information that Plaintiff was the offender. He chose not to do that investigation prior to his criminal trial. Accordingly, Defendant Oliver's testimony regarding the information he received from Mitchell McCullough is not substantially outweighed by the danger of unfair prejudice to Plaintiff.

Therefore, the Defendant Officers request that this Court deny Plaintiff's motion *in limine* number 4.

Dated: November 8, 2019

/s/ Brian J. Stefanich
One of the attorneys for the Defendant
Officers

Andrew M. Hale (ahale@ahalelaw.com)
Barrett Boudreaux (bboudreaux@ahalelaw.com)
William E. Bazarek (wbazarek@ahalelaw.com)
Brian J. Stefanich (bstefanich@ahalelaw.com)
Hale & Monico, LLC
53 W. Jackson Blvd., Suite 330
Chicago, IL 60604
T: (312) 870-6908

## CERTIFICATE OF SERVICE

I, Brian J. Stefanich, an attorney, hereby certify that I caused a copy of the foregoing Defendant Officer's Response to Plaintiff's Motion *in Limine* Number 4, to be filed with the Court's CM/ECF system on November 8, 2019, which provided notice and a copy to all counsel of record.

/s/ Brian J. Stefanich