**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| EDDIE L. BOLDEN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17 C 00417 |
| | ) | |
| vs. | ) | Honorable Steven C. Seeger |
| | ) | |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**DEFENDANT OFFICERS' MOTION *IN LIMINE* NO. 10 TO PRECLUDE**
**CERTAIN TESTIMONY FROM WILLIAM GAUT**

Plaintiff Eddie L. Bolden, by his undersigned counsel, respectfully submits this Response in Opposition to Defendant Officers' Motion *in Limine* No. 10 to Preclude Certain Testimony from William Gaut (Dkt. 317.)

## INTRODUCTION

Defendants seek to exclude two opinions purportedly offered by Plaintiff's police practices expert, William Gaut. First, they seek to preclude Gaut from testifying that during the lineup procedure at issue in this case, Plaintiff could see through the "one-way mirror" that separated the lineup participants from the witness. Second, they seek to exclude Gaut's opinion that they "violated their obligations under *Brady*." Mot. at 3-4. Defendants declined to depose Gaut during discovery, and now they badly mischaracterize his opinions. He will not opine to the ultimate conclusion that Plaintiff could see through the one-way mirror on February 26, 1994. Rather, he will testify, based on his education, training, experience, and review of the record, that Plaintiff could have seen through the mirror if certain lighting was in place and other circumstances occurred on that date. Gaut also will not testify to the legal conclusion that Defendants violated *Brady*. Rather, he will testify that Defendants' conduct with respect to the evidence at issue violated generally accepted law enforcement standards. Judge Shah's finding that this conduct was insufficient to establish a due process claim under *Brady* does not preclude Gaut's opinion, which is relevant to Plaintiff's remaining causes of action.

## BACKGROUND

### I. Relevant Allegations

Clifford Frazier ("Clifford") identified Plaintiff as the offender in the underlying criminal case due to an unduly suggestive identification procedure employed by Defendants. During the lineup, which took place at the Area 2 police station, Plaintiff could see through the one-way mirror

that separated the lineup participant room from the witness room. Plaintiff observed Clifford first point in the direction of another lineup participant before being physically directed by a law enforcement officer to point to Plaintiff. At first, Clifford shook his head no but eventually identified Plaintiff. *See* Ex. A, Excerpt of Deposition of Eddie L. Bolden, at 205:1–8. The law enforcement officer that directed Clifford was later identified as James Oliver. *See* Ex. B, Excerpt of Deposition of Charles Ingles, at 36:14–37:2, 39:4–20; Ex. C, Excerpt of Deposition of Clifford Frazier, at 21:6–21. Pesavento, Karl, and Siwek also were present for the lineup procedure.[1]

Defendants also severely departed from reasonable police practices by withholding, concealing, and/or destroying evidence during their investigation. Judge Shah held in his summary judgment opinion that this conduct did not support a due process claim, but Plaintiff intends to offer this evidence in support of his other claims.[2]

## II. Plaintiff's Police Practices Expert

Plaintiff will call Gaut to testify at trial regarding generally accepted law enforcement standards and practices and Defendants' myriad material departures from those standards during the investigation of the Frazier/Clayton homicides. Gaut's experience includes nearly 25 years with a major municipal police department, including command-level positions where he supervised hundreds of police officers. He has been qualified as an expert in law enforcement standards and practices in dozens of cases across the country, including in the Northern District of

[1] Defendants engaged in numerous improper suggestive techniques during the lineup, but this response will focus on the one relevant to Defendants' motion.

[2] The import of Judge Shah's summary judgment opinion on Plaintiff's remaining claims is discussed in more detail in Plaintiff's Response to Defendants' Motion *in Limine* No. 4. Plaintiff incorporates those arguments by reference.

Illinois. Gaut's report, attached to Defendants' motion as Exhibit A, sets forth several opinions, all of which are based on his review of the record, his years of professional training, education, and experience, and his study and understanding of generally accepted law enforcement practices.

