IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EDDIE L. BOLDEN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17 C 00417 |
| | ) | |
| vs. | ) | Honorable Steven Seeger |
| | ) | |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION *IN LIMINE* NO. 6 TO BAR REFERENCE TO CERTAIN STATEMENTS MADE BY ANTHONY WILLIAMS TO EDDIE BOLDEN**

Defendants Angelo Pesavento, James Oliver, Edward Siwek, the Estate of George Karl, and the Estate of Michael Kill (collectively, "Defendant Officers"), by and through their attorneys, hereby respond to Plaintiff's Motion *in limine* No. 6 to bar reference to certain statements made by Anthony Williams to Eddie Bolden, as follows:

**BACKGROUND**

One day before Derrick Frazier and Ledell Clayton were murdered and Clifford Frazier was shot twice, Plaintiff was in High Rollers (Anthony Williams' beeper store) with Anthony Williams ("Ant"). At this time, Ant offered Plaintiff $20,000.00 to lure two individuals, Randolph Ellis and Abdullah Hollis, outside of a party so that they would be murdered. Randolph Ellis had been a witness to the murder of James Atkins in which Ant and his brother, Louis Williams, were charged and Louis was ultimately convicted. Both Randolph Ellis, who became a governor of the Gangster Disciples in 1993, and Abdullah Hollis were Plaintiff's friends. Plaintiff ultimately told Ant that he would not lure his friends outside of a party so that they could be murdered. Ant did not say anything in return, but simply stared at Plaintiff. (Pl.'s

1

Dep. at p. 57, attached hereto as Exhibit A) Similarly, Plaintiff did not walk away from the conversation or say anything else to Ant. (Ex. A at p. 57-58)

## ARGUMENT

Plaintiff's interactions with Ant on the day before the double murders are not hearsay and are probative of Plaintiff's relationship with Ant, his motive to commit the Clayton/Frazier murders, and Defendant Officers' determination of probable cause.

### I. Plaintiff's Conversations with Ant Regarding the Hollis and Ellis Plot is Not Inadmissible Hearsay.

Neither Ant's offer, nor Plaintiff's statement rejecting the offer, is inadmissible hearsay. Ant's statement that he would give Plaintiff $20,000 to lure his friends out of a party to be murdered is not hearsay, because it is not offered for its truth. And Plaintiff's response is a non-hearsay statement of a party opponent.

Ant's statement is relevant for the fact that it was said, regardless of whether Ant actually intended to give Plaintiff $20,000. First, the statement is relevant for the non-hearsay purpose of demonstrating the nature of Plaintiff's relationship with Ant, specifically that Ant was comfortable approaching Plaintiff with a plot to murder two of Plaintiff's close friends. *See United States v. Anello*, 765 F.2d 253, 261 (1st Cir. 1985) (statements offered to show relationship between parties were not offered for their truth and therefore not hearsay) (collecting cases); *see also United States v. Herrera-Medina*, 853 F.2d 564, 566 (7th Cir. 1988) (conversations recounting "war stories" in the drug trade were not hearsay because they were not offered to show the stories were true, but to show declarant's familiarity with the drug trade and trusted relationship with the drug kingpin); *United States v. Paradies*, 98 F.3d 1266, 1291 (11th Cir. 1996) (conversations offered to show "that the people involved had a familiar relationship and had regular . . . meetings" was not hearsay). Because the relevance lies in whether the

2

statement was made, "there is no need to evaluate [Ant's] credibility." *United States v. Hicks*, 848 F.2d 1, 3 (1st Cir. 1988).

Ant's statement is also admissible to show the effect that it had on Plaintiff. *See Woods v. City of Chicago*, 234 F.3d 979, 986 (7th Cir. 2000) (finding statement admissible to show the effect that it had on listener). The Hollis and Ellis murder provided Plaintiff with important information that motivated his subsequent actions: Ant had no problem orchestrating the murders of fellow gang members who crossed him, including a then-governor of the Gangster Disciples. The message in Ant's offer was clear: in Ant's world, fellow gang members, even high-ranking members, and friends, even close ones, were imminently disposable.

The probable effect of Ant's statement on Plaintiff was to make him aware that Ant expected his loyalty, and that disappointing Ant would have dire consequences. *Jewett v. Anders*, 521 F.3d 818, 825 n.5 (7th Cir. 2008) (statement offered for effect on the listener and to explain his actions thereafter is not hearsay). Ant's statement gave Plaintiff every reason to believe that Ant would not hesitate to put a hit on him, despite the fact that he was a fellow gang member and close friend. *United States v. Norwood*, 798 F.2d 1094, 1097 (7th Cir. 1986) ("When it is proved that D made a statement to X, with the purpose of showing the probable state of mind thereby induced in X, . . . the evidence is not subject to attack as hearsay.") Fear of the consequences of disloyalty to Ant provided Plaintiff with a strong motive to agree to Ant's next request, that he murder Derrick Frazier and Ledell Clayton.

