**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| EDDIE L. BOLDEN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17 C 00417 |
| | ) | |
| vs. | ) | Honorable Steven Seeger |
| | ) | |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION *IN LIMINE* NO. 12 TO BAR
REFERENCE TO DISCIPLINARY DECISION AGAINST CHARLES INGLES**

Defendants Angelo Pesavento, James Oliver, Edward Siwek, the Estate of George Karl,

and the Estate of Michael Kill (collectively, "Defendant Officers"), by and through their

attorneys, hereby respond to Plaintiff's Motion *in limine* No. 11 to bar reference to disciplinary

decision against Charles Ingles, as follows:

**BACKGROUND**

Plaintiff seeks to bar reference to a disciplinary decision against his former attorney and

current witness Charles Ingles that was entered a mere eight months after Ingles and Plaintiff

went to Area 2 regarding the Frazier and Clayton double homicide. Mr. Ingles provided a

description of what occurred when he brought Plaintiff to Area 2 and the circumstances of the

lineup at Plaintiff's motion to suppress hearing and at his criminal trial. The Defendant Officers

who conducted the lineup and the felony review assistant state's attorney who interviewed

Plaintiff and approved murder charges provided contrary testimony at Plaintiff's criminal

proceeding. As the circumstances of the lineup are at issue in this lawsuit, Mr. Ingles' character

for truthfulness is likewise at issue.

In 1990, Ingles and a client, Walker, entered into an agreement where Ingles agreed to

represent Walker in criminal matters in exchange for two thirds of the bond amount that Walker had posted. (Dkt #305-1, ¶ 1) The remaining one third of the bond amount, approximately $4,000.00, was supposed to be returned to Walker. (*Id*.) On May 31, 1990, Mr. Ingles deposited the entire bond amount into his checking account. (*Id*. at ¶ 9) On June 3, 1990, Walker requested his portion of the bond amount. (*Id*. at ¶ 10) Walker or his family contacted Mr. Ingles on four other occasions seeking Walker's portion of the bond. (*Id*. at ¶ 10-11) Prior to Mr. Ingles giving Walker his funds, the balance in Mr. Ingles' checking account fell to $3.30. (*Id*. at ¶ 12) On September 21, 1990, over three months after the initial request for the funds, Walker received his portion of the bond amount. (*Id*. at ¶ 13) The Illinois Supreme Court stated that the evidence against Mr. Ingles would establish "that Respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation…. (*Id*. at ¶ 15) It then noted that Mr. Ingles averred that he had no dishonest intent because the failure to provide Walker with his funds after numerous requests was negligent, not intentional. (*Id*. at ¶ 16)

## ARGUMENT

Mr. Ingles is a key non-party witness with relevant testimony concerning the circumstances of the lineup in which Plaintiff was positively identified as the offender by Clifford Frazier. Rule 608(b) allows for the impeachment of a witness by questioning about specific instances of conduct for the purpose of attacking the witness's character for truthfulness. *Battle v. O'Shaughnessy*, No. 11 C 1138, 2012 WL 4754747, at *3 (N.D. Ill. Oct. 4, 2012). The reason for allowing cross-examination under Rule 608(b) is to allow a party to attempt to cast doubt on a witness's reliability for telling the truth. *Varhol v. Nat'l R.R. Passenger Corp.*, 909 F.2d 1557, 1567 (7th Cir. 1990).

Plaintiff first contends that the Mr. Ingles' discipline by the Illinois Supreme Court

2

should be barred based on relevance because it has no bearing on Mr. Ingles' observations at Area 2. (Dkt. #305, at p. 3) However, Plaintiff cites to no authority for the proposition that the specific instances of the witness' conduct showing his character for untruthfulness has to be precisely related to the claims in the lawsuit. Rather, the specific instance is relevant if it demonstrates the witnesses' character for untruthfulness. *David v. Nettles*, 15 C 1645, 2016 WL 16660503, * 2 (N.D. Ill. April 27, 2016) (permitting plaintiff to inquire into defendant's suspension as the basis of the suspension appears to be acts of dishonesty).

