IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EDDIE L. BOLDEN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17 C 00417 |
| | ) | |
| vs. | ) | Honorable Steven Seeger |
| | ) | |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS RESPONSE TO PLAINTIFF'S MOTION IN LIMINE NO. 8
TO BAR REFERENCE TO PLAINTIFF'S CRIMINAL TRIAL STRATEGY**

Defendants Angelo Pesavento, James Oliver, Edward Siwek, the Estate of George Karl, and the Estate of Michael Kill (collectively "Defendant Officers"), by their attorneys, in response to Plaintiff's Motion *in Limine* to bar reference to Plaintiff's criminal trial strategy, state as follows:

**INTRODUCTION**

Although phrased as a motion to bar reference to criminal trial strategy, the only strategy addressed therein is Plaintiff's decision not to testify at his criminal trial. Plaintiff's silence when confronted with eyewitness testimony incriminating him in the double murders is relevant and admissible in this civil trial. His choice not to share his story -- that he was inside the restaurant and saw Roderick Stewart engaged with Clifford Frazier outside – with a jury who could potentially sentence him to death, is a factor the jury may consider in determining Plaintiff's credibility, and to infer that his testimony at his criminal trial would have been incriminating. Having used the Fifth Amendment as a shield at the criminal trial, Plaintiff may not now use it as a sword, and deny Defendant Officers a full and fair cross-examination.

**ARGUMENT**

Plaintiff's motion asks this Court to bar probative impeachment evidence as a violation of

the Fifth Amendment, a theory that has been expressly rejected by the Supreme Court. The single district court ruling upon which Plaintiff relies lacks both precedential value and legal accuracy. *See Patrick v. City of Chi.*, 314 F. Supp. 3d 970 (N.D. Ill. 2017). Binding precedent establishes that a party who invokes the Fifth Amendment and later takes the stand may be impeached on his prior silence, and an adverse inference may be drawn therefrom.

The Supreme Court has examined this issue extensively, establishing general principles which control the issue in this case. First, in *Caminetti v. United States*, the Court held that a jury may infer guilt from a criminal defendant's silence when he takes the stand in his own defense. 242 U.S. 470, 482 (1917). In *Caminetti*, a defendant testified in his criminal trial, but refused to respond to questions asking him to explain incriminating evidence. The trial court instructed the jury as follows:

> [W]here a defendant elects to go upon the witness-stand and testify, he then subjects himself to the same rule as that applying to any other witness, and if he has failed to deny or explain acts of an incriminating nature that the evidence of the prosecution tends to establish against him, such failure may not only be commented upon, but may be considered by the jury with all the other circumstances in reaching their conclusion as to his guilt or innocence; since it is a legitimate inference that, could he have truthfully denied or explained the incriminating evidence against him, he would have done so.

*Id*. at 493. The Supreme Court held that the adverse inference instruction was proper, noting that "[t]he accused of all persons had it within his power to meet, by his own account of the facts, the incriminating testimony." *Id.* at 494. His decision not to "deny or explain incriminating circumstances and events already in evidence in which he participated and concerning which he is fully informed. . . subjects him to the inferences naturally to be drawn from it, and an instruction to that effect does not violate his rights under the Fifth Amendment." *Id*.

In *Raffel v. United States*, 271 U.S. 494, 499 (1926), the Court applied the same rationale to hold that a defendant may be cross examined on his silence in a prior proceeding. The court

2

reasoned that there was no violation of the Fifth Amendment, because "[t]he safeguards against self-incrimination are for the benefit of those who do not wish to become witnesses in their own behalf and not for those who do." *Id*. Therefore, the immunity of the Fifth Amendment applies only in the "tribunal . . . in which the defendant preserves it by refusing to testify." *Id*. When the immunity is waived by taking the stand in a subsequent trial, "a witness who upon direct examination denies making statements relevant to the issue, may be cross-examined with respect to conduct on his part inconsistent with this denial" including his silence in the face of the same accusations. *Id.* at 498.

The principle in *Raffel* remains the prevailing law: the Fifth Amendment is not implicated when a witness takes the stand, gives testimony contradicting incriminating evidence, and is cross examined regarding his silence at a previous trial. *See, e.g., Jenkins v. Anderson*, 447 U.S. 231, 238 (1980) (citing *Raffel* for proposition that the Fifth Amendment is not violated by the use of pre-arrest silence to impeach a criminal defendant's credibility). In this case, Plaintiff is expected to take the stand in an attempt to refute Clifford Frazier's identification of Plaintiff as his attacker, offering evidence which he failed to present at his criminal trial. By testifying, Plaintiff will be "cast[ing] aside the cloak of immunity," and subjecting himself to full cross-examination. *Raffel*, 271 U.S. at 497. Impeachment with his prior silence is appropriate under these circumstances, and Plaintiff's argument that his Fifth Amendment rights would be violated is meritless. *Id*. at 499.

