IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EDDIE L. BOLDEN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17 C 00417 |
| | ) | |
| vs. | ) | Honorable Steven C. Seeger |
| | ) | |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT OFFICERS' MOTION *IN LIMINE* NO. 6
TO BAR REFERENCE TO THE ARRESTS OF
EDNA WILLIAMS, JAMES WILLIAMS, AND DAVID MCCRAY**

Plaintiff Eddie L. Bolden, by his undersigned counsel, respectfully submits this Response in Opposition to Defendant Officers' Motion *in Limine* No. 6 to Bar Reference to the Arrests of Edna Williams, James Williams, and David McCray (Dkt. 313).

### INTRODUCTION

On the night of the murders, Clifford Frazier ("Clifford") was aiding and abetting a two-kilogram drug deal by providing security and guarding the drugs. He was in possession of two semi-automatic weapons, one in his hand and one in his car. According to Clifford, he shot all of the bullets in his .40 caliber semi-automatic weapon at someone chasing him in front of J&J Fish. He carried that weapon into J&J Fish and then hid the gun under an icy machine, originally telling the police that he had dropped the gun on the street.

Incredibly, Defendants never pursued charges against Clifford for possession of this weapon or any other charges. Instead, on the same night, Defendant Oliver and other officers arrested Edna Williams ("Edna") and David McCray for possession of Clifford's gun and James Williams for possession of ammunition and took them to the Area 2 police station. At the same

1

time, they handcuffed Edna's goddaughter, a pregnant teenager named Tanesha Gatson, and took her to the station for questioning. Defendants move to exclude evidence of the arrests and the surrounding circumstances primarily because they claim there is no evidence that they participated in these arrests. Mot. at ¶ 3. That is false. The police report and related testimony establishes that Defendant Oliver participated in the arrests and at least Pesavento and Karl questioned these persons while they were under arrest.

The only other issue Defendants raise is relevance, along with a related Rule 403 argument. As with Defendants' other motions, their relevance argument rests on the premise that Plaintiff's case is limited to claims involving the lineup. Mot. at ¶ 1. That is a false premise. The state law malicious prosecution and intentional infliction of emotional distress claims are far broader than the lineup. Both turn on Defendants' conduct during this investigation and their intent. The jury is entitled to hear the evidence of the lengths to which Defendants went to cultivate Clifford as a witness against Plaintiff. The contrast between Defendants' treatment of Clifford and their treatment of Edna and James Williams and McCray is powerful evidence of their intent.

These arrests and the reports related to them have other, independent, relevance. The evidence concerning the arrest of McCray is independently relevant because it was based upon Clifford's false statement to the police. Anthony Williams shook the gun out of Clifford's hand and kicked it under an icy machine. Clifford initially lied and told the police that McCray was the one who shook the gun out of his hand and kicked it under an icy machine, which led to McCray being arrested and charged. That evidence is relevant to Clifford's credibility and is an independent ground for admission.

Similarly, the arrest of Edna and the detainment of Gatson and the circumstances of their witness interviews are independently relevant. Edna and Gatson are critical alibi witnesses for

Plaintiff. Nonetheless, after arresting Edna and bringing both Edna and Gatson to the police station, where they were questioned and held for hours (Edna was held for over 12 hours), Defendants Karl and Pesevento falsely recorded that Edna "could add nothing to the investigation and denied witnessing anything." They also falsely recorded what Gatson said, fabricating information that implicated Plaintiff and omitting exculpatory information she provided. The jury is entitled to hear what Edna and Gatson actually said about what they saw and heard as well as the circumstances of their statements.

Defendants' argument that this is "bad act" evidence offered to prove propensity is specious. That is not the purpose for which this evidence is offered, and Plaintiff will make no such argument.

## BACKGROUND

In the course of responding to the shooting outside J&J Fish on January 29, 1994 and gathering evidence in connection with the shootings of Derrick Frazier and Ledell Clayton, Defendant Oliver and other police officers arrested three J&J Fish workers—James Williams, Edna Williams, and David McCray—for offenses that were ultimately dismissed. James and Edna Williams were the owners of J&J Fish, eyewitnesses to the events of January 29, 1994, and the parents of Anthony Williams, to whom Frazier and Clayton spoke about a major drug transaction just before they were killed. McCray was an employee of J&J Fish who was making a delivery at the time that Clifford Frazier was shot and only returned after Clifford entered the restaurant seeking assistance. Oliver and the other police officers also handcuffed J&J Fish employee Tanesha Gatson at the same time and transported her to the Area 2 station along with the other arrestees.

Defendant Oliver and others arrested Edna Williams after finding the .40 caliber Iberia

3

pistol that Clifford admitted he brought into the restaurant and used during his fight with the shooter, threatening to "put the gun on [her]," even though she did not know that Clifford had left his gun in the restaurant. *See* Ex. A, Excerpts from Deposition of Edna Williams at 43:7-14, 98:14-99:3. The report for her arrest specifically listed Defendant Oliver as participating in the arrest. *See* Ex. B, Arrest Report for Edna Williams. The author of that report confirmed that Defendant Oliver was one of the arresting officers. *See* Ex. C, Excerpts from Deposition of Maurice Willis at 30:22-31:9. In describing her in-custody interview, Defendants Karl and Pesavento falsely recorded that she "could add nothing to the [shooting] investigation and denied witnessing anything." *See* Ex. D, Supplementary Report, at EB 0001449.

