IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EDDIE L. BOLDEN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17 C 00417 |
| | ) | |
| vs. | ) | Honorable Steven C. Seeger |
| | ) | |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF
MOTION *IN LIMINE* NO. 2 TO BAR REFERENCE TO
PLAINTIFF'S PRIOR GANG AFFILIATION AND DRUG ACTIVITY**

Plaintiff Eddie L. Bolden, by his undersigned counsel, respectfully submits this Reply in Support of his Motion *in Limine* to Bar Reference to Plaintiff's Prior Gang Affiliation and Drug Activity (Dkt. 295) ("Mot.").

**I.  Plaintiff's Prior Gang Affiliation Is Not Relevant and Should Be Excluded.**

Defendant Officers' ("Defendants") Response makes clear they are intent on focusing the jury on irrelevant and unfairly prejudicial evidence. Their Response to the instant Motion ignores that the issue in this case is what Defendants knew when they arrested and continued the prosecution of Plaintiff. Two key points defeat Defendants' arguments about the supposed relevance and fairness of allowing evidence regarding Plaintiff's prior gang affiliation: (1) there is nothing in Defendants' Investigative File reflecting that they did any investigative work to ascertain whether Plaintiff was, in fact, a Gangster Disciple when targeting him as a suspect, and (2) Plaintiff was not an active member of the Gangster Disciples in 1994, when the shootings took place.

Plaintiff's previous affiliation with the Gangster Disciples ("GDs") gang in the 1980s, when he was a teenager, has no bearing on Plaintiff's civil rights claims in connection with

Defendants' flawed investigation of the Frazier/Clayton shootings in 1994. Plaintiff has testified that in his early teen years he was considered a GD because he grew up in Stateway Gardens, an area controlled by the GDs. *See* Ex. 1, Excerpts from Deposition of Eddie Lynier Bolden, at 29:2-24. He also testified that he was not an active gang member in 1994, *see id.* at 34:17-35:8, 298:14-299:5, 301:9-302:5, and in any event, nothing in the record indicates that Defendants considered or investigated Plaintiff's prior gang affiliation before they arrested him. Thus, even if Plaintiff were a member of a gang in 1994—and he was not—that membership would have no relevance. Because this evidence is so explosive, courts routinely have declined to admit evidence of gang affiliation in the absence of a compelling probative link to a contested issue, recognizing "the substantial risk of unfair prejudice attached to gang affiliation evidence." *United States v. Irvin*, 87 F.3d 860, 864 (7th Cir. 1996); *see also Anderson v. City of Chicago*, No. 09 C 2311, 2010 WL 4811937, at *1 (N.D. Ill. Nov. 19, 2010) (observing evidence of affiliation with a gang "is highly prejudicial, especially when the gang evidence is not relevant to a central issue in a case"). No such probative link exists here, and the proposed evidence should be precluded.

Defendants assert four bases of proposed relevance for evidence that Plaintiff himself was part of a gang: (1) to establish a motive for Plaintiff to commit the shootings, given that the double homicide was deemed a gang-related attack; (2) to show Plaintiff's relationship with Anthony Williams and the Williams family; (3) to impeach the alibi testimony of Edna Williams; and (4) to suggest that Defendants had probable cause to arrest Plaintiff. Each of these arguments is flawed, and none renders evidence of Plaintiff's past gang affiliation relevant under Federal Rule of Evidence 401.

    1.    <u>Motive to Commit the Shootings</u>

First, Defendants claim that Plaintiff's prior gang affiliation is relevant to proving that Plaintiff committed the double murder. More specifically, Defendants argue that evidence that

Plaintiff was a gang member should be admitted so that they can argue that he had a motive to fulfill the gang hit that Anthony Williams ordered on the victims. Defendants also assert a fairness argument for admitting the highly prejudicial evidence of Plaintiff's prior gang affiliation, effectively suggesting that Plaintiff introduced a gang element into the case as a "sword" to divert suspicion away from himself, while hiding under the "shield" of case law that says that evidence of gang membership is generally unduly prejudicial. *See* Defendants' Response to Plaintiff's Motion *in Limine* No. 2 ("Resp.") at 4. These arguments fail for several reasons.

