**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| EDDIE L. BOLDEN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17 C 00417 |
| | ) | |
| vs. | ) | Honorable Steven C. Seeger |
| | ) | |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION *IN LIMINE* NO. 4**
**TO PRECLUDE CERTAIN TESTIMONY OF JAMES OLIVER**

Plaintiff Eddie L. Bolden, by his undersigned counsel, respectfully submits this Reply in

Support of Plaintiff's Motion *in Limine* No. 4 to Preclude Certain Testimony of James Oliver (Dkt.

297) ("Mot").

**INTRODUCTION**

More than two decades after arresting and detaining Plaintiff without probable cause,

Defendant Officers ("Defendants") are attempting to justify their actions through vague and

unsupported testimony of James Oliver, suggesting he received a "tip" implicating Plaintiff in the

crimes. Not only is Oliver's testimony completely speculative, but it is unsupported by any

documentary evidence. In fact, it is contradicted by the record of Plaintiff's criminal trial, as well

as by his co-Defendant's testimony in this case. Oliver's testimony about the supposed tip is too

vague and speculative to be probative of any issue in dispute.

Moreover, even if there was some probative value to Oliver's testimony, it would be

substantially outweighed by the danger of unfair prejudice. Defendants are attempting to bolster

their case through a supposed tip that was never disclosed to Plaintiff during his criminal

1

proceedings and was purportedly received from an informant that Plaintiff has no ability to cross-examine. This evidence should be excluded.

## ARGUMENT

### I. Oliver's Testimony Is Too Vague and Speculative To Be Probative.

Defendants completely ignore the most glaring reason to exclude Oliver's testimony about the purported "tip" he received in 1994: it is completely uncertain and speculative. Defendants gloss over this argument entirely, suggesting that Oliver's testimony was clear and that the only thing Oliver was unable to recall was whether he or his partner received the tip. Defendants' Response to Plaintiff's Motion *in Limine* No. 4 ("Resp.") at 3. But there is good reason Defendants gloss over and vaguely characterize Oliver's testimony rather than quoting it. Contrary to the clear picture they attempt to paint, Oliver explicitly testified that he was "not 100% positive" that he received a tip from Mitch McCullough implicating Plaintiff. Mot. Ex. F, at 75:5-9. Oliver was asked again whether McCullough passed along a tip that Anthony Williams was involved with someone named "Lanier" on the night of the murders, and Oliver responded "I don't **think** he mentioned Ant. He **may** have just said that the tip he got **may** have been Lanier did the shooting." *Id.* at 76:6-11 (emphasis added). Later in the deposition, Plaintiff's counsel again asked Oliver to clarify whether he received the name "Lanier" through McCullough. Oliver responded: "I said he **may have been** the one that came up with that, and it **may have** come over the telephone in the office, **but I'm not certain**." *Id.* at 96:20-97:3 (emphasis added).[1] Plaintiff's counsel specifically asked Oliver about his use of the term "may have," and whether he was speculating or had an actual recollection of receiving the tip. Oliver could not confirm that he recalled receiving the tip; all he could say was "I remember speaking to Mitch during that time." *Id.* at 97:4-9.

---

[1] Exhibit F to Plaintiff's motion inadvertently omitted page 96 of Oliver's deposition transcript. A corrected Exhibit F is attached to this Reply.

Oliver's testimony is far too vague and speculative to be probative of either probable cause or Oliver's state of mind. He is not sure that McCullough provided this tip, and he cannot state what exactly McCullough told him, let alone what the alleged tipster stated. This testimony is inadmissible. *See, e.g.*, *Prochaska v. Menard, Inc.*, No. 10-CV-686-BBC, 2012 WL 12995638, at *6 (W.D. Wis. Feb. 7, 2012) (granting motion to exclude testimony about discriminatory remarks because "[i]f [the witness] cannot identify what those comments were, that testimony is too vague to be probative"); *Bowers v. Norfolk S. Corp.*, 537 F. Supp. 2d 1343, 1370 (M.D. Ga. 2007), *aff'd*, 300 F. App'x 700 (11th Cir. 2008) (where the witness qualified his statement with "may well have," the testimony was "too vague to assist the jury").

