IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EDDIE L. BOLDEN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17 C 00417 |
| | ) | |
| vs. | ) | Honorable Steven C. Seeger |
| | ) | |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION *IN LIMINE* NO. 5
TO EXCLUDE CYNTHIA STEWARD'S TESTIMONY
BASED ON SPECULATION AND HEARSAY**

Plaintiff Eddie L. Bolden, by his undersigned counsel, respectfully submits this Reply in Support of Plaintiff's Motion *in Limine* No. 5 to Exclude Cynthia Steward's Testimony Based on Speculation and Hearsay (Dkt. 307) ("Mot").

**INTRODUCTION**

When Cynthia Steward testified at Plaintiff's criminal trial 25 years ago, she testified based on her personal knowledge. She testified that she accompanied Irving Clayton and Derrick Frazier ("Derrick") on two drug transactions that took place at J&J Fish. She testified that Derrick and Clayton dealt with Anthony Williams during those transactions. She did not testify that Plaintiff was involved in those transactions, that she knew who Plaintiff was, or that she had ever heard Plaintiff's name. Steward also testified that she did not accompany Derrick and Clayton on the drug deal that took place on January 29, 1994, and therefore, she has no personal knowledge of what took place that night.

At Steward's deposition 25 years later, defense counsel used leading questions to elicit vague and ambiguous testimony from Steward. Some of this testimony was pure speculation and

1

admittedly not based on Steward's personal knowledge. That testimony is plainly inadmissible under Federal Rule of Evidence 602.

Other testimony elicited from Steward was based on purported statements made by Clayton. Defendant Officers ("Defendants") do not even wrestle with the foundation issue—*i.e.*, these statements are too vague to be admissible. It is not clear what Clayton said, when or to whom he said it or the circumstances surrounding those statements. Those statements cannot be admitted. *See* Mot. at 3, 5 (citing passages of Steward's testimony); Defendants' Response to Plaintiff's Motion *in Limine* No. 5 ("Resp.") at 4 (same).

The hallmark of the hearsay rule is reliability. The rule exists because "untrustworthy evidence should not be presented to the triers of fact." *Chambers v. Mississippi*, 410 U.S. 284, 298 (1973). Therefore, statements lacking indicia of reliability, such as "the witness's being under oath, being available for cross-examination, and being present so that the jury is able to assess demeanor and credibility," should be excluded, unless there is an exception "where reliability concerns are not present." *See Kobsch v. Neal*, 838 F.3d 845, 855 (7th Cir. 2016) (en banc). Moreover, Clayton is deceased and not available for cross-examination. Recognizing the unreliable nature of this testimony, Defendants make several attempts to argue that Clayton's statement is not hearsay. These arguments should be rejected, and this testimony should be barred.

## ARGUMENT

### I. Steward's Speculation that Plaintiff Was Involved in the Murders Should be Barred.

As set forth in Plaintiff's motion, Steward should not be permitted to speculate about whether Plaintiff was involved in the murders because Steward has admitted (and the evidence otherwise establishes) that her belief is not based on her personal knowledge. Accordingly, this testimony is inadmissible under Federal Rule of Evidence 602. *See* Mot. at 2-3. Defendants'

2

Response asserts that they "do not intend to elicit testimony from Ms. Steward regarding who she personally holds accountable for her fiancé's murder." Resp. at 1. Thus, it appears Defendants concede Plaintiff's position is correct.

Defendants go on to note, however, that Steward gave statements to the police and provided names of individuals who may have been involved in the murders. *Id.* Defendants assert that they should be permitted to explore why Steward "identified/did not identify certain individuals to police and the basis for these statements." *Id.* Defendants' position goes too far. Steward's statements to the police are relevant and admissible for the non-hearsay purpose of showing effect on the listener because Plaintiff's malicious prosecution and Fourth Amendment claims require the jury to consider whether Defendants acted reasonably in light of "what Defendant[s] knew and the reasonably trustworthy information Defendant[s] received." *See* Fed. Civ. Jury Instr. of the 7th Cir. § 7.08. But Steward's unstated *basis* for her statements to the police has no bearing on this analysis. All that matters is what Steward told Defendants, not why she said it. *See, e.g.*, *Niebur v. Town of Cicero*, 212 F. Supp. 2d 790, 804 (N.D. Ill. 2002) (where statements were offered for the effect on the listener and not for truth, "the proper subject of cross examination would be the *listeners* … The issue was, 'Did the statement have that effect on them?', and not, 'Was the statement true?'") (emphasis in original). Defendants' attempt to elicit testimony regarding *why* Steward provided (or did not provide) certain names to the police appears to be an attempt to inject Steward's speculation about Plaintiff into the case. This testimony is not probative of any issue in dispute and is not based on Steward's personal knowledge. Accordingly, it should be barred.[1]

