IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EDDIE L. BOLDEN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17 C 00417 |
| | ) | |
| vs. | ) | Honorable Steven C. Seeger |
| | ) | |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF
MOTION *IN LIMINE* NO. 6 TO BAR REFERENCE TO CERTAIN STATEMENTS
MADE BY ANTHONY WILLIAMS TO EDDIE BOLDEN**

Plaintiff Eddie L. Bolden, by his undersigned counsel, respectfully submits this Reply in Support of Motion *in Limine* No. 6 to Bar Reference to Certain Statements Made by Anthony Williams to Eddie Bolden (Dkt. 299) ("Mot.").

Plaintiff seeks to exclude evidence that the day before the Frazier / Clayton shootings, Anthony Williams offered Plaintiff $20,000 to lure two individuals – completely unrelated to the murder victims here – out of a party so that someone else could kill them. Plaintiff refused the offer, and there is no evidence to the contrary.[1] Defendant Officers ("Defendants") confirm that they intend to offer evidence of Williams' rebuffed solicitation to Plaintiff at the trial of Plaintiff's civil rights claims, hanging their theory of admissibility on a convoluted chain of speculation to argue that the evidence establishes Plaintiff's motive to commit the Frazier / Clayton shootings. Defendants' reasoning is far-fetched, belied by the record, and not supported by common sense. But most importantly, it does not provide a basis for relevancy. Even if some modicum of relevance was discerned, that relevance is greatly outweighed by the extreme unfair prejudice and

---

[1] The only evidence of this conversation comes from Plaintiff. There is no independent evidence other than his statements about this conversation.

1

potential confusion that would result from the jury hearing that Williams offered Plaintiff money to help participate in a murder plot. Plaintiff's Motion *in Limine* should be granted and the evidence should be excluded.

I. **Williams' Statements to Plaintiff Are Not Relevant to the Issues of this Case.**

Defendants' opposition brief makes clear that their theory of relevance is built on speculation. Defendants argue that Plaintiff's conversation with Williams somehow made it more likely he would "agree to Ant's next request, that he murder Derrick Frazier and Ledell Clayton." Defendants' Response to Plaintiff's Motion *in Limine* No. 6 ("Resp.") at 3. Faulty logic aside, the premise of Defendants' argument is flawed; there is zero evidence – none – that Williams requested that Plaintiff murder Derrick Frazier or Ledell Clayton. In all contexts, "the idea that speculation can be employed as a substitute for proof" "has long [been] reject[ed]." *United States v. Landry*, 257 F.2d 425, 431 (7th Cir. 1958), *accord In re Cohen*, 507 F.3d 610, 614 (7th Cir. 2007) ("speculation is not evidence"); *Lauth v. McCollum*, 424 F.3d 631, 634 (7th Cir. 2005) ("hypothesis is not proof"). "The trouble with absence of evidence is that it is consistent with *any* hypothesis." *United States v. Holland*, 445 F.2d 701, 703 (D.C. Cir. 1971) (emphasis in original). Thus, Defendants seek to admit the explosive evidence in question to explain something that never happened. This Court need go no further to find the proffered evidence inadmissible.

Defendants' conclusion is equally as flawed as the premise. Defendants assert, without any evidence, that the "probable effect of Ant's statement on Plaintiff was to make him aware that Ant expected his loyalty, and that disappointing Ant would have dire consequences." Resp. at 3. That conclusion ignores what happened. Plaintiff disappointed Ant. Williams requested that Plaintiff lure two people out of a party so he could murder them. Plaintiff refused. It defies all reason to believe that this exchange made it more likely that Plaintiff would agree to Williams' next request – a request that never came. The *evidence* proves Defendants' conjecture wrong. Far

2

from exhibiting the fear that Defendants imagine Plaintiff felt about rebuffing Williams, after Plaintiff refused Williams' request, he sought out Williams to talk to him and dissuade him from violence when Plaintiff heard the next day that Williams was still talking about killing people. Plaintiff's state of mind was not one of fear that he was putting his own well-being at risk, but rather, one of resolve to confront Williams and talk him out of rash violent behavior.[2]

Defendants repeat this illogic when they try in vain to argue that this exchange somehow proves Plaintiff's motive to commit the murders. Defendants assert "having previously rebuffed Ant's request in the Hollis and Ellis plot, he would risk his own life if he rebuffed Ant again." Resp. at 5. Without being flip, Defendants offer no evidence of this "one rebuff is okay, two rebuffs are fatal" principle. The exchange in question demonstrates, if anything, that Plaintiff felt free to say no to Williams. It does nothing to establish motive.

