IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EDDIE L. BOLDEN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17 C 00417 |
| | ) | |
| vs. | ) | Honorable Steven C. Seeger |
| | ) | |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION *IN LIMINE* NO. 8
TO BAR REFERENCE TO PLAINTIFF'S CRIMINAL TRIAL STRATEGY**

Plaintiff Eddie L. Bolden, by his undersigned counsel, respectfully submits this Reply in Support of his Motion *in Limine* No. 8 to Bar Reference to Plaintiff's Criminal Trial Strategy (Dkt. 301).

Defendant Officers' ("Defendants") Response makes clear that they wish to punish Plaintiff for invoking his Fifth Amendment right at his criminal trial. Defendants invite this Court to be the first court to allow the invocation of the Fifth Amendment in a prior criminal case to be the subject of cross-examination in a subsequent civil case. By doing so, Defendants ask this Court to overturn a bedrock principle of our criminal justice system: a criminal defendant can assert his right to remain silent in his criminal proceeding without fear that this silence will be used against him. This Court should decline that invitation.

**I.  There is No Precedent for Defendants' Proposed Use of Plaintiff's Assertion of His Fifth Amendment Right**

A criminal defendant's right not to testify in his own defense free from any adverse inference is so sacrosanct that the jury is instructed it may not consider it, and the mere mention of the invocation of that right by the prosecution is itself a violation of the constitution. *See Salinas v. Texas*, 570 U.S. 178, 184 (2013) ("[A] criminal defendant has an absolute right not to testify")

1

(internal quotation marks omitted)); *United States v. Hasting*, 461 U.S. 499, 507 (1983) (recognizing that under the Fifth Amendment guarantee against self-incrimination, "comment on the failure to testify [is] an unconstitutional burden on the basic right"); *United States v. Goodapple*, 958 F.2d 1402, 1405 (7th Cir. 1992) ("A direct comment on the defendant's failure to testify is clearly a fifth amendment violation."). As Justice Black stated in his concurrence in *Grunewald v. United States,* 353 U.S. 391, 425–26 (1957) (Black, J., concurring), "the value of constitutional privileges is largely destroyed if persons can be penalized for relying on them." Yet that is precisely what Defendants seek to do: impeach Plaintiff with the invocation of his Fifth Amendment right at trial.

Defendants cite no precedent where a court allowed a witness in a civil lawsuit to be impeached with his assertion of the Fifth Amendment right not to testify at his criminal trial. They sweep aside the court's opinion in *Patrick v. City of Chicago,* 314 F.Supp.3d 970 (N.D. Ill. 2017), by stating it is "non-precedential" and "mis-interpreted the law." Defendants' Response to Plaintiff's Motion *in Limine* No. 8 ("Resp.") at 3. But they do not address the carefully explained reasoning of the court or its in-depth analysis of the relevant Supreme Court precedent. *Patrick* was correctly decided, and its reasoning compels the grant of this Motion.

Defendants cite to several cases that have no application here. They cite cases where the defendant took the stand and selectively answered questions, invoking the Fifth Amendment in an attempt not to answer other questions. *See* Resp. at 2 (citing *Caminetti v. United States,* 242 U.S. 470 (1917)). They cite cases involving the prosecution's use of silence before a defendant's Fifth Amendment right had even attached. *See id.* at 3–6 (citing *Jenkins v. Anderson,* 447 U.S. 231 (1980) (holding that prosecutor could question defendant about his pre-arrest silence) and *Brecht v. Abrahamson*, 507 U.S. 619, 628 (1993) (holding that defendant could be impeached with his

2

failure to tell anyone his story before he was arrested and given a *Miranda* warning—in other words, before his Fifth Amendment rights attached)). Indeed, in *Jenkins*, the Court distinguished the defendant's silence after his arrest, when his Fifth Amendment rights attached, from pre-arrest silence. 447 U.S. at 240. In the former situation, after arrest, the Court held that when the State

> inform[s] a person that he has the right to remain silent and assure[s] him, at least implicitly, that his subsequent decision to remain silent cannot be used against him . . . it does not comport with due process to permit the prosecution during the trial to call attention to his silence at the time of arrest and to insist that because he did not speak about the facts of the case at that time, as he was told he need not do, an unfavorable inference might be drawn as to the truth of his trial testimony.

