**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| EDDIE L. BOLDEN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17 C 00417 |
| | ) | |
| vs. | ) | Honorable Steven C. Seeger |
| | ) | |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION *IN LIMINE* NO. 11**
**TO BAR REFERENCE TO MR. BOLDEN'S SCREENPLAY**

Plaintiff Eddie L. Bolden, by his undersigned counsel, respectfully submits this Reply in Support of his Motion *in Limine* No. 11 to Bar Reference to Mr. Bolden's Screenplay (Dkt. 304).

Defendant Officers' ("Defendants") Response makes clear the improper purpose for which they seek to admit Plaintiff's screenplay—a *fictionalized* version of events. For more than two and a half decades, Plaintiff has maintained his innocence and related a consistent narrative of what he saw, heard and did on the night of the murders. Plaintiff has been examined at great length concerning those events. Plaintiff will testify about those experiences at trial. Rather than address the competent evidence about what happened that night, Defendants seek to introduce a fictionalized screenplay loosely based on what Plaintiff experienced and what he read in police reports and transcripts as an inconsistent statement. Defendants cannot lay the foundational predicate for this impeachment. The screenplay is not a statement of what happened but rather a fictionalized account that includes intentional inaccuracies for dramatic purposes. Further, it was based not only on what Plaintiff saw, but also what he read in police reports and transcripts. As such, it is not a prior inconsistent statement because it is not intended to be a statement of what actually happened. For the same reason, even if an adequate foundation could be laid, this work

1

of fiction has no relevance. Even if it had any relevance, that probative value would be dwarfed by unfair prejudice and potential for confusion. A jury trying to digest an already complicated set of events would have to sort out which events in the screenplay are attempting to describe what happened and which are fictionalized. The jury would further have to sort out which events are described from Plaintiff's observations and which are recounted from police reports or other testimony (inadmissible sources of information). This confusion about critical issues in the case would be unfairly prejudicial and should be avoided by excluding the screenplay.

I.    **Defendants Cannot Offer the Screenplay as Plaintiff's Admissions or Inconsistent Statements.**

Defendants seek to admit Plaintiff's screenplay because it "contains Plaintiff's admissions and/or inconsistent statements regarding the events in question." Defendants' Response to Plaintiff's Motion *in Limine* No. 11 ("Resp.") at 2. To characterize the fictional screenplay in this manner twists the definition of "statement" under the Federal Rules of Evidence: "a person's oral assertion, written assertion, or nonverbal conduct, *if the person intended it as an assertion*." Fed. R. Evid. 801(a) (emphasis added). To be properly considered a statement, a communication must "assert propositions that may be true or false." *Baines v. Walgreen Co.*, 863 F.3d 656, 663 (7th Cir. 2017). Plaintiff obviously did not intend his screenplay as an assertion, and due to its fictional nature, the contents' assertions are not capable of being true or false. For example, given that "AJ's Fish House" is not a real place, the events that take place there in the screenplay cannot be true or false. *See* Mot. Ex. A, at 326:14–24. Similarly, because the character "Antonio" does not actually exist, it cannot be true or false that "Antonio lock[ed] the front door." *Id.* at 336:20–337:3. Those are but two obvious examples. Plaintiff testified at his deposition about other matters that were not intended to depict actual events.

Defendants rely on *United States v. Foster*, 939 F.2d 445, 454 n. 13 (7th Cir. 1991), and *Daniels v. Lewis*, No. C 10-04032, 2013 WL 183968, at *10–12 (N.D. Cal. Jan. 17, 2013), for the proposition that creative works such as rap lyrics may constitute admissions by a party opponent. Resp. at 2–3. Defendants grossly overstate the holding of *Foster*. While the Seventh Circuit acknowledged the ***possibility*** of such an argument, it specifically declined to comment on its viability. *See Foster*, 939 F.2d at 454 n. 13 ("We do not address this scenario . . . in view of our conclusion that the verse was admissible under Rule 404(b)."). The *Foster* court admitted the defendant's rap lyrics for the "limited purpose" of establishing his knowledge of narcotics trafficking and his familiarity with particular drug code words—"not . . . to establish that [defendant] was the character portrayed in the lyrics" or as a prior inconsistent statement. *Id.* at 456. That holding is inapposite here, where Plaintiff's screenplay, first, is not an attempt to describe accurately events he experienced and, second, does not reflect solely his own knowledge but rather is a fictionalized version of his own experiences, Clifford Frazier's ("Clifford") testimony, and information gathered in police reports. *See* Mot. Ex. A, at 329:23–330:1 ("Everything that I've written in this screenplay about what happened that night, I've gotten from statements from Clifford Frazier and police reports."), 335:19–23 (describing portions of screenplay as "a statement of fiction" and "a statement of imagination").

