IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EDDIE L. BOLDEN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17 C 00417 |
| | ) | |
| vs. | ) | Honorable Steven Seeger |
| | ) | |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION *IN LIMINE* NO. 7
TO BAR CERTAIN EVIDENCE RELATED TO THE POLICE INVESTIGATION**

Defendants Angelo Pesavento, James Oliver, Edward Siwek, the Estate of George Karl, and the Estate of Michael Kill (collectively "Defendant Officers"), by their attorneys, in support of their Motion in Limine Number 7 to bar certain evidence related to the police investigation, state as follows:

**INTRODUCTION**

Plaintiff's argument makes clear that he intends to argue that he was wronged by the failure of the investigation to uncover facts which were favorable to him. He has no such claim. Plaintiff's argument as to what Defendant Officers should have done in their investigation has no bearing on the issues of probable cause and intent. Facts unknown to Defendant Officers cannot inform the probable cause analysis. Investigation which was not done is not relevant, even if it was intentionally not done. To hold that an intentionally inadequate investigation is an intentional act toward Plaintiff would characterize the investigation as a benefit to Plaintiff, which is contrary to law. Plaintiff had no right to a full investigation, thus he cannot claim that everything that happened in the investigation – whether it was evidence not investigated or improprieties in the investigation – was directed at him. Instead, Plaintiff must establish direct relevance to his

remaining causes of action. He has not done so.

**I. Any evidence or argument that more investigation should have been done is irrelevant and should be barred.**

Plaintiff's response fails to establish the relevance of investigatory lapses to Plaintiff's claims. Fed. R. Evid. 402.

> All evidentiary questions begin with Rule 402, which contains the general principle that "[r]elevant evidence is admissible and "[i]rrelevant evidence is not." Rule 401 defines relevant evidence as that which is both probative (having "any tendency to make a fact more or less probable than it would be without the evidence") and material (the fact must be "of consequence in determining the action").

*United States v. Gomez*, 763 F.3d 845, 853 (7th Cir. 2014). Plaintiff has not identified a material fact which is made more or less probable by the investigatory lapses he alleges. Instead he argues that any departure from standard police investigatory practices is automatically relevant. However, well-established Seventh Circuit precedent is to the contrary. A criminal defendant is not entitled to a perfect investigation. *Nugent v. Hayes*, 88 F. Supp. 2d 862, 868 (N.D. Ill. 2000); *accord Davis v. Owens*, 973 F.2d 574, 577 (7th Cir. 1992) ("inefficient police work does not give rise to a constitutional claim" and officer "was not statutorily or constitutionally obligated to uncover every piece of exculpatory information during his investigation.")

Nothing in Plaintiff's response explains why, under the facts of this case, Defendant Officers were required to conduct further investigation. According to Plaintiff, Defendant Officers should have: (1) reviewed the 911 recording or attempted to obtain the dispatch card; (2) interviewed eyewitnesses known to them; (3) preserved and tested physical evidence; and (4) reported and investigated exculpatory and relevant information.[1] Yet he offers no evidence as to

---

[1] Plaintiff also accuses Defendant Officers of fabricating witness statements and ignoring facts known to them. This conduct is not addressed by the current motion, which seeks to bar investigation which was not done and information which was not known to officers, because it could not be relevant to the probable cause analysis or Defendant Officers' state of mind. The allegation that Defendant Officers fabricated witness statements is barred by the court's summary judgment motion, as addressed in Defendant Officers Motion *in Limine* No. 4. Plaintiff's accusation that Defendant

2

what any of these investigatory steps would have yielded or how these alleged lapses are relevant to the existence of probable cause or Defendant Officers' intent.

### A. Information not known to Defendant Officers is not relevant to probable cause.

The mere fact that investigatory steps were not taken, and thus could not have informed Defendant Officers' knowledge, makes them irrelevant for purposes of probable cause. "The reasonableness of the seizure turns on what the officer knew, not whether he knew the truth or whether he should have known more." *Reynolds v. Jamison*, 488 F.3d 756, 765 (7th Cir. 2007). Plaintiff's response that "[t]he fact that there were various reasonable avenues of investigation Defendants should have pursued but chose not to is highly probative for a probable cause determination" is simply another way of saying that Plaintiff was owed a thorough investigation, which he was not. (Resp. at 13.) "The question is whether [officers] have reasonable grounds on which to act, not whether it was reasonable to conduct a further investigation." *Gramenos v. Jewel Cos.*, 797 F.2d 432, 439 (7th Cir. 1986).

