**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| EDDIE L. BOLDEN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17 C 00417 |
| | ) | |
| vs. | ) | Honorable Steven Seeger |
| | ) | |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION *IN LIMINE* NO. 4**
**TO PRECLUDE CERTAIN EVIDENCE AND ARGUMENT**
**BASED ON THE COURT'S SUMMARY JUDGMENT RULING**

Defendants Angelo Pesavento, James Oliver, Edward Siwek, the Estate of George Karl, and the Estate of Michael Kill (collectively "Defendant Officers"), by their attorneys, in support of their Motion in Limine Number 4 to Preclude Certain Evidence and Argument Based on the Court's Summary Judgment Ruling, state as follows:

**I. INTRODUCTION**

Evidentiary issues were fully briefed in the context of the summary judgment motion, and motion *in limine* orders should be consistent with Judge Shah's well-reasoned legal and factual findings. Defendant Officers are not seeking summary judgment on the malicious prosecution or Fourth Amendment claims in the present motion, but an evidentiary ruling preventing Plaintiff from relitigating that which has already been fully briefed and decided. In ruling on summary judgment, Judge Shah determined that a reasonable jury could not find that Defendant Officers fabricated, destroyed, or withheld evidence to Plaintiff's detriment. Plaintiff's remaining claims do not permit him to introduce evidence or argument inconsistent with this ruling. The Supreme Court explained why an earlier judgment in a proceeding should be honored:

> [A] fundamental precept of common-law adjudication is that an issue once
> determined by a competent court is conclusive. . . . "To preclude parties from
> contesting matters that they have had a full and fair opportunity to litigate protects
> their adversaries from the expense and vexation attending multiple lawsuits,
> conserves judicial resources, and fosters reliance on judicial action by minimizing
> the possibility of inconsistent decisions."

*Arizona v. California*, 460 U.S. 605, 619 (1983) (quoting *Montana v. United States*, at 153-154)

(internal citations omitted); *accord Carr v. O'Leary*, 167 F.3d 1124, 1126 (7th Cir. 1999) ("ruling

granting partial summary judgment in favor of [plaintiff] was the law of the case" at the time of

trial). Judge Shah's summary judgment findings are conclusive on the issue of whether evidence

was withheld, destroyed or fabricated, and the trial evidence should be consistent with that ruling.

## II. ARGUMENT

### A. Any evidence or argument that certain evidence was destroyed or not preserved should be barred.

#### 1. 911 Recording

In addressing the exculpatory value of the 911 recording, Judge Shah opined: "Any

exculpatory value was only potential because we do not know what was on the tape." (Dkt. 276

at 21.) Defendant Officers explained this finding as "the officers did not have subjective

knowledge that the 911 recording was [rather than could be] exculpatory." (Dkt. 311 at 4. Because

"destruction of potentially exculpatory evidence does not violate due process unless done in bad

faith," (Dkt. 276 at 22), the court next analyzed whether there was evidence of bad faith. In the

bad faith context, the court held: "Bolden has not shown that the detectives acted with intent

sufficient to demonstrate that they are personally responsible for the failure to preserve the

recording, and without intent, there can be no bad faith. This is true even though the pivotal

question in the bad-faith inquiry is whether the defendant knew the evidence's exculpatory value,

which the evidence suggests both detectives did." *Id.* Plaintiff's response capitalizes on the

2

omission of the modifier "potential" before "exculpatory" to manufacture a discrepancy between Judge Shah's ruling and Defendant Officers paraphrasing where there is none. This argument leads nowhere.

The summary judgment ruling resolved the issue of Defendant Officers intent with regard to the recording. Specifically, Judge Shah made a factual findings that Defendant Officers did not "act[] with intent sufficient to demonstrate that they are personally responsible for the failure to preserve the recording." Further, the court held that "without intent, there can be no bad faith" in failing to preserve the recording. Malice also requires a finding of intent. *Johnson v. Target Stores, Inc.*, 341 Ill. App. 3d 56, 76 (2003) ("Malice is defined as 'the intent, without justification or excuse, to commit a wrongful act.'") Because Defendant Officers' conduct with regard to the 9-1-1 recording has been ruled unintentional, it cannot possibly "support[] the intent elements of Plaintiff's remaining causes of action" as Plaintiff claims.

