# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| EDDIE L. BOLDEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 17 C 00417 |
| v. ) | |
| ) | Honorable Steven Seeger |
| ) | |
| CITY OF CHICAGO, JAMES OLIVER, ) | |
| ANGELO PESAVENTO, and EDWARD SIWEK ) | |
| ) | |
| Defendants. ) | |

**DEFENDANT OFFICERS' REPLY IN SUPPORT OF THEIR MOTION *IN LIMINE* NO. 5 TO BAR CHARLES INGLES FROM TESTIFYING TO HIS EXPERIENCES IN OTHER CASES**

Defendants James Oliver, Angelo Pesavento, Edward Siwek, the Estate of George Karl, and the Estate of Michael Kill (collectively "Defendant Officers") by their attorneys, and for their reply in support of their motion *in limine* number 5 to bar Charles Ingles from Testifying about his other experiences at Area 2 when presenting other suspects for lineups, state as follows:

**INTRODUCTION**

Prior to Charles Ingles testifying on Plaintiff's behalf at the criminal trial, the State moved *in limine* to bar Ingles from testifying about whether he was allowed to be present in the viewing room during *other* lineups of *other* criminal suspects. (State's Motion *in Limine*, EB 7120, attached hereto as Exhibit A) Criminal defense counsel argued that Ingles' "prior experiences in the City of Chicago[1] during line-ups with other clients" where he had been

---

[1] Contrary to Plaintiff's statements in his Response, there is no record evidence that Ingles' testimony would have been that "Area 2 detective always allowed him to watch the lineups involving his clients from the witness viewing room." (Pl.'s Resp. to Def.s' MIL 5, Dkt #329, p. 1)

Case: 1:17-cv-00417 Document #: 371 Filed: 11/22/19 Page 2 of 8 PageID #:10248

allowed in the viewing room was relevant because he was not allowed in the viewing room during Plaintiff's lineup. (*See* Ex. 1, p. EB 7121) The trial court ruled that Ingles would not be allowed to "testify to his past experiences with regard to line-ups." (*Id*. at p. EB 7123)

Plaintiff asserts that Ingles' prior experiences of viewing lineups with the witness is relevant to (1) show the Defendant Officers' intent; (2) corroborate his expert witness; and (3) explain why Plaintiff agreed to stand in the lineup. (Pl.'s Resp. to Def.s' MIL 5, Dkt. #329, p. 1) Ingles' testimony concerning unidentified lineups, at unidentified times, at unidentified locations, involving unidentified Chicago police detectives is not relevant to show the Defendant Officers' intent in conducting Plaintiff's lineup. Similarly, Ingles' proposed testimony about these unidentified lineups with unidentified detectives does not corroborate Plaintiff's expert. In concluding that Ingles should have been allowed in the witness room during the lineup, Dr. Gaut relied upon a Chicago police department general order which stated that "if the suspect's attorney is present … and in the opinion of the supervisor the attorney would not impede, either tacitly or overtly, the impartial objectives of the lineup, the attorney may be allowed as an observer." (*See* Gaut Report, p. 11, attached to Pl.'s Resp. at Ex. E, Dkt. #329-5) Regarding Plaintiff's lineup, Ingles testified that there were no supervisors present at the station. (Ingles' Dep. p. 42, attached hereto as Exhibit B) Finally, there is simply no evidence in this record that establishes or even suggests that Ingles' prior experiences played any role in Plaintiff's decision to participate in the lineup.

