**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| EDDIE L. BOLDEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 17 C 00417 |
| v. ) | |
| ) | Honorable Steven C. Seeger |
| ) | |
| CITY OF CHICAGO, JAMES OLIVER, ) | |
| ANGELO PESAVENTO, and EDWARD SIWEK ) | |
| ) | |
| Defendants. ) | |

**DEFENDANT OFFICERS' REPLY IN SUPPORT OF THEIR MOTION *IN LIMINE* NO. 6 TO BAR REFERENCE TO THE ARRESTS OF EDNA WILLIAMS, JAMES WILLIAMS AND DAVID MCCRAY**

Defendants James Oliver, Angelo Pesavento, the Estate of George Karl, the Estate of Michael Kill, and Edward Siwek, by and through their attorneys, hereby reply in support of their motion, *in limine*, for an order barring evidence regarding the January 29, 1994 arrests of, and misdemeanor complaints filed against, Edna Williams, James Williams and David McCray as follows.

**INTRODUCTION**

Plaintiff contends that there is evidence that defendant Oliver arrested Edna Williams, James Williams and David McCray[1] and that the arrests are relevant to his claims because they are: (i) evidence of "the lengths to which Defendants went to cultivate Clifford as a witness against Plaintiff"; (ii) evidence "relevant to Clifford's credibility"; and (iii) somehow connected to

---

[1] Plaintiff concedes that Gatson was not arrested but apparently is seeking to admit evidence that she was detained for questioning. (Dkt. 349 at 2)

defendants Karl and Pesavento's alleged "false[] record[ing]" of the statements Edna Williams and Tanesha Gatson gave to them at the station.

Contrary to Plaintiff's claims, however, there is in fact no evidence that defendant Oliver, or any other defendant, arrested Edna Williams, James Williams and David McCray or took Tanesha Gatson to the station for questioning. For that reason alone, the Court should exclude any reference to the arrests or to the fact that Gatson was taken in for questioning.

Moreover, even if Officer Oliver had arrested these individuals or had taken Gatson in for questioning, Plaintiff has failed to demonstrate how these actions are relevant to the purported cultivation of Clifford Frazier as a witness against Plaintiff, Clifford Frazier's credibility or Plaintiff's already disposed of[2] and demonstrably false claim that Detectives Karl and Pesavento falsely recorded Edna Williams and Tanesha Gatson's statements that night.

Plaintiff's transparent grasp for evidence of malice where none exists and hope that the Court will allow insinuation to stand in the place of evidence he has wholly failed to adduce should be rejected.

## ARGUMENT

1. **The Police Reports Are Hearsay and Do Not Establish That Officer Oliver Made Any Arrests.**

The purported evidence Plaintiff points to are a few words of hearsay contained in two police reports authored by patrol officer Willis. The first report, authored in connection with the arrest of Edna Williams identifies Officer Oliver along with *ten* other non-defendant officers as "Also Arresting." (see Dkt. #349-2 at 2.) The contents of the report are inadmissible hearsay and at no point in his deposition did Willis ever testify that Oliver participated in the arrests. (See

---

[2] See Defendant Officer's Motion *in Limine* No. 4 (Dkt. #311) and their Reply In Support filed on November 22, 2019.

Excerpts of April 19, 2018 Deposition of Maurice Willis attached to this reply as Exhibit A.) To the contrary, Willis testified that he had no independent recollection of working on the underlying crimes. (*Id.* at 12:12-19) He also testified that he only "very vaguely" recalled crossing paths with Officer Oliver during the investigation and that vague recollection was based on reviewing his report, not on his independent memory. (*Id.* at 13:1-20.) Willis also testified that that Oliver and the other ten officers identified in his report as "also arresting" officers simply meant they had been at the scene; he did not testify that they had actually participated in the arrest. (*Id.* at 41:23-24; 42:1-2.)[3]

The second report Plaintiff relies on states: "AOs [arresting officers] along with BT 6611, BT 6613, Oliver and Hampton, responded to the call of the shootings." (Dkt. #349-2, 2; Exhibit A, 31:1-9.) Nowhere in the report is Officer Oliver identified as an arresting officer nor is he credited as an "also arresting" officer. Nor is Officer Oliver mentioned in the reports Willis authored in connection with the arrests of James Williams and David McCray. (See Dkt. #349-8 at 2; #349-5 at 2.)

