# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

EDDIE L. BOLDEN,                            )
                                            )
          Plaintiff,                  )
                                            )    No. 17 C 00417
          v.                          )
                                            )    Honorable Steven Seeger
                                            )
CITY OF CHICAGO, JAMES OLIVER,              )
ANGELO PESAVENTO, and EDWARD J.             )
SIWEK, as SPECIAL REPRESENTATIVE            )
for the ESTATE of EDWARD SIWEK              )
                                            )
          Defendants.                 )

## DEFENDANT OFFICERS' MOTION IN LIMINE NO. 12 TO BAR IMPROPER CHARACTER EVIDENCE AGAINST DEFENDANT OLIVER

Defendants James Oliver, Angelo Pesavento, Edward J Siwek, as Special Representative for the Estate of Edward Siwek, (collectively "Defendant Officers"), by and through their attorneys, hereby move this Court, *in limine*, for an order barring Plaintiff from examining Defendant Oliver to elicit improper character evidence in violation of Federal Rule of Evidence 608(b). In support of their motion, Defendant Officers state as follows.

On March 15, 2021, Plaintiff notified Defendants by email that he intends to question Defendant Oliver regarding information obtained from a twenty-two year old Internal Affairs Division ("IAD") investigation into alleged conduct that occurred five years after the double murder and police investigation that ultimately resulted in Plaintiff's arrest (and that had nothing to do with any murder investigation). According to Plaintiff, this line of inquiry is admissible under Federal Rule of Evidence 608(b), which allows cross-examination on specific instances of misconduct if the conduct is probative of a witness's character for untruthfulness. The alleged

conduct at issue, however, is not probative of whether Oliver has a character for untruthfulness. And even it is, the alleged conduct, which occurred over two decades ago, is far too remote to be of any probative value, and whatever that value would be, the prejudice to all defendants far outweighs it.

Specifically, Plaintiff wants to question Oliver regarding information obtained during a 1999 IAD investigation related to Oliver's acceptance and commencement of a job as an investigator for the Illinois Secretary of State's Office ("SOS") shortly before his retirement from the Chicago Police Department ("CPD") officially commenced, that resulted in Oliver's receipt of paychecks covering the same nine days from both CPD and SOS. According to Plaintiff, the fact that Oliver was investigated for receiving pay for these nine days from both of his employers is relevant to his character for untruthfulness. The facts adduced during the investigation and at Oliver's deposition, however, establish otherwise.

As Oliver has explained, he intended to retire from CPD on his anniversary date in February 2000. (See Exhibit A, Excerpts From James Oliver Deposition, 28:10-11.) In anticipation of retirement, he applied to several jobs. (*Id.* at 28:12-13.) A few months before his retirement date, a job opportunity arose. (Ex. B, 2415.) [1] Oliver was going through a divorce, needed that new job and was allowed to use accrued "time due" at the CPD to cover any overlap between his duties at his new job and CPD as he awaited the official start of his retirement. (*Id.*, 2479, 2480.) He also believed he could avoid any overlap altogether because, as the investigation also established, Oliver was not required to report to his new job on a daily basis nor was he required to be in the office. (*Id.*, 2417.) Instead, he was assigned cases and allowed to proceed with the investigations

---

[1] Attached as Exhibit B to this motion is the Complaint Register and the Internal Affairs Division Summary Report of its investigation. For ease of reference, Defendants cite to the Bates number affixed to the bottom right of the pages.

on his own. (*Id.*) ("This position did not require OLIVER to report to an office daily. OLIVER would get his cases and proceed with his investigations on his own.").) In addition, Oliver had arranged to be scheduled to a later shift at CPD that would allow him to perform his investigatory work for SOS during traditional work hours if necessary. (Ex. A, 28:15-16.) Unfortunately, although he was temporarily assigned to this later shift (Ex. B, 2429, 2433, 2434), the change in assignment did not become permanent as quickly as expected (Ex. A, 28:15-16, 19-23). In short, during a difficult and stressful time in his life, Oliver believed he could accept a new job and use paid time off to manage overlap with his job at CPD while he awaited a permanent shift change as he neared his official retirement from the CPD.

