**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | | |
|---|---|---|---|
| EDDIE L. BOLDEN, | ) | | |
| | ) | | |
| Plaintiff, | ) | Case No. 17 C 00417 | |
| | ) | | |
| vs. | ) | Honorable Steven Seeger | |
| | ) | | |
| CITY OF CHICAGO, et al., | ) | | |
| | ) | JURY TRIAL DEMANDED | |
| Defendants. | ) | | |

**DEFENDANT OFFICERS' SUPPLEMENT TO MOTION IN LIMINE NUMBER 10 TO**
**BAR THE TESTIMONY OF WILLIAM GAUT**

Defendants James Oliver, Angelo Pesavento, and Special Representative for the Estate of

Edward Siwek ("Defendant Officers"), through their undersigned attorneys, respectfully move this

Court to bar the testimony of Plaintiff Eddie Bolden's expert witness William Gaut. In support,

Defendant Officers state:

**INTRODUCTION**

On January 29, 1994, Plaintiff Eddie Bolden shot and killed Derrick Frazier and Ledell

Clayton during a purported drug transaction. Bolden then shot Clifford Frazier[1] – Derrick's brother

– who had witnessed Bolden get into the car with Derrick and Clayton immediately prior to the

shooting. Clifford fought Plaintiff off and survived his gunshot wounds from Bolden.

On February 3, 1994, Frazier was shown a photo array that included Plaintiff but he related

that he would need to see the offender in person to make an identification. On February 26, 1994,

Frazier viewed an in-person lineup at the police station that included Plaintiff and four other

individuals; Frazier immediately identified Plaintiff as the man who had shot him. On October 23,

1996, in open court during Plaintiff's criminal trial, Frazier again identified Plaintiff as the man

---

[1] Clifford Frazier will be referred to as "Frazier" and Derrick Frazier as "Derrick."

who shot him. During Frazier's deposition in this civil proceeding, he again vociferously identified Eddie Bolden as the man who entered into the car with the murder victims and who subsequently shot him on January 29, 1994.

Plaintiff now offers the expert opinion of William Gaut who is expected to testify that many of the things done in the investigation by City of Chicago police officers in this case fell below generally accepted law enforcement standards. While experts are permitted to inform the jury about the applicable standards and give their opinions as to whether certain actions fell below said standards, Gaut's opinions go far beyond that and ventures into matters that are prohibited. Gaut improperly opines on the credibility of Clifford Frazier, bolsters Plaintiff's testimony, and relies on an experiment by a third party that is completely lacking in foundation. Additionally, many of Gaut's opinions are not relevant to the issues remaining in this case.

## LEGAL STANDARD

Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.* govern the admission of expert testimony in federal courts. 509 U.S. 579 (1993). Under Rule 702 and *Daubert*, the district court must engage in a three-step analysis before admitting expert testimony. It must determine whether the witness is qualified; whether the expert's methodology is scientifically reliable; and whether the testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue." *Myers v. Illinois Cent. R.R.*, 629 F.3d 639, 644 (7th Cir. 2010). District judges possess considerable discretion in dealing with expert testimony. *See, e.g. Estate of Stuller v. United States*, 811 F.3d 890, 895 (7th Cir. 2016) ("if the court adhered to the *Daubert* framework, then its decision on [expert] admissibility is reviewed for abuse of discretion."). Importantly, the "proponent of the expert bears the burden of demonstrating that the

2

expert's testimony would satisfy the *Daubert* standard." *Lewis v. Citgo Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).

## ARGUMENT

Defendants and Frazier maintain the identification of Plaintiff as the shooter was made voluntarily, while Plaintiff claims Defendants employed unduly suggestive procedures to push Frazier to identify Plaintiff. But in the end, Frazier selected a filler, and only changed his selection to Bolden after the police officers made him do so. Plaintiff's fabrication, destruction of evidence and *Brady* based due process claims were dismissed on summary judgment. *See Order on Summary Judgment* (*Docket No. 276*).[2] Thus, the only remaining non-derivative claims are: a purported Fourteenth Amendment unduly suggestive lineup claim; a Fourth Amendment claim for pre-trial detention without probable cause; and an Illinois malicious prosecution claim.[3,4]

Gaut ultimately gives two opinions in his report:

1. The defendants failed to conduct a proper homicide investigation, resulting in the misidentification and ultimate conviction of Eddie Lynier Bolden.

