UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EDDIE L. BOLDEN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17 C 00417 |
| | ) | |
| vs. | ) | Honorable Steven Seeger |
| | ) | |
| CITY OF CHICAGO, et al., | ) | |
| | ) | JURY TRIAL DEMANDED |
| Defendants. | ) | |

**DEFENDANT OFFICERS' MOTION *IN LIMINE* NO. 13 TO BAR THE TESTIMONY OF GEOFFREY LOFTUS**

Defendants James Oliver, Angelo Pesavento, and Edward J. Siwek as Special Representative for the Estate of Edward Siwek ("Defendant Officers"), through their undersigned attorneys, respectfully move this Court to bar the testimony of Plaintiff Eddie Bolden's expert witness Geoffrey Loftus. In support, Defendant Officers state:

**INTRODUCTION**

On January 29, 1994, Plaintiff Eddie Bolden shot and killed Derrick Frazier and Ledell Clayton during a drug transaction. Bolden then shot Clifford Frazier[1] – Derrick's brother – who had witnessed Bolden get into the car with Derrick and Clayton immediately prior to the shooting. Clifford fought Plaintiff off and survived his gunshot wounds from Bolden.

On February 3, 1994, Frazier was shown a photo array that included a ten-year-old picture of Plaintiff but he stated that he wanted to view an in-person lineup before making any identification. Over three weeks later, on February 26, 1994, Frazier viewed an in-person lineup at the police station that included Plaintiff and four other individuals; Frazier immediately identified Plaintiff as the man who had shot him. On October 23, 1996, in open court during

---

[1] Clifford Frazier will be referred to as "Frazier" and Derrick Frazier as "Derrick."

Plaintiff's criminal trial, Frazier again identified Plaintiff as the man who shot him. During his deposition in this civil proceeding, Frazier again identified Eddie Bolden as the man who entered into the car with the murder victims and who subsequently shot him (Frazier) on January 29, 1994.

Plaintiff's fabrication, destruction of evidence and *Brady* based due process claims were dismissed on summary judgment. *See* Order on Summary Judgment Motion (Docket No. 276).[2] Thus, the only remaining non-derivative claims are: a Fourteenth Amendment unduly suggestive lineup claim; a Fourth Amendment claim for pre-trial detention without probable cause; and an Illinois malicious prosecution claim.[3,4]

Plaintiff seeks to admit the opinions of Geoffrey Loftus who is expected to testify that Clifford Frazier's memory of the offender (Bolden) was "likely poor" and therefore his subsequent identification of Bolden (all three of them) were "unreliable." Loftus further opines that he believes the lineup procedures employed by the Defendant Officers were "suggestive and biased." The Court should exclude Loftus' testimony because it is not relevant and consists of nothing more than improper legal conclusions and inadmissible attacks on the credibility of Clifford Frazier.

## **LEGAL STANDARD**

Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.* govern the admission of expert testimony in federal courts. 509 U.S. 579 (1993). Under Rule 702 and *Daubert*, the district court must engage in a three-step analysis before admitting expert testimony. It must determine whether the witness is qualified; whether the expert's methodology is

---

[2] The Court granted summary judgment in Defendants' favor on Plaintiff's destruction of evidence claim, suppression of evidence claim, and the fabrication of evidence claim – all brought under the Due Process Clause of the Fourteenth Amendment. (Dkt. No. 256.) The Court ruled that the only viable Due Process claim was on a theory of the unduly suggestive lineup. (*Id.* at 48-50.)

[3] The *Monell* claim has been bifurcated. (Dkt. No. 213.)

[4] Defendants have filed a motion *in limine* to exclude the Respondeat Superior and Indemnification claims from the verdict form.

scientifically reliable; and whether the testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue." *Myers v. Illinois Cent. R.R.*, 629 F.3d 639, 644 (7th Cir. 2010). District judges possess considerable discretion in dealing with expert testimony. *See, e.g. Estate of Stuller v. United States*, 811 F.3d 890, 895 (7th Cir. 2016) ("if the court adhered to the *Daubert* framework, then its decision on [expert] admissibility is reviewed for abuse of discretion.").

The "proponent of the expert bears the burden of demonstrating that the expert's testimony would satisfy the *Daubert* standard." *Lewis v. Citgo Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).

## ARGUMENT

Plaintiff's expert offers three opinions:

1. Mr. Frazier's initial memory of the offender, which he acquired as a result of seeing the offender commit the crime, was likely poor.
2. Defendants Angelo Pesavento, George Karl, Edward Siwek, and James Oliver employed suggestive and biased identification procedures against Mr. Bolden.
3. Mr. Frazier's identification of Mr. Bolden during the lineup and his subsequent in-court identification of Mr. Bolden were unreliable.

