IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EDDIE L. BOLDEN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17 C 00417 |
| | ) | |
| vs. | ) | Honorable Steven C. Seeger |
| | ) | |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT OFFICERS' MOTION *IN LIMINE* NO. 12
TO BAR CHARACTER EVIDENCE AGAINST DEFENDANT OLIVER**

Plaintiff Eddie L. Bolden, by his undersigned counsel, respectfully submits this Response in Opposition to Defendant Officers' Motion *in Limine* No. 12 to Bar Improper Character Evidence Against Defendant Oliver (Dkt. 430).

**INTRODUCTION**

Federal Rule of Evidence 608(b) permits a party to question a witness about a prior specific instance of the witness's conduct in order to attack or support the witness's character for truthfulness. Extrinsic evidence is not admissible to prove the conduct.

Plaintiff Eddie L. Bolden has notified Defendants of Plaintiff's intention to question Defendant James Oliver at trial pursuant to Rule 608(b) regarding "his dishonest conduct in working full time for the Illinois Secretary of State's Office while employed full time for the CPD, resulting in him improperly receiving pay checks for two full time jobs, for the same work hours." *See* Email of V. Hays to A. Hale *et al.*, of March 15, 2021 at 9:18 AM (Dkt. 422-1 at 5). Plaintiff made note that he does not intend to introduce extrinsic evidence of Defendant Oliver's misconduct, such as the Chicago Police Department ("CPD") paperwork and exhibits that

1

triggered and provided a basis for substantiating the CPD's investigation. *Id.* But importantly, such paperwork does exist. Despite Defendant Oliver's attempt to explain away and downplay his conduct, his responsibility for wage theft was well-established by the CPD's Internal Affairs investigation that substantiated the wage theft allegations against him and recommended his separation from the CPD. There is a strong, reliable basis for Plaintiff's questioning about this wage theft.

The Court has broad discretion to determine the admissibility of prior conduct evidence under Rule 608(b), and here, questioning about Defendant Oliver's prior wage theft from the CPD and the Illinois Secretary of State's Office is warranted. Courts in this district consistently hold that acts of theft are probative of truthfulness, and thus, the prior conduct at issue goes directly to Defendant Oliver's credibility and willingness to deceive others. Further, given the severity of the conduct alleged and its strong bearing on Defendant Oliver's credibility, the age of the conduct should present no barrier to it being fair game for cross examination. Moreover, Defendants provide no legal support or logical explanation for their contention that questioning Defendant Oliver about his prior misconduct would be unduly prejudicial to him or to the other defendants. Defendants' Motion *in Limine* No. 12 is without basis and should be denied.

## BACKGROUND

Defendant James Oliver ("Oliver") was a member of the CPD from 1971 until 1999. (Ex. 1, Excerpts from Oliver Dep. at 26:14-19.) At the end of his tenure with the CPD, in October 1999, Oliver was the subject of an investigation conducted by the CPD's Internal Affairs Division, based upon allegations that he (a) engaged in theft by collecting paychecks for working simultaneous hours for CPD and the Illinois Secretary of State's Office on nine different days in September and October 1999, and (b) drove a CPD vehicle without authorization and for non-CPD

2

business to his job at the Illinois Secretary of State's Office in Joliet, Illinois.[1] (CHI.BOLDEN 002414-22.)[2] After a full investigation, documented in a Complaint Register ("CR"), all ten allegations against Oliver were sustained, meaning they were found to be credible. (CHI.BOLDEN 002417-22.) More specifically, Oliver was found to have collected paychecks for working the same hours at the two public jobs for the dates of September 17, 22, 23, 24, 27, and 30, as well as October 1, 4, and 13, of 1999. (CHI.BOLDEN 002417-21.)

The Internal Affairs investigation against Oliver took place in October 1999, the same month when some of the wrongdoing occurred. Oliver was interviewed on October 26, 1999 as part of the investigation, and at that time, he acknowledged that he "accept[ed] a paycheck from the Chicago Police Department and the Illinois Secretary of State's Office for nine days that he was carried on both payrolls for the same hours." (CHI.BOLDEN 002416.) At no point during his October 1999 interview with Internal Affairs did Oliver claim that he had arranged to be moved to a later shift at CPD, as he now asserts in the instant motion. (*See* Dkt. 430 at 3; Ex. 1, Oliver Dep. at 28:8-24.) To the contrary, when interviewed during the investigation about where he had worked on what days, Oliver repeatedly answered "I don't recall," despite that he was being asked about shifts that occurred just a few weeks prior to his interview. (CHI.BOLDEN 002478-79.) The Internal Affairs investigation found that Oliver had not even submitted an application for retirement at the time of his offenses. (CHI.BOLDEN 002425.)

