**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| EDDIE L. BOLDEN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17 C 00417 |
| | ) | |
| vs. | ) | Honorable Steven C. Seeger |
| | ) | |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**DEFENDANT OFFICERS' MOTION *IN LIMINE* NO. 13 TO BAR**
**THE TESTIMONY OF GEOFFREY LOFTUS**

Plaintiff Eddie L. Bolden, by his undersigned counsel, respectfully submits this Response

in Opposition to Defendant Officers' Motion *in Limine* No. 13 to Bar the Testimony of Geoffrey

Loftus (Dkt. 434).

**INTRODUCTION**

Plaintiff disclosed the expert report of Dr. Geoffrey Loftus, an expert in eyewitness

perception and memory, in September 2018. Defendants chose not to depose Dr. Loftus. They

chose not to challenge any of his opinions at the summary judgment phase. And they chose not to

file any motion *in limine* challenging his opinions in 2019, in advance of the previously set trial

date. Now, three years later, Defendants argue that Dr. Loftus's opinions will not assist the trier of

fact in determining a matter in dispute.

Defendants' argument is flawed for numerous reasons. First, despite Plaintiff's exoneration

and his receipt of a Certificate of Innocence, Defendants intend to argue at trial that Plaintiff

murdered Derrick Frazier ("Derrick") and Ledell Clayton and shot Clifford Frazier ("Clifford").

This argument will rest almost entirely on the testimony of Clifford, who identified Plaintiff as the

shooter and is expected to do the same at trial. It is well-established under Seventh Circuit law that Dr. Loftus's expert opinions concerning the reliability of Clifford's identification are relevant and will assist the jury in assessing Clifford's testimony. Defendants' motion ignores this basis of relevance *entirely*. Furthermore, Dr. Loftus's opinions are relevant to proving Plaintiff's due process claim, which requires Plaintiff to establish that the identification procedures employed by Defendants were unduly suggestive and that the identification was not reliable.

Dr. Loftus's opinions are not controversial. The Seventh Circuit and its district courts have routinely accepted expert testimony regarding memory and the reliability of eyewitness identifications for these purposes, especially in civil cases. Indeed, in recent years, Judge St. Eve rejected a *Daubert* challenge to Dr. Loftus's testimony, which consisted of opinions that were very similar to the opinions he will offer in this case. *Sanders v. City of Chicago Heights*, No. 13 C 0221, 2016 WL 4398011, at *4-8 (N.D. Ill. Aug. 18, 2016) (St. Eve, J.). Defendants' motion should be denied.

## BACKGROUND

### I.    Relevant Factual Background

On January 29, 1994, someone murdered Ledell Clayton and Derrick and shot Derrick's brother, Clifford.  Though Clifford has offered numerous inconsistent and conflicting stories about the event, he allegedly told police on the night of the shooting that he watched from across the street as Derrick, Clayton, and another man exited the J&J Fish restaurant, got into Derrick's car, and drove away. Clifford stated that shortly thereafter, the same man that got into the car with Derrick and Clayton returned to the parking lot where Clifford was waiting and began shooting at him.  Clifford says that he shot back at the man, and when they both ran out of ammunition, they physically struggled with each other before the assailant fled.

When questioned by police on the night of the shooting, Clifford at first did not provide a description of the shooter, but later that evening described the offender as in his early 20's, six feet tall, thin, clean-shaven with low-cut hair and a light complexion.[1] On February 3, 1994, Clifford was shown a photo array which contained Plaintiff's photograph. He did not make an identification. Several weeks later, on February 26, 1994, Defendant Oliver brought Clifford to the Area 2 police station for a live lineup, which was conducted by Defendants Pesavento, Karl, and Siwek. Plaintiff was the only subject included in both the photo array and the live lineup. Plaintiff was noticeably taller than three of the four other participants, and he was over 100 pounds lighter than the only other participant of similar height.

