**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

EDDIE L. BOLDEN,                 )
                                     )
                Plaintiff,         )           Case No. 17 C 00417
                                       )
       vs.                         )          Honorable Steven C. Seeger
                                       )
CITY OF CHICAGO, et al.,       )
                                       )
              Defendants.       )

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT OFFICERS' SUPPLEMENT TO MOTION *IN LIMINE* NO. 10
TO BAR THE TESTIMONY OF WILLIAM GAUT**

Plaintiff Eddie L. Bolden, by his undersigned counsel, respectfully submits this Response in Opposition to Defendant Officers' Supplement to their Motion *in Limine* No. 10 to Bar the Testimony of William Gaut (Dkt. 433).

## INTRODUCTION

Defendant Officers previously moved to exclude portions of the opinions of Plaintiff's police practices expert William T. Gaut, Ph.D., in their Motion *in Limine* No. 10, based on challenges to his methodology (with respect to the lineup room window) and claims of relevance. (Dkt. 317.) By way of what they entitle a "Supplement" to Motion *in Limine* No. 10 (Dkt. 433), Defendant Officers now seemingly expand the scope of testimony that they seek to preclude from Dr. Gaut by repeating and rephrasing many of the same arguments made in their original motion. The motion should be denied.

As an initial matter, Defendant Officers have filed this "Supplement" to Motion *in Limine* No. 10 without leave of the Court or any prior notice to Plaintiff. This unauthorized filing is particularly egregious given that the parties conferred about the Defendants' proposed motions *in*

1

*limine* specifically pertaining to the questioning of Defendant James Oliver and the testimony of identification expert Geoffrey Loftus, but Defendants never presented the instant "Supplement" about Dr. Gaut for the Plaintiff's or the Court's consideration. (*See* Dkt. 421, 422, 424.) Instead, Defendant Officers filed the instant "Supplement" on the same day that the Court allowed them to file the Oliver and Loftus motions.[1] Putting aside the procedural impropriety of their "Supplement"—particularly when Defendants cite no new evidence or circumstances to justify re-opening this motion practice—Defendants have failed to set forth any legitimate basis for excluding Dr. Gaut's testimony.

Federal Rule of Evidence 702 permits an expert to provide opinion testimony where the expert's specialized knowledge will help the trier of fact to "understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Here, the mindsets and intent of the Defendant Officers are central issues to the claims in the case. It is well-established in the Seventh Circuit that the testimony of a qualified police practices expert like Dr. Gaut regarding recognized standards of practice in police investigations—and Defendant Officers' deviations from those standards—helps the jury to evaluate Defendant Officers' states of mind. The proffered testimony also helps the jury evaluate the probable cause element of Plaintiff's illegal detention claim, whether the conduct was extreme and outrageous for purposes of Plaintiff's claim for intentional infliction of emotional distress and for punitive damages, and whether Defendants acted with malice for the malicious prosecution claim.

In this belated supplement to their original motion, the Defendant Officers put forward an array of objections to Dr. Gaut's proposed police practices testimony, including challenging its

---

[1] Similarly, Defendant Officers filed a "Supplement" to their fully briefed Motion *in Limine* No. 5, pertaining to testimony about Defendants' conduct toward attorney Charles Ingles during the lineup, without leave of the Court or notice to Plaintiff. (*See* Dkt. 432.)

relevance and reliability, labeling it an improper attack on witness credibility, and characterizing it as encompassing impermissible legal conclusions. For the reasons set forth in Plaintiff's opposition to Defendants' Motion *in Limine* No. 10 (Dkt. 337) and herein, these contentions are without merit and Defendants' motion to bar Dr. Gaut's proffered testimony should be denied.

## **ARGUMENT**

### I. **Dr. Gaut's Opinions Regarding Defendants' Departures From Professional Standards Help the Triers of Fact Understand and Evaluate the Evidence.**

Dr. Gaut's proffered testimony regarding the propriety of the Defendant Officers' homicide investigation, compared against generally accepted standards of police practice, fits squarely within the scope of Rule 702. The testimony will provide the jury, as the finders of fact, with specialized knowledge outside the normal ken of lay people to assist them in evaluating the Defendant Officers' conduct, assessing their intent and motives, and allowing them to understand the evidence and determine several important facts at issue.

