**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| EDDIE L. BOLDEN, ) | |
| ) | |
| Plaintiff, ) | Case No. 17 C 00417 |
| ) | |
| vs. ) | Honorable Steven Seeger |
| ) | |
| CITY OF CHICAGO, et al., ) | |
| ) | JURY TRIAL DEMANDED |
| Defendants. ) | |

**DEFENDANT OFFICERS' REPLY IN SUPPORT OF THEIR MOTION *IN LIMINE* NO. 13 TO BAR THE TESTIMONY OF GEOFFREY LOFTUS**

Defendants James Oliver, Angelo Pesavento, and Edward J. Siwek as Special Representative for the Estate of Edward Siwek ("Defendant Officers"), through their undersigned attorneys, respectfully submit this reply in support of their Motion *In Limine* No. 13 To Bar The Testimony Of Geoffrey Loftus, one of Plaintiff's expert witness Geoffrey Loftus.

**ARGUMENT**

In an attempt to sidestep the impact of Judge Shah's ruling that Defendants did not fabricate Clifford Frazier's identification of him, Plaintiff flippantly brushes aside his theory of the case and his sworn testimony from both his criminal proceedings and this case. Circuit precedent, however, binds Plaintiff to that testimony and that testimony makes his expert's testimony wholly irrelevant.

Plaintiff also urges the Court to allow his expert to testify because he thinks the standard under *Manson v. Brathwaite*, 432 U.S. 98, 113-14 (1977) and *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972) makes the expert's testimony relevant to his due process claim. But that standard is not the standard applicable here. Indeed, the Seventh Circuit has consistently rejected the *Biggers/Braithwaite* framework as a vehicle to hold officers liable under §1983.

Finally, Plaintiff argues that, even if not relevant to his due process claim, his expert's

testimony is probative of innocence or guilt and therefore is relevant to the jury's determination of damages. But Plaintiff has his own testimony and the testimony of his *five* alibi witnesses to offer the jury as evidence of his innocence. That's plenty. Whatever remote relevance an expert opinion on memory formation may have to Plaintiff's innocence, that evidence is cumulative and its minimal relevance is far outweighed by the risk of confusing and misleading the jury, and the unfair prejudice the testimony would have to the officers, who did not and were not required to have knowledge of memory formation or the expertise necessary to assess the suggestiveness of a particular procedure or determine its impact on Clifford's memory.

> I. **Plaintiff's Sworn Testimony Renders Loftus'elevant.**

As established in Defendants' motion, according to Plaintiff's theory of the case and his sworn testimony, the procedures used did *not* result in an identification of Plaintiff. (See Dkt. 434, 3-6.) They resulted in the identification of a filler but, Plaintiff swears, he saw the officers manufacture an identification of him. (*Id.*, 4-5.) Thus, however characterized, the procedures are not relevant to Plaintiff's allegations.

Plaintiff now wants to escape his sworn testimony (from his criminal proceedings and deposition here) and his express allegations (repeated in each of his five complaints) because Judge Shah rejected his fabrication claim, finding that, after taking his allegations/testimony as true and drawing all inferences in his favor, the actions Plaintiff claims he saw through the one-way mirror establish, at most, that the officers coerced Clifford Frazier's identification. (Dkt. 276, 47-48.) But coercing Clifford is not a violation of Plaintiff's constitutional rights unless the coercive tactics were suppressed. *Petty v. City of Chicago*, 754 F.3d 416, 421-24 (7th Cir. 2014) (coercion of eyewitness' identification not actionable because the plaintiff knew of coercion before his hearing on his motion

to suppress the identification and before his trial)[1]; *Avery v. City of Milwaukee*, 847 F.3d 433, 439 (7th Cir. 2017) ("[A] claim that an officer coerced a witness to give incriminating evidence does not, at least standing alone, violate the wrongly convicted person's due-process rights. . . . Because coerced testimony may in fact be true, the due-process right to a fair trial isn't implicated absent a violation of the *Brady* duty to disclose facts about the coercive tactics used to obtain it. Armed with the *Brady* disclosure, the accused can impeach the coerced testimony by pointing to the tactics the officers used to extract it, and the jury has a fair opportunity to find the truth."); *cf. Newsome v. McCabe*, 319 F.3d 301, 304 (7th Cir. 2003) ("*Newsome II*") (the use of "manipulated" identifications at trial "would not by itself support an award of damages, as our opinion denying rehearing in 2001[2] explained"); *see also id.* at 305 ("[T]he constitutional violation justifying an award of damages is not the conduct of the lineups but the concealment of evidence about them.").

