**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| EDDIE L. BOLDEN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17 C 00417 |
| | ) | |
| vs. | ) | Honorable Steven Seeger |
| | ) | |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION *IN LIMINE* TO PRECLUDE**
**DEFENDANTS FROM INTRODUCING FBI DOCUMENTS AND REPORTS**

Defendants Angelo Pesavento, James Oliver, Edward Siwek, the Estate of George Karl, and the Estate of Michael Kill (collectively "Defendant Officers"), by their attorneys, in response to Plaintiff's Motion *in Limine* to bar Defendants from introducing FBI documents and reports, state as follows.

**Argument**

As Plaintiff well knows, his own witness, former FBI Special Agent Dale Tipton, was the Case Agent in the FBI's operation "ANT-BAN," during which the FBI investigated and conducted extensive surveillance of Anthony Williams, a.k.a. "Ant," a former Governor in the Gangster Disciples and the individual who was responsible for and controlled drug trafficking in the area in which the underlying murders of Derrick Frazier and Ledell Irving Clayton ("Irving") occurred. And in fact, Mr. Tipton is expected to testify that, as the Case Agent in operation ANT-BAN, he either authored or reviewed every memorandum and report generated in the FBI's investigation of Anthony Williams.

As Plaintiff also well knows, the FBI utilized confidential informants and conducted

surveillance to gather information about Ant's activities and close associates. It is undisputed in this case that Ant orchestrated the murders and lured the victims to the J&J Fish under the guise of purchasing narcotics from them.

Plaintiff further knows that the FBI and CPD met just two days after the murders. At that meeting, the FBI told CPD it was interested in CPD's investigation of the murders "as it concerns ANTHONY Q. WILLIAMS" and the FBI and CPD agreed to gather and exchange information from their respective investigations. (See Exhibit A to this response.) That the names of the representatives from the respective agencies are redacted in no way detracts from or undermines the material information recorded by the FBI in this memorandum. And again, Mr. Tipton is expected to testify that, as the Case Agent in operation ANT-BAN, he either authored or reviewed every memorandum and report generated in the FBI's investigation of Anthony Williams.

In one of those reports, the reporting agent summarizes an exchange of information that led to the identification and arrest of Plaintiff for Derrick and Irving's murders. Specifically, based on statements given by Clifford Frazier, Derrick's brother and a surviving victim, CPD told the FBI that the "wanted offender" in the murders was an "unknown black male, 20-28 years, light complexion, and approximately 6' to 6'2", with a nickname of 'LANIER.'" (See Exhibit B to this response.)

The FBI recognized the name as an individual identified by a source as a close associate of Ant and who the FBI saw accompanying Ant on several occasions to narcotics court at 26th and California. (*Id.*) The FBI provided CPD "**with positive information as it relates to 'LANIER,' a.k.a. Edward L. Bolden. This information resulted in the arrest by CPD of one Edward L. [B]olden . . . .**" (*Id.*)

The memorandum (Ex. A) and the report (Ex. B) are clearly comprehensible and contain

an accounting, authored or reviewed by Mr. Tipton, of the FBI's agreement to exchange information with CPD, the FBI's investigatory activities and the actual exchange of information between the FBI and CPD. The jury need not look "underneath" the redactions to find "something incriminatory" about Bolden. It's all right there in plain, unredacted English.

Bolden's real issue with the reports is that they resoundingly belie his claim that the officers investigating the murders, for no discernible reason, framed him for these crimes. The FBI documents also belie Bolden's claim that Clifford, the only eyewitness willing to come forward at risk to his life and identify a Gangster Disciple, was not a credible witness. As the evidence at trial will show, the FBI passed along critical information regarding the murders to CPD just days after the murders, including information that a man named Eddie L. Bolden was also known as "Lynier," was a very close associate of Ant, had been seen by the FBI with Ant on several occasions, and was the perpetrator of the murders at issue.

This information wholly corroborated Clifford's statements to police, made within the first 48 hours after the crimes were committed, that a man named Lynier was with his brother, Derrick, as well as Irving and Ant immediately before Derrick and Irving were murdered, that this man left in Derrick's car with Derrick and Irving shortly before those young men were murdered and that this same man then returned to Cottage Grove, the street on which the J&J Fish and Harold's Chicken were located, and attempted to murder him. While some of the information obtained by the FBI was from sources, some was obtained from the FBI's own surveillance of Ant. Both are admissible. Information from the sources that was shared with CPD is admissible for the probable cause analysis and to demonstrate the effect on the officers' state of mind. Information from the FBI's surveillance is patently admissible as Bolden admits in his motion. (See Dkt. 451, 8.)

Nevertheless, Bolden wants the Court to view the FBI's investigation and the CPD's

3

investigation in isolation from one another as though the plain text of the FBI documents does not make crystal clear the indisputable fact that CPD and the FBI each had an interest in these crimes and each shared information to facilitate the interest of the other. He wants to pretend that because the FBI documents were not in CPD files, the officers never received the intelligence/information gathered by the FBI. But as multiple FBI documents demonstrate, like Exhibits A and B to this response for example, the FBI consistently passed information to CPD to assist in the officers' investigation of the murders. That the intelligence/information may have been given orally to an officer or called into a Sergeant or Lieutenant to pass along to the investigating officers for follow up doesn't change the fact that the investigating officers received the information.

While it is true that some of the documents are heavily redacted, they nonetheless inform other less redacted documents. And they certainly are evidence that CPD and the FBI investigated in tandem and freely shared information regarding Derrick and Irving's murders. (See e.g., Exhibit C to this response at 2 (FBI report documenting that information obtained from a source regarding the murders at issue was turned over to a Lieutenant at CPD).) In any event, the body of documents produced by the FBI is voluminous. As demonstrated by Exhibits A, B and C here, to impose a blanket bar on documents the Court has yet to review and Defendants have yet to address would be unreasonable and erroneous. Each document or set of documents should be considered if and when Defendants seek to admit them. At that time, Plaintiff can object, Defendants can respond and the Court can rule.

**CONCLUSION**

For all of the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's Motion *In Limine* To Bar Defendants From Introducing FBI Documents And Reports.

4

Respectfully submitted,


/s/ Amy A. Hijjawi
Special Assistant Corporation Counsel
*Attorneys for Defendant Officers*


Andrew M. Hale
Barrett Boudreaux
William Bazarek
Amy A. Hijjawi
Brian J. Stefanich
Hale & Monico, LLC
53 W. Jackson, Suite 337
Chicago, IL 60604

**CERTIFICATE OF SERVICE**

I, the undersigned attorney, certify that I filed the foregoing using the Court's electronic filing system. As a result, copies of the filed document were electronically served upon all counsel of record.

*/s/ Amy A. Hijjawi*