**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

EDDIE L. BOLDEN,                            )
                                            )
                 Plaintiff,                 )          Case No. 17 C 00417
                                            )
         vs.                                )          Honorable Steven C. Seeger
                                            )
CITY OF CHICAGO, et al.,                    )
                                            )
                 Defendants.                )

**PLAINTIFF'S REPLY IN SUPPORT OF
MOTION *IN LIMINE* TO PRECLUDE DEFENDANTS FROM INTRODUCING
FBI DOCUMENTS AND REPORTS AS TRIAL EXHIBITS**

Plaintiff Eddie L. Bolden, by his undersigned counsel, respectfully submits this Reply in Support of his Motion *in Limine* to Preclude Defendants from Introducing FBI Documents and Reports as Trial Exhibits ("Motion" or "Mot.," Dkt. 451).

Defendants' Response spins a fantastical tale conveniently invented by counsel at the eleventh hour to justify the admission of hundreds of highly-redacted and unsubstantiated FBI Documents. Defendants claim that the FBI's surveillance of Anthony Williams is somehow relevant to their investigation of the January 29, 1994 shootings because the FBI provided the CPD with information that "resulted in the arrest" of Mr. Bolden. Resp. at 2. These wild allegations are neither supported by the Exhibits attached to the Response nor any other part of the record. This Court should give no credence to Defendants' tortured interpretation of the FBI Documents, which will not be supported by any witness with personal knowledge to interpret and explain the documents. The FBI documents are not only irrelevant and unduly prejudicial but rife with inadmissible hearsay.

**ARGUMENT**

**I.** **This Court Should Reject Defendants' Contrived Relevance of the FBI Documents and Exclude Them as Irrelevant and Unduly Prejudicial.**

Defendants' contrived relevance argument rests on their unsupported spin on the documents at issue. They contend it is "undisputed" that "Ant orchestrated the murders and lured the victims to the J&J Fish under the guise of purchasing narcotics," and thus the FBI's surveillance of Anthony Williams is relevant to Defendants' investigation of Mr. Bolden. Resp. at 2. Far from "undisputed," this "fact" has no basis whatsoever in the evidentiary record—which explains Defendants' failure to cite to any exhibit or court filing in support.

Defendants apparently admit they have no witness competent to testify, based on personal knowledge as required by Federal Rule of Evidence 602, about the contents of these FBI reports. They assert only that Dale Tipton will testify that he "either authored or reviewed" the reports. Resp. at 1. Conspicuously absent from Defendants' Response, however, is any proffer of testimony from Tipton or any other FBI agent that they provided any evidence to CPD, or that they even recall any conversations with the CPD that are supposedly reflected in the reports. To the contrary, Tipton has submitted a sworn statement that he has no recollection of the only conversation with the CPD actually reflected in the documents—a conversation in which the CPD provided information *to the FBI*, not the other way around. *See* Affidavit of Dale Tipton, attached hereto as Exhibit 1, at ¶ 3 ("Although I have seen that my name and Gang Crimes Specialist Mitchell McCullough are listed as meeting with Chicago Police Detective Ed Siwek, I have no recollection of this meeting."). Furthermore, a closer examination of the FBI Documents attached to Defendants' Response reveals their total lack of relevance to the CPD's investigation:

**Exhibit A** – Defendants claim that Exhibit A evinces "in plain, unredacted English," "the FBI's agreement to exchange information with CPD, the FBI's investigatory activities and the

actual exchange of information between the CPD." Resp. at 2-3. It does no such thing.

Exhibit A states that two days after the murders, "A meeting was called by the [unidentified] AUSA to discuss the January 29, 1994, murder of Ledell Clayton." Temporarily setting aside the hearsay problems (which Plaintiff addresses below in Section II of this Reply), Exhibit A simply reveals (amidst heavy redactions of unknown verbiage) that the meeting attendees discussed an unidentified "third individual" and the sale of two kilograms of cocaine to Anthony Williams at the J&J Fish restaurant. The attendees then discussed that an "unknown individual" left J&J Fish with Ledell Clayton and shot Clayton "a short while later." Finally, the attendees discussed that "the unknown individual … then came back and attempted to" engage in unknown behavior. Exhibit A does not reveal the basis for these statements or attribute them to any party, including the FBI or an FBI source. Nor does it show that the FBI provided any information to the CPD, much less to Defendants. Nor does it reference Mr. Bolden or his nickname, Lynier. The report also does not say that the FBI agreed to "share information" with the CPD—it says that the two agencies agreed to "monitor" the case. Defendants' claim that "the FBI passed along critical information regarding the murders to the CPD just days after the murders, including information that a man named Eddie L. Bolden was also known as 'Lynier,'" (Resp. at 2) is simply false and certainly not supported by Exhibit A.

