**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| EDDIE L. BOLDEN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17-cv-417 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| CITY OF CHICAGO, *et al.*, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**<u>ORDER</u>**

The Court makes the following rulings on the twenty-seven motions *in limine* filed by

Plaintiff Eddie Bolden, Defendant the City of Chicago, and the Defendant Officers.

Trial courts have broad discretion in ruling on evidentiary issues before and during trial.

*See Bridgeview Health Care Ctr., Ltd. v. Clark*, 816 F.3d 935, 939 (7th Cir. 2016); *Whitfield v.

Int'l Truck & Engine Corp.*, 755 F.3d 438, 447 (7th Cir. 2014). "Although the Federal Rules of

Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the

district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S.

38, 41 n.4 (1984); *see also Dietz v. Bouldin*, 136 S. Ct. 1885, 1891 (2016) ("The Federal Rules of

Civil Procedure set out many of the specific powers of a federal district court," but "they are not

all encompassing," for example, they make no provision "for the power of a judge to hear a

motion *in limine*.").

"Trial courts issue rulings on motions in limine to guide the parties on what evidence it

will admit later in trial," and "[a]s a trial progresses, the presiding judge remains free to alter

earlier rulings." *Perry v. City of Chicago*, 733 F.3d 248, 252 (7th Cir. 2013). Regardless of the

Court's initial ruling on a motion *in limine*, the Court may adjust its ruling during the course of

trial.  *See Farfaras v. Citizens Bank & Trust of Chicago*, 433 F.3d 558, 565 (7th Cir. 2006).  It is well-established that a motion *in limine* "is an important tool available to the trial judge to ensure the expeditious and evenhanded management of the trial proceedings" and that it "permits the trial judge to eliminate from further consideration evidentiary submissions that clearly ought not be presented to the jury because they clearly would be inadmissible for any purpose."  *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997).

So, from the get-go, this Court underscores that the following rulings are preliminary.  This Court might learn more as the case unfolds, and that additional information may change this Court's assessment of the admissibility of the evidence.  But in the meantime, this Court makes the following rulings so that the parties can plan ahead and prepare for trial accordingly.

To help the reader, the Court provides the following summary of the cast of characters.  Plaintiff Eddie Bolden was convicted in 1996 of murdering two people on January 29, 1994.  His conviction was vacated in 2016, and he later received a Certificate of Innocence.  Derrick Frazier and Irving Ledell Clayton were the two murder victims.  Clifford Frazier (Derrick's brother) was injured during the shooting, and at the criminal trial, the State heavily relied on his testimony identifying Bolden as the shooter.

Anthony ("Ant") Williams (deceased) was a childhood friend of Bolden.  He was a governor of the Gangster Disciples, and allegedly orchestrated the killings.  Edna Williams and James Williams are his parents.  They owned J&J fish, a nearby restaurant where Bolden allegedly was during the killings.

Roderick Stewart is the person who, according to Bolden, actually committed the murders.  Cynthia Steward was the fiancée of Ledell Clayton (*i.e.,* one of the two victims).

**Bolden's Motion *in Limine* #1 – Prior Criminal History**

Plaintiff's motion *in limine* no. 1 to bar references to prior criminal history (Dckt. No. [277]) is hereby granted. Plaintiff seeks to exclude any references to his 1985 conviction for involuntary manslaughter for killing Lafere Boyd (when Bolden was 15 years old), which led to his incarceration until 1992.

That crime has little, if any, probative value to the issues at hand. A conviction for involuntary manslaughter does not have much bearing on whether Defendants used a suggestive lineup, or engaged in malicious prosecution, and so on.

Defendants argue that the prior conviction would explain "why Anthony Williams would have trusted Plaintiff to murder Frazier and Clayton." (Dckt. No. [278]). But the connection seems tenuous, and presumably there are other ways to establish the relationship between Anthony Williams and Bolden without getting into Bolden's prior criminal history. (As an aside, the Court assumes that Bolden did not kill *Boyd* at the behest of Anthony Williams. If that assumption is incorrect, counsel can raise it at the pretrial conference.)

Next, Defendants argue that the prior conviction is relevant to Bolden's attempt to intimidate a witness. That attempt involved giving a false story to Cynthia Steward about the reasons for the Boyd killing, to show a lack of motive for the Clayton and Frazier murders. But the connection seems tenuous, at best, and far afield from the issues at hand. Again, presumably Defendants could offer testimony about attempts to intimidate a witness without getting into Bolden's recharacterization of the reasons for the Boyd killing. That is, his criminal history doesn't seem to be a critical part of the story about Bolden's attempt to intimidate a witness.

In all likelihood, the evidence does not seem relevant to damages, either, unless Plaintiff opens the door (*e.g.*, by alleging that he is now a convicted felon because of the conduct of the Defendants).

Defendants offer a few other justifications, too, but they are a stretch, and even then, they do not move the needle very far. Except in an inflammatory direction.

Defendants do not come forward with evidence that they took Bolden's criminal history into account when making the probable cause determination. If that point proves to be incorrect, the Court might revisit its ruling.

It is difficult to see what evidence of a prior killing would contribute to the trial, except unfair prejudice. Any probative value would be substantially outweighed by the risk of unfair prejudice and confusion. *See* Fed. R. Evid. 403. It is only natural to think that the jury might give outsized importance to evidence of an earlier killing when evaluating evidence of a later killing. *See United States v. Jones*, 455 F.3d 800, 811 (7th Cir. 2006) (Easterbrook, J., concurring) ("Telling juries not to infer from the defendant's criminal record that someone who violated the law once is likely to do so again is like telling jurors to ignore the pink rhinoceros that just sauntered into the courtroom.").

**Bolden's Motion *in Limine* #2 – Gang Affiliations and Drug Selling**

Plaintiff's motion *in limine* no. 2 to bar references to Plaintiff's gang affiliation and drug activity (Dckt. No. [295]) is hereby denied (for now). Plaintiff seeks to exclude evidence that he was, as a teenager, affiliated with the Gangster Disciples, and sold drugs provided by Anthony Williams. But no party can elicit any such evidence, or make any such statements to the jury, without checking with the Court first. The Court wants to hear more from the parties.

