**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| EDDIE L. BOLDEN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17 C 00417 |
| | ) | |
| vs. | ) | Honorable Steven Seeger |
| | ) | |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' SUBMISSION OF ADDITIONAL INFORMATION AND
REQUEST FOR CLARIFICATION IN CONNECTION WITH THE COURT'S
ORDER ON THE PARTIES' MOTIONS IN LIMINE**

Defendants Angelo Pesavento, James Oliver, Edward Siwek, and the Estate of George Karl, (collectively "Defendant Officers"), by their attorneys, submit the additional information the Court indicated it required with respect to Plaintiff's Motions in Limine ##1, 2 and 6 motions *in limine* and request clarification with respect to certain court rulings regarding testimony about police standards, policies and guidelines.

**Background**

At the September 22, 2021 pre-trial conference, the Court indicated that it wanted additional information before making definitive rulings on certain motions *in limine*. The Court also expressed its desire that as many issues as possible be resolved before trial and emphasized the tight timeline to which the parties must adhere at trial. To that end, Defendants offer the following additional information with respect to those motions *in limine* that Defendant Officers believe the Court can definitively resolve before trial. Defendant Officers also request clarification with respect to the Court's rulings regarding any testimony relating to police standards/ policies.

I.      **Certain Rulings For Which The Court Indicated It Needed Additional Information.**

In its Order, the Court indicated that it required additional information prior to definitively ruling on Bolden's motions *in limine* 1, 2 and 6.

**Bolden's Motion *in Limine* #1 – Prior Criminal History**

As a preliminary matter, the Court understood that Bolden had pled guilty to involuntary manslaughter in connection with the Boyd murder. (Dkt. 467, 3.) Bolden, however, pled guilty to voluntary manslaughter. (See Exhibit A.) The Court raised two issues regarding Bolden's conviction for voluntary manslaughter: whether the detectives took Bolden's criminal history into account in making the probable cause determination and whether Anthony Williams ordered the murder. (Dkt. 467, 3, 4.) Defendants did take the Boyd murder into consideration when they were making the probable cause determination. In fact, after the FBI informed CPD that "Lynier" was also known as Eddie L. Bolden, the detectives ran a background check and discovered Bolden was a Gangster Disciple and had pleaded guilty to voluntary manslaughter for the Boyd murder, which was a gang-related murder in which the victim was shot in the head. Moreover, although Williams did not order Boyd's murder, Bolden, testified in this case that his actions in Boyd's murder were taken without hesitation because he was acting at the command of two ranking Gangster Disciples. (See Exhibit B, Excerpts for Eddie Bolden Deposition, 71:20-72:22; 81:1-10; 88:9-12.) Bolden has put identity at issue in this case and has argued that his innocence is relevant to damages. This evidence is therefore also probative of identity and guilt.

**Bolden's Motion *in Limine* #2 – Gang Affiliations and Drug Selling**

The Court has asked whether any of the parties intended to argue that the double murders had something to do with the Gangster Disciples and whether the detectives knew that Bolden was affiliated with the Gangster Disciples. (Dkt. 467, 4-6.) As discussed above, the detectives

discovered that Bolden was a Gangster Disciple during the course of their investigation. They also discovered that Bolden was a close associate of Anthony "Ant" Williams, a Gangster Disciples governor who controlled narcotics trafficking in the area of the J&J Fish, a restaurant ostensibly owned by Ant's parents, Edna and James Williams and that Bolden lived in one of the four apartments above the restaurant. (See Exhibit C Excerpt from Michael Baker Deposition, 15.) Moreover, one of Bolden's witnesses will testify that the Gangster Disciples had put a hit out on the victims and that she had informed the police of the hit and had given detectives the names of the ranking Gangster Disciples who would not have done the hit but who would have had the authority to order the hit, one of whom was Ant. (See Exhibit D, Excerpts from Cynthia Steward Deposition, 69:1-12; 132-136; 138:12-19.) The detectives investigated the criminal connections between Ant and Bolden. (See Group Exhibit A.) And, as Detective Pesavento testified in response to a question from a grand juror, the detectives had determined that the double murders and attempt on Clifford Frazier's life were a gang-related hit stemming from the victims' failure to pay a street tax to the Gangster Disciples. (See Exhibit E, Angelo Pesavento Grand Jury Testimony, 7:4-13.)

