# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| Eddie Bolden, | ) | |
| | ) | Case No. 17 CV 417 |
| Plaintiff, | ) | |
| | ) | Honorable Steven C. Seeger |
| v. | ) | |
| | ) | |
| City of Chicago, et al., | ) | |
| | ) | |
| Defendants. | ) | |


**Defendants' Proposed Jury Instructions**

**Limiting Instruction Related to Loftus Testimony**

You have heard testimony from Geoffrey Loftus related to his opinion that Clifford Frazier's identification of Plaintiff as the offender during the lineup and at the criminal trial were unreliable.

You are to consider this testimony, if at all, only to the issue of damages, if any, to be awarded to Plaintiff. You are not to consider this testimony in determining whether any Defendant violated Plaintiff's constitutional rights or acted inconsistently with state law.

Defendants' Jury Instruction No: 1

*Source:* [potential MIL ruling]

Plaintiff's Objection:

This instruction is wholly improper. Dr. Loftus's opinions are relevant to numerous issues in the case and are not limited to damages. Most notably, Dr. Loftus's opinions concerning the unreliability of Clifford Frazier's identifications and the suggestiveness of the identification procedures employed by Defendants bear directly on Plaintiff's due process claim. Plaintiff's Response in Opposition to Defendants' Motion in Limine No. 13 (ECF No. 441) sets forth the reasons that the Court should reject Defendants' attempt to limit Dr. Loftus's testimony.

## Claims Instruction

The Plaintiff in this case is Eddie Bolden. I will refer to him as Plaintiff. The defendants in this case are Angelo Pesavento, James Oliver, the Estate of Edward Siwek, and the Estate of George Karl. Angelo Pesavento and James Oliver are retired Chicago police officers. Edward Siwek and George Karl were retired Chicago police officers prior to their deaths.

Although Edward Siwek and George Karl are deceased, you are to treat them as defendants in this lawsuit. You are to consider Plaintiff's claims in the exact same manner that you would if Edward Siwek and George Karl were alive. For purposes of the remaining instructions, I will refer to Angelo Pesavento, James Oliver, Edward Siwek, and George Karl as Defendants.

Plaintiff brings the following claims:

First, Plaintiff claims that Defendants violated his constitutional rights by using unlawful identification procedures.

Second, Plaintiff claims that all Defendants violated his constitutional rights by causing his detention without probable cause while Plaintiff awaited trial.

Third, Plaintiff claims that Defendants failed to intervene to prevent the violation of Plaintiff's constitutional rights as described in claims one two.

Fourth, Plaintiff claims that Defendants conspired to deprive him of his constitutional rights as described in claims one and two.

Fifth, Plaintiff claims that Defendants maliciously caused him to be prosecuted him for murder and attempted murder.

Sixth, Plaintiff claims that Defendants' actions constituted intentional infliction of emotional distress under Illinois law.

Seventh, Plaintiff claims that the Defendants conspired to deprive him of his rights under Illinois law as described in claims five and six.

Defendants deny each and every one of these claims.

I shall now discuss each of these claims in turn.


Defendants' Proposed Jury Instruction No: 2

*Source :* Plaintiff's Fourth Amended Complaint

4

Plaintiff's Objection:

The Court should utilize Plaintiff's Proposed Instruction No. 1. The Parties' only disagreement is over the characterization of Plaintiff's due process claim. As discussed in more detail in response to the following instructions, Plaintiff is required to prove that the identification procedures were "unduly suggestive." *See* Seventh Circuit Pattern Civil Jury Instruction 7.14 and Committee Comment g (acknowledging that "*Alexander v. City of South Bend*, 433 F.3d 550, 555 (7th Cir. 2006), indicates that a claim that a ***suggestive*** identification procedure tainted the plaintiff's criminal trial is cognizable under § 1983.") (emphasis added). Defendants' use of the term "unlawful" is an improper attempt to inject the issue of qualified immunity into this case. The question of whether conduct was "unlawful" in 1994 is not a jury question, and it is not an element of Plaintiff's claim under well-established Seventh Circuit law.

### Claim Number One – Unduly Suggestive Line-up

Plaintiff claims that Defendants violated his right to a fair trial by manipulating an unduly suggestive line-up that created a false identification of him by Clifford Frazier which was used to convict him in his criminal case.

To succeed on this claim, Plaintiff must prove by a preponderance of the evidence:

1. That Plaintiff successfully challenged the admission of the identification in his criminal case;
2. The specific identification procedures used by the Defendant were clearly prohibited by the law in February 1994;
3. The Defendant deliberately used the prohibited procedure to secure an identification he knew was tainted.

If you find that Plaintiff has proved each of these things by a preponderance of the evidence as to the Defendant you are considering, then you should find for Plaintiff and go on to the question of damages.

If, on the other hand, you find that Plaintiff has failed to prove any of these things by a preponderance of the evidence against the Defendant you are considering, then you should find for that Defendant and you will not consider the question of damages for that Defendant.


Defendants' Proposed Jury Instruction No: 3

*Source : Coleman v. City of Peoria, Illinois*, 925 F.3d 336 (7th Cir. 2019); *Phillips v. Allen*, 668 F.3d 912 (7th Cir. 2012); *Weston v. City of Chicago*, 2021 WL 2156459 (N.D. Ill. May 27, 2021).

Plaintiff's Objection:

The Court should give Plaintiff's Proposed Instruction No. 2. Defendants' proposed instruction departs from the Pattern Instructions, is inaccurate, imposes additional elements and burdens that are not part of the claim, and would confuse and mislead the jury.

First, Defendants' introductory paragraph improperly narrows Plaintiff's claim to the lineup itself, as opposed to all of the unduly suggestive identification *procedures* that form the basis of this claim. Committee Comment g to Pattern Instruction 7.14 explicitly recognizes that this claim is based on "identification procedures." By attempting to narrow the claim to the lineup only, Defendants' proposed instruction will mislead the jurors into thinking they are not entitled to consider all of the other conduct outside of the lineup—such as the Defendants' improper use of a photo array and improperly allowing the witness to view Plaintiff in the hallway of the police station—that rendered the procedures unduly suggestive.

