UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EDDIE L. BOLDEN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17 C 00417 |
| | ) | |
| vs. | ) | Honorable Steven Seeger |
| | ) | |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S MIL #1 RE: PLAINTIFF'S GANG MEMBERSHIP
AND MIL #6 RE: ANTHONY WILLIAMS' STATEMENTS**

Defendants Angelo Pesavento, James Oliver, Edward Siwek, and the Estate of George Karl (collectively "Defendant Officers"), by their attorneys, hereby submit this supplemental memorandum in opposition to plaintiff's motion *in limine* #1 regarding plaintiff's gang membership and motion *in limine* #6 regarding Anthony Williams' statements.

As set forth in the initial briefs, plaintiff testified at his deposition that on January 28, 1994, Anthony Williams ("Ant") offered him $20,000 to lure two men (both Gangster Disciples) outside a party so that they could be killed. As we know, on January 29, 1994, the very next day, two *other* men were killed, at Ant's direction, as plaintiff has testified. Plaintiff claims that the reason he went to J&J Fish on January 29, 1994 was to try and talk Ant out of this *other* double-murder plot.

The crucial issue here is the unique and close relationship between plaintiff and Ant. In his deposition, plaintiff was asked about why he thought Ant approached him regarding this double-murder plot:

Q: Why do you think Anthony would approach you about this?

[objection omitted]

A: I believe he thought he can trust me.

Q: Why do you think Anthony thought he could trust you?

[objection omitted]

A: Because I went to prison and I didn't take – even though I told who was with me, I didn't take anybody with me. I accepted responsibilities for my own actions and I believe he thought that I wouldn't tell on him. (Ex. A: Plaintiff's Dep. At 56:23-57:14)

This evidence demonstrates that when Ant was plotting a double-murder, one of the persons he approached to be involved in that plot was the plaintiff, a person that could be trusted. The fact that Ant would recruit plaintiff to participate in this double-murder plot – and offer to pay him $20,000 - shows the incredible bond and trust between Ant and plaintiff and establishes that plaintiff was a member of Ant's inner circle of criminal conspirators.

Further, the context of plaintiff and Ant both having a history with the Gangster Disciples is important and necessary context for that special relationship and trust. See, e.g., *United States v. Westbrook*, 125 F.3d 996, 1007 (7th Cir. 1997)(gang membership admissible "in cases in which it is relevant to demonstrate the existence of a joint venture or conspiracy and a relationship among its members"); *United States v. Thomas*, 86 F.3d 647, 652 (7th Cir. 1996)(affirming ruling allow gang evidence because that evidence "helped demonstrate the existence of the conspiracy and the connections between members of the conspiracy"); *United States v. Sargent*, 98 F.3d 325, 328 (7th Cir. 1996)("[G]ang membership can be key to establishing criminal intent or agreement to conspire"); *United States v. McKinney*, 954 F.2d 471, 479 (7th Cir. 1992)(Gang evidence admissible "[t]o present the complete picture of the murder and conspiracy").

Plaintiff will undoubtedly paint a picture at trial that Ant was simply a person he knew from growing up and that plaintiff had no unique relationship with him. The jury, if not told about plaintiff's ties to the Gangster Disciples, and Ant's solicitation of plaintiff for assistance with

2

another double-murder, will have no evidence of their criminal relationship and therefore no context to determine whether plaintiff was someone that Ant would seek out for assistance with the plot to murder Derrick Frazier and Ledell Clayton.

However, even if this Court denies evidence of plaintiff's gang history, plaintiff's conversation with Ant on January 28, 1994 should still be deemed admissible, as this evidence is nevertheless probative of his criminal relationship with the man who he has testified set up the murders here and who he has testified trusted him to such a degree that he would ask plaintiff to participate in a plot to commit a double murder in which one of the victims was plaintiff's lifelong friend.

The Court has said that it is conceivable that plaintiff could open the door at trial to this evidence, stating: "For example, statements that he did not know Williams well, or that their relationship was entirely on the up-and-up, or (maybe) that he had no motive to engage in this killing, might be inconsistent with an invitation by Williams to help with a killing." (Docket #467: 9/22/21 Order at p. 10). However, based on the foregoing arguments, defendants submit that the evidence of plaintiff's conversation with Anthony Williams on January 28, 1994 should be deemed admissible prior to trial.

              Respectfully submitted,

          BY: */s/ Andrew M. Hale*
              One of the Attorneys for Defendant Officers

Andrew M. Hale
Barrett E. Boudreaux
Brian J. Stefanich
William E. Bazarek
Amy A. Hijjawi
HALE & MONICO LLC
53 W. Jackson Blvd., Suite 330
Chicago, Il 60604
(312) 341-9646

3

## **CERTIFICATE OF SERVICE**

I, the undersigned attorney, hereby certify that I caused the foregoing document to be filed on the date appearing within the margins of this document, with the Court's CM/ECF system, which simultaneously sent an electronic copy of the same to all counsel of record.

*/s/ Andrew M. Hale*