**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

EDDIE L. BOLDEN,                 )
                                     )
              Plaintiff,         )           Case No. 17 C 00417
                                       )
              vs.                 )           Honorable Steven C. Seeger
                                       )
CITY OF CHICAGO, et al.,        )
                                       )
              Defendants.      )

**PLAINTIFF'S RESPONSE TO DEFENDANTS' SUBMISSION AND REQUEST
REGARDING THE COURT'S ORDER ON THE PARTIES' MOTIONS IN LIMINE**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ........................................................................................................... 1

I.     Plaintiff's Motion *in Limine* No. 1 (Prior Criminal History)................................. 1

II.    Plaintiff's Motion *in Limine* No. 2 (Gang Affiliations and Drug Selling).............. 5

III.   Defendants' Motion *in Limine* Nos. 4 (Certain Evidence and Argument Based on the Court's Summary Judgment Ruling) and 7 (Omissions in the Investigation) ........................................................................................................ 8

IV.    Plaintiff's Motion *in Limine* No. 6 (Statements by Anthony Williams)................ 8

V.     Defendants' Motion *in Limine* No. 9 (Police Department Internal Rules and Regulations) ...................................................................................................... 10

CONCLUSION................................................................................................................ 12

## INTRODUCTION

Plaintiff Eddie L. Bolden, by and through his undersigned counsel, respectfully submits this Response to Defendants' Submission of Additional Information and Request for Clarification in Connection with the Parties' Motions in Limine ("Submission," Dkt. 470). Plaintiff requests that the Court deny Defendants' request to reconsider its prior Motion *in Limine* rulings and grant Plaintiff's Motion *in Limine* No. 2, which the Court preliminarily denied. *See* Dkt. 467 at 4 ("Plaintiff's motion *in limine* no. 2 to bar references to Plaintiff's gang affiliation and drug activity is hereby denied *(for now)*.") (emphasis added, internal citations omitted).

## I.    Plaintiff's Motion *in Limine* No. 1 (Prior Criminal History)

This Court ruled inadmissible the manslaughter that Mr. Bolden committed when he was 15 years old. *See* Dkt. 467 at 3-4. The Court also observed that "Defendants do not come forward with evidence that they took Bolden's criminal history into account when making the probable cause determination. If that point proves to be incorrect, the Court might revisit its ruling." *Id.* at 4.

In their Submission, Defendants claim for the first time that that they "did take the Boyd murder into consideration when they were making the probable cause determination." Dkt. 470 at 2. They assert that "the detectives ran a background check and discovered Bolden was a Gangster Disciple and had pleaded guilty to voluntary manslaughter for the Boyd murder." *Id.* But Defendants neither specify who these alleged "detectives" were, nor do they cite to any evidence in the record supporting this alleged discovery. Also missing is any indication of when they allegedly ran a background check on Mr. Bolden or evidence that any of the Defendants took Mr. Bolden's criminal history into account during their probable cause determination. To the contrary, the evidence in the record indicates Defendants did *not* take Mr. Bolden's record into account—if they were even aware of it.

Defendants attach a rap sheet as Exhibit A to their Submission, which does not support their position whatsoever. First, this rap sheet is not in the Investigative File (which is required to hold all pertinent documents). Its absence is particularly noteworthy given the presence of rap sheets for other individuals. Second, this rap sheet is date-stamped with the day after Mr. Bolden's arrest, indicating that it was not obtained until after Defendants had already reached their faulty probable cause decision.

Moreover, there is no testimony from any Defendant that he sought and obtained the rap sheet nor even saw it during the investigation. The only defendant who testified directly about Mr. Bolden's criminal history is Detective Edward Siwek. Defendant Siwek testified that he was completely unaware that Mr. Bolden had a prior conviction until shortly before his deposition— over 20 years after the fact. *See* Siwek Dep. Tr. at 106:18-106:23, attached hereto as Ex. 1. Accordingly, if the other defendants knew of Mr. Bolden's conviction, they concealed it from Siwek. Defendant George Karl, also a detective, says nothing about knowing or considering Mr. Bolden's criminal history. Defendant James Oliver, a Gang Crimes Specialist tasked with assisting the detectives, claims that he had virtually no involvement in the investigation after January 29, 1994, the night of the shootings (although the record shows otherwise), and disclaims any responsibility, decision-making, or even involvement in Mr. Bolden's arrest. *See* Oliver Dep. Tr. at 127:2-129:17, attached hereto as Ex. 2.

