## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| EDDIE L. BOLDEN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17-cv-417 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| ANGELO PESAVENTO, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## <u>ORDER</u>

The Court makes the following supplemental rulings on the motions *in limine*, and on the motion to clarify filed by the Defendant Officers (Dckt. No. 470).

On September 22, 2021, this Court ruled on more than two dozen motions *in limine*. *See* 9/22/21 Order (Dckt. No. 466). Along the way, the Court highlighted a few areas where it needed additional information from the parties before it could make a ruling.

The Court discussed those open items at the second session of the final pretrial conference on October 4, 2021. Defendants later filed a motion for clarification about the ruling on a few of the motions *in limine*. *See* Def. Officers' Mtn. to Clarify (Dckt. No. 470). The parties also requested a ruling on a related motion *in limine* regarding FBI documents. *See* Mtn. *in Limine* to Preclude FBI Documents (Dckt. No. 451). The Court heard argument on that motion during the October 4 hearing.

The Court issues this Order to address those remaining issues. This Order amplifies and supplements its prior rulings on the motions *in limine*. The Order also includes a ruling on the admissibility of the FBI documents.

For the sake of clarity, this Order does not contain a ruling on a few additional evidentiary issues that the parties raised at the end of the hearing this afternoon (*e.g.*, the police report about Frazier's gun, and so on). The Court will resolve those issues separately.

Again, trial courts have broad discretion when ruling on evidentiary issues before and during trial. *See Bridgeview Health Care Ctr., Ltd. v. Clark*, 816 F.3d 935, 939 (7th Cir. 2016); *Whitfield v. Int'l Truck & Engine Corp.*, 755 F.3d 438, 447 (7th Cir. 2014). "Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984); *see also Dietz v. Bouldin*, 136 S. Ct. 1885, 1891 (2016) ("The Federal Rules of Civil Procedure set out many of the specific powers of a federal district court," but "they are not all encompassing," for example, they make no provision "for the power of a judge to hear a motion *in limine*.").

"Trial courts issue rulings on motions in limine to guide the parties on what evidence it will admit later in trial," and "[a]s a trial progresses, the presiding judge remains free to alter earlier rulings." *Perry v. City of Chicago*, 733 F.3d 248, 252 (7th Cir. 2013). Regardless of the Court's initial ruling on a motion *in limine*, the Court may adjust its ruling during the course of trial. *See Farfaras v. Citizens Bank & Trust of Chicago*, 433 F.3d 558, 565 (7th Cir. 2006). It is well-established that a motion *in limine* "is an important tool available to the trial judge to ensure the expeditious and evenhanded management of the trial proceedings" and that it "permits the trial judge to eliminate from further consideration evidentiary submissions that clearly ought not be presented to the jury because they clearly would be inadmissible for any purpose." *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997).

This Court makes the following rulings so that the parties can plan ahead and prepare for trial accordingly. The Court previewed many of these rulings during the hearing this afternoon.

**Bolden's Motion *in Limine* #1 – Prior Criminal History**

Plaintiff's motion *in limine* no. 1 to bar references to prior criminal history (Dckt. No. 277) is hereby granted. Plaintiff seeks to exclude any references to his 1985 conviction for voluntary manslaughter for killing Lafere Boyd (when Bolden was 15 years old), which led to his incarceration until 1992. This case is about Bolden's conviction for two murders in 1994.

On September 22, 2021, this Court granted Plaintiff's motion *in limine*. *See* 9/22/21 Order (Dckt. No. 466). Defendants later filed a motion for clarification, arguing that Bolden's prior criminal history is probative of identity and guilt.

As previously explained, Bolden's voluntary manslaughter conviction has little, if any, probative value to the issues at hand. A conviction for voluntary manslaughter does not have much bearing on whether Defendants used a suggestive lineup, or engaged in malicious prosecution, and so on.

Defendants' new arguments do not move the evidentiary needle.

In their motion, Defendant Officers argue that "[d]efendants did take the Boyd murder into consideration when they were making the probable cause determination." *See* Def. Officers' Mtn. to Clarify, at 2 (Dckt. No. 470). They say that "after the FBI informed CPD that 'Lynier' was also known as Eddie L. Bolden, the detectives ran a background check and discovered Bolden was a Gangster Disciple and had pleaded guilty to voluntary manslaughter for the Boyd murder." *Id.*

But those sentences noticeably lacked any citation to the record. The motion did not cite any declaration, or any deposition transcript, or any other evidence that any officer knew about

the manslaughter conviction before the arrest for double homicide. And from the face of the motion itself, it was unclear which "defendants" and "detectives" the motion was referring to.

