UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EDDIE L. BOLDEN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17-cv-417 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| ANGELO PESAVENTO, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

# ORDER

The Court issues the following ruling on the powerpoint slides that Plaintiff's counsel hopes to use during opening statements tomorrow morning. The Court issues this Order in expedited fashion in the interest of saving time tomorrow, and to allow the parties to plan accordingly.

By way of background, this Court presided over a final pretrial conference on September 22, 2021. This Court *sua sponte* raised the issue of using demonstratives during the opening statements. This Court directed the parties to exchange demonstratives that they intend to use during openings, and do so the day before trial. That instruction was consistent with this Court's Standing Order, which requires parties to provide copies of demonstratives for opening statements by 5:00 p.m. on the night before trial. The Court gave a simple instruction: "Don't sandbag each other."

Plaintiff then sandbagged the Defendants. Moments before opening statements were about to begin, defense counsel caught a glimpse of a powerpoint that Plaintiff's counsel apparently intended to use during opening statements. When defense counsel asked what the story was, Plaintiff's counsel finally divulged that he planned to use a 61-page powerpoint.

That revelation was news to defense counsel, and news to this Court, too. Plaintiff's counsel took the position that the slides were not demonstratives. That argument fails the straight-face test. What else could they possibly be?

The slides are clearly demonstratives. And this Court directed counsel to exchange them the day before trial. In fact, Plaintiff's counsel emailed a few pages from the slide deck – a few maps – a few days before trial. But Plaintiff's counsel did not share the entire powerpoint presentation until defense counsel saw it out of the corner of their eye, moments before openings were to begin. The fact that Plaintiff's counsel shared *something* suggests that Plaintiff's counsel should have known to share *everything*.

Especially after this Court expressly directed them to do so.

If Plaintiff's counsel intended to withhold anything, Plaintiff's counsel should have been upfront about it, and told defense counsel that they were preparing a powerpoint but did not think that they needed to share it. At that point, either party could have requested clarification from this Court. But laying in the weeds until the last minute is the opposite of what this Court ordered.

To make matters worse, a number of the slides were argumentative. An opening statement is not an opening *argument*. It is supposed to be a preview of the evidence – a sneak peek of what the jury will hear in the coming days. The line between a statement and an argument is not always clear, and trial counsel undoubtedly spend lots of time figuring out how close they can get to the line.

But here, a number of the slides that the Court saw were over the line. The good news is that, at this point, Plaintiff's slides for closing arguments are ready to go.

This Court ordered the parties not to sandbag each other, and in response, Plaintiff's counsel dropped 61 pages of sandbags on the Defendants.

So, this Court had little choice but to postpone the opening statements to give defense counsel a chance to review the slides. Plaintiff wasted everyone's time – the Court's time, defense counsel's time, and the jury's time – by failing to exchange the demonstratives in advance. Plaintiff wasted time by filling sandbags. So, all of the wasted time (and perhaps more) will count against Plaintiff when this Court tallies the amount of time spent by each side.

As a fix, this Court deferred opening statements until Tuesday, October 12. The Court directed Plaintiff to remove the argumentative slides, and share the slide deck with defense counsel by 5:00 p.m. on Saturday, October 9. This Court also directed the parties to meet and confer, and file a statement about any objections by 5:00 p.m. today. The good news is that the parties appear to have resolved some of the issues that defense counsel raised on Friday, October 8 about the argumentative nature of the slides.

This afternoon, this Court received a joint filing from the parties. *See* Dckt. No. 500. The parties have a dispute about a number of the slides, covering six topics. Defendants believe that a number of the final slides are argumentative or otherwise objectionable. The Court has reviewed the slides in question, and makes the following rulings.

***The Certificate of Innocence (Slide 4)*** – Defendants object to a slide about the Certificate of Innocence. But this Court already ruled that the Certificate of Innocence can come into evidence. Defendants argue that it "distorts the fact that the order is a form order that was entered without the presentation of any evidence." Defendants can make that point in their opening.

There is nothing particularly problematic with this slide. It quotes language from the Certificate of Innocence, which is coming into evidence. If defense counsel want to quote another part of the Certificate of Innocence, they can do so. Alternatively, defense counsel can give a preview to the jury of what the evidence will be about the Certificate of Innocence. Objection overruled.

*The FBI Sketch (Slides 27, 28, 50)* – Defendants object to slides showing the FBI sketch of the alleged assailant. *See* 9/22/21 Order, at 17 (Dckt. No. 467) (addressing the FBI sketch). But Plaintiff points out that the sketch is part of the investigative file, which is coming into evidence. So, Plaintiff can show the sketch to the jury because there is a reasonable basis to believe that the sketch will come into evidence.

If Defendants take the position that they did not see the sketch during the investigation, then defense counsel can say so during opening. But that's not a reason to prevent Plaintiff's counsel from showing the sketch to the jury. Objection overruled.

*The Testing of Frazier's Gun (Slide 36)* – Defendants object to a slide that shows the types of testing that the officers could have performed, but did not perform, on Frazier's gun. This Court previously allowed Plaintiff to present evidence that the officers did not test the gun. This slide simply provides more details about the types of testing.

