FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EDDIE L. BOLDEN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17 C 00417 |
| | ) | |
| vs. | ) | Honorable Steven C. Seeger |
| | ) | |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' SUPPLEMENTAL FILING IN OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* NO. 1**

Plaintiff Eddie L. Bolden, through his undersigned counsel, submits the following Response to Defendants' Supplemental Filing in Opposition to Plaintiff's Motion *in Limine* No. 1.

Defendants are taking a third bite at the apple, filing yet another brief regarding Plaintiff's prior conviction, this time at 9:37pm on the eve of opening statements. *See* Dkt. 502. Every time the Court rejects Defendants' arguments, Defendants go back to the well looking for new theories and evidence that have never been part of this case. Each explanation is nothing more than a *post hoc* rationalization. There is nothing new that could not have been raised **over two years ago**, when Plaintiff filed his Motion *in Limine* No. 1 and Defendants responded. *See* Dkts. 277, 278 (filed in September 2019). Defendants' arguments should be rejected, again, for numerous reasons.

I. **Defendants' Filing Confirms They Have Unveiled a Brand New Theory on the Eve of Trial.**

Defendants' newest filing focuses entirely on the purported relevance of Mr. Bolden's prior conviction, asserting that Defendants considered it as part of their probable cause determination. By doing so, Defendants completely ignore the central premise of the Court's holding. The Court carefully reviewed Defendants' deposition testimony and concluded that Defendants were

"unveiling a new story on a critical point on the eve of trial." *See* Dkt. 489 at 8. The Court held "that can't and won't happen." *Id.* Moreover, the Court explicitly told Defendants exactly what it wanted to hear if they submitted a supplemental filing: "Maybe Defendants told Plaintiff long ago about what Pesavento planned to say at trial. If so, Defendants can clarify the point to the Court." *Id.* Defendants declined the Court's invitation. Their silence on this issue confirms what was already clear from the deposition testimony. Defendants are asserting a brand new argument two years too late. That should be the end of the analysis.

## II. Defendants' Relevance Arguments Fail.

But if the Court wishes to analyze Defendants' arguments further, Defendants still fail to offer any evidence that a particular Defendant Officer took Mr. Bolden's conviction into account before his arrest. *See* Dkt. 489 at 4 ("Simply put, there is no evidence in the record that any specific person knew about Bolden's conviction for voluntary manslaughter, and took that conviction into account before his arrest for murder."). Defendants repeat their reliance on the expected testimony of Pesavento. But as discussed above, the Court has already held that Pesavento is barred from asserting this brand new position and Defendants filing confirms it is indeed a brand new position. Defendants also point to the expected testimony of non-defendant Michael Baker. As an initial matter, Baker is a non-defendant, so the information he may have relied upon is irrelevant. But Baker's testimony is foreclosed for the same reason as Pesavento's—Baker was closed out at his deposition by twice saying that the sole basis for probable cause in his mind was Clifford Frazier's identification. *See* Baker Dep. at 138:21-139:9, 152:4-7, attached hereto as Exhibit A.

Moreover, Pesavento's and Baker's expected testimony appears not to be based on recollection, but rather on surmise and speculation. *See* Dkt. 502 at 2 ("Detectives Baker and Pesavento will testify that Bolden's mugshot showed an 'IR' number which indicated that he was convicted of a serious crime and they **would have ordered** his rap sheet based on that

information.") (emphasis added). This proposed conjecture by Pesavento and Baker is also incorrect, because as the Court has correctly noted, the issuance of an IR number signifies an arrest, and nothing more. By relying on the IR number, Defendants ask the Court to make several inferential leaps: (1) there was an IR number on the mug shot photo, so Mr. Bolden must have been arrested; (2) because Mr. Bolden was so young, he must have been arrested for something serious to get an IR number; (3) if Mr. Bolden was arrested for something serious when he was young, he must have been convicted; and (4) if Defendants thought that Bolden was arrested and/or convicted for a serious felony, they would have run his rap sheet to see what it was. This is not a sufficient basis for the admission of unfairly prejudicial testimony at the eleventh hour.

Nor do Defendants' exhibits attached to their filing support the proposition that a specific Defendant Officer considered Mr. Bolden's conviction in the probable cause analysis. Defendants' Exhibit A is an In-Custody report that was prepared the day *after* Mr. Bolden's arrest. The Court has already held that such documents do not support Defendants' position. *See* Dkt. 489 at 5. Defendants' Exhibit B consists of two documents from the Cook County State's Attorney's files—not the CPD files. The first document is a rap sheet that was already presented to and rejected by the Court because it is dated *after* Mr. Bolden's arrest. *See* Dkt. 489 at 5. The second page is a rap sheet date stamped February 11, 1994, before Mr. Bolden's arrest, that says that it was "issued on inquiry by name check only." *See* Dkt. 502-2. But there is no indication *who* made the inquiry. There is no evidence to suggest that it was the Defendants because this document was not in the Investigative File. In fact, this document is not in **any Chicago Police Department file whatsoever**—the sole copy was produced by the State's Attorney's Office. *See* Dkt. 502-2 (bearing CCSAO bates label). If this rap sheet was really a critical part of the probable cause determination,

3

one would expect the Defendants' Investigative File—or at least *some* CPD file—to contain a copy.

