**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| EDDIE L. BOLDEN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17 C 00417 |
| | ) | |
| vs. | ) | Honorable Steven C. Seeger |
| | ) | |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MOTION TO CLARIFY THE COURT'S RULING ON HIS MOTION
_IN LIMINE_ TO EXCLUDE FBI DOCUMENTS AND REPORTS AS TRIAL EXHIBITS**

Plaintiff Eddie L. Bolden, by his undersigned counsel, respectfully submits this motion to clarify the Court's ruling on his motion _in limine_ to exclude FBI documents as trial exhibits (Dkt. 489). Defendants have recently stated their intent to use the testimony of FBI Agent Dale Tipton—a case agent for Operation ANT-BAN, the FBI's investigation of Anthony Williams—despite the hearsay and lack-of-foundation problems with the FBI documents already identified by the Court in its prior ruling. Agent Tipton's status as a former case agent resolves neither the hearsay nor foundational problems. This Court ordered that before Defendants are permitted to move for the admission of any FBI document or read aloud from any FBI document at trial, Defendants had to establish its admissibility. The record is much clearer now, and Defendants can neither (1) explain how that specific FBI document satisfies the Federal Rule of Evidence against hearsay, nor (2) provide adequate foundation for the documents. Plaintiff respectfully requests, consistent with the Court's prior Order, that Special Agent Tipton be questioned outside the presence of the jury as to the extent of his personal knowledge of the specific documents, and that Defendants be required to explain how each specific FBI document they intend to use comports with the rule against hearsay.

## BACKGROUND

On September 7, 2021, Plaintiff moved the Court to exclude 500 pages of redacted FBI documents and reports related to the FBI's investigation into the drug activity of Anthony Williams. Granting Plaintiff's motion in part, the Court noted that "[o]ffering a thick stack of redacted FBI reports would be misleading, confusing, and prejudicial, and would invite the jury to use their imagination[,]" and that "[t]he redactions would invite speculation about what was redacted … and create the impression that Bolden 'did it'—and the FBI knew it." Dkt. 489 at 14. The Court accordingly held that "the FBI documents cannot come into evidence without a sponsoring witness. *A witness with personal knowledge* would need to lay the foundation. And the Court needs to satisfy itself that the document is *relevant*, is based on *personal information*, and is *not hearsay* (or falls within an exception)." *Id.* at 15 (emphasis added). The Court specifically instructed that Defendants "need to make a proffer on a *document-by-document basis*. They must tell the Court, outside the presence of the jury, which witnesses will testify to lay the foundation for the FBI documents they wish to use, and what those witnesses will say. They must also explain how the document *overcome the hearsay rule*." *Id.* (emphasis added).

Colloquy between the parties makes clear that defense counsel does not believe there were any foundation issues with respect to the FBI Documents because, upon information and belief, Special Agent Tipton would testify at trial that, as the case agent, he either read or reviewed every Operation ANT-BAN report. That statement echoed prior representations about Special Agent Tipton's testimony made by defense counsel at the October 4, 2021 Pre-Trial Conference. *See* Oct. 4, 2021 Hrg. Tr. at 69:15-20, attached hereto as Ex. 1 ("So—and by the way, Dale Tipton will testify he was the case agent, that he either authored or reviewed every document, every FBI document that was produced."). Because the Parties were unable to reach agreement on this issue,

Plaintiff seeks clarification from the Court in advance of Special Agent Tipton's appearance at trial.

**ARGUMENT**

## I.       The FBI Documents Are Inadmissible Hearsay.

Plaintiff begins by restating his objection that the FBI documents are hearsay, and no testimony can cure the hearsay issue. The FBI documents in question reflect second and third hand information: classic hearsay. The information within the FBI documents originated from an unknown, anonymous source (or sources) and are thus hearsay—perhaps even double or triple hearsay. *See, e.g.*, Defendants' Trial Ex. 85, attached hereto as Ex. 2 ("***Having been advised*** by [redacted] as to the identity of persons closely related to ANTHONY Q. WILLIAMS [redacted] … 'LANIER' ***was mentioned*** as a close associate of ANTHONY WILLIAMS … On January 14, 1994, [redacted] contacted G/S [redacted] telephonically and ***provided the following information*** …"). The passive voice means that there is no telling how far removed the writer of this document (who, again, is unknown) is from the person who has the alleged information.

The information also goes beyond "mere factual information"—instead, "the FBI reports contain statements made by others and then related to the FBI Special Agent." *Vasquez v. Hernandez*, 1994 WL 201092, at *1 (N.D. Ill. May 18, 1994). It is well-established that when FBI reports of this type are offered as evidence, "hearsay complications arise," and the documents should not be admitted. *Id.* (refusing to admit third-party hearsay statements contained in FBI report); *see also Engel v. Buchan*, 2015 WL 13877893, at *2 (N.D. Ill. July 31, 2015) (excluding FBI report as "inadmissible hearsay"); *Brickhouse v. Redstone*, 2014 WL 1453650, at *4 (S.D. Ill. Apr. 14, 2014) (excluding FBI investigation report as "impermissible hearsay"); *see also United States v. Mackey*, 117 F.3d 24, 28 (1st Cir. 1997) (excluding FBI report summarizing witness interview because "hearsay statements by third persons such as [the witness] are not

3

admissible under [a hearsay] exception merely because they appear within public records"); *Miller v. Field*, 35 F.3d 1088, 1091 (6th Cir. 1994) ("While a court may presume that a preparer of a report, under a duty to relate information, will perform the task required and formulate justified conclusions and reasonable opinions based on evidence actually observed by the preparer, no such presumption arises when the preparer relies on ***potentially untrustworthy hearsay evidence from another individual under no duty to provide unbiased information***." ) (emphasis added).

