FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EDDIE L. BOLDEN, ) | |
| ) | |
| Plaintiff, ) | Case No. 17 C 00417 |
| ) | |
| vs. ) | Honorable Steven C. Seeger |
| ) | |
| ANGELO PESAVENTO, et al., ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
TO ALLOW CYNTHIA STEWARD TO TESTIFY REGARDING IRVING CLAYTON'S
STATEMENTS OF PLAINTIFF'S INVOLVEMENT IN THE NARCOTICS
OPERATIONS OF ANTHONY WILLIAMS**

Plaintiff Eddie L. Bolden respectfully submits the following Response to Defendants' Motion to Allow Cynthia Steward to Testify Regarding Irving Clayton's Statements of Plaintiff's Involvement in the Narcotics Operations of Anthony Williams (Dkt. 571).

Defendants' attempt to get a second bite at the apple with Cynthia Steward should be denied. This Court appropriately barred the hearsay testimony Defendants seek to elicit before Ms. Steward took the stand. Now that Ms. Steward has testified, it is even more clear that the testimony is inadmissible, and she should not be recalled. Defendants' motion should be denied because: (1) they would be calling Ms. Steward solely to impeach her, which is impermissible; (2) there are no grounds for the Court to reverse its well-founded ruling that the statements at issue are hearsay; (3) Mr. Bolden did not "open the door" to the testimony; and (4) fairness dictates additional trial time should not be spent recalling Ms. Steward.

**I.     Defendants Seek to Call Ms. Steward Solely to Impeach Her.**

Defendants cite Ms. Steward's deposition testimony to support their position that she heard Irving Clayton discuss Mr. Bolden's involvement in drug transactions with Anthony Williams. *See*

Dkt. 571 (citing Steward Dep. at 60:9-61:15). But Ms. Steward already testified *extensively* in this trial that she had never heard the name Eddie Bolden or Lynier prior to Irving Clayton's murder on January 29, 1994. *See* Trial Testimony of Cynthia Steward, attached hereto as Exhibit A, at 1966:7-12, 2067:20-2068:5, 2072:22-2073:12, 2076:1-2077:25. Accordingly, Defendants would be re-calling Ms. Steward solely to impeach her, *i.e.* to suggest that she in fact *had* heard the name Eddie Bolden prior to January 29, 1994, and that she had heard it in the context of drug deals with Anthony Williams. Calling a witness solely to impeach her is impermissible. *See, e.g.*, *United States v. Giles*, 246 F.3d 966, 974 (7th Cir. 2001) ("[I]t's clear that a party may not call a witness for the sole purpose of impeaching him."); *United States v. Khellil*, 678 F. Supp. 2d 713, 736 (N.D. Ill. 2009) (same).

A sampling of Ms. Steward's extensive testimony (including defense counsel's use of her deposition testimony for impeachment) is included below:

> Q. And you mentioned that you gave a whole series of names. Did you ever give the name Eddie Bolden or Lanier?
> A. No.
> Q. Did you even know an Eddie Bolden or Lanier at that time?
> A. No.

Ex. A, at 1966:7-12.

> Q. Now, prior to January of 1994, you had heard the name of Eddie Bolden or Eddie Lynier Bolden, correct?
> A. What day you saying? I'm sorry. You know, I can't hear you that well.
> Q. Yeah. Prior to January 1994, you had heard the name Eddie Bolden or Eddie Lynier Bolden, correct?
> A. No.
> Q. That's not correct?
> A. Before 1994, no.
> Q. Before -- prior to January of 1994?
> A. No.

*Id.* at 2067:20-2068:5.

> Q. Ms. Steward, were you asked these questions, and did you give these

>   answers -- I'll read it to you. "Okay. So there's no doubt in your mind that you had heard the name Eddie Bolden or Eddie Lynier Bolden prior to January 1994?" There is an objection made by Mr. Bolden's counsel. "QUESTION: You can answer. "ANSWER: Yes, I had heard the name prior. "QUESTION: And was that in connection with Ant? "ANSWER: Yes." Were you asked those questions, and did you give those answers on September 6, 2018?
> A. I was asked those questions.
> Q. And you gave those answers, right?
> A. As far as prior to 2000 and -- I mean, 1994, I didn't -- I never had heard of Eddie Bolden.

*Id.* at 2072:22-2073:12.

> Q. Well, you actually heard Irving mention the name Bolden by name, right?
> A. I've heard Irving say the word "Ed." I never heard Edward Bolden.
> Q. Well -- well, isn't it a fact that you heard Irving mention Bolden by name? Isn't that true?
> A. I don't recall, no.
> Q. During this same deposition that you took on September 6, 2018 -- Line -- strike that -- Page 59, Line 1 to 7. Ms. Steward, were you asked these questions and answers. And I'll just read it to you. "Okay. But based on conversations you had with Irving, you had heard him mention Bolden by name?" And then there's an objection by Mr. Bolden's counsel. Another question comes in: "Is that correct? "ANSWER: Yes." Were you asked those questions, and did you give those -- that answer on September 6, 2018?
> A. Yes.
> Q. So Irving had mentioned Mr. Bolden to you, right?
> A. Irving has always mentioned someone named Ed. He never mentioned the whole name, Edward Bolden. I didn't hear the name Edward Bolden until after January 29th.
> Q. But your sworn testimony that I just read to you, you said yes, that Irving did mention the name Bolden, right?
> A. Yes.
> Q. Okay. So there's no doubt in your mind, Irving knew who Eddie Bolden was, right?
> A. He had to have known.
> Q. Of course he did, because he would speak about him to you, right?
> A. No.
> Q. Okay. And Derrick knew Eddie Bolden, too, right?
> A. I wouldn't know.
> Q. Okay. You would agree that Mr. Bolden was no stranger to your murdered boyfriend, right?
> A. I don't know if they knew each other, if that's the question.
> Q. So even though Irving had mentioned his name to you, you don't know if

3

     they knew each other?
A. Irving had mentioned Ed. I never heard the whole name Edward Bolden come from Irving.
Q. Okay. But your sworn testimony, you agree that he mentioned the name Bolden, right?
A. Yes

*Id.* at 2076:1 - 2077:25.

