**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| EDDIE L. BOLDEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 17 C 00417 |
| vs. | ) | |
| | ) | Honorable Steven Seeger |
| | ) | |
| CITY OF CHICAGO, et. al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT OFFICERS' MEMORANDUM IN SUPPORT**
**OF THEIR MOTION FOR MOTION FOR DIRECTED VERDICT**

## TABLE OF CONTENTS

Legal Standard ...................................................................................................................1

Plaintiff's Claims ...............................................................................................................1

I. Bolden Has Failed to Prove He Suffered a Pre-Trial Detention Without Probable Cause ...............1

II. Bolden Has Failed to Prove A Fourteenth Amendment Claim Due Process Claim ........................5

III. Defendants have Qualified Immunity from Both Federal Claims ........................................8

    A. Qualified Immunity from Fourteenth Amendment Claim ....................................8

    B. Qualified Immunity from Fourth Amendment Claim ...........................................10

IV. Bolden Has Failed to Prove His State Law Malicious Prosecution Claim ....................................11

    A.  No Reasonable Jury could find that Defendants Commenced
        and Continued Bolden's Prosecution ...................................................................12

    B.  There was probable cause to prosecute Bolden as a matter of law. ....................16

    C.  No Reasonable Jury could find that Defendant Officers acted with Malice ....................20

CONCLUSION ...................................................................................................................21

# TABLE OF AUTHORITIES

## U.S. Supreme Court

*Neil v. Biggers*, 409 U.S. 188, 199-200 (1972)................................................................3

*White v. Pauly*, 137 S. Ct. 548, 552 (2017)....................................................................8

City & Cty. of S.F. v. Sheehan, 575 U.S. 600, 613, 135 S. Ct. 1765, 1775-76 (2015)............8, 9

*District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) ..............................8, 10, 11

*Foster v. California*, 394 U.S. 440, 442 (1969). ..............................................................8

*Manson v. Brathwaite*, 432 U.S. 98, 114 (1977). ...............................................9, 10, 17

*Simmons v. United States*, 390 U.S. 377, 384, 88 S. Ct. 967, 971, 19 L. Ed. 2d 1247 (1968)............9

*Stovall v. Denno*, 388 U.S. 293, 302, 87 S. Ct. 1967, 1972 (1967) ............................9, 10

*Mullenix v. Luna*, 577 U.S. 7, 12, 136 S. Ct. 305, 308 (2015). ....................................10

*Anderson v. Creighton*, 483 U.S. 635, 641(1987)........................................................10

*Reichle v. Howards*, 566 U.S. 658, 666 (2012). ..........................................................11

## U.S. Circuit Courts

*Hall v. Forest River, Inc.*, 536 F.3d 615 (7th Cir.2008).................................................1

*Phillips v. Allen*, 668 F.3d 912 (7th Cir. 2012). ................................................*passim*

*United States v. Tadros*, 310 F.3d 999 (7th Cir. 2002) ...................................................3

*Harris v. Kuba*, 486 F.3d 1010 (7th Cir. 2007).............................................................3

*Coleman v. City of Peoria,* 925 F.3d 336 (7th Cir. 2019) ....................................*passim*

*Newsome v. McCabe*, 256 F.3d 747, 753 (7th Cir. 2001) ("Newsome I") ..................10

*Newsome v. McCabe*, 319 F.3d 301, 304 (7th Cir. 2003) ("Newsome II").....................7

*Alexander v. City of S. Bend*, 433 F.3d 550, 555 (7th Cir. 2006) ........................*passim*

*Brewster v. Bd. Of Educ.*, 149 F.3d 971, 977 (9th Cir. 1998). .......................................9

*Abbott v. Sangamon Cty.*, 705 F.3d 706, 723 (7th Cir. 2013)....................................11

*Hensley v. Carey*, 818 F.2d 646, 648 (7th Cir. 1987) .................................................10

*Colbert v. City of Chicago*, 851 F.3d 649, 655 (7th Cir. 2017) ..............................12, 15

*Holland v. City of Chicago*, 643 F. 3d 248, 254 (7th Cir. 2011)..............................11, 21

*Snodderly v. R.U.F.F. Drug Enforcement Task Force*, 239 F.3d 892, 902 (7th Cir. 2001). ............12

*Martin v. Marinez*, 934 F.3d 594, 599 (7th Cir. 2019).................................................18

*Swearnigen-El v. Cook Cty. Sheriff's Dep't*, 602 F.3d 852, 863 (7th Cir. 2010)............16

*Askew v. City of Chi.*, 440 F.3d 894, 895 (7th Cir. 2006) ...........................................18

**U.S. District Courts**

*City of Tahlequah v. Bond*, No. 20-1668, 2021 U.S. LEXIS 5310, at *4 (Oct. 18, 2021) ............................ 8

**Illinois Supreme Court**

*People v. Bolden*, 197 Ill. 2d 166 (2001) ...................................................................................................... 5

*Joiner v. Benton Cmty. Bank*, 82 Ill. 2d 40, 45, 44 Ill. Dec. 260, 262, 411 N.E.2d 229, 231 ..................... 11

*Beaman v. Freesmeyer*, 2019 IL 122654 ................................................................................................ *passim*

**Illinois Appellate Courts**

*People v. Sherman*, 2020 IL App. (1st) 172162 at ¶28 ............................................................................... 17

*Evans v. City of Chi.*, 2021 IL App (1st) 200412-U, ¶ 61 (unpublished) .................................................. 12

*People v. Turner, 240 Ill. App. 3d 340, 357 (1992)* ................................................................................ *18*

*Mack v. First Sec. Bank*, 158 Ill. App. 3d 497, 501-02 (1987) .................................................................. 20

*Samoylovich v. City of Chi.*, 2019 IL App (1st) 172962-U, ¶ 57.(unpublished) ......................................... 17

*Denton v. Allstate Ins. Co.*, 152 Ill. App. 3d 578, 588 (1986) .................................................................. 20

*Turner v. Chicago*, 91 Ill. App. 3d 931, 937 (1980). ........................................................................... 18, 20

*White v. Fitzpatrick*, 2021 IL App (5th) 200136-U, ¶70 ......................................................................... 20

**Statutes and Rules**

745 ILCS 10/2-208...............................................................................................................................................

