**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| EDDIE L. BOLDEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 17 CV 00417 |
| v. | ) | |
| | ) | |
| CITY OF CHICAGO, et. al., | ) | Honorable Steven C. Seeger |
| | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' JOINT RULE 50(b) RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................ ……………………………………i

INTRODUCTION ................................................................................................ .1

STANDARD ................................................................................................... .2

ARGUMENT ................................................................................................ 3

I.      Defendants Are Entitled To Judgement As a Matter of Law on Bolden's Fourteenth Amended Due Process Claim....………………………...…………………………3

        A.      Bolden's Due Process Claim Fails Because Violating The Prophylactic Rule Against Suggestive Identification Procedures Does not Create § 1983 Liability…………………………………………….…………………… 3

        B.      Even If An Unduly Suggestive Identification Claim Exists, Defendants Are Entitled To Judgment As A Matter of Law Because Bolden Had A Fair Opportunity To Litigate The Issue During His Criminal Proceedings…….…………........................................................................8

II.     Defendants Are Entitled To Judgement As a Matter of Law on Bolden's Fourth Amendment and Malicious Prosecution Claims Because No Reasonable Jury Could Conclude Defendants Lacked Probable Cause ………....……………………………9

        A.      Bolden Failed to Rebut the *Prima Facie* Evidence of Probable Cause Based on the Indictment……………………………….……………………….. 10

        B.      Clifford's Lineup Identification, Corroborated by the Other Evidence, Established Probable Cause…………………………………………………12

        C.      Probable Cause Existed Even Without Clifford's Lineup Identification of Bolden……………………………………………………………………13

III.    Defendants Have Qualified Immunity for Bolden's Federal Claims.………………………………………………………………….. 19

IV.    Defendants Are Entitled to Judgement as a Matter of Law on Bolden's Failure to Intervene and Conspiracy Claims……………………...…………………………22

V.     Bolden's IIED Claim Fails Because the Defendants are Entitled to Immunity…………………………………………………………...……….23

**··**

# TABLE OF AUTHORITIES

## Cases

*Alexander v. City of South Bend*, 433 F.3d 550 (7th Cir. 2006)……………………………6, 19

*Anderson v. Creighton*, 483 U.S. 635 (1987)………………………………………………21

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)……………………………………………...……22

*Bell v. Weis*, 2015 WL 4972467 (N.D. Ill. Aug. 19, 2015) …..………………………………..6

*Beaman v. Freesmeyer,* 2021 IL 125617……..…..…………………………………..…...9

*Brown v. Wilson*, 1991 WL 274922 (N.D. Ill. Dec. 17, 1991)..………………………………..6

*Burrell v. Village of Sauk Village*, 2017 IL App (1st) 163392…………………………..11

*Castle Rock v. Gonzales*, 545 U.S. 748 (2005)……………………………………………23

*Colbert v. City of Chicago*, 851 F.3d 649 (7th Cir. 2017)…………………...…………........10, 12

*Coleman v. City of Peoria*, Ill. 925 F.3d 336 (7th Cir. 2019)…………………...………..3, 4, 10

*DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989)………..……….23

*District of Columbia v. Wesby*, 138 S. Ct. 577 (2018)…………….…………………………21

*Franks v. Delaware*, 438 U.S. 154 (1978) ………………………………………………...…10

*Hampton v. City of Chicago*, 2017 WL 2985743 (N.D. Ill. 2017)………………………..20, 21

*Henderson v. Rangel*, 2022 WL 3716263 (N.D. Ill. Aug. 26, 2022)…………..…..…………11

*Hensley v. Carey*, 818 F.2d 646 (7th Cir. 1987)………..…………………………………… 3, 19

*Holland v. City of Chicago*, 643 F.3d 248 (7th Cir. 2011)………..……..……...…....13, 14, 18, 22

*Holloway v. City of Milwaukee*, 43 F.4th 760 (7th Cir. 2022)………………………..5, 6, 19

*Hudson v. Brierton*, 699 F.2d 917 (7th Cir. 1983)……………………………………………20

*Gamenos v. Jewel Cos.*, 797 F.2d 432, 440 (7th Cir. 1986))……………………………………22

*Israel v. Odom*, 521 F.2d 1370, 1372 (7th Cir. 1975)……………………………………………20

*Lewis v. City of Chicago*, 914 F.3d 472, 476 (7th Cir. 2019)………………………………………9

*Logan*, 891 F.Supp.2d at 904…………………………………………………………………………12

*Manson v. Brathwaite*, 432 U.S. 98 (1977)……………………………………………………..3, 7, 20

*Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 918–19 (2017)……………………….…………………9

*Messino v. City of Elmhurst*, 2021 WL 4318082, at *6 (N.D. Ill. Sept. 23, 2021)………………23

*Mitchell v. Doherty*, 37 F.4th 1277, 1283 (7th Cir. 2022)……………………………………...9,10

*Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978)……………..………23

*Mwangangi v. Nielsen*, 48 F.4th 816, 834 (7th Cir. 2022)…………………………………………...22

*Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006)…………………………………9

*Neil v. Biggers*, 409 U.S. 188, 199-200 (1972)…………………………………………………3

*Newsome v. McCabe*, 256 F.3d 747 (7th Cir. 2001)……………………………………..………21

*Passananti v. Cook Cnty.*, 689 F.3d 655, 659 (7th Cir. 2012)…………………….…………………2

*People v. Buss*, 187 Ill. 2d 144, 204 (1999)…………………………………………………...10

*People v. Gocmen*, 2018 IL 122388………………………………………………………..10

*Phillips v. Allen*, 668 F.3d 912, 915 (7th Cir. 2012)……………………………………4, 7, 13, 22

*Preiser v. Rodriguez*, 411 U.S. 475, 490-91 (1973)…………………………………………5

*Rehberg v. Paulk*, 566 U.S. 356, 369 (2012)…………………………………………………11

*Reyes v. Nurse*, 38 F.4th 636, 644 (7th Cir. 2022)………………………………………..……5, 6

*Rivera v. Guevara*, 319 F. Supp. 3d 1004, 1055 (N.D. Ill. 2018)………………………….………12

*Sattler v. Hernandez*, 2011 WL 3839658, *4 (N.D. Ill. Aug. 30, 2011)………………………6, 7

*Sang Ken Kim v. City of Chicago*, 368 Ill. App. 3d 648, 654, 655 (2006)………………………10

*Simmons v. United States*, 390 U.S. 377, 384 (1977)………………………………………20

*Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008)…………………………………………22

*Spiegel v. Cortese*, 196 F.3d 717, 724-25 (7th Cir. 1999)……………………………………18

*St. Paul Fire & Marine Ins. Co. v. City of Waukegan*, 2017 IL App (2d) 160381, ¶ 46………..…11