**III. Plaintiff's Investigator's Inspection of Area 2**

On September 5, 2018, Plaintiff's investigator, Ray Ruebenson, conducted an inspection of the Area 2 lineup rooms (*i.e.*, the witness room and the lineup participant room, which are divided by a wall containing a "one-way" mirror that under the right lighting conditions allows the witness to see the lineup participants but precludes the participants from seeing the witness). Ruebenson, while standing in the lineup room, tested whether he was able to see a subject in the witness room under various lighting scenarios and the proximity of the witness to the mirror. The working theory was that if there was enough lighting getting into the witness room through an open door or lights being left on, a witness could be seen on the other side of the mirror (*i.e.*, by the lineup participants) if standing close enough to the mirror. That theory was proven to be correct by Ruebenson's testing. Ruebenson used a device called a photometer to take measurements of the light levels in the witness and lineup rooms and recorded what he could see from the participant room depending on the amount of light in both rooms. Ruebenson summarized his inspection in a written report. *See* Ex. D, September 28, 2018 Investigator Report.

**ARGUMENT**

**I. Legal Standard**

Expert testimony should be admitted where the expert is sufficiently qualified, the methodology is sufficiently reliable, and the testimony will assist the trier of fact. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). The *Daubert* framework "is not designed to have the district judge take the place of the jury to decide ultimate issues of credibility and

accuracy." *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012). So long as "the proposed expert testimony meets the *Daubert* threshold of relevance and reliability, the accuracy of the actual evidence is to be tested before the jury with the familiar tools of 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.'" *Id.* (quoting *Daubert*, 509 U.S. at 596).

## II. Gaut's Opinion Regarding the One-Way Mirror is Relevant and Admissible.

Defendants contend that Gaut should not be permitted to testify "that Plaintiff could see through the one-way mirror on February 26, 1994." Mot. at 3. That is a mischaracterization of Gaut's opinion. Gaut considered Plaintiff's testimony that he was able to see the silhouettes of the individuals on the other side of the one-way mirror because "even though the lights were off in the witness room, the witness room was not completely dark." *See* Mot. Ex. A, at 14. Based on Gaut's "years of law enforcement training and experience," he explains that one-way mirrors only work if the difference in the amount of light between the witness room and the participant room is great enough. *Id.* at 14-15 ("[I]f the witness room is not dark enough, or the participant room is not light enough, the one-way mirror allows the individual to see through."). Taking this into account, he opines that "under the conditions [Plaintiff] described," (*i.e.* that the witness room was not completely dark), Plaintiff would have been able to see through the one-way mirror. *Id.*

This opinion assists the trier of fact. As the Seventh Circuit has explained, jurors "may not fully grasp particular techniques or equipment utilized by police officers in the field." *United States v. Brown*, 871 F.3d 532, 537 (7th Cir. 2017). "In those instances, an expert's specialized knowledge can 'help the trier of fact to understand the evidence or to determine a fact in issue,' as Rule 702 requires." *Id.* (quoting Fed. R. Evid. 702). That is precisely the case here. Lay jurors are not familiar with how one-way mirrors function and the precautions officers must take to

ensure that lineup participants cannot see through the mirror. Thus, Gaut's specialized knowledge can assist the jury to determine a fact in issue, namely, whether Plaintiff could see Clifford and Defendants through the one-way mirror on February 26, 1994.

Contrary to Defendants' assertions, Gaut's opinion about visibility through the mirror does not rely on Ruebenson's inspection. *See* Mot. at 3. As noted above, Gaut's opinion is principally based upon his review of the documents, namely, Plaintiff's testimony regarding the conditions of the lineup, and his "years of law enforcement training and experience," which includes significant training and experience regarding lineups. Mot. Ex. A, at 14-15.

Gaut did consider Ruebenson's report and offer additional opinions related to it. First, he opined that the highest light measurement recorded by Ruebenson, 421 LUX, was "below generally accepted standards for lighting in a participant room, which dictate that light levels should be at least 500 to 600 LUX in order to ensure that the participants cannot see through the one-way mirror." *Id.* at 15. Gaut further opined that "Mr. Ruebenson's inspection of Area 2 thus provides corroboration for Mr. Bolden's version of the events." *Id.*