Moreover, Plaintiff's knowledge of the Hollis and Ellis murder plot is relevant to explain why Plaintiff was at the J&J Fish the night Derrick and Ledell were murdered. On January 29, 1994, Plaintiff was at Stateway Gardens when Maurice Stewart told him that Ant was upset and talking about killing and sticking up people. (Ex. A at p. 130-31) Plaintiff believed this had to do

3

with the Hollis and Ellis murder plot. (*Id*. at p. 132) As such, Plaintiff claims he went to the J&J Fish in an attempt to talk to Ant and to stop "the madness." (*Id*. at p. 131)

Additionally, Ant's offer to Plaintiff of $20,000.00 to lure his friends to their deaths is admissible under the statement against interest exception to the hearsay ban. *See* Fed. R. Evid. 804(b)(3). The statement against interest exception applies when the declarant is unavailable to testify and the statement is so contrary to the declarant's proprietary or pecuniary interest that a reasonable person would have made the statement only if he believed it to be true. *Id*. It is undisputed that Ant is deceased and therefore unavailable to testify. It also cannot be argued that Ant's statement about plotting to kill two individuals was not against his interest.

As to Plaintiff's side of the conversation, his statement declining Ant's offer to lure his friends to their deaths is a non-hearsay admission by a party opponent. *See* Fed. R. Evid. 801(d)(2)(A). His refusal of this request, like the request itself, is probative to Plaintiff's state of mind. Declining another offer of violence from Ant would put Plaintiff's well-being at risk.

Accordingly, the hearsay rule does not bar Plaintiff's conversation with Ant regarding the Hollis and Ellis murder plot.

**II.     Evidence of the Hollis and Ellis Murder Plot is Relevant to Show Plaintiff's Motive.**

Plaintiff's motive for committing the murders is relevant to Defendant Officers' defense in this matter, namely that Plaintiff participated in the murders of Frazier and Clayton murders and the attempted murder of Clifford. As part of the evidence demonstrating Plaintiff's guilt, the Defendant Officers should be allowed to present motive evidence regarding why Plaintiff would agree to participate in the crime. The motive evidence against Plaintiff relates to his close relationship and loyalty to Ant. A relationship that included Ant's willingness to seek Plaintiff's assistance in murdering two of Plaintiff's friends. As discussed above, Ant's readiness to engage

4

in violent crimes provided Plaintiff with a motive to participate in the Frazier and Clayton murders because, having previously rebuffed Ant's request in the Hollis and Ellis plot, he would risk his own life if he rebuffed Ant again. This is especially true considering Plaintiff's position that he did not tell the police, felony review state's attorney, or the jury deciding his guilt or innocence, that he observed and knew who the real offender was because he was afraid of getting killed. (Ex. A at p. 171)

Plaintiff's claim that evidence of this conversation, and the Hollis-Ellis murder plot in general, will "invite inferences of guilt by mere association" with Ant misses the point. (Dkt. #299 at p. 3) This is direct evidence of Plaintiff's motive for committing this crime, not inferential evidence from Ant's role in plotting the murders. This evidence is highly probative, and no unfair prejudice will result. The evidence is necessary for the jury to understand the close relationship between Ant and Plaintiff and the motive for Plaintiff to have committed these murders.

Wherefore, this Court should deny Plaintiff's motion *in limine* No. 6.

Dated: November 8, 2019  /s/ Brian J. Stefanich
One of the attorneys for the Defendant Officers

Andrew M. Hale (ahale@ahalelaw.com)
Barrett Boudreaux (bboudreaux@ahalelaw.com)
William E. Bazarek (wbazarek@ahalelaw.com)
Brian J. Stefanich (bstefanich@ahalelaw.com)
Hale & Monico, LLC
53 W. Jackson Blvd., Suite 330
Chicago, IL 60604
T: (312) 870-6908

## **CERTIFICATE OF SERVICE**

I, Brian J. Stefanich, an attorney, hereby certify that I caused a copy of the foregoing Defendant Officer's Response to Plaintiff's Motion *in Limine* Number 6, to be filed with the Court's CM/ECF system on November 8, 2019, which provided notice and a copy to all counsel of record.

/s/ Brian J. Stefanich