Next, Plaintiff argues that Mr. Ingles' conduct of spending Walker's money, as opposed to returning it to Walker, did not involve dishonesty or untruthfulness. (Dkt. # 305, at p. 3) Plaintiff relies on Mr. Ingles' assertion that that his conduct was negligent, not intentional. (Dkt. #305-1, p. 4) However, Plaintiff's reliance on Mr. Ingles' averment that he did not act with a dishonest intent is simply the "description of Respondent's mitigation evidence." (*Id.*) It was not a finding that Mr. Ingles did not have a dishonest intent. (*Id.*) Rather, the Court the described Mr. Ingles' conduct such that would establish "that [Mr. Ingles] engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation…." (*Id.*)

The fact that the ARDC found Mr. Ingles' case more similar to *In re Cheronis*, 114 Ill.2d 527 (1986), than to *In re Levin*, 118 Ill.2d 77 (1987) and *In re Cutrone*, 112 Ill.2d 261 (1986) does not mean that Mr. Ingles' conduct did not involve dishonesty. Although Cheronis had no dishonest motive, he had also expressed remorse, opened a client trust fund account, and cooperated in the disciplinary proceedings, which were all things that Mr. Ingles did as well. More important, Mr. Ingles' conduct was very dissimilar to the situations in *Levin* and *Cutrone*. In *Levin*, the proceedings not only involved a failure to return a bond refund check, but also neglect of three criminal appeals, and failure to cooperate in the disciplinary proceeding. (*Id.* at

3

p. 5) Levin also had been previously reprimanded and suspended for neglecting the affairs of his clients. (*Id*) The scope and breadth of the misconduct in *Levin* was substantially different than Mr. Ingles' situation. Moreover, Levin, like Mr. Ingles, testified at his hearing that the failure to timely return the bond refund was unintentional because the refund check was deposited into his general office account without his knowledge. *In re Levin*, 118 Ill. 2d at 84-85. Thus, it cannot be said that the ARDC's analogy of Mr. Ingles' case to *Cheronis* and not *Levin* was because of the lack of intent in failing to timely return the bond amounts, as opposed to the other dissimilarities with *Levin*.

*Cutrone* involved a bond refund check of $50,000, significantly higher than the bond refund check that Mr. Ingles stole. (Dkt. # 305-1, at p. 5) Like Mr. Ingles, the respondent in *Cutrone* offered a non-dishonest reason for not returning the bond money, namely that he was owed the money for his fees. (*Id*.) Thus, this Court should reject Plaintiff's inference that the ARDC found Plaintiff did not have a dishonest motive simply because it found Mr. Ingles' matter more similar to *Cheronis* than *Cutrone*.

Plaintiff's attempt to interpret the ARDC's recommendation as a finding that Mr. Ingles did not have dishonest or fraudulent intent because of the use of the word "conversion" in the recommendation is misplaced. As the Illinois Supreme Court has said in an ARDC matter, "[c]onversion is a nice word for theft…." *In re Cutrone*, 112 Ill.2d at 266. If Mr. Ingles wishes to testify at trial that his decision to spend Walker's money (after Walker requested the bond refund on numerous occasions) was not dishonest, he is free to do so and the jury can properly weigh that evidence. But the fact that Mr. Ingles averred in an affidavit in the ARDC proceeding that his conduct was unintentional does not mean that the Illinois Supreme Court found that to be the case.

4

Finally, Plaintiff argues that Mr. Ingles' suspension from the practice of law in 1994 is too remote to be probative of his truthfulness when he testifies at Plaintiff's upcoming trial. Plaintiff correctly notes that there is no explicit time limitation regarding admissibility of specific instances of conduct probative of a witness's character for untruthfulness. (Dkt. No. 305 at p. 4) In this case, the circumstances of the lineup, for which Mr. Ingles is a witness, occurred in 1994. Mr. Ingles was suspended from the practice of law approximately 8 months later. As the facts giving rise to Mr. Ingles being a witness in this matter occurred mere months before his suspension, cross-examination on this topic should not be barred as unduly remote. Moreover, shortly after his suspension, Ingles testified at Plaintiff's criminal trial. Even if this court determines that the relevant time period is not when the events of Mr. Ingles involvement in this case occurred, but rather when he testifies in the civil trial, the remoteness of the suspension goes to the weight that evidence should be given.

Accordingly, this Court should deny Plaintiff's motion *in limine* number 12.

Dated: November 8, 2019

/s/ Brian J. Stefanich
One of the attorneys for the Defendant Officers

Andrew M. Hale (ahale@ahalelaw.com)
Barrett Boudreaux (bboudreaux@ahalelaw.com)
William E. Bazarek (wbazarek@ahalelaw.com)
Brian J. Stefanich (bstefanich@ahalelaw.com)
Hale & Monico, LLC
53 W. Jackson Blvd., Suite 330
Chicago, IL 60604
T: (312) 870-6908

5

## **<u>CERTIFICATE OF SERVICE</u>**

I, Brian J. Stefanich, an attorney, hereby certify that I caused a copy of the foregoing Defendant Officer's Response to Plaintiff's Motion *in Limine* Number 12, to be filed with the Court's CM/ECF system on November 8, 2019, which provided notice and a copy to all counsel of record.

<u>/s/ Brian J. Stefanich  </u>