Plaintiff's motion contains no analysis of this or any other Supreme Court precedent, relying instead on a non-precedential opinion, *Patrick v. City of Chicago,* 314 F. Supp. 3d. 970, which misinterpreted the law. Contrary to that district court opinion, the Supreme Court is not "sending mixed signals about the circumstances in which a criminal defendant's prior silence can be used against him." *Id*. at 974. The Supreme Court has not wavered in its position that the Fifth

Amendment is not implicated when a witness is impeached with his prior silence at trial, *Raffel*, 271 U.S. at 499,, or when a jury is instructed that they may draw an adverse inference from silence in the face of incriminating testimony. *Caminetti*, 242 U.S. at 482. While the Supreme Court has opined that impeachment with prior silence is improper in certain circumstances, it did not do so based on the Fifth Amendment, but on the "exercise[] [of] its supervisory powers over federal courts" to decide the evidentiary issue of whether the prior silence impeached testimony at trial. *Jenkins*, 447 U.S. at 239.

Subsequent Supreme Court opinions do not contradict *Raffel* – they distinguish it. These cases stand for the general proposition "that prior silence cannot be used for impeachment where silence is not probative of a defendant's credibility and where prejudice to the defendant might result." *Jenkins*, 447 U.S. at 239. In *Grunewald v. United States,* 353 U.S. 391, 422 (1957), and *United States v. Hale*, 422 U.S. 171, 179 (1975), the court held that silence before the grand jury and silence at the time of arrest, respectfully, did not support the adverse inference which arises from silence at a criminal trial. And in *Stewart v. United States*, 366 U.S. 1, 6 (1961), the court simply required that a witness provide impeachable testimony to support questioning on this issue. None of these circumstances are present here, where Plaintiff is expected to testify in response to the same inculpatory evidence which he failed to address in his criminal trial.

In *Grunewald*, the Court held that cross-examining a criminal defendant regarding his silence before the grand jury was improper, because the circumstances of his silence did not support an adverse inference. 353 U.S. 391, 422 (1957). The "crucial" factor in this finding was "the nature of the tribunal." *Id*. The Court reasoned that inferences which can be drawn from silence at a criminal trial do not apply to grand jury proceedings, where the defendant "was a compelled, and not a voluntary, witness; where he was not represented by counsel; where he could

4

summon no witnesses; and where he had no opportunity to cross-examine witnesses testifying against him." *Id.* at 422-23. The Court contrasted these "secret" proceedings with "open court proceedings, where cross-examination and judicially supervised procedure provide safeguards for the establishing of the whole, as against the possibility of merely partial, truth." *Id*. at 423. Further, because the grand jury witness was already considered a defendant, he had little, if any, motive to testify on his own behalf. *Id*. Thus, silence before the grand jury is distinguishable from silence at trial, where the risk of conviction is a strong incentive for a defendant to refute incriminating evidence if he is innocent and the decision not to respond to inculpatory evidence at trial gives rise to the natural inference of guilt. *Caminetti*, 242 U.S. at 493 ("it is a legitimate inference that, could [defendant] have truthfully denied or explained the incriminating evidence against him, he would have done so").

*Hale* also distinguished *Raffel* based on the circumstances of the silence. 422 U.S. at 179. In *Hale*, the Supreme Court held that silence during a custodial interrogation did not necessarily lead to an inference of guilt, for reasons similar to those identified in *Grunewald*: the proceeding was secret rather than public, the witness did not have counsel, and as a potential defendant he had little to gain from responding to questioning. *Id*. These factors, as well as the likelihood that the witness was relying on recent *Miranda* warnings, lead the court to conclude that silence under these circumstances was not necessarily inconsistent with innocence. *Id*. at 177.

In the present case, it is Plaintiff's silence at his criminal trial, not before the grand jury or during custodial interrogation, which gives rise to an adverse inference. As a result, *Grunewald* and *Hale* are inapplicable. Plaintiff's failure to respond to accusations at his criminal trial is proper impeachment, as he had every reason to dispute Clifford Frazier's accusations. *See Hale*, 422 U.S. 171, 176, (1975) ("Silence gains more probative weight where it persists in the face of accusation,

5

since it is assumed in such circumstances that the accused would be more likely than not to dispute an untrue accusation."); *Brecht v. Abrahamson*, 507 U.S. 619, 628 (1993) ("It was entirely proper – and probative – for the State to impeach his testimony by pointing out that petitioner had failed to tell anyone before the time he received his Miranda warnings at his arraignment about the shooting being an accident. Indeed, if the shooting was an accident, petitioner had every reason – including to clear his name and preserve evidence supporting his version of the events – to offer his account immediately following the shooting.")