James Williams and McCray were arrested at the same time as Edna by the same group of officers who arrested Edna, including Oliver. McCray was arrested on the basis of Clifford's false statement to the police that it was McCray who hid his gun. *See* Ex. E, Arrest Report for David McCray; Ex. F, Willis Report. In reality, McCray was not even present when Clifford sought refuge at J&J Fish and hid the gun. Clifford later testified that it really was Anthony Williams who hid the gun, not McCray. *See* Ex. G, Excerpts from Clifford Frazier Trial Testimony, at 154:22-155:3. James Williams was arrested, brought to Area 2, and charged with possessing ammunition without a valid FOID card based on officers' recovery of "various types of ammunition" in the front office of J&J Fish. *See* Ex. H, Arrest Report for James Williams at CHI.BOLDEN 011666. As with his wife, Defendants incorrectly indicated that Mr. Williams had no relevant information to offer the homicide investigation. *See* Ex. D, Supplementary Report, at EB 0001449.

Gatson was never charged with a crime, but Defendants held her involuntarily for hours, interviewed her, and falsely reported that she had seen "a male black that she knew only as

4

[Lynier]" come into J&J Fish "stating that he pager was broken and he wanted to Anthony Williams," and that he "was directed next door to Anthony Williams' pager business." *Id.* The report also falsely stated that she saw Lynier and Anthony Williams speaking for about 15 minutes, and that she described Lynier as "light complected." *Id.*

The charges against Edna, James Williams, and McCray were all eventually dismissed. Upon dismissal of the Unauthorized Use of a Weapon charges against McCray, a court issued an order on March 18, 1994 to confiscate and dispose of the .40 caliber semi-automatic pistol, serial # 001493 (Iberia). *See* Ex. I, Court Order of March 18, 1994. The weapon was therefore destroyed, even though it was evidence in the Frazier/Clayton shooting investigation and Plaintiff by that point had been falsely arrested for the shootings and was asserting that he was innocent of the crimes. *See* Ex. J, Property Inventory Number 1266045.

## ARGUMENT

### I. Oliver, Pesavento and Karl Participated in the Arrests.

Defendants begin their Motion with a false premise: "There is no evidence that any of the Defendant Officers participated in their arrest." Mot. at ¶ 3. To the contrary, the Willis incident report and Edna's arrest report crystalizes that Defendant Oliver returned to J&J Fish after interviewing Clifford at Christ Hospital and, based on what Clifford told him, was part of the team that found Clifford's gun under an icy machine and participated in the arrests of the J&J Fish employees. Ex. B; Ex. F. Oliver was explicitly credited for assisting with Edna's arrest, *see* Ex. F, and so he also must have participated in the arrests of James Williams and McCray, as they occurred at the same place and time. Similarly, Pesavento admitted to conducting the in-custody interrogations of James Williams, Edna, McCray, and Gatson, and Defendant Karl also was privy to those interviews, as reflected in their Major Crime Progress Report. *See* Ex. D, at EB 0001444-49); Ex. K, Excerpts from Deposition of Angelo Pesavento, at 43:3-44:1.

5

## II. The Arrests and Post-Arrest Interviews Are Relevant to Showing Defendants' Intent and Motive.

The second flawed premise of Defendants' Motion is that all of Plaintiff's claims relate to the lineup. Mot. at ¶ 1. They do not. Plaintiff's due process claim, Count I, is limited to the unconstitutionally suggestive lineup. The remaining claims, including the State law malicious prosecution, unlawful detention, and intentional infliction of emotional distress counts, are far broader.[1] Because Defendants' Motion does not even address these broader issues, this Court need look no further to deny it. Plaintiff, however, will briefly outline a number of ways in which this evidence is relevant.

The arrests of Edna Williams, James Williams, and McCray at J&J Fish on January 29, 1994 are highly probative of Defendants' bad faith intent and the core issue of whether Defendants were motivated by a desire to bring anyone to justice when they arrested Plaintiff and closed their investigation. More specifically, the conduct of Defendants Oliver, Pesavento, and Karl in connection with these improper arrests is direct evidence of their intent and motive.

Clifford Frazier is the source of the sole evidence against Plaintiff in his criminal case: Clifford's wholly uncorroborated identification of Plaintiff as the person who chased and shot him. It is enormously significant that Defendants chose not to arrest Clifford for owning, carrying, and firing the .40 caliber semi-automatic Iberia pistol on January 29, 1994. The significance of that decision is compounded when juxtaposed with the fact that Defendant Oliver and other officers arrested Edna Williams and David McCray for their supposed fleeting constructive possession of ***that very same gun*** that same night after its discovery under an icy machine at J&J Fish, knowing

---

[1] Defendants' statement that Plaintiff knew of the arrests and complaints before his trial, Mot. ¶ 6, is not material to their motion *in limine,* and Plaintiff does not premise admissibility of the arrests on any argument that the J&J Fish employees were coerced to falsely inculpate Plaintiff for the shootings. Mot. ¶ 4, 5. Nor does Plaintiff assert any *Brady* or disclosure violation in connection with these arrests.

fully that it was Clifford's weapon.