As an initial matter, Plaintiff did not "inject" a gang-related motive for the double murder into the case; the gang-related motive for the shootings was part of the investigation from the start, as evidenced by Defendant Pesavento's grand jury testimony from March 1994 that Defendants appended to their opposition brief. *See* Resp. Ex. A, at 7:4-13 (testifying that the double murder was a "retaliation" because the victims were not paying a street tax to "one of the local gangs"). Interestingly, neither the source of this information nor the fact of it is contained anywhere in Defendants' Investigative File. Moreover, as Defendants also note in their Response, Cynthia Steward told Defendants back in 1994 that the murders were a gang-related hit and provided a list of names of people who might have murdered her fiancé and Derrick Frazier (Plaintiff was not on that list). *See* Resp. at 2 & Ex. B. Reference to these issues—including Defendants' failure to investigate whether the shootings were the result of gang retaliation—is not using gang affiliation as a sword; it is simply describing the evidence directly related to the investigation and Defendants' activities. Thus, the "fairness" arguments upon which Defendants anchor their opposition to the are spurious and do not provide a basis for allowing the admission otherwise irrelevant and unfairly prejudicial evidence.

3

The allegations in the Complaint do not make Plaintiff's affiliation with the GDs in the mid-1980's relevant. Defendants allege that they should be permitted to introduce evidence of Plaintiff's affiliation with the GDs because his gang membership provided a motive for him to shoot Derrick Frazier ("Derrick"), Ledell Clayton, and Clifford Frazier ("Clifford").[1] Initially, this argument relies on the false premise that Plaintiff was an active gang member at the time of the shootings. The uncontested evidence at trial will be that Plaintiff was not an active member of the GDs in 1994, and there is nothing in the Defendants' Investigative File indicating that they investigated Plaintiff as a gang member or had information suggesting that he was an active member of a gang at the time of the shootings.[2] Moreover, the link that Defendants seek to draw—that the murder was reputed to be a gang hit, and if Plaintiff was a gang member, that fact alone provided a motive for him to commit the shooting—is precisely the type of "guilt by association" speculation that the Court of Appeals has consistently sought to prevent.[3] See *Irvin*, 87 F.3d at 865 ("Guilt by association is a genuine concern whenever gang evidence is admitted."); *Charles v. Cotter*, 867 F. Supp. 648, 658 (N.D. Ill. 1994) ("Identifying [plaintiff] as a gang member is

---

[1] Defendants' citation to a line from Judge Shah's summary judgment opinion is misleading. *See* Dkt. 276 at 43. Judge Shah was not making an admissibility or relevance ruling concerning Plaintiff's prior gang affiliation, as Defendants suggest. Rather, the quoted line was at most *dicta* within the Court's analysis as to the materiality of Defendants' suppression of Steward's statement that Andre Kimbrough told her about a gang hit out on Derrick and Clayton. Judge Shah ruled that such evidence, even if Defendants suppressed it, was not material for a variety of reasons, and as a result, Plaintiff's Section 1983 claim based on a suppression of evidence theory was dismissed.

[2] Defendants attach to their opposition brief an FBI report noting that the Chicago Police Department "was provided with positive information" regarding Plaintiff. *See* Resp. Ex. C. However, that FBI report adds nothing to the analysis here. In addition to being hearsay, the FBI report does not say or even suggest that Plaintiff was a member of the GDs. Further, that report was not included in the Defendants' Investigative File for the shootings.

[3] It also bears noting that this litigation is not a re-trial of Plaintiff's criminal case; the case is about whether the Defendants' action in 1994 deprived him of a fair trial and led to his wrongful incarceration. Whether there is evidence of a possible motive for Plaintiff to have committed the shootings (and Plaintiff asserts there is not) is not relevant to this trial, except insofar as Defendants knew about that possible motive at the time they arrested Plaintiff and it contributed to their probable cause for making an arrest.

unfairly prejudicial insofar as it encourages the inference that [plaintiff] is an evil and menacing person."); *cf. United States v. Montgomery*, 390 F.3d 1013, 1018 (7th Cir. 2004) (allowing evidence of gang membership to show motive for carrying weapon when defendant had stated that he brought gun to festival because of possibility of a confrontation with a rival gang). Accordingly, evidence of Plaintiff's prior gang affiliation should not be permitted as a basis for arguing motive to commit the shootings.

Even if Plaintiff had been a GD member, evidence of gang membership would not be relevant. The GDs had approximately 6,000 members in the mid-1990's in the Chicago area alone. *See, e.g., United States v. Smith*, 223 F.3d 554, 560-61 (7th Cir. 2000) (describing the GD criminal enterprise). Defendants ignored the small list of suspects provided by the fiancé of the murder victim; it defies belief that being a member of the most populous gang in the city of Chicago, if not the nation, would have any significance.