Defendants' argument that this vague triple or quadruple hearsay statement could have had any effect on the listener borders on the absurd. It requires the following logic: An unknown person of unknown veracity called some unknown law enforcement officer[2] and said something, exactly what is unknown, that indicated it "***may have been*** Lanier did the shooting." Ex. F, at 76:6-11 (emphasis added). The basis (or lack thereof) for this unknown person's statement is completely unknown. This unknown person's motivation for calling a law enforcement officer is unknown, except that Oliver testified that Anthony Williams had lots of enemies, *id.* at 74:21-75:9, and maybe one of them wanted to hurt a friend of Williams' family. The idea that this type of baseless, meaningless, and vague information would have any effect on a trained law enforcement officer—and therefore, be probative of probable cause—is ludicrous, and unsupported by well-established federal law. *See, e.g.*, *Illinois v. Gates*, 462 U.S. 213, 227 (1983) (holding that an anonymous tip alone generally cannot establish probable cause—there must be additional indicia of reliability); *Alabama v. White*, 496 U.S. 325, 329 (1990) ("[A]n anonymous tip alone seldom

---

[2] There is no indication that McCullough received this call directly.

3

demonstrates the informant's basis of knowledge or veracity."); *United States v. Johnson*, 289 F.3d 393, 398 (6th Cir. 2002) (probable cause determinations based on a tip require an analysis of the informant's "reliability, veracity, and basis of the knowledge"), *abrogated on other grounds by United States v. Booker*, 543 U.S. 220 (2005). Oliver's testimony confirms that the tip could not form the basis of his probable cause determination because he had no information about the basis of the informant's knowledge, his veracity, or his reliability. Importantly, the jury will not have any of that information in this case, either, and thus the tip will not assist the jury in making its probable cause determination. In contrast, as noted below, courts have recognized the danger that an untrained jury might attach undue significance to "tips." *United States v. Lovelace,* 123 F.3d 650, 653 (7th Cir. 1997).

Defendants attempt to buttress the reliability of Oliver's testimony by pointing to certain police reports, but these efforts are misguided. First, they point to the detectives' supplementary report that states: "In conjunction with gang crimes specialists Oliver and Anderson, the reporting detectives learned that the possible offender was a person by the name of Eddie Lanier Bolden." But this report says absolutely nothing about a tip. And when Oliver was asked if this report referred to the alleged tip from McCullough, his testimony was once again vague and uncertain: "Yes, and *I'm not sure that* – I'm sure that I did pass it along, but where the first tip, the first thing, *may have* came from a telephone call to gang crime." Mot. Ex. F, at 102:3-18. Moreover, Defendant Pesavento is the author of the report in question, and he directly refutes this notion. He testified that Defendants received the name "Lanier" from Tanesha Gatson and Anthony Williams, not from any tip. Ex. G, Excerpts of Deposition of Angelo Pesavento, at 78:3-80:8. Pesavento testified that *after* he received the name Lynier from Gatson and Williams, Oliver helped him link the name Lynier to Plaintiff. *Id.* at 80:9-17. And, contrary to any suggestion that the tip labeled

4

Plaintiff as the "possible offender," Pesavento has testified repeatedly that the only incriminatory information he received in the case came from Clifford Frazier. *See* Mot. at 1-2 (citing Pesavento's deposition testimony and his grand jury testimony).

Nor does the FBI report cited by Defendants support that Oliver received a tip implicating Plaintiff as a possible offender. The report simply says that "'Lanier' was mentioned as a close associate of Anthony Williams." Resp. Ex. B. This says nothing about Plaintiff being "involved" or being "the offender" as Defendants claim. Defendants also rely on the sentence of the report stating that the "Chicago Police Department (CPD) was provided with positive information as it relates to 'Lanier,' aka Edward L. Bolden." Resp. at 4. Again, this says nothing about a tip—in fact, it does not say how or from whom the CPD received this "positive information." The most reasonable reading of this report is that the "positive information" refers to Clifford's identification of Plaintiff as the offender. Indeed, the very next sentence of the report states: "This information resulted in the arrest by CPD of one Edward L. Bolden." *See* Resp. Ex. B. There is no dispute that Clifford's identification is the information that "resulted in the arrest" of Plaintiff. Pesavento has consistently confirmed this in his testimony both in the criminal and civil proceedings. *See* Mot. at 1-2.

In short, Oliver's testimony is too vague and uncertain to be probative of any issue in dispute. Oliver's testimony cannot be admitted as having an "effect on the listener" when it is not even clear what the listener heard or who he heard it from, and where there is no evidence that Oliver took any investigative steps in response to the tip; in other words, there is no evidence that the statement had any "effect" at all.[3] Oliver's testimony should be precluded.