---

[1] To the extent Defendants contend that the basis for Steward's identification of certain individuals was relevant to their probable cause determination (*e.g.*, to determine the trustworthiness of the information she provided), that argument only works for the information Steward actually provided to the police. It is

3

**II.     Steward's Testimony That Plaintiff Was Involved in Prior Drug Deals with the Victims Should be Barred.**

As explained in Plaintiff's Motion, Steward should be barred from testifying that Plaintiff participated in prior drug deals with the victims. Not only is her testimony vague at best, but it is based on hearsay rather than her personal knowledge. *See* Mot. at 3-4 (noting that Steward's testimony was based on what "Irving or Derrick would say"). Defendants' Response is telling in its silence. Nowhere do Defendants assert that Steward has personal knowledge of Plaintiff being involved in drug deals with the victims. Resp. at 2-3. Rather, they assert there is proper foundation for Steward's testimony because she testified that she saw "several bald-headed guys" at J&J Fish during a drug deal, so her testimony "left open the possibility that Plaintiff was among them." *Id.* at 2. According to Defendants, this testimony is circumstantial evidence of Plaintiff's identity and his involvement in these drug deals. *Id.* at 3.

This argument is without merit. While Steward certainly could testify regarding her personal knowledge and observations, her observation of "several bald-headed guys" at J&J Fish is not "circumstantial evidence of Plaintiff's identity." *Id.* at 2-3. Contrary to Defendants' assertions, Steward did not "le[ave] open the possibility that Plaintiff was among them." Resp. at 2. Indeed, in the very passage Defendants cite, Steward was asked point blank "did you ever see Eddie Bolden present?" After describing the "bald-headed guys" she *did* see, her answer to the question was "I can't say that. No ma'am." *Id.* Defendants' attempt to circumvent Steward's lack of personal knowledge and argue, through innuendo, that Plaintiff was involved in prior drug deals should be rejected.

---

undisputed that Steward never provided Plaintiff's name to Defendants, so Steward's reasoning for why she "did not identify" Plaintiff, *see* Resp. at 1, could not have had any effect on any listener.

4

Defendants mischaracterize Plaintiff's argument as seeking to exclude Steward's testimony based on "credibility attacks." *Id.* at 2-3. Not so. Plaintiff pointed to Steward's prior statements and testimony (in which she never stated Plaintiff was involved in prior drug deals with the victims) not to show Steward's lack of credibility, but to demonstrate that Steward lacks foundation and personal knowledge to testify that Plaintiff engaged in prior drug transactions with the victims. As explained in Plaintiff's Motion, the State called Steward to testify at Plaintiff's criminal trial that the victims engaged in prior drug deals with Anthony Williams, not with Plaintiff. Mot. at 4. Defendants contend that "[t]he State had no reason to elicit evidence of the victims' familiarity with Plaintiff" and that Plaintiff has engaged in "pure speculation" as to why Steward did not testify to her (non-existent) knowledge of Plaintiff's involvement in prior drug deals. Resp. at 3 & n.2. The idea that Steward knew that Plaintiff engaged in prior drug transactions with the victims and that the State simply made a strategic decision not to elicit that testimony is nonsensical. Not only does Defendants' assertion rely on the State ignoring highly relevant and inculpatory information, but it ignores that the State's argument, based on Steward's statements, was the *exact opposite* of what Defendants propose. The State specifically argued: "The evidence here shows that prior to this night, before this night, Irving Clayton and Derrick Frazier were drug dealing, and they were drug dealing with Anthony Williams. **Not with Edward Bolden**, but with Anthony Williams…." *See* Mot. Ex. B, at 170:9-12 (emphasis added). The State argued that "on the night this happened," Anthony Williams "introduce[d]" Plaintiff to the victims as part of a "set up." *Id.* at 170:13-17.