Defendants' desperation to admit this explosive evidence regardless of its merit is highlighted by their assertion that Plaintiff's interaction with Williams on January 28, 1994 is relevant to Defendants' probable cause to arrest Plaintiff for the unrelated January 29, 1994 shootings. Resp. at 2. Defendants did not know that Williams had invited Plaintiff to participate in the plot to kill Hollis and Ellis (which Plaintiff refused to do) until discovery in this litigation in 2018. It is well-established that probable cause is determined by the information known to the arresting officers at the time. *See Holmes v. Village of Hoffman Estates*, 511 F.3d 673, 679 (7th Cir. 2007) (holding probable cause exists "when the facts and circumstances *that are known to [an*

---

[2] Defendants attempt to support their speculative fear-as-motive theory by citing Plaintiff's reticence to tell police, prosecutors, and the jury who actually shot Derrick Frazier, Ledell Clayton, and Clifford Frazier because he was afraid for the safety of himself and his family while he was incarcerated. Resp. at 5. The two scenarios are not remotely analogous. Fear of repercussions for violating the street code not to "snitch" is completely different from hypothesizing that fear of repercussions would lead someone to affirmatively commit a double homicide. Furthermore, while Plaintiff testified about his fear while incarcerated, Defendants' theory about Plaintiff's "motive" to commit the Frazier / Clayton murders is pure conjecture.

3

*officer]* reasonably support a belief that the individual has committed, is committing, or is about to commit a crime.") (emphasis added).  Because Defendants did not know in 1994 that Williams tried to involve Plaintiff in a different double murder, Defendants cannot now argue that this information supports their finding of probable cause when they arrested Plaintiff in 1994.  Given that Plaintiff refused to participate in Williams' proposed plot involving Hollis and Ellis, this evidence also would not have supported Defendants' finding of probable cause to arrest Plaintiff in 1994 even if Defendants had known about it at the time.  In fact, given that Williams himself was never arrested or charged with the Frazier / Clayton shootings (or indeed, even substantively interrogated about them), there is nothing about Plaintiff's relationship with Williams in and of itself that can credibly be said to bolster Defendants' probable cause to arrest Plaintiff.

      Next, Defendants argue that Williams' offer to Plaintiff is relevant because it demonstrates the nature of his relationship with Williams.  Although there is some evidence that Williams had a hit out on the murder victims, there is no evidence relating that to Plaintiff.  As stated above, there is no evidence that Williams asked Plaintiff to murder the victims, and thus, the premise of Defendants' argument fails again.  If there were any relevance to Plaintiffs' relationship with Anthony Williams, there are far more probative and less unfairly prejudicial ways to prove it. Defendants' attempts to link Plaintiff to Williams specifically with this offer to bring about the demise of two people – for which Plaintiff was merely a passive recipient and which he refused – is an improper attempt to establish guilt by mere association.  Furthermore, there is already plenty of other evidence – evidence which is not unduly prejudicial – evincing the relationship between Plaintiff and Anthony Williams.  *See, e.g.*, Plaintiff's Reply in Support of Motion *in Limine* No. 2, at 5-6.

Defendants have failed to identify a valid basis for relevance of this highly prejudicial and patently tangential evidence,[3] and accordingly, Plaintiff's Motion *in Limine* should be granted.