*Id.* at 239–40 (citing *Doyle v. Ohio*, 426 U.S. 610, 619 (1976)). The Court juxtaposed such a situation with the defendant's pre-arrest silence where "no governmental action induced petitioner to remain silent before arrest." *Id.* at 240. In the instant case, *Doyle*—not *Jenkins*—is applicable; there is no question that Plaintiff's Fifth Amendment rights attached at his trial. Defendants also cite to a civil case where the jury was instructed that a witness's admission in an immunity letter that he had self-incriminating information could lead to an adverse inference instruction. *See* Resp. at 8 (citing *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.,* 831 F.3d 815, 835 (7th Cir. 2016)). Unlike in the instant case, the court in *Empress Casino* did not address a situation where a defendant stood on his Fifth Amendment right not to testify at his own criminal trial. *Empress Casino* has no applicability to this case.

The Court's decision in *Raffel v. United States*, 271 U.S. 494, 499 (1926), another case cited by Defendants, *see* Resp. at 2–3, does not support a different result. That case involved the unique situation where a defendant did not testify at his initial trial, which resulted in a mistrial, and then subsequently decided to testify at the re-trial. As the court in *Patrick* described at length, the Supreme Court has limited and eroded the holding in *Raffel* in the almost one hundred years

3

since it was written. Indeed, Justice Black, writing the concurrence for four Justices in *Grunewald*, quoted above, stated that to the extent *Raffel* stood for a proposition that a criminal defendant could be penalized for the assertion of a constitutional right (and he did not find that *Raffel* so held), it should be "explicitly overruled." *Grunewald*, 353 U.S. at 426. In any event, the unique circumstance presented in *Raffel* is not present in the instant case.

This Court should follow in the well-reasoned footsteps of the *Patrick* court and hold that Defendants' cross-examination of Plaintiff regarding his invocation of his Fifth Amendment right not to testify at his prior trial would run afoul of his constitutional rights. This Court need go no further to grant Plaintiff's Motion. There are, however, other grounds that support the instant Motion.

**II.    Plaintiff's Silence At His Criminal Trial is Irrelevant and Cross-Examination Regarding It Would Be Unfairly Prejudicial**

Defendants fail to present any grounds for the proposition that Plaintiff's silence is probative of guilt and has any relevance. Their statement that because the jury in this case will have to analyze the cause of Plaintiff's conviction everything about the prior trial is relevant, *see* Resp. at 10, is supported by neither logic nor authority.

The Supreme Court has held that *Raffel* did not support a conclusion that prior silence was always impeaching. *See Stewart v. United States,* 366 U.S. 1, 5 (1961) ("[I]n no case has this Court intimated that there is such a basic inconsistency between silence at one trial and taking the stand at a subsequent trial that the fact of prior silence can be used to impeach any testimony which a defendant elects to give at a later trial."). Thus, unless there is some circumstance that makes relevant the witness' prior silence, it proves nothing. Defendants point to no circumstance in the instant case that makes his decision not to testify relevant, nor can they.

4

Moreover, Plaintiff's decision not to testify cannot be any part of the cause of his conviction because the dictates of the Fifth Amendment require the jury not to infer guilt from that silence. *See Ford v. Wilson*, 747 F.3d 944, 950 (7th Cir. 2014) (holding that the Fifth Amendment forbids the prosecution from commenting or the court from instructing the jury that an accused's silence is evidence of guilt) (citing *Griffin v. California*, 380 U.S. 609 (1965)). Defendants do not and cannot dispute that at Plaintiff's criminal trial, the prosecution had the burden of proving him guilty beyond a reasonable doubt. He had no obligation to present evidence of any kind, either with respect to his own testimony or to establish Roderick Stewart's culpability. Defendants also offer no explanation as to how Plaintiff's criminal trial strategy is relevant to the instant case. Accordingly, Defendants have not established any legitimate reason why the jury needs to know that Plaintiff did not testify at his criminal trial.