As for *Daniels*, it is correct that the district court permitted the government to offer the defendant's rap lyrics as his admissions. *Daniels*, 2013 WL 183968, at *11. But as Defendants acknowledge, that decision was based on the court's finding that the lyrics were "sufficiently close to the evidence of the crimes that they could be viewed as autobiographical." *Id.* at *10 (internal brackets omitted). Indeed, in the lyrics at issue, the defendant literally described himself

committing the crime in first-person narrative. *Id.* at \*10.[1]  This admission bears no resemblance to Plaintiff's screenplay, which differed from reality for dramatic effect and was based on Clifford's testimony and the police reports. *See* Mot. Ex. A at 327:1–328:21 ("I couldn't write all of what happened, so I know that it was *alleged* [by Clifford] that they left from this restaurant . . . I was going off of the police reports."), 334:15–17 ("Q.  [The screenplay states that] [t]he fat guy fights back and grabs the killer with his empty hand, slamming the killer against the glass window of AJ's . . . . Is that what you observed on January 29th, 1994?  A.  No. That's what Clifford Frazier said he did.").

Finally, Defendants' reference to *United States v. Stuckey*, 253 F. App'x 468, 482 (6th Cir. 2007), is misguided because the court admitted the rap lyrics "to show knowledge, preparation, plan, and arguably modus operandi."  By contrast, Defendants concede in their response that they "are *not* offering testimony about the screenplay to show character, motive or intent."  Resp. at 2 (emphasis added).  Accordingly, none of Defendants' cited cases support their assertion that Plaintiff's screenplay can be admitted as his admissions or inconsistent statements.

## II.  Both *Skinner* and *Hanson* Support Excluding the Screenplay.

Defendants oppose Plaintiff's Motion *in Limine* by criticizing Plaintiff's reliance on two cases of persuasive authority:  *State v. Skinner*, 95 A.3d 236 (N.J. 2014) and *State v. Hanson*, 731 P.2d 1140 (Wash. App. Ct. 1987).  *See* Resp. at 1–2.  Defendants begin by asserting that *Skinner* actually supports the admission of Plaintiff's screenplay because unlike the rap lyrics in *Skinner*, which were unrelated to the charged crime and written long beforehand, Plaintiff's screenplay is

---

[1] *See Daniels*, 2013 WL 183968, at \*10 ("Caught a Nigga at the store that was running his mouth a few months ago.  But now the table's turned, it's him on the other end now.  And me behind the gun.  He saw me, the Nigga tried to run.  Pow one shot was released from my gun.  Now he lay in the street begging for his life.").

about the Frazier / Clayton homicides and written after his conviction. Resp. at 1–2. Defendants'

characterization of *Skinner* is, at best, misleading. The State did not offer the lyrics as proof that

the murder happened as described in the lyrics, but rather, as evidence of motive and intent. *See*

*Skinner*, 95 A.3d at 250. Contrary to Defendants' interpretation, the *Skinner* court's rationale for

excluding the rap lyrics was because "there was no evidence that the crimes and bad acts about

which defendant wrote in rap form were crimes or bad acts that he in fact had committed," and

thus the lyrics could "only be regarded as fictional accounts." *Id.* at 251; *see also id.* at 253

("[E]xtreme caution must be exercised when expressive work is involved, particularly when such

expression involves social commentary, exaggeration, and fictional accounts."). Thus, the *Skinner*

court would have excluded Mr. Bolden's screenplay as merely a fictional account that does not

describe acts that he actually committed. Moreover, Defendants fail to mention that the court in

*Skinner* ultimately decided to exclude the lyrics because their probative value was outweighed by

the prejudicial effect. *See id.* at 251 ("***Most importantly*** . . . the probative value of the lyrics [must]

not be outweighed by their prejudicial effect."). In so holding, the court observed that the lyrics

had little to no probative value as a "form of artistic self-expressive endeavor" and that due to their

graphically violent nature, the lyrics could be viewed by the jury as glorifying violence and death.