Plaintiff's attempt to derive a general duty to investigate from *Hebron v. Touhy, 18 F.3d 421 (7th Cir. 1994),* ignores that the cited passage is both *dictum* and of limited application. *Askew v. City of Chicago*, 440 F.3d 894, 895 (7th Cir. 2006). Plaintiff cites to *Hebron* for the proposition that an officer must "do more" to investigate a "suspicious" identification. (Resp. at 12.); *Hebron*, 18 F.3d at 422-23. The referenced passage is not the holding of the case, but *dictum* regarding what may not have established probable cause under different circumstances. *Askew*, 440 F.3d at 895; *Hebron*, 18 F.3d at 422-23. In addition, *Hebron* is inapplicable because the stated exception

---

Officers ignored information actually known to them is not addressed by the present motion. Defendant Officers do not seek to bar evidence of their actual knowledge, if such evidence is otherwise relevant and admissible. However, without more information as to what physical evidence, witness statements and evidence implicating other suspects Plaintiff claims were ignored, it is impossible to address relevance at this time. Defendant Officers reserve the right to address the admissibility of allegedly ignored information at a later date.

could apply only "when the police know that the accuser may harbor a grudge against the accused." *Askew*, 440 F.3d at 895; *c.f Spiegel v. Cortese, 196 F.3d 717, 724 (7th Cir. 1999)* (no duty to investigate account of witness involved in "longstanding dispute" with accused); *Gerald M. v. Conneely*, 858 F.2d 378, 381-382 (7th Cir. 1988) (more complete investigation was not required based on suspicion that allegations based on ill will between families).

The *dicta* in *Hebron* does not have the broad application that Plaintiff suggests. "Lesson Number One in the study of law is that general language in an opinion must not be ripped from its context to make a rule far broader than the factual circumstances which called forth the language." *FDIC v. O'Neil,* 809 F.2d 350, 354 (7th Cir.1987). Yet that is exactly what Plaintiff did when he posited that "[w]hen 'information from or about a person claiming to be the victim of crime would lead a reasonable officer to be suspicious, making further investigation prudent . . . the officer must do more.'" (Resp. at 12.) This overbroad statement directly contravenes settled law that police officers have no duty to conduct an investigation to resolve factual inconsistencies or credibility issues, and their failure to do so has no bearing on the probable cause analysis. *See Walker v. Weatherspoon*, 900 F.3d 354, 358 (7th Cir. 2018) ("the police may leave to the judicial process the sorting of truth from fiction."); *Gramenos*, 797 F.2d at 439("it's what the police know, not whether they know the truth, that matters"); *Spiegel*, 196 F.3d at 724 (7th Cir. 1999) ("Nothing suggests that a victim's report must be unfailingly consistent to provide probable cause.") The *Hebron* opinion itself acknowledged this standard, holding "that police officers are entitled to act 'on the basis of observable events,' and that credibility disputes are left for the jury." *Spiegel v. Cortese*, 196 F.3d 717, 725 (7th Cir. 1999) (discussing holding in *Hebron*).

Plaintiff's reliance on *BeVier v. Hucal*, 806 F.2d 123 (7th Cir. 1986), is also unavailing. In *BeVier*, the court held that "[r]easonable avenues of investigation must be pursued especially *when,*

4

*as here, it is unclear whether a crime had even taken place.*" *Id*. at 128 (emphasis added). Plaintiff's response leaves out the reason the investigation was insufficient: the facts known to the officer did not establish that a crime had been committed. (Resp. at 13). In *BeVier*, the court acknowledged that "an officer who has established cause on every element of the crime need not continue investigating to check out leads or test the suspect's claim of innocence," and based its holding on a lack of facts supporting the element of intent. *BeVier*, 806 F.2d at 128. The Seventh Circuit has confirmed that *BeVier* stands for the proposition that further investigation may be required "when it is doubtful that the allegations (even if true) add up to a crime." *Askew*, 440 F.3d at 895. In this case, there is no question that a crime had been committed, thus *BeVier* is inapplicable. *See Pasiewicz v. Lake Cty. Forest Pres. Dist.*, 270 F.3d 520, 525 (7th Cir. 2001) (*BeVier* did not require further investigation where there was no dispute a crime had been committed).