Rephrasing the argument as a failure to "review" the 9-1-1 recording does not change the analysis. The essence of the conduct is the same: that Defendant Officers "sat idly by" rather than taking action that would allow them to review the recording. Judge Shah has already found that this cannot be characterized as deliberately reckless or intentional conduct because there is no evidence that Defendant Officers knew the recording would be destroyed if they did not act. Thus, although deviation from police standards can "support an inference of intentional or reckless conduct," in this case this issue has already been decided in the negative. *Jimenez v. City of Chi.*, 732 F.3d 710, 721-22 (7th Cir. 2013) (finding expert testimony on police practices proper to help jury distinguish negligence from intentional conduct). Judge Shah considered Mr. Gaut's opinion that Defendant Officers violated "general notions of police practices" by failing to preserve the recording, but found it too speculative to support an inference of intent or deliberate recklessness.

(Dkt. 276 at 21 (expert opinion too speculative to establish personal responsibility), *id*. at 20 (personal responsibility requires "intentional inaction" or "deliberate, reckless indifference.").) Plaintiff had a full and fair opportunity to litigate the issue of intent as it relates to the 9-1-1 recording. This issue was resolved with Judge Shah's ruling that Defendant Officers' conduct with regard to the recording would be "at most negligence." (*Id*. at 4.)Plaintiff may not argue or imply that this same conduct was intentional or deliberately reckless for purposes of his other claims, as this would be inconsistent with Judge Shah's findings regarding this evidence.

Judge Shah's ruling -- that there can be no intent, reckless indifference or bad faith unless Defendant Officers knew that evidence would be destroyed -- applies equally, if not more, to the dispatch card. Plaintiff asserts that, as part of their investigation, Defendant Officers should have obtained and reviewed the dispatch card. However, as addressed in Defendant Officers Motion *in Limine* Number 7, incorporated herein, whether Defendant Officers failed to interview witnesses or gather evidence is irrelevant and any such argument or implication should be barred. Moreover, as with the 9-1-1 recording, Defendant Officers lacked the requisite knowledge to show they intentionally failed to obtain the dispatch card. Plaintiff has elicited no evidence that the Defendant Officers knew that a dispatch card was created, or what the retention period was for the same. As a result, this evidence is also irrelevant to Defendant Officers' intent.

Because Judge Shah has ruled that Defendant Officers' failure to obtain and review the 9-1-1 recording was not intentional, a ruling which applies equally to the dispatch card, Plaintiff may not imply otherwise at trial. Plaintiff's suggested cross-examination of Defendant Pesavento regarding his knowledge of the retention policy would improperly place this issue before the jury. Plaintiff has no good faith basis to believe that Defendant Pesavento was aware of the retention policy. Detective Pesavento testified that he had no experience requesting a 9-1-1 recording, and

4

would likely do so through his sergeant, who he assumed would then call communications. Plaintiff's proposed cross examination is impermissible, as it is not based on a belief that Pesavento will have the requisite knowledge, but an effort to insinuate the same regardless of the answer. *United States v. Taylor*, 522 F.3d 731, 736 (7th Cir. 2008) ("You are not permitted to cross-examine a witness about a particular topic without a good-faith belief that the answers will be helpful to your case, as distinct from hoping that the question alone will insinuate a helpful answer."). To the extent this Court finds a good faith basis for such questioning, Defendant Officers request a *voir dire* on this issue outside the presence of the jury to avoid the prejudicial implications.

2. *Clifford's guns and inventory report*

Consistency with Judge Shah's ruling necessitates that Plaintiff be barred from asserting that the failure to preserve weapons, or disclose a related inventory report, is relevant to show Defendant Officers' intent.

a. *.40 caliber weapon*

As Plaintiff acknowledges, Judge Shah's summary judgment ruling foreclosed any argument or implication that Defendant Officers were personally responsible for the destruction of Clifford's .40 caliber gun. This ruling was based on the complete lack of evidence to support an inference of intentional or reckless conduct in failing to preserve the weapon.

Plaintiff cannot circumvent Judge Shah's factual findings by arguing that Defendant Officers intentionally or recklessly failed to test Clifford's gun prior to its destruction. The issue of whether the gun should have been preserved for testing was fully briefed at the summary judgment stage. The sole basis for Plaintiff's *Brady* argument that the gun was destroyed in bad faith was that the destruction made it impossible to conduct DNA, fingerprint and blood testing.