## **ARGUMENT**

Ingles' proposed testimony regarding unidentified lineups, at unidentified times, at unidentified locations, involving unidentified detectives does not show Defendant Pesavento's or Detective Karl's intent in conducting Plaintiff's lineup. Plaintiff argues that Ingles' proposed

2

testimony would establish that because other detectives allowed him to view the lineup in the witness room, the Defendant Officers' refusal to do the same shows their intent to conduct an unduly suggestive lineup. (Dkt. #329, p. 1, 3-4.) However, the Defendant Officers' intent cannot be inferred from what unidentified detectives at unidentified lineups allowed Ingles to do. Arguably, what would be relevant to show the Defendant Officers' intent is how *they* previously conducted lineups. For example, if Detective Pesavento would always allow criminal defense counsel to view the lineup from the witness room, such evidence could be relevant to show Pesavento's intent in conducting a future lineup in which he refused to allow a criminal defense attorney in the witness room. Importantly, Ingles testified that he had no interactions with Defendant Pesavento on other cases prior to Plaintiff's lineup. (Ex. B, Ingles' Dep. p., 31) Similarly, there is no evidence in the record establishing Detective Pesavento's actions in other lineups if requests were made by criminal defense counsel to view the lineup from the witness room.

Plaintiff further argues that Ingles' experiences with *other* detectives helps refute Pesavento's testimony that he told Ingles he could view the lineup from the participant room. (Dkt. #329, p. 4) Contrary to Plaintiff's Response, Pesavento's position is not that there was some sort of confusion. Pesavento told Ingles that Ingles could view the lineup from the participant room. (Pesavento Dep., p. 165, Ex. B to Pl.'s Resp., Dkt. #329-2) If anyone was confused it was Ingles. At the motion to suppress identification hearing, Ingles was asked the following question by Plaintiff's counsel:

> Q: Mr. Ingles, did you express your intentions and desires clearly to the detectives that you wanted to be *in the room with your client* to view this lineup take place?
>
> A: There's no doubt about it he knew I wanted to be in there ….

3

(*See* Excerpt of Ingles' Motion to Suppress Testimony, p. 14, attached hereto as Exhibit C)

Curiously, Plaintiff argues that Ingles' past experiences of being allowed in the witness room is relevant to show the Defendant Officers' intent because it would not make sense for Ingles to be in the participant room. (Dkt. #329, p. 4) According to Plaintiff's argument, Ingles' past experiences make it more likely that the Defendant Officers lied to Ingles so they could direct Clifford to identify Plaintiff without a witness present. (*Id.*) In making this argument, Plaintiff seemingly forgot his own testimony that while in the participant room he could see through the one-way mirror and observe what was happening in the witness room. According to Plaintiff's own testimony, if Ingles chose to be in the participant room he could have corroborated Plaintiff's testimony because he would have observed Clifford seemingly identify someone else, attempt to leave, be brought back by the detectives, the detectives point out Plaintiff, and Clifford eventually nodding his head in agreement. As such, Ingles' past experiences cannot be used to show that the Defendant Officers lied to Ingles in order to have Clifford view the lineup with no other witnesses present.

Second, Ingles' past experiences with unidentified lineups involving unidentified detectives does not corroborate Dr. Gaut's opinion. As an initial matter, Dr. Gaut relied upon a Chicago police department general order which states "if the suspect's attorney is present … and in the opinion of the supervisor, the attorney would not impede, either tacitly or overtly, the impartial objectives of the lineup, the attorney may be allowed as an observer." (*See* Gaut Report, p. 11, attached to Pl.'s Resp. at Ex. E, Dkt. #329-5) Ingles' own testimony about Plaintiff's lineup shows that Dr. Gaut's opinion is invalid as there were no supervisors present allow him to be an observer. (Ex. B, Ingles' Dep., p. 42, attached hereto as Exhibit B) Moreover, Detective Pesavento testified that he did not allow Ingles into the witness room because he

4

believed that it would influence Clifford and was afraid that Ingles would say something while he was in the witness room. (Excerpt of Deposition of Pesavento, p. 167, attached hereto as Exhibit D)

Plaintiff argues that "Ingles' prior experiences with detectives at Area 2[2] further corroborates Dr. Gaut's conclusion that when detectives allow an attorney to watch a lineup … the only reasonable practice, is to allow the viewing of the witness" because it is not expected that anything of significance would be seen from the participant room. (Dkt. #329, p. 5) Once again, Plaintiff's argument ignores his own testimony that individuals in the participant room would have observed and heard numerous suggestive acts by the Defendant Officers.