**2. The Arrests Are Not Relevant to Intent or Motive.**

Plaintiff concedes that the arrests are not relevant to the suggestive procedures claim. (Dkt. #349, 6.) He also concedes that none of these individuals were coerced or pressured into giving evidence against Plaintiff and that he had knowledge of their arrests and the complaints filed against Edna Williams and David McCray (no complaint was filed against James and Gatson was not arrested). (*Id.* at n. 1.)

---

[3] As other officers in the case have testified, crediting officers in this way is a common courtesy that officers routinely extend to one another even if the officer credited was not present at an arrest or only had minimal involvement in an investigation. (See Excerpts of January 17, 2018 Deposition of Edward Siwek attached to this reply as Exhibit B at 51:19-24; 52:1-11; 108:21-24; 109: 2-8, 11-24; see also(See Excerpts of January 9, 2018 Deposition of Angelo Pesavento attached to this reply as Exhibit C at 58-60; 61:23-24; 62-63.)

3

Nevertheless, Plaintiff insists that the arrests are probative of Defendants' intent and motive because it is "enormously significant" that Clifford Frazier was not arrested for unlawful possession and use of a gun. (*Id.*) He also claims that choosing not to arrest Clifford while also choosing to arrest the others was part of Defendants' plan to "cultivate Clifford as a witness against Plaintiff" and to "wield control over him." (*Id.* at 2, 7.) The argument is illogical. There is no evidence that Defendants arrested these individuals. Nor is there any evidence that Clifford, who was in the hospital when they were arrested and still in the hospital after they were released, had any knowledge that they were arrested or ever had any contact with them to learn about their arrests at any time after he was released from the hospital. To state the obvious, if Clifford did not know that Edna and McCray were arrested for gun possession (James was arrested for possession of a cache of ammunitions), their arrests could not have been even an implicit threat that he too might be arrested. Furthermore, there is no evidence (nor has there been any allegation) that Edna, James, McCray or Gatson were arrested because they refused to identify Plaintiff or cooperate with police. Indeed, Defendants did not know who the shooter was when the arrests were made or when the decision not to arrest Clifford was made. Officer Temple, who responded to the J&J Fish and found a gun in Clifford's car discussed with her sergeant whether she should arrest Clifford, but the sergeant, and not a Defendant Officer, told her not to because the car had been unsecure. (See Excerpts of Deposition of Barbara Temple, attached to this reply as Exhibit D at 55-56) There is no evidence establishing who made the decision not to arrest Clifford for any other potential crimes.

Simply put, Plaintiff has no logical theory linking Edna, James and McCray's arrests to his arrest (which occurred a month after their arrests) or to any aspect of the investigation of the underlying crimes. If Plaintiff wants to argue that Clifford received a benefit by not getting arrested

and that such benefit is somehow probative of intent, the only relevant evidence is the fact that he was not arrested prior to the lineup which occurred a month after the arrests at issue were made. The sole purpose of seeking admission of the arrests is to prejudice Defendants and confuse and mislead the jury.

3. **The Arrest and Charging of McCray Does Not Impeach Clifford's Credibility.**

At Plaintiff's trial, Clifford testified that Ant (Anthony Williams) told him to drop his gun when he ran into J & J Fish after Plaintiff shot him. (Dkt. #"349-7, 154:22-24.) He also testified that he "probably" told police that a "black male" told him to drop his gun even though he knew it was Ant who told him to drop the gun. (*Id.* at 155:16-18.) This is hardly impeachment. Clifford did not falsely identify another man only to change his testimony at trial. He simply did not identify Ant by name when he was first interviewed in the hospital. Undoubtedly, he did so because Plaintiff had just murdered his brother and had tried to murder him during the course of a drug deal arranged by Ant. Clifford Frazier plainly feared for his life. If Plaintiff wants to argue that Clifford is not a credible witness because of his decision to not identify Ant as the black male who told him to drop the gun immediately after he had been shot and his brother murdered, the only relevant evidence is that he did not immediately identify Ant as the black male who told him to drop his gun. Clifford never identified McCray as that black male and McCray's arrest does not in any way impeach Clifford's trial testimony.

Again, the sole purpose of seeking admission of the arrests is to prejudice Defendants and confuse and mislead the jury.