As it turned out, there *may* have been an overlap on nine individual days. That is, on those days, Oliver was recorded as having been present for duty at the 9:00- 17:30 shift at the CPD. However, as Oliver explained, it was possible that he put in "time due" for those days and was erroneously marked as present. (Ex, B, 2479.) In fact, one time record reflects just such an error. (*Id.* at 2435.) As Oliver also explained, he was going through a divorce and transitioning to his new job and may not have paid as close attention as he otherwise would have to ensure he put in "time due" for those days and may have mistakenly believed that he had done so when he hadn't. (*Id.*)[2]

Oliver plainly had no intention of committing theft or deceiving SOS. Oliver was simply struggling with family issues and trying to keep his new job while he awaited what he thought was the imminent permanent shift change and the official start of his retirement. At no time, including during his interview for the SOS job, did Oliver fail to disclose that he was still on active duty with

---

[2] That Oliver intended to use time due is evidenced by his time records which show multiple instances of "CU-8" (time due) entries during the relevant time period. (Ex. B, 2428, 2435, 2437, 2454, 2456 (three entries of CU-8 possibly correcting other incorrect entries), 2457, 2459.)

CPD. As his supervisor, who also interviewed Oliver for the job, stated, Oliver told him he was in the "process of retiring" and planned to use "time due" if and when necessary while he awaited his official retirement date. (*Id.* at 2424.) At worst, Oliver failed to pay sufficient attention to how his time due was recorded and/or may have been mistaken as to which days he used time due at CPD. *Cf. United States v. Motley,* 940 F.2d 1079, 1083 (7th Cir. 1991) (misdemeanor conviction for "check deception" properly excluded under Rule 609(a)(2) where defendant had failed to present facts to show that the conviction was, in fact, one for deceptive practices and not one of negligence). In fact, the State's Attorney's Office reviewed the investigation and declined to prosecute (*id.*, 2416, 2471) likely because the investigation did not establish that Oliver had the requisite intent and there was no evidence that Oliver was not working on his SOS cases in the early morning and/or evening hours on those days, *i.e.*, before and after his shift at CPD.[3]

That an IAD investigator's unproven belief that Oliver's receipt of payment from two jobs on those days constituted theft because, in his opinion, it was "impossible to work both jobs simultaneously" (*id.* at 2417) is irrelevant hearsay (as is the entire investigation) and does not change the analysis. In fact, the investigation determined that Oliver was not required to conduct his investigations during any set hours of the day (*id.*); thus, it was actually "impossible" for the IAD investigator to determine that he did not in fact perform his investigatory work for SOS during the early morning or evening hours on those days. In addition, as Oliver explained, it was possible that CPD may have mistakenly recorded him as working on days when he put in for time due. (*Id.*, 2479.) Furthermore, nothing in the investigation indicates the Assistant Deputy Superintendent of IAD or the Superintendent of Police ever reviewed or approved the IAD investigator's opinion and recommended finding and penalty against Oliver in this decades-old investigation nor was

---

[3] In addition to the State declining to prosecute and notwithstanding this baseless "finding," Oliver went on to work for the Illinois Department of Revenue for over 10 years after his retirement from the CPD.

there any hearing at which Oliver could have mounted a defense and also presented evidence that he had put in for time due on those days or that he had in fact performed the work required of him for both jobs on each of those days. *Hollins v. City of Milwaukee*, 574 F.3d 822, 828–29 (7th Cir. 2009) (concluding that court was within its discretion to bar questioning about allegations of wrongdoing that were unproven).

Put simply, Plaintiff is seeking to admit an unproven, hearsay opinion from an IAD investigator that *characterizes* a specific instance of conduct as theft, a characterization disagreed with by the State, and which requires an utter disregard of the evidence that disputes that characterization. Given the circumstances and timing of the conduct, the limited evidence more plausibly supports that Oliver's conduct was an instance of inattention or mistake (and the mistake could very well have been a CPD administrative error). This was not a case of an officer trying to hold down two jobs at once for any significant amount of time. Oliver was retiring after thirty years on the force and was distracted and overwhelmed by his personal problems. He expected his shift change to come through any day and believed he could manage his duties appropriately for that short period of time. Instances of inattention or mistake (assuming for the sake of argument that it could be proven that Oliver did not in fact discharge his duties in connection with both jobs on those nine days or did not request time due for those days) are not admissible under Rule 608(b). *See United States v. Saunders,* 166 F.3d 907, 920 (7th Cir. 1999) (potential prejudice outweighed any minimal probative value of evidence offered under Rule 608(b) when there was no evidence that witness' conduct was willful).