2. The defendants' departures from generally accepted law enforcement practices and standards were severe, numerous, and material.

*Report of William Gaut* (Exhibit "A") at 8. The Court should exclude portions of these opinions and prohibit Gaut from discussing certain aspects of the investigation.

---

[2] The Court granted summary judgment in Defendants' favor on Plaintiff's destruction of evidence claim, suppression of evidence claim, and the fabrication of evidence claim – all brought under the Due Process Clause of the Fourteenth Amendment. *Dkt. No. 256.* The Court ruled that the only viable Due Process claim was on a theory of the unduly suggestive lineup. *Id.* at 48-50.

[3] The *Monell* claim has been bifurcated. *Docket No. 213.*

[4] Defendants have filed a motion *in limine* to exclude the Respondeat Superior and Indemnification claims from the verdict form.

## I. Gaut's first opinion should be precluded in its entirety as there is no right to any particularized police investigation.

"The rubric for evaluating the admissibility of expert evidence considers whether the expert was qualified, whether his methodology was scientifically reliable, and whether the testimony would have assisted the trier of fact in understanding the evidence or in determining the fact in issue." *Hartman v. EBSCO Indus. Inc.*, 758 F.3d 810, 817 (7th Cir. 2014); *see also Higgins v. Koch Dev. Corp.*, 794 F.3d 697, 704 (7th Cir. 2015) ("Rule 702 and *Daubert* require the district court to determine whether proposed expert testimony is both relevant and reliable."). Gaut opines that "[t]he defendants failed to conduct a proper homicide investigation, resulting in the misidentification and ultimate conviction of Eddie Lynier Bolden." This opinion should be barred in its entirety. *Exhibit A* at 8. First, Gaut states "the defendants engaged in numerous, egregious violations of generally accepted law enforcement practices, including in engaging in improper eyewitness identification procedures, failing to conduct proper follow-up investigation with respect to eyewitnesses, failing to preserve and/or causing material evidence to be destroyed, improperly withholding material evidence, improperly threatening key witnesses, possibly engaging in corrupt practices, and violating other generally accepted reporting practices." *Id.* at 28.

Simply put, there is no right to have the police investigate a person's case at all, and less to do so to his or her level of satisfaction. *See Rossi v. City of Chicago*, 790 F.3d 729, 735 (7th Cir. 2015). For this reason, Judge Shah dismissed Plaintiff's due process claim based on an inadequate investigation. (Dkt. 133 at 13 (citing *Harris v. Kuba*, 486 F.3d 1010, 1015 (7th Cir. 2007) and *United States v. White*, 970 F.2d 328, 337 (7th Cir. 1992)).) In ruling on the motion to dismiss, Judge Shah noted that Plaintiff was not entitled to an investigation or any assistance in preparing his defense. *Id.* As a result, the claim added nothing to the due process claims otherwise alleged.

4

*Id*. Thus, the due process clause does not provide a means for Plaintiff to introduce evidence critical of the investigation.

Furthermore, the injection of these extraneous opinions regarding adequacy of the investigation will mislead and confuse the jury in violation of the Federal Rules. Fed. R. Evid. 403. Therefore, all of Gaut's opinions on documenting witness statements, gathering evidence, witness follow-up should be barred.[5]

## II. Gaut's opinion regarding the lineup procedures used should be barred because it is not relevant given Plaintiff's sworn testimony.

To be admissible, expert testimony must not only be reliable, it must also be relevant. *Daubert*, 509 U.S. at 597. Here, Gaut's opinions on the identification procedures are not relevant.[6] According to Plaintiff's sworn testimony during his suppression hearing and in this case, *after* Clifford Frazier was shown a photo array which included a ten-year-old picture of him and *after* Frazier was walked past him in the police station and *after* the fillers, who bore no resemblance to him, were chosen and placed in the lineup room, *Frazier identified someone other than Plaintiff*. To be clear, after *all* the procedures his expert considered in forming his opinion were implemented, Plaintiff, under oath, testified both in his criminal proceedings and here, that Frazier identified a filler as the individual who he met the night of the underlying crimes, who he saw get into a car with the murder victims and who returned to J&J Fish to attempt to murder him too.