(See Loftus Export Report attached as Exhibit A to this motion at 2-3.)

The Court should bar this expert's report and testimony because his opinions (i) are not relevant to any remaining claim in this case; (ii) are legal conclusions; (iii) are misleading; and (iv) impermissibly attack the credibility of Frazier's testimony.

### I. The Court Should Bar Loftus' Testimony In Its Entirety Because It Is Not Relevant To Any Remaining Claim Or Issue In This Case.

To be admissible, expert testimony must not only be reliable, it must also be relevant. *Daubert*, 509 U.S. at 597. Testimony is relevant only if it assists the trier of fact in understanding the evidence or in determining a fact at issue. *Myers*, 629 F.3d at 644. Whether the procedures

3

used were suggestive or whether Frazier's memory was "likely poor" has no bearing on the issues the jury must determine in this case because Plaintiff contends the lineup identification never happened.

According to Plaintiff's sworn testimony during his suppression hearing and in this case, *after* Clifford Frazier was shown a photo array (which included a ten-year-old picture of him) and *after* Frazier walked past him in the police station and *after* the fillers, who according to Plaintiff bore no resemblance to him, were chosen and placed in the lineup room, *Frazier identified someone other than Plaintiff*. (Excerpts from Deposition of Eddie Bolden attached as Exhibit B, 204:7-10.) To be clear, after *all* the procedures his expert considered in forming his opinions were implemented, Plaintiff, under oath, testified both in his criminal proceedings and here that he saw Frazier identify *a filler* as the individual who he met the night of the underlying crimes, who he saw get into a car with the murder victims and who returned to J&J Fish to attempt to murder him too and failed to identify Plaintiff.[5]

After that identification, Plaintiff has sworn, an unidentified officer who was in the witness room opened the door leading out to an open area adjacent to the witness room and "said something," after which Officer Karl opened the door to the lineup room and asked Plaintiff if he

---

[5] Those procedures were:
1) A photo array which included a ten-year-old of Bolden in it was shown to Frazier 3 weeks before the lineup;
2) Frazier was told by one of the officers that they wanted Frazier to view the lineup because they had "got the guy;"
3) While waiting for the lineup to begin, Frazier walked past Bolden's location;
4) According to Bolden, none of the fillers in the lineup looked like him;
5) The officers did not use a double-blind; and
6) The lineup participants were not shown sequentially but were shown as one group.

(Ex. A, 3, 4, 11, 12, 13.)

4

was "Bolden." (*Id.* at 204:15-24.) After Plaintiff responded he was, another unidentified officer in the witness room moved Frazier in front of Plaintiff and Frazier "shook his head no" and began walking away. (*Id.* at 205:1-5.) Thus, again according to Plaintiff's sworn testimony, even after Plaintiff was asked if he was "Bolden," Frazier *still* failed to identify him. The unidentified officer then grabbed Frazier, pulled him back to the spot directly facing Plaintiff and instructed him to identify Plaintiff. (*Id.* at 205:6-8, 207:22-24, 208:19.)[6]

In short, according to Plaintiff's theory of the case and his sworn testimony, the procedures used did *not* result in an identification of Plaintiff. They resulted in the identification of a filler but, Plaintiff swears, the officers manufactured an identification of him because, for some unknown reason, they just had it out for Eddie Bolden. Thus, however characterized, the procedures are not relevant to Plaintiff's allegations. Likewise, whether Frazier had a good memory or a poor memory of the perpetrator with whom he spent several minutes *before* any of the crimes were committed and to whom he paid close attention during those several minutes, is also irrelevant because, according to Plaintiff's sworn testimony, Frazier's memory caused him to pick a filler. Neither expert testimony on memory nor on *any* national or local police procedure relating to lineups in particular or the investigation of crimes in general is relevant to whether the officers manufactured Frazier's identification. Either the jury believes Plaintiff's testimony or it does not. It is really that simple.

Because no expert testimony is required to assist the jury in assessing and weighing the credibility of Plaintiff's testimony and because that testimony is irrelevant to Plaintiff's theory—that there was no identification at the lineup, allowing this evidence is tantamount to appointing

---

[6] Not a single witness corroborates Plaintiff's allegation that Officer Karl opened the lineup room door and asked Plaintiff to identify himself, including Charles Ingles, Plaintiff's counsel during the lineup, who was present and waiting in the open are right outside the witness room and the lineup room.