Based on the nine days that Oliver was deemed to have collected double-pay for simultaneous shifts at two different agencies when he obviously could not have worked both, CPD

---

[1] To be clear, Plaintiff only seeks to question Defendant Oliver regarding the wage theft, and not his unauthorized use of a CPD vehicle to report to his Secretary of State's Office job.

[2] The Complaint Register and Internal Affairs Division Summary Report related to this incident were filed under seal as Exhibit B to Defendant Officers' Motion *in Limine* No. 12. *See* Dkt. 431. For ease of reference, citations herein are to the Bates numbering on the bottom right of each page of Exhibit B.

deemed Oliver to be "guilty of Theft." (CHI.BOLDEN 002417.) Even considering Oliver's prior complimentary history, Internal Affairs recommended that Oliver be separated from CPD as a result of his misconduct. (CHI.BOLDEN 002422.) Oliver avoided termination by accelerating his retirement from CPD. (Ex. 1, Oliver Dep. at 28:8-16, 192:10-17.)

## ARGUMENT

Defendants' Motion *in Limine* No. 12 should be denied as Defendants have failed to satisfy their heavy burden of demonstrating that the questioning that they seek to preclude is inadmissible for any purpose. *See United States v. Brown*, No. 08-cr-1009, 2011 WL 43048, at *2 (N.D. Ill. Jan. 6, 2011) ("The party seeking to exclude evidence has the burden of demonstrating that the evidence would be inadmissible for any purpose."). To the contrary, Plaintiff's request to ask Defendant Oliver during his testimony about his prior theft falls squarely within the permitted areas of prior conduct questioning under Federal Rule of Evidence 608(b). By its terms, and as recognized by the Court of Appeals for the Seventh Circuit, the trial court has great discretion to allow examination about prior conduct that is probative of the witness's truthfulness or untruthfulness. *See, e.g., First Weber Grp., Inc. v. Horsfall*, 738 F.3d 767, 778 (7th Cir. 2013) (observing that Rule 608(b) "is permissive, not mandatory, leaving the court with great discretion")

Here, the Court should permit Plaintiff to cross examine Defendant Oliver about this prior misconduct, as it goes directly to Defendant Oliver's credibility and willingness to deceive others. The conduct at issue remains highly probative of Defendant Oliver's character for truthfulness, notwithstanding the fact that it took place some time ago. In fact, the probative nature of the questioning – which is uniquely personal to Oliver – significantly outweighs any risk of undue prejudice to Oliver or to the other defendants. Defendants' Motion *in Limine* No. 12 should be denied, and the jury should be permitted to hear about Defendant Oliver's prior misconduct as they

4

evaluate his credibility.

### I. The Misconduct at Issue Is Probative of Oliver's Character for Truthfulness.

First, it is well established in this Circuit that acts of theft are probative of a witness's character for truthfulness for purposes of Rule 608(b). *See Young v. James Green Mgmt. Inc.*, 327 F.3d 616, 627 (7th Cir. 2003) (holding that "[s]tealing is probative of untruthfulness," and accordingly, the district court acted within its discretion in allowing counsel to inquire on cross-examination about whether the witness had been accused by the law firm that previously employed him of stealing client documents); *Varhol v. Nat'l R.R. Passenger Corp.*, 909 F.2d 1557, 1567 (7th Cir. 1990) (affirming district court's allowance of questioning regarding plaintiff's admission of guilt and subsequent suspension from work for purchasing stolen train tickets). And here, there can be no doubt that the prior conduct about which Plaintiff seeks to question Defendant Oliver pertains to theft and integrity. He took wages for shifts that he did not work and to which he was not entitled. Not only did Internal Affairs label the offenses as "theft" at the conclusion of its investigation, but Defendant Oliver himself acknowledged receiving wages for working shifts that he could not say that he worked and for which he could not claim to have requested time off. It would have been an impossibility for him to have worked the simultaneous shifts for both agencies for the nine separate days at issue.