Prior to the lineup, Oliver told Clifford, "we got the guy." Defendants then arranged for Oliver to walk Clifford directly past Plaintiff in the Area 2 police station immediately before the lineup began so that Clifford could see Plaintiff. Then, despite promising Plaintiff's attorney, Charles Ingles, that he could observe the lineup, Defendant Pesavento physically blocked Ingles from entering the lineup room. With Ingles excluded, Defendants engaged in additional improper conduct during the lineup itself, including calling out Plaintiff by name after Clifford initially identified one of the fillers in the lineup. As a result of the suggestive and improper identification procedures, Clifford identified Plaintiff as the individual who shot him. Clifford again identified Plaintiff as the shooter during Plaintiff's criminal trial in 1996 and maintained during his deposition in this case that Plaintiff is the individual who shot him.

## II.     Dr. Loftus's Opinions

Dr. Loftus is one of the world's foremost experts on human perception and memory.[2] Over

---

[1] At the time of the shooting, Plaintiff was 6'2", bald, medium or dark complected, with a mustache and goatee.
[2] Defendants have not challenged Dr. Loftus's qualifications. His extensive credentials are detailed in his curriculum vitae, *available at* http://faculty.washington.edu/gloftus/CV/CV.html (last visited 7/27/21).

the past 35 years, Dr. Loftus has been qualified and testified as an expert in the field of perception and memory in *hundreds* of cases in both state and federal courts. As noted above, his experience includes cases in the Northern District of Illinois. *See, e.g.*, *Sanders*, 2016 WL 4398011, at *4-8 (denying *Daubert* motion to exclude Loftus's expert testimony); *see also Thomas v. United States*, No. 05 C 2119, 2006 WL 1236144, at *3 (N.D. Ill. May 5, 2006) (Pallmeyer, J.) (Dr. Loftus's testimony admitted during habeas proceedings).

Dr. Loftus's report, attached to Defendants' Motion as Exhibit A (Dkt. 434-1), sets forth his opinions in this case, all of which are based on his review of the record, his years of professional training, education, and experience, and his study and understanding of human perception and memory. Dr. Loftus will testify that, in his opinion, Clifford's identification of Plaintiff is unreliable. Importantly, Dr. Loftus will explain to the jury why Clifford's expressed *confidence* in his identification is not indicative of an *accurate* identification—a concept that is not intuitive to lay jurors. *Id.* at 4-6. Dr. Loftus's opinion is based both on Clifford's ability to observe and form an accurate memory of his assailant during the shooting, as well as relevant post-event information influencing the reliability of Clifford's identification, namely, the unduly suggestive procedures employed by Defendants.

With respect to Clifford's inability to form an accurate memory of his assailant at the time of the event, Dr. Loftus will explain to the jury the way in which science indicates that various factors present in this case cause memory to fail. Examples of Dr. Loftus's expected testimony include, but are not limited to: (1) that a person is "incapable of detecting either color or the fine detail that is necessary to encode a person's appearance … using street lights as the only source of light"; (2) the phenomenon known as "weapon focus," in which the presence of a weapon diverts attention from the appearance of the person holding the weapon; (3) the concept of "functional

4

duration" and its impact on perception and memory; and (4) the scientific evidence indicating that memories formed during a high-stress event tend to be inaccurate, even though they seem "vivid and accurate" to the person who perceived the event. *Id.* at 7-10.

With respect to post-event information, Dr. Loftus will explain to the jury how various factors affect the reliability of Clifford's identification, indicating that his identification was the result of suggestive procedures rather than accurate memory. These factors include, but are not limited to: (1) Clifford's prior exposure to Plaintiff's appearance; (2) the lack of double-blind procedures, which in this case allowed officers to indicate that Plaintiff was "the right choice," thus producing what is known as the "lineup-feedback effect"; (3) physical bias in the lineup; and (4) the use of a simultaneous, rather than sequential, lineup procedure. *Id.* at 10-14.

## LEGAL STANDARD

Federal Rule of Evidence 702 and the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), govern the admissibility of expert testimony in federal courts. Expert testimony should be admitted where the expert is sufficiently qualified, the methodology is sufficiently reliable, and the testimony will assist the trier of fact in understanding the evidence or determining a fact in issue. *Higgins v. Koch Dev. Corp.*, 794 F.3d 697, 704 (7th Cir. 2015). The *Daubert* framework "is not designed to have the district judge take the place of the jury to decide ultimate issues of credibility and accuracy." *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012). So long as "the proposed expert testimony meets the *Daubert* threshold of relevance and reliability, the accuracy of the actual evidence is to be tested before the jury with the familiar tools of 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.'" *Id.* (quoting *Daubert*, 509 U.S. at 596). The "key to the gate is not the ultimate correctness of the expert's conclusions," but rather "the soundness and care with

which the expert arrived at her opinion." *C.W. ex rel. Wood v. Textron, Inc.*, 807 F.3d 827, 834

(7th Cir. 2015).