Defendants have already briefed this issue in their Motion *in Limine* No. 10. (Dkt. 317.) In particular, the Defendants sought to preclude Dr. Gaut's testimony regarding the multiple shortcomings in their investigation of the Frazier/Clayton homicides, including their withholding and failure to document and investigate information received from Cynthia Steward and Clifford Frazier, their failure to preserve witness notes, and their failure to even listen to the 911 recording or review the 911 dispatch card after being informed that Plaintiff was the person who called 911. Plaintiff relies on and re-adopts here his opposition to that motion (Dkt. 337), which, clarified that Dr. Gaut will not offer a legal conclusion that the Defendant Officers' conduct violated *Brady*.[2] Plaintiff's initial opposition also explained that Judge Shah's summary judgment dismissal of a

---

[2] Plaintiff also incorporates by reference his Response to Defendant Officers' Motion *in Limine* No. 7 (Dkt. 330), which further addresses Defendants' misguided attempt to exclude evidence related to their investigative failures based on Judge Shah's summary judgment opinion.

due process claim that was independently premised on the suppression or destruction of evidence does not render Defendant Officers' improper conduct irrelevant to remaining claims in the case. Indeed, as set forth in the prior briefing, Dr. Gaut's opinion that Defendant Officers departed from applicable professional standards is relevant to the jury's assessment of the Defendant Officers' intent and motive, which are elements of Plaintiff's illegal detention, malicious prosecution, and punitive damages claims. His testimony is also relevant to a determination of probable cause, as well as whether Defendant Officers' conduct was extreme and outrageous, as required to prove intentional infliction of emotional distress. (*See* Dkt. 337; *see also* Dkt. 330.)

Defendants offer nothing new to this fully briefed argument, other than citing inapposite cases and adding a Rule 403 argument that Dr. Gaut's testimony may "mislead and confuse the jury." Indeed, *Rossi v. City of Chicago*, 790 F.3d 729, 735 (7th Cir. 2015), referenced in Defendants' brief to suggest that their failure to adequately investigate the Frazier/Clayton homicide is irrelevant to Plaintiff's claims, held that *a crime victim* has no right to any particular level of police investigation; it did not speak at all to whether a wrongly-detained person may be entitled to legal redress (beyond a due process claim) based on investigative deficiencies that led to his wrongful detention, let alone discuss how those deficiencies bear on a police officer's intent with respect to the other constitutional and state law claims that Plaintiff asserts in this case. *See id.*

Defendant Officers' reference to the dismissal of a failure to investigate due process claim as a rationale for excluding Dr. Gaut's opinions about the many investigative failures and deficiencies in this case is also misplaced. Notably, while referencing Judge Shah's dismissal decision, Defendants conveniently overlook this key statement from that very discussion about the failure to investigate allegations: "Because the police misconduct Bolden alleges is encompassed

by existing doctrines, it is unnecessary to expand his damages claim to reckless investigations." (Dkt. 133 at 13.)  In other words, Judge Shah expressly highlighted that the investigative deficiencies that Plaintiff alleges—and that are the subject of Dr. Gaut's challenged opinions—are encompassed within other claims in the case.  Judge Shah may have determined that the deficiencies did not warrant their own separate claim for relief under a due process theory, but he certainly recognized that they were encompassed within other claims.  Thus, these deficiencies, which Dr. Gaut can explain and contextualize for the jury, are undeniably relevant.

Similarly, Defendants' half-hearted Rule 403 challenge that Dr. Gaut's testimony about investigative deficiencies will "mislead and confuse" the jury should be rejected.  This Court can—and doubtless will—instruct the jury about the claims at issue, the elements of those claims, and the manner by which the jury should evaluate Dr. Gaut's expert testimony.  There is no undue risk of confusion or prejudice (nor do Defendants even attempt to articulate any such risk), and the testimony should be permitted.

## II. Dr. Gaut's Opinions Regarding the Propriety of the Line-Up Procedures Are Relevant to the Claims and Appropriate Expert Testimony.