So, Plaintiff's sworn testimony has now become inconvenient. A civil plaintiff, however, cannot manufacture a triable issue of fact by simply denying sworn testimony from his criminal proceedings. *Higgins v. Mississippi*, 217 F.3d 951, 955 (7th Cir. 2000) (civil plaintiff could not create triable issue of fact by denying dispositive admission made in his criminal proceedings without a credible explanation for the contradiction). To the contrary, our circuit's rule is: "[L]itigants cannot create a factual issue requiring trial by contradicting, under oath, a prior sworn statement . . . unless there is a powerful reason such as newly discovered evidence." *United States v. Stewart*, 198 F.3d 984, 986 (7th Cir. 1999). Nor is this an issue of credibility. *Seshadri v. Kasraian*, 130 F.3d 798, 802 (7th Cir.

---

[1] In *Petty*, an eyewitness to a shooting was held for questioning for 13 to 17 hours without food or water during which time the defendant officers badgered and pressured him into identifying the plaintiff from a photo book. 754 F.3d at 423.

[2] *Newsome v. McCabe*, 256 F.3d 747, 753 (7th Cir. 2001) ("*Newsome I*") ("No one would quarrel with the assertion in defendants' reply brief that 'in 1979 [and today], the detectives could have reasonably believed that it should be up to the prosecutors, and ultimately the court, to determine if an eyewitness identification is sufficiently reliable for use at trial.' Newsome has made a more serious claim that the defendants withheld information important to that prosecutorial (and judicial) decision . . . ." (alteration original)).

1997) ("no credibility determination to be made" with contradictory prior admissions). Plaintiff is bound by his sworn testimony and that testimony renders the procedures used, and any expert testimony regarding those procedures or memory formation, irrelevant.

> **II. Even If The Court Disregards Plaintiff's Sworn Testimony And Allegations, Loftus' Opinion Is Still Not Relevant to Any of His Claims.**

The Seventh Circuit has consistently refused to convert "a rule of evidence to a rule of damages" by recognizing an independent §1983 claim for use of suggestive procedures in securing an identification based on the standards set forth in *Biggers* and *Brathwaite*. *See Phillips v. Allen,* 668 F.3d 912, 915 (7th Cir. 2012) (refusing to extend "the *Biggers* approach . . . from trials to arrests, and from a rule of evidence to a rule of damages"); *Coleman v. City of Peoria*, 925 F.3d 336, 347 (7th Cir. 2019) (*Brathwaite* and *Biggers* "address the admissibility of eyewitness identifications at trial, not §1983 liability."); *Alexander v. City of Southbend*, ("Grounded in due process, the constitutional interest implicated in challenges to police identification procedures is *evidentiary* in nature. Thus, we recognized in *Hensley* that the *Brathwaite* rule regarding unduly suggestive identification procedures 'is a prophylactic rule designed to protect a core right, that is the right to a fair trial, and it is only the violation of that core right and not the prophylactic rule that should be actionable under §1983.'" (emphasis original) (quoting *Hensley, v. Carey,* 818 F.2d 646, 649 (7th Cir.1987))).[3] Thus, Plaintiff's reliance on the *Biggers/Brathwaite* standard in support of admission of his expert's opinion gets him nowhere because Plaintiff's jury will not be assessing the reliability of Clifford's identification; that job is for the Court.

As the Seventh Circuit instructs: "The U.S. Constitution does not mandate that photo arrays and lineups meet a certain standard of quality." *Coleman v. City of Peoria*, 925 F.3d 336, 347 (7th Cir.

---

[3] Plaintiff omits this critical language from *Alexander* and instead quotes the opinion's language from the court's discussion of admissibility standards in a criminal case (Dkt. 441, 9, 11), not whether a suggestive procedures claim is an actionable §1983 claim, 433 F.3d at 555.