**Exhibit B** – Defendants similarly claim that Exhibit B proves that the "FBI consistently passed information to CPD to assist in the officers' investigation of the murders," and that it contains information bolstering Clifford Frazier's credibility. Resp. at 4. Again, the document itself directly contradicts Defendants' interpretation.

Exhibit B could not have "assisted" Defendants' investigation or probable cause analysis because it was not written until *after* Mr. Bolden had been arrested ("The subject is currently being

held in the COOK COUNTY JAIL … charged with murder ….”). Defendants mischaracterize the following passage in the report as reflecting information provided by the FBI to the CPD about Mr. Bolden: “CPD was provided with positive information as it relates to ‘Lanier’…This information resulted in the arrest by CPD of one Edward L. Golden [*sic*].” The only reasonable interpretation of this sentence is that it reflects the information provided to the CPD by ***Clifford Frazier***. It is undisputed that “the information [that] resulted in the arrest” of Mr. Bolden was Clifford Frazier’s identification. As noted above, neither Tipton nor any other witness will offer competent testimony providing a different interpretation of the report. It is defense counsel’s conjecture, and nothing more.[1]. Rather than corroborating Clifford Frazier’s statements to the CPD, Exhibit B merely repeats them.

**Exhibit C** – Defendants claim that Exhibit C proves that “information obtained from a source regarding the murders at issue was turned over to a Lieutenant at CPD[.]” Resp. at 4. Once again, Defendants distort the evidence.[2] Exhibit C provides:



This highly-redacted and unintelligible document says nothing about ***who*** “turned over”

---

[1] Other aspects of the report plainly demonstrate that it reflects information provided by the CPD to the FBI, not the other way around. For example, Exhibit B states: “The identities of the victims were listed as follows: Derrick Frazier … and Ladell Clayton.” Obviously it is ***the CPD*** who “listed” the identities of the victims, as they discovered the bodies and were responsible for investigating the murders.

[2] Exhibit C references a triple shooting on January 30, 1994, which Defendants ask the Court to speculate (without evidentiary support) is meant to be the shootings on January 29, 1994.

information to the unidentified Lieutenant. Nor does it provide **what** that information was. Defendants' argument that this report reflects **the FBI** providing information **about the murders** is nothing more than defense counsel's conjecture. This pure speculation cannot be presented to the jury.

Exhibit C's numerous redactions also demonstrate Defendants' nefarious purpose: inviting the jury to conclude, without evidentiary basis or testimony from a witness with personal knowledge, that Mr. Bolden's name appears underneath the redactions. Defendants do not dispute the heavily-redacted nature of the FBI Documents. *See* Resp. at 4 ("[I]t is true that some of the documents are heavily redacted …."). Nor do they dispute that the numerous redactions invite speculation as to the nature of the redacted information—indeed, Defendants themselves invite that speculation by claiming, without basis, that the FBI Documents incriminate Mr. Bolden. *See id.* at 3 (arguing that the FBI Documents contain "'something incriminatory' about Bolden"). Such blatant speculation would be highly prejudicial to Mr. Bolden and is the proper subject of an order *in limine*. The FBI Documents should be excluded based on their total lack of probative value and highly prejudicial effect.

As a last resort, Defendants offer the future trial testimony of Dale Tipton, "the Case Agent in operation ANT-BAN [the FBI's investigation of Anthony Williams]." Resp. at 2. Conspicuously absent is any proffer of testimony from Mr. Tipton or any other FBI agent that they provided any evidence to CPD. As Defendants concede, "the FBI documents were **not** in CPD files[.]" Resp. at 4. Defendant Pesavento, the lead detective assigned to the investigation, testified under oath three times against Mr. Bolden, and never once alluded to receiving information from the FBI. Before the grand jury, Pesavento testified:

5

> Q. And, Detective, can you tell the Ladies and Gentlemen of the Grand Jury how you acquired your information in this matter?
>
> A. By interviewing Clifford Frazier.

*See* Pesavento Grand Jury Testimony, attached hereto as Exhibit 2, at 6:18-21. At Mr. Bolden's criminal trial, Pesavento testified that he learned that "a Lanier was inside J&J Fisheries" after he "spoke to others in J&J Fishery"—***not*** from information provided by the FBI. *See* Pesavento Criminal Trial Testimony, attached hereto as Exhibit 3 at 170:1-10. Pesavento further testified that as part of his investigation, he sought and obtained information from various other members of law enforcement, specifically Detective Michael Baker and police officers with the "3rd District"—again, ***not*** the FBI. *See id.* at 170:17-172:14. Pesavento was also asked ***repeatedly*** at his deposition what evidence he relied upon "when making the decision to arrest Mr. Bolden." He answered that he following pieces of information were the totality of evidence he considered: (1) Clifford Frazier's identification of Mr. Bolden at the lineup, (2) witness interviews, and (3) shell casings. *See* Pesavento Deposition Testimony, attached hereto as Exhibit 4, at 26:7-19. Pesavento said ***nothing*** about the FBI.