In his third amended complaint, Plaintiff seems to fault the officers for failing to investigate the notion that the killing of Frazier and Clayton was a "gang-related hit."  *See* Third Am. Cplt., at ¶ 60 (Dckt. No. [236]) ("Defendant Officers . . . failed to investigate whether the shootings were the result of gang retaliation, despite the fact that Defendant Officers had information suggesting that Derrick Frazier and Ledell Clayton had a gang-related hit on them at the time of the shootings . . . .").

As Judge Shah noted, "[i]f the Gangster Disciples had a hit out on the murder victims, then Bolden's gang involvement would have become relevant, since he was a member of the Gangster Disciples."  *See* 8/9/19 Order, at 43 (Dckt. No. [276]).

So, the Court wants to hear more from the parties about whether any party will argue that the killings had something to do with the Gangster Disciples.  If so, the fact that Plaintiff himself had something to do with the Gangster Disciples might be fair game.

The Court also wants to learn more about what the Defendants knew at the time.  Did the officers know anything about Bolden's gang affiliation, and if so, what did they know, and when?  Did they investigate his gang affiliation, and if so, what did they learn?  If the killings had something to do with the Gangster Disciples, and if Defendants knew at the time that Bolden was affiliated with that gang, then his gang affiliation might be relevant.

Mentioning Plaintiff's history with the gang does not seem especially inflammatory in a case that seems destined to involve references to gang activity.

Also, the Court wants to hear if Defendants have evidence that Plaintiff continued to be a member of or associated with the Gangster Disciples after he left incarceration in 1992, meaning 14 months before the murders in question.  An older affiliation (from 1985, when the Boyd killing took place) would be less probative.

5

In addition, Plaintiff seeks to exclude evidence that, on occasion, Anthony "Ant" Williams (the governor of the Gangster Disciples) provided him small amounts of narcotics to sell. That evidence is potentially relevant. It depends on whether the Defendants' theory is that Plaintiff had something to do with the drug transaction in question that led to the murders (involving large amounts of cocaine). Evidence that Plaintiff had a drug-dealing relationship with Ant is potentially relevant to whether Plaintiff had something to do with a drug-dealing operation with Ant that went *bad* (and led to two murders).

True, the transaction in question involved much larger quantities, but that distinction about the weight of the drugs goes to the weight of the evidence. So, the Court wants to hear more from the parties before issuing a definitive ruling.

**Bolden's Motion *in Limine* #3 – Court Rulings**

Plaintiff's motion *in limine* no. 3. to bar references to state appellate court decisions and the trial court's witness credibility determinations (Dckt. No. [296]) is hereby granted in part and denied in part. Plaintiff seeks to exclude evidence of (1) the state appellate court decisions affirming his conviction on direct appeal; and (2) the state trial court's views regarding the credibility of witnesses Octavia Jackson and Vondell Goins.

The appellate history is fair game (at least in broad strokes, meaning a high-level summary). Plaintiff wants to present evidence that he prevailed in his post-conviction petition, so Plaintiff wants to tell *part* of the story of his post-conviction challenges to the verdict. If Plaintiff wants to tell the jury that he prevailed on his post-conviction petition, then Defendants can tell the jury that he did not prevail on direct appeal.

6

Telling part of the story does not tell the full story. Otherwise, the jury might have the misimpression that it was obvious from day one that the criminal trial was unfair to Bolden and riddled with errors.

That said, there is little need to get into the weeds of the rulings on direct appeal. Informing the jury what happened, for the sake of completeness, should suffice.

Defendants take it one step further. They want to exclude everything, including the post-conviction petition and the Certificate of Innocence. But as this Court will explain in its ruling on a related motion, the Certificate of Innocence is relevant to the malicious prosecution claim. If Defendants want to inform the jury that Plaintiff did not prevail on direct appeal, and thus round-out the appellate story that Plaintiff wants to tell, Defendants can do so.

This Court agrees that the jury should not hear judicial commentary on the credibility of witnesses. So the parties must not present evidence about what other judges had to say about whether they found witnesses to be credible.

On that note, the Court is interested to know if Plaintiff's counsel intends to offer evidence that the Court of Appeals referred to the State's case as "extremely thin." If so, Plaintiff must explain why, and how that position squares with a motion to exclude evidence that cuts in the other direction. Judicial comments on the strengths or weaknesses of evidence presumably should be in or out, across the board, no matter which direction they go.

**Bolden's Motion *in Limine* #4 – Testimony by James Oliver**

Plaintiff's motion *in limine* no. 4 to preclude certain testimony of James Oliver (Dckt. No. [297]) is hereby denied. During his deposition, Defendant Oliver testified that he might have received an informant tip in 1994 that "Lanier" (*i.e.*, Lynier, Bolden's middle name and nickname) was responsible for the shootings.

7

Plaintiff points out that the criminal record is devoid of any such evidence, despite requests by defense counsel during the criminal trial. That sounds like a fruitful basis for cross examination, but is not a basis for keeping it out at trial. (If anything, the fact that information about an informant was not disclosed to Bolden in the criminal case might help Bolden's case here.)

Maybe the testimony was "unsupported and vague" (*id.* at 3), but that's not much of a reason for banning it altogether.

Also, a tip is not hearsay because it is offered to demonstrate the effect on the listener (and not for its truth). The point is that an officer heard a tip, not that the tip was *true*.

Plaintiff argues that Oliver is not "sure" that he received the tip (*id.* at 3), but witnesses do not have to be "sure" about a fact to offer testimony about it. Again, that's fodder for cross.

**Bolden's Motion *in Limine* #5 – Testimony by Cynthia Steward**

Plaintiff's motion *in limine* no. 5 to exclude Cynthia Steward's testimony (Dckt. No. [307]) is hereby granted in part and denied in part. Plaintiff seeks to bar testimony from Cynthia Steward (the fiancée of Ledell Clayton, one of the victims) about whether she "believes" Bolden was involved in the murders. Plaintiff also seeks to exclude Steward's testimony about Bolden's participation in drug dealing, and testimony about hearing the victim's use Bolden's name.

People have all sorts of beliefs, but most of them probably aren't admissible. Here, Steward was not a witness to the crime, and based on her deposition testimony, she has no personal knowledge about whether Bolden participated in the murder. So she cannot express her beliefs on that question at trial.