Bolden's admissions that Ant provided him with drugs to sell is probative of Bolden's close criminal relationship with Ant and his membership in/affiliation with the Gangster Disciples as well as his continued membership in/affiliation with the Gangster Disciples after he was released from prison for the Boyd murder in 1992.[1] (Exhibit B, 102:6-18; 120:6-121.) As Cynthia Steward will testify, the victims knew Bolden as an individual who would do drug deals with them on Ant's behalf. (Exhibit D, 57:13-58:1; 60:8-61:15.) And as Bolden has testified, Ant is the Gangster

---

[1] Bolden has also admitted that Ant picked him from prison when he was released for the Boyd murder in 1992 and, in addition to giving him drugs to sell, gave him a place to live. (Exhibit B, 101:7-13; 102:6-18; 120:6-121.) Bolden has further admitted that he remained a Gangster Disciple until some years into his incarceration for the double murders at issue in this case. (Exhibit B, 34:17-22; see also Exhibit F, IDOC Disciplinary Report Dated May 16, 1997.)

3

Disciple who ordered the hit on the victims. (Exhibit B, 64:9-11; 66:10-13; 222:6-10.) Again, Bolden has put identity at issue in this case in claiming his innocence and this evidence is also probative of that issue.

**Bolden's Motion *in Limine* #6 – Statements by Anthony Williams**

The Court has asked whether the detectives knew of Ant's offer to Bolden to commit a different double murder the day before the double murder here. They did not. As discussed above, however, Bolden has put identity at issue. Thus, regardless of whether the detectives knew of Ant's then-recent offer to participate in a different double murder, the offer is probative of which of the Gangster Disciples under Ant's command would be utilized by Ant to commit such a crime.

**II.     Rulings On Which Defendants Seek Clarification.**

With respect to Defendant Officers' Motion *in Limine* No. 9 regarding CPD internal rules and regulations, the Court ruled that Bolden could offer evidence of CPD's polices "to the extent they shed light on Defendants' intent." (Dkt. 467, 27.) The Court's ruling was consistent with *United States v. Proano* in which the Seventh Circuit dispositively held that regardless of "national, model, or interdepartmental standards" and even "[a]ssuming those standards exist, only evidence of training that the officer *actually received can be relevant to his state of mind*." 912 F.3d 431, 439–40 (7th Cir. 2019) (emphasis added). This Court cited and quoted the opinion, written by Justice St. Eve, in its ruling on Defendant Officers' Motions *in Limine* No. 9. See Dkt. #467, 27 ("The relevance of police regulations to a showing of an officer's intent is simple: if an officer has been trained according to certain policies, but he deviated from those policies, 'the fact that he broke from his training could make it more likely that he acted willfully.'" (quoting *Proano*, 912 F.3d at 439)).

*Proano*'s holding also applies to the Court's rulings on Defendant Officers' Motions *in*

*Limine*: (i) No. 7 - Omissions in the Investigation and (ii) No. 10 – Expert Testimony of William Gaut as well as Defendant Officers' pending Motion *in Limine* No. 13 - Expert Testimony of Geoffrey Loftus. While the Court has yet to rule on whether Loftus may testify, it has ruled that Gaut may testify to omissions in the investigation and "whether Defendants complied with generally applicable standards for law enforcement." (Dkt. 467, 29.) Defendant Officers understand the Court's broad language here in the context of its citation to *Proano* and the Seventh Circuit's express holding that, notwithstanding the existence or any notion of "national, model, or interdepartmental standards," if an officer was not trained in those standards, they are simply *not* relevant to the officer's state of mind. *Proano*, 912 F.3d at 439-40. Of course, logic and common sense dictate that if an officer does not have training in a practice or procedure, the officer's failure to follow the practice or procedure cannot be probative of his intent. That logic applies even if the policy or standard was a CPD policy.

At trial, Bolden intends to elicit testimony from both Gaut and Loftus regarding *suggested* practices and models from agencies outside of CPD (*e.g*., the International Association of Chiefs of Police), not to mention social science research that the detectives had no knowledge of, were not trained in and are beyond CPD policies and guidelines. (See generally Dkt. 433-1 and 434-1.) Indeed, Loftus plans on opining that the detectives should have used a sequential versus simultaneous presentation of lineup participants while acknowledging that the simultaneous presentation is more common technique. (Dkt. 434-1, 14.)

Accordingly, Defendant Officers seek clarification that any testimony regarding standards, policies and guidelines or any deviation from them is limited to standards, policies and guidelines in which the officers were trained.

5

Respectfully submitted,

/s/ *Andrew M. Hale*
Special Assistant Corporation Counsel
*One of the Attorneys for Defendant Officers*

Andrew M. Hale
Barrett Boudreaux
William Bazarek
Amy A. Hijjawi
Brian J. Stefanich
Jennifer Bitoy
Hale & Monico, LLC
53 W. Jackson, Suite 337
Chicago, IL 60604

## **CERTIFICATE OF SERVICE**

I, the undersigned attorney, certify that this was filed using the Court's electronic filing system. As a result, copies of the filed document were electronically served upon all counsel of record.

/s/ *Andrew M. Hale*