Second, the introductory paragraph improperly adds elements to the claim that Plaintiff is not required to prove. There is no requirement for Plaintiff to prove that Defendants "created a false identification." To the contrary, Plaintiff is ***not*** required to prove the falsity of the identification; he must merely establish that it was "unreliable." *See, e.g.*, *Lee v. Foster*, 750 F.3d 687, 691 (7th Cir. 2014) (plaintiff must prove that the procedures were "impermissibly suggestive" and that "under the totality of the circumstances … the procedure was [not] reliable"). The term "manipulating" also should be removed from the description, as "manipulation" is not an element of the claim, nor is it a term used in the case law or otherwise defined for the jury. The phrase "manipulating an unduly suggestive lineup" is also confusing and misleading because it suggests that Plaintiff must prove that the Defendants further manipulated what was already an unduly suggestive lineup. These instructions would only lead to confusion.

Third, the first element of Defendants' proposed instruction is inaccurate. Plaintiff does not have to prove that he "successfully challenged the admission of the identification in his criminal case." Defendants appear to have derived this instruction from language in *Coleman v. City of Peoria, Ill.*, 925 F.3d 336, 347 (7th Cir. 2019), but that language came from a discussion about the circumstances that warrant exclusion in a criminal trial. Indeed, Defendants' proposed instruction is nonsensical—if Plaintiff had successfully challenged the admission of the identification, it would have been excluded and could not possibly have affected his criminal trial. It is the use at trial of the unreliable identification, procured through suggestive procedures, that gives rise to the § 1983 claim.

Fourth, Defendants' proposed second element is wholly improper. By asking for a determination that the identification procedures were "clearly prohibited by the law in 1994," the Defendants are attempting to inject the issue of qualified immunity into the jury instructions. The Court should reject this attempt for several reasons:

1. Qualified immunity is not at issue. The Court disposed of Defendants' qualified immunity defense to Plaintiff's due process claim on summary judgment. ECF No. 276 at 49-50 ("It was clearly established many years before 1994 that 'the conduct of identification procedures may be so unnecessarily suggestive and conducive to irreparable mistaken identification as to be a denial of due process of law.' Defendants are not entitled to qualified immunity with respect to the unduly suggestive lineup theory.") (citation

omitted). Defendants' acknowledged as much in the parties' joint submission to this Court following the case's reassignment. ECF No. 292 at 4 ("The Court also held [in its summary judgment ruling] that the Defendant Officers were not entitled to qualified immunity as to Plaintiff's unduly suggestive lineup theory.").

2. Even if qualified immunity were at issue on this claim, it has no place in jury instructions because "[t]he question of qualified immunity is a question of law for the court, not the jury." *Alvarado v. Picur*, 859 F.2d 448, 451 (7th Cir. 1998) (finding clear error where the jury was instructed to determine whether the defendants' "conduct violated [a] clearly established statutory or Constitutional right," and to "consider the status of the law on the date or dates in question before you"). The court in *Alvarado* held: "How was the jury supposed to determine the law on the dates in question? And, if the jury somehow could determine the law on the dates in question, how was it supposed to determine if that law was 'clearly established'?" *Id.*

3. In addition, putting aside the fact that qualified immunity is has no place in jury instructions and is not at issue in this case, including the "clearly prohibited by law" language as an element of Plaintiff's claim would be improper because qualified immunity is an affirmative defense; it is not an element that Plaintiff must prove.

Finally, Defendants' proposed third element is also improper. The phrase "deliberately used the prohibited procedure" again puts the onus on the jury to make a qualified immunity determination by asking them to determine whether the defendants' conduct was clearly prohibited by the law in 1994. Additionally, the term "to secure an identification he knew was tainted" is inaccurate and misleading. Plaintiff is required to prove that the identification procedure was "unreliable," not "tainted."

## No Right to Counsel at Line-Up

You have heard testimony that Plaintiff's criminal defense attorney was not permitted to be present in the witness room while Clifford Frazier was observing the lineup.

A person's right to counsel attaches only after adversarial judicial criminal proceedings have been initiated against him, whether by way of a formal charge, preliminary hearing, indictment, information, or arraignment. This right cannot be invoked by a person during the fact-finding process, such as a line-up, prior to the commencement of adversarial criminal proceedings. In February 1994, a person did not have a constitutional right to counsel when that person participated in a lineup which occurred prior to the initiation of adversary proceedings.

Defendants' Proposed Jury Instruction No: 4

*Source : United States v. Larkin*, 978 F.2d 964 (7th Cir. 1992); *US ex rel Wilson v. Peters*, 60 F.Supp.2d 777 (N.D.Ill. 1999); *Jerricks v. Bresnaham*, 880 F.Supp. 521 (N.D.Ill. 1995); *People v. Bolden*, 197, Ill. 2d 166 (2001); *United States v. Wade*, 388 U.S. 216 (1967); *Kirby v. Illinois*, 406 U.S. 682 (1972).

Plaintiff's Objection:

This instruction is irrelevant, unnecessary, and confusing. Plaintiff does not assert—and will not assert at trial—that he had a constitutional right to counsel at the lineup. Therefore, there is no need for any instruction on this issue.

Moreover, the instruction is misleading because it suggests to the jury that that they should not consider the Defendants' exclusion of Mr. Ingles from the lineup in assessing Plaintiff's claims. But the jury is permitted to consider that conduct for several reasons. Defendants lied to Mr. Ingles in order to secure Plaintiff's voluntary participation in the lineup, only to physically bar Ingles from observing the lineup once Plaintiff entered the lineup room. Plaintiff's police practices expert will testify that despite Plaintiff having no constitutional right to counsel during the lineup, the Defendants' exclusion of Ingles under the circumstances served no legitimate police purpose and was a severe departure from generally accepted police practices in 1994. This testimony is highly probative of Defendants' intent as it relates to each of Plaintiff's claims. *See, e.g.*, *Jimemez v. City of Chicago*. 732 F.3d 710, 721-22 (7th Cir. 2013) (deviations from applicable professional standards can help a jury evaluate whether defendants' conduct was intentional or reckless as opposed to negligence or a good faith mistake). Indeed, Defendants' cited case law recognizes that in 1994, there was no "legitimate law enforcement" reason to exclude Ingles from the lineup, regardless of whether his presence was constitutionally required.. *See United States v. Larkin*, 978 F.2d 964, 970 (7th Cir. 1992) ("[W]e reiterate our previously stated view that the government, notwithstanding the absence of constitutional compulsion, should make every effort to provide counsel to custodial defendants appearing in pre-indictment lineups. The presence of defense counsel is always preferred, particularly where most or all of the inculpatory evidence consists of eyewitness testimony delivered by witnesses who previously participated in the lineup at issue … In light of the overwhelming importance of eyewitness testimony in this case, the government would have best served justice by affording the defendants the assistance of counsel at the lineup. It bears repeating that counsel can hardly impede legitimate law enforcement; on the contrary, law enforcement may be assisted by preventing the infiltration of taint.").