That leaves Defendant Angelo Pesavento—the lead detective in the investigation. There is simply no evidence that Pesavento considered or even was aware of Mr. Bolden's criminal history when deciding to arrest him. At his deposition, Pesavento was repeatedly asked about the evidence he considered for probable cause. *See, e.g.*, Pesavento Dep. Tr. at 24:17-27:6 ("Mr. Pesavento, please describe all of the evidence that you relied upon to arrest Eddie Bolden in February, 1994."),

attached hereto as Exhibit 3. Plaintiff's counsel asked this question in several varying iterations, giving Pesavento multiple opportunities to think about and list additional information and pieces of evidence. For example, Pesavento was asked why he decided to conduct a line-up with Mr. Bolden, specifically. *See id.* at 78:3-80:24. Pesavento provided only the following reasons: (1) he was told someone named "Lynier" was in the J&J Fish restaurant talking to Anthony Williams before the shootings (ignoring that these same witnesses also said that Mr. Bolden was still inside J&J when the shooting took place); (2) members of the Gang Crimes unit learned that "Lynier" was in fact Eddie Bolden; and (3) Mr. Bolden fit some aspects of one of Clifford Frazier's early descriptions of his assailant. *See id.* at 78:3-83:12. Throughout his exhaustive and exhausting deposition, Pesavento said ***nothing*** about Mr. Bolden's criminal history.

Perhaps most revealing is Pesavento's express rejection of defense counsel's assertion in its Submission. Defense counsel asserts that Mr. Bolden's motive for committing the crimes was to please Anthony Williams, or at least to act at his direction. Defendants attempt to draw a parallel to the prior manslaughter—according to Defendants, both crimes were committed at the direction of others. *See* Dkt. 470 at 2. That, they posit, makes Mr. Bolden's prior conviction relevant to Pesavento's probable cause determination. Not so. Pesavento testified at his deposition that he did not investigate Mr. Bolden's motive. Ex. 3 at 199:9-201:17. Indeed, Pesavento admitted he did not even investigate whether Mr. Bolden had any involvement in the narcotics deal that was at the center of these crimes. *Id.*

During arguments at the October 4, 2021 Pre-Trial Hearing, defense counsel additionally raised the possibility that Detective Michael Baker, another Area 2 Detective, might have known about Mr. Bolden's criminal history and considered it for probable cause. Once again, the record is to the contrary. Baker testified at his deposition that the sole reason he believed Mr. Bolden

committed the crimes was because Clifford Frazier said so. *See* Baker Dep. Tr. at 138:21-139:5, attached hereto as Ex. 4.

Defense counsel also pointed to a mug shot of Mr. Bolden as evidence that Defendants knew of his prior conviction. Once again, there is no evidentiary support in the record for this proposition. Mug shots are routinely taken at time of arrest, not conviction. Indeed, in response to the Court's questioning on the record, defense counsel conceded that the photo is evidence of an arrest but not a conviction, and certainly provides no information about the crime for which Mr. Bolden may have been convicted. *See* Oct. 4, 2021 Hrg. Tr. at 48:2-20, attached hereto in its entirety as Ex. 5. In addition, knowledge is not equivalent to consideration. Evidence that Defendants had knowledge of Mr. Bolden's prior conviction is insufficient (even if such evidence existed—it does not). Defendants must have ***considered*** Mr. Bolden's criminal history in their probable cause decision-making for it to be relevant. Here, the record is clear that they did not.