Simply put, there is no evidence in the record that any specific person knew about Bolden's conviction for voluntary manslaughter, and took that conviction into account before his arrest for murder.

At the hearing on October 4, 2021, defense counsel pointed to Bolden's mugshot from his arrest for voluntary manslaughter (from 1985). They suggest that the officers knew about the voluntary manslaughter conviction because they pulled his mugshot on February 3, 1994, before his arrest for the murders in question on February 26, 1994.

But a mugshot is just a series of pictures. It shows an arrest. It does not show that the person was charged. Let alone convicted. Let alone convicted *of what*.

Looking at Bolden's mugshot, and only Bolden's mugshot, a person would not know that he was convicted of voluntary manslaughter. *See* Def. Proposed Exs. 1, 112 (Dckt. No. 472-7). A mugshot is evidence of an *arrest*. It is not evidence of a conviction for a specific crime.

In their motion, Defendants argue that the prior conviction for manslaughter is relevant because Bolden "put identity at issue in this case." *See* Def. Officers' Mtn. to Clarify, at 2 (Dckt. No. 470). It is not clear to the Court what, exactly, that means. Does that mean the identity of the shooter? That is, is Defendants' theory that they can offer any evidence suggesting that Bolden *was* the shooter, because Bolden argues that he *wasn't* the shooter? Or something else?

Either way, it is difficult to see how the prior conviction could be relevant to proving Bolden's *identity*. He is who he is. Evidence that Bolden committed voluntary manslaughter in 1985 is not admissible to prove that he committed double murder in 1994.

4

The rap sheet does not help Defendants, either. The rap sheet does reveal that Bolden was found guilty of voluntary manslaughter in 1986. *See* Rap Sheet (Dckt. No. 470-1) ("23 Dec. 86. Vol. Mansl (85-CR11149), Find Glty."). But the rap sheet was not in the investigative file. And the rap sheet includes a stamp confirming that it was "REVIEWED BY INSTANT UPDATE UNIT" on February 27, 1994, the day *after* Bolden's arrest.

Information in the rap sheet could not support Bolden's arrest if no one looked at it before his arrest. And here, the Court sees nothing suggesting that any specific officer reviewed the rap sheet and took the conviction into account before arresting Bolden.

The rap sheet does show that Officer Siwek entered the information into the system on February 26, 1994, meaning the day of the arrest. *Id.* ("26 Feb 94, Off. [S]iwek, Dist. 005, Murder"). But Officer Siwek testified at deposition that he was not aware of Bolden's prior conviction for manslaughter at the time. *See* Siwek Dep. at 106:18-23 (Dckt. No. 477-1).

At the hearing on October 4, 2021, defense counsel acknowledged (to her credit) that no one testified at deposition that they considered Bolden's criminal history before making the probable cause determination. *See* 10/4/21 Rough Transcript, at 32. But defense counsel suggested that Officer Pesavento could testify that he took Bolden's criminal history into account when making the probable cause determination.

But Pesavento's own testimony stands in the way. At deposition, Plaintiff's counsel asked a straightforward question: "Mr. Pesavento, please describe *all* of the evidence that you relied upon to arrest Eddie Bolden in February, 1994." *See* Pesavento Dep., at 24:22-24 (Dckt. No. 283-1) (emphasis added).

In the pages that followed, Pesavento described the facts that he took into account before the arrest. But he didn't mention anything about Bolden's criminal history. A conviction for voluntary manslaughter never came up.

Plaintiff's counsel asked follow-up questions to close the loop, asking if there was "any other evidence that we've not already discussed" and "any other links besides Clifford Frazier's ID?" *Id.* at 26:16-17; 27:4-5. But again, Pesavento never mentioned Bolden's conviction for manslaughter. The Court will not allow Pesavento to testify about a potentially critical piece of information when he failed to disclose that information at deposition.

Defendants argue that Pesavento understood the question to ask about evidence associated with the murders only, not "global evidence." That argument is difficult to reconcile with the transcript. Officer Pesavento was asked about "all of the evidence" that he relied upon. "All of the evidence" means *all* of the evidence.

A prior killing isn't likely to slip someone's mind. Taking someone's life is a pretty big piece of evidence to leave out. If Pesavento truly did consider Bolden's conviction for manslaughter, then one would have expected him to remember it. It is unlikely that Pesavento took the prior killing into account at the time, but forgot to mention it at deposition.