If Plaintiff can establish during trial that the officers could have performed each of these types of tests, but did not, then Plaintiff can use this slide. And in particular, the focus should be on what *these officers* could have done, not what the *Chicago Police Department writ large* could have done. So, Plaintiff would need to lay a foundation, and show a link between these types of tests and the Defendants (*i.e.,* these officers could have requested or performed a DNA test, and so on). Testing is not probative if these officers could not have done it, or requested it.

4

With that understanding, the objection is overruled.

***The Lineup (Slides 44-45)*** – Defendants object to the slides that show the lineup. The slides include the height and weight of each person in the lineup. Clifford Frazier (the witness who did the identification) would not have seen that information at the time. Plaintiff responds that this information came from Joint Exhibit 12.

As a general matter, a party could add information from two different sources, and put the information together in one slide. So, the fact that the slide contains composite information is not dispositive.

Still, the Court can see Defendants' point, to some extent. The Court can understand how a juror could get a mental picture of what Frazier saw, and get the wrong picture of what took place. So, Plaintiff must remove the references to the heights and weights of the people in the lineup. That's a cleaner, less confusing presentation of what actually took place.

But Plaintiff can orally tell the jurors what the evidence will be about the height and weight of the people in the lineup. But with an important caveat. If Plaintiff's counsel tells the jury the height and weight of the people in the lineup, then Plaintiff's counsel also must tell the jury that Frazier did not have that information at the time.

So, Plaintiff's counsel should give accurate information about what Frazier saw at the time. If Plaintiff's counsel gives the jury additional information (*i.e.,* the size of the people in the lineup), then Plaintiff's counsel must disclose that Frazier did not have that information.

Overall, the picture says enough. The jury can see different shapes and sizes.

The objection is granted in part, and denied in part.

*The Racially Charged Language (Slide 47)* – Defendants object to this slide, which contains the "N-word." According to the slide, Officer Pesavento used that word to describe Bolden.

Defendants object that the slide contains a "very inflammatory" piece of evidence that is "strongly disputed." Defendants also argue that the slide "will improperly inject a racial component [in]to the case in the opening statements."

But Plaintiff apparently plans to testify about what Officer Pesavento allegedly said to him. So there is an evidentiary foundation. The fact that a piece of evidence is "strongly disputed" is not a reason to keep it out during opening statements. Defense counsel can tell the jury that the Defendants strongly dispute it.

The slide does not improperly inject race into the case. It sounds like race is *already* part of the case. That is, Bolden will testify about the racial language that an officer used. That language is probative of malice, so it is fair game. There is nothing unfair about giving the jury a preview during the openings. (But Plaintiff's counsel should not get argumentative, either. A preview of the evidence is fine. An appeal to emotions is not. Plaintiff's counsel should introduce the upcoming evidence, and move on.)

*The Family Photos (Slide 55, 56, 57)* – Defense counsel objects to the slides that Plaintiff plans to use about his family history. The slides include all of the many family events that Bolden missed while incarcerated.

The Court attempted to count all of the family pictures, but quickly lost count. Some of the pictures appear to be in the slides more than once. So there is an issue with the cumulative use of family photos. Also, the repeated use of family photos, with smiling faces of loved ones, can't help but pull at the heartstrings. That's why they could be effective for closing.

Plaintiff's counsel can use the last slide, or one of the other slides. The jury will see the faces, and will get it. But four slides – with countless pictures, some of which seem to appear more than once – is too much for an opening. The slides lay it on too thick.

That said, Plaintiff's counsel can orally tell the jury about what Bolden missed during his incarceration – weddings, funerals, graduations, etc. But counsel should not dwell on it too long. The jury will get it – anyone who is incarcerated for two decades will miss a lot of significant family events. But going on and on will inevitably appeal to the emotions. Save it for closing.

The objection is sustained.

*   *   *

Taking a step back, one possible remedy for Plaintiff's non-disclosure of the powerpoint presentation is to prevent Plaintiff's counsel from using the slide deck altogether. If defense counsel had not caught glimpse of the slide deck, and Plaintiff's counsel had unveiled it for the first time in front of the jury, this Court likely would have ordered him to take it down, and banned him from using any slides that were not disclosed.

But defense counsel did see it, and that attentiveness gave this Court an opportunity to right the ship before it sank. Defense counsel has now had three days to review and think about Plaintiff's opening slides, which is more time than they would have had if Plaintiff's counsel had played it straight. And this Court will reduce Plaintiff's trial time, so Plaintiff is bearing the cost of the lost time.

But this Court will not prevent Plaintiff's counsel from using the slides altogether. That would penalize *Plaintiff Bolden* for the non-disclosure by his attorney. A better option is to reduce Plaintiff's time, and allow Plaintiff to use the non-argumentative slides.

With this ruling in mind, the Court looks forward to smooth sailing during opening statements tomorrow morning.

Date:  October 11, 2021

Steven C. Seeger
United States District Judge