In an attempt to salvage their argument, Defendants grossly mischaracterize the "collective knowledge doctrine" to suggest that the mere existence of a rap sheet on February 11, 1994 demonstrates that Defendants had "constructive knowledge" of the prior conviction. *See* Dkt. 502 at 3. The Seventh Circuit has consistently held that the collective knowledge doctrine merely excuses the individual officer from the personal, firsthand knowledge requirement of probable cause if the officer is provided information from another officer who *does* have firsthand knowledge. The collective knowledge doctrine does not mean everything the Chicago Police Department knows, each officer knows. It is not a hive mind. Rather, the pertinent fact must be communicated to the arresting officer by someone with personal knowledge. *See, e.g.*, *Bruce v. Guernsey*, 777 F.3d 872, 876 (7th Cir. 2015) ("[W]e bear in mind the collective knowledge doctrine, under which a law enforcement officer may rely on information *conveyed to him* by another law enforcement officer or the agency for which he works. [For example,] one police department could rely on another's 'wanted' flyer to support a stop.") (emphasis added); *Reher v. Vivo*, 656 F.3d 772, 777 (7th Cir. 2011) ("Under the collective knowledge doctrine, the knowledge of one police officer is imputed to other offices *when they are in communication regarding a suspect*. But the district court found that the doctrine did not apply in this case because *the extent of the communication between the officers was not clear*, and we will not disturb that conclusion.") (emphasis added); *Johnston v. DeVries*, 2021 WL 3930298, at *7 (N.D. Ill. Sept. 2, 2021) ("[T]he collective knowledge doctrine allows police officers to make an arrest not just on their own *first-hand knowledge*, but with reasonable reliance on *facts derived from other*

4

*officers*.") (emphasis added). Defendants have established no such link here and their cited case law is, therefore, inapplicable.[1]

### III. Defendants Fail to Address Unfair Prejudice Under Rule 403, Which Was Central to the Court's Holding.

Defendants' filing is noticeably silent on the grave, unfair prejudice that would result from the admission of Mr. Bolden's prior conviction. As the Court has already recognized, "Bolden's voluntary manslaughter conviction has little, if any, probative value to the issues at hand. A conviction for voluntary manslaughter does not have much bearing on whether Defendants used a suggestive lineup, or engaged in malicious prosecution, and so on." Dkt. 489 at 3. Indeed, the probative value is so low that, according to Defendants, every single witness simply forgot to mention it in their depositions. *See id.* at 6 ("The fact that Pesavento didn't mention the manslaughter conviction at deposition suggests that its probative value is low. How important could his prior conviction have been before the arrest – if anyone took it into account at all – if not a single witness mentioned the manslaughter conviction at deposition?"). On the other side of Rule 403's scale, the danger of unfair prejudice is extremely high. The danger of unfair prejudice was addressed by the prior briefing and was thoroughly discussed by the Court in its most recent ruling on this topic. *Id.* at 7-8. Plaintiff will not rehash these arguments here, but suffice it to say the jury would not be able "to ignore the pink rhinoceros that just sauntered into the courtroom." *Id.* at 7 (quoting *United States v. Jones*, 455 F.3d 800, 811 (7th Cir. 2006) (Easterbrook, J., concurring)).

---

[1] In particular, Defendants' citation to *Torry v. City of Chicago*, 932 F.3d 579, 586 (7th Cir. 2019) is unavailing. Defendants assert that *Torry* stands for the proposition that "evidence that an officer actually reviewed the [police report at issue] is not required." Dkt. 503. What *Torry* actually holds is that "[w]hen officers are ***in communication with each other while working together at a scene***, their knowledge may be mutually imputed even when there is no express testimony that the specific or detailed information creating the justification for a stop was conveyed." *Torry*, 932, F.3d at 586 (emphasis added). There is no assertion that Defendants happened upon Mr. Bolden's rap sheet while working the crime scenes in this case—Defendants assert the rap sheet was obtained two weeks later.

5

Moreover, the danger of unfair prejudice would be exacerbated if the Court were to reverse its ruling on this critical issue now, after Plaintiff's counsel did not address it with the jury in opening statements.

Dated: October 12, 2021                     Respectfully Submitted,

/s/ _Eli J. Litoff_
Ronald S. Safer
Matthew Crowl
Eli J. Litoff
Valerie Brummel
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison Street, Suite 2900
Chicago, Illinois 60602
(312) 471-8700

rsafer@rshc-law.com
mcrowl@rshc-law.com
elitoff@rshc-law.com
vbrummel@rshc-law.com

Sandra L. Musumeci (*pro hac vice*)
RILEY SAFER HOLMES & CANCILA LLP
136 Madison Avenue
6th Floor
New York, New York 10016
(212) 660-1000
smusumeci@rshc-law.com

*Attorneys for Plaintiff Eddie L. Bolden*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 12, 2021, I caused the foregoing document to be electronically filed using the CM/ECF system, which will send notice of this filing to all counsel of record.

                                                                                              */s/ Eli J. Litoff*
                                                                                              Eli J. Litoff