Nor can Defendants overcome the hearsay rule by offering the FBI documents for their effect on the reader, rather than truth. Defendants Pesavento and Oliver have already testified.[1] Neither claimed to have read any of the FBI documents. Neither spoke to any FBI agents (much less Special Agent Tipton). Neither spoke to the confidential source who provided the information to the FBI. Moreover, both defendants Pesavento and Oliver have already testified to their knowledge of the anonymous tip and how it affected them. Thus, the FBI documents are plain hearsay offered for the truth of the matters asserted in the documents and not for any impact on

---

[1] Defense counsel claimed in opening statement that "an actual tip came into the Chicago Police Department. They learned this from a police officer who was working at the FBI. And that tip was that Eddie Bolden was the possible shooter. The police documented in this -- documented this tip in reports, and you will see it during this trial. The first paragraph: 'In conjunction with Gang Crimes Specialist Oliver and Anderson, the reporting detectives learned that the possible offender was a person by the name of Eddie Lanier [*sic*] Bolden.' So this is a police report that was filled out by these detectives in 1994." Oct. 12, 2021 Trial Tr. at 634:15-635:1, attached hereto as Ex. 3.

However, when questioned about this police report, Defendant Pesavento revealed that the quoted paragraph actually "does not refer to any specific event or interview or information[.]" Oct. 14, 2021 Trial Tr. at 1270:20-1271:1, attached hereto as Ex. 4. He further revealed that he did not know "when Officer Oliver talked to somebody at the FBI … who he talked to at the FBI … the source of the information that the person had from the FBI … [nor] where anybody got any information." *Id.* at 1271:7-17; *see also id.* at 1272:18-25 (Pesavento testifying that he does not know "who provided Mr. Oliver with [the FBI information]" nor how "that person learned whatever they learned"). Defendant Oliver testified that he did not know whether the tip came from the FBI at all. Oct. 18, 2021 Trial Tr. at 1928:3-25, attached hereto as Ex. 5. The tip may have "been a random caller" to the police; Oliver did not know. *Id.* at 1928:16-22. The tip was much less than advertised in Defendants' opening statement.

Defendants' state of mind. That purpose is expressly forbidden by the Federal Rule of Evidence against hearsay.

**II.    Defendants Must Establish that Special Agent Tipton Has Personal Knowledge Sufficient to Lay a Foundation for Each FBI Document They Intend to Use—His Former Case-Agent Status Is Not Enough.**

Federal Rule of Evidence 602 provides that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has ***personal knowledge*** of the matter." Fed. R. Evid. 602 (emphasis added). Defendants assert that Special Agent Tipton need not have personal knowledge of the contents of the Operation ANT-BAN reports because, as the case agent, he either authored or reviewed the various reports. That is not enough. *See Shea v. Fairman*, 1991 WL 160332, at *2 (N.D. Ill. Aug. 19, 1991) (holding that the mere fact that official report was "made in the course of regular … activities would not alone make it admissible.").

In *United States v. Meza-Avila*, for example, the court refused to admit a report describing the defendant's role in the drug distribution conspiracy due to "lack of foundation as to how the probation officer and/or the case agents came to know the matters asserted." 44 F. App'x 131, 136-37 (9th Cir. 2002). Although there was no dispute regarding the authenticity of the report or the FBI case agents' reports (which the authoring officer relied on for the relevant information), the Court nonetheless found it problematic that "[the report] never identifies ***the specific facts the agents relied upon when reaching their conclusions*** about [the defendant's] status and role in the conspiracy … we do not know whether the agents or some unknown declarant ever possessed ***personal knowledge*** of the relevant events." *Id.* (emphasis added). The mere fact that the authoring officer had reviewed the FBI case agents' reports when drafting the report was simply not enough to establish personal knowledge for foundation purposes.

Similarly, in *United States v. Le*, the appellate court reversed the district court's admission of a laboratory report into evidence based on "only the testimony of the case agent," over

5

appellant's counsel's objection of "improper foundation." 272 F.3d 530, 531-32 (8th Cir. 2001).