On this record, it is clear that re-calling Ms. Steward serves no purpose other than to further impeach her testimony that she had not heard Mr. Bolden's name prior to January 29, 1994. Re-calling her for that purpose is prohibited by well-established Seventh Circuit law.

### II. There is no Reason to Reconsider the Court's Hearsay Ruling.

The statements that Defendants seek to introduce are undoubtedly offered for their truth. Defendants make two arguments on the hearsay issue. First, Defendants re-raise the argument that Irving Clayton's alleged statements are statements against interest under Federal Rule of Evidence 804(b)(3). *See* Dkt. 571 at 3-4. The Court was correct in rejecting this argument and there is no reason to reconsider the ruling. Defendants are not simply seeking to introduce a statement that Clayton was involved in drug transactions, they are seeking to introduce Clayton's statement that *Mr. Bolden* was involved in drug transactions. That is not a statement against the speaker's interest, it is a statement against Mr. Bolden's interest. As the Court recognized:

> That doesn't sound like a statement against interest. That sounds like a statement against Bolden.
>
> In other words, it would be one thing if the decedent said, "I'm the world's worst person, and I sell a lot of drugs." That's a statement against interest. But if Irving says something bad against Bolden, that's not a statement against interest. It's a statement against Bolden. As I understand a statement against interest, it's got to be against the speaker's interest.

*See* Ex. A at 1946:1-10. Defendants have offered no grounds to reconsider this ruling.

Defendants' second argument is that the statement is being offered to show Irving Clayton's state of mind. *See* Dkt. 517 at 5-6. This is a new spin on what Defendants previously

4

argued—that the statements are relevant to *Steward's* state of mind—which the Court rejected because Ms. Steward's state of mind is not at issue. *See* Ex. A at 1948:2-1949:22. In rejecting Defendants' state of mind argument, the Court stated: "[S]ometimes statements are not hearsay because it was enough that it was said. I don't think that's what this is. I think it is, as I understand it, being offered to prove that Eddie Bolden really did deal drugs." *Id.* at 1949:1-4. The Court's assessment was correct, and nothing has changed. The alleged statements that Mr. Bolden was involved in prior drug sales with the victims and Anthony Williams are only being offered for their truth. The statements should be excluded.[1]

### III. Mr. Bolden Did Not Open the Door to Steward's Testimony.

After the Court's ruling, defense counsel asked the Court to keep Ms. Steward under subpoena in case Mr. Bolden opens the door to further testimony. *See* Ex. A, at 2043:14-25. Defendants now argue that Mr. Bolden opened the door to Steward's testimony because he "repeatedly denied that he knew the murder victims" and "repeatedly denied having any involvement in the narcotics operation" of Anthony Williams. *See* Dkt. 571 at 2. This argument is specious. As an initial matter, it was clear before the Court's ruling that Mr. Bolden would testify he did not know the murder victims. That position, if not clear before, was fully disclosed on the record prior to the Court's ruling on Steward's testimony. *See* Ex. A, at 1946:21-19:47:2. So this was not a surprise. But more importantly, all of the testimony cited by Defendants occurred *during Mr. Bolden's cross-examination*. *See* Dkt. 571-1 at 13-22. Defense counsel cannot ask whether

---

[1] Defendants also seem to argue that the statements should be allowed in because the Court allowed Ms. Steward to testify to the hearsay statements of Clifford Frazier. *See* Dkt. 517 n.1. Mr. Frazier's statements, of course, were offered for their falsity—not their truth. He was not actually in Wisconsin at the time of the murders as he told Ms. Steward.

5

Mr. Bolden knew the victims or knew about Anthony Williams' drug operation and then claim he opened the door by answering their questions.

### IV. Fairness Dictates That Additional Trial Time Should Not Be Spent Re-Calling Ms. Steward.

As things stand, this Court's time allocations indicate that Defendants have utilized more trial time than Plaintiff, despite the additional hours assessed against Plaintiff for opening statements. The defense spent over 90 minutes cross-examining Ms. Steward after a 53-minute direct exam. *See* Dkts. 555, 561. Time in this trial is running out, and Plaintiff anticipates that he will need to call one to two witnesses in his rebuttal case. Fairness dictates that Plaintiff should not be precluded from calling these rebuttal witnesses, or forced to shorten his closing argument, because Defendants spent additional time re-calling Ms. Steward.

Dated: October 25, 2021

Respectfully Submitted,

/s/ Eli J. Litoff
Ronald S. Safer
Matthew Crowl
Eli J. Litoff
Valerie Brummel
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison Street, Suite 2900
Chicago, Illinois 60602
(312) 471-8700
rsafer@rshc-law.com
mcrowl@rshc-law.com
elitoff@rshc-law.com
vbrummel@rshc-law.com

Sandra L. Musumeci (*pro hac vice*)
RILEY SAFER HOLMES & CANCILA LLP
136 Madison Avenue
6th Floor
New York, New York 10016
(212) 660-1000
smusumeci@rshc-law.com

*Attorneys for Plaintiff Eddie L. Bolden*

6

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 25, 2021, I caused a copy of the foregoing document to be filed using the Court's CM/ECF electronic filing system, which will automatically send a notice of this filing to all counsel of record.

<em>/s/ Eli J. Litoff</em>