Federal Rule of Civil Procedure 50(a) ......................................................................................................... 1

Defendants James Oliver, Angelo Pesavento, Edward J. Siwek as Special Representative for the Estate of Edward Siwek and the Estate of George Karl ("Defendant Officers"), by and through their attorneys, move this court, pursuant to Federal Rule of Civil Procedure 50(a), to enter judgment in their favor on all counts. In support thereof, Defendant Officers state:

## Legal Standard

Federal Rule of Civil Procedure 50(a) states: "If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may: resolve the issue against the party; and grant a motion for judgement as a matter of law, against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." The question the Court faces is "whether the evidence as a whole, when combined with all reasonable inferences permissibly drawn from the evidence is sufficient to find in favor of the plaintiff." *Hall v. Forest River, Inc.*, 536 F.3d 615, 619 (7th Cir.2008).

## Plaintiff's Claims

Plaintiff seeks damages for his allegedly unlawful detention and prosecution alleging federal claims for pre-trial detention without probable cause (Fourth Amendment) and the use of unduly suggestive procedures (Fourteenth Amendment) and state law claims for malicious prosecution and intentional infliction of emotional distress. Plaintiff also brings derivative failure to intervene and federal and state conspiracy claims. Plaintiff has failed to produce evidence that satisfies the burden of proving by a preponderance of the evidence each element of his *prima facie* case for these claims.

## I. Bolden Has Failed to Prove He Suffered a Pre-Trial Detention Without Probable Cause.[1]

Plaintiff's Fourth Amendment claim is premised on his allegations that Defendants (i) ignored

---

[1] Although Plaintiff did not allege a Fourth Amendment claim for pre-trial detention without probable cause, in ruling on Defendants' motion to dismiss, Judge Shah limited Count V, titled "Federal Malicious Prosecution," to allegations related to the Fourth Amendment, because any Fourteenth Amendment malicious

statements from Tenesha Gatson and Anthony Williams ("Ant") that Plaintiff was present in J&J Fish during the attack on Clifford Frazier ("Clifford"); (ii) failed to follow up with Edna Williams, James Williams, Octavia Jackson and Todd Henderson, who were in the J&J Fish when Clifford was attacked and reported that they were unable to identify the offender; (iii) failed to obtain and review 911 tapes; and (iv) used suggestive procedures to obtain an unreliable identification from Clifford. (Fourth Amended Complaint, Dkt. 391, ¶¶50-61.) As a result of Defendants' purported investigative failures and because Clifford's identification was unreliable, Plaintiff says, he was arrested and detained pending trial without probable cause.

The Seventh Circuit rejected nearly identical allegations in *Phillips v. Allen*, 668 F.3d 912, 914–15 (7th Cir. 2012). In *Phillips*, the plaintiff claimed that the defendants "should have followed up other leads before arresting him" and should also have waited while he developed his alibi defense. *Id.* at 914. In rejecting these allegations, the Seventh Circuit held:

> These are weak arguments. Police need not run down all leads before making an arrest—especially not when a crime is violent and leaving the perpetrator at large may endanger other persons. **Nor need police wait for alibis, which even when presented they need not believe.**

*Id.* Thus, police officers have no constitutional duty to follow up on *actual* leads when a violent perpetrator is at large and certainly have no duty to believe or develop alibi witnesses. And in this case, there were *no other leads* because Bolden decided not to disclose the identity of the man he claims he saw attack Clifford Frazier to the detectives or the prosecutors. (Ex. A at 2968:12-14.) Likewise, Edna Williams and Tenesha Gatson, who both testified at Bolden's criminal trial, have never identified a possible alternative suspect (nor has James Williams), not in 1994 or 1996 or 2021 when they testified here. And neither have Octavia Jackson nor Todd Henderson. (Ex. A at 2195:9-2283:23 (Octavia Jackson), 1578:11-1644:9 (Todd Henderson).) As for the alibi witnesses, Defendants were not required

---

prosecution was barred under circuit precedent. (See Dkt. No. 133, Memo Opinion and Order, p. 18 (Dec. 12, 2017)).

2

to believe Ant and Gatson, nor were they required to develop Bolden's alibi defense at all. *Phillips*, at 914 ("Police are entitled to leave to the criminal process the full examination of potential defenses.") Indeed, once Clifford identified Bolden, the detectives had no duty to continue the investigation.

Bolden had Jackson and Henderson's names and contact information (and he knew Jackson, Gatson, and the Williams). (Ex. A at 2907:2-14, 2957: 7-11, 2750:6-7, 2892:2-8.) He also knew the identity of Vondell Goins and that she was Jackson's close friend. (Ex. A at 2478:8-2479:16.) And he knew about the existence of the 911 tapes. (2402:19-2403:4.) It was up to him to develop his own defense. *See e.g., United States v. Tadros*, 310 F.3d 999, 1005 (7th Cir. 2002) ("the government [is not required] to act as a private investigator and valet for the defendant, gathering evidence and delivering it to opposing counsel"); *Harris v. Kuba*, 486 F.3d 1010, 1015 (7th Cir. 2007) (government is not required to conduct a defendant's investigation or assist in the presentation of the defense's case).

The Seventh Circuit also rejected any notion that an identification secured using suggestive procedures undermines the probable cause established by that identification. *Phillips*, 668 F.3d at 914-15. As the court explained, police officers are entitled to rely on an "[i]dentification by a single eyewitness who lacks an apparent grudge against the accused person supplies probable cause." *Id.* at 915; *cf. id.* at 915 ("The Supreme Court [has] stressed [] that evidence need not be admissible at trial in order to support a finding of probable cause.") The court also made clear that the evidentiary considerations regarding witness identifications set forth in decisions such as *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972) "concern the admissibility of evidence at criminal trials, not claims for damages against arresting officers" and rejected the plaintiff's argument that those principles should be applied to support a §1983 claim under the Fourth Amendment. *Phillips*, 668 F.3d at 915 ("[Plaintiff] contends that the *Biggers* approach should be extended from trials to arrests, and from a rule of evidence to a rule of damages. We think that the proposed extension would be improvident—though with an

important proviso that we discuss later.")[2]