*Swannigan v. City of Chicago*, 2016 WL 561891, *5 (N.D. Ill. Feb. 12, 2016)…………………..6

*Tart v. Illinois Power Co.*, 366 F.3d 461, 464 (7th Cir. 2004)…………………………………….3

*Thomas v. Drochner*, 1994 WL 803263, *13 (N.D. Ill. Jan. 18, 1994)…………….…………...6

*Thompson v. Clark*, 142 S. Ct. 1332, 1337-38 (2022)………………………………………….9

*Turner v. City of Chicago*, 2015 WL 7568373, *3 (N.D. Ill. Nov. 25, 2015)…………..……….10

*United States v. Jeffrey Earl Johnson*, 859, F.2d 1289, 1295 (7th Cir. 1988)…………………...20

*United States ex rel. Kirby v. Sturges*, 510 F.2d 397, 406 (7th Cir. 1975)………………………19

*United States v. Medina*, 552 F.2d 181, 190 (7th Cir. 1977)……………………………………20

*United States v. Williams*, 627 F.3d 247, 253 (7th Cir. 2010)…………………………………...10

*Vaughn v. Chapman*, 662 F. App'x 464, 467 (7th Cir. 2016)…………………………………….9

*Vega v. Tekoh*, 142 S. Ct. 2095 2103, 2105-06, 2107-08 (2022)……...……….....1, 3, 4, 5, 6, 7, 8

*Walden v. City of Chicago*, 755 F.Supp.2d 942, 965 (N.D. Ill. 2010)…………….……………..6

*Washington v. City of Chicago*, 2022 WL 2905669, *8 (N.D. Ill. July 22, 2022)……………….9

*Washington*, 2022 WL 2905669, at *12………………………………………………………….10

*Williams v. Hutchens*, 870 F.Supp. 857, 863 (N.D. Ill. 1994)…………………………………...6

*Young v. City of Chicago*, 987 F.3d 641, 644 (7th Cir. 2021)……………………….....10, 18

## The United States Code
42 U.S.C. § 1983   …….………………….………………………1, 3, 4, 5, 7, 8, 11, 19, 22

## Statutes
Fed. R. Civ. P. 50(a)(2)….………………………………………………………………... 2
Fed. R. Civ. P. 50(b)…….………………………………………………………………... 2

Defendants, Angelo Pesavento, James Oliver, the Estate of George Karl, and the Estate of Edward Siwek (collectively, Defendants), for their motion for judgment as a matter of law pursuant to Rule 50(b), state:

## **INTRODUCTION**

Defendants are entitled to judgment as a matter of law on Bolden's Fourteenth Amendment Due Process claim based on alleged unduly suggestive identification procedures, Fourth Amendment pretrial detention claim, malicious prosecution claim under Illinois law, failure to intervene and conspiracy claims, and intentional infliction of emotional distress claim. First, a violation of a prophylactic rule designed to protect a constitutional right cannot be a basis for damages under 42 U.S.C. § 1983. *See*, *e.g.*, *Vega v. Tekoh*, 142 S. Ct. 2095 (2022). The judicially created rule against unduly suggestive identification procedures is a prophylactic rule, not a constitutional right, and the remedy is the suppression of the identification after consideration of the totality of the circumstances rather than money damages under § 1983. As set forth below, Defendants were subject to liability for a claim that does not exist and are entitled to judgment as a matter of law. Even if this Court is able to reconcile *Vega* with Bolden's claim in this case, the claim is only cognizable if Bolden was prevented from litigating the suggestive identification issue at his criminal trial. No reasonable jury could find that Bolden was so prevented. Bolden knew of and had all of the evidence regarding Clifford Frazier's ("Clifford") identification of him and utilized it in a pretrial motion and at the criminal trial. As further discussed below, Defendants are entitled to judgment as a matter of law as to Bolden's Fourteenth Amendment Due Process claim.

Second, no reasonable jury could find that Defendants lacked probable cause for the charges placed against Bolden. The presumption of probable cause based on the grand jury indictment was not rebutted and the evidence Bolden presented centered on establishing whether

there was sufficient evidence to prove him guilty beyond a reasonable doubt rather than whether Defendants lacked an honest and sound suspicion that Bolden (a/k/a "Lynier") shot and killed Derrick Frazier and Ledell Clayton, returned to the area of the J&J Fish, and then shot Clifford. Even without the presumption based on the grand jury indictment, probable cause existed based on Clifford's identification of Bolden and the corroborating evidence that investigators developed. Consequently, Defendants are entitled to judgment as a matter of law on Bolden's unlawful pretrial detention and malicious prosecution claims.

Third, Defendants are entitled to qualified immunity on Bolden's Fourteenth Amendment and Fourth Amendment claims. Bolden failed to show that the Defendants' actions with respect to the lineup violated clearly established constitutional rights of which every reasonable officer would have known. Further, with respect to Bolden's Fourth Amendment claim, Bolden failed to demonstrate the Detectives lacked arguable probable cause. Fourth, the derivative failure to intervene and conspiracy claims fail as a matter of law. Finally, Bolden's intentional infliction of emotional distress (IIED) claim is derivative of his malicious prosecution claim and as probable cause existed, Defendants are immune from liability under the Illinois Tort Immunity Act.

## **STANDARD**

"A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury." Fed. R. Civ. P. 50(a)(2). If a Rule 50(a) motion made at the close of all the evidence is not granted, the movant may renew the motion not later than 28 days after the entry of judgment. Fed. R. Civ. P. 50(b). Rule 50 "allows a district court to enter judgment against a party who has been fully heard on an issue during a jury trial if "a reasonable jury would not have a legally sufficient evidentiary bases to find for the party on the issue." *Passananti v. Cook Cnty.*, 689 F.3d 655, 659 (7th Cir. 2012). In deciding a Rule 50 motion, the court should construe the

2

evidence in favor of the party who prevailed before the jury and examine the evidence only to determine whether the jury's verdict could reasonably be based on that evidence. *Tart v. Illinois Power Co.*, 366 F.3d 461, 464 (7th Cir. 2004).

## ARGUMENT

**I.  DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW ON BOLDEN'S FOURTEENTH AMENDMENT DUE PROCESS CLAIM.**

### A.  Bolden's Due Process Claim Fails Because Violating The Prophylactic Rule Against Suggestive Identification Procedures Does Not Create § 1983 Liability.