Defendants make two arguments for exclusion of Gaut's opinions relating to Ruebenson's report. First, they suggest that Gaut's opinions have insufficient "factual underpinnings" because he does not account for "the twenty-five year gap or the different circumstances between the lineup and inspection, like changes in the artificial lighting in the participant room or the differences in natural lighting." Mot. at 3-4. The soundness of "factual underpinnings" for Gaut's opinions, however, is a determination for the jury; it is not a proper exercise of the Court's gatekeeping function. *See, e.g.*, *Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1068 (7th Cir. 2013) ("It is up to the trier of fact … to evaluate the 'soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis.'") (quoting *Smith*

*v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000)); *see also Ernst v. City of Chicago*, 39 F. Supp. 3d 1005, 1014 (N.D. Ill. 2014) (rejecting argument that expert's analysis of "a little town would seem to have nothing to do with a City the size of Chicago" and concluding that such an attack is "a question of the quality of the data [the expert] used and the factual underpinnings of his conclusions," which are "matters for cross examination and the trier of fact").

Gaut will testify that under the observed conditions, one could see through the mirror. If Defendants establish that different conditions existed in the relevant time frame (and they have yet to do so), they are free to question Gaut on that point during cross examination. Ruebenson examined the same room in which Plaintiff stood during the unconstitutional lineup many years ago and observed lighting conditions that are consistent with Plaintiff's testimony, as well as other evidence in the case.[3] That Gaut does not offer proof that the lighting conditions were exactly the same in 1994 and 2018 goes to the weight of his testimony, not its admissibility. *See Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 768 (7th Cir. 2013) ("The fact that an expert's testimony contains some vulnerable assumptions does not make the testimony irrelevant or inadmissible."); *see also United States v. Leonard-Allen*, 739 F.3d 948, 956 (7th Cir. 2013) ("[E]vidence need not be conclusive proof in order to be admissible.").

Defendants also seek to exclude Gaut's opinion that Ruebenson's report "provides corroboration for Mr. Bolden's version of the events." Mot. at 4. According to Defendants, this opinion amounts to an improper credibility determination because Gaut is "opining that the jury should believe Plaintiff's version of the lineup" over the version of a defense witness. *Id.* But

[3] For example, Clifford confirmed during his testimony that he owned the items of clothing that Plaintiff said Clifford was wearing when he observed him through the one-way mirror. *See* Ex. E, Excerpt of Motion to Suppress Hearing Testimony of Eddie Bolden, at 10:10-15; Ex. F, Excerpt of Trial Testimony of Clifford Frazier, at 166:5-167:11.

expert testimony that certain facts corroborate one version of competing stories is entirely appropriate. *See, e.g.*, *Rodriguez Galicia v. Gonzales*, 422 F.3d 529, 539 (7th Cir. 2005) (court should have permitted plaintiff's experts to testify "to demonstrate that portions of her account were consistent with the practices of the Guatemalan government, and thus to corroborate her testimony"). Gaut's opinion will not interfere with the jurors' assessment of Plaintiff's credibility. It merely provides another data point for the jury to consider, namely, that based on Gaut's specialized knowledge regarding one-way mirrors and how lighting conditions affect them, the facts observed by Ruebenson establishes that Plaintiff could have seen through the one-way mirror.

## III. Gaut's Opinions Regarding Defendants' Suppression, Concealment, and Destruction of Evidence Are Relevant and Admissible.

Defendants seek to preclude Gaut from testifying that "Defendants violated their obligations under *Brady*" (Mot. at 4), but Gaut will not testify to the legal conclusion that Defendants' conduct violated *Brady*. His report contains a single reference to *Brady*, and it is only in the context of discussing "generally accepted police practices in 1994." *See* Mot. Ex. A, at 17. Thus, at first glance, it would appear the parties have no dispute. But Defendants go further, asserting that Gaut should not be permitted to offer "opinions on the specific pieces of evidence which were allegedly destroyed, suppressed, or withheld." Mot. at 5. Similar to their arguments in several other motions, Defendants contend that because Judge Shah granted summary judgment on Plaintiff's due process claim, any evidence regarding Defendants' suppression or destruction of evidence is irrelevant. *Id.* As discussed in more detail in Plaintiff's Response to Defendants' Motion *in Limine* No. 4, Defendants' attempt to use Judge Shah's opinion to prevent Plaintiff from offering probative evidence in support of his other claims is misplaced.[4] Plaintiff asserts claims