The *Raffel* decision is also undisturbed by the Supreme Court decision in *Stewart*, 366 U.S. at 6. In *Stewart*, defendant took the stand in his third trial, having failed to do so on two prior occasions. *Id*. at 2-3. The prosecution asked whether this was his first time taking the stand, despite the fact that defendant testified only in gibberish, offering "no specific testimony to impeach." *Id*. at 6. The prosecution conceded that this was improper impeachment, and the case was decided on a harmless error analysis. *Id*. at 5, 7. Because the issue was a lack of impeachable testimony, *Stewart* would only be applicable here in the highly unlikely event that Plaintiff gives no exculpatory testimony. Should he choose to contradict incriminating testimony which he failed to refute at his criminal trial, impeachment with his prior silence is proper.

If there was any question as to whether *Raffel* remained the prevailing law, it was resolved by the Supreme Court in *Jenkins*. 447 U.S. at 235. In *Jenkins*, defendant was cross-examined on the fact that he waited two weeks after stabbing and killing a man to come forward with his story of self-defense. *Id*. The Court ruled that this was proper impeachment, and reaffirmed its decision in *Raffel*, that the Fifth Amendment is not violated when a witness is impeached with his prior silence. *Id*. at 235, 239. Rather, upon taking the stand even a criminal defendant is "subject to cross-examination impeaching his credibility just like any other witness." *Id*. at 235-36 (quoting

6

*Grunewald*, 353 U.S. 391).

As demonstrated by *Raffel* and the decisions which followed, a criminal defendant may not take the stand, contradict incriminating testimony, then shield himself from cross-examination on his prior silence. As a party to a civil suit, Plaintiff is entitled to no greater protection. To the contrary, the Supreme Court has held that "adverse inferences [from silence] may be drawn against civil litigants where the same would not be permissible in a criminal context where the stakes are higher and the State's sole interest is to convict." *Baxter v. Palmigiano*, 425 U.S. 308, 319 (1976). Considering that it would be proper to impeach Plaintiff with his prior silence if he were retried criminally, there is absolutely no basis for limiting cross-examination on this issue in this civil action. *See Raffel,* 271 U.S. at 499 (criminal defendant could be impeached with silence at prior trial).

Plaintiff's argument that impeachment would penalize him for asserting his Fifth Amendment right is clearly not viable in light of Supreme Court precedent. "The *Raffel* Court explicitly rejected the contention that the possibility of impeachment by prior silence is an impermissible burden upon the exercise of Fifth Amendment rights." *Jenkins,* 447 U.S. at 236-37. Not only is Plaintiff's silence a permissible area of inquiry, it is highly probative. Plaintiff claims he witnessed another man assaulting Clifford Frazier, yet at his criminal trial, when his liberty was at stake, he did not take the stand and tell this story. "Failure to contest an assertion… is considered evidence of acquiescence… if it would have been natural under the circumstances to object to the assertion in question." *Hale*, 422 U.S. at 176; *accord Kirby v. Tallmadge*, 160 U.S. 379, 383 (1896)(Failure to present evidence "frequently affords occasion for presumptions against [a party], since it raises strong suspicion that such evidence, if adduced, would operate to his prejudice.") Not only is "silence in the face of accusation . . . a relevant fact not barred from evidence," it "is

7

often evidence of the most persuasive character." *Baxter v. Palmigiano*, 425 U.S. 308, 319 (quoting *United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 153-54 (1923)).

Plaintiff's silence at his criminal trial is not only proper impeachment, but the jury may also be instructed that an adverse inference can be drawn from Plaintiff's prior silence. *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F.3d 815, 835 (7th Cir. 2016). In *Empress Casino Joliet Corp. v. Balmoral Racing Club*, the Seventh Circuit approved an adverse inference instruction based on a prior invocation of the Fifth Amendment. *Id*. *Empress Casino* was a civil case which followed the criminal proceedings against Governor Rod Blagojevich. *Id*. at 820. Defendant Johnston, a race track owner, was sued for his alleged participation in the bribery scandal. *Id*. During the criminal proceedings, Johnston asserted his Fifth Amendment right to remain silent, testifying only after a grant of immunity. *Id*. at 821. The jury in the civil case was instructed: "In a civil case like this one, you may infer that Mr. Johnston had information that would have incriminated him. You are not required to draw this inference." *Id.* at 834. The Seventh Circuit held that this instruction was "legally accurate and permissible." *Id*. at 835. "Reversing course and testifying after invoking the Fifth Amendment privilege does not remove the relevance of a witness's prior silence as one piece of evidence a jury may consider." *Id*. Thus, Plaintiff may not only be cross-examined regarding his prior silence, but the jury may also infer that his testimony at his criminal trial would have been incriminating.