Defendants' actions, including the decision to arrest and charge other people for possession of Clifford's gun, reveal Defendants' apparent intent and desire to protect and provide special benefits to Clifford, regardless of his own criminality and precarious credibility. Their motivation to afford him special benefits and wield control over him is compelling evidence that Defendants were not motivated by a good faith desire to identify the actual shooter and pursue justice.

Moreover, the probative value of the arrest evidence as to contested issues in the case greatly outweighs any risk of unfair prejudice. *See* Fed. R. Evid. 403. Defendants argue that this is "bad acts" evidence that could be used to prove Defendants' propensity to commit other bad acts. Both the premise and conclusion of this argument are flawed. Plaintiff will not argue that these arrests are "bad acts." Nor will Plaintiff argue that the arrests of these persons made it more likely Defendants would arrest Plaintiff without probable cause. Rather, the relevance of this evidence is outlined above and in the following section. There is no unfair prejudice. Accordingly, it should not be precluded.[2]

### III. The Arrest and Charging of McCray Impeaches Clifford's Credibility.

Clifford's evolving accounts of the events of January 29, 1994 comprise critical impeachment evidence that challenges Clifford's credibility and calls into question the reasonableness of Defendants' reliance on Clifford in arresting Plaintiff. On the night of the shootings, Clifford falsely told Defendant Oliver and others that McCray kicked the .40 caliber gun under an icy machine at J&J Fish, which led to McCray being arrested and charged. *See* Ex. E; Ex. F. But in fact, Clifford was lying, and he knew that it was Anthony Williams who had shaken the gun from his hand and kicked it under the icy machine. Ex. G, at 154:22-155:3. The

---

[2] It also bears noting that, contrary to Defendants' contentions, Mot. ¶ 8, the arrests can and will be established without resort to hearsay.

McCray arrest demonstrates how Clifford was willing to lie about the events of January 29 and further calls into question Clifford's true motives.

    **IV.**     **The Circumstances Surrounding the Arrests of the J&J Fish Employees Provide Relevant Background Information.**

Defendants' motion also should be denied because the arrests of the J&J Fish employees provide background information about key events in this case. For instance, the circumstances pertaining to McCray being arrested and charged and ultimately the charge being dismissed explain what happened to Clifford's gun and why it was not available as evidence at Plaintiff's criminal trial. When the charge against McCray was dismissed in March 1994, the criminal court ordered the weapon to be destroyed. *See* Ex. I. As discussed in more detail in Plaintiff's Response to Defendants' Motion *in Limine* No. 4 at 13, Plaintiff should be able to explain to the jury what happened to the gun and why it was not available to him for testing or during his criminal trial. *Whitehead v. Bond*, 680 F.3d 919, 930 (7th Cir. 2012) ("Even where evidence is not directly related to a disputed fact, it may be relevant when it provides background information.") Indeed, "one measure of relevance is whether … exclusion [of the evidence at issue] would leave a chronological or conceptual void in the story." *Id.* That is certainly the case here.

The details surrounding the arrests also provide relevant background information about heavily disputed alibi witness statements. Edna, James Williams, and Gatson all have testified that Plaintiff was inside J&J Fish when Clifford ran into the restaurant after being shot. Pesavento's and Karl's prior testimony about their interviews of Edna, James Williams, and Gatson on the night of the murders differ vastly from these witnesses' accounts. At the upcoming trial, Pesavento will deny that they were interviewed while in custody. He will counter Gatson's claims about what she really told him. He will testify that Edna and James Williams said they had no useful information. He will be questioned about the fact that he never followed up with them

8

at any later point during his investigation to ask if Plaintiff was inside J&J Fish when Clifford entered the restaurant. Edna and Gatson should be allowed to tell the jurors their full recollection of the events that evening, including the circumstances of their interviews so the jury can fully assess all three witnesses' credibility.

## CONCLUSION

For the foregoing reasons, Plaintiff Eddie L. Bolden respectfully asks this Court to enter an Order denying Defendant Officers' Motion *in Limine* No. 6.


Dated: November 8, 2019

Respectfully Submitted,

*/s/ Valarie Hays*
Ronald S. Safer
Valarie Hays
Eli J. Litoff
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison Street, Suite 2900
Chicago, Illinois 60602
(312) 471-8700
rsafer@rshc-law.com
vhays@rshc-law.com
elitoff@rshc-law.com

Sandra L. Musumeci (*pro hac vice*)
RILEY SAFER HOLMES & CANCILA LLP
1330 Avenue of the Americas, 6th Floor
New York, New York 10019
(212) 660-1000
smusumeci@rshc-law.com

*Attorneys for Eddie L. Bolden*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 8, 2019, I caused the foregoing document to be electronically filed using the CM/ECF system, which will send notice of this filing to all counsel of record.

*/s/ Valarie Hays*
Valarie Hays