    2.   <u>Relationship with the Williams Family</u>

Next, Defendants argue that evidence of Plaintiff's gang affiliation is relevant to show Plaintiff's relationship with Anthony Williams. This argument fails for two primary reasons. First, Plaintiff's relationship with Anthony Williams was completely independent of the GDs. Plaintiff had known the Williams family since childhood as neighbors in Stateway Gardens. There is no evidence that Plaintiff was an active gang member at the time of the shootings *other than his personal relationship with members of the Williams family*. This circular reasoning cannot provide a legitimate basis for admissibility of such highly and unfairly prejudicial evidence, particularly when the validity of that evidence relies on an inference that stems from the very thing that the evidence is offered to prove.

In support of their argument for admissibility, Defendants cite *United States v. Alviar*, 573 F.3d 526 (7th Cir. 2009), arguing that gang affiliation is particularly relevant where "the

5

interrelationship between people is a central issue." *Id.* at 536. In *Alviar*, the defendants' gang affiliation was admitted to show their roles, knowledge, and participation in a drug conspiracy (and the conspiracy's link to the gang was cited in the indictment, in that it alleged that two defendants provided protection for the narcotics operation via their roles as Latin Kings enforcers). *See id.* at 536-37. In contrast, the shootings here were not charged as a conspiracy, and in fact Anthony Williams was never arrested or charged with the murders of Derrick and Clayton. *See also United States v. Thomas*, 86 F.3d 647, 652 (7th Cir. 1996) (admitting gang evidence to demonstrate the existence of a conspiracy and the connections between members of the conspiracy). There is no evidence whatsoever that Anthony Williams had any relationship with Plaintiff that involved the GDs or that Williams had any rank within the gang in 1994.

To the extent it is relevant, Defendants can explore fully the relationship between Plaintiff and the Williams family without any reference to Plaintiff's prior membership in the GDs. For example, Defendants are free to present evidence that Plaintiff knew the Williams family since childhood, that Plaintiff lived above J&J Fish for a time between 1992 and 1994, that he worked at J&J Fish on occasion, and that he and Anthony Williams spoke with each other at times. It is also uncontested that Plaintiff was at J&J Fish on January 29, 1994 because he was waiting to speak with Anthony Williams. The relationship between Plaintiff and the Williams family is clear, and Plaintiff's prior gang affiliation does not render his relationship with Anthony Williams any stronger or different—especially since Plaintiff was no longer an active member of the gang in 1994. By the same token, the fact of Plaintiff's former gang affiliation does nothing to illustrate or clarify his relationship with James Williams and Edna Williams, who were not gang members at all.

6

3.     Edna Williams' Alibi

Defendants next maintain that they need to present evidence of Plaintiff's gang affiliation to introduce Plaintiff's third-hand belief that Robert Dordies, an incarcerated GD leader, allowed Edna Williams and others to reveal what they saw on the night of the shooting. *See* Resp. at 5. The logic is difficult to follow. It is true that the GDs had a policy of "silence and secrecy" (although that is not of record in this case). It is also true that Edna Williams' son, Anthony Williams, was at one time a ranking member of the GDs. Defendants have no explanation about how *Plaintiff's* alleged membership in a gang has any relevance to communications between Dordies and Edna Williams.

Defendants seem to argue that the reference to Dordies, which can be made without reference to Plaintiff, excuses their failure to ask Edna Williams about whether Plaintiff was in J&J Fish at the time of the shootings. *See* Resp. at 5 n.2. It does not. Defendants interviewed Edna Williams on the night of the murders, when Plaintiff was not yet a suspect. They did not ask about whether Plaintiff was in the restaurant at that time. There is no excuse for Defendants' failure to circle back to witnesses inside J&J Fish, including Edna Williams, after Plaintiff became a suspect, to determine whether Plaintiff was in the restaurant at the time the murders took place outside. That basic follow-up is quite different from asking these witnesses about the identity of the actual shooter.

Additionally, it is unclear how any gang affiliation that Plaintiff may have had would relate to the bias of Edna Williams, given that Edna Williams was not a gang member. The suggestion that Edna Williams would be more biased in favor of Plaintiff if he was a gang member because her own son was a gang member is purely speculative. It cannot form the basis for admitting otherwise unduly prejudicial evidence.

4. Probable Cause Analysis

Finally, Defendants contend that evidence of Plaintiff's prior gang affiliation is relevant because it contributed to their probable cause to arrest Plaintiff. But as noted, there is nothing in the Investigative File to suggest that Defendants looked into or considered Plaintiff's supposed status as a GD in deciding to arrest him. The fact that Defendants learned before arresting Plaintiff that he knew Anthony Williams, *see* Resp. at 5-6, is not germane to this analysis, because interacting with Anthony Williams is not tantamount to gang membership.[4] Since the record is devoid of any indication that Defendants ascertained or even considered whether Plaintiff was a gang member, Defendants cannot claim now that evidence of Plaintiff's prior gang affiliation supports their determination of probable cause to arrest him. *See, e.g., Anderson*, 2010 WL 4811937, at *2 (finding that evidence of gang membership was not relevant to probable cause analysis where the defendant officers did not know of plaintiff's gang affiliation prior to arresting him); *see also Holmes v. Village of Hoffman Estates*, 511 F.3d 673, 679 (7th Cir. 2007) (holding probable cause exists "when the facts and circumstances *that are known to [an officer]* reasonably support a belief that the individual has committed, is committing, or is about to be [sic] commit a crime.") (emphasis added).