---

[3] Defendants fault Plaintiff for not citing case law stating that Oliver must have taken some action in response to the tip for it to be relevant. But Plaintiff did cite *United States v. Lovelace*, which explains that the only relevance of a tip is to "explain[] actions undertaken pursuant to a criminal investigation." 123 F.3d 650, 651 (7th Cir. 1997). It is axiomatic that a statement's "effect on the listener" can only be relevant

**II. Any Probative Value Is Substantially Outweighed By the Danger of Unfair Prejudice.**

As set forth in Plaintiff's motion, admission of the supposed tip under these circumstances would be unfairly prejudicial to Plaintiff. Mot. at 4-5. Tips are inherently prejudicial, and that prejudice is exacerbated in this case because the tip was disclosed through vague and speculative testimony 25 years after the fact. Plaintiff has no ability to identify or cross-examine the supposed informant, and the alleged tip is not corroborated by any other evidence. *Id.*

Defendants fail to offer a meaningful response to these arguments. Instead, they suggest that Plaintiff could have cured this prejudice by deposing McCullough or litigating the FBI's redactions in the FBI report. Resp. at 4-5. Even if Plaintiff had a responsibility to try to cure the prejudice caused by the admission of Oliver's vague hearsay testimony, Defendants' position is misguided. Plaintiff's counsel was unable to locate McCullough to interview him. Moreover, it is doubtful that McCullough would remember anything about the events in question. Regarding the FBI report, it is pure speculation that the redacted name was an informant, let alone the informant that Oliver is now inventing out of whole cloth. And in any event, the report at most shows that the FBI received information that Plaintiff was an "associate" of Anthony Williams. The report does not reflect any tip that Plaintiff was a "possible offender" or even "involved" as Defendants now contend.

---

if there was some effect. *See, e.g.*, *O'Brien & Wolf LLP v. Associated Banc-Corp*, No. 11-CV-1253 (SER), 2013 WL 1104641, at *7 n.6 (D. Minn. Mar. 18, 2013) (questioning the admissibility of a statement offered to show effect on the listener, and stating "[t]his begs the question of what effect the statement had, since McGill admittedly took no action at that time."). Defendants also assert that "Oliver did do something with the information—he passed it on to the detectives that were actually assigned to investigate the double homicide." Resp. at 4. But Oliver's testimony in this regard is just as uncertain as the rest. The most Oliver could say is that he "***probably*** called [Detective] Baker and told him." *See* Mot. Ex. F, at 97:13 (emphasis added).

Finally, Defendants misconstrue the significance of the State's failure to disclose any information about the alleged informant. The issue is not "whether or not the CCSAO properly disclosed information prior to Plaintiff's criminal trial," as Defendants suggest. Resp. at 5. The CCSAO did not disclose any information about an informant because no informant existed. To be sure, separate and apart from the criminal proceedings, the State produced its file to the parties in *this case*. That file contains no information whatsoever regarding any informant or any "tip" received by Oliver.

Plaintiff would be severely prejudiced by the admission of Oliver's testimony. On one end of Rule 403's scale, the vague, speculative, and unreliable nature of the testimony eliminates—or at the very least, significantly limits—its probative value. On the other end of the scale, any mention of a tip creates a substantial danger of unfair prejudice because the tip "has great potential to be credited by the jury." *See Lovelace*, 123 F.3d at 653. The danger of unfair prejudice is exacerbated in this case because the tip is not "corroborated by uncontested evidence," *id.*, and in fact, is contradicted by all the available evidence. The prejudice side of Rule 403's scale is even further weighed down because the supposed declarant is not "available for cross-examination." *Id.* Thus, under Rule 403, the Court should exclude Oliver's testimony.

## CONCLUSION

For the foregoing reasons, Plaintiff Eddie L. Bolden respectfully requests that the Court grant Plaintiff's Motion *in Limine* No. 4 to Preclude Certain Testimony of James Oliver.

Dated: November 22, 2019

Respectfully Submitted,

/s/ Valarie Hays
Ronald S. Safer
Valarie Hays
Eli J. Litoff

7

RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison Street, Suite 2900
Chicago, Illinois 60602
(312) 471-8700
rsafer@rshc-law.com
vhays@rshc-law.com
elitoff@rshc-law.com

Sandra L. Musumeci (*pro hac vice*)
RILEY SAFER HOLMES & CANCILA LLP
1330 Avenue of the Americas, 6th Floor
New York, New York 10019
(212) 660-1000
smusumeci@rshc-law.com

*Attorneys for Eddie L. Bolden*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 22, 2019, I caused the foregoing document to be electronically filed using the CM/ECF system, which will send notice of this filing to all counsel of record.


/s/ Valarie Hays
Valarie Hays