It is clear that Steward's vague statements concerning Plaintiff's involvement in prior drug transactions were made only in response to leading questions from defense counsel and were based entirely on hearsay. Under these circumstances, such testimony is plainly inadmissible for all

5

purposes. Steward's testimony that she saw "bald-headed guys" in J&J Fish is not "circumstantial evidence of Plaintiff's identity," and Defendants should not be permitted to use this testimony as a vehicle to sidestep Steward's lack of personal knowledge regarding Plaintiff.

**III.     Steward's Testimony That the Victims Knew Plaintiff Should Be Barred.**

As discussed in Plaintiff's motion, Defendants should be barred from using Steward's vague testimony that she previously heard her fiancé use Plaintiff's name to suggest that Plaintiff and the victims knew one another. Mot. at 4-6. Defendants assert that this statement is not hearsay because it is not being offered for the truth of the matter asserted. They apparently agree with Plaintiff that the statement is being offered to show that Plaintiff knew the victims, but they contend that the truth of the matter asserted is "that Plaintiff would actually be present in the restaurant on any particular occasion." Resp. at 4. They contend that the mere fact the victim allegedly uttered Plaintiff's name is circumstantial evidence that the victim and Plaintiff knew each other. Resp. at 4-5.

But the mere fact that Plaintiff's name was allegedly uttered, in isolation, is not relevant. *See* Mot. at 5-6. Its only possible relevance comes from the context of Clayton's purported statements. In this case, the context *is* the truth of the matter asserted—*i.e.*, that Clayton knew Plaintiff from prior meetings at J&J Fish and therefore trusted him enough to let him into the backseat of his car. Defendants cannot separate the "utterance" of Plaintiff's name—which is not independently probative of anything—from the fact it is being offered to prove. The relevance is not that the statement was made. The relevance is, as Defendants admit, that the statement suggests "that the victim and Plaintiff knew each other." Resp. at 5.

Defendants' cited case law demonstrates this disconnect and is readily distinguishable from the case at bar. In *Limehouse*, a DEA agent visited the residence of the defendant, Sabrina Limehouse, where a man told him that "Sabrina White" was present at the residence and that he

6

would go get her. *United States v. Limehouse*, 950 F.2d 501, 503 (7th Cir. 1991). The court held that this statement was not hearsay because it was not being offered for the truth of the matter asserted—to show that a person named Sabrina White was present in the home—it was being offered "to show that Sabrina Limehouse had *posed* as Sabrina White to receive drugs." *Id.* Contrary to Defendants' assertion, it was not the mere fact that the declarant uttered the defendant's name that gave the statement a valid, non-hearsay purpose—it was the fact that the name uttered was an alias used by the defendant to receive drugs in the residence at issue. *Herrera-Medina* is even further off base. In that case, the court admitted the out-of-court statements of the defendant, which consisted of recorded conversations between the defendant and his cousin—a drug kingpin—in which the defendant recounted "war stories" of his drug smuggling activities. *United States v. Herrera-Medina*, 853 F.2d 564, 565-66 (7th Cir. 1988). These statements were relevant not because any particular word spoken proved a "relationship," as Defendants suggest. Rather, the fact that the defendant was willing to discuss illegal activities with the kingpin showed that the defendant "was an intimate of the drug kingpin, that he was familiar with the drug trade, and that the kingpin trusted him," which made it more likely that the defendant was a participant in the criminal enterprise, and did not have an "innocent familial association" with his cousin, as the defendant argued. *Id.* at 566.