II. **Williams' Statements to Plaintiff Are Unfairly Prejudicial.**

Defendants do not address the unfairly prejudicial effect that admission of Williams' January 28, 1994 offer to Plaintiff would have on Plaintiff. The idea that someone would give or accept $20,000 to lure another person to a violent death shocks the conscience and is by its very nature inflammatory. It would be grossly unfair and unwarranted to allow that prejudice to flow toward Plaintiff. Plaintiff was a merely a passive recipient of Williams' offer, and Plaintiff rejected the offer and refused to participate in Williams' proposed plot. When weighing that severe and unfair prejudice against the probative value of the evidence – which is minimal to non-existent – the balance leans overwhelmingly in favor of preclusion. *See* Fed. R. Evid. 403.

III. **Williams' Statements to Plaintiff Are Inadmissible Hearsay.**

Finally, Williams' January 28, 1994 statements are not relevant to the issues in this litigation, and they are therefore inadmissible, regardless of whether they are offered as hearsay or fall within an exception to the hearsay rules. It bears noting, however, that Defendants' hearsay analysis of Williams' statement is erroneous.

First, the argument that the statements are non-hearsay offered to show their effect on Plaintiff is specious. As noted, Defendants' hypothesis about the supposed effect that Williams' offer had on Plaintiff is merely an invitation to engage in speculation. The uncontested record evidence is that Plaintiff rebuffed Williams' offer and later, when he heard that Williams was discussing other violent plans, he went to find Williams to try to calm him down and ask him to

---

[3] Defendants also do not contest Plaintiff's observation that Williams' statement is not admissible under Rule 404(b), because Plaintiff was the recipient of the request and not the actor who actually made the statement. Mot. at 2-3.

act more sensibly. Additionally, Williams' statement to Plaintiff is not a necessary part of the narrative to explain Plaintiff's further actions. Plaintiff went to J&J Fish on January 29, 1994 to speak with Williams about statements he was making *on that day*, as reported to him by Maurice Stewart, about killing people; the fact that Williams had asked Plaintiff a day earlier to lure Hollis and Ellis out of a party is not a necessary part of that narrative. Defendants do seek to offer Williams' statement for its truth – they want the jury to believe that Williams actually intended to kill Hollis and Ellis and wanted Plaintiff to help – and so it is being offered as hearsay. *See* Fed. R. Evid. 801(c).

Williams' offer to Plaintiff also does not fall within the statement against penal interest exception under Fed. R. Evid. 804(b)(3), as Defendants contend. A statement is against penal interest when it is made by a declarant with the expectation that it will be against his penal interest and therefore bears indicia of reliability. *See* Fed. R. Evid. 804(b)(3). The case law in this Circuit is clear that "the statement itself, taken as is, must basically admit to criminal behavior." *United States v. Leahy*, 464 F.3d 773, 798 (7th Cir. 2006) (citing *United States v. Butler*, 71 F.3d 243, 253 (7th Cir. 1995)). Making a statement inviting someone to commit a crime is not an admission of prior criminal behavior, nor does it carry the indicia of reliability that Fed. R. Evid. 804(b)(3) requires.

## CONCLUSION

For the foregoing reasons, Plaintiff Eddie L. Bolden respectfully asks this Court to enter an Order granting his motion *in limine*.

6

Dated: November 22, 2019                    Respectfully Submitted,

*/s/ Valarie Hays*
Ronald S. Safer
Valarie Hays
Eli J. Litoff
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison Street, Suite 2900
Chicago, Illinois 60602
(312) 471-8700
rsafer@rshc-law.com
vhays@rshc-law.com
elitoff@rshc-law.com

Sandra L. Musumeci (*pro hac vice*)
RILEY SAFER HOLMES & CANCILA LLP
1330 Avenue of the Americas, 6th Floor
New York, New York 10019
(212) 660-1000
smusumeci@rshc-law.com

*Attorneys for Eddie L. Bolden*

**CERTIFICATE OF SERVICE**

    I hereby certify that on November 22, 2019, I caused the foregoing document to be electronically filed using the CM/ECF system, which will send notice of this filing to all counsel of record.

                                              */s/ Valarie Hays*
                                              Valarie Hays