In both *Grunewald* and *United States v. Hale*, 422 U.S. 171 (1975), the Supreme Court found that invocations of the Fifth Amendment rights proved nothing. The *Grunewald* Court found that the defendant's decision not to testify before the grand jury was irrelevant and not proper impeachment when he testified at trial; the Court unanimously reversed defendant's conviction. 353 U.S. at 423. The Court noted that the defendant had insisted he was innocent prior to the grand jury proceedings, *id.* at 417, as in this case where Plaintiff has maintained his innocence from the first day he spoke to the police until today—over two and a half decades later. In *Hale*, the Court supported the reversal of a conviction because the defendant was questioned about his decision not to speak with the police and explain his innocence to the police during interrogation. 422 U.S. at 174-75.

Defendants attempt to avoid the force of these cases by noting that the silence in those cases was not at a criminal trial but rather during pre-trial proceedings. *See* Resp. at 4–6.

Defendants miss the point. As the Court found in *Stewart*, *Raffel* does not stand for the proposition that silence at one trial necessarily impeaches testimony at the next trial. 366 U.S. at 5. The forum is not dispositive. The issue is whether there is some circumstance here that makes Plaintiff's invocation of the right to remain silent at his criminal trial pursuant to the Fifth Amendment inculpatory. Defendants point to no such circumstance, and the cases cited above demonstrate that their failure requires the jury not to view the invocation of the Fifth Amendment right as inculpatory.

Other cases where a witness' prior silence was found relevant stand in stark contrast to the instant case and are instructive. For example, in a case relied upon by Defendants discussed briefly above, *Empress Casino*, a witness who initially invoked his Fifth Amendment right to silence later agreed to testify after receiving a grant of immunity. 831 F.3d at 834–35. The Seventh Circuit found relevant the decision not to testify until immunity was granted because the immunity letter stated, "Your attorney has represented that [you have] information [that] may tend to incriminate you." *Id.* at 834. Unlike in *Empress*, Defendants cannot point to any admission by Plaintiff as to incriminating information against him. Similarly, in another case relied upon by Defendants, *Jenkins*, the "silence" that the government used as impeachment evidence was the defendant's pre-arrest conduct—or, more accurately, his lack of conduct. 447 U.S. at 233. The government asked questions such as "[w]hen was the first time that you reported the things that you have told us in Court today to anybody," "who did you report it to," and "[d]id you ever go to a Police Officer or to anyone else?" *Id.*; *see also Brecht*, 507 at 628 (permitting government to impeach defendant where his prior "silence" was his decision not to provide potentially exculpatory information to the police until after he was read his *Miranda* rights at his arraignment); *United States ex rel. Saulsbury v. Greer*, 702 F.2d 651, 655 (7th Cir. 1983) ("Clearly, the state can cross-examine and

6

comment when a defendant, prior to his arrest, ***did not come forward*** with the exculpatory story of his trial testimony when he had both the opportunity and good reason to do so.") (emphasis added). By contrast here, Defendants admit they wish to confront Plaintiff not with his pre-arrest conduct but rather his decision not to testify at trial.

*Patrick* is directly on point. The court found that there was no basis for a conclusion that the witness's decision not to testify at his prior trial was relevant or proper impeachment: "He simply chose not to testify. His silence, moreover, as understood within the unique facts of this case, does not suggest that his present decision to testify is inconsistent or less credible." 314 F.Supp.3d at 974. This precise reasoning applies in the instant case. But *Patrick* presented a more difficult situation—one not present in this case. Plaintiff's counsel in *Patrick* told the jury that this was plaintiff's first opportunity to tell his side of the story to a jury of his peers and that he had been waiting since the day of his arrest to tell his story. *Id.* at 971-72. That statement injected the relevance of Patrick's silence at his criminal trial into his civil case, and defense counsel responded in its opening statement. Notwithstanding this critical exchange, the court found that as long as such a statement was not repeated, Patrick could not be impeached with his decision not to testify at his prior trial. *Id.* at 975.