*Id.* Like the rap lyrics in *Skinner*, the low to non-existent probative value of Plaintiff's fictional

screenplay does not outweigh the danger that a jury could be turned off by the screenplay's social

commentary about the criminal justice system.

Defendants similarly fail meaningfully to distinguish *Hanson*, another case cited by

Plaintiff in his Motion. Defendants assert that the novel in *Hanson* was dissimilar to the underlying

crime, whereas Plaintiff's screenplay is "so similar to the crime charged that the writings would

become relevant." Resp. at 2. But Defendants ignore that the *Hanson* court expressly

acknowledged the parallels between the defendant's novel and his alleged crime: "The prosecutor asked Hanson about [his] writings 'involving a widower who remarries and then the new wife turns on him and that man becomes violent.' On direct examination, Hanson testified that he was a widower who had remarried, and that he and his second wife had been planning to divorce at the time the crime was committed." *Hanson*, 731 P.2d at 1144, n. 4. Nonetheless, just as in *Skinner*, the *Hanson* court excluded the writings because the government never explained how the defendant's writings were probative, for example as evidence of other crimes, wrongs, or acts or "relevant to the question of identity." *Id.* at 1144, n. 7; *see also id.* at 1144 (concluding that the defendant's writings "were simply not probative"). Defendants have not shown that Plaintiff's screenplay, a *fictional* story based on events that Plaintiff experienced or learned about through police reports, is probative of Plaintiff's conduct. Thus, *Hanson* serves as persuasive authority that this Court should exclude the screenplay.

III. **Plaintiff's Screenplay Should Be Excluded Because Any Probative Value is Substantially Outweighed by the Danger of Unfair Prejudice and Juror Confusion**

Finally, Defendants apparently do not dispute that the screenplay poses a substantial risk of unfair prejudice and juror confusion. For example, at Plaintiff's deposition, Defendants repeatedly asked whether statements in the screenplay were "true" and asked him about fictional characters from the screenplay. *See* Mot. Ex. A, at 325:13–342:10 (asking questions about the "Wilson family" instead of the Williams family and "the fat guy" instead of Clifford). As noted above, if this statement were admitted at trial, the jury would have to discount the events intended to be fiction as well as those drawn from inadmissible sources, e.g., police reports. That will leave them hopelessly confused about critical issues in the case. Plaintiff also explained in his Motion that the screenplay should be excluded because it contains references to Plaintiff's prior conviction. By failing to substantively respond on these points, Defendants have waived and

6

abandoned any counterargument they may have had.  *See Goodpaster v. City of Indianapolis*, 736

F.3d 1060, 1075 (7th Cir. 2013).

## CONCLUSION

For the foregoing reasons, Plaintiff Eddie L. Bolden respectfully asks this Court to enter

an Order granting his Motion *in Limine*.

Dated:  November 22, 2019

Respectfully Submitted,

*/s/ Valarie Hays*
Ronald S. Safer
Valarie Hays
Eli J. Litoff
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison Street, Suite 2900
Chicago, Illinois 60602
(312) 471-8700
rsafer@rshc-law.com
vhays@rshc-law.com
elitoff@rshc-law.com

Sandra L. Musumeci (*pro hac vice*)
RILEY SAFER HOLMES & CANCILA LLP
1330 Avenue of the Americas, 6th Floor
New York, New York 10019
(212) 660-1000
smusumeci@rshc-law.com

*Attorneys for Eddie L. Bolden*

## CERTIFICATE OF SERVICE

I hereby certify that on November 22, 2019, I caused the foregoing document to be electronically filed using the CM/ECF system, which will send notice of this filing to all counsel of record.

/s/ *Valarie Hays*
Valarie Hays