Failing to investigate and potentially uncover information simply cannot be equated with "[a] police officer . . . [closing] her or his eyes to facts." *BeVier*, 806 F.2d at 128. The issue is not whether Defendant Officers "closed their eyes to facts" which were exculpatory, but whether they searched for such facts. This is a key distinction between this case and the district court cases relied on by Plaintiff. In both *Sanders* and *Grayson*, the plaintiff alleged that the police had knowledge of exculpatory facts – a witness had identified another suspect - which was allegedly ignored in the probable cause analysis. *Sanders v. City of Chicago Heights,* No. 13 C 0221, 2016 U.S. Dist. LEXIS 57704, at *32-33 (N.D. Ill. May 2, 2016); *Grayson v. City of Aurora*, 157 F. Supp. 3d 725, 747 (N.D. Ill. 2016). These cases correctly focus on what was known to officers, not what could have been known with more investigation. *See, e.g.*, *Sanders v. City of Chi. Heights*, No. 13 C 0221, 2016 U.S. Dist. LEXIS 57704, at *12 (N.D. Ill. May 2, 2016) (noting

5

plaintiff's withdrawal of "Dr. Gaut's opinion about Defendants' failure to investigate alibi witnesses").

Unlike *Sanders* and *Grayson*, the additional investigation Plaintiff proposes does not relate to any exculpatory fact known to officers. The majority of the investigation proposed suggests that Defendant Officers should have validated Plaintiff's alibi. However, while "[a] police officer may not ignore conclusively established evidence of the existence of an affirmative defense . . . the officer has no duty to investigate the validity of any defense." *Hodgkins v. Peterson*, 355 F.3d 1048, 1061 (7th Cir. 2004) (no duty to investigate validity of teenagers excuse for being out after curfew); compare to *Estate of Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999) (finding no probable cause where officers had "full knowledge of facts and circumstances that conclusively established" defense). Here, Plaintiff is not asserting that Defendant Officers had "conclusively established evidence" of his alibi. To the contrary, he argues that Defendant Officers should have investigated the validity of his alibi, tacitly conceding that more knowledge was required to conclusively establish this defense.

Plaintiff's response identifies no "exculpatory and relevant information"[2] which Defendant Officers allegedly turned a blind eye to. The district court has already determined that Defendant Officers did not have knowledge of facts which would indicate that Clifford's gun, or any other evidence, had actual exculpatory value. (Dkt. 276 at 24). To the contrary, the gun was as likely to be inculpatory as exculpatory. Information that Plaintiff called 911 was not a known exculpatory fact, review of the recording may or may not have supported Plaintiff's alibi because the contents were unknown. (*Id*. at 21-22.) (whether recording would have placed Plaintiff in the restaurant after the shooting is unknown); see *Hodgkins v. Peterson*, 355 F.3d 1048, 1061 (7th Cir. 2004) ("a

---

[2] This court has already ruled that no jury question is presented as to whether Defendant Officers withheld exculpatory evidence. See Defendant Officers reply to No. 4.

6

police officer need not investigate an individual's claim of an affirmative defense to determine facts unknown to the officer"). No witness identified an alternative shooter, or provided any other exculpatory fact. Instead, the witnesses in question were strictly alibi witnesses,[3] and Defendant Officers had no duty to investigate the truth of Plaintiff's alibi. *McBride v. Grice*, 576 F.3d 703, 707 (7th Cir. 2009) ("the Fourth Amendment imposes no duty to investigate whether a defense is valid").

Plaintiff's approach that anything the Defendant Officers did "wrong" in the investigation is admissible as evidence of probable cause ignores the very definition of probable cause. Probable cause unequivocally turns on facts known to the Defendant Officers. *Padula v. Leimbach*, 656 F.3d 595, 601 (7th Cir. 2011) (Probable cause exists if "the facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.") For this reason, there is no duty to conduct an investigation to find the truth or investigate a criminal defendant's version of events. *Askew*, 440 F.3d at 896 (police "initiate the criminal process and leave the sifting of competing claims and inferences to detectives, prosecutors, judges, and juries in the criminal prosecution.")