(Dkt. 253 at 18.)  Plaintiff made the same argument he makes here – that Defendant Officers had sufficient knowledge to believe testing would be exculpatory. (*Id*.)  However, Judge Shah concluded that there was no jury issue as to whether "defendants acted (or refrained from acting) intentionally to cause the gun's destruction" because "there is no evidence that defendants thought analysis could yield exculpatory results for Bolden." (Dkt. 276 at 24.)  Judge Shah's opinion that Defendant Officers did not intentionally cause forensic evidence on the gun to be lost applies equally whether phrased as a failure to preserve for testing or a failure to test.  Permitting Plaintiff to make either argument would directly contradict Judge Shah's ruling, and should not be permitted.

Plaintiff's alternative argument that the destruction of the .40 caliber gun "provides valuable background evidence—it helps explain why Plaintiff did not retain his own expert to conduct the analyses" is disingenuous and misleading.  Plaintiff's criminal defense attorney, Kevin Foster, explained why he did not seek to have the guns analyzed, and it had nothing to do with their unavailability.  He testified:

> Q.  The fact that those weapons were destroyed, would you have conducted your own independent tests on those weapons if they had not been destroyed?
>
> A.  Absolutely not.
>
> Q.  Why?
>
> A.  Because, well, there's a possibility that a gun in JJ Fish could have come back to Eddy or could have been used in the murder.  It would be like exclusion of DNA.  Have it retested?  Never.

(Transcript of Post Conviction Hearing, November 20, 2015, Testimony of Kevin Foster (Exh. A) at  115:6-15.)  Mr. Foster's explanation for failing to test the guns is the only evidence on this issue.  Plaintiff has no good faith basis to argue that the guns would have been tested if they had not been destroyed, thus their destruction is not relevant background information.  Should the jury require

an explanation as to why the defense strategy did not include analyzing the weapons, Mr. Foster's explanation – that the results could have been inculpatory -- will suffice, without the need to discuss the destruction of the guns.

> b. *Mach-11*

Plaintiff admits that there is no evidence that Clifford's Mach-11 gun had any potential exculpatory value to Plaintiff. As a result, the gun could not possibly have been destroyed in bad faith. (Dkt. 276 at 17 ("Bad faith "requires proof of an official animus or a conscious effort to suppress exculpatory evidence, and necessarily turns on an official's subjective knowledge that the evidence in question had exculpatory value at the time it was lost or destroyed."))

Plaintiff argues that the gun was otherwise relevant, but does not develop the argument beyond stating that the weapon was inventoried and "Clifford stated the shooter's gun looked like his Mach-11." The mere fact that the weapon was inventoried, by non-defendant police officer Charles Baylom, does not make it relevant evidence. Nor does Clifford's description of Plaintiff's gun make Clifford's Mach-11 relevant, given that Plaintiff's gun was never recovered for comparison and there is no evidence the description was inaccurate (the Mach-11 and the shooters gun were both semi-automatic nine millimeter handguns). In addition, there is no evidence the weapon was anywhere other than in Clifford's car at the time of the murders and attempted murder, and Clifford never denied having the weapon in his possession. Whether the weapon was subject to testing is meaningless absent some evidence that testing would have been beneficial to Plaintiff, and Mr. Foster made clear that testing the guns was of no benefit to the defense. In sum, the destruction of evidence which had no value to Plaintiff in defending his case could not have caused him harm. Without harm, there can be no intent to cause Plaintiff harm, no reckless disregard for the harm which may be caused to Plaintiff, no inference of malice toward Plaintiff, and no extreme

and outrageous conduct toward Plaintiff.

Moreover, Plaintiff's theory that Defendants Karl and Pesavento directed that the gun be destroyed is supported only by a mischaracterization of the deposition testimony of Harlan Hansbrough, the officer who actually approved the destruction of the gun by the Evidence and Recovered Property Section of the Chicago Police Department. Mr. Hansbrough did not testify that he had any contact with Karl or Pesavento before giving his approval, in fact he denied knowing them. (Pl. Exh. J at 44:19-24). The implication in Plaintiff's argument-- that Hansbrough knew that Pesavento and Karl were the detectives on this case, and that he testified that he would have contacted them – is false.