There is simply no connection between Ingles' proposed testimony regarding other lineups involving other detectives and Dr. Gaut's testimony that Defendant Officers should have allowed Ingles into the witness room. Allowing Ingles to testify about unidentified lineups involving unidentified detectives would unfairly prejudice the Defendant Officers by attempting to convey to the jury that the Defendant Officers' actions were somehow inconsistent with unidentified detectives' actions in unidentified lineups. Moreover, the prejudice is even more pronounced here where the Defendant Officers know nothing about the circumstances of these unidentified lineups which prevents them from offering evidence to counter Ingles' proposed testimony. If Plaintiff's reasoning is correct, then a plaintiff would always be able to present evidence of a *different* police officer actions at any time that were inconsistent with the actions of a defendant officer under the guise that it showed the defendant officer "acted deliberately" or in an attempt to corroborate an expert opinion. This would result in never ending trials in which

---

[2] As stated above, there is no record evidence that Ingles' prior experiences were with "detectives from Area 2" or that the detectives were any of the Defendant Officers. This fact alone makes Ingles' proposed testimony irrelevant and not corroborative of Dr. Gaut's opinion.

both sides would present evidence of other instances of other police officers either acting consistently or inconsistently with the defendant's actions. This trial should be about what occurred in this case, not what Ingles had experienced during other lineups.

Finally, Ingles' past experiences do *not* explain why Plaintiff agreed to participate in the lineup. Plaintiff argues that "Ingles' experience with earlier Area 2 lineups is what Ingles shared with Plaintiff when explaining to him how the lineup process worked." Plaintiff cited to no part of Ingles or his own testimony in making this argument likely because no such testimony exists. There is no evidence that Ingles told Plaintiff about his past experiences of being allowed in the witness room when they were discussing whether Plaintiff would participate in the lineup. Specifically, Ingles testified:

> Q: What happened when you re-entered the interview room?
>
> A: I explained to my client that they wanted to put him in a lineup, that they would bring individuals who were in their lockup downstairs, try to match up as close as possible to what he looked like, and they would put him in a room. The room would have a two-way mirror. People could see them, but they couldn't see through the mirror to who was looking at them.
>
> And I told him that the detectives indicated to me that if he stood in the lineup, I could be present. And he said, yes.

(Ex. 2, Dep of Ingles at p. 34-35) There is no reference to Ingles' prior experiences with being allowed into the witness room when Ingles was advising Plaintiff on the lineup. Similarly, Plaintiff's testimony concerning his participation in the lineup is absent of any reference to Ingles stating anything about other instances in which Ingles was allowed in the witness room. (Portions of Deposition of Eddie Bolden, p. 195-196, attached hereto as Exhibit E) There is no support for Plaintiff's argument that Ingles' prior experiences is relevant to "explain why Plaintiff agreed to participate in the lineup." (Dkt. #329, p. 5).

Accordingly, this Court should grant the Defendant Officers' motion *in limine* number 5

6

and bar Ingles from testifying about his prior experiences of being allowed to view a lineup in the witness room.

Respectfully submitted,

DEFENDANT OFFICERS

BY: /s/ Brian J. Stefanich

Andrew M. Hale (andy@halemonico.com)
Barrett Boudreaux (bboudreaux@halemonico.com)
William E. Bazarek (web@halemonico.com)
Brian J. Stefanich (bstefanich@halemonico.com)
Hale & Monico LLC
53 West Jackson Blvd., Suite 330
(312) 870-6908

## **CERTIFICATE OF SERVICE**

I, Brian J. Stefanich, an attorney hereby certify that I filed the attached document on October 22, 2019, with the Court's CM/ECF system, which sent electronic copies of the same to all counsel of record.

/s/ *Brian J. Stefanich*