4. **The Arrests Do Not Provide Relevant Background Information.**

Plaintiff's actual purpose in seeking admission of the arrests finally comes to light in the last section of his argument—he wants to resurrect his arguments regarding the destruction of

5

Clifford's gun which was done by other non-defendant police personnel at a court's direction and, as Judge Shah has already ruled, without the knowledge of any Defendant Officer. Without knowledge, there can be no intent and Plaintiff's attempt to argue otherwise is disingenuous at best. (See Defendants' Reply In Support of Motion In Limine #4 Dkt. #311) for a full discussion of this issue which Defendants adopt and incorporate into this reply.)

Likewise, Plaintiff's claim that the arrests provide background for Detective Karl and Pesavento's alleged falsification of Edna and Gatson's statements to them while they were at the station that night has no merit. In fact, the report documenting Gatson's statement to police states that Gatson reported that Plaintiff ("Leanir") entered J & J Fish sometime after 7:00 p.m.; he then went next door to see Anthony Williams; both men returned sometime later and talked for about fifteen minutes; Williams then left and Plaintiff stayed in the restaurant. (Dkt. #349-4 at 7.) The only recorded information material to Plaintiff's alibi defense and Gatson's role as an alibi witness is completely consistent with Gatson's testimony, at trial and in this case, that Plaintiff was in J & J Fish when Clifford Frazier entered the restaurant after he was shot.

As for James and Edna, James did not testify at trial nor did he testify at his deposition that he gave any statement to police regarding what he observed that night. (See April 10, 2018 Deposition of James Williams attached to this reply as Exhibit E.) Edna, on the other hand, testified that all she told police was that she saw Clifford come running into the kitchen and that she didn't see or hear anything else. (See Excerpts of March 27, 2018 Deposition of Edna Williams attached to this reply as Exhibit F at 41:18-25; 42:1-2; 73:3-9; 99:23-24; That is, she denied being a witness to the shooting which is utterly consistent with the report. (Dkt. #349-4 at 7.)

Plaintiff himself corroborated Edna's testimony that she told police she did not see or hear anything. Specifically, Plaintiff admitted that no one was willing to come forward to help for fear

6

of gang retaliation and specifically admitted that not even Edna was willing to come forward until "Cold Black" put out the word that people could help Plaintiff. (See Dkt. #335 at 2-3 and Dkt. #335-3 at 4-7[4]; see also Excerpts from Deposition of Eddie Bolden attached to this reply as Exhibit G at 285:16-24; 286:7-13.) Indeed, Plaintiff further testified that he himself was afraid to name the "real" shooter out of fear for his life. (Exhibit G at 170:14-24; 171:1-7.0.)

As for Detective Pesavento's purported failure to "follow up" with Edna and James, Plaintiff ignores that these individuals were Anthony Williams' parents and that Anthony ran a drug operation out of their restaurant which had been, and continued for several months to be, under FBI surveillance. (See Dkt. #336.) Defendants learned this information immediately after Pesavento's interviews of Edna and James. In short, any follow up would have been futile based on the information shared by the FBI regarding Anthony Williams and J & J Fish.

Even if Judge Shah had not rejected Plaintiff's claims of evidence fabrication, nothing about the arrests or Gatson's questioning at the station is relevant to any allegation of fabrication of Edna's or Gatson's statements. In other words, if Judge Shah's ruling did not exist, the only relevant evidence would be Edna and Gatson's testimony regarding what they claim they told police.

## CONCLUSION

For all of the foregoing reasons, Defendant Officers respectfully request that the Court issue an order barring any testimony or documentary evidence, including Plaintiff's trial exhibits 15-17 and 36-38, relating to the arrests of Edna Williams, James Williams and David McCray or complaints filed against Edna Williams and David McCray or any inferences or arguments that Tanesha Gatson was detained at Area 2.

---

[4] "4-7" refers to the page numbers of the transcript that is marked Dkt. #335-3.

                                        Respectfully submitted,

                                        DEFENDANT OFFICERS

                        BY:    /s/ Andrew M. Hale

Andrew M. Hale (andy@halemonico.com)
Barrett Boudreaux (bboudreaux@halemonico.com)
Brian J. Stefanich (bstefanich@halemonico.com)
William E. Bazarek (web@halemonico.com)
Hale & Monico, LLC
53 W. Jackson Blvd., Suite 330
Chicago, IL 60604
Ph. (312) 341-9646
Fax (312) 341-9656

## **CERTIFICATE OF SERVICE**

I, Brian J. Stefanich, an attorney hereby certify that I filed the attached document on November 22, 2019, with the Court's CM/ECF system, which sent electronic copies of the same to all counsel of record.

/s/ *Brian J. Stefanich*