Moreover, even if the unproven allegation, that Oliver received pay for nine days from one or the other job but did no work for that job, has some minimal bearing on "untruthfulness," that alleged conduct occurred twenty-two years ago and five years after the double murder. Thus, no

5

matter the probative value the alleged conduct may have had, that value is diminished to the point of irrelevance because the alleged conduct occurred over two decades ago, and allowing any cross-examination results in nothing but unfair prejudice to Oliver and all of the defendants here. *See United States v. Stoecker,* 215 F.3d 788, 790 (7th Cir. 2000) (conduct that occurred fifteen years before trial was "far too remote to be probative and it would have been unfairly prejudice"); *see also United States v. Miller*, 738 F.3d 361, 376 (D.C. Cir. 2013) (upholding district court's decision to preclude questioning on cross-examination under Rule 608(b) where the act was over thirty years old); *United States v. Mandell*, 12 CR 842, 2014 WL 464226, at \*3-5 (N.D. Ill. Feb. 3, 2014) (granting defendant's motion to bar cross-examination on his admissions and/or guilty pleas in connection with bribery when he was a police officer, falsifying an alibi, an insurance fraud scheme, a burglary he committed and the theft of office equipment from the CPD, all of which occurred 24 to 30 years earlier, as too remote *and* highly prejudicial).

Plaintiff's ploy here is obvious: he wants to cast Oliver as a corrupt and dishonest police officer in hopes of tainting Oliver and the other officers who, unlike Oliver, actually led the investigation of the underlying crimes and will be testifying as to the lineup and the investigation. *See* Fed. R. Evid. 403; *see also Berkovich v. Hicks*, 922 F.2d 1018, 1022-23 (2d Cir. 1991) (holding that the admission of evidence of other complaints against officers was irrelevant and overwhelmingly prejudicial to the defendant). As the evidence adduced during discovery establish, Oliver did not conduct the lineup, take Plaintiff into custody or arrest Plaintiff, and no witness, including Plaintiff, claims he did. Nor did Oliver ever testify in Plaintiff's criminal proceedings, including at trial, or speak to or present any evidence to Plaintiff's prosecutors. The extent of Oliver's involvement in the investigation was to: (1) briefly interview Clifford Frazier at the hospital before Frazier's formal statement to Detective Baker; and (2) bring Frazier to the police

station to view the line-up. In short, Oliver did not materially participate in the investigation and he had no involvement in the allegations relevant to the remaining claims in this case: an allegedly unduly suggestive line-up and an allegedly malicious prosecution.

The only reason Oliver was ever a defendant in this case was to cast doubt on the integrity of all of the Defendant Officers as a group (and the investigation as a whole) and to mislead the jury by implying that because unproven allegations of misconduct were made against Oliver in the past, he *and* the officers who he briefly and immaterially assisted are corrupt and therefore their testimony should not be trusted. Thus, whatever smidgen of probative value here would be overwhelmingly outweighed by the danger of unfair prejudice, not only to Oliver but also to the other officers, and of misleading the jury. *See* Fed. R. Evid. 403; *see also Berkovich v. Hicks*, 922 F.2d 1018, 1022-23 (2d Cir. 1991) (holding that the admission of evidence of other complaints against officers was irrelevant and overwhelmingly prejudicial to the defendant).

Finally, in the event that evidence of this nature is allowed to go to the jury, Defendants will be forced to present evidence of Oliver's side of the story, that such a complaint was unfounded, which would result in a collateral mini-trial within this trial. *Jones v. Hamelman*, 869 F.2d 1023, 1027 (7th Cir. 1989); *Vukadinovich v. Zentz*, 995 F.2d 750, 755-56 (7th Cir. 1993) (holding that complaints against officers arising from dissimilar events should be excluded from trial).

WHEREFORE, Defendant Officers request the Court issue an order barring any testimony or documentary evidence, relating to improper character evidence against Defendant Oliver.

Respectfully submitted,

DEFENDANT OFFICERS

BY:     */s/ Andrew M. Hale*
        Special Assistant Corporation Counsel

Andrew M. Hale (andy@halemonico.com)
Amy A. Hijjawi (ahijjawi@ halemonico.com)
Barrett E. Boudreaux (bboudreaux@halemonico.com)
William E. Bazarek (web@halemonico.com)
Brian J. Stefanich (bstefanich@halemonico.com)
Special Assistant Corporation Counsel
Hale & Monico LLC
53 West Jackson Blvd., Suite 337
Chicago, IL 60604
Phone: (312) 341-9646

8

## CERTIFICATE OF SERVICE

I, Andrew M. Hale, an attorney, hereby certify that I caused a copy of the foregoing DEFENDANT OFFICERS' MOTION IN LIMINE NO. 12 TO BAR IMPROPER CHARACTER EVIDENCE AGAINST DEFENDANT OLIVER on April 30, 2021, with the Court's CM/ECF system, which sent electronic copies of the same to all counsel of record.

/s/ *Andrew M. Hale*