In short, according to Plaintiff's theory of the case and his sworn testimony, the procedures used did *not* result in an identification of Plaintiff (*i.e.*, there is no causal connection between the

---

[5] As discussed further in Defendants' Motions in Limine Numbers 4 and 10, these opinions should also be precluded because the Court granted summary judgment in Defendants' favor on the claims. Defendants incorporate by reference the arguments made in those motions herein.

[6] This argument is made in a more fulsome manner in Defendants' Motion in Limine 13 regarding Plaintiff's other expert, Loftus. The Defendants incorporate by reference that entire argument here as it equally applicable to both experts.

procedures and the identification). Thus, however characterized, the procedures are not relevant to the identification. This includes the following procedures:

1) A photo array with an outdated photo of Bolden in it was shown to Frazier 3 weeks before the lineup;

2) Clifford Frazier was told by one of the officers that they wanted Frazier to view the lineup because they had "got the guy;"

3) While waiting for the lineup to begin, Frazier was escorted by officers past Mr. Bolden's location;

4) Officers did not present Frazier with a form that said the suspect may not be in the lineup;

5) Bolden's attorney was not permitted in the viewing room of the lineup (*See* Defendants' Supplement to Motion in Limine 5);

6) And, according to Bolden, none of the fillers in the lineup looked like him.

None of these "procedures" are relevant here, because after all of them happened (according to Plaintiff), Plaintiff testified unequivocally and twice under oath that Frazier picked a filler. As such, to the extent there is any "procedure" here to assess, that procedure is Defendant Officers' alleged instruction to identify Plaintiff as the shooter. In short, Plaintiff states that Frazier initially identified a filler during the lineup and then started to walk away. An officer then opened the lineup door, called out Plaintiff's name. Plaintiff then observed an officer move in front of Frazier, say something, and then Frazier shook his head "no." The officer then directed Frazier back to the window and Frazier shook his head "yes" to identify Plaintiff. *Order on Summary Judgment* (*Docket No. 276*) at 11-12. No expert testimony is required to explain to a jury how such a "procedure" is unduly suggestive.

As for any relevance to probable cause, this expert's testimony is also not relevant because again, according to Plaintiff's theory of the case and his sworn testimony, Defendant Officers manufactured probable cause when they manufactured Frazier's identification. No national or

local standard on "procedures" is relevant to manufactured probable cause. Either the jury believes Plaintiff's claims or it doesn't.

Blackletter law instructs that the purpose of expert testimony is to allow the jury to hear an opinion from someone with specialized knowledge, training, or experience to assist in explaining complex or uncommon problems: "Expert testimony does not assist the trier of fact when the jury is able to evaluate the same evidence and is capable of drawing its own conclusions without the introduction of a proffered expert's testimony." *Matter of the Complaint of Ingram Barge Co.*, No. 13 C 3453, 2016 WL 3763450, at *10 (N. D. Ill. July 14, 2016). That is, an expert must testify to something more than what is obvious to a layperson. *Dhillon v. Crown Controls Corp.*, 269 F.3d 865, 871 (7th Cir. 2001).

Because no expert testimony is required to assist the jury in assessing and weighing the credibility of Plaintiff's testimony, allowing this evidence is tantamount to appointing Plaintiff's paid expert as the thirteenth juror whose sole function would be to buttress Plaintiff's credibility and usurp the fact-finding function of the actual jury. *United States v. Scheffer*, 523 U.S. 303, 313 (1998) ("Determining the weight and credibility of witness testimony [] has long been held to be the 'part of the case [that] belongs to the jury."); *United States v. Longstreet*, 567 F.3d 911, 919 (7th Cir. 2009) ("[I]t is the jury's role to determine the credibility of the witnesses and weigh the evidence."). Binding precedent does not allow such a result and the Court should therefore bar this testimony from this expert.

III.  **Gaut should be precluded from testifying that Bolden's assertion that he could see through the one-way mirror is more credible than the testimony of other witnesses.**

In his report, Gaut states that "it is my opinion that Mr. Bolden would have been able to see the silhouettes of individuals in the witness room under the conditions he described." *Exhibit A* at 15. The point of this opinion is to buttress his subsequent opinion that Frazier's "selection" of

7

Plaintiff as the shooter was a "misidentification." *Id.* at 8.