5

Plaintiff's paid expert as the thirteenth juror whose sole function would be to buttress Plaintiff's credibility and usurp the fact-finding function of the actual jury. *United States v. Scheffer*, 523 U.S. 303, 313 (1998) ("Determining the weight and credibility of witness testimony [] has long been held to be the 'part of the case [that] belongs to the jury."); *United States v. Longstreet*, 567 F.3d 911, 919 (7th Cir. 2009) ("[I]t is the jury's role to determine the credibility of the witnesses and weigh the evidence."). Binding precedent does not allow such a result and the Court should therefore bar any testimony from this expert.

**II. Even Disregarding Plaintiff's Sworn Testimony And Theory of His Case, Loftus' Expert Opinion Will Not Assist the Trier of Fact.**

Even if Plaintiff had not sworn under oath that the identification was manufactured, his expert's opinion—the identification was not reliable because Frazier's memory was "likely poor" and influenced by the procedures used, and hence, the officers should not have relied on it—is only relevant (and then only remotely) if the officers themselves had knowledge of the research underlying the opinion. If they had no such knowledge, that research could not be a basis for the inference Plaintiff wants the jury to draw: that the officers' reliance on Frazier's memory was improper because they knew it was "likely poor" and influenced by the procedures used, and therefore they knew it was unreliable.[7] Thus, the opinion misleadingly implies, if not outright assumes, either that the officers themselves were experts in memory formation and had knowledge of and were familiar with the general content of this expert's proposed testimony when Frazier made his identification in 1994, or that they should have been or were required to be.

But there is no such standard imposed under law on the officers. To the contrary, the Seventh Circuit has expressly held that police officers are not expected or required to have any

---

[7] Defendant Officers note that the bulk of the research Loftus relies on post-dates the events in this case, including the lineup. (See Ex. B at 4 and n. 2.)

expert knowledge with respect to eyewitness identifications. *Phillips v. Allen*, 668 F.3d 912, 915, 916 (7th Cir. 2012) (concluding that police officers are not expected to have sufficient expertise to determine whether a particular lineup procedure is unduly suggestive: "[Plaintiff] tells us that [defendant officer] must have known that he was steering [eyewitness] to pick [him] and that a reasonable officer must have known that priming a witness in this way would produce an inaccurate selection * * * but nothing is obvious about the psychology of eyewitness identification.") Thus, the Seventh Circuit has instructed, a police officer cannot be held liable under §1983 unless the procedure at issue had "already been forbidden by an authoritative judicial decision (that is, by the Supreme Court or the court of appeals with territorial jurisdiction) and the officer uses it anyway." *Id.* at 917; *see also Coleman v. City of Peoria*, 925 F.3d 336, 347-9 (7th Cir. 2019) (in a reversed conviction case, police officers are not subject to liability for use of suggestive procedures unless an appellate court in plaintiff's criminal proceedings found the procedures to be unconstitutional *and* such procedures had been proscribed by it or the Supreme Court *before* the officer used them).

The Seventh Circuit's reasoning on this issue exposes the fallacy of allowing expert testimony to indict the conduct of police officers in the context of securing an identification: if a jury needs an expert to explain why Frazier's memory *may* have been poor or susceptible to influence from a specific procedure, and the identification therefore unreliable, the officers themselves could not have been expected to know this, especially in 1994. And, again, the Seventh Circuit has said as much. *Phillips*, 668 F.3d at 914-17; *Coleman*, 925 F.3d at 347-9).

Not only does binding precedent *not* require the officers to have any expert knowledge with respect to securing an identification, Plaintiff has adduced no evidence that the officers had any such knowledge (they did not). Allowing an expert to explain memory and/or how the

7

procedures used affected that memory and then to conclude that the officers should not have relied on the identification will mislead the jury into assuming that the officers *did* have this knowledge and nefariously relied on the identification anyway.

Moreover, even if the officers had had this knowledge, the expert's "opinion" would still have little if any relevance because the research that Plaintiff wants the expert testify to, as the expert himself admits, is *not* universally applicable to the human population and is *not* a uniform predicator of the effect of the factors he discusses on memory (indeed, the report is riddled with terms such as "not necessarily," "possible," and "may," and again, the bulk of the research relied on post-dates the events in this case). If the expert himself cannot say whether the factors or procedures in fact affected *Frazier*'s memory, he should not be able to testify to the jury that it was poor and influenced by the procedures, and that his identification was therefore unreliable, *i.e.*, that the officers should not have relied on Frazier's identification. Restated simply, this expert did not interview Frazier and he did not subject Frazier to any of the testing used in the research upon which he relies and thus the expert has no basis to form an opinion, which is in fact a speculative *conclusion* as to *Frazier*'s memory and/or the effect of various factors, including the procedures used, on his memory.