The defense's attempts to cast doubt on the reliability of the CPD's account of Defendant Oliver's misconduct is misplaced. First, that Internal Affairs sustained the allegations after a prompt, thorough investigation (including an interview of Defendant Oliver), alone provides Plaintiff with ample basis to question Oliver about his conduct. Courts in this district routinely allow questioning under Rule 608(b) where, as here, the allegations of misconduct against a police officer have been investigated and sustained. *See, e.g.*, *David v. Nettles*, No. 15 C 1645, 2016 WL 1660503, at *2 (N.D. Ill. Apr. 27, 2016) (questioning under Rule 608(b)(1) permitted where

5

Illinois State Police officer's acts of dishonesty resulted in a suspension); *Battle v. O'Shaughnessy*, No. 11 C 1138, 2012 WL 4754747, at *4 (N.D. Ill. Oct. 4, 2012) (allowing cross-examination "regarding the sustained CR because the fact that she was previously disciplined for providing false information on a police report is probative to her character for truthfulness"); *Casares v. Bernal*, 790 F. Supp. 2d 769, 778 (N.D. Ill. 2011) (permitting cross-examination under Rule 608(b) where "the accused officer's sustained CR is probative of his/her truthfulness"); *Richman v. Burgeson*, No. 98 C 7350, 2008 WL 2567132, at *7 (N.D. Ill. June 24, 2008) (questioning permitted under Rule 608(b) where defendant police officer was disciplined for, among other things "engag[ing] in secondary employment without authorization").[3] Moreover, as noted, Rule 608(b) allows examination of the witness about the misconduct itself; extrinsic evidence about the misconduct is generally not permitted. Thus, Plaintiff's questioning at trial need not address hearsay or the specific findings of the CPD investigator who deemed Defendant Oliver to be guilty of theft as a result of his misconduct. That information is presented to the Court here to demonstrate Plaintiff's good faith basis for asking about Defendant Oliver's misconduct – and indeed, Oliver himself admitted to such misconduct. (*See* CHI.BOLDEN 002416 (Oliver acknowledging that he "accept[ed] a paycheck from the Chicago Police Department and the Illinois Secretary of State's Office for nine days that he was carried on both payrolls for the same hours")).

It is Defendant Oliver's prerogative whether he chooses to admit the substantiated

---

[3] Defendants' observation that the State's Attorney's Office declined to prosecute Oliver's misconduct is likewise irrelevant to this Court's Rule 608(b) analysis, as Rule 608(b), by definition, only pertains to prior bad acts that do not result in a criminal conviction. *See, e.g., United States v. Osazuwa*, 564 F.3d 1169, 1174–75 (9th Cir. 2009) (holding that Rule 608(b) allows impeachment only by specific acts that do not result in a criminal conviction); *see also Battle*, 2012 WL 4754747, at *3 (observing that under Rule 608(b), "an instance of misconduct need not be punishable as a crime in order to reflect the witness's character for truthfulness"). Defendants' speculation as to the possible reasons why no case was prosecuted against Defendant Oliver (Dkt. 430 at 4) should also be disregarded.

misconduct or tries to explain that the wage theft was unintentional or the result of inattentiveness on his part, but the misconduct is unquestionably probative of Defendant Oliver's truthfulness and reliability. Under Rule 608(b), it should be fair game for Plaintiff's questioning of Defendant Oliver.

## II.    The Misconduct at Issue Is Not Unduly Remote.

There is also no merit to Defendants' passing argument that the wage theft at issue is too remote in time to be relevant. While Defendants are correct that the age of prior misconduct is a consideration that the trial court should take into account when exercising its discretion under Rule 608(b), there is no bright line rule requiring its exclusion if it occurred more than ten years earlier (as there is with Rule 609 involving impeachment by evidence of a criminal conviction). *Compare* Fed. R. Evid. 608(b) and Fed. R. Evid. 609. Instead, the Court is free to conduct its own analysis regarding how the age of the prior misconduct may or may not diminish the probative value with respect to the witness's character for truthfulness. *See, e.g., United States v. Seymour*, 472 F.3d 969, 971 (7th Cir. 2007) (holding that whether to allow specific instances of conduct to be used to challenge a witness's reputation for truthfulness under Rule 608(b) is committed to the discretion of the district judge).

Numerous courts, in this Circuit and beyond, have permitted questioning a witness about misconduct that occurred a decade or more before trial under Rule 608(b), where such misconduct may be relevant to the jury's credibility determinations. *See, e.g.*, *Battle*, 2012 WL 4754747, at *2-4 (allowing questioning about sustained CR that was over a decade old); *Whitlow v. Martin*, No. 04–3211, 2010 WL 11553288, at *8 (C.D. Ill. Oct. 8, 2010) (finding that the fact that the alleged misconduct was 18 years old "decreases its probative value, but does not require exclusion" under a Rule 608(b) analysis); *see also Deary v. City of Gloucester*, 9 F.3d 191, 196 (1st Cir. 1993) (upholding trial judge's decision to allow cross examination regarding a prior bad act involving