**ARGUMENT**

I.      **Dr. Loftus's Opinions Will Assist the Jury in Determining Facts in Issue.**

Expert testimony regarding eyewitness identifications is commonplace in the Seventh

Circuit and its district courts. The Seventh Circuit has repeatedly recognized the value of such

testimony to assist the jury in evaluating the reliability of eyewitness identifications. *See, e.g.*,

*United States v. Bartlett*, 567 F.3d 901, 906 (7th Cir. 2009) (describing expert evidence regarding

the reliability of eyewitness testimony as "vital"); *Phillips v. Allen*, 668 F.3d 912, 916 (7th Cir.

2012) (holding in the context of a § 1983 claim for arrest without probable cause that "nothing is

obvious about the psychology of eyewitness identification," and in some circumstances, "someone

who contends that a particular kind of procedure led to an unreliable identification needs evidence

– if not from an expert's affidavit, then from published work" of an expert). The Seventh Circuit

has been particularly receptive to such testimony in civil cases. *See, e.g.*, *Newsome v. McCabe*,

319 F.3d 301, 306 (7th Cir. 2003) (differentiating from criminal cases and holding that expert

testimony on eyewitness identifications "was not a distraction in [a] civil proceeding but went to

an important ingredient of the plaintiff's claim"); *see also Sanders*, 2016 WL 4398011, at *6

("[F]ederal courts look favorably upon eyewitness expert testimony under the circumstances of

this civil lawsuit, namely, where there is a single eyewitness who is unfamiliar with the alleged

perpetrator."); *Cage v. City of Chicago*, 979 F. Supp. 2d 787, 838-39 (N.D. Ill. 2013) ("[T]he

Seventh Circuit has been receptive to eyewitness identification expert testimony in the civil

arena."). In line with this well-established case law, it is plain that Dr. Loftus's testimony will

assist the jury in multiple ways.

First, despite Plaintiff's Certificate of Innocence, Defendants intend to argue at trial that

6

Clifford's identification of Plaintiff is accurate and that Plaintiff is guilty of the crimes for which he was convicted. *See, e.g.*, Dkt 434 at 1 (contending that "Plaintiff Eddie Bolden shot and killed Derrick Frazier and Ledell Clayton during a drug transaction. Bolden then shot Clifford Frazier…"); *see also id.* at 9 n.9 (arguing that Clifford's identification "was in fact accurate"). The reason for Defendants' strategy is clear: knowing that they cannot defend their conduct, they hope to convince the jury of Plaintiff's guilt because it could result in a lower damages award. *See Parish v. City of Elkhart, Ind.*, 702 F.3d 997, 999 (7th Cir. 2012) ("A jury that believed the plaintiff was guilty of the crime would award lower damages because the imprisonment is attributable to the person's own actions as well as the civil defendants' misbehavior…."). The law of the Seventh Circuit is clear that when Defendants take such a position, Plaintiff must be permitted to put forth evidence of his innocence, including evidence casting doubt on Clifford's identification. *Id.* at 999, 1003 (finding reversible error where "the district court's rulings improperly limited the introduction of evidence relating to Parish's innocence," including "substantial evidence casting doubt on the veracity of the eyewitness identifications").[3] Dr. Loftus's testimony assists the jury in this regard.