Next, Defendants submit that Dr. Gaut's opinions about Defendant Officers' deviations from accepted police practices in conducting the lineup are not relevant because the identification procedure was not suggestive, given Plaintiff's own account that Clifford Frazier (initially) selected a filler, and not him, as the shooter.  Of course, there is no disputed issue of fact that Clifford ultimately did select Plaintiff as the shooter, which led to Plaintiff's arrest.  Thus, the improper, suggestive conduct leading up to Clifford's lineup identification of Plaintiff remains directly relevant.[3]  Perhaps more critically, the mere fact that the Defendants engaged in such

---

[3] As set forth more fully in Plaintiff's Response to Defendants' Motion *in Limine* No. 13, Defendants cannot render certain misconduct before and during the lineup irrelevant merely by pointing to other misconduct during the lineup as the "cause" of Clifford's identification. This argument ignores that *all* of Defendants'

deviations from standard practice leading up to and during the lineup speaks to the Defendants' state of mind when conducting the lineup—and as noted previously, the Defendants' state of mind is a key question for the jury to determine in this case.

It is well-recognized that expert testimony from police practices experts can assist jurors in assessing the intent of defendant police officers with respect to alleged misconduct. "Expert testimony regarding relevant professional standards can give a jury a baseline to help evaluate whether a defendant's deviations from those standards were merely negligent or were so severe or persistent as to support an inference of intentional or reckless conduct that violated a plaintiff's constitutional rights." *Jimenez v. City of Chicago*, 732 F.3d 710, 721-22 (7th Cir. 2013); *see also Sanders v. City of Chicago Heights*, No. 13 C 0221, 2016 WL 4398011, at *9 (N.D. Ill. Aug. 18, 2016) (same, as to testimony by Dr. Gaut regarding irregularities in lineup procedures). Indeed, even outside the police context, it is well-established that "[s]ignificant, unexplained or systematic deviations from established policies or practices can no doubt be relative [sic] and probative circumstantial evidence of [unlawful] intent." *Hobgood v. Illinois Gaming Bd.*, 731 F.3d 635, 645 (7th Cir. 2013) (citation omitted).

Defendants' suggestion that their alleged misconduct should be "obvious" to jurors without expert testimony is belied by the case law in this district and elsewhere. *See, e.g., Sanders*, 2016 WL 4398011, at *8 (allowing police practices testimony from Dr. Gaut related to deviations from accepted standards in photo array, including, *inter alia*, fact that plaintiff's photo had been cropped to make him appear tall and slim, plaintiff's facial hair was unique among subjects in photo array,

---

improper actions influenced Clifford's identifications of Plaintiff, including his *subsequent* identifications after the lineup. The argument also ignores that Plaintiff's unduly suggestive lineup claim is evaluated under the "totality of the circumstances." And as explained herein, Defendants' argument fails to account for the way in which their conduct before and during the lineup bears on the jury's evaluation of Defendants' intent.

and plaintiff's photo was the only one without mugshot or height identifiers). It also is belied by common sense and experience. Lay jurors could not be expected to know, for example, what police officers are supposed to say (or not say) to a witness during a lineup, how the lighting between the witness room and filler room may affect visibility, and what type of documentation should ordinarily be produced to memorialize a lineup. Even if jurors can recognize that certain police conduct seems improper or irregular, the expert testimony of Dr. Gaut will assist jurors in contextualizing that conduct against professional standards. This is exactly the type of specialized knowledge that Rule 702 contemplates.

Finally, in challenging the relevance of Dr. Gaut's testimony, Defendants over-simplify and misapprehend the concept of probable cause. Defendants' formulation of "[e]ither the jury believes Plaintiff's claims or it doesn't" (Dkt. 433, at 7), is not an accurate characterization of probable cause. As will be set forth in jury instructions, the determination of whether the Defendant Officers had probable cause to arrest Plaintiff involves an assessment of whether a reasonable person in the Defendant Officers' position would have believed that Plaintiff committed the crime charged, based on what the Defendant Officers knew and any reasonably trustworthy information they had received. *See, e.g.,* Seventh Circuit Pattern Jury Instruction No. 7.08 (2017 rev.). In evaluating probable cause, for example, the jury may consider whether the Defendants closed their eyes to facts that would have helped clarify the circumstances of the crime, or whether they had obvious reason to doubt the accuracy of certain information reported. *See, e.g., Beauchamp v. City of Noblesville, Ind.*, 320 F.3d 733, 742-32 (7th Cir. 2003). Far from simply bolstering Plaintiff's testimony, Dr. Gaut's testimony about the Defendants' conduct and how it deviated from professional policing standards will assist the jury in evaluating whether probable cause existed, under the appropriate legal standard as the Court articulates it. *See Jimenez*, 732

F.3d at 721 (finding expert's testimony regarding "reasonable police practices" admissible and stating that it "had direct implications for applying legal standards such as probable cause"); *see also United States v. Brown*, 871 F.3d 532, 537 (7th Cir. 2017) (stating that the probable cause "standard contemplates a reasonable *officer*, not a reasonable person, so it may be useful in a particular case to know how officers typically act in like cases").