2019). In general, "the validity of an eyewitness identification is for the jury—which implies that it is not tortious to obtain that identification in order to have evidence to present at trial." *Phillips v. Allen*, 668 F.3d 912, 917 (7th Cir. 2012). Furthermore, whether a particular procedure was unduly suggestive is an evidentiary issue remedied by exclusion of the evidence at a criminal trial. *Phillips,* 668 F.3d at 915 (analogizing the exclusionary rule for unduly suggestive procedures to other trial rights, such as "the requirement of proof beyond a reasonable doubt, the defendant's entitlement to confront his accusers, or the hearsay rule"); *Coleman*, 925 F.3d at 347 (the principles of law in *Brathwaite* and *Biggers* "address the admissibility of eyewitness identifications at trial, not §1983 liability.") And even if a criminal defendant is unsuccessful in challenging the admissibility of the identification in his criminal case or forfeits his due process rights by not challenging admissibility at all or through direct appeal, "[police officers] cannot be held liable for depriving [a plaintiff] of his constitutional rights simply because the trial court rejected [his] legal arguments, or because he forfeited them." *Coleman*, 925 F.3d at 347.[4]

Thus, for purposes of §1983, the opportunity to challenge the admissibility of the allegedly suggestive identification in the criminal case satisfies due process. Under this reasoning, an unduly suggestive procedure cannot be an independent basis for a due process claim and, consistent with this reasoning, the Seventh Circuit has now twice refused to convert this rule of evidence to a rule of damages under § 1983. *Phillips,* 668 F.3d at 915 (refusing to extend "the *Biggers* approach. . . from trials to arrests, and from a rule of evidence to a rule of damages"); *Coleman* 925 F.3d at 347 (*Brathwaite* and

---

[4] In *Coleman*, the plaintiff's motion to suppress was denied and "he did not object to [the] in-court identification, and . . . did not address the suppression ruling in his criminal appeal." *Coleman*, 925 F.3d at 347 (accepting as true facts that over the course of one day, the witness saw the plaintiff in the hallway with police; police offered the witness names of possible suspects; police showed witness a photo of the plaintiff before conducting a lineup and the witness identified him as one of the perpetrators from the photo; police told the witness the plaintiff was in the line-up before she identified him in the lineup; and the plaintiff was the only suspect in the line-up not wearing a wristband, *id.* at 340-42).

*Biggers* "address the admissibility of eyewitness identifications at trial, not § 1983 liability.").[5] A straightforward reading of our circuit precedent, including the cases Plaintiff relies on here, makes plain that, as Defendants argued on summary judgment, Plaintiff's due process claim cannot be based on the use of suggestive procedures alone.[6]

Nevertheless, Defendants acknowledge that, in *dicta*, the Seventh Circuit has considered a possible exception to its refusal to "convert a rule of evidence to a rule of damages" under §1983. *Phillips*, 668 F.3d at 915; *Coleman*, 925 F.3d at 347-48. In *Phillips*, a Fourth Amendment case, the court proposed (but did not apply) a "proviso" that would allow a cause of action against a police officer for use of "a particular technique" if that technique "ha[d] already been forbidden by an authoritative judicial decision (that is, by the Supreme Court or the court of appeals with territorial jurisdiction)" before the officer used it and if the officer deliberately used it to "manufacture" an identification. *Phillips*, 668 F.3d at 917 ("We mentioned earlier the need for a proviso. It is this. Suppose a particular technique that officers may use to trick a person into making an unreliable identification has already been forbidden by an authoritative judicial decision (that is, by the Supreme Court or the court of appeals with territorial jurisdiction) and the officer uses it anyway. An officer who employs the forbidden technique *in order to manufacture an identification* can't complain when a court provides a remedy." (emphasis added)).

---

[5] Significantly, a few weeks before *Coleman* was decided, the Seventh Circuit declined to decide whether unduly suggestive procedures could constitute the basis of a due process claim. *See Goudy v. Cummings*, 922 F.3d 834, 844 (7th Cir. 2019) ("We need not and do not address [plaintiff's] allegation that the allegedly improper one-man 'showup' procedure independently constituted a basis for liability."). Then came *Coleman*, which applied the reasoning of *Phillips*, a false arrest case, to a wrongful conviction case, and thus answered *Goudy*'s question: there is no such claim.