That the contents of the FBI Documents were "given orally" to Defendants (Resp. at 4) is a fiction invented by Defendants' counsel for purposes of their Response. This Court should not countenance this manipulation of the evidence. *See Richardson v. Bowersox*, 188 F.3d 973, 980 (8th Cir. 1999) ("Courts may prohibit arguments that '***misrepresent the evidence*** or the law, introduce irrelevant prejudicial matters, or otherwise tend to confuse the jury.'") (emphasis added) (quoting *United States v. Sawyer*, 443 F.2d 712, 713-14 (D.C. Cir. 1971)).

## II.     This Court Should Preclude the FBI Documents as Rank Hearsay.

In response to Plaintiff's hearsay objection, Defendants do not identify any applicable exception to the federal rule against hearsay. As stated in Plaintiff's Motion (and amply

demonstrated by the Exhibits to Defendants' Response), the FBI Documents consist almost entirely of inadmissible hearsay. The FBI Documents summarize completely unsubstantiated, out-of-court statements made by unknown third parties to unknown members of the FBI. *See, e.g.*, Resp. Ex. A (summarizing conversation at meeting between unknown AUSA, unknown Gang Specialist, and unknown FBI agent), Ex. B ("Having been advised by [redacted] as to the identity of persons closely related to ANTHONY Q. WILLIAMS …"), Ex. C ("On January 14, 1994, [redacted] contacted G/S [redacted] telephonically and he provided the following information …."). Defendants' argument that "Mr. Tipton … either authored or reviewed every memorandum and report generated in the FBI's investigation of Anthony Williams" (Resp. at 1) changes nothing. Defendants cannot offer testimony by any witness with ***personal knowledge*** of the information in the FBI Documents—the redactions of those individuals' identities make that impossible. And they do not even assert that Tipton could offer such testimony. Anonymous tips from unidentified sources plainly do not exhibit the "necessary indicia of accuracy and reliability" that would justify their admission as business records. *Shea v. Fairman*, 1991 WL 160332, at *2 (N.D. Ill. Aug. 19, 1991); *see also* Mot. at 7-8 (collecting cases excluding anonymous third-party statements made by persons without a public duty to report).

Nor can Defendants solve their hearsay problem by offering the FBI Documents for their impact on the Defendants, rather than the truth of the matter asserted. The FBI Documents cannot be relevant "for the probable cause analysis and to demonstrate the effect on the officers' state of mind" (Resp. at 3) if the Defendants never reviewed them—the fact that Mr. Tipton may have reviewed them is irrelevant.[3] As discussed in Section I, *supra*, Defendants have no basis to claim

---

[3] Moreover, even if the FBI shared the information gathered by its unidentified sources, anonymous tips rarely satisfy probable cause. *See Illinois v. Gates*, 462 U.S. 213, 227 (1983) (recognizing that anonymous tips generally lack the necessary indicia of reliability for probable

that they were affected by—or even aware of—the FBI's investigation of Anthony Williams when they framed Mr. Bolden.

## CONCLUSION

For the foregoing reasons, Plaintiff Eddie L. Bolden respectfully asks this Court to enter an Order granting his motion *in limine*.

Dated: September 21, 2021      Respectfully Submitted,

                 */s/ Ronald S. Safer*
                 Ronald S. Safer
                 Matthew Crowl
                 Eli J. Litoff
                 Valerie Brummel
                 RILEY SAFER HOLMES & CANCILA LLP
                 70 W. Madison Street, Suite 2900
                 Chicago, Illinois 60602
                 (312) 471-8700
                 rsafer@rshc-law.com
                 mcrowl@rshc-law.com
                 elitoff@rshc-law.com
                 vbrummel@rshc-law.com

                 Sandra L. Musumeci (*pro hac vice*)
                 RILEY SAFER HOLMES & CANCILA LLP
                 136 Madison Avenue
                 6th Floor
                 New York, New York 10016
                 (212) 660-1000
                 smusumeci@rshc-law.com

                 *Attorneys for Plaintiff Eddie L. Bolden*

---

cause); *Alabama v. White*, 496 U.S. 325, 329 (1990) (criticizing anonymous tips as "seldom demonstrat[ive of] the informant's basis of knowledge or veracity").

8

## CERTIFICATE OF SERVICE

I hereby certify that on September 21, 2021, I caused the foregoing document to be electronically filed using the CM/ECF system, which will send notice of this filing to all counsel of record.

*/s/ Valerie Brummel*
Valerie Brummel