At this time, the Court declines to categorically exclude testimony by Steward about whether Bolden was involved in drug deals with the victims. It is not clear if Steward could lay

a foundation. The Court will take up that issue at a later time, after hearing more from the parties.

Finally, it would not be hearsay for Steward to testify that she heard one of the victims use Bolden's name, because it would be enough that it was said. Plaintiff points out that Steward offered no such testimony in the criminal trial (*id.* at 4), but that's a point for cross examination.

**Bolden's Motion *in Limine* #6 – Statements by Anthony Williams**

Plaintiff's motion *in limine* no. 6 to exclude testimony about a statement that Anthony Williams made to Bolden (Dckt. No. [299]) is hereby granted in part and denied in part. Plaintiff seeks to exclude evidence of a statement that Williams made to Bolden on January 28, 1994, the day before the murders of Derrick Frazier and Ledell Clayton. Williams offered Bolden $20,000 to lure two other men outside a party so that they could be killed. Bolden testified at his deposition about that offer by Williams.

Plaintiff objects to that testimony as hearsay. It isn't hearsay. An offer to engage in criminal activity is not offered for its truth. It's enough that it was said.

An offer to participate in a double murder – on the day before a different double murder – is not irrelevant, either. If Defendants' theory of the case is that Williams and Bolden had a role in the murders of Derrick Frazier and Ledell Clayton, then an invitation by Williams to Bolden to participate in *another* double murder the day before is relevant. An invitation by Williams to Bolden to help with a double murder on Day 1 is probative of whether Williams invited Bolden to help with a double murder on Day 2. One would-be double murder is not so "very *different*" than another double murder, the very next day. *Id.* at 2 (emphasis in original).

But it all depends on what the officers knew at the time. The statement would seem to be relevant only if Defendants *knew* at the time about the invitation by Williams. This case is

ultimately about the conduct of the Defendants, so if the Defendants did not know about the offer by Williams at the time, it is difficult to see how it could have a bearing on the conduct of the Defendants.

That said, depending on the testimony by Bolden at trial, it is conceivable that he could open the door. For example, statements that he did not know Williams well, or that their relationship was entirely on the up-and-up, or (maybe) that he had no motive to engage in this killings, might be inconsistent with an invitation by Williams to help with a killing. So, depending on Bolden's testimony at trial, it is possible that this point could come out during impeachment. The Court will take up that issue at a later time, as appropriate. When Bolden is on the witness stand, Plaintiff's counsel should be mindful of opening the door.

**Bolden's Motion *in Limine* #7 – Counsel's Involvement**

Plaintiff's motion *in limine* no. 7 to exclude references to the involvement of Plaintiff's counsel in prosecuting the Gangster Disciples (Dckt. No. [300]) is hereby granted.

Trial should be about the evidence, not the advocates. The fact that Plaintiff's counsel prosecuted the Gangster Disciples is not relevant to the facts at hand, and would be unfairly prejudicial under Rule 403.

But the prohibition is a two-way street. Plaintiff's counsel cannot attempt to laud his laurels before the jury by pointing to his prosecutorial background, either.

Any prior connection between Plaintiff's counsel and defendant Oliver (who worked on the same federal Gangster Disciples investigation) is out of bounds, too. It's irrelevant, confusing, and distracting. They did not work together on the incident in question. It would be improper to use that shared experience on other cases as a backdoor way to infer an opinion by

Plaintiff's counsel about the credibility of defendant Oliver. Attorneys aren't supposed to offer their personal opinions.

**Bolden's Motion *in Limine* #8 – Plaintiff's Criminal Trial Strategy**

Plaintiff's motion *in limine* no. 8 to exclude references to his criminal trial strategy (Dckt. No. [301]) is hereby granted. Plaintiff seeks to exclude any reference to the fact that he did not testify at his criminal trial.

This issue involves an interesting nexus between criminal and civil trials. *See Patrick v. City of Chicago*, 314 F. Supp. 3d 970, 975 (N.D. Ill. 2017) ("[T]he defendants are ordered to refrain from discussing Plaintiff's Fifth Amendment silence at his criminal trial, unless the door is once again opened by Plaintiff's counsel either through elicited testimony or argument.") (excluding testimony in a civil case under section 1983 that the plaintiff did not testify in a prior criminal trial).

The right against self-incrimination under the Fifth Amendment – including the ban on an adverse inference from silence – applies in criminal cases, but not in civil cases. In civil cases, the fact that a party asserted the Fifth Amendment can give rise to an adverse inference. *See Baxter v. Palmigiano*, 425 U.S. 308 (1976); *see also LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 390 (7th Cir. 1995) ("The rule that adverse inferences may be drawn from Fifth Amendment silence in civil proceedings has been widely recognized by the circuit courts of appeals, including our own."); *United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 153–54 (1923) (Brandeis, J.) ("Silence is often evidence of the most persuasive character."). So the question is whether a defendant in a civil action under section 1983 can point to the plaintiff's decision not to testify in a prior criminal trial.

Here, the Court is not necessarily convinced that pointing to silence in a prior criminal trial is categorically out of bounds in a later civil trial. Silence does have probative value. The Constitution protects the right against self-incrimination in criminal cases, but the freedom from an adverse inference does not apply in civil cases. (That is, a witness can *assert* the Fifth Amendment in a civil case, but that assertion can be used against that witness, too.). A civil case cannot lead to criminal jeopardy (putting aside perjury, etc.), so the Fifth Amendment's concern about incrimination does not come into play, strictly speaking.

Even so, the Court concludes that it would confuse and distract the jury to allow them to hear about Bolden's silence during his criminal trial. Bolden did not have an obligation to offer any evidence at trial, and a lot of considerations come into play when deciding whether to take the witness stand. There is risk that this jury may place undue emphasis on Bolden's decision not to testify, and view it as a tacit admission of guilt.

In a civil case, pointing to silence in an earlier criminal trial may not be unconstitutional, but that doesn't mean that it's a good idea, either. Silence may have probative value, but it may not have as much probative value as a jury thinks it has. Allowing a civil jury to hear about silence during a criminal trial would impose a cost on asserting a constitutional right, too.