If the Court were to give this instruction, it would require a competing instruction that the jury _**is**_ permitted to consider the Defendants' conduct as evidence of their knowledge and intent, whether they acted with malice, whether their conduct was extreme and outrageous, and whether their conduct warrants punitive damages, among other things. Having these competing instructions would unnecessarily heighten the risk for juror confusion.

## Two Different Identification Procedures

You have heard testimony that Clifford Frazier viewed Plaintiff in a lineup after he viewed Plaintiff in a photo array.

In February 1994, it was not clearly forbidden to have a witness view a photo array and later a lineup where the suspect was the only person to appear in both the photo array and lineup.

Defendants' Proposed Jury Instruction No: 5

*Source : U.S. v. Harris*, 281 F.3d 667, 670 (7th Cir. 2002)

Plaintiff's Objection:

Plaintiff understands that Defendants intend this instruction to tell the jurors that Defendants' conduct was not clearly prohibited by existing law in 1994 and, therefore, Defendants are entitled to qualified immunity for their conduct. That instruction is improper for numerous reasons.

As discussed above, qualified immunity is not at issue. The Court disposed of Defendants' qualified immunity defense to Plaintiff's due process claim on summary judgment. ECF No. 276 at 49-50 ("It was clearly established many years before 1994 that 'the conduct of identification procedures may be so unnecessarily suggestive and conducive to irreparable mistaken identification as to be a denial of due process of law.' Defendants are not entitled to qualified immunity with respect to the unduly suggestive lineup theory.") (citation omitted). Defendants acknowledged as much in the parties' joint submission to this Court following this case's reassignment. ECF No. 292 at 4 ("The Court also held [in its summary judgment ruling] that the Defendant Officers were not entitled to qualified immunity as to Plaintiff's unduly suggestive lineup theory.").

Second, as set forth above, the issue of qualified immunity, and whether any conduct was "clearly prohibited" under the law, is a matter for the Court and has no place in jury instructions. *Alvarado v. Picur*, 859 F.2d 448, 451 (7th Cir. 1998) ("The question of qualified immunity is a question of law for the court, not the jury.")

Third, even putting those two issues aside, Defendants' instruction is contrary to the law and improper. As Judge Shah recognized in rejecting Defendants' qualified immunity defense, the issue in this case is whether it was clearly established in 1994 that unduly suggestive identification procedures could result in a due process violation. Judge Shah correctly held that it was. The qualified immunity assessment does not require this Court or the jury to parse each particular act undertaken by the Defendants during the identification procedures to determine whether that specific act—in isolation—was "clearly prohibited." *See* ECF No. 276 at 49-50; *see also Sanders v. City of Chicago Heights*, No. 13 C 0221, 2016 WL 2866097, at *10 (N.D. Ill. May 17, 2016) (holding that the issue in assessing defendants' qualified immunity defense was "whether it was clearly established in December 1993 and January 1994 that police officers violated a criminal defendant's due process rights by conducting impermissibly suggestive identification procedures," and further holding that "it has been clearly established since at least 1977 that a criminal defendant has a due process right not to be subjected to unduly suggestive identifications that taint his criminal trial. As such, Defendant Officers' qualified immunity argument fails") (citation omitted).

Now that the Court has rejected a qualified immunity defense as a matter of law, it is up to the jury to examine the facts to determine whether the identification procedures were unduly suggestive. And just like the Court, the jury should not look at each specific act of the Defendants in isolation—to the contrary, the jury must determine whether the facts show that the identification procedures used by Defendants, as a whole, ***under the totality of the circumstances***, were unduly suggestive. *See, e.g.*, *Alexander v. City of South Bend*, 433 F.3d 550, 555 (7th Cir. 2006) (holding that "both suggestiveness and reliability are evaluated by reference to the ***totality of the circumstances***") (emphasis added). Whether or not case law in 1994 had clearly established that one of the tactics used by the Defendants, alone, gives rise to a due process violation is simply irrelevant. Defendants' own cited authority demonstrates this point. *See United States v. Harris*,

281 F.3d 667, 670 (7th Cir. 2002). The *Harris* court's conclusion that the use of a photo array and later a live lineup in that case was not unduly suggestive was based on the totality of the circumstances—for example, that "the four other men in the line-up physically resembled each other and fit the detailed description first given by [the witness]" and "the photo array was reasonable—police showed [the witness] pictures of four men, all having similar physical characteristics," and the "line-up identification occurred nearly six months after [the witness] was first shown the photo array; after such a substantial passage of time, it is unlikely she was influenced by the earlier photograph, let alone that it led to misidentification." *Id.* at 670-71. Similarly, even the authority cited by Defendants to support their flawed "clearly prohibited" element of the due process instruction recognizes that the suggestiveness of the identification procedure must be viewed as a whole, under the totality of the circumstances. *See Coleman*, 925 F.3d at 348 ("Taking these allegedly suggestive elements together…").

It was also clearly established well before 1994 that the use of the same suspect in two separate identification procedures was a factor that could contribute—under the totality of the circumstances—to an unconstitutionally suggestive identification procedure. *See, e.g.*, *Foster v. California*, 349 U.S. 440, 443 (1969) (finding due process violation where "Petitioner was the only person in this lineup who had also participated in the first lineup. This finally produced a definite identification. The suggestive elements in this identification procedure made it all but inevitable that David would identify petitioner whether or not he was in fact 'the man.' In effect, the police repeatedly said to the witness, 'This is the man.'"); *Simmons v. United States*, 390 U.S. 377, 383–84 (1968) (recognizing that the danger of misidentification is increased if the police recurrently show the same individual to the witness because "the witness thereafter is apt to retain in his memory the image of the photograph rather than of the person actually seen, reducing the trustworthiness of subsequent lineup or courtroom identification"); *United States v. Washington*, 353 F.3d 42, 45 (D.C. Cir. 2004) ("To be sure, the use of a photo array prior to a lineup identification may be impermissibly suggestive where there is only one 'repeat player.'") (citing Supreme Court cases from 1968 and 1979); *Gregory-Bey v. Hanks*, 332 F.3d 1036, 1045 (7th Cir. 2003) ("The Supreme Court has warned that showing witnesses a photograph of the same person several times may increase the risk of misidentification.") (citing as authority a Supreme Court case from 1968 and Seventh Circuit case from 1989); *Kubat v. Thieret*, 867 F.2d 351, 357–58 (7th Cir. 1989) ("[Plaintiff] was the only person whose picture appeared in all three photo arrays […] we disapprove of the procedures used in these identification interviews."); *United States v. Sanders*, 479 F.2d 1193, 1197 (D.C. Cir. 1973) (observing that where Plaintiff "was the one man whose photograph had previously been shown to both witnesses, it was well-nigh inevitable that he would be chosen in the circumstances"); *Mercer v. Keane*, 1997 WL 529031, at *3 (S.D.N.Y. Aug. 25, 1997) ("Whether multiple, but individually proper, viewings of a suspect are deemed 'impermissibly suggestive' may depend on the strength and propriety of the initial identification. If the initial identification is definite and the procedure is proper, subsequent viewings can be considered as redundant, or at most, reinforcing. If the initial identification is either nonexistent or weak, however, subsequent viewings may be impermissibly suggestive.") (quoting *Reese v. Fulcomer*, 946 F.2d 247, 262 (3d Cir.1991), *cert. denied*, 503 U.S. 988, 112 S.Ct. 1679, 118 L.Ed.2d 396 (1992)).