The Court must act as a gatekeeper regarding this evidence. Cross-examination would not cure the unfair prejudice flowing from the admission of Mr. Bolden's prior manslaughter conviction. Considering the record, the jury will readily conclude that, if Pesavento claimed that he considered Mr. Bolden's criminal history, he would be lying. But at that point, the damage is done. The jury will have heard that Mr. Bolden voluntarily took another person's life when he was 15 years old, resulting in the extraordinarily unfair prejudice against which the Seventh Circuit has repeatedly warned. *See Gora v. Costa*, 971 F.2d 1325, 1331 (7th Cir. 1992) (cautioning district courts to "be careful to ensure that a civil rights plaintiff's criminal past is not used to prejudice him"); *Geitz v. Lindsey*, 893 F.2d 148, 151 (7th Cir. 1990) ("We are mindful of our duty to ensure that this class of civil rights plaintiffs are not unfairly prejudiced by the use of their criminal pasts against them."); *Llaguno v. Mingey*, 763 F.2d 1560, 1570 (7th Cir. 1985) ("[C]ivil rights actions

4

often pit unsympathetic plaintiffs … against the guardians of a community's safety, yet serve an essential deterrent function.").

## II.    Plaintiff's Motion *in Limine* No. 2 (Gang Affiliations and Drug Selling)

Evidence of Mr. Bolden's gang affiliation before he was released from prison in 1992, and Anthony William's gift of drugs must be excluded for similar reasons. Both subjects have surface appeal. Evidence about the Gangster Disciples is inextricably incorporated into the investigation of these crimes. A substantial narcotics transaction sponsored by Anthony Williams, a high-ranking Gangster Disciple, is at the heart of these shootings. Against this backdrop, Mr. Bolden's gang affiliation and his acceptance from Anthony Williams of drugs to sell may *seem* relevant.

But a closer examination of the record reveals major flaws with Defendants' relevance arguments. First, Mr. Bolden was not a gang member at the time of these offenses. The last time Mr. Bolden had anything to do with the Gangster Disciples as a free (not incarcerated) person was when he was 15 years old. The record is devoid of any evidence that Mr. Bolden engaged in gang activity whatsoever after his release from prison in 1992. Defendants' claim that he associated with gang members and is therefore active in the gang is as naïve as it is disturbing. The Gangster Disciples were the largest monolithic gang in the nation. The south and west sides of Chicago were filled with thousands of people who were, at one time or another, affiliated with the gang. Mere association with those people, even those of rank, is not evidence of criminal activity or even gang membership.

Nor is there evidence that Defendants believed Mr. Bolden was a gang member when they arrested him. Defense counsel is again casual in making their assertions. They claim that "the defendants discovered that Bolden was a Gangster Disciple during the course of their investigation" (Dkt. 470), yet fail to identify who, when, or how. There is, of course, no record citation following this sentence in their Submission, nor any affidavit attached. Assuming

Defendants are once again referencing a rap sheet that was not part of the Investigative File, that document proves only that Mr. Bolden was once a Gangster Disciple—not that he was one at the time of these crimes. Absent proof that he was an active member of the gang in January 1992, Mr. Bolden's prior gang membership is simply irrelevant, even if—or perhaps ***especially*** if—these crimes had gang overtones. The Court's inquiry could stop there.

But Mr. Bolden's dated gang affiliation fails for another reason: as noted above, Defendants did not investigate or consider motive in their investigation. None of them testified that they knew that Mr. Bolden was in a gang. None of them testified that they considered Mr. Bolden's gang membership (or non-gang membership) during their investigation. There is no evidence in the investigative file or elsewhere that demonstrates Defendants' knowledge or consideration of Mr. Bolden's purported gang membership. Defendants point to, and attach to their Submission, Pesavento's grand jury testimony that "the information we received" from a single witness—information they did not investigate—was that this was a Gangster Disciples hit. Importantly, Pesavento does ***not*** testify that Mr. Bolden was a Gangster Disciple then, or at any time.