The fact that Pesavento didn't mention the manslaughter conviction at deposition suggests that its probative value is low. How important could his prior conviction have been before the arrest – if anyone took it into account at all – if not a single witness mentioned the manslaughter conviction at deposition?

The other officers cannot lay the foundation for the notion that anyone took Bolden's criminal history into account, either. Officer Karl was not asked about Bolden's criminal history

at his deposition, and he is now deceased. Detective Oliver was not involved in this aspect of the case. And again, Officer Siwek testified that he did not rely on Bolden's criminal history.

So there is no evidence that the officers considered Bolden's criminal history before his arrest. So the probative value of his prior conviction is quite low because no one considered it.

On the flipside, there is a high risk of prejudice if the jury learns about the manslaughter conviction. It is difficult to see what evidence of a prior killing would contribute to the trial, except unfair prejudice. Any probative value would be substantially outweighed by the risk of unfair prejudice and confusion. *See* Fed. R. Evid. 403. There is too much risk that the jury might think "once a killer, always a killer."

It is only natural to think that the jury might give outsized importance to evidence of an earlier killing when evaluating evidence of a later killing. *See United States v. Jones*, 455 F.3d 800, 811 (7th Cir. 2006) (Easterbrook, J., concurring) ("Telling juries not to infer from the defendant's criminal record that someone who violated the law once is likely to do so again is like telling jurors to ignore the pink rhinoceros that just sauntered into the courtroom.").

The Court is concerned about potential sandbagging, too. (The Court uses the word "potential" because the Court is not certain when, exactly, defense counsel first disclosed that Pesavento could testify that he took Bolden's criminal history into account before the arrest. This Court first learned about Pesavento's potential testimony on this subject on October 4, 2021. Did Plaintiff's counsel know about it before then?)

Rule 403 requires the Court to guard against "danger[s]," including prejudice that is "unfair." *See* Fed. R. Evid. 403. Based on the record before the Court, it is not clear when, exactly, Defendants notified Plaintiff that Pesavento planned to testify that he knew about Bolden's manslaughter conviction before the arrest. But as far as the Court can tell, it appears to

be a recent revelation, on the eve of trial.  That's a potential bombshell piece of evidence – the type of evidence that should not fall from the sky at the last minute.

Maybe Defendants told Plaintiff long ago about what Pesavento planned to say at trial.  If so, Defendants can clarify that point to the Court.  But as things stand, it appears that Pesavento is now unveiling a new story on a critical point on the eve of trial.  And that can't and won't happen.

Plaintiff's motion *in limine* no. 1 is hereby granted.  Counsel and the witnesses shall not mention Bolden's prior conviction for voluntary manslaughter at trial.

### Bolden's Motion *in Limine* #2 – Gang Affiliations and Drug Selling

Plaintiff's motion *in limine* no. 2 to bar references to Plaintiff's gang affiliation and drug activity (Dckt. No. 335) is hereby granted in part and denied in part.  Plaintiff seeks to exclude evidence that he was, as a teenager, affiliated with the Gangster Disciples, and sold drugs provided by Anthony Williams.

On September 22, 2021, the Court denied Plaintiff's motion in part.  The Court asked to hear more from the parties, particularly on what the officers knew about Bolden's gang affiliation before the arrest.

In their motion, Defendants argue that "detectives discovered that Bolden was a Gangster Disciple during the course of their investigation."  *See* Def. Officers' Mtn. to Clarify, at 2 (Dckt. No. 470).  Additionally, Defendants say that the detectives discovered that Bolden was a close associate of Anthony Williams, a Gangster Disciples governor, and that the Gangster Disciples put a hit out on the victims.  *Id.* at 3.

But again, the motion does not include any citations to anything in the record. As far as the Court can tell, no one testified at deposition that they took Bolden's gang affiliation into account before his arrest.

At the hearing on October 4, 2021, this Court asked whether any witness would testify as follows: "I knew that Eddie Bolden had a history with the Gangster Disciples, and I took that into account as part of the probable cause analysis." Defense counsel (again, to her credit) answered "no." (The Court appreciated the candor.) *See* 10/4/21 Rough Transcript, at 47.

The Court expects to hear evidence that the double murder was a gang-related crime. And as Judge Shah noted, "[i]f the Gangster Disciples had a hit out on the murder victims, then Bolden's gang involvement would have become relevant, since he was a member of the Gangster Disciples." *See* 8/9/19 Order, at 43 (Dckt. No. 276).