The court of appeals held that the admission had been "a clear abuse of discretion" because "the

case agent was not trained or qualified as a chemist, nor was he an employee of the laboratory or

the custodians of its records. ***He had no knowledge*** of the laboratory's analytical methods and

knew nothing of its operational processes." *Id.* Despite the fact that the case agent was a "sworn

law enforcement officer," the court concluded that he lacked the personal knowledge necessary to

establish a foundation for the laboratory report. *Id.*

The facts presented in *United States v. Muhammad*, a Seventh Circuit opinion, present a

sharp contrast with the facts in *Meza-Avila* and *Le*, discussed above. In *Muhammad*, the defendant

challenged the case agent's ability to testify regarding her interview of the defendant. 120 F.3d

688, 698-99 (7th Cir. 1997). Objecting to lack of foundation and personal knowledge, the

defendant argued that the case agent did not author the report (the other interviewing agent did).

The district court overruled his objection. Affirming, the Seventh Circuit recognized that proper

foundation existed because the case agent was ***actually present for the interview***. Moreover, after

the other interviewing agent wrote the report at issue, the case agent "reviewed that report for

accuracy, made corrections to it, and signed it. In essence, the report was that of both [the authoring

agent] and [the case agent]." *Id.* (emphasis added) Finally, the case agent testified that "although

she did not have independent recollection of all the questions and answers from Muhammad's

interview, she did have such recollection at the time the report was prepared and that the report

accurately reflected Muhammad's statements at the time." *Id.* The Seventh Circuit therefore agreed

with the district court that the case agent's testimony "stemmed from her ***personal knowledge and***

***not from the FBI [report]***." *Id.* (emphasis added).

6

*Meza-Avila* and *Le*—both cases where the case agent in question lacked personal knowledge sufficient to establish foundation for the reports at issue—bore similar facts as the case at hand. There is no dispute as to the authenticity of the FBI documents. Plaintiff's objection is that Special Agent Tipton—although he is a sworn law enforcement agent—does not have personal knowledge of the source of the contents of the FBI documents. If Defendants are permitted to use Special Agent Tipton's trial testimony as they wish, he would be improperly testifying ***from the FBI report—not from personal knowledge***—an important distinction from *Muhammad*.

Taking Defendants' Trial Exhibit 85 as an example, Special Agent Tipton does not have personal knowledge that "On January 29, 1994, at 8:07 PM, a double homicide occurred inside a parked vehicle which was located at 6546 South Minerva, Chicago, Illinois." *See* Ex. 3. Similarly, Special Agent Tipton does not have personal knowledge of the identities of the victims, Derrick Frazier and Ledell Clayton, and their ages, addresses, or manners of death. Most tellingly, Special Agent Tipton does not have personal knowledge of the communications between the FBI and the Chicago Police Department (if any took place), the very proposition for which these documents are offered. That Special Agent Tipton reviewed these documents or even wrote some (about which he has no present memory) is no foundation. No one with personal knowledge will testify about these documents and they should not be admitted.

### III. The Probative Value of These Documents Is Outweighed by the Unfair Prejudice.

Plaintiff will not repeat here the arguments made in his initial motion and reply on this topic. *See* Dkts. 451, 463. But the Court has now heard the bulk of the evidence. The Court now knows that this tip, if it happened, had no impact on the investigation or Defendants. It was never recorded and, as noted above (*see supra* at 4 n.1), defense counsel's assertion to the contrary has since been disproved by Defendant Pesavento's testimony. The tip was too remote to be of any value.

7

What is really at work here is yet another effort to persuade the jury to give undeserved credit to Defendants based on the *FBI's* investigation of *Anthony Williams*, and to tar Mr. Bolden for that association. That is unfairly prejudicial. When he testified, Mr. Bolden did nothing to minimize his relationship with Anthony Williams. But there is no evidence Mr. Bolden was part of Anthony Williams' drug operation. If there was, Defendants surely would have brought it forth. In place of any such evidence, they seek to confuse and mislead the jury with documents that have more redactions than actual words, which contain the occasional mention of Mr. Bolden, and let the jury guess at the rest (hoping they ultimately draw a sinister conclusion). This Court has worked hard to have this case heard on the merits. Putting these kinds of documents before the jury, claiming that they somehow substantiate a tip that is already in full evidence, would not be fair.

## CONCLUSION

For the foregoing reasons, Plaintiff Eddie L. Bolden respectfully asks this Court to preclude Defendants from introducing FBI documents and reports through the testimony of Special Agent Dale Tipton, without first establishing that (1) the specific FBI document at issue does not run afoul of the Federal Rule of Evidence against hearsay, and (2) Special Agent Tipton has personal knowledge of the contents of that specific FBI document or report, to be demonstrated through *voir dire* conducted outside the presence of the jury.

Dated: October 24, 2021

Respectfully Submitted,

/s/ Ronald S. Safer
Ronald S. Safer
Matthew Crowl
Eli J. Litoff
Valerie Brummel
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison Street, Suite 2900
Chicago, Illinois 60602
(312) 471-8700

8

rsafer@rshc-law.com
mcrowl@rshc-law.com
elitoff@rshc-law.com
vbrummel@rshc-law.com

Sandra L. Musumeci (*pro hac vice*)
RILEY SAFER HOLMES & CANCILA LLP
136 Madison Avenue
6th Floor
New York, New York 10016
(212) 660-1000
smusumeci@rshc-law.com

*Attorneys for Plaintiff Eddie L. Bolden*