 The court's reasoning in holding that evidentiary considerations are not applicable to and do not vitiate probable cause was that police officers are neither expected nor required to divine whether a particular procedure is unduly suggestive and thus they can rely on an identification for probable cause purposes, even if it is secured using suggestive procedures, and they certainly cannot be liable under §1983 for use of a procedure that a court may later find was unduly suggestive. *Phillips*, 668 F.3d at 914-17. The proviso that qualifies *Phillips'* holding (which the court proposed but did not apply) would hypothetically allow a cause of action against a police officer for use of "a particular technique" only if that technique "ha[d] already been forbidden by an authoritative judicial decision (that is, by the Supreme Court or the court of appeals with territorial jurisdiction)" before the officer used it *and* if the officer deliberately used it to "manufacture" an identification. *Phillips*, 668 F.3d at 917 ("We mentioned earlier the need for a proviso. It is this. Suppose a particular technique that officers may use to trick a person into making an unreliable identification has already been forbidden by an authoritative judicial decision (that is, by the Supreme Court or the court of appeals with territorial jurisdiction) and the officer uses it anyway. An officer who employs the forbidden technique *to manufacture an identification* can't complain when a court provides a remedy." *Id.* (emphasis added)).

 Circuit precedent defeats any Fourth Amendment claim based on Defendants' failure to further investigate witnesses or to develop or believe alibi witnesses. And because Judge Shah has ruled that Defendants did not fabricate the identification or know that the identification was false, (Dkt. 276 at 48), the *Phillips* proviso does not apply and therefore Defendants' purported use of

---

[2] Defendants have discussed: (i) the *Phillips* proviso and the reasoning underlying the proviso at length in (ii) Bolden's sworn testimony in his criminal proceedings and the effect of that testimony on his claims here; and (iii) circuit precedent holding that coercing an eyewitness' identification is not actionable absent the concealment of the facts surrounding the alleged coercion in Dkts. 434, 449, 478 and 567. Defendants adopt and incorporate those arguments as though fully set forth here for purposes of Plaintiff's Fourth and Fourteenth Amendment claims.

suggestive procedures to secure Clifford Frazier's identification does not support Bolden's Fourth Amendment claim.

**II. Bolden Has Failed to Prove A Fourteenth Amendment Claim Due Process Claim.**

The due process claim based on the use of suggestive procedures discussed in *dicta* in *Coleman v. City of Peoria* contemplates a very narrow exception to our circuit's rule that the use of suggestive procedures alone is not actionable under §1983. 925 F.3d 336 (7th Cir. 2019) That narrow claim requires that a plaintiff establish that the trial court's admission of an allegedly unreliable identification was reversed on direct appeal or on collateral review. *Id.* at 347-8. Bolden has not submitted any evidence that the trial court's ruling admitting Clifford's identification was reversed by any later court. And in fact Bolden abandon his claim that the procedures used here were unduly suggestive and resulted in an unreliable identification in his appeal to the Illinois Supreme Court. *See generally*, *People v. Bolden*, 197 Ill. 2d 166 (2001). In that appeal, the sole issue Bolden raised with respect to the lineup was that he was entitled to have counsel present in the witness viewing room at the time of the lineup. *Id.* at 175-8. As such, Bolden forfeited his due process rights to challenge the any other alleged procedures and Defendants are entitled to judgment as a matter of law on this claim. *Coleman*, 925 F.3d 347. ("[police officers] cannot be held liable for depriving [a plaintiff] of his constitutional rights simply because the trial court rejected [his] legal arguments, or because he forfeited them.")

The claim discussed in *Coleman*'s *dicta* also requires that Plaintiff establish that the officers deliberately used procedures that were clearly forbidden by Supreme Court or circuit authority at the time of the lineup to obtain an identification they knew was tainted. *Id.* at 347-8 (even if a plaintiff successfully appeals the admission of an identification, a police officer is still not liable under §1983 unless the plaintiff establishes that the "officer used a specific interrogation technique clearly proscribed by existing law [] 'to trick a person into making an unreliable identification'" (citing and quoting *Phillips*, 668 F.3d at 917)). Or, in *Coleman*'s words, the plaintiff must establish that the officer

5

used the clearly proscribed procedure to knowingly secure a tainted identification. *Id.* at 349. None of the procedures Bolden claims were used had been clearly forbidden at the time of the lineup.[3] (See Defendants' Proposed Jury Instructions Nos. 4-8, Dkt. 472-11 at 9, 11, 15, 17, 19.)

With respect to the officers' knowledge that the identification was tainted, Judge Shah's finding that Defendants did not fabricate the identification is dispositive of this element. Even without that finding, the only evidence Bolden offered regarding the detectives' knowledge of whether the identification was tainted was evidence about the purported failure to investigate his alibi defense and *his* characterization that Clifford's statements to Baker were inconsistent with his statements to Willis.[4] As discussed above, the detectives were not required to develop or even believe Bolden's alibi witnesses. And any inconsistencies in Clifford's reported statements to Baker and Willis were not material or exculpatory and the detectives were not required to resolve them; that was the jury's job.[5] No reasonable jury could find a sufficient evidentiary basis to lead it to conclude that Defendants deliberately used a previously proscribed procedure to knowingly obtain a tainted identification as

---

[3] In *Coleman*, the court accepted as true the facts that over the course of one day, the witness saw the plaintiff in the hallway with police; police offered the witness names of possible suspects; police showed witness a photo of the plaintiff before conducting a lineup and the witness identified him as one of the perpetrators from the photo; police told the witness the plaintiff was in the lineup before she identified him in the lineup; and the plaintiff was the only suspect in the lineup not wearing a wristband. *Coleman*, 925 F.3d at 340-42. Notwithstanding these facts, the court found that none of the procedures were previously proscribed. *Id.* at 348-9; *see also Phillips*, 668 F.3d at 915-16 (mentioning a suspect's name and a rumor that the suspect had committed similar crimes not previously proscribed).

[4] Defendants did not listen to the destroyed 911 recording and Clifford's gun was not tested before it was destroyed and thus could not have known whether this evidence was exculpatory. (Dkt. 276 at 21:22.) Further, there has been no evidence that Defendants caused the recording or the gun to be destroyed, or knew that they would be, that could give rise to an inference of bad faith. (*Id.* at 22-23.) And as Judge Shah found, the officers had no constitutional duty to preserve that evidence. (*Id.* at 21-24.)