The right Bolden's Fourteenth Amendment claim sought to remedy was his guarantee of a fair trial. But Bolden did not claim that he was deprived of a fair trial because Defendants withheld material exculpatory information from him in relation to the lineup or that Defendants fabricated evidence to secure his conviction. Instead, Defendants were tried and found liable for an alleged violation of judicially created prophylactic rules which do not equate to a violation of the Constitution giving rise to § 1983 liability against a law enforcement officer. *See Vega v. Tekoh*, 142 S. Ct. 2095, 2105-06 (2022). "[T]he U.S. Constitution does not mandate that photo arrays and lineups meet a certain standard of quality." *Coleman v. City of Peoria*, Ill. 925 F.3d 336, 347 (7th Cir. 2019); *see also Hensley v. Carey*, 818 F.2d 646, 648-650 (7th Cir. 1987). A criminal defendant's right to a fair trial is safeguarded by the trial court's two-step evaluation employing the factors outlined in *Manson v. Brathwaite*, 432 U.S. 98 (1977) and *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972). *See Coleman*, 925 F.3d at 847. The *Brathwaite/Biggers* factors are judicially created guidelines to assist the criminal trial court on whether or not to admit identification evidence. *See Hensley*, 818 F.2d at 649 (holding that *Brathwaite* established "a prophylactic rule that protects a defendant's right to a fair trial by barring the admission of unreliable eyewitness identifications."). They are not themselves Constitutional guarantees giving rise to § 1983 liability

as even where identifications are deemed inadmissible by employing the *Brathwaite/Biggers* framework "an officer is not automatically liable for violating a suspect's constitutional rights whenever a judge deems a witness's identification inadmissible." *Coleman*, 925 F.3d at 347 (citing *Phillips v. Allen*, 668 F.3d 912, 915 (7th Cir. 2012)).

Here, Bolden's claim was predicated upon Defendants' supposed violation of prophylactic rules and the admission of Clifford's identification of Bolden as the man who left with the murder victims and returned to the scene and shot him. The jury heard and weighed the same evidence and was instructed with the same *Brathwaite/Biggers* factors that the criminal court evaluated when deciding to admit Clifford's identification at the trial. This is the precise scenario the Supreme Court expressly disavowed in *Vega*. *Vega*, 142 S. Ct. at 2107. Because utilizing unduly suggestive lineup procedures does not create § 1983 liability, Defendants are entitled to judgment as a matter of law as to Bolden's Fourteenth Amendment Due Process claim.

In *Vega*, the plaintiff was questioned without being given *Miranda* warnings, confessed, and the confession was introduced at the plaintiff's criminal trial. *Id*. at 2099-2100. The plaintiff sued under § 1983 claiming the failure to provide *Miranda* warnings violated his Fifth Amendment rights. *Id*. at 2100.

In addressing whether a police officer can be liable under § 1983 based on the failure to provide *Miranda* warnings and the corresponding admission of the "un-*Mirandized*" statement in the criminal prosecution, the Court reasoned that *Miranda* warnings, while "constitutionally based" are nonetheless prophylactic rules for criminal courts to employ to safeguard a person's Fifth Amendment rights. *Id*. The Court concluded that a *Miranda* violation does not create liability under § 1983 and the exclusion of unwarned statements is a sufficient remedy. *Id*. at 2107-08.

*Vega* established that a judicially crafted prophylactic rule cannot be a basis for § 1983 liability. *Id*. at 2106-2107. The Court reasoned that the "prophylactic purpose" of *Miranda* "is served by the suppression at trial of statements obtained in violation of *Miranda*." *Id*. at 2107. Allowing a would-be plaintiff to sue for damages under § 1983 based on a *Miranda* violation "would have little additional deterrent value and permitting such claims would cause many problems." *Id*. Allowing such a claim would disserve judicial economy by requiring a federal jury to decide a factual question that had already been decided by a state court. *Id*. (cleaned up). Moreover, the re-adjudication "could produce 'unnecessary friction' between the state and federal courts" by requiring a federal court to pass judgment on legal and factual issues already settled in state court. *Id*. (citing *Preiser v. Rodriguez*, 411 U.S. 475, 490-91 (1973)). This is precisely what occurred in this case. The jury here heard the same evidence regarding Clifford's identification of Bolden that the criminal court heard and was tasked with applying the same principles of law under *Brathwaite/Biggers* that the criminal court employed to admit Clifford's identification. That opposite conclusions were reached demonstrates the Court's admonishment in *Vega* that Bolden's claim undercut "the strong judicial policy against the creation of two conflicting resolutions based on the same set of facts." *Id*.

Following *Vega*, the Seventh Circuit questioned whether an unduly suggestive procedure claim is viable under § 1983 in *Holloway v. City of Milwaukee*, 43 F.4th 760, 766 (7th Cir. 2022). In this Court's order denying Defendants' Rule 50(a) Motion, this Court cited *Holloway* and *Reyes v. Nurse*, 38 F.4th 636, 644 (7th Cir. 2022), for the proposition that the Seventh Circuit recently recognized a due process claim for unduly suggestive identification procedures like Bolden's claim in this case. (Dkt. 671 at 13.) The Court held no such thing in either case. First, *Holloway* called into question the viability of such a claim in light of *Vega,* flagged the issue for future consideration

and affirmed judgment for the defendants on qualified immunity grounds. *Holloway*, 43 F.4th at 766. Second, *Reyes* did not recognize a civil claim at all but rather addressed a suggestive procedure challenge in the context of a *habeas corpus* proceeding. *Reyes*, 38 F.4th at 644.

The same reasoning in *Vega* applies with equal and full force to Bolden's claim for an alleged unduly suggestive lineup. Like *Miranda*'s prophylactic rule aimed at safeguarding a criminal defendants Fifth Amendment right from self-incrimination, courts have consistently concluded that the rule against suggestive procedures "is a prophylactic rule designed to protect a core right…," not an independent constitutional right. *Alexander v. City of South Bend*, 433 F.3d 550, 555 (7th Cir. 2006); *Swannigan v. City of Chicago*, 2016 WL 561891, *5 (N.D. Ill. Feb. 12, 2016) (describing the "prophylactic rule" designed to protect individuals from the ills of unduly suggestive line-ups); *Bell v. Weis*, 2015 WL 4972467, *3 (N.D. Ill. Aug. 19, 2015) (stating "it is well established that the constitutional interest triggered by challenges to police identification procedures 'is evidentiary in nature'" (cleaned up)); *Sattler v. Hernandez*, 2011 WL 3839658, *4 (N.D. Ill. Aug. 30, 2011) (stating "challenges to police identification procedures are evidentiary in nature…."); *Walden v. City of Chicago*, 755 F.Supp.2d 942, 965 (N.D. Ill. 2010) (describing the "prophylactic rule against unduly suggestive identification procedures"); *Williams v. Hutchens*, 870 F.Supp. 857, 863 (N.D. Ill. 1994) (stating *Stovall and Brathwaite* set forth a prophylactic rule); *Thomas v. Drochner*, 1994 WL 803263, *13 (N.D. Ill. Jan. 18, 1994) (interpreting *Hensley* as considering the "rule merely 'prophylactic' in nature'"); *Brown v. Wilson*, 1991 WL 274922, *3 (N.D. Ill. Dec. 17, 1991) (stating the rule against admission of evidence from unnecessarily suggestive lineups is a prophylactic rule).