[4] In addition to Defendants' Motion *in Limine* No. 4, Plaintiff expressly incorporates by reference his responses in opposition to Defendants' motions in *limine* Nos. 7 and 9.

that hinge on intent. Judge Shah's opinion does not address whether and how Defendants' deviation from police norms is reflective of their intent because that was not the subject of Defendants' summary judgment motion. Thus, Judge Shah's opinion has no application to the instant motion. Gaut's opinions that Defendants' conduct deviated from widely accepted police practices will aid the jury in determining Defendants' intent.

Gaut's report sets forth his opinion that Defendants' suppression and/or destruction of evidence "violated generally accepted law enforcement standards." *See* Mot. Ex. A, at 17. That Defendants' suppression and/or destruction of evidence did not establish a due process claim has no bearing on the relevance of that evidence to Plaintiff's other claims. The Seventh Circuit has repeatedly held that opinions like Gaut's are probative of Defendants' intent, which is an element of Plaintiff's *other* claims. Gaut's testimony will, therefore, assist the jury in determining an issue in dispute. *See, e.g.*, *Jimenez v. City of Chicago*, 732 F.3d 710, 721–22 (7th Cir. 2013) ("Expert testimony regarding relevant professional standards can give a jury a baseline to help evaluate whether a defendant's deviations from those standards were merely negligent or were so severe or persistent as to support an inference of intentional or reckless conduct that violated a plaintiff's constitutional rights."); *see also Hobgood v. Ill. Gaming Bd.*, 731 F.3d 635, 645 (7th Cir. 2013) ("Significant, unexplained or systematic deviations from established policies or practices can no doubt be relative [*sic*] and probative circumstantial evidence of [unlawful] intent.").

Gaut's testimony about Defendants' departures from generally accepted standards is also relevant to the jury's assessment of probable cause (an element of plaintiff's malicious prosecution and Fourth Amendment claims) because that assessment requires the jury to determine whether Defendants acted as reasonable officers in like circumstances. As the Seventh Circuit explained:

> [I]f it's standard practice across the country to train officers to handle a given situation in a particular way, expert testimony about that training might aid a jury

> tasked with evaluating the conduct of an officer in that specific situation. The legal standard contemplates a reasonable *officer*, not a reasonable person, so it may be useful in a particular case to know how officers typically act in like cases.

*Brown*, 871 F.3d at 537; *see also Jimenez*, 732 F.3d at 721 (finding expert's testimony regarding "reasonable police practices" admissible and stating that it "had direct implications for applying legal standards such as probable cause").

Judge St. Eve rejected a nearly identical *Daubert* challenge to Gaut's testimony in *Sanders v. City of Chicago Heights*, 2016 WL 1730608, at *9-10 (N.D. Ill. May 2, 2016). The defendants sought to exclude certain opinions as "impermissible and irrelevant due to Dr. Gaut's misunderstanding of *Brady*." *Id.* at *10. Specifically, they sought to exclude opinions concerning "(1) the failure to keep investigative notes; (2) the failure to retrieve the pager of the murder victim; (3) the failure to follow certain procedures with respect to [a] confidential informant … and (4) the failure to 'collect physical evidence.'" *Id.* The court recognized that Sanders was not alleging that any of this conduct constituted a *Brady* violation, and neither was Gaut. *Id.* "Rather, Sanders assert[ed] that each alleged failure [was] relevant to how the Chicago Heights Police Department investigated the [murder for which he was convicted] and whether this investigation was conducted pursuant to standard police procedures." *Id.* Accordingly, the court held: "Dr. Gaut's opinions … go to the issue of whether Defendant Officers' investigative conduct departed from reasonable police practices, which is relevant to Sanders' theory of the case." *Id.* The same is true here. Plaintiff does not argue, and Gaut does not opine, that Defendants' conduct "constitutes a *Brady* violation." *Id.* "Instead, Dr. Gaut opines that these investigative shortcomings deviated from proper police practices." *Id.* Accordingly, Gaut's testimony in this case is admissible to show Defendants' bad faith intent and that they failed to act in an objectively reasonable manner. Each of the pieces of evidence in Defendants' motion is addressed in detail in Plaintiff's Response to Defendants' Motion *in Limine* No. 4, but Plaintiff briefly addresses them below as well.