In this malicious prosecution case, fair trial can only be had if the jury knows the full truth about what transpired at the criminal trial. There is no justification, in the Fifth Amendment or elsewhere, for preventing full disclosure of the relevant facts, including Plaintiff's failure to testify in his own defense. "Once [Plaintiff] decides to testify, '[the] interests of the [Defendant Officers] and regard for the function of courts of justice to ascertain the truth become relevant, and prevail

8

in the balance of considerations determining the scope and limits of the privilege against self-incrimination." *Jenkins*, 447 U.S. at 238 (quoting *Brown* v. *United States*, 356 U.S. 148, 156 (1958)). Shielding Plaintiff from relevant impeachment and valid inferences would be patently unfair to Defendant officers and impede the truth-seeking process. *See Baxter*, 425 U.S. at 319 (excluding adverse inference from invocation of the Fifth Amendment in a civil proceeding would "derogate[ ] rather than improve[ ] the chances for [an] accurate decision[ ]"); *Jenkins* 447 U.S. at 238 (impeachment is among "the traditional truth-testing devices of the adversary process" and promotes a fair trial)(quoting *Harris v. New York*, 401 U.S. 222, 225 (1971)). Not only would Defendant Officers be denied a viable defense, but precluding impeachment carries the risk of encouraging Plaintiff to "affirmatively resort to perjurious testimony in reliance on the [Defendant Officer's] disability to challenge his credibility." *Harris v. New York*, 401 U.S. 222, 224, 226 (1971) ("the shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances.")

As a final note, Plaintiff's argument that informing the jury of all that occurred in the criminal trial will cause confusion and waste court time is undeveloped and meritless. *M.G. Skinner & Assocs. Ins. Agency, Inc. v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority.") The cases cited by Plaintiff do not support his position. *Jones v. Hamelman*, 869 F.2d 1023, 1027 (7th Cir. 1989) and *Sims v. Mulcahy*, 902 F.2d 524, 530 (7th Cir. 1990), concerned the admission of other acts evidence. And *Montgomery v. Chicago*, No. 86 C 3872, 1993 U.S. Dist. LEXIS 4141 at *12 (N.D. Ill. Mar. 31, 1993), discussed the implications of introducing a post-accident study to demonstrate the feasibility of additional safety measures. Neither case involved allegations of wrongful conviction. Plaintiff's criminal trial is not "satellite

litigation;" it is the central issue in this case. *Id*. The jury will be tasked with determining the cause of Plaintiff's prosecution and conviction as an element of the due process and malicious prosecution claims. All evidence that was and was not presented at trial, regardless of whether it was strategically sound,[1] is relevant to this analysis. While Plaintiff would prefer a sanitized version of the criminal trial, excluding any evidence which implies that his conviction was not caused by Defendant Officers' conduct, his position is simply not viable under the Rules of Evidence or the Constitution.

WHEREFORE, for the reasons stated herein, Defendant Officers respectfully request that this Court deny Plaintiff's Motion *in Limine* Number 8, permit Plaintiff to be impeached with his prior silence in response to incriminating testimony, and advise the jury of the adverse inference which may be drawn therefrom.

Respectfully submitted,

/s/ *Brian J. Stefanich*
One of the Attorneys for Defendant Officers

Andrew M. Hale (ahale@ahalelaw.com)
Brian J. Stefanich (bstefanich@ahalelaw.com)
William E. Bazarek (wbazarek@ahalelaw.com)
Hale & Monico, LLC
53 W. Jackson Blvd., Suite 330
Chicago, IL 60604
Ph. (312) 341-9646
Fax (312) 341-9656

---

[1] Plaintiff's motion misrepresents the orders entered in the state court. (Mot. at 3, n.1.) The Appellate decision cited by Plaintiff did not find counsel ineffective, it merely remanded for a third stage proceeding on this issue. After a hearing, the circuit court ordered a new trial based solely on counsel ineffectiveness in failing to investigate witness Todd Henderson, not on the failure to move for discovery sanctions in relation to the destruction of guns. The circuit court's ruling that counsel was ineffective is relevant to explain why Plaintiff's conviction was vacated, and to prevent jury speculation as to whether this decision was based on a finding of innocence or misconduct on the part of Defendant Officers. *See* Defendant Officers' Response to Plaintiff's Motion *in Limine* No. 3.

## **CERTIFICATE OF SERVICE**

    I, Brian J. Stefanich, an attorney, hereby certify that I caused a copy of the foregoing Defendant Officer's Response to Plaintiff's Motion *in Limine* Number 8, to be filed with the Court's CM/ECF system on November 8, 2019, which provided notice and a copy to all counsel of record.

                                                /s/ Brian J. Stefanich