In sum, Defendants have not established any colorable theory of relevance to overcome the strong presumption of undue prejudice that introduction of Plaintiff's prior gang affiliation would cause. Any evidence or argument about Plaintiff's affiliation with the GDs street gang should be excluded pursuant to Federal Rules of Evidence 401 and 403.

---

[4] Furthermore, Defendants failed to hold Anthony Williams accountable for the shootings and indeed, never even conducted a substantive interview to question him about the drug transaction and his conversation with Derrick and Clayton that immediately preceded their murders.

### B. Plaintiff's Prior Drug Activity Is Irrelevant Improper Propensity Evidence and Should Be Excluded.

Defendants should likewise be precluded from offering evidence of any drug-related activity by Plaintiff, including specifically that Anthony Williams provided Plaintiff with small amounts of narcotics to sell on a few occasions between 1992 and 1994 as a means of earning money to support his family. This evidence of small-scale uncharged drug activity is unrelated to the issues in this litigation and is unduly prejudicial. *See, e.g., United States v. Gallardo*, 497 F.3d 727, 733 (7th Cir. 2007) (noting that evidence of "illegal drugs may so prejudice the jury that it will excessively discount the witness' testimony").

Defendants counter that they seek to use this evidence to "show the nature and extent of Plaintiff's criminal relationship with Ant" in order to "explain why Ant chose Plaintiff to carry out these murders and Plaintiff's motive for doing so." Resp. at 6. The ground needed to cover this leap of logic, from the supply of a small amount of drugs to the commission of a murder, is as wide as the Grand Canyon. There is no evidence that Anthony Williams asked Plaintiff to murder the victims, and the fact that Williams provided Plaintiff with small quantities of drugs makes the proposition no more likely.

In support of admitting this unrelated drug sale evidence, Defendants cite *United States v. Foster*, 652 F.3d 776, 785-86 (7th Cir. 2011), where the court found that prior evidence of a check fraud scheme between two parties was admissible under Rule 404(b) to show their criminal relationship and explain how that escalated to a proposal to commit armed robbery. But unlike in *Foster*, here the stark difference between distribution of a small amount of narcotics on the one hand, and committing a planned double homicide on the other, does not reflect a plausible escalation of Anthony Williams' and Plaintiff's relationship; in fact, the magnitude and cold-bloodedness of a planned double homicide completely undermines the relevance of the few small-

quantity drug sales that Defendants propose introducing. *Cf. id.* at 786 (allowing the other-acts evidence of a check fraud scheme to show the escalation of a criminal relationship where the "differences between check fraud and armed robbery do not undermine the check fraud scheme's relevance to the government's argument that the robbery represented an escalation of [the parties'] criminal relationship"). In other words, the probative value of the prior small-quantity drug sales is negligible to proving the point for which it is offered. Furthermore, as noted, the fact that a relationship existed between Plaintiff and Anthony Williams can be established through other relevant evidence that is not inherently prejudicial. Accordingly, weighing the probative value of the prior drug involvement evidence against its unfairly prejudicial impact, the evidence should be precluded under Rule 403, as well as Rule 404(b).

## CONCLUSION

For the foregoing reasons, Plaintiff Eddie L. Bolden respectfully asks this Court to enter an Order granting his motion *in limine*.

Dated: November 22, 2019

Respectfully Submitted,

/s/ *Valarie Hays*
Ronald S. Safer
Valarie Hays
Eli J. Litoff
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison Street, Suite 2900
Chicago, Illinois 60602
(312) 471-8700
rsafer@rshc-law.com
vhays@rshc-law.com
elitoff@rshc-law.com

Sandra L. Musumeci (*pro hac vice*)
RILEY SAFER HOLMES & CANCILA LLP
1330 Avenue of the Americas, 6th Floor
New York, New York 10019

(212) 660-1000
smusumeci@rshc-law.com

*Attorneys for Eddie L. Bolden*

11

## CERTIFICATE OF SERVICE

I hereby certify that on November 22, 2019, I caused the foregoing document to be electronically filed using the CM/ECF system, which will send notice of this filing to all counsel of record.

*/s/ Valarie Hays*
Valarie Hays