      Defendants' reliance on out-of-circuit cases is similarly misplaced. In *Paradies*, a witness testified at trial that he had a familiar relationship and regular breakfast meetings with the defendant. *United States v. Paradies*, 98 F.3d 1266, 1290-91 & n.41 (11th Cir. 1996). After defense counsel "conducted an aggressive cross-examination" on these topics, the prosecution introduced tape-recordings of the witness's breakfast meetings with the defendant. *Id.* These recordings were not offered for the truth of any of the statements recorded, but rather to rehabilitate

the witness's testimony that he attended these regular breakfast meetings with the defendant. *Id.* This is a far cry from the situation here. The out-of-court statements at issue here are not made by a testifying witness and would not serve to rehabilitate any witness's testimony. They would be offered solely to establish the truth of Clayton's purported statement. *Hicks* is also inapposite. In that case, the out-of-court statement was made in an effort to carry out an extortion plot, and thus, it was a "verbal act." *United States v. Hicks*, 848 F.2d 1, 3 (1st Cir. 1988). Verbal acts are statements that "carry legal significance independent of the assertive content of the words used." *United States v. Moreno*, 233 F.3d 937, 940 (7th Cir. 2000) (noting that the classic examples are "offer and acceptance"). Clayton's hearsay statement is not a verbal act, and thus, *Hicks* is inapplicable to the case at bar.

Defendants make half-hearted attempts to argue that additional non-hearsay purposes apply to Clayton's statement, but these arguments only reinforce that Defendants are attempting to admit Clayton's hearsay for the truth of the matter asserted. They contend that the statements are relevant to show the victims' belief that they were "authorized" to deal with Plaintiff in Anthony Williams' absence. Resp. at 5. Again, this purported relevance assumes the truth of the matter asserted—that Clayton knew Plaintiff through prior drug transactions at J&J Fish. The mere utterance of the name "Bolden" says nothing about authorization unless it is being offered to show that Plaintiff was in fact involved in prior drug transactions with the victims at J&J Fish.

Defendants also argue that Clayton's purported utterance of the name "Bolden" is relevant to show the effect on the listener—Derrick Frazier—in that Derrick "expected he might be dealing with Plaintiff, and was reassured by his good friend [Clayton] that this arrangement was acceptable." Resp. at 5-6. First of all, there is no evidence whatsoever that Derrick was a "listener" of Clayton's purported statement. But in any event, this is the same argument—the mere utterance

8

of the name "Bolden" does not have any relevance unless the context in which Derrick allegedly heard the statement is explained. Because that context is the truth of the matter asserted, admitting this evidence would improperly allow Defendants to tell the jury that the victims knew and dealt with Plaintiff under the guise of a non-hearsay purpose.

Finally, Defendants *completely ignore* Plaintiff's argument that Steward's testimony, even if marginally relevant, should be excluded under Rule 403. There is good reason for Defendants to disregard this argument. Steward's testimony is, at best, ambiguous. It was elicited through leading questioning 25 years after she originally testified. And it is based on the vague statement of a deceased witness that Plaintiff will have no opportunity to cross-examine. This is the quintessential example of the unreliable evidence that the hearsay rules are designed to exclude. What's more, this evidence, which was never admitted at Plaintiff's criminal trial and in fact was completely contrary to the State's theory of the case, will be used to bolster Defendants' weak arguments that Plaintiff committed these crimes, as they attempt to re-try him for murder in a case that should be focused on Defendants' conduct. The probative value of Steward's testimony is substantially outweighed by its prejudicial effect. This unrebutted argument is reason alone to grant Plaintiff's motion.

## CONCLUSION

For the foregoing reasons, Plaintiff Eddie L. Bolden respectfully requests that the Court grant Plaintiff's Motion *in Limine* No. 5 to Exclude Cynthia Steward's Testimony Based on Speculation and Hearsay.

Dated: November 22, 2019                  Respectfully Submitted,

                                                        */s/ Valarie Hays*
                                                        Ronald S. Safer

Valarie Hays
Eli J. Litoff
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison Street, Suite 2900
Chicago, Illinois 60602
(312) 471-8700
rsafer@rshc-law.com
vhays@rshc-law.com
elitoff@rshc-law.com

Sandra L. Musumeci (*pro hac vice*)
RILEY SAFER HOLMES & CANCILA LLP
1330 Avenue of the Americas, 6th Floor
New York, New York 10019
(212) 660-1000
smusumeci@rshc-law.com

*Attorneys for Eddie L. Bolden*

## CERTIFICATE OF SERVICE

    I hereby certify that on November 22, 2019, I caused the foregoing document to be electronically filed using the CM/ECF system, which will send notice of this filing to all counsel of record.

                                      */s/ Valarie Hays*
                                      Valarie Hays