Finally, Plaintiff's trial counsel who advised him concerning his right to testify has been deemed ineffective. Defendants point out that the state court finding pertained to ineffectiveness with regard to calling alibi witnesses. *See* Resp. at 10, n.1. That was the ground Plaintiff pursued in the post-conviction proceeding because a decision not to testify does not support post-conviction relief, whereas the failure to call alibi witnesses does support such relief. In any event, it is reasonable to infer that counsel found unconstitutionally deficient in one area was similarly

deficient in other critical areas. This is yet another factor that weighs in favor of protecting Plaintiff's decision to invoke his Fifth Amendment right.

### III. Delving into Plaintiff's Criminal Trial Strategy Will Confuse the Jury

Defendants should not be permitted to introduce this evidence because it will confuse the jury by creating a "trial within a trial" about the effectiveness of Plaintiff's trial strategy. Despite Defendants' characterization, Plaintiff's presentation of this issue is fully developed. In his motion *in limine*, Plaintiff relied on three cases supporting his position: *Sims v. Mulcahy*, 902 F.2d 524 (7th Cir. 1990), *Jones v. Hamelman*, 869 F.2d 1023 (7th Cir. 1989), and *Montgomery v. Chicago*, No. 86 C 3872, 1993 WL 98213 (N.D. Ill. Apr. 1, 1993). (Plaintiff's Motion *in Limine* No. 8 to Bar Reference to Plaintiff's Criminal Trial Strategy (Mot.), Dkt. 301, at 3.) Defendants contend that *Sims* and *Jones* are not instructive because they dealt with the admissibility of "other acts" evidence pursuant to Federal Rule of Evidence 404(b). *See* Resp. at 9. While it is correct that the courts in both *Sims* and *Jones* conducted Rule 404(b) analyses elsewhere in the opinions, the "potential for satellite litigation" language that Plaintiff quoted from *Sims* and the "trial within a trial" language from *Jones* originated from the courts' Rule 403 analyses, which this Court too must conduct in ruling on Plaintiff's motion *in limine*. *See Sims*, 902 F.2d at 531; *Jones*, 869 F.2d at 1027. Defendants also assert that this Court should disregard *Montgomery* because the case involved a claim for product liability rather than wrongful conviction. Resp. at 9. But they fail to explain why this difference is significant enough to render *Montgomery* inapplicable, nor do they cite any authority for their supposition that Plaintiff is restricted to citing opinions in wrongful conviction cases. As the *Jones*, *Sims*, and *Montgomery* courts held, if the introduction of certain evidence will waste time and confuse the issues without providing much probative value in return, it is proper for the court to issue an order *in limine*. Here, as explained above, Plaintiff's decision not to testify at his criminal trial or implicate Roderick Stewart is not probative of his guilt or the

8

underlying cause of his conviction. Therefore, introducing such evidence serves no other function than to confuse and distract the jury.

## CONCLUSION

For the foregoing reasons, Plaintiff Eddie L. Bolden respectfully asks this Court to enter an Order granting his motion *in limine*.

Dated: November 22, 2019

Respectfully Submitted,

*/s/ Valarie Hays*
Ronald S. Safer
Valarie Hays
Eli J. Litoff
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison Street, Suite 2900
Chicago, Illinois 60602
(312) 471-8700
rsafer@rshc-law.com
vhays@rshc-law.com
elitoff@rshc-law.com

Sandra L. Musumeci (*pro hac vice*)
RILEY SAFER HOLMES & CANCILA LLP
1330 Avenue of the Americas, 6th Floor
New York, New York 10019
(212) 660-1000
smusumeci@rshc-law.com

*Attorneys for Eddie L. Bolden*

## CERTIFICATE OF SERVICE

I hereby certify that on November 22, 2019, I caused the foregoing document to be electronically filed using the CM/ECF system, which will send notice of this filing to all counsel of record.

*/s/ Valarie Hays*
Valarie Hays