**B. Investigatory lapses are not probative of intent.**

Plaintiff argues that the failure to conduct certain investigations is relevant to intent, because there is evidence – in the form of deviation from police standards – that the lapse was intentional. This confusingly circular argument is not supported by the case law upon which Plaintiff relies. In *Jimenez*, evidence that certain conduct violated standard police practices was

---

[3] Whether these witnesses would have given any information to officers is highly questionable, given Plaintiff's testimony that a Board Member of the Gangster Disciples had to give permission before individuals could testify on Plaintiff's behalf.

7

relevant to show that these acts were intentional. It was not disputed that the conduct -- coercing witness identifications, refusing to investigate an alternate suspect, and ignoring an audio recorded confession of the alternate suspect which was provided to police – was relevant. *Jimenez v. City of Chi.*, 732 F.3d 710, 721 (7th Cir. 2013) (acknowledging that expert opinion was relevant to probable cause and addressing whether opinions were improper legal conclusion or credibility determinations); *accord Restivo v. Hessemann*, 846 F.3d 547, 580 (2d Cir. 2017) (expert testimony on police standards related to conduct underlying Brady claim properly admitted). Similarly, in *Hobgood v. Ill. Gaming Bd.*, there was no question that the investigation into the employee's misconduct was relevant to the cause of action for wrongful termination. 731 F.3d 635, 645 (7th Cir. 2013). The above cases simply hold that when conduct is relevant, deviation from standards may also be relevant to demonstrate that the conduct was intentional. They do not support Plaintiff's argument that the conduct was relevant merely because it violated standards.

To the extent that Plaintiff is arguing that an intentional failure to investigate is relevant to intent in other circumstances, such as the identification procedures, his argument also fails. Intent offered for this purpose would be relevant "only because it implies a pattern or propensity to so intend," which is impermissible. *United States v. Miller,* 673 F. 3d 688, 697 (7th Cir. 2012) (abuse of discretion to admit other acts where intent is not meaningfully disputed). Rule 404(b) bars evidence which relies on propensity for relevance, such as the propensity to intentionally flout police standards which Plaintiff seeks to establish in this case. *United States v. Gomez*, 763 F.3d 845, 860 (7th Cir. 2014). In *Gomez*, the Seventh Circuit explained that conduct is inadmissible unless relevance can be established "through a chain of reasoning that does not rely on the forbidden inference that the person has a certain character and acted in accordance with that character on the occasion charged in the case." *Id*. Even if the failure to investigate was intentional,

8

it would not imply intentional conduct toward Plaintiff without an inference of propensity; thus, it is not admissible to establish Defendant Officers' general intent. *See United States v. Shackleford,* 738 F.2d 776, 781 (7th Cir. 1984) (reversible error to admit other acts to show general intent because such an exception "would virtually swallow the rule").

### C. The potential for unfair prejudice, confusion and waste of court time outweigh any probative value.

Plaintiff's conclusory comment that the jury will not be confused because it will be instructed on the law, is not sufficient to satisfy the requirements of Rule 403. Fed. R. Evid. 403. It is presumed that in all cases the jury will be instructed on the law, yet the court is still required to conduct Rule 403 balancing. Balancing the probative value against the risks of a verdict on an improper basis, jury confusion and waste of court time leads to the inevitable conclusion that evidence of investigation which was not pursued must be excluded.

Probative value is determined by looking at the relevance of the evidence, and the availability of "evidentiary alternatives." *Old Chief v. United States*, 519 U.S. 172, 184 (1997). Plaintiff cannot deny that there is alternative evidence available to establish proximate cause, namely facts which were actually known to Defendant Officers. Thus the investigative lapses are not significantly probative of this issue. Further, general intent can be established through "proof of the proscribed conduct," greatly diminishing the probative value of the evidence for this purpose. *Gomez*, 763 F.3d at 858.

However, the countervailing risk of unfair prejudice, jury confusion, and waste of court time is significantly high. Should Plaintiff be permitted to imply wrongdoing in every aspect of the investigation which was not completed, there is a significant risk that the jury will be misled to believe that these investigatory lapses are themselves actionable. Even if jurors don't reach this conclusion, there is a high likelihood that this evidence will lead to a verdict on an improper

9

emotional basis. Evidence that Defendant Officers did not thoroughly investigate will invoke a sympathy and a sense of indignation arising from a general sense of unfairness which will impact the way the jury views the evidence. At a minimum, the jury will be confused that significant court time was spent addressing these issues which are not actually a source of liability. These substantial risks of an unfair trial outweigh the minimal, if any, probative value of this evidence.