Hansbrough actually testified that lack of activity, i.e., notifications that the gun was needed, could lead to it being destroyed. He testified:

> Q. And under what circumstances in your experience would you conclude that a gun no longer needed to be held?
>
> ***
> A. If it's in evidence recovered property for a long period of time without any activity being done as far as, you know, needing it for any case or anything like that, that's usually when you dispose of it.

(*Id*. at 42: 7-18.) He later reiterated that there were two ways he would have determined if the gun was still needed: "Either try to locate anybody pertaining to the case that deals with it or if you've ·received any notifications about it being needed for such, in that manner." (*Id*. at 43:10-16.)

The testimony upon which Plaintiff erroneously relies began with a hypothetical which assumed that 1) the weapon was part of a homicide investigation, despite the fact that the investigation had been closed for over a year when the gun was destroyed; and 2) that Hansbrough would talk to somebody, rather than make the decision based on lack of activity. Plaintiff asked the following question, "If you had a case with a gun that was part of an investigation, a homicide

investigation involving Area 2 detectives, who would you check with to see if the gun was still needed?" (*Id*. at 43:20-24.) In the context of this hypothetical, he testified that he would *probably* check with the detective assigned to the case. (*Id*. at 44:7-9.) Plaintiff's response combines this equivocal statement with Hansbrough's testimony that he would not destroy a gun "without knowing whether or not a gun was still needed in a case," (*id*. at 44:10-17), to erroneously argue that "Hansbrough testified at his deposition that he never would have asked for a gun to be destroyed in a pending case without receiving direction from the detectives assigned to the investigation, who here were Pesavento and Karl." Resp. at This statement is obviously inaccurate based on the testimony cited by Plaintiff and is directly contradicted by Hansbrough's testimony that he did not know Pesavento or Karl, (*id*. at 44:19-24), and his clarification that he would have checked with either a detective or an officer to find out if a gun was still needed. (Exh. B, excerpt of testimony of Harlan Hansbrough, at 103:18-104:1)

Plaintiff can only speculate that Pesavento and Karl were involved in the destruction of the gun. Whether Hansbrough based his decision on a lack of requests for the gun or contact with someone involved in the case, whether he actually contacted a detective rather than one of the many officers involved, and whether that detective was Pesavento or Karl is simply unknown. Hansbrough's testimony does not support an inference of intent on the part of these detectives which could support the remaining claims.

       *c. Inventory report*

Plaintiff's argument that the inventory report is relevant to show that there was blood on the weapon and that Clifford was arrested directly contradicts Judge Shah's finding that the inventory report was immaterial for either purpose. The court ruled that despite the notation of "blood on the weapon" on the inventory report, with no clear evidence as to whether Clifford or

the assailant was struck with the gun, there was no evidence Defendant Officers thought analysis could yield exculpatory results for Bolden.  Judge Shah also determined that the inventory report was not material when offered to demonstrate Clifford's arrest because "the fact of Clifford's arrest was not material." (Dkt. 276 at 33, n. 9.)  Plaintiff does not explain how a report which was found to be immaterial to the outcome of the trial could support a malicious prosecution claim.   In short, Plaintiff cannot claim that Defendant Officers hid favorable evidence from him, where Judge Shah has already ruled that there was nothing material to hide.  Without some evidence that Defendant Officers viewed this report as containing evidence favorable to Plaintiff, any failure to disclose the inventory report could not have been intentional or malicious.

Moreover, Plaintiff's claim that this report is relevant to Defendant Officers' intent fails in another crucial aspect – he has not connected this allegedly intentional act to any individual. Without some evidence as to who was responsible for the alleged suppression, Plaintiff has no basis to infer the state of mind of the actor.  As a result, the report is not relevant to show any Defendant Officers' intent.

### 3. Interview Notes

Judge Shah unequivocally ruled that "the contents of the notes are a mystery" rejecting Plaintiff's argument that the contents can be inferred from other evidence.  The impact of this factual finding extends far beyond the fact that the notes are not exculpatory. The complete lack of evidence of the contents of the notes makes it impossible to determine if they were relevant to the state of mind of any defendant.  Plaintiff's expert's opinion that destruction violated standard practices cannot alone establish relevance.  As Judge Shah held,  "Here, where there is no evidence that the notes contained exculpatory evidence or that defendants were aware of their exculpatory contents, there can be no bad faith, even if the notes were destroyed contrary to CPD policy."