**A. Gaut's opinion that Plaintiff was "misidentified" lacks relevancy and is an improper attack on the credibility of Frazier which is reserved for the jury's determination.**

"A fundamental premise of our system of trial in both civil and criminal cases is that determining the weight and credibility of witness testimony is for the jury, who are presumed to be fitted for the task by their natural intelligence and their practical knowledge of the affairs of life." *Richman v. Sheahan*, 415 F.Supp.2d 929, 941-42 (N.D.Ill. 2006) (citing and applying *United States v. Scheffer*, 523 U.S. 303, 312 (1998)). It is this cornerstone that underlies the well-established principle that a witness's credibility "is not an appropriate subject matter for expert testimony." *United States v. Welch*, 368 F.3d 970, 975 (7th Cir. 2004); *Goodwin v. MTD Prod., Inc.*, 232 F.3d 600, 609 (7th Cir. 2000) ("credibility questions are within the province of the trier of fact"); *Hall*, 165 F.3d at 1107 ("[T]he credibility of eyewitness testimony is generally not an appropriate subject matter for expert testimony because it influences a critical function of the jury – determining the credibility of witnesses."). Indeed, statements about a witness's general credibility "will not help the trier of fact to understand the evidence or to determine a fact in issue." *La Playita Cicero, Inc. v. Town of Cicero*, No. 11 CV 1702/5561, 2017 WL 1151066, at *9 (N.D.Ill. Mar. 28, 2017) (Lee, J.). Instead, such statements are likely to confuse the jury and cause undue weight to be given to them if they are said by an expert.

By stating that the selection of Plaintiff as the shooter by Frazier was a "misidentification," Gaut is telling the jury that they should not believe Clifford Frazier when he testified that Plaintiff was the individual who shot him in 1994. It is beyond dispute that "assessing witness credibility" is a "critical function of the jury" and the Seventh Circuit "has repeatedly affirmed exclusion of expert opinions that usurp that function[.]" *Id.* Furthermore, Whether Frazier "misidentified" Bolden is not the issue for the jury. The issue for the jury is whether the officers engaged in

misconduct that violated Bolden's constitutional rights.  To be sure, a mistaken identification can be made absent any sort of police misconduct.

**B.  Gaut's opinion that Plaintiff could observe Frazier through the one-way mirror is an improper bolstering of Plaintiff's testimony and should be barred.**

In his report, Gaut opines that Plaintiff would have been able to observe the individuals in the witness room through the one-way mirror. *Exhibit A* at 14-15. Gaut then goes on to state that the basis of this opinion testing conducted by a third party (Ray Ruebenson) during this litigation. *Id.* These opinions should be barred.

An expert improperly bolstering the credibility of another witness is absolutely forbidden. *United States v. Hall*, 165 F.3d 1095, 1107 (7th Cir. 1999) ("[T]he credibility of eyewitness testimony is generally not an appropriate subject matter for expert testimony because it influences a critical function of the jury – determining the credibility of witnesses"). That is because it is the sole responsibility of the jury to determine the weight and credibility that is to be given to witness testimony. *Richman*, 415 F.Supp.2d at 941-42.

In *Richman*, the proponent attempted to introduce expert testimony which touched upon the credibility of witnesses in an excessive force case. 415 F.Supp.2d at 941. The court prohibited such testimony and barred the expert from testifying that "the physical evidence, official investigative reports, majority of witness statements, and autopsies undermine the conflicting witness statements that implied that [the plaintiff] was the victim of excessive force. Nor can he be allowed to testify that the overwhelming evidence does not support that [the plaintiff] was the victim of police misconduct or excessive force." *Id.* at 942. Also barred was testimony by an expert that certain witness testimony undermined conflicting witness testimony as to the amount of force used by the officers. *Id.* The court found that "such testimony is a direct and explicit commentary

on the credibility of witnesses and constitutes a usurpation of the jury's role." *Id.*

As in *Richman*, Plaintiff here seeks to highjack the jury's absolute right to judge credibility by confusing them with the testimony of an "expert" who will say that, in his opinion, Plaintiff is more credible of a witness and he should be believed as to whether Plaintiff was able to observe Frazier's interactions with police officers through the one-way mirror in February 1994. Deciding whether a witness is to be believed and whether the testimony is supported by other evidence is well-within the purview of a layperson juror and, indeed, is one of the bedrock principles of American law. As such, Gaut should be barred from improperly bolstering Plaintiff's testimony on this subject.