The issue for the jury here is not whether these or any other police officers were or are expected to be experts on how memory is formed or impacted by various factors, including the procedures used during a lineup, and therefore capable of assessing the reliability of every identification in every criminal investigation. Again, even experts cannot predict whether a particular witness has an exceptional memory or a poor memory or is susceptible to certain factors or procedures. And to impose such a standard on police officers is not only illogical (if the jury

needs expert guidance then so did the officers), it has no basis in the law. In fact, such a standard has been expressly rejected by the Seventh Circuit. *See Phillips* and *Coleman supra*.

Nor is the issue whether the identification (that Plaintiff says never happened) was accurate. The actual issue for the jury is whether Frazier's identification was so obviously unreliable, that the officers were not entitled to rely on it. Plaintiff has adduced no such evidence.[8] To fill this hole, Plaintiff wants to insinuate an expertise or body of knowledge the officers did not have and confuse the jury with irrelevant testimony from a witness with the gravitas of "expert" attached to him whose entire opinion is based on research beyond the expertise of police officers and assumes Plaintiff's testimony is more credible than Frazier's. In fact, it utterly disregards Frazier's actual testimony regarding how much time he was face-to-face with Eddie Bolden inside of two well-lit restaurants *before* his brother was murdered and he was attacked (not to mention Frazier's testimony regarding the lighting conditions on the very busy and well-lit street where the second shooting occurred).

Simply put, while the latest research on memory or suggestive lineups may posit that an identification is not reliable, the officers are not charged with knowing the latest research in making *their* assessment. Loftus' testimony does not establish what the officers knew or should have known in making their assessment and instead amounts to nothing more than telling the jury that

---

[8] To the contrary, as expected in a gang-related shooting, no witness was willing to admit that they saw anything much less that they could identify the shooter. In fact, Plaintiff himself testified that he saw the "real" shooter but did not tell police because "if [he] would have told what [he] saw, the Gangster Disciples would have killed [him]." (Ex. B, 170:18-24, 171:1-7.) And the forensic evidence corroborated Frazier's identification. Specifically, Frazier told police that the same man who got into the car and drove away with his brother Derrick and Ledell Clayton came back to the street where J&J Fish is located, and where Frazier was waiting for his brother to return, and began shooting at him. Forensic testing confirmed that the bullets recovered from the street in front of J&J Fish and from Frazier's body were fired from the same gun that had fired the bullets that killed Derrick Frazier and Ledell Clayton. That is, forensics established that Frazier's statement that the man who left with his brother was the same man who returned to attack him was in fact accurate. And, as will be established at trial, there was additional, equally compelling evidence that corroborated Frazier's identification.

9

in his expert opinion, the identification was unreliable. That usurps the role of the jurors. "Expert testimony does not assist the trier of fact when the jury is able to evaluate the same evidence and is capable of drawing its own conclusions without the introduction of a proffered expert's testimony." *Matter of the Complaint of Ingram Barge Co.*, No. 13 C 3453, 2016 WL 3763450, at *10 (N. D. Ill. July 14, 2016).

In the end, Plaintiff seeks to confuse and mislead the jury by shifting the focus of inquiry from the officers' conduct and knowledge to memory formation and the accuracy of Frazier's identification. But the issue here is not whether Frazier's identification was accurate, it is whether the officers had reason to believe it wasn't. No expert testimony is necessary to enable the jury to make this determination.

## CONCLUSION

For all of the foregoing reasons, the Court should bar Gregory Loftus' testimony in its entirety.

Respectfully submitted,

/s/ *Amy A. Hijjawi*
Special Assistant Corporation Counsel

*Attorneys for Defendant Officers*

Andrew M. Hale
Barrett Boudreaux
William Bazarek
Amy A. Hijjawi
Brian J. Stefanich
Hale & Monico, LLC
53 W. Jackson, Suite 337
Chicago, IL 60604

**<u>CERTIFICATE OF SERVICE</u>**

      I, the undersigned attorney, certify that I filed the foregoing using the Court's electronic filing system. As a result, copies of the filed document were electronically served upon all counsel of record.

                                                                   */s/* Amy A. Hijjawi