7

truthfulness that occurred ten years before the trial, holding, "[a]lthough the time which has elapsed since the prior bad act is a consideration for the judge to take into account when determining whether to admit such character evidence, close proximity in time is not required under Fed. R. Evid. 608(b)" (citing *United States v. McClintic*, 570 F.2d 685 (8th Cir. 1978)); *United States v. Weichert*, 783 F.2d 23, 26 (2d Cir. 1986) (upholding trial court's *in limine* ruling allowing cross examination on attorney's disbarment twelve years earlier, finding "[t]hat the disbarment occurred twelve years before the trial decreased its probative value but did not require exclusion"); *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1114 (10th Cir. 2001) (finding trial court did not abuse discretion in allowing questioning about prior incident from 24 years earlier that guard was suspended from Kansas Highway Patrol for falsifying a report because "although the event was remote in time, because it was probative of [the witness's] character for truthfulness, and because [the witness] was able to explain the incident, the court would allow the questioning").

Here, the conduct about which Plaintiff seeks to question Defendant Oliver occurred in 1999, just five years after his work on the investigation that led to Plaintiff's wrongful arrest and conviction. That Defendant Oliver was willing at that time to collect wages from two different public agencies for work that he could not have possibly performed is highly probative of his character for truthfulness at the time of his work on the investigation that will be the subject of this trial. While twenty-two years have now elapsed between his misconduct in 1999 and the anticipated trial of Plaintiff's claims, the misconduct at issue remains highly relevant to evaluating Defendant Oliver's credibility and, as in *Hampton*, Defendant Oliver will have an opportunity to explain his conduct if he so chooses. *See Hampton*, 247 F.3d at 1114. The age of Defendant Oliver's misconduct does not require its exclusion, and given its severity and the important issues

8

at stake in this case, the Court should exercise its discretion to allow Plaintiff to question Defendant Oliver about it when he testifies.

   III.   **The Probative Value of The Evidence Outweighs Any Unduly Prejudicial Effect Under Rule 403.**

The final prong of the required analysis under Rule 608(b) is determining whether the probative value of the evidence (meaning questioning about the prior misconduct) is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, pursuant to Fed. R. Evid. 403. *See, e.g., Hollins v. City of Milwaukee*, 574 F.3d 822, 828-29 (7th Cir. 2009). "The determination of whether the probative value of evidence outweighs its risk of unfair prejudice is left to the discretion of the trial court, and when that discretion has been exercised, … it will rarely be disturbed." *United States v. Saunders*, 166 F.3d 907, 920 (7th Cir. 1999) (citing *United States v. Schweihs*, 9971 F.2d 1302, 1313 (7th Cir. 1992)).

Here, the questioning at issue regarding Defendant Oliver's wage theft for nine different days is highly probative for Defendant Oliver's character for truthfulness. Cross examination will be based on reliable facts ascertained after full and timely investigation by CPD's Internal Affairs. These were not bare uncorroborated allegations; there was documentary evidence supporting the allegations, and Oliver even admitted that he received wages from both jobs for nine days, and he could not say whether he was actually working or properly off duty on those days. And as noted, theft and issues of integrity are recognized as probative of one's character for truthfulness. *See, e.g., Young*, 327 F.3d at 627; *Varhol*, 909 F.2d at 1567.

Defendants challenge whether Oliver's misconduct was attributable to an intent to deceive or mere inattentiveness, but such explanations – which Defendant Oliver will be able to provide, should he choose, during his questioning – do not negate the probative nature of the questioning.[4]

---

[4] Defendants cite *United States v. Saunders*, 166 F.3d 907 (7th Cir. 1999), to suggest that Rule 608(b)

9

Similarly, as noted, while the age of the misconduct may diminish its probative value, it does not eliminate it. *See, e.g., Weichert*, 783 F.2d at 26. And contrary to Defendants' contentions, the asking of a few questions about Oliver's prior misconduct will not necessitate a mini-trial-within-a-trial, as Rule 608(b) expressly restricts the use of extrinsic evidence in connection with the prior misconduct.[5] *See* Fed. R. Evid. 608(b).