This situation is analogous to the situation addressed by Judge St. Eve in *Sanders*. In that case, eyewitness Stacy Armstrong identified Sanders as the shooter and maintained that her identification was accurate. Dr. Loftus opined, just as he does with respect to Clifford in this case, that Armstrong's identifications were unreliable and that the identification procedures employed by the defendants were unnecessarily suggestive. *Sanders*, 2016 WL 4398011, at *3. After a thorough examination of the relevant Seventh Circuit case law, Judge St. Eve admitted Dr. Loftus's

---

[3] For this reason, Defendants' repeated assertions that the accuracy of Clifford's identification is not at issue, *see* Dkt. 434 at 9-10, is simply wrong. If Defendants would concede Plaintiff's innocence, their statement might be correct, but they refuse to do so.

testimony, holding that his opinions "would be helpful to the trier of fact in relation to understanding Sanders' arguments as to why Armstrong's identification of him was unreliable – despite Armstrong's insistence that her identification of Sanders was accurate." *Id.* at \*6. Judge St. Eve reasoned that Dr. Loftus's opinions "on the ways in which human perception is fallible … will help the jurors evaluate the testimony regarding eyewitness identification and whether their beliefs about the reliability of eyewitness testimony are correct." *Id.*

Judge St. Eve's reasoning, and the Seventh Circuit authority upon which she relied, apply equally in this case. Clifford has already testified at Plaintiff's criminal trial and at his deposition in this case that Plaintiff was the shooter. It is expected that he will do the same at trial here, and it is clear that Defendants will use Clifford's testimony to argue Plaintiff's guilt in the hopes of minimizing damages. Dr. Loftus's testimony is critical to help the jury assess the key question bearing on Plaintiff's innocence: whether Clifford's *confident* identifications of Plaintiff are *reliable* identifications. *See Bartlett*, 567 F.3d at 906 ("Expert evidence can help jurors evaluate whether their beliefs about the reliability of eyewitness testimony are correct. Many people believe that identifications expressed with certainty are more likely to be correct; evidence that there is no relation between certitude and accuracy may have a powerful effect."); *see also United States v. Williams*, 522 F.3d 809, 811 (7th Cir. 2008) ("People confuse certitude [of an eyewitness identification] with accuracy and so are led astray. Psychologists have established that certitude often is unwarranted."). Defendants' motion does not address this basis of admissibility. For this reason alone, Defendants' motion should be denied.

In addition, Dr. Loftus's testimony will assist the jury in assessing the elements of Plaintiff's due process claim, which is based on Defendants' unduly suggestive identification procedures. "[T]he right to a fair trial … is violated if unduly suggestive identification techniques

are allowed to taint the trial." *Alexander v. City of South Bend*, 433 F.3d 550, 555 (7th Cir. 2006). "[A] witness's identification violates a defendant's right to due process when the identification procedure is so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Lee v. Foster*, 750 F.3d 687, 691 (7th Cir. 2014) (internal quotations omitted). The relevant test for whether improprieties of an identification procedure constitute a due process violation is two-pronged: (1) whether the identification procedure was "suggestive and unnecessary," and (2) "whether the procedure [and resulting identification] was nonetheless reliable." *Id.* "Both suggestiveness and reliability are evaluated by reference to the totality of the circumstances." *Alexander*, 433 F.3d at 555. Dr. Loftus's testimony will assist the jury in evaluating both of these factors.

Once again, *Sanders* is instructive. In evaluating whether Plaintiff had marshaled sufficient evidence to support his unduly suggestive lineup claim at the summary judgment stage, Judge St. Eve considered Dr. Loftus's opinions. *Sanders v. City of Chicago Heights*, No. 13 C 0221, 2016 WL 2866097, at \*8 (N.D. Ill. May 17, 2016). Dr. Loftus testified regarding many of the same factors at issue in this case, including the lack of double-blind procedures, height differences between Sanders and the lineup fillers, and the fact that the officers showed the witness a photo array including Sanders before Sanders appeared in the live lineup. *Id.* Judge St. Eve found that Dr. Loftus's opinions, along with other evidence, created "a reasonable inference that these identification procedures were unnecessarily suggestive." *Id.* at \*9.