### III. Dr. Gaut's Opinion Does Not Impermissibly Implicate Credibility Determinations, and Experts Are Permitted to Rely on One Version of the Facts.

Defendants next take a second bite of the apple in challenging Dr. Gaut's proposed testimony regarding visibility through a one-way mirror and whether a person participating in a lineup might plausibly be able to see the witness viewing the lineup through such a mirror. In Motion *in Limine* No. 10, the Defendants argued that the proffered expert testimony about the lineup mirror should be excluded because it is "unreliable" and an "improper . . . attempt to bolster Plaintiff's credibility." (Dkt. 317, at 4.) Now, in their "Supplement," Defendants again seek to preclude this testimony as "unreliable," "improper bolstering of Plaintiff's testimony," and an "improper attack on the credibility of Frazier."[4] (Dkt. 433, at 8-10.)

Contrary to Defendants' attack, Dr. Gaut offers no opinion on Clifford's credibility. Instead, he provides expert testimony about police practices and standards that is premised on Plaintiff's account of the lineup—something that is entirely appropriate where expert testimony is

---

[4] Plaintiff relies upon and re-asserts the counterarguments to Defendants' reliability and bolstering arguments as set forth in Plaintiff's initial opposition to Motion *in Limine* No. 10, namely, that Defendants' arguments wrongly characterize Dr. Gaut's opinion as relying on an "experiment" conducted by Plaintiff's investigator and attack the factual underpinnings of Dr. Gaut's opinion. (*See* Dkt. 337 at 4-7.) As noted therein, Dr. Gaut's opinion as to potential visibility through the one-way mirror did not rely on investigator Ray Ruebenson's 2018 inspection and was not premised on any "experiment" for which a methodology needed to be set forth. (*Id.*) Rather, Dr. Gaut's opinion derived from his understanding of the effect that differences in the amount of light between the witness room and participant room could have on visibility of a one-way mirror, based on his years of law enforcement training and experience. (*Id.*) Defendants' "Supplement" has offered nothing new on this subject.

offered in connection with disputed issues of fact.  Indeed, *Richman v. Sheahan*, 415 F.Supp.2d 929, 942-43 (N.D. Ill. 2006)—the very case that Defendants cite in seeking to bar Dr. Gaut's testimony—explicitly rejected the notion that an expert's opinion should be excluded because it is premised upon an assumption that adopts the factual account of one witness over another.  In particular, the Court stated:

> The remaining question is whether experts should be precluded from giving opinions on matters within their admitted competence merely because the opinions are based on a general acceptance of [one party's version of the encounter at issue].  In almost all cases . . . there will be a conflict in the testimony of the witnesses. It is precisely because experts are prohibited from resolving these conflicts . . . that the expert's opinions necessarily must be based on someone's version of the incident.
>
> Experts routinely base their opinions on assumptions that are necessarily at odds with their adversary's view of the evidence.  *See, e.g., TK-7 Corp. v. Estate of Barbouti*, 993 F.2d 722 (10th Cir.1993); *International Adhesive Coating Co. v. Bolton Emerson International*, 851 F.2d 540, 546 (1st Cir.1988).  That does not mean that the expert has made impermissible credibility determinations that preclude him from testifying. If an expert could not base his opinion on assumptions - which in turn are based on testimony - there could be little meaningful and informative expert testimony in any case in which there was a divergence of testimony.
>
> . . . .
>
> There is a critical distinction between an expert testifying that a disputed fact actually occurred or that one witness is more credible than another and an expert giving an opinion based upon factual assumptions, the validity of which are for the jury to determine. The former is manifestly improper, the latter is not. As the court said in *Atkinson Warehousing and Distribution Inc., v. Ecolab Inc.*, 99 F.Supp.2d 665, 670 (D.Md.2000): "Pursuant to Rule 704 ... an opinion based on a disputed fact may not be excluded simply because it pertains to an issue to be decided by the jury." . . . .

*Richman*, 415 F.Supp.2d at 942-43.