[6] *See Newsome II*, 319 F.3d at 305 ("[T]he constitutional violation justifying an award of damages is not the conduct of the lineups but the concealment of evidence about them."). And the questions *Alexander* posed in its analysis, like *Newsome*, clearly target the *disclosure* of evidence that would enable a criminal defendant to test the identification at issue at trial. 433 F.3d at 555. The questions posed also make clear that because the constitutional right at issue is evidentiary in nature, the due process remedy is exclusion from trial through a motion to suppress. *Id.* ("Grounded in due process, the constitutional interest implicated in challenges to police identification procedures is *evidentiary* in nature." (emphasis original)).

6

In *Coleman*, a Fourteenth Amendment reversed-conviction case, the court added a trigger to the *Phillips* proviso: the proviso does not apply unless the plaintiff *successfully* challenged the admission of the identification in his criminal case on appeal (because, as the court had earlier explained, a police officer cannot be held liable for a trial court's ruling or a plaintiff's forfeiture of his due process right to challenge the admissibility of the identification). 935 F. 3d at 347. If the plaintiff did so, the proviso is triggered and a court could then go on to consider whether the officer "use[d] a specific interrogation technique clearly proscribed by existing law" at the time he used it to "trick" a witness into making an unreliable identification:

> Even if a court had later found Tequilla's identifications inadmissible under the *Brathwaite/Biggers* framework, an officer is not automatically liable for violating a suspect's constitutional rights whenever a judge later deems a witness's identification inadmissible. *Phillips v. Allen*, 668 F.3d 912, 915 (7th Cir. 2012) (refusing to extend the *Biggers* framework "from trials to arrests, and from a rule of evidence to a rule of damages"). Our decision in *Phillips* notes a proviso for situations where an officer uses a specific interrogation technique clearly proscribed by existing law. *Id* at 917 (explaining an officer may not use judicially forbidden measures "to trick a person into making an unreliable identification").

*Id.* at 347-48. Although logically the hypothetical court that "had later found" the identification inadmissible to which *Coleman* refers must mean a court in Plaintiff's direct appeal or post-conviction proceedings, Judge Shah may have read that language to include a later civil court. But even allowing for that interpretation and applying the proviso discussed in *dicta*, the point remains: it is the Court, not the jury, that must determine the reliability of the identification before the proviso is even considered. *See also Newsome I*, 256 F.3d at 753 ("ultimately [it is up to] the court, to determine if an eyewitness identification is sufficiently reliable for use at trial.") The jury's role is simply to resolve the disputed facts surrounding the circumstances of the identification/lineup. As such, Plaintiff's expert's testimony has no relevance to the issues the jury will consider here.

Finally, even if the Court allows the jury to determine the reliability of the identification, that determination must be made based on the circumstances surrounding Clifford's encounter with

7

Plaintiff on the night of the shooting, not on an expert's opinion regarding the formation of memory and any impact the specific procedures *may* have on memory.[7] Indeed, as Defendants established in their motion, the Seventh Circuit has expressly held that police officers do not have, and are not required to have, the expertise necessary to determine whether a particular procedure is unduly suggestive. (Dkt. 434, 6-10). And as the court further explained, even the court *itself* could not rule on the suggestiveness of a procedure and its impact on an identification without the assistance of expert evidence. *Phillips*, 668 F.3d at 915-17. Any suggestion that the jury should be allowed to base reliability on social science developed years after this identification (and rejected for years in our circuit, even in criminal cases where the accuracy of an identification *is* critical and a human being's freedom or life is on the line[8]) is wrong as a matter of law and, in fact, rewrites the *Biggers/Brathwaite* standard.

Remarkably, Plaintiff cites *Phillips* to argue that the Seventh Circuit recognizes the need for expert testimony regarding the suggestiveness of a procedure and selectively quotes from the opinion while utterly ignoring the analysis explaining that police officers cannot be held liable for the use of

---

[7] *Biggers*, 409 U.S. 188, 199–200 (in assessing "whether under the totality of the circumstances, the identification was reliable even though the [show up] procedure was suggestive . . . the factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."); *Brathwaite*, 432 U.S. 98, 114 ("The factors to be considered [by a court in assessing the admissibility of an identification secured through a suggestive procedure] are set out in *Biggers*.")