Here, based on the unique facts at hand, the Court concludes that allowing the jury to hear about Bolden's silence during his criminal trial would do more harm than good. *See* Fed. R. Evid. 403. Bolden's silence might have some probative value. But on this record, any probative value would be substantially outweighed by the risk of unfair prejudice and confusion.

Defendants argue that "[h]aving used the Fifth Amendment as a shield at the criminal trial, Plaintiff may not now use it as a sword." (Dckt. No. [345], at 1). But it is not at all clear

how, if at all Plaintiff is attempting to use his prior lack of testimony as a sword. In fact, Plaintiff seemingly wants to bury the sword altogether, and never bring it up.

Unless Bolden opens the door, it is closed.

**Bolden's Motion *in Limine* #9 – Testimony by Linda Walls**

Plaintiff's motion *in limine* no. 9 to exclude testimony by Linda Walls (Dckt. No. [302]) is hereby granted in part and denied in part. Walls was the Assistant State's Attorney who worked on Bolden's post-conviction proceeding. During her deposition, Walls commented on the strength of the evidence against Bolden, and disagreed with the notion that the evidence against Bolden was thin.

Walls is not an expert witness, and the jury does not need to hear a lay witness opine about the strength of the evidence.

That said, it is conceivable that Walls could offer other facts that tell part of the story. Bolden apparently intends to offer testimony about the post-conviction proceedings, so if Plaintiff is going to cover that topic, Defendants can too (at least at a high level).

Also, one of the issues in the case is whether the criminal case was dismissed in a manner indicative of innocence. Maybe Defendants plan to argue that the dismissal was not indicative of innocence, despite the issuance of a Certificate of Innocence. If so, the Court will reserve judgment on whether Walls could offer testimony on that point. If Plaintiff wants to present evidence about the meaning of the Certificate of Innocence, then presumably Defendants can too.

Walls potentially could explain the State's decision-making, to the extent that it comes into play. But it is not clear to the Court if she has first-hand knowledge on that topic. (As an aside, this Court will not allow Walls to testify about matters that defense counsel prohibited her

13

from testifying about at deposition under the deliberative process privilege. If it was out of bounds then, it's out of bounds now.)

Generally speaking, Walls can't opine on the evidence writ large and offer personal opinions about Bolden's guilt. But perhaps she could contribute to other parts of the story.

It is conceivable that Plaintiff could open the door, too. If Plaintiff intends to argue that the State dropped the case because it was weak, presumably Defendants could respond with evidence about why the State dropped the case.

**Bolden's Motion *in Limine* #10 – Photographs of the Decedents**

Plaintiff's motion *in limine* no. 10 to exclude photographs of the decedents (Dckt. No. [303]) is hereby granted. The photographs show the blood-covered and hole-ridden bodies of the two murder victims. The jury doesn't need that mental picture. It would confuse and distract them, and they may have a hard time un-seeing it. The jury will hear that the underlying incident involves two murders. They'll understand that two people were shot. Showing them the pictures will not contribute anything constructive to the trial.

**Bolden's Motion *in Limine* #11 – The Screenplay**

Plaintiff's motion *in limine* no. 11 to exclude reference to Bolden's screenplay (Dckt. No. [304]) is hereby denied. Bolden apparently wrote a screenplay while incarcerated, entitled "Chasing Justice."

Bolden claims that it is a fictionalized account of the Frazier/Clayton homicides. Some details come from the events in question, and some parts are "complete fiction." Plaintiff argues that the screenplay has no probative value because of its "fictional nature."

14

But the screenplay is a statement – albeit perhaps a *fictional* statement – of a party opponent.  If the screenplay is fiction, Bolden can say so in open court, and leave it to the jury. Defendants are entitled to argue that it is truth, and Plaintiff is entitled to argue that it is fiction.

**Bolden's Motion *in Limine* #12 – Disciplinary Decision Against Charles Ingles**

Plaintiff's motion *in limine* no. 12 to exclude references to the disciplinary decision against Charles Ingles (Dckt. No. [305]) is hereby granted.  Charles Ingles represented Bolden when he appeared for the lineup in 1994.  In 1990, four years earlier, Ingles comingled personal and client funds, and the ARDC later found that it amounted to a conversion because the amount of the account fell below the amount owed to the client.  *In re Charles D. Ingles* (Dckt. No. [305-1], at 2 of 5).

That incident is not particularly probative.  It took place in 1990, three decades ago.  An episode of conversion that took place one year after the fall of the Berlin Wall is not very telling about the attorney's propensity for truth telling now.  *See, e.g.*, *United States v. Stoecker*, 215 F.3d 788, 790 (7th Cir. 2000) (evidence of a fifteen-year-old complaint "was unrelated and far too remote to be probative"); *United States v. Mandell*, 2014 WL 464226, at *3 (N.D. Ill. 2014) ("Here, the probative value of Defendant admitting that he took bribes over 30 years ago is diluted by its remoteness in time" when considered pursuant to Rule 608(b)); *Marlow v. Winston & Strawn*, 1994 WL 424124, at *5 (N.D. Ill. 1994) (holding that a suspension that occurred 12 years before the events of the case was "too remote in time to be probative of [the witness's] capacity for truthfulness").

**Bolden's Motion *in Limine* #13 – Treating Police Officers and Prosecutors as Adverse**

Plaintiff's motion *in limine* no. 13 to treat police officers, City representatives, and prosecutors as adverse (Dckt. No. [306]) is hereby granted in part and denied in part.  The City is

a party, so current employees are affiliated with a party and thus are adverse. The City's corporate representatives are affiliated with the City, too.

But former employees are not affiliated with the City, so they are not linked to a party in a way that would give rise to a presumption of adversity. So there is no reason to call them adversely. That said, if there are witness-specific reasons why a former employee should be called adversely, the Court will hear it.

The prosecutors worked for the State, not the City, so they are not affiliated with a party. But it's fair to infer adversity nonetheless. The prosecutors were adverse to Bolden, in a very real sense, when they were prosecuting him.

In sum, Plaintiff can call current police officers, the City's 30(b)(6) representatives, and the prosecutors as adverse witnesses, but cannot do so for former employees (absent additional facts coming to light).