Additionally, the phrase "not prohibited" is vague and confusing because Defendants have not specified under what standard such conduct was "not prohibited." For example, if intended to suggest that the conduct was not clearly prohibited by CPD policies or generally accepted police

practices, those would be questions of fact for the jury to decide and instructing the jury whether the conduct was or was not clearly prohibited would be improper.

Finally, qualified immunity aside, the instruction is misleading because it suggests that the jury should not consider—for any purpose—Defendants' use of the photo array prior to putting Plaintiff in the live lineup. Plaintiff's police practices expert will testify that this conduct departed from generally accepted police practices in 1994. As explained above, Defendants' departure from generally accepted professional standards is a factor the jury is entitled to consider in evaluating Defendants' intent. Plaintiff's eyewitness identification expert will testify about the ways in which the use of the photo array affected Clifford Frazier's memory and contributed to the suggestiveness of the identification procedures as a whole—testimony that is helps the jury assess Frazier's credibility as well as Plaintiff's due process claim.

14

## Failure to Provide Warnings

You have heard testimony that the Defendants failed to provide Clifford Frazier with a warning that the suspect might not be in the photo array or lineup and that Clifford Frazier was not obligated to identify anyone in the lineup.

In February 1994, it was not prohibited by law to not provide these types of warnings to an eyewitness prior to a photo array or lineup.

Defendants' Proposed Jury Instruction No: 6

*Source* : *People v. Harrell*, 104 Ill. App.3d 138, 146 (5th Dist. 1982); 725 ILCS 5/107A-2(e)(1)(B), (D) (effective Jan. 1, 2015)

Plaintiff's Objection:

Plaintiff objects to this proposed instruction for the same reasons set forth in response to Defendants' Proposed Instruction No. 10, above.

Plaintiff further notes that Defendants' cited authority does not support this instruction. Rather, the court's holding in *People v. Harrell* confirms that the jury must evaluate the totality of the circumstances rather that one specific act by Defendants. 104 Ill. App. 3d at 146 (5th Dist. 1982). The court held that in that case, "informing a witness that suspects are in custody" did not turn "***an otherwise fair identification procedure***" into an unduly suggestive one. *Id.* (emphasis added). The court further noted that "it is preferable that the witness not be told that a suspect is included in a particular photo array or line-up." *Id.*

Plaintiff also objects that the use of a double negative is confusing.

## Telling a Witness that the Suspect is in the Lineup

You have heard testimony that Clifford Frazier was told prior to viewing the lineup that the police had the offender.

In February 1994, telling a witness that the offender was in the lineup was not clearly prohibited by the law.

Defendants' Proposed Jury Instruction No: 7

*Source :  U.S v. Medina*, 552 F.2d 181 (7th Cir. 1977)

Plaintiff's Objection:

Plaintiff objects to this proposed instruction for the same reasons set forth in response to Defendants' Proposed Instruction No. 10, above.

Plaintiff further notes that there were ample court decisions before 1994, including by the Supreme Court, recognizing that telling the witness a suspect is in the lineup is a factor that could contribute to the suggestiveness of the procedure. *See, e.g.*, *Simmons v. United States*, 390 U.S. 377, 383 (1968) ("The chance of misidentification is also heightened if the police indicate to the witness that they have other evidence that one of the persons pictured committed the crime."); *Swicegood v. State of Alabama*, 577 F.2d 1322, 1329 (5th Cir. 1978) ("[The witnesses'] in-court certainty could have been tainted, however, by a police officer's remark after the lineup to the effect that the Carters had chosen the 'right man.' […] Manson requires that we assess the reliability of the identification by weighing against these 'indicators' the 'corrupting effect' of the lineup procedure. We cannot say that the likelihood of misidentification was slight or that the suggestiveness of the lineup was an uncorrupting influence."); *United States v. Sanders*, 479 F.2d 1193, 1197 (D.C. Cir. 1973) ("When shown the eight photographs, Miss Samuels testified that the detective told her 'that one of these men might be the robber and if I looked through them and see if I could see the man there.' […] The statement made by the investigating officer to Mr. Johnson as he viewed these photographs is admitted by the Government to have been suggestive, though the Government minimizes its effect. The suggestiveness of the statement to Mr. Johnson cannot be dismissed as of minimal effect but must be taken in its likely substantial impact, one which is magnified by the circumstance that Miss Samuels was such a weak identification witness."); *People v. Harrell*, 104 Ill. App. 3d 138, 146 (1982) ("[I]t is preferable that the witness not be told that a suspect is included in a particular photo array or lineup."). Defendants' cited authority, *United States v. Medina*, is not to the contrary. In that case, the court recognized, "The Government properly admits that the police should not have told Conklin anything about the lineup," especially not that the suspect was "out there and I [the witness] should be able to spot him." 552 F.2d at 189-190.

## Makeup of the Lineup

You have heard evidence regarding the physical characteristics of the lineup participants.

In February 1994, the police were not required to search for and include in a lineup, individuals with same age, height, weight, facial features, or skin coloration as the suspect. Lineup participants should have descriptive features within a reasonable range of similarity to each other, in light of all the circumstances. The participants in the lineup cannot be grossly dissimilar in appearance to the suspect such that the dissimilarities suggest to the witness that the suspect is more likely to be the offender.