The only evidence of Mr. Bolden's gang membership dates back to his teenage years, long before 1994. The relevance of that evidence is minimal or non-existent. In comparison, the danger of unfair prejudice to Mr. Bolden is significant. Mr. Bolden will undoubtedly be tarred for his lifelong relationship with the Williams family and Anthony Williams, in particular. At trial, Mr. Bolden will readily admit this association and friendship. But the admission of gang evidence carries an insurmountable stigma. Defendants do not and cannot argue to the contrary. Under Rule 403's balancing test, the unfair prejudice substantially outweighs the at most marginal relevance of Mr. Bolden's gang membership.

Similarly, Anthony Williams's gift to Mr. Bolden of drugs on a handful of occasions has minimal relevance. It proves only Mr. Bolden's friendship with Anthony Williams, an undisputed fact. Nor was Mr. Bolden selling drugs on behalf of Anthony Williams. Rather, on a handful of occasions, Anthony gave Mr. Bolden single ounces of cocaine to sell for his own profit, as a token of their friendship. Such a gift is as irrelevant as if Anthony Williams had simply given Mr. Bolden $500 in cash. But because his method of helping Mr. Bolden was a gift of drugs to sell, this evidence poses a substantial risk of unfair prejudice to Mr. Bolden should the jury inaccurately label him as a drug dealer or view him negatively for accepting this illicit gift.

The lack of probative value is further highlighted by Defendants' argument that Anthony Williams's gift "is probative of Bolden's close criminal relationship with Ant and his membership in/affiliation with the Gangster Disciples as well as his continued membership in/affiliation with the Gangster Disciples" after his release from incarceration in 1992. Dkt. 470 at 3. No explanation is provided for these non-sequiturs. Anthony Williams gifted the drugs because Mr. Bolden was struggling to find a job and did not have a reliable source of income, not because they shared "a close criminal relationship" or due to gang membership. Defendants' theory is, in a word, unsupported.

Defendants additionally claimed that Cynthia Steward, the fiancée of one of the murder victims, Irving Ledell Clayton, will testify at trial that Mr. Bolden conducted drug deals on Anthony Williams's behalf. *Id.* If she so testifies, she would be wrong. But even if Ms. Steward did, in fact, testify to that effect, evidence that Mr. Bolden participated in Anthony Williams's drug business eliminates altogether the relevance of his gifts to Mr. Bolden on a handful of occasions. The Court, therefore, should exclude evidence of Mr. Bolden's gang affiliation and drug selling as irrelevant and unfairly prejudicial.

7

III.   **Defendants' Motion *in Limine* Nos. 4 (Certain Evidence and Argument Based on the Court's Summary Judgment Ruling) and 7 (Omissions in the Investigation)**

During in-court proceedings on October 4, 2021, defense counsel stated that she was requesting clarification regarding these motions because the Court's Order was "silent" as to certain pieces of evidence. *See* Ex. 5 at 28:8-30:20. Not so. The Court considered Defendants' Motion *in Limine* No. 4 and denied it in full. *See* Dkt. 467 at 22. As the Court succinctly stated, "[t]he fact that the evidence in question was not sufficient for a due process claim does not mean that it is *inadmissible* to prove the remaining claims." *Id.* (emphasis in original). The Court's ruling addressed all the evidence raised by Defendants without engaging in the unnecessary exercise of addressing it piece-by-piece. The Court also considered all the "lapses in the investigation" raised by Defendants' Motion *in Limine* No. 7 and deemed such evidence admissible because it is "relevant to whether Defendants acted intentionally or with malice." Dkt. 467 at 24-25. No clarification is required.

IV.   **Plaintiff's Motion *in Limine* No. 6 (Statements by Anthony Williams)**

As the Court recognized, Anthony Williams's request of Mr. Bolden would "be relevant only if Defendants *knew* at the time about the invitation by Williams." Dkt. 467 at 9 (emphasis in original). Defendants' submission of additional information unequivocally provides the answer: "They did not." Dkt. 470 at 4.