But the problem is that the officers didn't know about Bolden's gang involvement before his arrest. So the gang involvement is not relevant to why Bolden was arrested.

And Bolden's gang involvement occurred a decade before the murders. Evidence of a gang affiliation is highly prejudicial, as this Court previously ruled. *See* Fed. R. Evid. 403. There is a lot of prejudice, without much probative value.

Defendants want to use Bolden's 1985 Gangster Disciples affiliation to make the argument that Bolden was still a member in 1994. But they don't have any evidence that he continued to be affiliated with the gang after his release from prison in 1992. Being a member of the Gangster Disciples isn't exactly a resume-builder, but the probative value is slight because there is no evidence that he was a member of the gang during the decade in question.

Defendants also want to use Bolden's gang affiliation to establish his criminal relationship with Anthony Williams. But gang affiliation isn't needed, especially given the

prejudicial effect. There is other, far less prejudicial evidence of the close relationship between Bolden and Williams. Tenuous gang connections do far more harm than good here.

At the hearing on October 4, Defendants argued that the gang affiliation was relevant because it sheds light on "failures in the investigation and rebutting allegations of statement fabrication." *See* 10/4/21 Rough Transcript, at 42–43. That is, the gang affiliation explains why potential witnesses did not talk to the police. Maybe a fear of gangs made some people reluctant to talk to the police. Even so, the jury could hear about the reluctance of witnesses to talk without hearing about *Bolden's* decade-old gang affiliation.

Thus, Bolden's motion related to his gang affiliation is granted.

Turning to Bolden's drug selling, Defendants provided supplemental arguments that the drug selling is probative of Bolden's close criminal relationship with Anthony Williams. Evidence that Plaintiff had a drug-dealing relationship with Williams is *potentially* relevant to whether Plaintiff had something to do with a drug-dealing operation with Williams that went *bad* (and led to two murders).

But ultimately this case is about what the Defendants knew and did, not information that they found out long after the investigation and conviction. The evidence of Bolden's drug selling is relevant and probative only if the officers knew it at the time. So, the evidence is only admissible if Defendants can have someone testify that the officers knew about Bolden's drug selling at the time of the investigation. Otherwise, the evidence is irrelevant and has no probative value.

For the time being, this Court denies the motion *in limine* to the extent that Plaintiff seeks to exclude all evidence that Bolden was involved in selling drugs. Plaintiff argues that Williams (also known as "Ant") gave him drugs to sell from time to time, but it was merely a gift. That is,

Williams gave Bolden small quantities of drugs to sell for his own benefit, without giving a cut of the proceeds to Williams. (So Bolden wasn't selling drugs *for* Williams.)

The Court rejects Plaintiff's argument that his drug selling is irrelevant because Williams gifted him the drugs. There is evidence that the double murder was drug related, and had something to do with Williams. So evidence of Bolden's drug-related relationship with Williams is potentially relevant, and is not unduly prejudicial.

But before referring to Bolden's drug selling during opening statements, or eliciting any testimony at trial, Defendants must make a proffer. Defendants must inform the Court which witness will testify that they (1) knew about Bolden's drug selling during the investigation; and (2) took that information into account when making the probable cause determination.

**Bolden's Motion *in Limine* #6 – Statements by Anthony Williams**

Plaintiff's motion *in limine* no. 6 to exclude testimony about a statement that Anthony Williams made to Bolden (Dckt. No. 299) is hereby granted in part and denied in part. Plaintiff seeks to exclude evidence of a statement that Williams made to Bolden on January 28, 1994, the day before the murders of Derrick Frazier and Ledell Clayton. Williams offered Bolden $20,000 to lure two other men outside a party so that they could be killed. Bolden testified at his deposition about that offer by Williams.

On September 22, 2021, this Court ruled that the statements are not hearsay, and are not necessarily irrelevant. But their relevance depends on what the officers knew at the time.

The evidence is not relevant. Williams apparently invited Bolden to commit a killing the day before the murders in question. That's not relevant to the conduct of the *officers*. The officers did not know about the invitation by Williams, so that invitation played no role in the

arrest of Bolden. Offering evidence of facts that the officers did not know at the time would distract the jury from the issues at hand.

When they arrested Bolden, the officers did not know about the invitation by Williams, so that invitation is not relevant to his arrest. If the officers did not know about the invitation, then the evidence has no probative value when evaluating the investigation.