[5] *Coleman*, 925 F.3d at 349 ("[Plaintiff]'s appellate briefs develop a solid cross-examination outline for [the eyewitness]'s identifications. But such arguments do not establish a constitutional violation. After all, the validity of an eyewitness identification is for the jury. Due process is not offended by the introduction of a questionable eyewitness identification; the jury may observe the witness, assess any alleged suggestive circumstances, and make its own determination about what weight, if any, to give it." (internal quotation marks omitted)); *Brathwaite*, 432 U.S. at 116, ("[E]vidence with some element of untrustworthiness is customary grist for the jury mill. Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature.").

*Coleman* requires.

Defendants are also entitled to judgment in their favor under pre-*Coleman* circuit precedent which holds that the use of suggestive procedures does not support a Fourteenth Amendment due process claim. *Newsome v. McCabe*, 319 F.3d 301, 304 (7th Cir. 2003) ("*Newsome II*") (the use of "manipulated" identifications at trial "would not by itself support an award of damages, as our opinion denying rehearing in 2001 explained"). Instead, Bolden must establish that Defendants concealed evidence about the procedures to sustain his claim. *Id.* at 305 ("the constitutional violation justifying an award of damages is ***not*** the conduct of the lineups but the concealment of evidence about them" (emphasis added)). Bolden failed to submit any such evidence and testified he had knowledge of and witnessed the procedures. (Ex. A at 2764:14-2767:5.) Nor is there any evidence that Bolden did not have the lineup report and the names of the fillers in the lineup before his trial and he did not submit any evidence that the fillers were unavailable to him or that he could not call them as witnesses at his hearing on his motion to suppress the identification or his trial to testify to the events he claims occurred during the conduct of the lineup. In short, Bolden had all the evidence he needed to fully and fairly litigate his motion to suppress and to impeach the identification at his criminal trial. That information was also available to Bolden's prosecutors. (Ex. A at 2581:23-2582:3 (Lynda Peters).) Nor can Bolden base this claim on his allegation that Defendants fabricated the identification. Judge Shah granted judgment in favor of Defendants on Bolden's fabrication theory finding "no facts to suggest that they knew the identification . . . was false." (Dkt. 276 at 48.)

Bolden's due process right with respect the purportedly suggestive procedures was the procedural right to have the resulting identification suppressed or seek reversal of an erroneous admission and obtain a new trial. *Coleman*, 925 F.3d at 347; *Phillips*, 668 F.3d at 915. Bolden filed a motion to suppress in his criminal case and his testimony admits that he had all the evidence necessary to challenge admission of the identification. Bolden was unsuccessful in the trial court and the Illinois

Appellate Court, and he forfeited that right in the Illinois Supreme Court. Bolden's right to fair trial was to have the evidence about the conduct of the lineup such that he could impeach Frazier's identification and, again, his own testimony admits that he had that evidence.

### III. Defendants have Qualified Immunity from Both Federal Claims.

"The doctrine of qualified immunity shields officers from civil liability so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known" and protects "'all but the plainly incompetent or those who knowingly violate the law.'" *City of Tahlequah v. Bond*, No. 20-1668, 2021 U.S. LEXIS 5310, at *4 (Oct. 18, 2021). Recent Supreme Court opinions have chastised the appellate courts for continuing to define the "clearly established" law too broadly, despite repeated reminders from the Court. *See, e.g., White v. Pauly*, 137 S. Ct. 548, 552 (2017); *City & Cty. of S.F. v. Sheehan*, 575 U.S. 600, 613, 135 S. Ct. 1765, 1775-76 (2015). "It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. Otherwise, the rule is not one that "every reasonable official" would know." *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018). Applying these principles to the claims here, Defendants are entitled to qualified immunity on both federal claims.

#### A. Qualified Immunity from Fourteenth Amendment Claim

Even if Bolden could establish a due process claim based on unduly suggestive procedures under current law, Defendants are entitled to qualified immunity. The applicable law cannot be generalized as "an identification can be so unnecessarily suggestive and conducive to irreparable mistaken identification that [a suspect] was denied due process of law," *Foster v. California*, 394 U.S. 440, 442 (1969). This general proposition states how the law can be applied but says nothing about how it would be applied in circumstances like those presented here. To overcome qualified immunity, there must be some precedent that applied this standard to similar facts and clearly established a due

process violation. *Sheehan*, 575 U.S. 600, 617.

Regarding lineups, there are no absolutes. *Alexander v. City of S. Bend*, 433 F.3d 550, 555 (7th Cir. 2006) ("The Constitution does not require that police lineups, photo arrays, and witness interviews meet a particular standard of quality.") Instead, courts apply a balancing test established in *Manson v. Brathwaite*, which balances reliability factors against the probable effect of the procedures used to determine whether an identification is admissible. 432 U.S. 98, 114 (1977). Defendants could not have been expected to conduct a *Brathwaite* balancing test to determine what they should or should not do during a lineup, for fear that a court may later determine the identification was inadmissible. *Phillips*, 668 F.3d at 915 ("Application of the *Biggers* framework is possible. . . only after evidence has been gathered and an adversarial hearing held.") Where such "ad hoc balancing tests" are involved, "the law regarding procedural due process claims can rarely be considered 'clearly established at least in the absence of closely corresponding factual and legal precedent." *Brewster v. Bd. Of Educ.*, 149 F.3d 971, 977 (9th Cir. 1998). Even an identification procedure "widely condemned" in the law could nonetheless comply with due process. *Stovall v. Denno*, 388 U.S. 293, 302, 87 S. Ct. 1967, 1972 (1967) (although "the practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned" under the circumstances, the procedure did not violate due process); *cf. Simmons v. United States*, 390 U.S. 377, 384 (1968) (although identification by photograph presents certain hazards, the Court is "unwilling to prohibit its employment, either in the exercise of our supervisory power or, still less, as a matter of constitutional requirement.")