Similar to *Miranda*, where the "fruits" of an un-*Mirandized* statement can be admitted against a criminal defendant, *Vega*, 142 S. Ct. at 2103 (cleaned up), the prophylactic rule against

unduly suggestive identification procedures allows the fruits of those procedures to be admitted under certain circumstances. *Brathwaite*, 432 U.S. at 110-14 (allowing admission of identification evidence, even if obtained by suggestive procedures, if accompanied by requisite level of reliability). Thus, the use of unduly suggestive identification procedures is a violation of a trial right, not an independent constitutional right, to be decided and potentially remedied at the criminal trial.

*Vega*'s rationale applies equally to the judicially crafted rule against suggestive identification procedures. *See Vega*, 142 S. Ct. at 2106. The prophylactic purpose of the rule is served by the suppression of the identification. *See Phillips*, 668 F.3d at 915 (stating rule "concern[s] the admissibility of evidence at criminal trials, not claims for damages against arresting officers."); *Sattler*, 2011 WL 3839658, at *4 (stating challenges to identification are evidentiary in nature). Little additional deterrent value would be gained by subjecting officers to civil liability. *See Vega*, 142 S. Ct. at 2107. Allowing an unduly suggestive procedure claim would "disserve judicial economy." *See Vega*, 142 S. Ct. at 2106. Here, a federal jury passed judgment on a matter previously decided which culminated in an inconsistent finding on the suggestive procedure issue. The jury in this case weighed in on matters not only decided by the criminal court at a pretrial motion, but also rejected by the jury at Bolden's criminal trial. In addition, the state court's conclusion that Clifford's identification was admissible, was left undisturbed for the entirety of Bolden's legal challenges in the criminal proceeding. The jury's decision in this case, created "two conflicting resolutions based on the same set of facts" which is exactly what *Vega* cautioned against. *See id*. at 2107.

In sum, Defendants were held liable under § 1983 for a violation of a prophylactic rule regarding unduly suggestive identification procedures rather than a violation of the Constitution.

For these reasons, Defendants are entitled to judgment as a matter of law on Bolden's Fourteenth Amendment Due Process claim.

### B. Even If An Unduly Suggestive Identification Claim Exists, Defendants Are Entitled To Judgment As A Matter of Law Because Bolden Had A Fair Opportunity To Litigate The Issue During His Criminal Proceedings.

To the extent *Vega* can be read to allow a § 1983 claim based on an officer's employment of unduly suggestive identification procedures, Bolden was not deprived of a fair trial because he had the opportunity to and availed himself of the processes to contest the identification during his criminal proceedings,. (Dkt. 587 at 7, 13-14; Dkt. 666 at 5-6.)

Here, Bolden possessed the lineup photos, the lineup report, the FBI sketch, his personal knowledge of the lineup, Mr. Ingles' knowledge of what occurred at the lineup, and was aware that Clifford allegedly identified him by the use, in Bolden's view, of coercive tactics. During the pretrial phase, Bolden moved to suppress the identification, presented evidence of the suggestive procedures he alleged were used, and argued that the identification was not reliable such that it should not be admitted. (Tr., 1297:3-9, 1352:11-14 (Ingles), 2432:22-25 (Foster).) Bolden made a similar argument to the jury. The criminal trial judge denied the suppression motion. (2433:4-9 (Foster).) The criminal jury heard Clifford's testimony regarding the identification and the evidence Bolden put forward on suggestiveness. The criminal jury observed the witnesses, assessed the circumstances of the identification, weighed the evidence, and found the identification reliable in finding Bolden guilty. (Tr., 2513:17-2514:8 (Foster).) As such, even if a narrow unduly suggestive procedure claim exists, Defendants are entitled to judgment as a matter of law because no reasonable jury could have concluded that Bolden did not have a fair opportunity to contest the identification at his criminal proceedings.

## II. DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW ON BOLDEN'S FOURTH AMENDMENT AND MALICIOUS PROSECUTION CLAIMS BECAUSE NO REASONALBE JURY COULD CONCLUDE DEFENDANTS LACKED PROBABLE CAUSE.

Defendants are entitled to judgment as a matter of law on Bolden's Fourth Amendment and malicious prosecution claims because probable cause existed as a matter of law. *See Thompson v. Clark*, 142 S. Ct. 1332, 1337-38 (2022). Probable cause is an absolute defense for claims of unlawful pretrial detention and malicious prosecution. *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006) (stating rule for malicious prosecution claim); *Lewis v. City of Chicago*, 914 F.3d 472, 476 (7th Cir. 2019) (stating rule for Fourth Amendment pretrial detention claim).

Bolden's Fourth Amendment claim is for a *post-legal process*, pre-trial detention without probable cause. *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 918–19 (2017) ("If the complaint is that a form of legal process resulted in pretrial detention unsupported by probable cause, then the right allegedly infringed lies in the Fourth Amendment."). Likewise, a state law malicious prosecution claim is based on the commencement or continuation of a *prosecution* without probable cause, not a false arrest. *Beaman v. Freesmeyer,* 2021 IL 125617, ¶ 117 (a grand jury indictment is *prima facie* evidence of probable cause to prosecute).

For a Fourth Amendment pretrial detention claim a plaintiff must show that detention lacked probable cause. *Mitchell v. Doherty*, 37 F.4th 1277, 1283-86 (7th Cir. 2022); *Washington v. City of Chicago*, 2022 WL 2905669, *8 (N.D. Ill. July 22, 2022). For both claims, probable cause is evaluated at the time legal process is initiated, not the time of arrest. *Thompson v. Clark*, 142 S. Ct. 1332, 1337-38 (2022) (holding the plaintiff must prove under the Fourth Amendment, "the wrongful initiation of charges without probable cause"); *Vaughn v. Chapman*, 662 F. App'x 464, 467 (7th Cir. 2016) (analyzing and finding the same for an Illinois malicious prosecution claim, holding the time the criminal complaint was filed, not the arrest, is when probable cause

9

should be evaluated). The legal process begins when "[a] judge, relying on the criminal complaint" finds "probable cause for further detention." *Mitchell*, 37 F.4th at 1283.