*A. Information Related to Cynthia Steward*

Defendants assert that Gaut should not be permitted to opine on the suppression of information Defendants received from Cynthia Steward regarding a "hit" that Anthony Williams had placed on the victims because Judge Shah believed this information was not exculpatory and, therefore, could not form the basis of a due process claim. Mot. at 6 (citing Dkt. 276, at 42). They also rely on Judge Shah's statement that the failure to investigate these leads did not affect the outcome of Plaintiff's trial because the State argued that the murders were ordered by Anthony Williams. Mot. at 6 (citing Dkt. 276, at 44).

This argument illustrates the disconnect between Defendants' reliance on Judge Shah's opinion that addressed only the due process claim and the relevance of Gaut's opinions to Plaintiff's remaining claims. Gaut opines that there was no legitimate law enforcement explanation for the failure to document and follow up on these leads and that officers following reasonable police practices would have followed up on these leads. Mot. Ex. A, at 18. Whether this failure ultimately affected the outcome of Plaintiff's trial—an element of a due process claim—is immaterial to Plaintiff's non-due process claims and is not the subject of Gaut's opinion. The opinion that Defendants' failure to investigate was a "severe" departure from acceptable police practices assists the jury's assessment of Defendants' intent because it "support[s] an inference of intentional or reckless conduct." *Jimenez*, 732 F.3d at 721. It also assists the jury's probable cause analysis because the jury must consider "what Defendant[s] knew and the reasonably trustworthy information Defendant[s] received" (*see* Fed. Civ. Jury Instr. of the 7th Cir. § 7.08), whether they "closed their eyes to facts that would have helped clarify the circumstances" of the crime, and whether Plaintiff's arrest and illegal detention "could have been avoided if the arresting officer[s] had conducted a proper investigation." *See BeVier v. Hucal*, 806 F.2d 123, 127-28 (7th Cir. 1986).

Similarly, Defendants assert that Gaut should not be allowed to opine on the evidence seized from Steward's home because Judge Shah found insufficient evidence that the seized items had the requisite exculpatory value needed to support a due process claim. Mot. at 6-7. Once again, Gaut's opinion does not hinge on the exculpatory value of the evidence. He opines that "the failure to inventory and disclose this evidence deviate[s] from generally accepted law enforcement standards."[5] Mot. Ex. A, at 18. That information is relevant to Defendants' intent and is beyond the jurors' general knowledge, and therefore, it is the proper subject of expert opinion.

*B. Evidence Related to Clifford Frazier*

Defendants assert that Gaut should not be permitted to offer any opinions regarding the suppression of a report documenting an interview with Clifford (the "Willis Report") because Judge Shah "found the report was not material, would have been cumulative of Detective Baker's testimony at the criminal trial, and provided very weak impeachment evidence of Clifford." Mot. at 7-8. Defendants fail to mention that Judge Shah also held that a reasonable jury could conclude that Defendants Oliver and Siwek suppressed the Willis Report and that the Willis Report was favorable to Plaintiff. *See* Dkt. 276, at 37-38. Gaut will testify that the suppression of this favorable evidence "was a blatant violation of proper police practices." Mot. Ex. A, at 19-20. It is almost inconceivable that Defendants argue the intentional suppression of favorable evidence is irrelevant to their intent. Whether the evidence ultimately proved material or cumulative at Plaintiff's trial—again, an element of the due process claim—has no impact on whether the suppression violated acceptable police practices and therefore is probative of Defendants' intent.[6]

---

[5] Judge Shah also found there was insufficient evidence that Defendants "were personally involved in the destruction" of these items (*see* Dkt. 276, at 28), but Gaut's opinion does not relate to the destruction of the seized evidence. Judge Shah found sufficient evidence that Oliver and Karl conducted the search and seized the evidence at issue. *Id.* at 27.