**II. Allegations against Defendant Oliver are inadmissible bad acts.**

Plaintiff's argument begins with the flawed assumption that Defendant Oliver's limited involvement in the homicide investigation precluded him from doing any investigation into the drug operations of the deceased to develop information on Gangster Disciple narcotics operations. Defendant Oliver was a gang crimes officer assigned to investigate the Gangster Disciples. The conduct alleged by Cynthia Steward and Clifford Frazier is consistent with his role as a gang narcotics investigator, hence Defendant Officers referred to these allegations as part of a narcotics investigation. Plaintiff disputes this characterization, mistakenly assuming that this conduct is inadmissible solely because it was part of the narcotics investigation. However, regardless of Oliver's assignment, the misconduct alleged by Cynthia Steward and Clifford Frazier is irrelevant and inadmissible.

Plaintiff attempts to dodge the stringent requirements of Rule 404(b) by arguing that Oliver's conduct "was part of the homicide investigation" and therefore not "other acts." This argument again fails to recognize that Plaintiff does not have a cause of action for improper investigation. It is no longer proper to assume that conduct which is related to the conduct at issue in the complaint is automatically relevant; the inextricable intertwinement/intricately related evidence doctrine has been abolished. *United States v. Gorman*, 613 F.3d 711, 719 (7th Cir. 2010). Instead, the Seventh Circuit takes a rules-based approach to analyzing conduct, requiring a

10

showing of relevance through a chain of reasoning that does not rely on propensity. Plaintiff's refusal to address the requirements of Rule 404(b) is therefore a refusal to acknowledge the relevancy requirement of the Rules of Evidence.

Plaintiff's argument that Oliver's alleged misconduct is relevant to his conspiracy claim is precisely the type of thinly disguised propensity argument invalidated by *Gomez*. In *Gomez*, the Seventh Circuit held that evidence that defendant had cocaine in his possession at the time of his arrest was erroneously admitted as evidence of his involvement in a conspiracy to distribute cocaine. There was no evidence that the cocaine was the product of the conspiracy, which had already ended. Instead, the government argued that the cocaine was relevant to defendant's identity as a co-conspirator, in that the possession of cocaine made it more likely that he participated in a conspiracy to distribute cocaine. The court reasoned that the possession could only be relevant to his identity as a co-conspirator through an inference of propensity, and should not have been admitted.

After *Gomez*, it is no longer enough to identify a purpose for other acts evidence, the proponent of the evidence must demonstrate how the evidence is relevant to that purpose without relying on a propensity inference. Any relevance of this evidence to establish a conspiracy, bad faith, or misconduct with regard to the lineup necessarily relies on propensity. Thus Plaintiff has failed to make the relevance showing required by Gomez.

As in Gomez, the timeline of the events is an important consideration in determining relevance to a conspiracy. In Gomez, the possession of cocaine was not relevant to the conspiracy because the conspiracy had ended. In this case, Oliver's alleged misconduct was not in furtherance of a conspiracy because Plaintiff had not yet been identified, hence the conduct could not have been in furtherance of a conspiracy to violate Plaintiff's rights. Oliver's alleged misconduct

11

toward Cynthia Steward and Clifford Frazier, allegedly occurring in the immediate aftermath of the murders, can be linked to his conduct in the investigation of Plaintiff weeks later only through an inference of propensity.

Plaintiff's argument that Oliver's conduct toward Steward and Clifford is evidence of malice or bad faith also ignores this timeline and relies on propensity inferences. It defies logic to suggest that this alleged conduct toward witnesses is evidence of malice toward Plaintiff, who had not yet been identified as a suspect. This connection cannot be made without an inference as to Oliver's character. Plaintiff argues that Oliver's alleged misconduct toward Clifford and Steward (which arguably would have jeopardized rather than aided the investigation), shows that Oliver was not concerned with prosecuting the offender at that time. Even if this were true, and showed a lack of good faith, Plaintiff could not use this evidence to infer that Oliver had the same motivation (or lack thereof) in his interactions with Plaintiff. That is an improper propensity inference.