10

Thus, Judge Shah considered and rejected Plaintiff's only theory as to how the notes were relevant to state-of-mind. Just as the notes cannot show bad faith, they also cannot show intentional conduct or malice. To allow such an inference would contradict Judge Shah's factual findings. Moreover, the ruling is logically sound. There can be no inference as to why something was destroyed without some evidence as to what was destroyed. The allegedly destroyed notes are irrelevant.

Judge Shah also found that "[t]here is no evidence that defendants were the ones who failed to preserve the notes or destroyed them." This issue was fully briefed and ruled on, and Plaintiff cites to no new evidence which would change this result. Plaintiff's theory that Defendant Officers destroyed their notes rather than turn them in is speculation based on a misrepresentation of facts. Even if the notes never made it to the file, which has not been established, there is no evidence that Defendant Officers were responsible or that this was intentional. As Mr. Loftus testified, adding documents to the file was a three step process: 1) Detectives placed them in a drawer to be reviewed by a supervisor; 2) the supervisor reviewed and placed them in a bin to be filed; 3) the "desk guy" filed the documents according to RD number. (Pl. Exh. O at 66:2-22.) Judge Shah found there is no evidentiary basis for an inference that Defendant Officers did not fulfill their obligation. In fact, the only evidence is to the contrary. Detective Pesavento testified that he turned all of his notes in to a supervisor. In addition, the file index reflects that notes were included in the file. As Plaintiff is aware from Mr. Loftus' testimony, the notations "GPR" and "GPRs," ("General Progress Report(s)") in the file index show that detective notes were placed in the file. This notation appears five times in the file index. (Pl. Exh. P.) In light of this testimony, there is no excuse for Plaintiff's misrepresentation that the "the investigative file index [is] bereft of any mention of notes."

Plaintiff attempts to make up for the absence of any evidence connecting Defendant

Officers to the missing notes by arguing that a neutral non-party could not possibly be responsible. Plaintiff attempts to add credibility to this speculation by attributing this opinion to Mr. Loftus. However, Mr. Loftus did not opine that "[t]here was no realistic or likely opportunity for these notes to be removed from the file or lost by these neutral parties." In fact, there was no discussion of "neutral parties" or their "opportunity" to remove or lose a document in the file at his deposition.

Plaintiff's response does not provide any evidentiary basis to contradict Judge Shah's findings that the contents of the notes are a mystery and the alleged destruction cannot be connected to Defendant Officers. These findings, individually and combined, make it impossible to show that the missing notes are relevant to Plaintiff's remaining claims. Plaintiff should not be permitted to imply otherwise through cross-examination. *Taylor*, 522 F.3d at 736 (improper to cross-examine a witness for the purpose of insinuating a helpful answer from the question). As a result, any mention of missing interview notes should be barred.

### 4. Items Seized in Search of Steward's home

Plaintiff's inability to show the relevance of the alleged search of Cynthia Steward's home at summary judgment persists in his response to the present motion. This issue was fully briefed by both parties, and Judge Shah made a factual finding that the search was not relevant to the due process claim. Specifically, the court ruled that "[t]o find that the seized evidence had potential exculpatory value to Bolden, that defendants knew that, or that defendants were personally involved in the destruction of the evidence, would be sheer conjecture." (Dkt. 276 at 28) The court rejected Plaintiff's speculation as to what might have been found in the search, finding that "[w]ithout evidence of what the seized documents were or whose names the officers took down, a jury cannot infer the evidence's value to Bolden." (*Id.*) Similarly, the court found that the evidence did not support an inference that the search yielded leads in the investigation. (*Id.*) These findings

12

foreclose any attempt to link the allegedly destroyed documents to Plaintiff's arrest.

In response to the present motion, Plaintiff still offers no basis for finding the results of the alleged search relevant to any fact at issue in Plaintiff's complaint.[1]  Instead, Plaintiff seeks to introduce the search as "evidence of substantial departures from reasonable police practices."  In other words, the evidence is only relevant to demonstrate that Defendant Oliver engaged in misconduct.  However, for an allegation of misconduct to be admissible, Plaintiff must demonstrate that the misconduct is relevant to a fact at issue without relying on a propensity inference.  *United States v. Gomez*, 763 F.3d 845, 860 (7th Cir. 2014).