C. **Gaut's opinion as to whether Plaintiff would have been able to see through the one-way mirror is not reliable.**

Gaut's opinion as to the specific lighting measurements of the lineup room should also be prohibited because it is unreliable. First, the introduction of the lighting "experiment" conducted by Ruebenson in 2018 is inadmissible under Rule 403. Second, the application of the 2018 "experiment" is not the result of sound methodology. The lineup in question occurred in February 1994. Mr. Ruebenson did not conduct his "experiment" until September 5, 2018. *Ruebenson Report* (Exhibit "B"). There is no indication that this is even the same window that was in place in 1994 or that the lighting conditions and circumstances surrounding the "experiment" were the same in September 2018 as they were in February 1994 – given the 24-year gap, it is likely that the opposite is true. In addition, there has been no testimony and the record is devoid of whether the physical location of the individuals in the "experiment" and the location of Frazier and Plaintiff in the rooms were the same. *See Exhibit B*. In short, the "experiment" was conducted in a way that made no attempt to replicate the circumstances surrounding the February 1994 lineup.

10

To avoid unfair prejudice, evidence of an experiment is admissible only if the experiment was conducted under substantially similar conditions to the actual event. *United States v. Jackson*, 479 F.3d 485, 489 (7th Cir. 2007). Courts apply this requirement differently depending on the experiment's purpose. *Id*. If the experiment was conducted to recreate an event – as the one by Ruebenson – the court applies a higher standard that requires nearly identical conditions to the actual event. *Id*.

Here, Ruebenson conducted the "experiment" in an attempt to ascertain whether Plaintiff would have been able to observe the movements of Frazier and Defendant Officers during the lineup. Ruebenson had the lights turned off and had the darkened room door opened to various positions in an effort to observe the actions of the individual in the darkened room. *Exhibit B*. There is no indication in the report that these lighting conditions were "substantially similar" to those existing in February 1994 when Plaintiff was part of the lineup. Indeed, there is no documentation at all as to (1) whether the wattage of the lighting was the same in the darkened room, (2) whether the lighting was the same in the lineup room, (3) whether the lighting was the same in the hallway, or (4) whether Ruebenson and/or the individual in the darkened room were located in the same positions as Plaintiff, Frazier, and the Defendant Officers. In other words, Plaintiff – as the proponent of this expert analysis – fails to satisfy the requirement of establishing that the "experiment" was conducted in nearly identical conditions to the actual event. Absent this proof, this "experiment" is unfairly prejudicial and should be precluded under Rule 403.

Second, to be admissible, an expert's testimony must be "the production of reliable principles and methods." Fed. R. Evid. 702. Gaut failed to properly set forth his methodology to ensure it was reliably followed. In his report, Gaut asserts that the lighting conditions based on Ruebenson's calculations were "below generally accepted standards for lighting in a participant

11

room." *Exhibit A* at 15. But Gaut fails to provide (1) when those standards were set, (2) who set those standards, and (3) any support for his claim that those are the standards, such as cited rules or policies. *Id.* In other words, Gaut asserts that 500 to 600 LUX is the standard but does not provide any guidance as to why he believes that is so. *Id.* Simply put, Gaut merely puts forth his conclusion without providing any support for his claims.

**IV. <u>Gaut should be precluded from offering any legal conclusion that Plaintiff's constitutional rights or rights under Illinois law were violated.</u>**

As a general rule, an expert cannot offer legal opinions or conclusions. *See Jimenez v. City of Chicago*, 732 F.3d 710, 721 (7th Cir. 2013); *Client Funding Solutions Corp. v. Crim*, 943 F.Supp.2d 849, 863 (N.D.Ill. 2013) ("Opinions that amount to legal conclusions do not assist the trier of fact."). As the Seventh Circuit has ruled, "[e]xpert testimony as to legal conclusions that will determine the outcome of the case in inadmissible." *Good Shepherd Manor Found, Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003). Simply put, while Rule 704 does say that "[a]n opinion is not objectionable just because it embraces an ultimate issue," the rules do "prohibit experts from offering opinions about legal issues that will determine the outcome of a case." *Roundy's Inc. v. N.I.R.B.*, 674 F.3d 638, 648 (7th Cir. 2012); *see also King v. Kramer*, 763 F.3d 635, 646 (7th Cir. 2014).