Likewise, permitting examination of Defendant Oliver regarding his own personal conduct of collecting paychecks for working two separate jobs during the same shifts presents no risk of undue prejudice to the other Defendants. As an initial matter, Defendants' argument that Oliver's wage collection theft will be unduly prejudicial to the other Defendant Officers appears to be based on Defendants' own theory of the case that Defendant Oliver had a minimal role and "did not materially participate" in the investigation that led to Plaintiff's wrongful arrest and conviction. (Dkt. 430 at 7.) That defense theory will be belied by the evidence at trial, which will show that Oliver took several steps to fabricate the false identification of Plaintiff, participated in the rigged lineup in which Plaintiff was allegedly identified, threatened and intimidated multiple witnesses, and engaged in other misconduct causing Plaintiff's wrongful incarceration. Defense counsel's belief that Oliver should not be a defendant in this lawsuit is obviously not a basis to exclude

---

precludes questioning about prior misconduct that was not "willful." (*See* Dkt. 430 at 5.) But *Saunders* says no such thing. To the contrary, the trial court in *Saunders* declined to allow cross examination about a Department of Justice report that explicitly found that the witness was not biased, where the plaintiff wanted to ask the question to establish bias on the witness's part. *Saunders*, 166 F.3d at 919. Furthermore, *Saunders* did not articulate a bright line rule about the level of willfulness that must be established to make a given act of misconduct probative under Rule 608(b), as Defendants incorrectly imply. Instead, the *Saunders* court ultimately declined to allow cross examination in that case based on a Rule 403 analysis which found minimal probative value because "[t]he investigation pertained to an entirely different case and revealed no bias by Agent Heckman; it found that Agent Heckman's errors in two other cases were not willful and recommended no disciplinary action." *Id.* at 920.

[5] Plaintiff recognizes and accepts that, unless Defendant Oliver opens the door and the Court makes an express ruling, he is not permitted to introduce extrinsic evidence of Defendant Oliver's misconduct. *See* Fed. R. Evid. 608(b).

evidence against him.

Moreover, the defense makes no attempt to articulate how a jury might view Defendant Oliver's wage theft as implicating the other defendants, or the City of Chicago, for that matter, beyond relying on what is effectively a "guilt by association" theory of undue prejudice, which is not supported by the precedent that Defendants cite. The sole case that Defendants reference – from the Second Circuit – involved the trial court's refusal to allow any reference to seven civilian complaints filed against one of the defendant police officers in a § 1983 case, where the officer had been exonerated in six of the complaints, and the seventh merely involved a claim for "abusive language." *See Berkovich v. Hicks*, 922 F.2d 1018, 1022 (2nd Cir. 1991). The Appeals Court upheld the trial court's rejection of the plaintiff's argument that evidence of the civilian complaints was relevant to a failure to supervise *Monell* claim against the City of New York because in that instance, such evidence would invariably also prejudice the defendant police officer who was the subject of those unsubstantiated complaints. *Id.* The Court did not speak at all to any potential undue prejudice that such evidence could potentially have on the other, unrelated defendant officer. There are no parallels to be drawn between the highly fact-specific decision in *Berkovich* (which, incidentally, involved the presentation of evidence and not mere questioning under Rule 608(b)) and the instant motion involving questioning of Defendant Oliver about a substantiated complaint pertaining to conduct attributable to Defendant Oliver alone.[6]

Finally, should there be legitimate concerns that the questioning is becoming harassing or unduly prejudicial to Defendant Oliver or the other defendants, the Court always has the discretion to limit questioning in real time. *See, e.g., Martinez v. City of Chicago,* No. 14-cv-369, 2016 WL

---

[6] Of course, in an abundance of caution, any risk of prejudice to the defendants other than Defendant Oliver could be mitigated with a limiting instruction to the jury that the questioning is only to be considered as to Defendant Oliver and not with respect to the other Defendants.

11

3538823, at * 9 (N.D. Ill. June 29, 2016) (allowing questioning of police witness about prior misconduct where relevant to her credibility and mitigating concern of undue prejudice to other police witnesses by mere association by inviting them to "object to any gratuitous presentations of this evidence.") There is no reason for the Court to categorically exclude this probative line of questioning of Defendant Oliver at this time.

## CONCLUSION

For the foregoing reasons, Plaintiff Eddie L. Bolden respectfully asks this Court to enter an Order denying Defendant Officers' Motion *in Limine* No. 12.

Dated: August 2, 2021

Respectfully Submitted,

*/s/ Eli J. Litoff*
Ronald S. Safer
Matthew Crowl
Eli J. Litoff
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison Street, Suite 2900
Chicago, Illinois 60602
(312) 471-8700
rsafer@rshc-law.com
mcrowl@rshc-law.com
elitoff@rshc-law.com

Sandra L. Musumeci (*pro hac vice*)
RILEY SAFER HOLMES & CANCILA LLP
136 Madison Avenue
6th Floor
New York, New York 10016
(212) 660-1000
smusumeci@rshc-law.com

*Attorneys for Eddie L. Bolden*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 2, 2021, I caused the foregoing document to be electronically filed using the CM/ECF system, which will send notice of this filing to all counsel of record.

*/s/ Eli J. Litoff*
Eli J. Litoff