Similarly, in *Cage v. City of Chicago*, the court admitted testimony of the plaintiff's eyewitness identification expert, Dr. Brian Cutler, to support plaintiff's claim that unduly suggestive identification procedures led to his wrongful conviction. *Cage*, 979 F. Supp. 2d at 835-44. Just as with Clifford in this case, the eyewitness in *Cage*, Zilinger, was expected to "testify at

trial that she identified Cage because she recognized him as her attacker when she saw him, not because of any external suggestive influences." *Id.* at 842. The court held:

> Dr. Cutler's testimony will allow the jury to learn what the science of human memory and eyewitness identification has to say about Zilinger's testimony and thus help them assess whether Zilinger's reflections of what caused her to pinpoint Cage are correct. In other words, Dr. Cutler will allow Cage to argue that given the circumstances, Zilinger's ability to form an eyewitness memory without unduly suggestive techniques is far more suspect than she presently believes.

*Id.* Importantly, the court not only found that Dr. Cutler's opinions regarding suggestiveness were helpful to the jury in assessing the due process claim, but so too were his opinions that the circumstances of the attack made eyewitness identification difficult. *Id.* at 843. Just as Dr. Loftus will do in this case, Dr. Cutler opined that low lighting, high stress, and other factors hindered the witness's ability to form an accurate memory of her attacker. *Id.* The court held that "[e]vidence that the attack took place in a manner that made identification difficult is probative because it calls into question whether Zilinger could have made the identification confidently without outside influence." *Id.*

In sum, Dr. Loftus's testimony is plainly relevant and will assist the jury in numerous ways. As discussed below, Defendants' arguments to the contrary should be rejected and their motion denied.

**II.  Plaintiff's Testimony Does Not Render Dr. Loftus's Opinions Irrelevant.**

Defendants' principal argument is that because Clifford's lineup identification came after Clifford originally pointed to one of the fillers, and after Defendants singled Plaintiff out by name during the lineup, all of the suggestive aspects of the identification procedures up to that point are irrelevant because they did not "cause" the identification. *See* Dkt. 434 at 4-5. Defendants likewise contend that Dr. Loftus's opinions about Clifford's ability to form a memory of the shooter are irrelevant because his original memory caused him to identify a filler. *Id.* at 5. This untenable

argument amounts to: "because we engaged in certain suggestive tactics, you should ignore our other suggestive tactics."[4] The argument misses the mark for three primary reasons.

First and foremost, Defendants' argument rests upon a misreading of Dr. Loftus's opinions and the applicable Seventh Circuit case law. As noted above, "[b]oth suggestiveness and reliability are evaluated by reference to *the totality of the circumstances*" surrounding the identification. *Alexander*, 433 F.3d at 555 (emphasis added). Neither Plaintiff nor the jury are required to parse Defendants' various improper acts to determine which act in particular "caused" Clifford's identification. Dr. Loftus will opine that the circumstances surrounding the identification *as a whole*—including Defendants' conduct *during the lineup*, which Defendants attempt to isolate from the rest of their conduct—render the identification unreliable. Dr. Loftus expressly addressed Defendants' conduct during the lineup as *one aspect of suggestiveness* contributing to the unreliable identification. Specifically, Dr. Loftus opined that the lack of double-blind procedures contributed to the unreliable identification because it allowed for officers—either unconsciously *or deliberately*—to signal to the witness which of the subjects is the "right choice." *See* Dkt. 434-1 at 11-12. Plaintiff's position is that *all* of Defendants' improper conduct contributed to Clifford's false identification and Plaintiff's conviction. The use of Plaintiff's picture in the photo array, the engineered viewing of Plaintiff in the Area 2 police station, Oliver's suggestive comments, and the use of fillers that looked remarkably different than Plaintiff all suggested to Clifford exactly whom the police wanted him to identify. That Clifford originally hesitated and that Defendants took additional improper tactics during the lineup itself to successfully secure the identification does not render Defendants' initial suggestive steps any less relevant.

_____

[4] At other points in the motion, Defendants mischaracterize Plaintiff's testimony as suggesting that Clifford never identified him. *See* Dkt. 434 at 4, 9. That mischaracterization cannot be squared with Plaintiff's testimony or the rest of the record. Plaintiff has always been clear that Clifford identified him, and he did so only after Defendants engaged in improper suggestive conduct to obtain the identification.