Dr. Gaut's testimony about the lineup room and visibility through a one-way mirror does

not become an improper expert opinion on witness credibility simply because the jury may ultimately use it to question Clifford's testimony (or credit Plaintiff's). Dr. Gaut's opinion is rooted in clear and adequately supported assumptions to which he has applied his specialized knowledge of police practices. Indeed, he specifically qualifies his opinion based on those assumptions—his opinion is that Plaintiff would have been able to see through the one-way mirror "under the conditions [Plaintiff] described." (*See* Dkt. 433-1 at 14-15.) Dr. Gaut leaves it to the jury to determine whether Plaintiff's description is credible. This is what the law contemplates, and there is no reason for preclusion.

### IV. Dr. Gaut's Opinions Do Not Make Impermissible Legal Conclusions About Whether the Defendants Violated Plaintiff's Constitutional Rights.

Finally, Defendants challenge Dr. Gaut's testimony by incorrectly claiming that his expert report asserts legal conclusions about whether the Defendant Officers violated Plaintiff's rights. Defendants were wrong when they originally made these arguments in Motion *in Limine* No. 10, and they are wrong now.

Dr. Gaut summarized his opinions regarding the manner in which the Defendant Officers conducted their investigation of the Frazier / Clayton homicides as follows:

- The defendants failed to conduct a proper homicide investigation, resulting in the misidentification and ultimate conviction of Eddie Lynier Bolden.
- The defendants' departures from generally accepted law enforcement practices and standards were severe, numerous, and material.

(Dkt. 433-1 at 8.) Of course, his report details various elements of the investigation and identifies the Defendant Officers' investigative deficiencies and professional improprieties throughout. But for every element, Dr. Gaut compares the Defendant Officers' conduct to accepted police practices and standards, not legal standards. (*See, e.g., id.* at 10 (addressing failure to give witness

appropriate warnings prior to live lineup in context of generally accepted police practices); 13 (addressing failure to properly document the lineup in context of accepted police practices); 18 (addressing failure to return or inventory safety deposit keys and documents taken from Cynthia Steward in context of generally accepted law enforcement standards).)

Not surprisingly, Defendants do not (and cannot) cite any actual legal conclusions issued by Dr. Gaut. Instead, they make two challenges. First, they argue that Dr. Gaut's opinion that the improper homicide investigation led to Plaintiff's misidentification and conviction is tantamount to determining the ultimate legal issues in the case. But this is not the case. The fact that Dr. Gaut's testimony suggests causation between the Defendant Officers' conduct and the misidentification of Plaintiff does not mean that he is opining on legal issues concerning whether, *inter alia*, the Defendant Officers violated Plaintiff's rights, whether there was probable cause to arrest Plaintiff, and whether the Defendant Officers had the requisite intent to be held liable for the claims at issue.

The Seventh Circuit specifically addressed when expert testimony related to a legal issue should be permitted in *Jimenez*. There, the Court rejected a challenge to an expert's testimony about reasonable police practices that was alleged to be "intertwined with probable cause," even though the Court recognized that the expert's opinions "had direct implications for applying legal standards" such as probable cause, *Brady* obligations, and due process issues. *Jimenez*, 732 F.3d at 721-22. In upholding the appropriateness of the testimony, the Seventh Circuit noted that the effect of the expert's testimony "depended on how the jury resolved conflicts among the testimony of other witnesses," and the testimony "would have helped the jury conclude that the departures from reasonable police practices were so important, severe, and numerous that they supported an inference that [the defendant officer] acted deliberately to violate [the plaintiff's] rights." *Id.* at

722. This use and relevance of the expert's testimony, the appellate court held, "would not transform it into an impermissible legal opinion." *Id.* Similarly, Dr. Gaut's opinion about the effects of the various departures from standard police practice is helpful to the degree that the jury credits the testimony of various witnesses whose testimony underlies Dr. Gaut's opinion. Dr. Gaut's opinion provides context to allow the jury to weigh how the various departures from reasonable police practices might support inferences about the Defendant Officers' intent to violate Plaintiff's rights and whether they acted as reasonable officers under the circumstances, as implicated in analyzing probable cause.[5]