[8] *See e.g.*, *United States v. Carter,* 410 F.3d 942, 951 (7th Cir.2005) (affirming exclusion of eyewitness identification expert who "opine[d] about factors that could affect memory, including the circumstances surrounding the event in question, the amount of stress on the eyewitness, the amount of attention paid by the witness, and the law enforcement procedures used to elicit the witness's memory"); *U.S. v. Hall,* 165 F.3d 1095, 1101 (7th Cir.1999) (affirming exclusion of expert testimony regarding "the scientific bases for eyewitness identification" and "factors that give rise to suggestiveness and the likelihood of mistaken identification"); *United States v. Daniels,* 64 F.3d 311 (7th Cir.1995); *United States v. Larkin,* 978 F.2d 964 (7th Cir.1992) (finding that the "hazards [of eyewitness identification] are well within the ken of most lay jurors and counsel was "granted ample opportunity at trial to discuss those hazards and cast doubt upon the witnesses' eyewitness identification of his client"); *United States v. Hudson,* 884 F.2d 1016 (7th Cir.1989) (district court properly excluded expert testimony designed to show (1) the effect of stress on eyewitness identification, (2) the problems associated with cross-racial identifications, (3) an overview of the memory process, and (4) the impact of a short viewing period upon the accuracy of identification).

suggestive procedures because they, like the court, are not experts in this area. (Dkt. 441, 6.)[9] Indeed, *Phillips*' entire discussion of the facts surrounding the identifications there was *solely* to illustrate its point that neither the police officers nor the lawyers nor the justices themselves have the expertise necessary to determine whether the facts before the court established that the procedures used were suggestive. *Phillips*, 668 F.3d 912, 914-17. And Plaintiff fails to even mention, much less discuss *Coleman*. (See generally, Dkt. 441.)

As for the cases Plaintiff does discuss, only three are civil cases, *Sanders v. City of Chicago Heights*, 13 C 0221, 2016 WL 4398011, at *1 (N.D. Ill. Aug. 18, 2016), *Cage v. City of Chicago*, 979 F. Supp. 2d 787, 841 (N.D. Ill. 2013) and *Newsome II*, and each is factually and legally distinguishable. First, neither *Sanders* nor *Cage* ever addressed how the expert testimony at issue was in fact relevant to a claim or fact at issue. *Sanders*, 2016 WL 4398011 at *5-6; *Cage*, 979 F. Supp. 2d at 836-44. Instead, the opinions simply discuss the fallibility of eyewitness identification and assert that the jury therefore needs this testimony. *Sanders*, 2016 WL 4398011 *5-6; *Cage*, 979 F. Supp. 2d 836-44. Because of this significant omission, neither case offers any assistance here (relevance is the threshold in the Court's analysis). If the Court were to attempt to infer which claim might have made the testimony relevant, both cases do involve fabricated evidence-based due process claims. *Sanders v. City of Chicago Heights*, 13 C 0221, 2016 WL 2866097, at *4 (N.D. Ill. May 17, 2016) (opinion on summary judgment); *Cage*, 979 F. Supp. 2d at 797. In that context, each plaintiff must establish that the evidence at issue is fabricated. In other

---

[9] Plaintiff's only other reference to *Phillips* is a half-hearted argument that Defendants' discussion of *Phillips* in their motion is essentially a qualified immunity argument. (Dkt. 441, 14.) As discussed above, the binding precedent in *Phillips* and *Coleman* sets forth the standards and elements that Plaintiff must prove to sustain his suggestive procedures-based due process claim (assuming the *dicta* in that precedent actually recognizes such a claim). As for Defendants' qualified immunity defense, Plaintiff argues, with no citation to authority, that the defense is no longer available because Judge Shah denied it on summary judgment. (*Id.*) Not so. There are facts in dispute as to the circumstances of the identification and the procedures used that are necessary to the Court's consideration of this defense and therefore Defendants can and will raise it at trial. *See e.g.*, *Smith v. Finkley*, 20-1754, 2021 WL 3660880, at *19 (7th Cir. Aug. 18, 2021) (where there are material factual disputes, "the qualified immunity defense [is] preserved for later determination [and] remains a legal decision for the district court.")

words, the respective plaintiff must prove that the identification is false which means the accuracy of the identification is at issue. This is the only reasonable inference.