**The City's Motion *in Limine* No. 1 – Identifying the City as a Defendant**

The City of Chicago's motion *in limine* no. 1 (Dckt. No. [425]) is hereby granted. The City seeks to remove its name from any case caption, verdict form, and jury instructions given to the jury. The City also seeks to bar any reference to the City as a named defendant at the trial.

On July 19, 2018, Judge Shah (this Court's predecessor, before reassignment) issued a bifurcation order. *See* 7/19/18 Order (Dckt. No. [213]) ("[T]he Monell claim is bifurcated from the claims against the individual defendants and stayed."). So trial will not involve any substantive claims against the City. The *respondeat superior* and indemnification claims simply involve the City's duty to pay for the acts and omissions of its agents, but the City has stipulated to pay for any compensatory damages.

16

It could taint the jury's decision-making to tell them that the City is the payor. Telling the jury that the City is a defendant would announce the existence of a deep pocket, and might cause the jury to reach deeper. The jury should decide liability and damages issues without hearing that the City is on the hook for any damages.

Including a reference to the City as a defendant – without advancing any substantive claims against the City – could confuse the jury, too. What's the point of including the City's name on the caption and verdict form, if the jury isn't deciding any claims *against* the City? Why tell them information that they don't need to know, especially when it could impact their decision-making?

This Court acknowledges that thoughtful judges in this district have drawn the line differently, and allowed the City's name to appear on the case caption and jury verdict form. *See, e.g., Jones v. City of Chicago*, 2017 WL 413613, at *6 (N.D. Ill. 2017) (St. Eve, J.); *Bruce v. City of Chicago*, 2011 WL 3471074, at *3–4 (N.D. Ill. 2011) (Dow, J.). But this Court does not see the point of including the City's name if there are no pending claims against the City (and there aren't), and if there is a potential downside in doing so (there is).

Plaintiff Bolden argues that the City is "attempt[ing] to avoid responsibility for its employees' actions," but the City's motion says the opposite. The City has stipulated to footing the bill, if any, so the jury should not know who's paying when deciding what to do.

For purposes of the trial, the parties must remove the City from the case caption, verdict form, and jury instructions, and must not refer to the City as a defendant.

**Defendant Officers' Motion *in Limine* No. 1 – The Composite Sketch**

Defendant Officers' motion *in limine* no. 1 to exclude evidence of the composite sketch (Dckt. No. [308]) is hereby denied. The officers seek to exclude Plaintiff's trial exhibit 19,

which is a sketch created by law enforcement dated January 29, 1994. It was based on a description given by Clifford Frazier, the key witness against Bolden at the criminal trial.

Plaintiff points out that the sketch "looks nothing like Plaintiff" (Dckt. No. [332], at 1), and thus should have prompted the officers to believe that Bolden was not the culprit. The sketch is fair game, assuming that Plaintiff can lay a sufficient evidentiary foundation for the notion that one or more of the officers saw it (or likely saw it).

The sketch is not hearsay. A picture may be worth a thousand words, but a picture isn't a "statement." *See* Fed. R. Evid. 801(a).

**Defendant Officers' Motion *in Limine* No. 2 – Indemnification**

Defendant Officers' motion *in limine* no. 2 to bar evidence of indemnification and exclude any reference to the City as a defendant (Dckt. No. [309]) is hereby granted.

In light of Judge Shah's bifurcation order (Dckt. No. [213]), the trial will not involve the *Monell* claim, so there are no substantive claims against the City. The City is responsible to pay any compensatory damages awarded against the officers. The jury does not need to know about the deep(er) pocket.

There is no need to inform the jury that the City is a defendant. There aren't substantive claims against the City, so it could breed confusion to tell the jury that the City is a defendant.

Worse yet, informing the jury that the City will bankroll any judgment may impact the jury's decision-making in negative ways. The jury might award more damages if they know that the payor has a greater ability to pay. The jury should decide whether Defendants are liable, and if so, how much Plaintiff is entitled to receive in damages, without knowing who (if anyone) will pay the bill. *See Lawson v. Trowbridge*, 153 F.3d 368, 379 (7th Cir. 1998) ("In the general case courts exclude evidence of indemnification out of a fear that it will encourage a jury to inflate its

damages award because it knows the government – not the individual defendants – is footing the bill."); *see also Kemezy v. Peters*, 79 F.3d 33, 37 (7th Cir. 1996) ("When the defendant is to be fully indemnified, such evidence, far from being required, is inadmissible").

Including the City on the case caption, jury instructions, and verdict form would create confusion. It would create a risk of a wink-wink, nudge-nudge inference that the City is going to pay any damages.

That said, if the officers open the door by pointing to their financial condition, Bolden may point out that they will have not have to pay a judgment. That is, if Defendants argue an inability to pay (or an inability to pay *much*), Plaintiff can present evidence that they aren't going to have to pay anyway.

This Court will entertain limiting instructions, as appropriate.

### Defendant Officers' Motion *in Limine* No. 3 – Roderick Stewart

Defendant Officers' motion *in limine* no. 3 to bar evidence of Roderick Stewart's prior convictions, out-of-court statements, and other alleged acts (Dckt. No. [310]) is hereby granted in part and denied in part. Defendant Officers seek to exclude any reference to (1) Stewart's prior convictions that are more than ten years old; (2) Stewart's out-of-court statements to Bolden's brother that Stewart committed the murders; and (3) Stewart's prior alleged threats and assaults on Bolden's family members. Defendant Officers do not move to exclude any reference to the conviction for violating an order of protection, theft, negligent driving, and criminal trespass to a vehicles, which took place in 2004 and led to a 15-year sentence and incarceration that ended less than 10 years ago. *See* Fed. R. Evid. 609(a)(1)(A).

Defendants plan to call Stewart as a witness, purportedly to say that he did not commit the murders in question. Plaintiff plans to use the prior convictions, statements, and acts to impeach Stewart.

Stewart's convictions, at least those that are more than ten years old, have little (if any) probative value to the issues at hand. They are stale convictions for criminal trespass, possession of cannabis and controlled substances, unlawful use of a weapon, aggravated battery, and domestic battery. They do not have much bearing on whether Stewart committed a murder, or is testifying truthfully at trial.