Defendants' Proposed Jury Instruction No: 8

*Source: Perry v. New Hampshire*, 132 S. Ct. 716 (2012); *United States v. Funches*, 84 F.3d 249 (7th Cir. 1996); *United States v. Johnson*, 745 F.3d 227 (7th Cir. 2014); *Eskridge v. Greco*, 2009 WL 449059 (N.D. Ill. Feb. 20, 2009)

Plaintiff's Objection:

Plaintiff objects to this proposed instruction for the same reasons set forth in response to Defendants' Proposed Instruction No. 10, above.

Plaintiff further notes that none of Defendants' cited authority supports this instruction. The jury need not be instructed as to any particular level of similarity of appearance that is required for lineup participants. The jury will decide whether the appearance of the other lineup participants was so different from Plaintiff's appearance that it rendered—under the totality of the circumstances—the identification procedures unduly suggestive. *See, e.g.*, *Foster v. California*, 384 U.S. 440, 442-43 (1969) ("[J]udged by the totality of the circumstances, the conduct of identification procedures may be so unnecessarily suggestive and conducive to irreparable mistaken identification as to be a denial of due process of law. Judged by this standard, this case presents a compelling example of unfair lineup procedures … petitioner stood out from the other two men by the contrast of his height and by the fact that he was wearing a leather jacket similar to that worn by the robber."); *Israel v. Odom*, 521 F.2d 1370, 1374 (7th Cir. 1975) ("We have no doubt that the pretrial identification procedures utilized by the police in this case contained elements of suggestiveness … of the five men appearing, three were approximately six feet or taller while Odom's height was only 5 feet 5 ½ inches."); *People v. Maloney*, 201 Ill. App. 3d 599, 607 ("[W]hen the difference in physical size, specifically the weight difference, between defendant and the four men in the lineup is added to the differences between them [in dress], we find the lineup so suggestive of defendant as the guilty party as to have been improper *per se*."); *People v. Castillo*, 130 Ill. App. 2d 387, 390 (1st Dist. 1970) ("As to the composition of the line-up, which consisted of two short Mexicans and two or three heavy non-Mexicans, it is obvious that the line-up was fundamentally unfair for the purpose of identification.").

## Claim Number Two – Pre-Trial Detention Without Probable Cause

To succeed on his wrongful pretrial detention claim , Plaintiff Bolden must prove each of the following things by a preponderance of the evidence:

1. That the Defendant you are considering caused Plaintiff to be detained prior to his criminal trial; and
2. That the Defendant you are considering knew he did not have probable cause to detain Plaintiff before his criminal trial.

If you find that Plaintiff Bolden has proved each of these things by a preponderance of the evidence as to the Defendant you are considering, then you should find for Plaintiff Bolden and go on to the question of damages.

If, on the other hand, you find that Plaintiff Bolden has failed to prove any of these things by a preponderance of the evidence against the Defendant you are considering, then you should find for that Defendant and you will not consider the question of damages for that Defendant.

Defendants' Proposed Jury Instruction No: 9

*Source : Anderson v. City of Rockford*, 932 F.3d 494, 512 (7th Cir. 2019); *Camm v. Faith*, 937 F.3d 1096 (7th Cir. 2019); *Blackmon v. City of Chicago*, 2020 WL 60188 (N.D. Ill. 2020); *Coleman v. Peoria*, 925 F.3d 336, 351 (7th Cir. 2019)

Plaintiff's Objection:

Defendants' use of the phrase "knew he" in the second element is contrary to the law, in that it inserts the Defendants' subjective knowledge into the analysis. As Defendants appear to recognize based on their proposed probable cause instruction, probable cause is an objective, reasonable person standard. The Defendants' proposed instruction creates grave danger that the jury will improperly analyze Defendants' subjective knowledge and belief.

## Commencement or Continuance of a Criminal Proceeding

In order to find that the Defendant you are considering "caused the commencement or continuation of a criminal proceeding" against Plaintiff, you must find that the relevant defendant proximately caused the commencement or continuance of the criminal proceeding. To do so, you must determine that the relevant Defendant played a "significant role" in the criminal prosecution.

The significant role determination includes those persons who improperly exerted pressure on the prosecutor, knowingly provided misinformation to him, concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was instrumental in the commencement or continuance of the criminal prosecution.

Defendants' Proposed Jury Instruction No: 10

*Source: Beaman v. Freesmeyer*, 2021 IL 125617; *Beaman v. Freesmeyer*, 2019 IL 470186

Plaintiff's Objection:

Defendants' use of the term "proximately caused" is likely to confuse the jury because it is a legal term that requires further explanation or definition. That term is unnecessary because the "commence and continue" definition, itself, explains the concept of proximate cause in the context of a malicious prosecution claim.

Plaintiff also objects to Defendants' Proposed Instruction as incomplete, in that it omits relevant information from the Illinois Supreme Court's recent decision in *Beaman v. Freesmeyer*, 2021 IL 125617, which will help the jury to evaluate this element. Plaintiff's Proposed Jury Instruction No. 5, which includes the following instruction, should be utilized:

> In evaluating whether the Defendant you are considering played a significant role in causing the criminal proceeding to be commenced or continued against Plaintiff, you may consider whether they conducted a bad-faith and incomplete investigation designed to implicate Plaintiff regardless of the evidence, such as by immediately focusing on Plaintiff as the primary suspect, deliberately narrowing the scope of the investigation and opting not to pursue other avenues of investigation, discounting other suspects and plausible motives for the crime, or ignoring evidence that would have excluded Plaintiff as a suspect.

## Malice Defined

Malice is the intent, without justification, to commit a wrongful act. In order to find malice, you must find that the Defendant you are considering commenced or continued the criminal proceeding against Plaintiff for any reason other than to bring him to justice.

Malice may be inferred from the absence of probable cause if the circumstances that surrounded the starting of the criminal proceeding are not consistent with good faith, and if the absence of probable cause has been clearly proved. Malice may not be inferred where probable cause exists.

Defendants' Proposed Jury Instruction No: 11

*Source: Beaman v. Freesmeyer*, 2021 IL 125617; *Andersen v. City of Chicago*, 16-cv-01963, Dkt. 887 (N.D. Ill. June 7, 2021)

Plaintiff's Objection:

First, Plaintiff objects to the phrase bring "him" to justice—it should be substituted with bring "the perpetrator" or "the responsible party" to justice. As phrased, the sentence suggests Plaintiff's guilt.