Undeterred by this crucial fact, Defendants continue their efforts to tarnish Plaintiff in the eyes of the jury by arguing that Anthony Williams's statements are "probative of which of the Gangster Disciples under Ant's command would be utilized by Ant to commit such a crime." *Id.* This argument—which amounts to nothing more than a *post hoc* theory of Mr. Bolden's involvement in the underlying crimes—completely ignores the Court's holding: "This case is ultimately about the conduct of the ***Defendants***." Dkt. 467 at 9-10 (emphasis added).

8

Defendants' second filing similarly ignores the Court's holding and reasserts the same arguments: that Anthony Williams's request of Mr. Bolden is probative of their "criminal relationship." Dkt. 473 at 3. Mr. Bolden acknowledges (as do Defendants, Dkt. 473 at 3) the Court's holding that his testimony "that he did not know Williams well" or that their relationship "was entirely on the up-and-up" might open the door. Dkt. 467 at 10. But Mr. Bolden will not testify to that effect. Nor will counsel argue that. As Plaintiff's counsel has consistently represented, Mr. Bolden and Anthony Williams were friends, and Mr. Bolden knew Anthony Williams was dealing large quantities of drugs. These undisputed facts do not need to be proven through highly prejudicial testimony.

Defendants' second filing also attempts to tie Anthony Williams's statements to Mr. Bolden's alleged gang affiliation. Dkt. 473 at 2-3. But Defendants have articulated no connection between these two distinct issues. As an initial matter, Defendants vaguely refer to "plaintiff's ties to the Gangster Disciples," in an effort to substitute bald allegations for proof that Mr. Bolden was an active member of the gang in 1994. He was not. *See* Section II of this Response at 5, *supra*. Defendants ask the Court (and intend to ask the jury) to make a logical leap between Mr. Bolden's membership in the Gangster Disciples as a teenager, many years before the events at issue took place, and their wholly unsupported conclusion that "plaintiff was a member of Ant's inner circle of criminal conspirators." Dkt. 473 at 2. As discussed above, the Gangster Disciples had thousands of members or affiliates in the south and west sides of Chicago. That Mr. Bolden— a black man born and raised in the south side of Chicago—may have been among them at one point in his life does not prove that he had a "unique relationship" or "criminal relationship" with a high-ranking member of the gang, such as Anthony Williams. It is not shared gang membership but rather a lifelong friendship that connected Mr. Bolden and Anthony Williams. The low

probative value of Mr. Bolden's prior gang affiliation is far outweighed by the prejudicial effect of inaccurately painting him as a gang member ordered by his superior to engage in a "double-murder plot" (Dkt. 473 at 2).

## V.    Defendants' Motion *in Limine* No. 9 (Police Department Internal Rules and Regulations)

Defendants' request for clarification on Motion *in Limine* No. 9 conflates two separate issues. Their Motion *in Limine* No. 9 addressed violations of Chicago Police Department policies and procedures. The Court rightly held that such policy violations are probative of intent. *See* Dkt. 467 at 26-28. Defendants' violation of CPD policy is an entirely separate issue from whether their conduct deviated from generally accepted law enforcement practices and standards. The latter is an appropriate topic of expert testimony, as the Court has already held. *See* Dkt. 467 at 29 ("[Plaintiff's police practices expert Dr. William] Gaut can testify about whether Defendants complied with generally applicable standards for law enforcement.").

Defendants, however, seize upon the Court's citation to *United States v. Proano*, 912 F.3d 431, 440 (7th Cir. 2019),[1] to argue that evidence of generally accepted law enforcement practices is irrelevant because Defendants were not trained in such practices. *See* Dkt. 470 at 4-5. *Proano* was a criminal case alleging a violation of 18 U.S.C. § 242. 912 F.3d at 434. The Seventh Circuit affirmed the district court's ruling that evidence of Proano's training was probative of his intent— that is, whether he willfully and unreasonably used deadly force. *Id.* at 438-39. In so holding, the court noted that in "only evidence of training that the officer actually received can be relevant to his state of mind." *Id.* at 440.