Defendants admit that the officers did not know about the invitation by Williams at the time of the arrest. They contend that the evidence is relevant because Bolden "put identity at issue." *See* Def. Officers' Mtn. to Clarify, at 4 (Dckt. No. 470). Their argument is that "the offer is probative of which of the Gangster Disciples under Ant's command would be utilized by Ant to commit such a crime." *Id.*

The Court understands "identity" to mean that Bolden "did it." That is, it appears that Defendants are arguing that Bolden committed the murders because Williams invited Bolden to kill someone else the day before.

But the trial is supposed to be about the conduct of the officers during the investigation. The trial is not supposed to be a relitigation of the criminal trial.

The evidence is unfairly prejudicial, too. *See* Fed. R. Evid. 403. If the jury hears that Williams invited Bolden to kill someone the day before, then the jury might conclude that Bolden committed the double murders on the following day. Or, the jury might conclude that Bolden is a bad guy, and that he should lose this case. An offer to commit a murder the day before a double murder insinuates that Bolden was involved in the double murder. It would be hard to un-hear that evidence.

That said, as this Court previously stated, depending on the testimony by Bolden at trial, it is conceivable that he could open the door.

**Bolden's Motion *in Limine* – FBI Documents**

Plaintiff's motion *in limine* to exclude FBI documents and reports as trial exhibits (Dckt. No. 451) is hereby granted in part and denied in part. Plaintiff seeks to exclude 500 pages of redacted FBI documents and reports related to the FBI's investigation into the drug activity of Anthony Williams.

Defendants cannot drop a big stack – 500 pages – of redacted documents on the laps of the jurors. The documents are mainly about the FBI's investigation of Anthony Williams, not the double murder in question here. Most of the documents aren't about Bolden at all. Offering a thick stack of redacted FBI reports would be misleading, confusing, and prejudicial, and would invite the jury to use their imagination.

The FBI files are heavily redacted. Someone blacked out the text with a heavy hand. It is only natural to wonder what is underneath the black ink. Defendants cannot deposit the file *en masse* on the jury. The redactions would invite speculation about what was redacted. It could create the impression that something is being hidden from the jurors. Worse yet, it could invite speculation and create the impression that Bolden "did it" – and the FBI knew it.

The parties highlighted a few of the documents during the hearing. But the examples were problematic. All too often, the documents used the passive voice. It was unclear who provided information to whom.

Based on the records themselves, it is not always obvious where the information came from. The documents are otherwise vague about who was providing what to whom. This Court cannot tell what information, if any, the Chicago Police Department provided to the FBI, and what information the FBI provided to the Chicago Police Department. It's not clear where the information came from.

13

Consider, for example, the documents attached to the response to the motion *in limine*. They illustrate the point.

Exhibit A is a memo dated February 1, 1994, and it memorializes a meeting between the FBI and the Chicago Police Department. *See* Dckt. No. 461-1. It describes an "unknown individual" who left J&J Fish before the shootings.

Where did that information come from? The memo doesn't say. The lack of attribution diminishes its probative value, and raises serious hearsay problems.

Exhibit B is a portion of a memo dated February 11, 1994. *See* Dckt. No. 461-2; *see also* Dckt. No. 451-1, at 4 of 14. The document states that the Chicago Police Department "was provided with positive information as it relates to 'LANIER,' aka Edward L. Bolden."

"Was provided" by whom? Provided by Clifford Frazier, the key witness? Provided by the FBI? Someone else? The passive voice clouds the story. A statement that information was provided to the Chicago Police Department does not necessarily mean that the *FBI* provided information to the Chicago Police Department.

Exhibit C is another FBI document (it's not clear to this Court what it is – Exhibit C is two-page excerpt of some other document, and the Court does not appear to have a complete copy). *See* Dckt. No. 461-3. The document says that "information was also turned over" to the Chicago Police Department. By whom?

Maybe the FBI merely summarized information that the Chicago Police Department received from third parties. Or maybe the FBI summarized information that the FBI itself provided to the Chicago Police Department. Based on the documents themselves, there is no way to tell.

14

The bottom line is that the FBI documents cannot come into evidence without a sponsoring witness. A witness with personal knowledge would need to lay the foundation. And the Court needs to satisfy itself that the document is relevant, is based on personal information, and is not hearsay (or falls within an exception).

At trial, Defendants need to make a proffer on a document-by-document basis. They must tell the Court, outside the presence of the jury, which witnesses will testify to lay the foundation for the FBI documents they wish to use, and what those witnesses will say. They must also explain how the documents overcome the hearsay rule.