Not only is the *Brathwaite* standard completely untenable (which is precisely *Phillips*' point)[6], but Defendants would also have had no reason to believe it applied to them. By 1994, our circuit court

---

[6] In *Phillips*, the Seventh Circuit expressly held that police officers are not expected or required to have any expert knowledge with respect to eyewitness identifications. 668 F.3d 912, 915, 916 Thus, a police officer cannot be held liable under §1983 unless the procedure at issue had "already been forbidden by an authoritative judicial decision (that is, by the Supreme Court or the court of appeals with territorial jurisdiction) and the officer uses it anyway." *Id.* at 917.

had made very clear that whether an identification was sufficiently reliable was a matter for the criminal courts, not the police. *Hensley v. Carey*, 818 F.2d 646, 648 (7th Cir. 1987) ("the procedural safeguards established in *Brathwaite* and *Stovall* protect only against the admission of unreliable evidence at trial and [do] not establish a constitutional right to be free of suggestive lineups as [plaintiff] argues.") Hence, "defendants could not have violated [Plaintiff's] constitutional rights simply by subjecting him to a lineup which was allegedly unduly suggestive." *Id.* at 650 (7th Cir. 1987); *see also Newsome v. McCabe*, 256 F.3d 747, 753 (7th Cir. 2001) ("*Newsome I*") ("No one would quarrel with the assertion in defendants' reply brief that 'in 1979 [and today], the detectives could have reasonably believed that it should be up to the prosecutors, and ultimately the court, to determine if an eyewitness identification is sufficiently reliable for use at trial.'" (alteration original)). Indeed, it was not until 2006, when *Alexander v. City of South Bend* was decided, that the court even hinted that the right could be violated at the police station, rather than the courthouse. 433 F.3d 550, 555 (7th Cir. 2006); see also Dkt. 567 at 2-5 (explaining holding in *Alexander*).

Under clearly established law in 1994, Defendants could not have knowingly violated a constitutional right by using suggestive procedures. Thus, they are entitled to judgment on this claim.

**B. Qualified Immunity from Fourth Amendment Claim**

In the Fourth Amendment context, it is particularly important that courts define the law in terms of the particular facts facing an officer, because "it is sometimes difficult for an officer to determine how the relevant legal doctrine, here [probable cause], will apply to the factual situation the officer confronts." *Mullenix v. Luna,* 577 U.S. 7, 12 (2015). Qualified immunity applies here because even if Defendants lacked probable cause, the law did not "clearly prohibit [their] conduct in the particular circumstances before [them]." *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018).

Qualified immunity protects officers who "reasonably but mistakenly conclude that probable cause is present." *Anderson v. Creighton*, 483 U.S. 635, 641(1987). In other words, where "reasonable

minds could differ" over the existence of probable cause, qualified immunity applies. *Abbott v. Sangamon Cty.*, 705 F.3d 706, 723 (7th Cir. 2013). Only precedent that is "sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (internal quotations omitted). "Otherwise, the rule is not one that 'every reasonable official' would know." *Id.* (quoting *Reichle v. Howards*, 566 U.S. 658, 666 (2012).

In this case, probable cause was based on Clifford Frazier's eyewitness account, corroborating witness statements and forensic evidence, Clifford's identification, and reliable evidence from the FBI. It is highly unlikely that there is precedent that probable cause was lacking under circumstances even remotely resembling those here. But if there were, there is no doubt that reasonable minds could differ as to whether probable cause has been established. Moreover, even if the identification was not admissible, Defendants were entitled to rely on it for probable cause purposes in 1994 and today. *Phillips,* 668 F.3d at 915 ("The Supreme Court [has] stressed [] that evidence need not be admissible at trial in order to support a finding of probable cause.")

### IV. Bolden Has Failed to Prove His State Law Malicious Prosecution.

The Illinois Supreme Court "has long recognized that 'suits for malicious prosecution are not favored in law.'" *Beaman v. Freesmeyer*, 2019 IL 122654, ¶ 24, 433 Ill. Dec. 130, 136 (2019). Hence "the circumstances in which malicious prosecution actions may be brought have been rather narrowly circumscribed." *Joiner v. Benton Cmty. Bank*, 82 Ill. 2d 40, 45, 44 Ill. Dec. 260, 262, 411 N.E.2d 229, 231 (1980). To prevail on such a claim, a plaintiff must prove: "(1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Id.* "The absence of any single element is fatal to a claim." *Holland v. City of Chicago*, 643 F. 3d 248, 254 (7th Cir. 2011). Bolden has failed to prove three of the five elements.

**A. No Reasonable Jury could find that Defendants Commenced and Continued Bolden's Prosecution.**

"In evaluating the first element of a malicious prosecution claim, the relevant inquiry is whether the officer proximately caused the commencement or continuance of the criminal proceeding." *Beaman v. Freesmeyer*, 2021 IL 125617, ¶ 79. Put another way, "a plaintiff may not maintain a malicious-prosecution claim against an arresting officer without first showing 'some postarrest action which influenced the prosecutor's decision to indict.'" *Colbert v. City of Chicago*, 851 F.3d 649, 655 (7th Cir. 2017) (quoting *Snodderly v. R.U.F.F. Drug Enforcement Task Force*, 239 F.3d 892, 902 (7th Cir. 2001). That is, Bolden must have presented some evidence that Defendants played a significant role in the prosecution by "improperly exert[ing] pressure on the prosecutor, knowingly provid[ing] misinformation to him or her, conceal[ing] exculpatory evidence, or otherwise engag[ing] in wrongful or bad-faith conduct that was instrumental in the commencement or continuation of the criminal prosecution." *Beaman*, 2021 IL 125617, ¶¶ 79. Plaintiff has presented no such evidence.

The evidence at trial established that, once Clifford identified Bolden, the detectives arrested Bolden, recommended charges, turned over their file to the prosecution and had no further influence on or involvement in the State's decision to prosecute Bolden. (Ex. A at 938:4-9) This limited role is insufficient to meet the caused and continued element; there must be some evidence of "further direct influence." *Evans v. City of Chi.*, 2021 IL App (1st) 200412-U, ¶ 61.