Probable cause requires only a probability of criminal activity and is a state of facts that would lead a person of ordinary care to believe or entertain an honest and sound suspicion that the accused committed the offense charged. *Young v. City of Chicago*, 987 F.3d 641, 644 (7th Cir. 2021) (cleaned up); *Sang Ken Kim v. City of Chicago*, 368 Ill. App. 3d 648, 654 (2006) (cleaned up). Probable cause may be based on information from other persons as well as on the defendant's personal knowledge. *Id.* at 655; *Turner v. City of Chicago*, 2015 WL 7568373, *3 (N.D. Ill. Nov. 25, 2015). Critically, probable cause may be established by considering all the information collectively known by multiple officers when officers are working in concert, even if that information is not specifically known to the officer who makes the arrest. *People v. Buss*, 187 Ill. 2d 144, 204 (1999); *United States v. Williams*, 627 F.3d 247, 253 (7th Cir. 2010) (stating DEA's knowledge of facts supporting probable cause imputed to a local law enforcement officer). Probable cause can also be based on hearsay. *Franks v. Delaware*, 438 U.S. 154, 165 (1978); *People v. Gocmen*, 2018 IL 122388, ¶ 43.

### A. Bolden Failed to Rebut the *Prima Facie* Evidence of Probable Cause Based on the Indictment.

A grand jury indictment is *prima facie* evidence of probable cause that can be rebutted if it was obtained through improper or fraudulent means. *Coleman*, 925 F.3d at 351. This requires a showing that each defendant made some post-arrest action that "influenced the prosecutor's decision to indict." *Washington*, 2022 WL 2905669, at *12 (citing *Colbert v. City of Chicago*, 851 F.3d 649, 655 (7th Cir. 2017)).

Bolden did not overcome the presumption of probable cause generated by the indictment issued on March 23, 1994. (PTX 153 at EB131.) Bolden did not to present any evidence from the

Cook County Assistant State's Attorney who sought the indictment and presided over the grand jury proceedings. Bolden did not to present any evidence of conversations between any Defendant and the Assistant State's Attorney during the month between Bolden's arrest and the indictment. In fact, the record is entirely silent as to why the prosecutor chose to indict Bolden nearly a month after he was arrested and detained on the murder charges. Bolden presumes the decision to indict was based on the police reports documenting the investigation, but he failed to present or elicit any evidence of this from the Cook County prosecutors who testified at trial. Felony Review ASA Beligratis' investigation and his documentation in the felony review folder (Tr., 3660:5-22, 3662:1-63:18 (Beligratis); Felony Review Folder, JTX 24), or on any investigation done by the grand jury ASA could have been the basis for the State to seek the indictment. *See Burrell v. Village of Sauk Village*, 2017 IL App (1st) 163392, ¶ 19 (stating probable cause existed where felony review approved charges). The point is Bolden presented no evidence one or way or the other and his conjecture does not constitute evidence. *See Henderson v. Rangel*, 2022 WL 3716263, *4 (N.D. Ill. Aug. 26, 2022) (theory calling for conjecture is not evidence).

The only post-arrest action that Bolden elicited is Pesavento's grand jury testimony, but Bolden cannot use that testimony to rebut the presumption. *See Rehberg v. Paulk*, 566 U.S. 356, 369 (2012) (grand jury witness has absolute immunity from any § 1983 claim based on witness' testimony and this rule may not be circumvented by using the testimony to support any other claims concerning the initiation or maintenance of a prosecution). Bolden faulted Pesavento for not offering information that was unresponsive to questions, but that too is an insufficient basis for liability. *See St. Paul Fire & Marine Ins. Co. v. City of Waukegan*, 2017 IL App (2d) 160381, ¶ 46 (stating it is up to the prosecutor to decide what evidence will be presented).

Even if Pesavento's grand jury testimony is sufficient to rebut the presumption of probable cause as to him, Bolden's claim fails against the remaining Defendants because he offered no evidence of any post-arrest conduct they engaged in which influenced the prosecutor's decision to indict. Karl, Siwek,[1] and Oliver did not testify at the grand jury. *See Rivera v. Guevara*, 319 F. Supp. 3d 1004, 1055 (N.D. Ill. 2018) (finding presumption not rebutted against defendants who did not testify at the grand jury). Moreover, Oliver did not write any police reports, either pre-arrest or post-arrest and there is no evidence that Oliver spoke with ASA Beligratis (Tr., 3666:9-24 (Beligratis); 1795:7-12, 1834:13-18 (Oliver).) Thus, Oliver, Karl, and Siwek are entitled to judgment as a matter of law on Bolden's Fourth Amendment and malicious prosecution claims.

## B. Clifford's Lineup Identification, Corroborated by the Other Evidence, Established Probable Cause.

Even without the presumption of probable cause based on the indictment, Bolden did not adduce sufficient evidence to support his claim that Defendants lacked probable cause. Clifford identified Bolden as the offender at the lineup, and while this jury apparently concluded that the identification should not have been admitted at Bolden's trial, officers can rely on inadmissible evidence to support probable cause. *Phillips*, 668 F.3d at 915. That reliance was appropriate because "there are no facts to suggest that they knew the identification …was false." (Dkt. 276 at

---

[1] In denying Defendants' Rule 50(a) motion regarding Siwek's lack of personal involvement, the Court relied on Pesavento's testimony that Siwek assisted in the lineup and ASA Beligratis' testimony that Siwek requested murder charges be approved. (Dkt. 671 at 36 n.. 8.) However, this testimony does not establish that Siwek engaged in wrongful conduct. First, Bolden did not testify that Siwek did anything improper during the lineup. *See Colbert*, 851 F.3d at 657 (finding no personal involvement of certain defendants where plaintiff did not identify them as participating in the alleged misconduct). Further, Bolden only identified Siwek as being present for his post-arrest interview. (Tr., 2767:17-19, 2941:6-8, 3025:3-9 (Bolden).) ASA Beligratis testified that he did not recall who made the request for charges, rather than it was Siwek. (Tr., 3666:9-13 (Beligratis).) The evidence Bolden submitted was insufficient to conclude Siwek was personally involved in the alleged constitutional violations. *See Logan*, 891 F.Supp.2d at 904 (finding involvement in investigation insufficient to establish personal involvement where officer had no role in the specific constitutional violation alleged).

48.) Not only did Clifford identify Bolden at the lineup, he also identified him as the offender to ASA Beligratis prior to charges being approved, to ASA Peters prior to Bolden's criminal trial, and to the jury at Bolden's criminal trial. (Tr, 3660:12-22 (Beligratis), 2613:13-2615:19 (Peters), 3370:24-3371:4 (Clifford).) In all of those instances, Clifford's identification was deemed reliable and believable in spite of known discrepancies between Clifford's various statements. Corroborating Clifford's identification of Bolden was a plethora of other evidence linking Bolden to the crime, and as discussed below, establish probable cause even without Clifford's identification.