[6] To the extent Defendants take issue with Gaut's use of the phrase "material" in his report (and it is not

Defendants' arguments with respect to Clifford's .40 caliber gun and the corresponding inventory report fail for similar reasons. Defendants contend that suppression of the inventory report was irrelevant because Judge Shah found that the suppression could not form the basis of a due process claim given the immateriality of the exculpatory information in the report. *See* Mot. at 10; Dkt. 276, at 33 n.9. But that finding has no bearing on Gaut's opinion that the "failure to produce this inventory report clearly contradicted … generally accepted law enforcement standards." Mot. Ex. A, at 20. The intentional suppression of a report that contains exculpatory information is probative of Defendants' intent, irrespective of whether the impeachment evidence contained in the report ultimately proved to be cumulative at trial.

Defendants also misconstrue Gaut's opinions regarding the "blood on weapon" notation on the inventory report. Judge Shah found that this notation did not support a due process claim because there was insufficient evidence that testing the blood would yield exculpatory information. Dkt. 276, at 24. But Gaut opines that generally accepted law enforcement standards required the detectives to test the gun *precisely to determine whether it would* yield exculpatory or inculpatory information. *See* Mot. Ex. A, at 25 (explaining that testing would have "provided or eliminated suspects"). Perhaps recognizing this, Defendants assert a fallback position that they could not have ordered this testing because "the gun was destroyed." Mot. at 8. This is patently false. As Defendants well know, the gun was not destroyed until May 27, 1994—three months after Defendants arrested Plaintiff without probable cause. *See* Ex. G, State's Attorney Notes.

Defendants next contend that Gaut's opinion regarding the safety deposit box key that Oliver took from Derrick Frazier's body at the scene of the crime is irrelevant. Mot. at 8. Clifford

---

clear that they do), any concern is misplaced. Gaut uses "material" in the everyday sense of the word—*i.e.* to describe evidence that was important to the police investigation. He does not purport to use "material" as a term of art describing the elements of a *Brady* claim.

declined to help Oliver access the safety deposit box, so Judge Shah found that the evidence did not impeach Clifford and, therefore, could not support a due process claim. Dkt. 276, at 35 n.11. But Gaut's opinion has nothing to do with the impeachment value of the evidence. He opines that the failure to inventory the key (or to document or disclose Oliver's interactions with Clifford regarding the key) "violated generally accepted law enforcement standards." Mot. Ex. A, at 20. Again, this is relevant to the jury's determination of Oliver's intent. Gaut also opines that "Oliver's behavior [with respect to the key] is indicative of police corruption and raises serious questions about Oliver's motivations with respect to this investigation." *Id.* This opinion is highly probative of whether Oliver acted with malice, meaning he "had 'any motive other than that of bringing a guilty party to justice.'" *Williams v. City of Chicago*, 733 F.3d 749, 759-60 (7th Cir. 2013).

Finally, Defendants contend that the concealment of 30 guns recovered from Clifford's apartment is irrelevant due to Judge Shah's holding that the evidence was not suppressed because Clifford testified about the guns at trial. Mot. at 8 (citing Dkt. 276, at 35-36). That the evidence ultimately came out during Plaintiff's criminal trial (and thus cannot support a due process claim) does not mean it was proper for Defendants to conceal the evidence in the first place. Indeed, Gaut opines that in accordance with reasonable police practices, "[t]he recovery of 30 guns should have been properly documented in a police report." Mot. Ex. A, at 21. Defendants' failure in this regard is highly probative of their intent, irrespective of whether the concealed information affected the outcome of Plaintiff's criminal trial.

*C. 911 Recording and Dispatch Cards*

Judge Shah found that the evidence suggests Pesavento and Karl knew that the 911 recording and dispatch card had potential exculpatory value. Dkt. 276, at 22. Nonetheless, he ruled that the destruction of these records did not support a due process violation because he

concluded that there was insufficient evidence in the record that Karl and Pesavento knew about the CPD's 30-day retention policy for the recording. *Id.* at 21.