Plaintiff also fails to establish a propensity-free chain of reasoning for his argument that threatening Clifford on a previous occasion made it more likely that he acted in a threatening manner at the time of the lineup. Plaintiff's comment that Oliver's conduct was "made more egregious" by his prior conduct reveals the propensity inference: having threatened Clifford in the past Oliver is more likely to have violated the rules against suggestive lineup procedures.

Similarly unavailing is Plaintiff's argument that this prior interaction carried over into Clifford's interaction with Oliver weeks later. This too relies on a propensity inference: that Oliver likely acted in accordance with his alleged tendency to threaten Clifford. Plaintiff speculates that Clifford felt pressured to keep Oliver happy by identifying someone in the lineup, but this contention is directly contradicted by the record, which shows that Clifford refused to cooperate

12

with Oliver, and distrusted him as a result of the prior incident. Clifford's response to Oliver's prior conduct does not lead to an inference that Oliver had "improper influence" over Clifford, it suggests the opposite. The only thing these allegations, and Clifford's reaction to them, could have shown Oliver is that Clifford could not be manipulated.

After several failed attempts to establish relevancy, Plaintiff ultimately does not deny that "the evidence is plainly intended to imply that Oliver was engaged in corrupt practices…." (Resp at 15.) Instead, Plaintiff argues that this improper character evidence, while unfavorable, is tolerable. However, Plaintiff's attempt to "brand" Oliver as "corrupt" and tap into "the natural tendency to elicit the jury's opprobrium for [Oliver]," is unduly prejudicial. *United States v. Haywood*, 280 F.3d 715, 723 (6th Cir. 2002) (abuse of discretion to admit evidence of prior drug possession, unfairly branding defendant as a user). Defendant Oliver simply cannot get a fair trial if Plaintiff is permitted to attack his character by labeling him a "corrupt cop." "[T]he likely effect of the evidence in poisoning [Oliver's] character" in this case far outweighs any probative value of other acts evidence. *United States v. Beasley*, 809 F. 2d 1273, 1279 (7th Cir. 1987); *accord Manuel v. City of Chicago*, 335 F. 3d 592, 597 (7th Cir. 2003) ("labeling [plaintiff's supervisor] a 'racist' had the potential of being unfairly prejudicial to the [defendant's] case."). "Evidence is considered unfairly prejudicial . . . because its admission makes it likely the jury will be induced to decide the case on an improper basis, commonly an emotional one." *Young v. Rabideau*, 821 F.2d 373, 377 (7th Cir. 1987). There can be no doubt that this evidence will cause the jury to dislike Oliver, and decide the case on that basis, which is unfairly prejudicial.

Plaintiff does not even attempt to argue that there is sufficient probative value in this evidence to offset the substantial unfair prejudice. As addressed above, witness' allegations against Oliver have little, if any, relevance to this case, without reliance on propensity. Moreover,

13

the availability of other, less prejudicial, evidence further minimizes any probative value in this evidence. *See United States v. Thomas*, 321 F. 3d 627, (7th Cir. 2003) (other acts evidence was properly excluded, pursuant to Rule 403, because it was unnecessary given there was other evidence to establish defendant's knowledge). Aside from the improper character attack, this evidence is not needed for any purpose for which there is no direct evidence. The evidence is not probative, yet poses a significant danger of unfair prejudice. Thus, Rule 403 provides an additional basis to bar this evidence.

Accordingly, the Defendant Officers' request that this Court grant their Motion *in Limine* number 7.

Dated: November 22, 2019

Respectfully submitted,

/s/ *Brian J. Stefanich*
One of the Attorneys for Defendant Officers

Andrew M. Hale (andy@halemonico.com)
Barrett Boudreaux (bboudreaux@halemonico.com)
Brian J. Stefanich (bstefanich@halemonico.com)
William E. Bazarek (web@halemonico.com)
Hale & Monico, LLC
53 W. Jackson Blvd., Suite 330
Chicago, IL 60604
Ph. (312) 341-9646
Fax (312) 341-9656

## CERTIFICATE OF SERVICE

I, Brian J. Stefanich, an attorney hereby certify that I filed the attached document on November 22, 2019, with the Court's CM/ECF system, which sent electronic copies of the same to all counsel of record.


/s/ *Brian J. Stefanich*