Plaintiff's vague reference to intent does not satisfy this burden.  Admitting evidence of misconduct to show a general intent is merely disguised propensity evidence.  *See Tanberg v. Sholstis*, 401 F. 3d 1151 (10th Cir. 2005) (evidence offered to show "that [defendant officer] often intends to use excessive force when arresting the hapless innocents who cross his path . . ." properly excluded as propensity).  It is incumbent on Plaintiff, as the proponent of this evidence, to demonstrate how it is relevant to intent, or any purpose, without relying on a propensity inference. *Gomez*, 763 F.3d at 860.  Yet Plaintiff has offered no explanation as to how this incident reflects Oliver's intent toward Plaintiff. The only way that this search would be relevant to Oliver's intent toward Plaintiff would be through a forbidden propensity inference. *Id*.  Plaintiff's attempt to use this interaction with Steward to show that Oliver had a general intent to violate the rules, and later acted consistently with that intent in his interactions with Plaintiff, must be rejected.

    *5. Control card*

Plaintiff did not assert a *Brady* claim with regard to the control card in response to Defendant Officers summary judgment motion, which demonstrated that there was no proof that

---

[1] As discussed in Defendant's Motion in limine number 7 and reply in support, the entire interaction between Defendant Oliver and Ms. Steward is irrelevant, and offered solely for an improper propensity purpose.

Defendant Officers destroyed the card or that the card had exculpatory value. His concession was in response to Defendant Officers' argument that there was no evidence as to when the card was destroyed or lost, who was responsible, or the card's value to Plaintiff's defense. Plaintiff's argument with regard to the control card is no more viable today than it would have been had he attempted it in response to summary judgment.

Like the interview notes, and the papers allegedly seized in the search, the contents of the control card are unknown. In fact, Plaintiff admits that he has not elicited any evidence that a control card was even created in this case. His excuse, that his counsel did not have the full file before the depositions, does not explain his failure to conduct any discovery into this issue in the past sixteen months since the City provided the file. Without some evidence that the control card was created, contained information of some value to Plaintiff, and was destroyed or withheld by Defendant Officers, Plaintiff cannot establish relevance.

Contrary to Plaintiff's assertion, the control card is not relevant to show who could have accessed the file and destroyed or concealed evidence. Access to the file is not at issue, as no detective has denied having access to the file. Moreover, access to the file is not sufficient to imply that an individual concealed or destroyed evidence.

Plaintiff's argument as to what his defense counsel could have done with the control card is speculation. Plaintiff did not elicit any testimony from Kevin Foster, his criminal trial counsel, indicating that the control card would have been of value to the defense. Plaintiff's argument is based on a string of speculation. He proposes that if Foster had seen the control card, he would have been alarmed that a detective checked out the file after arresting Plaintiff and would have inquired further, in the hopes of discovering the Willis Report, which contained only cumulative impeachment information. Alternatively, Mr. Foster ostensibly could have used the control card

14

to establish a timeline of the investigation, which was not an issue in the case given that the entire investigation took place prior to Plaintiff's arrest. In sum, there can be no credible inference that the control card would have been of any value to Plaintiff's defense.

Plaintiff's dissatisfaction with his evidence does not justify shifting the burden to Defendant Officers to prove that they were not responsible, as Plaintiff suggests. Plaintiff argues that Defendant Pesavento should not be permitted to deny destroying the control card. Instead, he must prove that someone else was responsible, rather than rely on the fact that numerous individuals had access to the file. Plaintiff cannot circumvent his responsibility to establish relevance by providing some evidence connecting the loss or destruction of the control card to Defendant Officers. Without any indication of the content of the control card or who had control of the file when it was lost or destroyed, any evidence that the control card was lost or destroyed is irrelevant.

### B. Any evidence or argument that officers withheld or suppressed evidence should be barred.

#### 1. Clifford's role as an informant

Plaintiff's argument that the allegedly suppressed evidence related to Clifford's bias is relevant because it was favorable to Plaintiff's defense is insufficient. Judge Shah held that no jury could find that additional evidence of bias – beyond that which was already adduced at trial – had any impact on Plaintiff's conviction. Plaintiff's characterization of this ruling as relevant only to due process is inaccurate. The cumulative nature of this evidence negates any argument that it was withheld with the intent of harming Plaintiff. Without evidence of a wrongful intent, Plaintiff cannot demonstrate malice or intent to inflict harm. Moreover, the fact that this evidence would not have had any impact the outcome of the trial negates any relevance as a cause of Plaintiff's prosecution and conviction. Evidence that this information was withheld cannot be admitted

without contradicting Judge Shah's findings on the value of this information to Plaintiff.