"There is a difference between stating a legal conclusion [which is improper] and providing concrete information against which to measure abstract legal conceptions [which is proper.]" *United States v. Blount*, 502 F.3d 674, 680 (7th Cir. 2007) (brackets added). In the context of constitutional tort claims, "[w]hen an expert offers an opinion relevant to applying a legal standard," their role "is limited to describing sound professional standards and identifying departures from them." *Jimenez*, 732 F.3d at 721. Specifically, "[e]xpert testimony regarding relevant professional standards can give a jury a baseline to help evaluate whether a defendant's

deviations from those standards were merely negligent or were so severe or persistent as to support an inference of intentional or reckless conduct that violated a plaintiff's constitutional rights." *Id.* at 721-722.

In his first opinion, Gaut states that the improper homicide investigation led to Plaintiff's misidentification and conviction. *Exhibit A* at 8. In other words, Gaut would be telling the jury that Plaintiff was wrongfully incarcerated due to Defendants' misconduct. Such a determination is the ultimate legal issue that a jury must decide and any opinion on that subject is not only outcome determinative as to Plaintiff's constitutional claims, *see Roundy's*, 674 F.3d at 648, but also has the potential of confusing or misleading the jury. *See United States v. Lupton*, 620 F.3d 790, 799-800 (7th Cir. 2010); *also United States v. Caputo*, 382 F.Supp.2d 1045, 1049 (N.D.Ill. 2005) ("An expert witness cannot offer an opinion on what the law requires or permits because the judge, not the witnesses, instructs the jury about the relevant law."). It is up to a jury to decide whether Plaintiff's conviction and incarceration was the result of police misconduct and any opinion on that subject is inadmissible.

As discussed, the Court has previously dismissed all of Plaintiff's claims premised on a *Brady* violation. Nonetheless, the bulk of Gaut's report consists of his opinion that Defendant Officers violated *Brady* and withheld, failed to preserve, suppressed, or destroyed evidence. *Exhibit A* at 17-27. While Defendants have moved to bar Gaut from testifying to any aspect of the lineup and photo array, should Gaut be permitted to offer any testimony on any other subjects, the Court should limit such testimony to only describing the professional standards and bar him from characterizing the actions as "material." *See Jiminez*, 732 F.3d at 721 (an expert's opinion can be "limited to describing sound professional standards and identifying departures from them."). As it relates to constitutional standards and police investigations, the term "materiality" means the

evidence has apparent exculpatory value and the defendant would not have been able to obtain comparable evidence by other reasonably available means. *See Order on Summary Judgment* (*Docket No. 276*) at 18 (*citing Trombetta*, 467 U.S. at 488). However, an expert cannot testify as to the legal standards of what qualifies as a constitutional tort; such as whether certain evidence was "material" under *Brady. See, e.g.*, *United States v. Lupton*, 620 F.3d 790, 800 (7th Cir. 2010) (expert opinion explaining the law to the jury is "a subject for the court, not for testimonial experts."); *United States v. Caputo*, 382 F.Supp.2d 1045, 1049 (N.D. Ill. 2005) ("An expert witness cannot offer an opinion on what the law requires or permits because the judge, not the witnesses, instructs the jury about the relevant law."). And the use of such terms relating to constitutional standards would not be helpful to the jury. *See Hopkins v. City of Huntsville, Ala.*, No. CV-13-S-429-NE, 2014 WL 5488403, at *3 (N.D. Ala. Oct. 29, 2014) (barring Gaut from using legal terms to describe departures from commonly accepted police practices); *Weigle v. Pifer*, No. 2:14 CV 15087, 2015 WL 1980737, at *5 (S.D.W.Va. Apr. 30, 2015) (Gaut's testimony limited to opinions on police procedures and training and cannot include bald legal conclusions).

## CONCLUSION

For the reasons discussed above, the Court should limit the expert opinion of William Gaut to only issues relevant to the litigation as it stands now. All other opinions, credibility determinations, and legal conclusions Gaut offers throughout his report should be barred in their entirety.

Respectfully submitted,

/s/ *Barrett Boudreaux*
Special Assistant Corporation Counsel
*Attorneys for Defendant Officers*

14

Andrew M. Hale
Barrett Boudreaux
William Bazarek
Amy A. Hijjawi
Brian J. Stefanich
Hale & Monico, LLC
53 W. Jackson, Suite 337
Chicago, IL 60604