Moreover, the law is clear that Dr. Loftus need not opine that any suggestive tactics "caused" Clifford's false identification in order to assist the jury. In *Newsome*, the City of Chicago argued that the eyewitness identification expert's "testimony was irrelevant because he did not determine *how* the witnesses had been induced to believe that they saw Newsome commit the murder." *Newsome*, 319 F.3d at 306. The court rejected this argument, holding that the jury was free to consider "the possibility that unhappy chance rather than malfeasance led to the mistaken conviction," and that the expert's testimony "provided information valuable in this endeavor." *Id.* Similarly, in *Cage*, the court rejected the defendants' argument that Dr. Cutler's testimony was irrelevant because he could not conclude that "the Defendants' techniques actually caused the faulty identification." *Cage*, 979 F. Supp. 2d at 844. The court held that the jury was free to consider that some factor other than the defendants' misconduct caused the identification, but Dr. Cutler's opinions nonetheless provided the jury with "a probative piece of the evidentiary puzzle." *Id.* As in *Newsome* and *Cage*, Defendants are free to argue that their suggestive tactics did not cause Plaintiff's conviction, but that argument is not a basis to exclude Dr. Loftus's testimony.

Defendants' argument fails for a second reason – it focuses completely on Clifford's lineup identification, while ignoring the impact of Defendants' conduct on Clifford's subsequent in-court identification, as well as his identification of Plaintiff as the shooter during his deposition and his expected identification of Plaintiff during the upcoming trial in this case. As explained above, Defendants will use these identifications, in addition to the lineup identification, to argue that Plaintiff is guilty. Dr. Loftus's testimony will help the jury understand why *those* subsequent identifications are unreliable. Most critically, Dr. Loftus will testify concerning what is known as the "lineup feedback effect." *See* Dkt. 434-1 at 12. He will explain to the jury how suggestive conduct during the lineup—including the conduct that Defendants assert "caused" the

12

identification in this case—would cause Clifford to undergo memory changes that would affect his *subsequent* identifications. *Id.* Dr. Loftus will testify that the lineup feedback effect causes witnesses to become more confident in their identifications (regardless of accuracy) and to remember the circumstances of the crime inaccurately. *Id.* This testimony will assist the jury in deciding whether to credit Clifford's testimony.

Finally, Defendants' argument fails because it assumes that the jury will credit Plaintiff's testimony about Defendants' misconduct during the lineup, despite that the defense will vigorously contest Plaintiff's account at trial. It is entirely possible that the jury will disbelieve Plaintiff, while at the same time crediting Clifford's testimony that Oliver told him "we got the guy" and Ingles's testimony that Oliver walked Clifford past Plaintiff before the lineup. These facts, among others, would be sufficient for the jury to find Clifford's identification unreliable and Defendants' procedures suggestive, even if the jury believed that the officers' conduct during the lineup itself was entirely proper. Thus, even under Defendants' flawed interpretation of Dr. Loftus's opinions and the Seventh Circuit law, his testimony is still admissible because it assists the jury with *an* issue in dispute, even if it does not address *all* the issues in dispute. *See Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000) (expert may testify regarding disputed facts and such testimony is relevant where it "will assist the trier of fact with its analysis of *any* of the issues involved in the case").

### III.    Defendants' Remaining Arguments Are Without Merit.

Defendants' additional arguments attacking the relevance of Dr. Loftus's opinions are also flawed. First, Defendants argue that Dr. Loftus's opinions should be excluded because police officers are not charged with expert knowledge regarding the psychology of perception and memory, and according to Defendants, a "police officer cannot be held liable under §1983 unless the procedure at issue had 'already been forbidden by an authoritative judicial decision (that is, by