Second, Defendants focus on the word "material" in Dr. Gaut's second opinion, tying it to the materiality standard of a *Brady* analysis. (*See* Dkt. 433 at 13 ("As it relates to constitutional standards and police investigations, the term "materiality" means the evidence has apparent exculpatory value and the defendant would have been able to obtain comparable evidence by other reasonably available means.").) But Dr. Gaut does not use the term "material" to address or imply any exculpatory value, and his use of this word does not make his opinion an improper legal conclusion. As already addressed at length in Plaintiff's opposition to Motion *in Limine* No. 10 (Dkt. 337, at 7-15), Dr. Gaut will not testify to the legal conclusion that Defendants violated *Brady*—and as Defendants themselves acknowledge, *Brady* violations no longer form the basis for any claims in the case. Nor do Dr. Gaut's opinions hinge on the exculpatory value of any of the evidence that the Defendant Officers handled or mishandled. To the extent that Defendants

---

[5] The other cases that Defendants cite in arguing that Dr. Gaut's testimony would constitute improper legal opinions are inapposite. In *Roundy's Inc. v. N.L.R.B.*, 674 F.3d 638, 648 (7th Cir. 2012), for example, the proposed expert would have testified about Wisconsin property law, which the Seventh Circuit said was the province of the Court to address and could be argued by the parties in their briefs, rather than presented through a witness. *United States v. Lupton*, 620 F.3d 790, 799-800 (7th Cir. 2010), involved proposed testimony by an expert to explain the meaning of certain real estate statutes, regulations, and contract terms. Unlike in those cases, there is nothing in Dr. Gaut's testimony here by which he would describe or explain the law.

are arguing that reference to *Brady*-related concepts (such as materiality) in Dr. Gaut's opinions provide a basis for exclusion, Plaintiff relies on the arguments previously set forth. (*See* Dkt. 337.)

It bears noting, additionally, that a word's legal significance in certain contexts does not mean that the mere use of that word vernacularly renders its use an improper legal opinion. *See Richman*, 415 F.Supp.2d at 947 (allowing expert opinion using the word "reasonable," and holding, "[e]ven if the everyday understanding of a term and its legal meaning are congruent, exclusion is inappropriate where the opinion will not consist of a naked conclusion (*i.e.*, the defendant's conduct was reasonable, was negligent, etc.) but will be based on 'adequately explored legal criteria.' That is, they will explain the reasons underlying the ultimate conclusion.") Here, the term "material," as used by Dr. Gaut, does not signify or imply any exculpatory value. Rather, it is clear from the context and the surrounding adjectives (severe, numerous) that Dr. Gaut is using the word "material" in its common colloquial usage to mean "having real importance or great consequences." *See* "Material." Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/material. (last visited July 29, 2021). Further, to the extent there is a concern that the jury may become confused between Dr. Gaut's use of the term "material" and the legal definition of "materiality" in the context of *Brady*, the Court can instruct the jury in the appropriate meaning of the legal standard of "materiality" and can further instruct the jury that it is free to reject the testimony of the expert.[6] *See Richman*, 415 F.Supp.2d at 948. But the risk of such confusion is extremely remote—particularly given the dismissal of *Brady* claims from the case—and accordingly, preclusion of Dr. Gaut's opinions because of his use of this commonplace word is unwarranted.

---

[6] Alternatively, should the Court direct it, Dr. Gaut could use an alternative term, such as "important" or "consequential," for the term "material" when explaining his opinions at trial.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff Eddie L. Bolden respectfully asks this Court to enter an Order denying Defendant Officers' Motion *in Limine* No. 10.


Dated: August 2, 2021                                  Respectfully Submitted,

                                                       */s/ Eli J. Litoff*
                                                       Ronald S. Safer
                                                       Matthew Crowl
                                                       Eli J. Litoff
                                                       RILEY SAFER HOLMES & CANCILA LLP
                                                       70 W. Madison Street, Suite 2900
                                                       Chicago, Illinois 60602
                                                       (312) 471-8700
                                                       rsafer@rshc-law.com
                                                       mcrowl@rshc-law.com
                                                       elitoff@rshc-law.com

                                                       Sandra L. Musumeci (*pro hac vice*)
                                                       RILEY SAFER HOLMES & CANCILA LLP
                                                       136 Madison Avenue
                                                       6th Floor
                                                       New York, New York 10016
                                                       (212) 660-1000
                                                       smusumeci@rshc-law.com

                                                       *Attorneys for Eddie L. Bolden*

14

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 2, 2021, I caused the foregoing document to be electronically filed using the CM/ECF system, which will send notice of this filing to all counsel of record.

*/s/ Eli J. Litoff*
Eli J. Litoff