In fact, other than *Phillips*, *Sanders* relies exclusively on Seventh Circuit law then-recently developed in criminal cases. *Sanders*, 2016 WL 4398011, at *5-6. In such cases, accuracy is *the* issue and a judge must decide whether to admit the identification, and if the judge does, a jury must decide whether the identification is in fact accurate. The relevance is therefore manifest. And in *Cage*, after acknowledging the body of circuit law affirming the rejection of expert testimony in criminal cases and a then-recent shift in that thinking, the court, relying on *Newsome II* and some district court opinions, stated that such testimony has been and should be allowed in civil cases. *Id.* at 836-41. As discussed below, the expert testimony in *Newsome II* was materially different than that in *Cage*, and again, the court failed to point to any claim whose elements would make the expert testimony relevant.

*Sanders* and *Cage* are further distinguishable in that the identifications at issue in those cases were stranger identifications. *Sanders*, 2016 WL 4398011, at *6; *Cage*, 979 F. Supp. 2d at 838. This is a dispositively distinguishing fact because, as each of the cases recognizes, the type of expert testimony Plaintiff seeks to admit is helpful only in the context of stranger identifications. *Sanders*, 2016 WL 4398011, at *6; *Cage*, 979 F. Supp. 2d at 838. And this is not a matter of cross-examination; it is a predicate for admission. Clifford's unrebutted (and un-rebuttable) testimony is that while he waited across the street at a Harold's chicken restaurant, he saw Plaintiff enter the J&J Fish restaurant and speak to his brother Derrick and the other murder victim, Ledell Clayton. (See Exhibit A to this reply, Excerpts of June 3, 2018 Deposition of Clifford Frazier, 11:17-23.)[10] He then saw Plaintiff exit the restaurant with Derrick and Ledell, walk across the street and enter the Harold's chicken. (*Id.*, 11:23-12:1-2.) Because he was there to watch his brother Derrick's back, Clifford's suspicions were

---

[10] The page number citations to Exhibit A refer to the page numbers of the deposition transcript, not the exhibit itself.

10

heightened and he kept his eyes trained on Plaintiff while he and Plaintiff sized each other up. (*Id.*, 11:7-8; 12:3-20.) He watched Plaintiff ask for change, leave the restaurant and get into Derrick's car. (*Id.*, 12:11-20.) He then tried to convince his brother not to get into the car with Plaintiff. (*Id.*, 13:5-17.) Under no distortion of the record could Plaintiff be characterized as "unfamiliar" to Clifford. Indeed, Derrick identified Plaintiff to Clifford in the Harold's Chicken by name. (*Id.*, 13:5-11.) Finally, both cases were decided before *Coleman* and, although the opinions cite to *Phillips* as authority for admitting this type of evidence, they ignore the overarching principles set forth in *Phillips*.

As for *Newsome II*, it is consistent with *Phillips* and *Coleman* and likewise holds that the use of suggestive procedures itself is not the basis for a due process claim. 319 F.3d at 305 ("[T]he constitutional violation justifying an award of damages is not the conduct of the lineups but the concealment of evidence about them."). And it is also factually and legally distinguishable from this case. First, the due process claim was *Brady*-based and the allegations, among other things, were that the defendants suppressed the circumstances of the lineup in which three eyewitnesses identified the plaintiff as well as fingerprint evidence left by the actual perpetrator at the scene of the crime. *Id.* at 304; *Newsome I*, 256 F.3d at 749-753. Second, the expert's testimony had nothing to do with memory formation or whether the procedures used in the lineup there were suggestive. *Id.* at 305-6. Instead, the expert conducted probability testing in which he showed 550 individuals a picture of the actual perpetrator (who was apprehended based on the fingerprint evidence) and a picture of the actual lineup (which included the plaintiff) to determine the statistical probability of the three eyewitnesses identifying the plaintiff rather than the actual perpetrator. *Id.* Although *Newsome II* also did not identify how this testimony was relevant, its repeated reiteration that the suppression of the officers' conduct during the lineup, not the conduct itself, was basis for the due process claim, creates the inference that the probability evidence had some relevance to the materiality component of the *Brady* claim. As the court put it, if "the witnesses would have identified Newsome no matter how the officers prompted

11

them during the lineups, then defendants' conduct did not cause the wrongful conviction and an award of damages would be improper," implying that in such case, the suppressed evidence of the officers' conduct during the lineup would not have been material. *Id.*

### III. The Unfair Prejudice To Defendants Far Outweighs The Probative Value Of Loftus' Opinion Even If It Is Relevant To Plaintiff's Damages.