Plaintiff argues the old convictions are probative, not in and of themselves, but because Stewart denied his past criminal acts, challenging Stewart's credibility. Plaintiff argues that Stewart's denials of his criminal history remove the old convictions from the province of Rule 609(b)(1) (which provides that evidence is admissible only if its probative value substantially outweighs its prejudicial effect), and move them into the territory of Rule 609(a)(1)(A) (which provides that the evidence must be admitted unless its prejudicial effect substantially outweighs its probative value). *See* Fed. R. Evid. 609(b)(1); Fed. R. Evid. 609(a)(1)(A); Fed. R. Evid. 403.

Plaintiff's argument that Stewart lied about his convictions is misplaced. Plaintiff argues that since Stewart pled guilty to the crimes, his later denials of committing the crimes are contradictions and lies.

But Stewart never testified he didn't plead guilty or wasn't convicted of the crimes. Instead, during his testimony, he disputed the *circumstances* of the crimes. For example, he pled guilty to possessing cocaine. At deposition, he admitted the conviction, but testified that the cocaine didn't belong to him. As a second example, he was guilty of unlawful possession of a

20

firearm. At deposition, he admitted the conviction, but testified that the gun didn't belong to him and that he was falsely accused.

Those disputes are not lies about whether he was convicted of prior crimes. He didn't deny the existence of the convictions themselves.

If Plaintiff's theory was right, it would come back to bite him. Bolden pled guilty to involuntary manslaughter in 1985. But at his deposition, he testified that he acted in self-defense. If that inconsistency opens the door, should this Court allow the jury to hear that Bolden killed someone?

Since Stewart never lied about the stale convictions, the convictions remain governed by Rule 609(b)(1). Plaintiff failed to explain how the probative value of the convictions substantially outweighs the prejudicial effect.

And since it's not clear that Stewart actually lied, it's difficult to see what the convictions would contribute to the trial, other than unfair prejudice. Any probative value is not enough to outweigh the prejudicial effect. *See* Fed. R. Evid. 609(b)(1).

Stewart's prior inconsistent statements are fair game if he takes the stand, too. If Defendants call Stewart to the stand, and elicit testimony that he *didn't* commit the murders, then Plaintiff can impeach him with prior inconsistent statements that he *did* commit the murders. What he said before is germane to what he says now.

Finally, Defendants seek to exclude references to Stewart allegedly threatening and assaulting Plaintiff's family members. They argue that this is merely propensity evidence that Stewart is a violent person. The alleged threats and assaults are largely not probative. However, if Stewart opens the door by suggesting that he is a non-violent person, Plaintiff can impeach Stewart with the alleged acts.

**Defendant Officers' Motion *in Limine* No. 4 – Certain Evidence and Argument Based on the Court's Summary Judgment Ruling**

Defendant Officers' motion *in limine* no. 4 to exclude evidence based on the summary judgment ruling (Dckt. No. [311]) is hereby denied. In his summary judgment decision, Judge Shah made a ruling on the sufficiency of the evidence for only one claim: due process. *See* 8/9/19 Mem. Opin. and Order (Dckt. No. [276]). Judge Shah did not reach the sufficiency of that evidence for any other claim. The fact that the evidence in question was not sufficient for a due process claim does not mean that it is *inadmissible* to prove the remaining claims.

And the evidence does not unfairly prejudice the Defendants, either. Some of the evidence may prove inadmissible eventually, but the Court will take that up down the road. For now, the failure of the due process claims alone cannot serve as grounds to preclude this evidence wholesale.

**Defendant Officers' Motion *in Limine* No. 5 – Charles Ingles**

Defendant Officers' motion *in limine* no. 5 to bar Charles Ingles from testifying to his experience in other cases (Dckt. No. [312]) is hereby granted in part and denied in part. Ingles represented Bolden during the lineup in 1994. He was not allowed to be in the viewing room during the lineup. Defendants want to exclude any testimony that Ingles was allowed to be in the viewing room during other lineups in *other* cases.

The experience of Ingles is admissible in part. Plaintiff could offer the testimony of Ingles to establish that the treatment of Bolden departed from the standard practices and procedures of the Chicago Police Department at that time. Plaintiff can elicit testimony that Bolden was treated unfairly – that is, he wasn't allowed to have his attorney in the viewing room, unlike other people in other cases. So, as evidence that he was treated unfavorably compared to everyone else, it can come in.

But Plaintiff cannot elicit testimony, or argue to the jury, that Ingles had a *right* to be in the witness room. Bolden cannot give the impression that the denial of access to his lawyer, in and of itself, violated his rights. Bolden had no right to counsel in the viewing room because he was not arrested at that point. *See Kirby v. Illinois*, 406 U.S. 682 (1972).

Plaintiff must carefully walk this line. Plaintiff can elicit testimony about the standard practices at the time, as part of a broader pattern of mistreatment, but cannot suggest that the failure to give access to his lawyer violated his rights *per se*.

The officers later filed an unsolicited supplement (Dckt. No. [432]), seeking to bar any and all evidence that Ingles was not allowed in the witness room. That is, the officers originally moved to exclude evidence about his past experience in other cases. But now, the officers seek to bar all evidence about the participation by Ingles in the case at hand, meaning the lineup in question.

One of the issues at trial will be whether the lineup was unduly suggestive. Ingles was there for the lineup, so he can testify about what he saw, and what he didn't see. The role of counsel also has a bearing on why Bolden agreed to participate in the lineup in the first place.

**Defendant Officers' Motion *in Limine* No. 6 – The Arrests of Edna Williams, James Williams, and David McCray**

Defendant Officers' motion *in limine* no. 6 to bar all references to the arrests of Edna Williams, James Williams, and David McCray (Dckt. No. [313]) is hereby denied.

Edna and James Williams owned J&J Fish, where Bolden allegedly was during the murders. David McCray (an employee) arrived after the shootings. The police arrested them after they found a gun and ammunition. They took them in for questioning, and eventually brought charges against McCray. They took Edna Williams's goddaughter, Tanesha Gatson, in

for questioning, too (but never arrested her). In contrast, the police did not arrest Clifford Frazier, who possessed the same gun. Frazier later identified Plaintiff as the murderer.