Second, Defendants' first paragraph is confusing because it instructs the jury for a second time that they must find that the defendant "commenced or continued" the proceedings against Plaintiff. Malice, of course, is a separate element from the "commence or continue" element.

Third, Plaintiff objects to the last sentence of Defendants' proposed instruction ("Malice may not be inferred where probable cause exists."). It is confusing in that it conflates two separate elements—malice and probable cause.

Plaintiff's Proposed Jury Instruction No. 6 should be utilized. It is not only clearer than Defendants' proposal, but it includes additional important instructions set forth by the Illinois Supreme Court in *Beaman v. Freesmeyer*, 2021 IL 125617, which will help the jury evaluate the malice element.

## Illinois Criminal Offenses

In order to determine Plaintiff's malicious prosecution claim, you must decide whether there was probable cause to believe that Plaintiff had committed the offenses of First-Degree Murders of Derrick Frazier and Ledell Clayton and Attempted Murder of Clifford Frazier.

Under Illinois law, a person commits first degree murder when he kills an individual if, in performing the acts which cause the death, he intends to kill or do great bodily harm to that individual; or he knows that such acts will cause death to that individual; or he knows that such acts create a strong probability of death or great bodily harm to that individual.

Under Illinois law, a person commits attempted murder when he, with the intent to kill an individual, does any act which constitutes a substantial step towards the killing of an individual. The killing attempted need not have been accomplished.

Defendants' Proposed Jury Instruction No: 12

*Source:* Jury instructions given in Plaintiff's criminal case; 720 ILCS 5/9-1 (first degree murder); 720 ILCS 5/8-4 (attempt)

Plaintiff's Objection:

An instruction on the underlying crimes is improper and irrelevant to Plaintiff's malicious prosecution claim. Defendants' proposed instruction prejudices Plaintiff by improperly shifting the focus to his guilt or innocence, rather than the Defendants' conduct. Malicious prosecution instructions in §1983 cases do not typically include an instruction on the underlying crime. *See* Instructions to the Jury, *Fields v. City of Chicago*, No. 1:10-cv-01168 (N.D. Ill.), ECF No. 1169, at 13 (no mention of underlying crime); Instructions to the Jury, *Jimenez v. Bogucki*, No. 09-cv-08081 (N.D. Ill.), ECF No. 287, at 15 (same); Jury Instructions, *Johnson v. Guevara*, No. 05-cv-01042 (N.D. Ill.), ECF No. 278, at 21-24 (same). The instruction is particularly inappropriate here, where there is no dispute that a murder was committed—the dispute is whether there was probable cause to believe that *Plaintiff* committed it. An instruction on the elements of murder does not assist the jury in making this determination and serves no purpose other than to prejudice Plaintiff.

## Limiting Instruction Regarding Certificate of Innocence

You have heard evidence that Plaintiff was awarded a Certificate of Innocence in State court. The State court's decision to issue a Certificate of Innocence is not binding on you in this case. You may not consider this Certificate of Innocence as evidence of Plaintiff's actual innocence. Rather, you can only consider this evidence in determining whether Plaintiff's criminal proceeding was terminated consistent with innocence.

The State court decided different issues than those before you when issuing the Certificate of Innocence. The State court was not asked nor did it decide the issue of whether Plaintiff Bolden's constitutional rights were violated or whether any of the Defendants engaged in any misconduct under state or federal law. The State court was not asked nor did it decide the issue of whether Plaintiff Bolden was subjected to an unduly suggestive line-up.

Those issues are for you alone to decide.

You have listened to and heard all the evidence in this case and are to decide this case based on the evidence you heard in this case and this case alone.

Defendants' Proposed Jury Instruction No: 13

*Source :* Jury Instruction given in *Nicole Harris v. City of Chicago, et al.*, 14 CV 4391 (St. Eve, J.) (modified by including last two sentences in first paragraph); *Patrick v. City of Chicago*, 974 F.3d 824 (7th Cir. 2020); *Walker v. White*, 16-cv-07024, Dkt. 297 at 29-30 (N.D. Ill. March 19, 2021) (Shah J.) (explaining the certificate is offered as evidence to show the circumstances under which a conviction is vacated, not for the truth of an assertion of innocence).

Plaintiff's Objection:

Plaintiff objects to a separate instruction on his Certificate of Innocence. The Certificate is simply a piece of admissible evidence, and courts do not typically instruct jurors on how to view pieces of evidence.

If a limiting instruction is provided, however, Defendants' proposal must be modified because it is improper for several reasons.

First, Defendants' instruction misstates the law by seeking to instruct the jury: "You may not consider this Certificate of Innocence as evidence of Plaintiff's actual innocence." That is blatantly false. *See, e.g.*, *Kluppelberg v. Burge*, 84 F. Supp. 3d 741, 746 (N.D. Ill. 2015) (holding that plaintiff's Certificate of Innocence was "relevant to damages because a jury may award damages based in part on whether Kluppelberg is actually innocent"). The court's finding of innocence does not have a *res judicata* effect, but it is certainly a probative piece of evidence for the jury to consider.

Second, the statement that "[t]he State court decided different issues than those before you when issuing the Certificate of Innocence" is incorrect. In granting Plaintiff's Certificate of Innocence, the state court decided issues that are relevant in Plaintiff's case, including that Plaintiff is "innocent of the offenses charged" and that Plaintiff "did not by his or her own conduct voluntarily cause or bring about" his conviction." 735 ILCS 5/2-702. These issues go directly to Plaintiff's claims, as well as to his damages.

If the Court is inclined to give a limiting instruction regarding the Certificate of Innocence, Plaintiff proposes the following instruction:

> You have heard evidence that Plaintiff was awarded a Certificate of Innocence in State court. The State court's decision to issue a Certificate of Innocence is not binding on you in this case, and you may give it whatever weight you deem appropriate. The State court was not asked to nor did it decide the issue of whether Plaintiff's constitutional rights were violated or whether any of the Defendants engaged in any misconduct under state or federal law. Those issues are for you to decide.

## Extreme and Outrageous Conduct

By "extreme and outrageous conduct" I mean conduct that, under the circumstances, extends beyond the bounds of human decency and is considered intolerable in a civilized community. A pattern, course, or accumulation of acts can make an individual's conduct extreme, even if one instance of such behavior might not be.

In determining whether conduct is extreme and outrageous, you may consider the following factors: the degree of power or authority which the Defendant you are considering had over Plaintiff, whether the Defendant reasonably believed that his conduct had a legitimate objective, and whether Plaintiff was particularly susceptible to emotional distress because of some mental condition or state.