---

[1] Defendants' acknowledgement that "[t]he Court's ruling [on Motion *in Limine* No. 9] was consistent with *United States v. Proano*" begs the question of why the motion was pursued in the first instance.

10

But nothing about *Proano* changed the well-established law in this Circuit that expert testimony regarding deviations from generally accepted law enforcement standards is probative of intent. *See, e.g.*, *Jimenez v. City of Chicago*, 732 F.3d 710, 721 (7th Cir. 2013) (expert's testimony about "reasonable police practices" was relevant because it could "give a jury a baseline to help evaluate whether a defendant's deviations from those standards were merely negligent or were so severe or persistent as to support an inference of intentional or reckless conduct that violated a plaintiff's constitutional rights."). Moreover, *Proano* was authored by Judge Amy St. Eve who, as a district judge, previously allowed Dr. Gaut to testify about this very subject. *See Sanders v. City of Chicago Heights*, No. 13 C 0221, 2016 WL 1730608, at *9 (N.D. Ill. May 2, 2016) ("Dr. Gaut, however, may testify to the relevant professional standards and identify departures from these standards."); *see also* Dkt. 467 at 29-30 (citing *Sanders*). Put simply, while Defendants' violations of CPD policy are indeed probative of their intent, so too are any deviations from generally accepted police practices—whether or not those practices are memorialized in a CPD policy.

Finally, Defendants' unilateral assertion that they were not trained to follow certain standards or practices does not preclude Plaintiff from offering evidence of those standards or practices. Plaintiff's police practices expert will testify about the manner in which Defendants' conduct departed from generally accepted law enforcement standards, and Defendants may testify that they were not trained to follow such standards. By way of an obvious example, Dr. Gaut will testify that accepted law enforcement standards require detectives investigating a homicide to listen to 911 calls made from the scene. If Pesavento takes the stand and testifies that as a CPD detective he was never trained to listen to 911 calls, the jury is entitled to believe Pesavento and discount Dr. Gaut, or vice versa. Any dispute over the training the Defendants actually received

11

may affect the ***weight*** of Dr. Gaut's testimony—not its admissibility.[2]

## CONCLUSION

For the foregoing reasons, Plaintiff Eddie L. Bolden respectfully asks this Court to deny Defendants' request to reconsider its prior Motion *in Limine* rulings and grant Plaintiff's Motion *in Limine* No. 2.

Dated: October 5, 2021                                Respectfully Submitted,

                                                    */s/ Ronald S. Safer*
                                                    Ronald S. Safer
                                                    Matthew Crowl
                                                    Eli J. Litoff
                                                    Valerie Brummel
                                                    RILEY SAFER HOLMES & CANCILA LLP
                                                    70 W. Madison Street, Suite 2900
                                                    Chicago, Illinois 60602
                                                    (312) 471-8700
                                                    rsafer@rshc-law.com
                                                    mcrowl@rshc-law.com
                                                    elitoff@rshc-law.com
                                                    vbrummel@rshc-law.com

                                                    Sandra L. Musumeci (*pro hac vice*)
                                                    RILEY SAFER HOLMES & CANCILA LLP
                                                    136 Madison Avenue
                                                    6th Floor
                                                    New York, New York 10016
                                                    (212) 660-1000
                                                    smusumeci@rshc-law.com

                                                    *Attorneys for Plaintiff Eddie L. Bolden*

---

[2] Defendants have also included the testimony of Dr. Geoffrey Loftus, Plaintiff's eyewitness perception and memory expert, in their request for clarification. *See* Dkt. 470 at 5. Contrary to Defendants' characterization, Dr. Loftus will not testify "that the detectives should have used" any specific police procedures. *Id.* Rather, he will assist the jury in understanding the science of eyewitness perception and memory and the possible effect of various police procedures.

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 5, 2021, I caused the foregoing document to be electronically filed using the CM/ECF system, which will send notice of this filing to all counsel of record.

*/s/ Valerie Brummel*
Valerie Brummel