Taking a step back, the FBI itself is not on trial. Officers from the Chicago Police Department are on trial. Information that the FBI gathered – but did not share with the police – is not particularly relevant. Knowledge of the Chicago Police Department counts for something, but knowledge of the FBI doesn't count for much (unless the information was shared with the police). There needs to be a link to the officers themselves.

Also, the FBI cannot vouch for statements that the Chicago Police Department obtained outside the presence of the FBI. For example, imagine if Witness A said "X" to the Chicago Police Department, and then the police shared that information with the FBI. The FBI could not testify that "Witness A said 'X,'" or that "Witness A said 'X' to the Chicago Police Department," unless the FBI has personal knowledge of that statement. The FBI can't vouch for what someone else told the Chicago Police Department if the FBI wasn't there.

An FBI memo that memorializes those statements would raise a few problems. It would create a personal knowledge problem. And it could be hearsay if offered for its truth (that is, that Witness A really *did* say "X" to the police).

The Court is concerned that the FBI files might create a misimpression, and add a gloss of credibility to the information that may not be warranted. The documents could suggest that the FBI gave its imprimatur to the evidence in question. That is, it could suggest that the FBI thought that the information was credible and trustworthy because they put it in memo.

But that's not necessarily what the documents say at all. And the FBI *can't* vouch for evidence that the Chicago Police Department received from third parties, especially if the FBI was merely recounting what someone else said. The Chicago Police Department cannot create an echo of credibility, by telling information to the FBI, and having the FBI write it down, and thereby receiving a bump of credibility or an extra layer of trustworthiness.

So the parties must exercise care, make a proffer, and justify the use of each document before mentioning it in open court. In the meantime, the parties must not refer to the FBI documents during opening statements. And counsel cannot elicit testimony about the FBI documents without making a satisfactory proffer to the Court first.

The one exception is the document(s) in the FBI files that came from the Chicago Police Department itself. A document from the Chicago Police Department sheds light on the knowledge and intent of the police at the time.

**Defendants' Request for Clarification Regarding Defendant Officers' Motion *in Limine* Nos. 7, 10, and 13**

Defendants "seek clarification that any testimony regarding standards, policies and guidelines or any deviation from them is limited to standards, policies and guidelines in which the officers were trained." *See* Defs.' Mtn. to Clarify, at 5 (Dckt. No. 470). The Court previously ruled that "Plaintiff can offer evidence of the Chicago Police Department's ('CPD') policies to the extent that they shed light on Defendants' intent." *See* 9/22/21 Order, at 27 (Dckt. No. 467). Specifically, the Court noted that "[t]he relevance of police regulations to a showing

16

of an officer's intent is simple: *if an officer has been trained according to certain policies*, but he deviated from those policies, 'the fact that he broke from his training could make it more likely that he acted willfully.'" *Id.* (emphasis added) (quoting *United States v. Proano*, 912 F.3d 431, 439 (7th Cir. 2019)).

Defendants seek clarification about Defendants' motions *in limine* nos. 7, 10, and 13. Specifically, Defendants seek to bar Plaintiff's experts, Gaut and Loftus, from testifying about "*suggested* practices and models from agencies outside of CPD (*e.g.*, the International Association of Chiefs of Police)" and "social science research that the detectives had no knowledge of, were not trained in and are beyond CPD policies and guidelines." *Id.* (emphasis in original). Plaintiff counters that the Seventh Circuit has long allowed expert testimony on reasonable police practices to prove intent. Plaintiff relies on case law about how to determine reasonableness under the Constitution, not intent under state law. *See* Pl.'s Resp. to Defs.' Mtn. to Clarify, at 11 (Dckt. No. 477).

The Court clarifies its prior ruling as follows. Testimony about the policies, practices, and guidelines is relevant to the extent that the officers in question received training about them, or were otherwise on notice about the policies, practices, and guidelines. *See Proano*, 912 F.3d at 440 (noting that "only evidence of training that the officer actually received can be relevant to his state of mind"). Evidence about police practices, policies, and guidelines is relevant if they applied to the officers in question and they knew about them.

Evidence about police standards in other parts of the country is not relevant if those standards did not apply to the officers in question. Maybe police departments in other parts of the country followed different protocols than the Chicago Police Department. But that evidence is not probative if the officers followed the procedures of the Chicago Police Department.