Specifically, after Bolden's arrest, an Assistant State's Attorney, ("ASA"), assigned to Felony Review was called to review the evidence and approve charges. (Ex. A at 938:4-7). As ASA Lynda Peters, one of Bolden's prosecutors, explained, "an assistant state's attorney would review the reports; interview available witnesses; Mirandize and interview an offender, if the offender wanted to talk; and then make an assessment sometimes by talking to other folks in the State's Attorney's Office or on their own as to what, if any, felony charges should be brought." (*Id.* at 2570:21-2571:6.) In this case, the Felony Review ASA conducted his own interviews of Bolden and Clifford. (*Id.* at 1209: 5-7,

12

1211:16-24 (Testimony of Detective Pesavento).) After reviewing the file and interviewing witnesses, Felony Review made the decision to charge Bolden. (*Id.* at 1208:23-1209:4, Joint Tr. Ex. 24.)[7] Bolden submitted no evidence that Defendants interfered with the Felony Review process in any way.

Detective Pesavento's grand jury testimony was the only post-arrest action by any defendant, and his testimony did not mislead the prosecution or grand jury. He testified that Clifford had identified Bolden in a lineup as the as the person he saw leave with the victims as well as the person who shot him. (Pl. Tr. Ex. 153.) His testimony was truthful, Clifford did identify Bolden in a lineup. (Ex. A at 2766:17-20 (Bolden).) Further, the lineup was not fabricated, (as Judge Shah has already ruled, see Dkt. 276 at 48), and even if it was, Plaintiff presented no evidence Defendants knew it was false. Thus, Detective Pesavento could not have knowingly misled the prosecutor or the grand jury.

When the case was turned over to ASA Peters, she reviewed all "documents and records in the case." (Ex. A, 2581:16-19.) "When [ASA Peters] inherited a file, [she] would always treat it like [she] was starting from scratch in a sense," and would typically subpoena the Chicago Police Department. (*Id.* at 2615 24-2626:6.) As such, she was aware of any inconsistencies in Clifford's testimony—they were all documented in the police reports (with the possible exception of the Willis report discussed below). Even if the jury believes that Lee Williams did not make certain statements in the reports, Ms. Peters would have learned about this when she interviewed him. (*Id.* at 2611:2-13 (Peters).) As for any misreporting of Tenesha Gatson's statement regarding Bolden's skin color, it had no bearing on the decision to prosecute -- the jury would see Bolden at trial and make its own determination of whether he fit Clifford's initial description. Indeed, the prosecution went forward *in*

---

[7] The following information was contained in the investigative file, (Joint Tr. Ex. 4,) provided to the State's Attorney's Office (Ex. A at 938:4-9 (Pesavento)): Gatson and Ant's alibi statements putting Bolden in J&J Fish at the time of the attack on Clifford; Clifford's statements to Detective Baker and Baker's notes of his interview with Clifford; and the sketch prepared by the FBI based on Clifford's description. In other words, none of the information Bolden claims should have alerted Defendants that something was amiss with Clifford's identification was concealed from the prosecution.

13

*spite of* Ms. Gatson's purported alibi statement, which was documented in the reports ASA Peters reviewed. See footnote 7, above. And, of course, if Ms. Peters was free to interview Gatson before trial and likely did. (*Id.* at 2613:11-2614:11.) ASA Peters was also aware of Bolden's claims regarding the conduct of the lineup. (*Id.* at 2610:23-2611:1 (Peters).) She was free to probe Clifford regarding what happened at the lineup and make her own credibility determinations.

Moreover, ASA Peters' decision to continue the prosecution would not have depended on what she reviewed, but on what Clifford Frazier told her. As she testified, Clifford's identification was an essential part of the State's case. (*Id.* at 2575:18 – 2576:1.) ASA Peters testified that her practice was to talk to the eyewitness before trial and compare what the witness told her to what was in the reports. (*Id.* at 2613:11-2614:11.) That is, Peters looked for, probed through her own interviews, and assessed any inconsistencies in witness statements. And if there was a lineup identification in a case, Peters would show the eyewitness the lineup photo "to see if, in fact, the witness can still identify the person in the lineup" that the reports say he identified. (*Id.* at 2614:18-2615:2.) If the only eyewitness could not identify the offender, Peters would have recommended to her supervisor that they not proceed with the prosecution. (*Id.* at 2615:3- 12.) The only reasonable inference is that ASA Peters interviewed Clifford and concluded that any inconsistencies in the record did not negate the strength of his identification. In fact, Peters prepared Clifford to testify at Bolden's trial. Whatever inconsistencies between his statements to police and his testimony at trial had nothing to do with Defendants. Peters had Baker's notes and Pesavento and Siwek's report documenting Clifford's statements to Baker. She necessarily knew that Clifford's statements to her, and the testimony she offered at trial, were more complete than his statements to Baker. Even if that testimony could be deemed inconsistent with his statements to Defendants, there is no evidence that Defendants had any involvement in preparing Clifford's testimony or that they even knew what he testified to at that trial. Only Peters knew what Clifford's testimony would be and only Peters made the decision to submit that testimony to a jury.

14

Furthermore, even if the jury believes that information in police reports provided to the prosecution was false, *i.e.*, it believes Gatson's and Lee Williams' testimony that they did not make certain statements in the reports, this alone does not establish the necessary causal link. Bolden must have presented evidence that the false information was relied on by the prosecution and grand jury. *Colbert*, 851 F.3d at 655 (finding no causal link between a false report and the grand jury indictment where the jury did not rely on the false information). But the only evidence the prosecution relied on and presented to the grand jury in seeking the indictment was Clifford's identification. (Pl. Tr. Ex. 153.)

The same is true for any allegedly concealed information. For example, assuming the prosecution did not have the "Willis" report, (Pl. Tr. Ex. 18), Bolden presented no evidence that, but-for the missing report, he would not have been prosecuted. Evidence of what Bolden's criminal defense attorney would have done with the report is irrelevant. (Ex. A, Testimony of Mr. Foster at 2396:13-25.) The question here is whether ASA Peters would have abandoned the prosecution Bolden if she had this report. This is the but-for causation required to establish proximate cause, and Bolden did not make the link. *Beaman*, 2021 IL 125617, P85. Indeed, the Willis report "would have offered only cumulative or very weak impeachment of Clifford." (Dkt. 276, at 42.) And the testimony that ASA Peters elicited from Clifford at the criminal trial, which she necessarily knew was forthcoming from her preparation of him, was far more inconsistent with his statements documented in Baker's notes or Pesavento and Siwek's report than was his statement documented in the Willis report. (Joint Tr. Ex. 25, Pl. Tr. Exs. 18, 86.) ASA Peters nevertheless decided to proceed to trial and offer that testimony. Indisputably, therefore, no reasonable jury could find that had ASA Peters seen the Willis report, she would have changed her decision to prosecute.