### C. Probable Cause Existed Even Without Clifford's Lineup Identification of Bolden.

Probable cause existed even without Clifford's lineup identification of Bolden. In *Holland v. City of Chicago* 643 F.3d 248, 250 (7th Cir. 2011), the plaintiff was arrested, charged, and convicted of sexual assault before being released from custody once the State determined that the plaintiff's uncle was the offender. On the morning of the crime, officers responded to the scene and observed a man running from the driver's side of a car and the victim exiting the car from the passenger's side. *Id.* at 251. The victim stated the man raped her. *Id.* She described the offender as wearing jeans with cartoons on them and that he was armed with a knife which he dropped in an alley. *Id.* Additional officers began tracking footprints in the snow and looking for the knife. *Id.* Approximately one block away, an officer discovered the plaintiff holding various items, including a pair of jeans with cartoons around the waistband and inside the pocket of the jeans was the plaintiff's ID. *Id.* Officers tracked the footprints to the home of the plaintiff's grandmother and uncle. *Id.* At the house, the police found a pair of wet sneakers, which appeared to match the footprints in the snow, but the sneakers were slightly bigger than the plaintiff's shoe size. *Id.* The car was registered to the plaintiff's uncle. *Id.* The plaintiff was taken to the victim for a show-up

13

and was identified as the offender. *Id*. The plaintiff later told investigators he was asleep at his grandmother's house when the crime occurred and family members could verify his alibi, but none actually did. *Id*. at 252. The victim gave so many various conflicting accounts of the show-up that the Seventh Circuit did not consider the identification in deciding probable cause. *Id*. at 251-54.

The Seventh Circuit concluded probable cause existed even without the victim's identification. *Id* The Court relied on the circumstantial evidence pointing towards the plaintiff. Specifically, the shoe prints in the snow leading from the crime scene to the plaintiff's grandmother's house; the plaintiff's presence near the crime scene holding jeans which matched the victim's description of what the offender was wearing; and that the plaintiff's alibi did not check out. *Id*. The Seventh Circuit held that even if the victim had said the plaintiff was not the offender, there still would have been probable cause. *Id*.

Similar to *Holland*, probable cause existed even without Clifford's lineup identification of Bolden. The police investigation revealed that the motive for the killings (and shooting of Frazier) was the victims' failure to pay street taxes for the ability to conduct drug dealing in the territory controlled by Anthony "Ant" Williams, a high-ranking Gangster Disciple. (PTX 153 at EB131; Tr., 1874:2-7 (Oliver); 3844:15-3845:14 (Tipton).) The location where these crimes occurred was not random but purposeful. The victims met with Ant and Ant's associate at the J&J Fish, a business controlled by Ant. (JTX 25; Tr., 3844:15-3845:14 (Tipton).) The victims left in a vehicle with Ant's associate, who was in the back seat of the vehicle. (JTX 25; JTX 4 at CHI.BOLDEN 13421.) But they traveled less than three quarters of a mile and the vehicle pulled over and stopped at 6546 S. Minerva. (*Id*. at CHI.BOLDEN 13424-29.) Derrick and Clayton were both shot in the back of the head. (*Id*. at CHI.BOLDEN 13413-14.)

Lee Williams reported to police he heard gunshots and saw a male Black, in his early twenties wearing dark clothing get out of the backseat of the vehicle and walk north on Minerva (the direction of the J&J Fish). (*Id.* at CHI.BOLDEN 13421-22.) By the time of trial, Mr. Williams backtracked on some of the details on whether he could make out the gender of the person he saw exit the vehicle after the shooting. (Tr., 1572:15-25 (Lee).) Not surprising given he was testifying in double-murder trial. (Tr., 2626:4-18 (Peters).) The gun used in the shooting was never recovered but forensic analysis of the shell casings recovered confirmed that the same gun was used to kill Derrick and Clayton and shoot Clifford. (JTX 13 at EB 443-44.)

Clifford, consistent with Lee Williams, stated that he was shot by the same Black man that had left with his brother and cousin. (JTX 25.) Clifford told investigators that prior to getting in the car with the perpetrator, the victims met inside the J&J with two individuals: someone who seemed to be the in-store manager and the shooter. (*Id.*) Shortly after the shooting, Clifford told third district officers that Lynier was with Ant in the J&J restaurant prior to the murders. (JTX 4 at CHI.BOLDEN 13402; Tr., 1048:9-1050:16 (Pesavento); Tr., 3401:12-25 (Clifford).) Those officers relayed that information to Detectives Higgins and Rowan. (JTX 4 at CHI.BOLDEN 13402.)

Clifford's statement that Lynier was with Anthony Williams shortly before the murders was corroborated, in part, by Tenesha Gatson and Ant. Ant was questioned on February 1, 1994 by Pesavento. (*Id.* at CHI.BOLDEN 13411-12.) He reported that Lynier was with him prior to the murders and admitted that he spoke with the murder victims. (*Id.*) But Ant also told the detectives he did not know Lynier's real name, and apart from his pager number, had no other information that could help the detectives identify Lynier. (*Id.*) Defendants discovered this was not accurate when James Williams identified Lynier as having lived above the J&J Fish shortly before the

15

murders and when Lynier stated that he had known Ant for approximately 15 months[2]. (*Id*. at CHI.BOLDEN 13406; JTX 11)

Tenesha Gatson also confirmed that "Lynier" was speaking to Ant in the J&J Fish shortly before the shootings. (JTX 4 at 13417). Gatson was questioned on the night of the homicides by Pesavento. She reported that Lynier and Ant talked in the J&J Fish for approximately fifteen minutes shortly before the shootings. (*Id*.)

No one questioned from the J&J Fish on the night of the shooting corroborated Bolden's alibi. None reported that Bolden had been playing Ms. Pac Man inside the J&J Fish when Frazier was shot or that Bolden had called 911, and Bolden did not appear on the witnesses listed on the responding officer's police report. (JTX 4 a CHI.BOLDEN 13411-12, 13417; PTX 24.)

Cynthia Steward, the fiancée of Ledell Clayton, told officers that a gang leader who could have ordered the hit on the murder victims was Ant. (Tr., 1963:18-22, 1991:2-8 (Steward).) Steward's statement corroborated that Ant was a Gangster Disciple governor who could order people killed. (Tr., 1874:2-10 (Oliver).) Officers knew that a meeting prior to the murders took place at the J&J Fish, a business ostensibly run by Ant's family but in reality a front for Ant's drug operation. (Tr., 3879:7-80:3 (Baker); JX 25; Tr., 1387:18-22 (Edna); Tr., 3844:1-45:14 (Tipton).) It follows that the person who carried out Ant's order was a trusted associate of Ant's, named Lynier.