The ruling that the failure to *preserve* the recording was not a due process violation has no bearing on Gaut's opinion that failure to even *attempt to review* the 911 recording or dispatch card was a severe departure from generally accepted law enforcement standards. As Gaut states:

> Standard practice in any homicide investigation is to review a 911 recording and dispatch records if they exist – in fact, it is one of the first things a detective should do. These records are important because they identify a potential witness to the crime. There is no reasonable explanation for the defendants ignoring these records in this case.

Mot. Ex. A, at 22. The fact that Pesavento and Karl made no attempt to review the 911 recording or the dispatch card, especially after Plaintiff and his attorney told them about the exculpatory nature of the evidence, is unreasonable police conduct that supports the intent elements of Plaintiff's remaining claims. Indeed, Pesavento testified that he never listened to 911 calls in any of his investigations. Ex. H, Excerpt of Deposition of Angelo Pesavento, at 179:18-22. Without Gaut's opinion, the jury has no basis to evaluate this dubious testimony.

Gaut's opinion is also probative of the probable cause analysis because a jury must consider "what Defendant knew and the reasonably trustworthy information Defendant received" (Fed. Civ. Jury Instr. of the 7th Cir. § 7.08), which in this case includes information that the 911 recording was potentially exculpatory. Therefore, the jury could find that by refusing to review the 911 recording, Pesavento and Karl "closed their eyes to facts that would have helped clarify the circumstances" of the crime. *See BeVier*, 806 F.2d at 127-28.

Defendants' failure to *preserve* the 911 recording, in violation of generally accepted law enforcement standards, also is relevant to the probable cause analysis. Because probable cause is measured upon a reasonableness standard, Defendants cannot hide behind the language of Judge Shah's opinion, which found sufficient evidence that Karl and Pesavento "sat idly by" while

potentially exculpatory evidence was destroyed. *See* Dkt. 276, at 23. As the Seventh Circuit stated, because the Fourth Amendment's objective-reasonableness standard "contemplates a reasonable *officer*, not a reasonable person," Gaut's testimony is essential and assists the jury by explaining "how officers typically act in like cases." *Brown*, 871 F.3d at 537.

*D. Interview Notes*

Defendants assert that Gaut should not be permitted to opine on their destruction of interview notes because, in analyzing the due process claim, Judge Shah found insufficient evidence that Defendants were personally responsible for the destruction. Mot. at 9. Again, Judge Shah's opinion was limited to the record cites that Plaintiff offered in opposition to summary judgment on his due process claim. Defendants did not move for summary judgment on Plaintiff's other causes of action. They cannot now expand Judge Shah's findings to preclude Plaintiff from offering evidence to support those claims. Plaintiff is entitled to fully explore what happened to the notes during the questioning of Pesavento at trial, including areas of inquiry not available to Plaintiff at the time of Pesavento's deposition, and the jury can assess his credibility on this issue and consider that testimony in conjunction with the investigative file and index, Gaut's opinions related to the notes, and the testimony of the City's investigative file 30(b)(6) witnesses, as further detailed in pages 16–17 of Plaintiff's Response in Opposition to Defendant Officers' Motion *in Limine* No. 4. If Defendants do not believe Plaintiff has offered sufficient evidence to support his claims at the end of his case-in-chief, their remedy is a motion for a directed verdict. They must follow the rules of civil procedure.

**CONCLUSION**

For the foregoing reasons, Plaintiff Eddie L. Bolden respectfully asks this Court to enter an Order denying Defendant Officers' Motion *in Limine* No. 10.

Dated: November 8, 2019

Respectfully Submitted,

*/s/ Valarie Hays*

Ronald S. Safer
Valarie Hays
Eli J. Litoff
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison Street, Suite 2900
Chicago, Illinois 60602
(312) 471-8700
rsafer@rshc-law.com
vhays@rshc-law.com
elitoff@rshc-law.com

Sandra L. Musumeci (*pro hac vice*)
RILEY SAFER HOLMES & CANCILA LLP
1330 Avenue of the Americas, 6th Floor
New York, New York 10019
(212) 660-1000
smusumeci@rshc-law.com

*Attorneys for Eddie L. Bolden*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 8, 2019, I caused the foregoing document to be electronically filed using the CM/ECF system, which will send notice of this filing to all counsel of record.

*/s/ Valarie Hays*
Valarie Hays