### 2. Willis Report

Nondisclosure of the Willis report cannot be admitted into evidence without contradicting Judge Shah's findings that the report was cumulative, that other similar impeachment evidence was preferable, and that the report was not material. Plaintiff does not explain how suppressing this report could be relevant to his malicious prosecution claim when there was no "reasonable probability that the jury's verdict would have been different if the evidence had been presented to it." (Dkt. 276 at 29 (defining materiality) (citing *Goudy v. Cummings*, 922 F.3d 834, 842 (7th Cir. 2019)). Judge Shah's finding that this report, whether considered independently or cumulatively with other allegedly suppressed evidence, did not cause Plaintiff harm negates any argument of relevance to Plaintiff's conviction. Plaintiff's response does not identify a single fact which is made more or less probable by evidence that the report was not disclosed.

Defendant Officers' state-of-mind cannot be inferred from this undisclosed evidence, given Judge Shah's findings. Plaintiff does not explain how a failure to disclose evidence that would not have been beneficial to the defense demonstrates malice or an intent to cause emotional distress. There is not even evidence which tends to show that nondisclosure was intentional. Presumably, Plaintiff intends to argue that Defendant Siwek failed to return the report to the file after providing a copy to the FBI. Given that this report contained only information which was cumulative of other reports, its content does not support an inference of malintent, as opposed to negligence. Plaintiff offers no explanation why Defendant Siwek, or any officer, would believe that withholding this report would be harmful to Plaintiff. As a result there can be no inference of an intent to cause harm to Plaintiff, which is the intent at issue in both the malicious prosecution and intentional infliction of emotional distress claims

Plaintiff's final argument, that the report is necessary to demonstrate Defendant Officers' knowledge, is not at issue in this motion. Defendant Officers are not seeking to bar the Willis report outright, but to bar any evidence or argument that it was not properly disclosed. There is no need to address nondisclosure of the report to show Defendant Officers' knowledge for purposes of probable cause.

### 3. Steward's statements about gang hit

Plaintiff's response ignores Judge Shah's finding that Cynthia Steward's statements to Defendant Officers were equally available to Plaintiff and therefore were not suppressed. Given this ruling, Plaintiff is precluded from arguing or implying that he was denied this information. The summary judgment opinion is a conclusive finding that information known to Cynthia Steward was accessible to Plaintiff. Plaintiff may not contradict this ruling by arguing that this information was suppressed. Further, because Defendant Officers did not keep this information from Plaintiff at all, Plaintiff may not argue that they did so intentionally. There was no suppression, and any attempt to argue or infer otherwise would be improper.

A violation of internal report writing rules would not change this analysis. The mere fact that a rule was violated does not make the rule or the conduct relevant, for intent purposes or otherwise. *See also* Defendant Officer Motions *in Limine* Numbers 7, 9. Plaintiff may not introduce a violation of internal rules as evidence of a more general intent, as this would rely on an inference of a propensity to violate the rules which is improper. See *Gomez*, 763 F.3d at 860, for further discussion see Defendant Officers' Motion in Limine Number 7, incorporated herein by reference. That the failure to include this information in a report had no impact on Plaintiff's ability to defend his case has been established.

The finding that Cynthia Steward's information was equally available to Plaintiff also

implicates Plaintiff's claim that Defendant Officers failed to conduct a follow up conversation. Plaintiff's insistence that Defendant Officers should have conducted an investigation, despite having access to the information himself, clarifies that he is asking the court to find that Defendant Officers had a general duty to investigate on his behalf, which they did not. For this reason, as well as those in Defendant's Motion in Limine Number 7 (incorporated herein by reference), Plaintiff should be barred from presenting evidence or arguing that Defendant Officers failed to disclose or failed to investigate information provided by Cynthia Steward.