13

the Supreme Court or the court of appeals with territorial jurisdiction) and the officer uses it anyway.'" *Id.* at 6-7 (quoting *Phillips*, 668 F.3d at 917). There are two problems with this argument. First, Defendants essentially argue that they are entitled to qualified immunity on Plaintiff's due process claim because no court has held that their conduct violated Plaintiff's rights. This argument was already raised and rightly rejected by Judge Shah on summary judgment. (Dkt. 276 at 49-50 (denying qualified immunity on Plaintiff's unduly suggestive lineup claim because "[i]t was clearly established many years before 1994 that 'the conduct of identification procedures may be so unnecessarily suggestive and conducive to irreparable mistaken identification as to be a denial of due process of law." (quoting *Foster v. California*, 349 U.S. 440, 442 (1969))). Second, even if Defendants' argument had merit, it would have no bearing on the admissibility of Dr. Loftus's testimony. Dr. Loftus need not—and indeed should not—opine on what Defendants "knew or should have known," (Dkt. 434 at 9), or whether they *intentionally* employed procedures that they knew were prohibited. Defendants' intent and state of mind are beyond Dr. Loftus's purview, and he need not offer any opinions on those topics to assist the trier of fact. *See Sanders*, 2016 WL 2866097, at *8 ("Dr. Loftus was not required to testify that Defendant Officers' conduct was intentional…"); *Cage*, 979 F. Supp. 2d at 843 ("[T]he fact that Dr. Cutler's opinion does not take a position on the defendant officers' state of mind is of no consequence. Indeed any opinion to that affect would be inadmissible speculation."). Defendants are free to argue at trial that they believed their conduct was appropriate and they did not intentionally violate Plaintiff's rights. But such arguments are not a basis to exclude Dr. Loftus's testimony.[5]

---

[5] Contrary to Defendants' assertions, there is ample evidence that Defendants knew that they were engaging in forbidden conduct. Among other things, Plaintiff's police practices expert, Dr. William T. Gaut, will testify as to the ways in which Defendants' conduct deviated from generally accepted police practices in existence in 1994. Defendants' conduct was also contrary to the CPD's own policies regarding identification procedures. Defendants' contention that "Plaintiff has adduced no evidence" that the officers knew they were engaging in improperly suggestive identification procedures is not supported by the record.

Next, Defendants argue that Dr. Loftus's opinions should be excluded because he did not interview Clifford or otherwise subject him to testing to determine "whether the factors or procedures in fact affected [Clifford's] memory." (Dkt. 434 at 8.) But an expert "is not required to substantiate his opinions through testing particularized to the specific case if the science he is using has already been shown experimentally to be reliable." *Sanders*, 2016 WL 4398011, *7 n.4 (quoting *Manning v. Buchan*, 357 F. Supp. 2d 1036, 1044 (N.D. Ill. 2004)). And as discussed above, Dr. Loftus need not testify whether any of Defendants' techniques actually caused Clifford's identification to be faulty. *See Cage*, 979 F. Supp. at 843-44.

Finally, Defendants challenge the factual underpinnings of Dr. Loftus's opinions, contending that Dr. Loftus "assumes Plaintiff's testimony is more credible than" Clifford's, and "disregards [Clifford's] actual testimony regarding how much time he was face-to-face with Eddie Bolden inside of two well-lit restaurants." (Dkt. 434 at 9.) The parties certainly have a dispute regarding the events of January 29, 1994, including which aspects, if any, of Clifford's shifting and conflicting accounts of that evening are accurate. But the factual underpinnings of Dr. Loftus's opinions are fodder for cross-examination; they are not a basis to exclude his testimony. *See, e.g., Smith*, 215 F.3d at 718 (an expert may testify based on disputed facts because "[t]he soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact"); *Sanders*, 2016 WL 4398011, at *8 ("At trial, Defendants may challenge the accuracy of the underlying data by cross-examination and confronting him with contrary evidence.").

## CONCLUSION

For the foregoing reasons, Plaintiff Eddie L. Bolden respectfully asks this Court to enter an Order denying Defendant Officers' Motion *in Limine* No. 13.

Dated: August 2, 2021

Respectfully Submitted,

/s/ Eli J. Litoff
Ronald S. Safer
Matthew C. Crowl
Eli J. Litoff
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison Street, Suite 2900
Chicago, Illinois 60602
(312) 471-8700
rsafer@rshc-law.com
mcrowl@rshc-law.com
elitoff@rshc-law.com

Sandra L. Musumeci (*pro hac vice*)
RILEY SAFER HOLMES & CANCILA LLP
136 Madison Avenue, 6th Floor
New York, New York 10016
(212) 660-1000
smusumeci@rshc-law.com

*Attorneys for Eddie L. Bolden*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 2, 2021, I caused the foregoing document to be electronically filed using the CM/ECF system, which will send notice of this filing to all counsel of record.

*/s/ Eli J. Litoff*