Plaintiff argues that his expert should still be allowed to testify because the accuracy of Clifford's identification is relevant on that it is probative of whether he is innocent which he says will affect the jury's damages determination. (Dkt. 441, 7.) However, Plaintiff has plenty of evidence to offer the jury regarding his innocence: he has his own testimony and the testimony of five alibi witnesses. Additional evidence in the form of memory formation is thus cumulative. Furthermore, this evidence is probative, and then only remotely so, only if the underlying assumptions, which are based on credibility findings by the expert, are true. In addition, the testimony only addresses stranger identifications. Thus, it wholly ignores the only evidence in the record regarding Clifford's interactions with Plaintiff: Derrick was nervous and did not want to go through with the drug deal; Clifford told him not to go; when Derrick went anyway, Clifford went to too so he could "watch his brother's back"; Clifford observed Plaintiff for several minutes in two well-lit locations (restaurants that were opened for business); he and Plaintiff sized each other up and he kept his eyes trained on Plaintiff even as Plaintiff left Harold's Chicken and was getting into the backseat of Derrick's car; and Derrick told Clifford Plaintiff's name. (Ex. A, 9:11-14; 10:16-11:1-8; 11:10-13:11.) Simply put, Clifford's senses were heightened with his attention laser-focused on Plaintiff because his brother was leaving with Plaintiff to count the money for the drugs *(id.,* 13:5-11) and Plaintiff was the individual who posed a threat to his brother (drug deals often turn violent). In short, unlike the cases Plaintiff relies on, this is not a record which consists of strangers descending, guns drawn, on a parked car in an alley at night in which the victims were asleep and then dragged to secluded, dark garage (*Sanders*) or a woman accosted from behind and raped from behind in the dark (*Cage*).

12

As Plaintiff himself has now argued, he wants the jury to be convinced of his innocence even if it does not believe his or his witnesses' testimony. (Dkt. 441, 13.) Indeed, Plaintiff goes so far as to say that his expert may persuade the jury that he is innocent even if he fails to prove that the officers did anything wrong. (*Id.* ("the jury [may] find Clifford's identification unreliable and Defendants' procedures suggestive, even if the jury believed that the officers' conduct during the lineup itself was entirely proper").) Plaintiff apparently has no faith in his or his witnesses' credibility and wants his expert to improperly bolster that credibility by opining that Clifford's identification was inaccurate because memory formation science indicates that his memory *may* have been faulty. But Plaintiff misses the point: if the officers did nothing wrong, Plaintiff has no claims here and he would therefore not be entitled to damages *at all*. *Coleman*, 925 F.3d 336, 348 ("the due process check on eyewitness identifications 'comes into play only after the defendant establishes improper police conduct'" (quoting *Perry v. New Hampshire*, 565 U.S. 228, 241 (2012)).

Plaintiff essentially admits that he wants a verdict based on his innocence rather than any unconstitutional misconduct and his hope is that his expert's testimony will get him there. And this is precisely the pitfall Defendants seek to forestall. If the jury concludes that Clifford's memory was faulty and therefore Plaintiff was innocent, human emotion could very well cause a verdict in Plaintiff's favor even if he has failed to prove that his constitutional rights were violated. Or equally untenable, the jury could assume that Defendants knew of and were trained in this science, or even in just the best practices/national standards the expert will testify to, and that this knowledge means they engaged in unconstitutional misconduct and intentionally so. *Cf. U.S. v. Proano*, 912 F.3d 431, 440 ("only evidence of training that the officer actually received can be relevant to his state of mind"). Thus, Plaintiff's expert's testimony is not only cumulative, it is unfairly prejudicial and will confuse and mislead the jury. The Court should not allow this testimony. *Parish v. City of Elkhart, Ind.*, 702 F.3d 997, 1001 (7th Cir. 2012) ("A district court may exclude relevant evidence if the court determines that its

13

probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." (internal quotation marks omitted)); *see also id.* ("Evidence is unfairly prejudicial if it would cause the jury to decide the case on an improper or irrational basis, such as by appealing to the jury's emotions. Both probative value and prejudice must be determined in context, and as the probative value increases, so does our tolerance of the risk of prejudice.")