The fact that Defendants arrested three people (and questioned a fourth) about Frazier's gun – but never arrested Frazier – could help tell the story of the Defendants' practices and intent. But, to be relevant, Plaintiff will need evidence that the Defendant Officers were involved in (1) the arrests of the Williamses and McCray and (2) the non-arrest of Frazier.

And testimony from the Williamses, McCray, and Gatson about the arrests could provide helpful background evidence, too. The evidence about McCray's arrest and Edna Williams' and Gatson's interviews with police might provide insight on how the police conducted the investigation.

**Defendant Officers' Motion *in Limine* No. 7 – Omissions in the Investigation**

Defendant Officers' motion *in limine* no. 7 to bar certain evidence related to the police investigation (Dckt. No. [314]) is hereby granted in part and denied in part. Defendants seek to exclude evidence of investigative leads not pursued, evidence not collected or examined, witnesses not interviewed, and other failures to obtain, preserve, or analyze evidence.

Plaintiff can offer evidence about lapses in the investigation, meaning departures from reasonable police practices, to the extent that it sheds light on Defendants' intent. Plaintiff can also introduce evidence that the officers deliberately ignored investigative leads, for the purposes of both intent and probable cause. Plaintiff cannot, however, offer failures to investigate as evidence of the lack of probable cause.

Defendants' deviations from reasonable police practices are relevant to show Defendants' intent. Plaintiff's malicious prosecution claim, intentional infliction of emotional distress claim, and the assessment of punitive damages all involve an intent element of proof. Plaintiff is not

simply offering a list of facts that the Defendant Officers did not know. Instead, the evidence consists of facts that the officers should have known or were readily discoverable. Potential deviations from reasonable police practices, or failures to follow up with key witnesses, are relevant to whether the Defendants acted intentionally or with malice. *See, e.g.*, *Grayson v. City of Aurora*, 157 F. Supp. 3d 725, 746–47 (N.D. Ill. 2016). That said, Plaintiff cannot suggest to the jury that the failure to investigate, in and of itself, gives rise to liability.

On the other hand, the situation is different for probable cause. The probable cause inquiry involves what the police knew at the time they detained Bolden, not what they could have known if they had dug a little deeper. "Probable cause exists if, at the time of the arrest, the facts and circumstances *within the defendant's knowledge* are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed an offense." *Lawson v. Veruchi*, 637 F.3d 699, 703 (7th Cir. 2011) (cleaned up) (emphasis added); *see Reynolds v. Jamison*, 488 F.3d 756, 765 (7th Cir. 2007) ("The reasonableness of the seizure turns on what the officer knew, not whether he knew the truth or whether he should have known more."). Allowing unexplored facts into the probable cause question could confuse the jury on the applicable standard.

If necessary, a jury instruction could clarify that evidence about lapses in the investigation is germane to *intent*, but is not germane to probable cause.

**Defendant Officers' Motion *in Limine* No. 8 – The Certificate of Innocence**

Defendant Officers' motion *in limine* no. 8 to bar references to the Certificate of Innocence (Dckt. No. [319]) is hereby denied, with a caveat.

Plaintiff can offer the Certificate of Innocence to address whether the dismissal was indicative of innocence. That is, the issuance of a Certificate of Innocence is is at least some

25

evidence that the dismissal was indicative of innocence. Under the statute, one of the requirements for the issuance of a certificate of innocence is a finding, by a preponderance of the evidence, that the "petitioner is innocent of the offense charged." *See* 735 ILCS 5/2-702(g); *see also Harris v. City of Chicago*, 2018 WL 2183992, at *3 (N.D. Ill. 2018) ("Plaintiff's certificate is relevant and admissible to demonstrate that Plaintiff's underlying criminal proceedings were terminated in her favor in relation to her malicious prosecution claim . . . .") (St. Eve, J.). As a practical matter, it seems difficult to tell the story of the case without it.

But Defendants can offer evidence about the basis for the Certificate of Innocence. That is, Defendants can offer evidence that the Circuit Court of Cook County found that his trial counsel was ineffective (and not because witnesses recanted, or because evidence was fabricated, and so on).

So, Plaintiff can offer the Certificate of Innocence to support the notion that the dismissal was indicative of innocence, and Defendants can present evidence that it was not indicative of innocence at all. The jury will sort it out.

In *Kluppelberg v. Burge*, 84 F. Supp. 3d 741 (N.D. Ill. 2015), Judge Lefkow ruled that a certificate of innocence fell within the public record exception to the hearsay rule. *See* Fed. R. Evid. 803(8).

Also, if Plaintiff opens the door by arguing that the State did not oppose the petition for a certificate of innocence, then Defendants can respond by offering evidence about *why* the State did not oppose it.

### Defendant Officers' Motion *in Limine* No. 9 – Police Department Internal Rules and Regulations

Defendant Officers' motion *in limine* no. 9 to bar evidence about the internal rules and regulations of the Chicago Police Department (Dckt. No. [316]) is hereby granted in part and

denied in part. Plaintiff can offer evidence of the Chicago Police Department's ("CPD") policies to the extent that they shed light on Defendants' intent. But the policies cannot be used for any probable cause analysis.

It is true that "the violation of police regulations or even a state law is completely immaterial as to the question of whether a violation of the federal constitution has been established." *Thompson v. City of Chicago*, 472 F.3d 444, 455 (7th Cir. 2006). Plaintiff is *not* equating the Defendants' violations of CPD regulations with constitutional violations. Instead, Plaintiff wants to introduce the policies for the purpose of proving intent, which is an element of Plaintiff's state law claims of malicious prosecution, intentional infliction of emotional distress, and the calculation of punitive damages.