Defendants' Proposed Jury Instruction No: 14

*Source : Feltmeier v. Feltmeier*, 207 Ill.2d 263 (2003)

Plaintiff's Objection:

Defendants' additional instructions further defining aspects of the IIED claim are unnecessary. The terms are sufficiently definite and can be understood by the jury. Additional instruction, based on excerpts of case law, is unnecessary. *See* Jury Instructions, *Rivera v. Guevara*, No. 1:12-cv-04428 (N.D. Ill.), ECF No. 671, at 28 (instructions given).

If Defendants' proposed additional instructions are offered, then the jury should also be provided with the following instructions:

An important factor in deciding whether conduct is extreme and outrageous is "whether a defendant abused a position of authority." *Fox v. Hayes*, 600 F.3d 819, 842 (7th Cir. 2010).

It is extreme and "outrageous for police officers to falsely frame, arrest and imprison an innocent citizen." *Henry v. Ramos*, 1997 WL 610781, at *2 (N.D. Ill. Sept. 28, 1997).

## Damages : Compensatory

If you find in favor of Plaintiff on one or more of his claims, then you must determine the amount of money that will fairly compensate Plaintiff for any injury that you find he sustained as a direct result of the actions of Defendants.

Plaintiff must prove his damages by a preponderance of the evidence. Your award must be based on evidence and not speculation or guesswork. This does not mean, however, that compensatory damages are restricted to the actual loss of money; they include both the physical and mental aspects of injury, even if they are not easy to measure.

You should consider the following types of compensatory damages, and no others:

- The physical, mental, and emotional pain and suffering that Plaintiff has experienced and is reasonably certain to experience in the future.

- The loss of normal life that Plaintiff has experienced and is reasonably certain to experience in the future.

No evidence of the dollar value of the physical, mental, and emotional pain and suffering or loss of a normal life has been or needs to be introduced. There is no exact standard for setting the damages to be awarded on account of these factors. You are to determine an amount that will fairly compensate Plaintiff for the injury he has sustained.

If you return a verdict for Plaintiff but find that Plaintiff has failed to prove compensatory damages, then you must award nominal damages of $1.00.

Defendants' Proposed Jury Instruction No: 15

*Source :* 7th Circuit Civil Pattern Jury Instruction 7.26

Plaintiff's Objection:

Plaintiff's Proposed Jury Instruction No. 8 should be given. Plaintiff objects to Defendants' nominal damages instruction ("If you return a verdict for Plaintiff but find that Plaintiff has failed to prove compensatory damages, then you must award nominal damages of $1.00.") as improper. Committee Comment f to Pattern Instruction 7.26 clearly states that this "instruction is not appropriate unless it is a 'true no-injury case.'" This case certainly does not qualify.

## Damages: Compensatory for Pretrial Detention Claim

If you find in favor of Plaintiff on solely on his pretrial detention without probable cause claim and/or his failure to intervene or conspiracy claim based on the pretrial detention claim, then you must determine the amount that will fairly compensate Plaintiff for any injury you find he sustained from the time he was arrested until the time he was convicted at his criminal trial that was the direct result of the actions of Defendants.

Plaintiff must prove his damages by a preponderance of the evidence. Your award must be based on evidence and not speculation or guesswork. This does not mean, however, that compensatory damages are restricted to the actual loss of money; they include both the physical and mental aspects of injury, even if they are not easy to measure.

You should consider the following types of compensatory damages, and no others:

- The physical, mental, and emotional pain and suffering or loss of a normal life that Plaintiff has experienced and is reasonably certain to experience in the future. No evidence of the dollar value of the physical, mental, and emotional pain and suffering or loss of a normal life has been or needs to be introduced. There is no exact standard for setting the damages to be awarded on account of these factors. You are to determine an amount that will fairly compensate Plaintiff for the injury he has sustained.

Defendants' Proposed Jury Instruction No: 16

*Source :* 7th Circuit Civil Pattern Jury Instruction 7.26 (modified); *Lewis v. City of Chicago*, 914 F.3d 472, 474-75 (2019).

Plaintiff's Objection:

Plaintiff objects to having multiple compensatory damages instructions related to different claims. Neither the Pattern Instructions nor Defendants' cited authority (nor any other authority of which Plaintiff is aware, for that matter), support doing so. Having more than one compensatory damages needlessly raises the possibility of juror confusion.

## SPECIAL INTERROGAOTRY #1

Did the Defendant intentionally walk Clifford Frazier past Plaintiff in the police station in order for Clifford Frazier to identify Plaintiff in the lineup?

Yes _____

No _____

_____          _____

Presiding Juror

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

Plaintiff's Objection:

Plaintiff objects to the use of special interrogatories. The Court has broad discretion to reject the use of special interrogatories, and it should exercise that discretion here for several reasons. *See, e.g. Cruz v. Town of Cicero, Ill.*, 275 F.3d 579, 591 (7th Cir. 2001) ("Whether or not to grant a party's request to submit special interrogatories … is committed to the sound discretion of the district court."); *Panther Pumps & Equip. Co. v. Hydrocraft, Inc.*, 468 F.2d 225, 228 (7th Cir. 1972) (whether special interrogatories are "appropriate in a particular case is a matter to be determined by the wise discretion of the trial court in the circumstances of the particular litigation before it"); *McGaughey v. City of Chicago*, 690 F. Supp. 707, 708–09 (N.D. Ill. 1988) ("The decision whether to use a general verdict accompanied by special interrogatories, as authorized by Rule 49(b) ... is committed to the unreviewable discretion of the trial judge.") (quoting 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2511 (1971)).

First, as noted above, qualified immunity is not at issue. The Court disposed of Defendants' qualified immunity defense to Plaintiff's due process claim on summary judgment. ECF No. 276 at 49-50 ("It was clearly established many years before 1994 that 'the conduct of identification procedures may be so unnecessarily suggestive and conducive to irreparable mistaken identification as to be a denial of due process of law.' Defendants are not entitled to qualified immunity with respect to the unduly suggestive lineup theory.") (citation omitted). Defendants acknowledged as much in the parties' joint submission to this Court following this case's reassignment. ECF No. 292 at 4 ("The Court also held [in its summary judgment ruling] that the Defendant Officers were not entitled to qualified immunity as to Plaintiff's unduly suggestive lineup theory.").