So, Plaintiff cannot offer evidence simply to show that the Chicago Police Department had bad policies, practices, and guidelines. But Plaintiff can offer evidence that officers in question failed to follow the policies, practices, and guidelines of the Chicago Police Department. That departure could give rise to an inference of intent. That is, a knowing departure from applicable standards from the Chicago Police Department could support a finding that the officers acted with an improper intent.

To sum up: Plaintiff may offer evidence about the policies, practices, and guidelines of the Chicago Police Department at the time in question. Plaintiff also may offer evidence that the officers in question did not follow those policies, practices, and guidelines. Defendants then may offer evidence of their own on those subjects, meaning what policies, practices, and guidelines were in place, and whether they knew about them. But Plaintiff cannot offer evidence that the Chicago Police Department had inadequate policies, practices, and guidelines. The issue at trial is the intent of the officers during the investigation, not the adequacy of the Chicago Police Department's policies, practices, and guidelines.

### Defendants' Request for Clarification Regarding Defendant Officers' Motions *In Limine* Nos. 4 and 7

Defendants also seek clarification on evidence that they broadly described as failures in the investigation. The Court understands that body of evidence to include "any allegedly destroyed, fabricated or withheld evidence," namely: (1) 911 recordings; (2) Clifford Frazier's guns; (3) the inventory report; (4) interview notes; (5) items seized in the search of Cynthia Steward's home (such as papers, the safe deposit box, and notes with names and numbers); (6) the control card showing which detectives signed out the investigative file; (7) Clifford Frazier's role as an informant; (8) the Willis report; (9) Cynthia Steward's statements about a

gang hit; (10) the Pesavento-Karl supplemental report; and (11) the alleged fabrication of the line-up.  *See* Defs.' Mtn. *in Limine* No. 4, at 2–15 (Dckt. No. 311).

In motion *in limine* no. 4, Defendants focus on the fact that Judge Shah ruled that the evidence is insufficient to support a due process claim.  But as this Court previously noted, a ruling that evidence is insufficient for one claim "does not mean that it is *inadmissible* to prove the remaining claims."  *See* 9/22/21 Order, at 22 (Dckt. No. 467).  Judge Shah did not rule that that evidence was categorically out of bounds for trial.  It may not be enough to support a *due process* claim, but that insufficiency does not mean that the evidence is inadmissible for *another* claim.

Defendants also argue that the evidence is overly prejudicial because it might suggest to the jury that the alleged destruction, suppression, or fabrication of this evidence caused Plaintiff to have an unfair trial.  *See* Defs.' Mtn. *in Limine* No. 4, at 14–15 (Dckt. No. 311).  To that extent, Defendants are correct.  Plaintiff cannot present all of this evidence at trial for the purpose of showing that he received an unfair trial.  That's a due process claim, and Judge Shah already ruled that that evidence did not support a due process claim.

But again, the evidence might be admissible to support *other* claims.  So Plaintiff needs to make a showing, and link the evidence to the elements of one of the remaining claims.

To that end, Plaintiff plans to argue that the officers violated the policies, practices, and guidelines of the Chicago Police Department when they engaged in the acts in question.  *See* Pl.'s Resp. to Defs.' Mtn. *in Limine* No. 4 (Dckt. No. 334).  That is, they allegedly failed to follow protocol when they failed to review the 911 recordings, failed to preserve and test Frazier's guns, and so on.

As explained before, a failure to follow the policies, practices, and guidelines of the Chicago Police Department is probative of intent. So, the evidence is potentially relevant. That is, it is relevant if Plaintiff can show a failure to follow protocols.

Defendants recently filed a supplement statement clarifying their argument. They assert that "any reference to destroyed or withheld evidence would contradict Judge Shah's factual findings and conclusions of law." *See* Defs.' Supp. Filing in Support of Defs.' Mtn. *in Limine* Nos. 4 and 7, at 1 (Dckt. No. 179). According to Defendants, "Judge Shah found, based on the same evidence Plaintiff intends to introduce at trial, that Defendant Officers could not be held responsible for 1) the destruction of 911 tapes; 2) the destruction of Clifford's gun; 3) the disappearance of an investigative control card; or [4]] the failure to disclose documents recovered in a search of Clayton's home." *Id.*

But this statement contorts Judge Shah's findings. Judge Shah found that the evidence did not suggest that the officers acted with unconstitutional bad faith or that the destroyed evidence was not apparently exculpatory. *See* Mem. Opin. and Order, at 22–29 (Dckt. No. 276). That narrow finding led Judge Shah to hold that Defendants did not commit a *due process* violation.