In the end, notwithstanding his sweeping allegations that evidence was fabricated and suppressed, Bolden presented no evidence that, but for the allegedly false or concealed information,

the prosecution would not have gone forward. *See Beaman*, 2021 IL 125617, *P86, P98-101. In *Beaman*, this connection was made because the prosecutor said "[b]eyond any question in my mind, this case would not have been won without [detective]." *Id. at* *P55, P86. The prosecutor's statement established that but-for the detective's post-arrest conduct – knowingly concealing evidence of another suspect, fabricating time trial evidence to corroborate the suspects guilt, and testifying falsely in response to direct questions from the grand jury – the prosecution would not have gone forward. *Id.* at *P55, P97-106. In this factually inapposite case, (Defendants had no other suspect, did not fabricate evidence, and did not mislead the grand jury), Plaintiff has produced no evidence, even hypothetically, to link his allegations of misconduct occurring before his arrest to the prosecution's decisions to commence and continue the prosecution. *Colbert*, 851 F.3d at 649.

ASA Peters' testimony establishes that each step taken by the prosecution after Bolden's arrest operated as a check on the information Defendants provided and formed the basis for its independent decision to both commence and continue the prosecution. Thus, there is insufficient evidence for a reasonable jury to find that Defendants played a significant role in commencing or continuing the prosecution, and Plaintiff's malicious prosecution claim therefore fails.

**B. There was probable cause to prosecute Bolden as a matter of law.**

"Lack of probable cause for instituting the original proceedings is an indispensable element of an action for malicious prosecution." *Beaman v. Freesmeyer*, 2021 IL 125617, ¶ 116. "[P]robable cause is defined as a state of facts that would lead a person of ordinary care and prudence to believe or to entertain an honest and sound suspicion that the accused committed the offense charged." *Kim v. City of Chi.*, 368 Ill. App. 3d 648, 654 (2006) (internal quotations omitted.) A grand jury indictment is prima facie evidence of probable cause. *Swearnigen-El v. Cook Cty. Sheriff's Dep't*, 602 F.3d 852, 863 (7th Cir. 2010). This presumption "may be rebutted by other evidence, such as proof that the indictment was obtained by false or fraudulent testimony before the grand jury, by failing to make a full or complete

16

statement of facts, or by other improper or fraudulent means." *Beaman*, 2021 IL 125617, ¶ 117. Plaintiff has offered no such evidence.

Bolden did not present any evidence that Defendants falsely testified before or otherwise fraudulently misled the grand jury. Detective Pesavento responded truthfully to questions posed by the ASA as well as a grand jury member, and there has been no evidence that "he knowingly gave false testimony in an effort to influence [the ASA's or the grand jury's] decisions to prosecute." *Samoylovich v. City of Chi.*, 2019 IL App (1st) 172962-U, ¶ 57. The *prosecutor* who formulated the questions not Pesavento controlled the information the grand jury heard. And when a grand juror asked Detective Pesavento a question regarding the motive for the double murders, his response explaining what he believed to be the motive for the killing was true and complete. The fact that Pesavento did not volunteer additional immaterial details (the source of the information on the gang hit, Clifford's involvement in the drug deal, etc.) when answering the yes-or-no questions posed by the prosecutor cannot be equated to lying. Even if Detective Pesavento did answer a question incorrectly (he did not), "looking at the totality of the circumstances, [his statement could] not negate the eyewitness identification evidence, prove that he exerted any pressure over the ASA or the grand jury or prove that he knowingly gave false testimony in an effort to influence their decisions to prosecute." *Samoylovich,* 2019 IL App (1st) 172962-U, ¶ 57. The grand jury was not misled and its indictment is valid -- conclusively establishing probable cause to prosecute Bolden.

Even without the presumption of probable cause based on the indictment, the undisputed evidence presented at trial establishes that Defendants had probable cause to believe Bolden was the shooter. Defendants were entitled to rely on Clifford Frazier's identification to establish probable cause, even if it would not have survived *Brathwaite* analysis. "Probable cause is based not on legal intricacies applied by legal experts but on the factual and practical considerations of everyday life upon which reasonable and prudent persons act." *People v. Sherman*, 2020 IL App. (1st) 172162 at ¶28. Thus,

17

evidence that might be deemed unreliable and inadmissible in a court of law can nonetheless form the basis of probable cause. *Id.*; *accord Phillips,* 668 F.3d at 915 ("The Supreme Court [has] stressed [] that evidence need not be admissible at trial in order to support a finding of probable cause."); *cf. Martin v. Marinez,* 934 F.3d 594, 599 (7th Cir. 2019) (evidence subject to exclusion under the "fruit of the poisonous tree doctrine" is relevant to probable cause analysis in a Section 1983 claim). And "[w]here the victim of the crime supplies the police with the information forming probable cause, there is a presumption that this information is inherently reliable." *People v. Turner*, 240 Ill. App. 3d 340, 357 (1992) (victim's identification of defendant in a lineup sufficient to establish probable cause); *accord Askew v. City of Chi.,* 440 F.3d 894, 895 (7th Cir. 2006) ("allegations by eyewitnesses supply probable cause when the statements, if true, show that a crime has occurred"). Bolden has introduced no evidence to rebut this presumption either.

Clifford identified Bolden at the lineup, to Lynda Peters, and at Bolden's criminal trial. And there was no evidence of another suspect. Bolden's only argument here is that Clifford's statements documented by Baker were inconsistent with his statements documented by Willis. But those inconsistencies were hardly material. (Joint Tr. Ex. 25, Pl. Exs. 18, 86.) And in any event, probable cause is not negated by inconsistencies in witness statements – such discrepancies are normal. *Askew*, 440 F.3d at 896.