The investigators did not have Bolden's name or have any information connecting him to the shooting until they were able to link Bolden to the name Lynier. Officer Oliver received a tip from an individual working on an FBI task force concerning Ant, which he passed on to the

---

[2] This information was also redacted; the fifteen-month-time period was Bolden's release from custody on the manslaughter conviction to the date of the double murders of Derrick and Clayton and the shooting of Clifford.

detectives, that the shooter was Lynier, whose real name was Eddie Bolden. (Tr., 1899:24-1900:13, 1901:3-9, 1901:10-1902:5 (Oliver); JTX 13 at EB 443.) James Williams, Ant's father, was shown a photograph of Bolden, identified him as Lynier, a/k/a Eddie Bolden, and stated he previously lived above the J&J Fish. (*Id.*) Ant's father never said to investigators that he was a witness to the shooting. (JTX 4 at CHI.BOLDEN 13423.)

In addition, although this Court prohibited evidence of gang membership or prior criminal history, Defendants also knew the following: Ant was a known high-ranking member of the Gangster Disciples. (Tr., 1874:2-7 (Oliver).) Bolden was a Gangster Disciple who had two gang tattoos on his body. (JTX 5.)[3] Most importantly, investigators, by pulling Bolden's booking photo and through notations on the arrest report and felony review folder knew that Bolden previously killed someone and was on parole. (*Id.*; JTX 24 at CCSAO 1117; DX 1; Tr., 738:3-20, 739:7-22 (Hickey).)[4]

After Bolden was identified in the lineup, he was interviewed by ASA Beligratis. Bolden denied that he committed the crime, but never identified Roderick Stewart as the perpetrator, as Bolden claims now. (Tr., 3662:17-20 (Beligratis).) No other witness had identified an alternate shooter. (*See* generally JTX 4.) Similar to the plaintiff in *Holland*, Bolden's interview with the detectives and ASA Beligratis aroused suspicion rather than dispelled probable cause. First, rather than claim he called 911, Bolden claimed that he pushed some kind of alarm which notified the police to come to the J&J Fish (JTX 11); there was no such alarm at the restaurant (Tr., 1413:7-13 (Edna)). Bolden stated he had known Ant for 15 months; but Ant denied knowing Bolden. (JTX 11.) ASA Beligratis noted that Bolden was dressed in an expensive jacket and Reebok Pump shoes

---

[3] The Court barred this evidence and admitted a redacted version of Bolden's arrest report even though the Defendants had the information about the gang tattoos on an unredacted report.
[4] The Court also barred evidence of Bolden's prior conviction and the admitted exhibits redacted this information.

and had a private attorney accompany him; but Bolden said he was unemployed and was being supported by his wife through her public aid. (JTX 24 at CCSAO 1118.).[5] Defendants did not have to believe Bolden's alibi or account that he was actually a witness (an account that he never came forward with at the time of the shootings even though the police were looking for him until after he appeared in the police station and submitted to a lineup). (Tr. 1304:10-15, 1313:8-12 (Ingles).) Bolden's protestation of innocence does not inform the probable cause issue. Further, Defendants were under no obligation to test Bolden's claims of innocence, *Young v. City of Chicago*, 987 F.3d at 644 (protestations of innocence do not vitiate probable cause). The law does not require police officers conduct a detailed investigation, and the inquiry is "**not** whether it was reasonable to conduct further investigation." *Spiegel v. Cortese*, 196 F.3d 717, 724-25 (7th Cir. 1999) (cleaned up).

In the end, after receiving a tip that Lynier was the shooter and after Clifford stated Lynier was with the victims and Ant at the J&J Fish, the detectives arrested a Lynier who lied to investigators during questioning, and who was curiously not documented by the police as being present when they arrived to conduct the investigation. Even without Clifford's lineup identification, Defendants had an honest and sound suspicion that Bolden was the associate Ant tapped to measure street justice to drug dealers who were failing to pay the street tax owed for operating in his territory. Defendants are entitled to judgment as a matter of law as to Bolden's Fourth Amendment and Malicious Prosecution claims because they did not lack probable cause. *See Holland*, 643 F.3d 248, 254-55.

---

[5] Again, although evidence of gang membership was not permitted, due to this show of opulence, ASA Beligratis suspected that Bolden was a member of the Gangster Disciples and it aroused suspicion then when Bolden denied it during his interview. (JTX 24)

III.    DEFENDANTS HAVE QUALIFIED IMMUNITY FOR BOLDEN'S FEDERAL
        CLAIMS.

Officers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time. *Holloway*, 43 F.4th at 767. The unlawfulness of challenged conduct is clearly established only if it is dictated by controlling authority, or a robust consensus of cases of persuasive authority, such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Id.* It is essential to evaluate the public official's conduct at the correct level of granularity. *Id.* It is Bolden's burden to establish both elements. *Id.*

There is no pre-1994 precedent that clearly established that an officer can be liable under § 1983 for using impermissibly suggestive identification procedures. Even if *Alexander* can be read to allow for this type of claim, it was not decided until 2006. *Alexander,* 433 F.3d 550. The claim was not clearly established law in 1994, and Defendants therefore have qualified immunity.

The constitutional right at issue is the right to a fair trial, not a right to be free from an unduly suggestive lineup. Put differently, the constitutional violation Bolden complains of occurred in the courtroom, not in the police station. *See United States ex rel. Kirby v. Sturges*, 510 F.2d 397, 406 (7th Cir. 1975). The constitutional issue is whether an identification, even if unduly suggestive, is still sufficiently reliable to be admitted at the criminal trial, and that is an issue for judges, not the police. *Hensley*, 818 F.2d at 648-50.

Even if the evidentiary standards judges apply when determining whether an identification should be admitted could be applied to the police, the existing law in 1994 did not clearly establish that the procedures used in this case would lead to an identification which, if admitted, would violate a criminal defendant's due process rights. Rather, what was clearly established is that the Supreme Court consistently refused to prohibit the use of specific identification procedures. *See*

*Simmons v. United States*, 390 U.S. 377, 384 (1977); *Brathwaite*, 432 U.S. at 113. Instead, if a specific procedure was impermissibly suggestive in a particular case, courts would do a case-specific analysis under the *Brathwaite* factors to determine whether the suggestive identification was still sufficiently reliable to be admissible.

In this case, Bolden did not show that the clearly established law prohibited any of the allegedly suggestive procedures and that the resulting identification at trial would always violate due process. First, physical differences between the suspect and the lineup fillers are expected and not prohibited. Case law suggests that even where a suspect is seven inches shorter than the fillers does not necessarily result in a due process violation. *Israel v. Odom*, 521 F.2d 1370, 1372 (7th Cir. 1975). Second, allowing a witness to see a photograph of the suspect prior to the lineup does not necessarily violate due process. *United States v. Jeffrey Earl Johnson*, 859, F.2d 1289, 1295 (7th Cir. 1988) (stating even if witness saw suspect's photograph before viewing lineup, it would not mean as a matter of law that he could meet his burden of proving the identification procedure was impermissibly suggestive). Third, telling the witness that the suspect was in the lineup does not necessarily violate due process. *United States v. Medina*, 552 F.2d 181, 190 (7th Cir. 1977). Fourth, allowing the suspect to walk by the witness does not necessarily violate due process. *See U.S. ex rel. Hudson v. Brierton*, 699 F.2d 917, 924 (7th Cir. 1983) (stating where witness was shown suspect while suspect was locked in a jail and surrounded by police was sufficiently reliable).