## C. Evidence, implication or argument that any officer fabricated evidence should be barred.

### 1. Pesavento-Karl Supplemental Report

Plaintiff's claim that inconsistencies between witness accounts and the supplemental report prepared by Defendants Pesavento and Karl are relevant to intent fails based on the timeline of events. To be relevant to intent, conduct must be directed toward Plaintiff. Plaintiff argues that the witness statements were fabricated to "bolster[] the strength of their case against Plaintiff" and because "they knew they had to create fabricated evidence to justify detaining Plaintiff because there was insufficient legitimate evidence to support probable cause." (Resp. at 22-23.) However, at the time the report was prepared, the day after the murders, Plaintiff was not a suspect. There was no "case against Plaintiff" for Defendant Officers to bolster, and no justification needed to offset probable cause to detain a man they would not meet until weeks later. Plaintiff attempts to cast aside the significance of this timeline, arguing that "Leanir" was a suspect when the report was completed. But nothing in the report indicates that "Leanir" was anything other than a witness. Plaintiff did not become a suspect until later, after he was identified as the Gangster Disciple known as "Lynier," and Defendant Officers did not meet him until weeks later. Thus the report cannot possibly be evidence of Defendant Officers' intent toward Plaintiff.

*2. Bar fabrication of line-up or that Officers knew Bolden was innocent.*

The issue of whether the line-up was fabricated was fully briefed by both sides, and ruled upon. Judge Shah concluded that the evidence relied upon by Plaintiff merely suggested that Defendant Officers should have known Plaintiff was innocent, there was no evidence they had such actual knowledge. Plaintiff now claims that he held back "substantial additional evidence" which demonstrates that Defendant Officers had this actual knowledge. He does not explain why he did not argue this evidence at summary judgment or, more importantly, what that evidence is. And Plaintiff cites no case law that entitles him to re-litigate issues decided on summary judgment simply because he did not put on his best case at the summary judgment stage. This is not an issue of whether it is appropriate to view deposition testimony as a limit on trial evidence, as in *Dochak v. Polskie Linie Lotnicze LOT S.A.*. No. 15 C 4344, 2017 U.S. Dist. LEXIS 82488, at *36 (N.D. Ill. May 30, 2017). The issue here is whether Plaintiff may re-argue an issue which has been decided against him on summary judgment at trial. He may not. Judge Shah's finding that there is no jury issue as to Defendant Officers' actual knowledge of Plaintiff's alleged innocence is conclusive and cannot be contested at trial. Plaintiff should be barred from presenting evidence or arguing that Defendant Officers had actual knowledge that Plaintiff was innocent or fabricated the line-up.

**D. Rule 403 bars reference to evidence which Judge Shaw found insufficient.**

Plaintiff does not, nor could he, meaningfully dispute that evidence suggesting that Defendant Officers denied him access to evidence at trial will infer that he was denied a fair trial on this basis. This suggestion is unavoidable, in fact, it is intended. Plaintiff argues that this is "the essence of their case" despite the fact that the obvious conclusion addressed by the evidence is no longer in the case. Defendant Officers cannot get a fair trial if forced to re-litigate that which

19

has already been decided: they did not destroy, withhold or fabricate trial evidence to Plaintiff's detriment. Plaintiff's admission that this evidence, rather than direct evidence of their claims, is intended to be the main focus of their case only highlights the inherent risk of jury confusion. The jury will no doubt be confused as to why extensive testimony for and against these allegations was presented when there is ultimately no reason for them to decide whether this information was in fact withheld. The significant risks of substantial prejudice, waste of court time, and jury confusion are not outweighed by the slight, if any, probative value.

Accordingly, the Defendant Officers request that this Court grant its motion *in limine* number 4.

Dated: November 22, 2019

Respectfully submitted,

/s/ Brian J. Stefanich
One of the Attorneys for Defendant Officers

Andrew M. Hale (andy@halemonico.com)
Barrett Boudreaux (bboudreaux@halemonico.com)
Brian J. Stefanich (bstefanich@halemonico.com)
William E. Bazarek (web@halemonico.com)
Hale & Monico, LLC
53 W. Jackson Blvd., Suite 330
Chicago, IL 60604

## <u>CERTIFICATE OF SERVICE</u>

I, Brian J. Stefanich, an attorney hereby certify that I filed the attached document on November 22, 2019, with the Court's CM/ECF system, which sent electronic copies of the same to all counsel of record.

*/s/ Brian J. Stefanich*