In *Parish*, the sole case Plaintiff relies on in support of his argument here, the court did recognize that some evidence of innocence should be allowed to aid in a jury's determination of damages. *Id.* But the case is factually and legally distinguishable, and as the court aptly stated, context matters. *Id.* First, the trial court did not allow *any* evidence of innocence. *Id.* at 999-1001. Here, Plaintiff and his five alibi witnesses will provide evidence of innocence. Second, the evidence at issue came to light years after the plaintiff's conviction and therefore plainly could not support liability on the due process claim alleged there. *Id.* at 1001. Third, the evidence was not an expert's opinion testimony on memory formation; it was "significant probative evidence [from DNA evidence and the eyewitnesses to the crimes] as to the issue of [the plaintiff's] guilt or innocence." *Id.* at 999.

More specifically, the DNA evidence was obtained from a hat customized with rhinestones forming the letter "J" that fell off one of the perpetrator's head during the commission of the crime. *Id.* at 1000. When it was analyzed years later, it matched a man whose first name started with a "J" and who matched the physical description of one of the perpetrators. *Id.* When the eyewitnesses were shown pictures of that man, they recanted their identifications of the plaintiff, testifying that they were no longer certain of their identifications (one of the witnesses called the man a "twin" of the plaintiff) and could not testify that the plaintiff was one of the perpetrators. *None* of this testimony was admitted at trial (the deposition testimony was read to the jury at the trial).[11] *Id.*

---

[11] There was additional significant evidence of actual innocence that the trial court excluded, including

14

In addition to the above exculpatory testimony, the eyewitnesses, however, had also testified at their depositions about the identifications they had made years before at the time the crimes were committed. *Id.* One of them, who had identified the plaintiff from a photo book, dramatically testified that she had dropped the book when she saw the page with the plaintiff's photo, and the other, who had identified the plaintiff in a photo lineup, testified that he had "easily" identified the plaintiff and could have sworn he was the perpetrator. *Id. All* this testimony was read to the jury. *Id.* Thus, the jury was left with the impression that the eyewitnesses stood by their identifications (*id.* at 1002) and, although it found for the plaintiff, the damages award was insignificant relative to the amount of time the plaintiff was incarcerated (*id.* at 999). As the court put it: "[The trial court's] decision to redact only the exculpatory portions of the eyewitness testimony skewed the testimony to such an extent that it no longer resembled its true nature. It fundamentally misrepresented what the eyewitnesses actually believe, and it deprived the jury of critical information [relevant to the damages determination]." *Id.* at 1001.

There is a material difference between factual testimony that is probative of innocence and opinion testimony that is at most only remotely probative of innocence for damages purposes. Again, Plaintiff has himself and five other witnesses prepared to give fact-based testimony regarding his whereabouts on the night of the shooting. And that testimony is not fraught with unfair prejudice and doesn't risk confusing or misleading the jury.

## **CONCLUSION**

For all of the foregoing reasons, the Court should bar Gregory Loftus' testimony in its entirety.

---

testimony from the man who pled guilty to the underlying attempted murder and armed robbery that he had never met the plaintiff and that the plaintiff did not participate in the commission of the crimes (*id.* at 1000, 1002) as well as testimony from the man whose DNA was found in the "J" bedazzled hat and whose name started with the letter "J." (*id.* at 1002).

Respectfully submitted,

/s/ *Amy A. Hijjawi*
Special Assistant Corporation Counsel

*Attorneys for Defendant Officers*

> Andrew M. Hale
> Barrett Boudreaux
> William Bazarek
> Amy A. Hijjawi
> Brian J. Stefanich
> Hale & Monico, LLC
> 53 W. Jackson, Suite 337
> Chicago, IL 60604

**CERTIFICATE OF SERVICE**

I, the undersigned attorney, certify that I filed the foregoing using the Court's electronic filing system. As a result, copies of the filed document were electronically served upon all counsel of record.

/s/ Amy A. Hijjawi