Indeed, the Seventh Circuit clarified that "there is no per se rule against the admission of police policies or training" because "*Thompson* did not address whether evidence of police policy or training can be relevant to intent." *United States v. Proano*, 912 F.3d 431, 439 (7th Cir. 2019). Police policies and regulations can be relevant to state law claims, including willful actions and damages calculations. *See, e.g.*, *Brooks v. City of Chicago*, 2015 WL 3545386, at *5 (N.D. Ill. 2015) (noting that "[p]olice department policies, procedures, and general orders" are "not barred for all purposes and may be admissible if relevant to other issues, including state law claims and claims for punitive damages"); *Scott v. City of Chicago*, 2010 WL 3034188, at *1 (N.D. Ill. 2010). The relevance of police regulations to a showing of an officer's intent is simple: if an officer has been trained according to certain policies, but he deviated from those policies, "the fact that he broke from his training could make it more likely that he acted willfully." *See Proano*, 912 F.3d at 439.

However, the risk of misleading the jury is stronger in the probable cause analysis. "Probable cause exists where the police officer is aware of facts and circumstances sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Coleman v. City of Peoria*, 925 F.3d 336, 350 (7th Cir. 2019) (cleaned up). The Defendant Officers' violation of CPD's lineup policy could unduly distort the probable cause analysis and confuse the jury as to the applicable standard of "reasonableness." The jury must determine whether there was probable cause for Bolden's arrest, not whether the police followed their training in arresting him. A jury instruction can clarify the proper application of CPD policies to intent, as opposed to probable cause.

**Defendant Officers' Motion *in Limine* No. 10 – Expert Testimony of William Gaut**

Defendant Officers' motion *in limine* no. 10 to exclude certain testimony from William Gaut (Dckt. No. [317]) is hereby granted in part and denied in part.

Gaut is Plaintiff's expert. Plaintiff intends to offer him to opine that Plaintiff could have seen through the one-way window during the lineup. *See* Gaut Report, at 14 (Dckt. No. [317-1]) ("[I]t is my opinion that Mr. Bolden would have been able to see the silhouettes of individuals in the witness room under the conditions he described."). Gaut opined that the inspection by the investigator "provides corroboration for Mr. Bolden's version of the events." *Id.* at 15. Plaintiff also intends to offer Gaut to testify that Defendants violated their *Brady* obligations. *Id.* at 17.

Gaut has no particular expertise at measuring light or figuring out what is visible. Plaintiff points to his "education, training, experience, and review of the record," but he has no particular expertise in interior lighting. (Dckt. No. [337], at 2 of 18).

He relied on an inspection by his investigator in 2018, but that data point is too wobbly to support an opinion about what was visible in 1994. That opinion rests on the unstated and

28

unsupported assumption that light conditions in 2018 were the same as the light conditions in 1994.

Visibility in 2018 doesn't shed much light on visibility in 1994 without a showing that the light conditions remained the same. How much light was in the room in 1994? Did the light fixtures change in the past 25+ years? Maybe new bulbs?

In any event, testimony that Plaintiff could have seen the participants is a backdoor way to buttress Plaintiff's credibility. An expert can't offer testimony about whether a witness is believable. *See Sanders v. City of Chicago Heights*, 2016 WL 1730608, at *7 (N.D. Ill. 2016) (St. Eve, J.) ("Dr. Gaut cannot tell the jury whether to believe what a witness says . . . ."). The jury doesn't need to hear it. Plaintiff can testify about what he saw, without an expert testifying about what he could see.

Expert testimony about compliance with *Brady* obligations is inadmissible, too. Judge Shah granted summary judgment to the Defendants on the *Brady*-based due process claim. *See* 8/9/19 Mem. Opin. and Order (Dckt. No. [276]).

Plaintiff states that "Gaut will not testify to the legal conclusion that Defendants violated *Brady*." (Dckt. No. [337], at 2 of 18). But that opinion seems to be exactly what Gaut said on page 17 of his report. *See* Gaut Report, at 17 (Dckt. No. [317-1]) ("Officers' obligations under *Brady* were well known by 1994 . . . . The evidence demonstrates that defendants *violated these duties* and substantially departed from generally accepted law enforcement standards by withholding, failing to preserve, and/or destroying material evidence in the case.") (emphasis added).

Gaut can testify about whether Defendants complied with generally applicable standards for law enforcement. *See Sanders v. City of Chicago Heights*, 2016 WL 1730608, at *7 (N.D.

Ill. 2016) (St. Eve, J.) ("Dr. Gaut, however, may testify to the relevant professional standards and identify departures from these standards, including that the City's customs or practices led to violations of generally accepted police standards and procedures."); *see also Hopkins v. City of Huntsville, Ala.*, 2014 WL 5488403, at \*5 (N.D. Ala. 2014) ("The expert opinion of Dr. Gaut on the issue of whether defendants' actions and policies were consistent with reasonable, typical police practices and procedures is admissible, however, and will be considered by this court.").

But he cannot testify about the legal conclusion of whether Defendants violated *Brady*. That ship has sailed. And an expert cannot offer legal conclusions. *See Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003).

**Defendant Officers' Motion *in Limine* No. 11 – Testimony of Dale Tipton**

Defendants later withdrew motion *in limine* no. 11. (Dckt. No. [459]).

**Defendant Officers' Motion *in Limine* No. 12 – Character Evidence re Defendant Oliver**

Defendant Officers' motion *in limine* no. 12 to exclude character evidence relating to Defendant Oliver (Dckt. No. [430]) is hereby granted. Defendants seek to bar evidence that the Internal Affairs Division conducted an investigation into whether Oliver accepted a job as an investigator with the Illinois Secretary of State's Office shortly before his retirement from the Chicago Police Department.

Apparently, there were nine days of overlap. So he received double pay for about two weeks.

The investigation took place in 1999. That's last *century*. Before everyone learned whether all of the computers worldwide would crash during Y2K. It's far too old to be probative of his truthfulness now.

The probative value is slight, and is not worth the diversion of time and attention.  This type of evidence is too far afield from what the case should be about.

**Defendant Officers' Motion *in Limine* No. 13 – Expert Testimony of Geoffrey Loftus**

The Court reserves judgment on Defendant Officers' motion *in limine* no. 13 to exclude testimony from Geoffrey Loftus (Dckt. No. [434]).

## Conclusion

For the foregoing reasons, the Court grants some of the motions *in limine*, and denies others.  The Court underscores once again that the rulings are preliminary, and that the admissibility of the evidence may change as more facts come to light at trial.


Date:   September 22, 2021                                  _____

Steven C. Seeger
United States District Judge