Second, even if qualified immunity were at issue, the use of special interrogatories would be improper and would unfairly prejudice Plaintiff. As discussed above, the jury must evaluate both the suggestiveness of the identification procedures and the reliability of Clifford Frazier's identification under the "totality of the circumstances." *See, e.g.*, *Lee v. Foster*, 750 F.3d 687, 691 (7th Cir. 2014) (holding that "a witness's identification violates a defendant's right to due process" when the procedure used so "unduly suggestive" that it gives rise to "a very substantial likelihood of irreparable misidentification" and "under the totality of the circumstances," the procedure is not reliable); *Alexander v. City of South Bend*, 433 F.3d 550, 555 (7th Cir. 2006) (holding that "both suggestiveness and reliability are evaluated by reference to the totality of the circumstances"); *Gonzalez v. City of Waukegan*, 220 F. Supp. 3d 876, 882 (N.D. Ill. 2016) ("To state a claim for unduly suggestive identification techniques, a plaintiff must allege (1) that the technique used was suggestive and (2) that such suggestive was unnecessary. Once a plaintiff has shown a technique to be unduly suggestive, the court must then determine whether the technique was nevertheless reliable under the totality of the circumstances."). Although Defendants omit the "totality of the circumstances" requirement from their instruction, even their cited authority holds that the suggestiveness of the identification procedure must be viewed as a whole, under the totality of the circumstances. *See Coleman v. City of Peoria, Ill.*, 925 F.3d 336, 348 (7th Cir. 2019) ("Taking these allegedly suggestive elements together…").

Because the jury must evaluate the suggestiveness of the identification procedures as a whole, under the totality of the circumstances, asking them to answer questions about certain specific

aspects of the procedures—while ignoring countless others—would be confusing and prejudicial, suggesting to the jury that it is only supposed to consider the specific acts addressed by the special interrogatories, or that failure to find a particular act vitiates the entire claim. All of the different aspects of the identification procedure are merely ***factors*** that the jury can consider in weighing the overall suggestiveness of the procedure. Courts routinely recognize the impropriety and dangers of special interrogatories under these circumstances—where there are numerous factors that the jury is entitled to consider and they cannot be distilled down into a mechanical list. *See, e.g., Willis v. City of Fresno*, No. 1:09-CV-01766-BAM, 2014 WL 1419239, at *16 (E.D. Cal. Apr. 14, 2014) ("The Court's reluctance to send the proposed special interrogatories to the jury, in part, was because this excessive force case involved a variety of moving parts and factual determinations that, individually or in combination, could have resulted in a finding of liability … The potentially relevant factual determinations were too numerous to define a workable set of special interrogatories that would properly frame the issues and avoid confusion …."); *Phillips v. Irvin*, No. CIV.A.05-0131-WS-M, 2007 WL 2570756, at *15–16 (S.D. Ala. Aug. 30, 2007) ("For plaintiff selectively to seize on certain facts from that opinion to support a general conclusion that conduct is excessive force anytime a particular grouping of factors is found is to transform the law in this area from a totality-of-the-circumstances inquiry into a pithy checklist. This is improper."); *id.* (holding that the use of special interrogatories would "impute a false degree of precision to the excessive force analysis that would attempt to encapsulate it into a stylized, mechanical checklist which could confuse and distract the jury from the all-encompassing analysis"); *see also Panther Pumps & Equip. Co. v. Hydrocraft, Inc.*, 468 F.2d 225, 228 (7th Cir. 1972) ("When only two or three narrow issues of fact, such as the date of invention or perhaps the date of first public sale, determine the issue of patent validity, it may be entirely appropriate to submit special interrogatories to the jury. But if, as in this case, one party contends that as many as 32 separate fact questions must be resolved, the trial judge certainly may consider it inappropriate to use the special interrogatory procedure.")

Finally, this instruction is inaccurate because Plaintiff does not have to prove that Defendants "intentionally walk[ed] Clifford Frazier past Plaintiff in the police station in order for Clifford Frazier to identify Plaintiff in the lineup." Plaintiff must simply prove that under the totality of the circumstances, Defendants' conduct was suggestive and unnecessary. The elements of proof are set forth in Plaintiff's Proposed Jury Instruction No. 2.

## Special Interrogatory #2

Did the Defendant ask the Plaintiff if he was Eddie Bolden during the lineup in order for Clifford Frazier to identify Plaintiff?

Yes _____

No _____

_____          _____

Presiding Juror

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

Plaintiff's Objection:

Plaintiff repeats his objections to Defendants' Proposed Special Interrogatory No. 1.

Additionally, this instruction is inaccurate because Plaintiff does not have to prove that Defendants "ask[ed] the Plaintiff if he was Eddie Bolden during the lineup in order for Clifford Frazier to identify Plaintiff." Plaintiff must simply prove that under the totality of the circumstances, Defendants' conduct was suggestive and unnecessary. The elements of proof are set forth in Plaintiff's Proposed Jury Instruction No. 2.

## Special Interrogatory #3

Did the Defendant pull Clifford Frazier in front of Plaintiff's position during the lineup in order for Clifford Frazier to identify Plaintiff?

Yes _____

No _____

_____          _____
Presiding Juror


_____          _____


_____          _____


_____          _____


_____          _____


_____          _____

Plaintiff's Objection:

Plaintiff repeats his objections to Defendants' Proposed Special Interrogatory No. 1.

Additionally, this instruction is inaccurate because Plaintiff does not have to prove that Defendants "pull[ed] Clifford Frazier in front of Plaintiff's position during the lineup in order for Clifford Frazier to identify Plaintiff." Plaintiff must simply prove that under the totality of the circumstances, Defendants' conduct was suggestive and unnecessary. The elements of proof are set forth in Plaintiff's Proposed Jury Instruction No. 2.

**Special Interrogatory #4**

Did the Defendant chose fillers in the lineup who were grossly dissimilar to Plaintiff in order to suggest to Clifford Frazier that Plaintiff was the offender?

Yes _____

No _____

_____          _____

Presiding Juror

_____          _____


_____          _____


_____          _____


_____          _____


_____          _____

Plaintiff's Objection:

Plaintiff repeats his objections to Defendants' Proposed Special Interrogatory No. 1.

Additionally, this instruction is inaccurate because Plaintiff does not have to prove that Defendants "chose fillers in the lineup who were grossly dissimilar to Plaintiff in order to suggest to Clifford Frazier that Plaintiff was the offender." Plaintiff must simply prove that under the totality of the circumstances, Defendants' conduct was suggestive and unnecessary. The elements of proof are set forth in Plaintiff's Proposed Jury Instruction No. 2.

4842-5910-2461, v. 2