The focus was the due process claim. Judge Shah addressed whether the evidence supported a finding of bad faith under the Constitution. Judge Shah did not address whether the evidence was relevant to the remaining state law claims.

For instance, Judge Shah found that the evidence presented at summary judgment did not support the claim that Defendants knowingly destroyed the 911 recordings. *Id.* at 22–23. But Judge Shah did find that the evidence suggested that Defendants sat idly by after being told by Bolden and his attorney about the 911 recordings. *Id.* Sitting idly by might be probative of the

20

Defendants' state of mind (which is relevant for the state law claims), even if it doesn't directly prove intentionally unconstitutional conduct. And that probative value outweighs any prejudicial effect.

Defendants' concern about prejudice boils down to a worry that Plaintiff will suggest that Bolden's trial was unfair, and thus resurrect a deceased due process claim. But Plaintiff can offer the evidence for a limited purpose, that is, to shed light on their intent for purposes of the state law claims only. With that explanation, the jury should not be confused at all.

Relatedly, Defendants seek to exclude "evidence that Oliver asked Clifford Frazier to help him access a safe deposit box to recover cash; that Oliver told Clifford he would 'F[**]k him up' for telling other officers about Oliver's request; that officers did not seize $100,000 in drug money allegedly stored at decedents mother's house; that Oliver's interview with Anthony Williams was inadequate; that Oliver took keys from Cynthia Steward, which may have had a safe deposit key on them, and never returned them; that officers searched Cynthia Stewards home, took papers and wrote down information; that officers were searching for bank records and the location of a safe deposit box; that Oliver threatened to take Steward's kids away if she didn't cooperate; that Oliver was being investigated by the Internal Affairs Division (IAD); and that an IAD officer asked Clifford to participate in a sting operation against Oliver." *See* Defs.' Mtn. *in Limine* No. 7, at 7 (Dckt. No. 314).

Defendants argue that the evidence is irrelevant or, if relevant, then it's only being offered for propensity. *See* Defs.' Mtn. *in Limine* No. 7, at 3–6 (Dckt. No. 314). They also argue that the evidence is overly prejudicial. *Id.* at 6.

First, Defendants argue that Oliver was conducting a separate narcotics investigation when all these events took place, so "[n]one of this evidence is relevant to the homicide

investigation." *Id.* at 4. Plaintiff counters that the events all took place during the investigation of the homicide, and nothing in the record supports otherwise. *See* Pl.'s Resp. to Defs.' Mtn. *in Limine* No. 7, at 13–14 (Dckt. No. 330). Defendants did not cite any evidence suggesting that the investigations were different. So, to start, the evidence is relevant.

Second, Defendants argue that Plaintiff is only using the evidence for propensity. *See* Defs.' Mtn. *in Limine* No. 7, at 5–6 (Dckt. No. 314). Plaintiff argues that none of the evidence is inadmissible propensity evidence because Oliver's bad acts were not prior bad acts – they occurred in furtherance of the events at issue in this case. *See* Pl.'s Resp. to Defs.' Mtn. *in Limine* No. 7, at 13–14 (Dckt. No. 330). But as Defendants note in their reply, the Seventh Circuit no longer permits evidence to evade Rule 404(b) in this manner. *See United States v. Gorman*, 613 F.3d 711, 717 (7th Cir. 2010). Regardless, the evidence is admissible for purposes of intent, not propensity.

Last, Defendants argue that Oliver had a limited role in the homicide investigation, and that this inflammatory evidence is overly prejudicial. *See* Pl.'s Resp. to Defs.' Mtn. *in Limine* No. 7, at 14 (Dckt. No. 330). But again, Defendants have not provided any reason to separate Oliver's actions with Clifford Frazier and Cynthia Steward from his involvement in the Bolden case. The evidence might be prejudicial to him, but all evidence prejudices someone. Rule 403 only keeps out the evidence that provides substantially more prejudicial value than probative value. That's not the case, here.

The evidence about Oliver's conduct referenced in Defendants' motion *in limine* no. 7 is admissible, with some important caveats. Plaintiff can offer the evidence to suggest that Oliver violated any CPD policies (suggesting intent or malice) or that his threats to Clifford made the lineup unduly suggestive. The evidence is admissible to show intent, but not propensity.

22

Date:    October 6, 2021

Steven C. Seeger
United States District Judge