Clifford's identification was well corroborated. Clifford told detectives that the victims met with Ant in J&J Fish to discuss a drug deal. (Pl. Tr. Ex. 86 at 5.) Ant confirmed that he had spoken with the victims in the restaurant that night shortly before they were murdered. (Joint Tr. Ex. 9.) The victims walked out of the restaurant with a man who had been inside the restaurant with Ant. All three men got into the same car, with Ant's associate in the back seat. (Pl. Tr. Ex. 86 at 5.) The victims drove away in the front seat of their car, with Ant's associate in the back seat. (Pl. Tr. Ex. 18.) A few blocks away, Lee Williams saw the shooting and saw the shooter get out of the back seat of the victims'

car and head north toward J&J Fish. (Pl. Tr. Ex 86 at 4-5, Ex. A at 1005:1-18.) While Clifford was waiting for his brother to return, the man that left with the victims returned and shot Clifford (Joint Tr. Ex. 15.) And forensics determined that the bullets at both crime scenes were fired from the same gun. (Joint Tr. Ex. 15.) Defendants' conclusion that whoever had walked out of the restaurant with the victims after the meeting with Ant had also killed them was more than reasonable.

Detectives also had ample information that the man Clifford saw with the victims was "Lynier." Tenesha Gatson's statement on the night of shooting placed a man named "Lenair" in the restaurant with Ant. (Pl. Tr. Ex. 86 at 6.) After he was released from the hospital, Clifford told third district officers that the man with Ant and his brother was named "Lanier." (Def. Tr. Ex. 9, Ex. A at 1048:9-1050:16 (Pesavento).) Three days after the shooting, Ant admitted that "Lynier" was with him in the restaurant at the same time he admitted he was speaking with the victims. (Joint Tr. Ex. 9.) One or two days after Ant's statement, Officer Oliver received a tip from the FBI that that a person by the name of "Lanier" was the shooter and passed that tip, along with Bolden's full name to the detectives. (Ex. A at 1899:24-1900:13, 1901:3-9; 1901:10-1902:5; Joint Tr. Ex. 13 at 2.)) Finally, on February 6, 1994, detectives showed Bolden's mugshot to James Williams, Ant's father, who identified him as Eddie Bolden, also known as "Lynier," who lived above the J&J Fish House (thereby casting doubt on Gatson and Ant's claims that they hardly knew this "Lynier"). (Joint Tr. Ex. 13 at 2.)

Bolden does not dispute that he goes by the name "Lynier" or that he was in the restaurant. (Ex. A at 2740:21-22, 2743:16-23, 2937:3-5.) Nobody told the detectives that anybody else had been with Ant that day, or that someone else had walked out of the restaurant with the victims. There was no other suspect. Any reasonable person would have concluded, as the detectives did here, that the shooter was Eddie "Lynier" Bolden. And Defendants were not required to credit Ant and Gatson's alibi statements at all much less in the context of all the other evidence they had adduced.

19

**C. No Reasonable Jury could find that Defendant Officers acted with Malice.**

"Malice, as an element of malicious prosecution, is defined as the actuation of a prosecution for an improper motive." *Mack v. First Sec. Bank*, 158 Ill. App. 3d 497, 501-02 (1987) "An improper motive for a prosecution is any reason other than to bring the party to justice." *Id.* A lack of probable cause will not permit an inference of malice, unless "the circumstances are inconsistent with good faith … and . . . the want of probable cause has been clearly proved." *Turner v. Chicago*, 91 Ill. App. 3d 931, 937 (1980). Here, Plaintiff has not put forth evidence entitling him to an inference of malice. First, probable cause existed, as addressed *supra*. Even if it did not, there is nothing in the trial record that would even remotely suggest Defendants had an improper motive.

First, there is no evidence of any relationship between Bolden and any defendant prior to the investigation. *Denton v. Allstate Ins. Co.*, 152 Ill. App. 3d 578, 588 (1986) (lack of a relationship is relevant to whether malice existed). Plaintiff has provided no evidence that Defendants had any reason to prosecute Bolden other than belief in his guilt.[8] Second, the alleged flaws in the police investigation are not evidence of malice. Whether Defendants "properly investigated the crime or protected and collected evidence [is] not relevant to [plaintiff's] malicious prosecution claims." *White v. Fitzpatrick*, 2021 IL App (5th) 200136-U, ¶70 (failure to follow protocol and collect and preserve evidence does not demonstrate malice). Although some evidence was destroyed in this case, there is no evidence that Defendants destroyed it, caused it to be destroyed, or even knew it would be destroyed. (Dkt. 276 at 23, 24, 27, 28.) As to the investigation as a whole, Judge Shah found nothing to "suggest that [Defendants] believed Bolden was innocent." (Dkt. 276 at 48.) And there has been no such evidence at this trial.[9]

---

[8] While Bolden has attempted to create the inference that he was targeted and prosecuted because of racism through his false testimony that Detective Pesavento used a racial slur when speaking to him, every witness in J&J Fish and Clifford Frazier himself identified the man who attacked Clifford as an African American man. Thus, Bolden's transparent attempt to manufacture malice and inflame the jury gets him nowhere.

[9] At trial, Bolden testified that he experienced emotional distress as a result of his arrest, trial, and

## CONCLUSION

For all the foregoing reasons, Defendants respectfully request that the Court grant judgment in favor of Defendants on all of Plaintiff's claims.

Respectfully submitted,

/s/ *Amy A. Hijjawi*
Special Assistant Corporation Counsel

*Attorneys for Defendant Officers*

      Andrew M. Hale
      Barrett Boudreaux
      William Bazarek
      Amy A. Hijjawi
      Brian J. Stefanich
      Hale & Monico, LLC
      53 W. Jackson, Suite 337
      Chicago, IL 60604

---

incarceration. Thus, Bolden's IIED claim is derivative of his malicious prosecution. Section 2-208 of the Illinois Tort Immunity Act incorporates the elements of a malicious prosecution claim into any tort claim "for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, unless he acts maliciously and without probable cause." 745 ILCS 10/2-208. *Holland*, 643 F.3d at 255 (Section 2-208 "essentially mirrors and codifies the malicious prosecution standard."). Therefore, his IIED claim fails for the same reasons his malicious prosecution claim fails, as explained above.

## CERTIFICATE OF SERVICE

I, the undersigned attorney, certify that I filed the foregoing using the Court's electronic filing system. As a result, copies of the filed document were electronically served upon all counsel of record.

/s/ Amy A. Hijjawi