In denying Defendants qualified immunity, this Court relied on *Hampton v. City of Chicago*, 2017 WL 2985743 (N.D. Ill. 2017) for the proposition "that it would violate due process to signal to a witness during the viewing of a [lineup] the identity of the suspected offender. (Dkt. 671 at 37.) However, that was a district court's holding, not controlling precedent from the

20

Supreme Court or Seventh Circuit. Moreover, the reasoning of *Hampton* is unpersuasive. In reaching its holding, *Hampton* concluded that *Newsome v. McCabe*, 256 F.3d 747 (7th Cir. 2001) "was sufficiently on point" to put a police officer notice that signaling to a witness who to identify would violate due process. *Hampton*, 2017 WL 2985743, at *29. But *Newsome* was not "on point," rather it held that it was clearly established in 1980 that the police could not withhold exculpatory information about the conduct of the lineup. *Newsome* 256 F.3d at 752. Here, Bolden does not and cannot claim a due process violation based on withholding exculpatory information about the conduct of the lineup as he was aware of all the facts regarding the lineup and litigated the issue prior to his criminal trial. Contrary to *Hampton*'s conclusion, *Newsome*'s holding would not be clear enough that every reasonable officer would interpret it as establishing that signaling to a witness who to identify would necessarily violate due process. Accordingly, Defendants are entitled to qualified immunity on Bolden's due process claim.

The Defendants are also entitled to qualified immunity for Bolden's Fourth Amendment claim. In the context of the Fourth Amendment, qualified immunity protects officers who "reasonably but mistakenly conclude that probable cause exists." *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). To defeat qualified immunity, Bolden must present controlling authority or a robust consensus of cases of persuasive authority that clearly prohibits the officer's conduct in the particular circumstances. *District of Columbia v. Wesby*, 138 S. Ct. 577, 589-90 (2018).

As discussed above, there was probable cause based on Clifford's account of the incident, corroborating firearms evidence, witnesses tying Bolden to Ant and putting Bolden at the scene, a tip from the FBI that Lynier, a/k/a Bolden was the offender, Ant distancing himself from Bolden, Gatson pretending not to know Bolden, Bolden's alibi contradicted by Officer Temple and corroborated by no one, Bolden's suspected deceit at the interview with ASA Beligratis and

Clifford's lineup identification.[6] Even if the identification was unnecessarily suggestive and a court later ruled it was too unreliable to be admissible, officers can rely on inadmissible evidence to support probable cause. *Phillips*, 668 F.3d at 915 (stating evidence does not need to be admissible to support probable cause).

This Court focused on Clifford's identification of Bolden in the lineup to conclude that "there is no probable cause to arrest Bolden if the only witness against Bolden could not stand on his own two feet." (Dkt. 671 at 41-42.) However, this Court did not address the evidence apart from Clifford's identification which established probable cause. While Clifford's identification may have been necessary to secure a conviction, it was not legally necessary to establish probable cause. *See Holland*, 643 F.3d at 252 (stating probable cause would have existed based on circumstantial evidence even if the only eyewitness said the plaintiff was not the offender). As this Court stated, "a single tipster could supply probable cause." (Dkt. 667 at 41-42 (citing *Gamenos v. Jewel Cos.*, 797 F.2d 432, 440 (7th Cir. 1986)). As discussed above, the facts are more than sufficient to establish probable cause and at the very least reasonable minds could differ on the existence of probable cause. Thus, Defendants are entitled to qualified immunity.

## IV. DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW ON BOLDEN'S FAILURE TO INTERVENE AND CONSPIRACY CLAIMS.

Bolden's failure to intervene[7] and conspiracy claims are derivative of his Fourteenth Amendment Due Process and his Fourth Amendment claims. *See Smith v. Gomez*, 550 F.3d 613,

---

[6] And had the Court allowed it, Bolden's gang membership, prior manslaughter conviction, and parole status.

[7] Failure to intervene claims have no basis in the Constitution and should not be used to hold officers liable under § 1983. *Mwangangi v. Nielsen*, 48 F.4th 816, 834 (7th Cir. 2022) (Easterbrook concurring). Section 1983 supports only direct, not vicarious, liability and a failure to intervene sounds like vicarious liability. *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676-77 (2009); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978)). The Constitution establishes negative liberties – the right to be free from official misconduct – not positive rights to have public employees protect private interests. *Id.*

617 (7th Cir. 2008). To the extent this Court grants judgment in favor of Defendants on the Fourteenth Amendment and Fourth Amendment claims, Defendants are also entitled to judgment on the failure to intervene and conspiracy claims as there is no underlying constitutional violation.

## V. BOLDEN'S IIED CLAIM FAILS BECAUSE THE DEFENDANTS ARE ENTITLED TO IMMUNITY.

Under the Illinois Tort Immunity Act, "a public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, unless he acts maliciously and without probable cause." 745 ILCS 10/2-208. Bolden testified that he experienced emotional distress because of his arrest, prosecution, and incarceration. The nature of Bolden's IIED claim, therefore, is based on his emotional distress from being prosecuted, making the claim derivative to his malicious prosecution claim. As discussed above, Bolden's malicious prosecution claim fails because probable cause existed, thus his IIED claim also fails because the defendants are entitled to immunity under the Illinois Tort Immunity Act. *See Messino v. City of Elmhurst*, 2021 WL 4318082, at *6 (N.D. Ill. Sept. 23, 2021) (stating the existence of probable cause sufficient to invoke immunity).

WHEREFORE, Defendants respectfully request this Court grant judgment in their favor as a matter of law on Bolden's Due Process, Fourth Amendment pretrial detention, malicious prosecution, failure to intervene, conspiracy, and IIED claims.

Respectfully submitted,

/s/ *Brian J. Stefanich*
Special Assistant Corporation Counsel
One of the Attorneys for Defendant Officers

Andrew M. Hale (andy@halemonico.com)
Barrett Boudreaux (bboudreaux@ halemonico.com)

(citing *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989); *Castle Rock v. Gonzales*, 545 U.S. 748 (2005)).

William E. Bazarek (web@halemonico.com)
Brian J. Stefanich (bstefanich@ halemonico.com)
HALE & MONICO LLC
53 W. Jackson, Suite 330
Chicago, IL 60604
312-341-9646

24