UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EDDIE L. BOLDEN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17-cv-417 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| ANGELO PESAVENTO, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Defendants' motion for remittitur of punitive damages (Dckt. No. 682) is hereby denied.

Plaintiff Eddie Bolden was in prison for 22 years for a double murder, before his convictions were vacated. After regaining his freedom and clearing his name, Bolden sued the City and four police officers involved in his arrest and convictions. He brought a host of constitutional claims under 42 U.S.C. § 1983, and state law claims.

After a three-week trial, Bolden ran the table. He won on all seven counts. The jury awarded $25 million in compensatory damages. It also awarded $100,000 (each) in punitive damages against Defendants Angelo Pesavento and James Oliver, two of the officers involved in Bolden's conviction (the other two officers are deceased). That's a grand total of $25 million in compensatory damages, and $200,000 in punitive damages.

Putting those numbers in perspective, that's $200,000 in punitive damages for 22 years in prison. Doing a little math, 22 years is 8,030 days. So, doing a little more math, the jury awarded punitive damages totaling less than $25 per day in prison ($200,000 ÷ 8,030 days = $24.90 per day). That's roughly $1 per hour in prison.

Most of the time, parties seek a reduction in punitive damages when the punitive damages are a multiple of the compensatory damages. That's not what happened here. The jury awarded $25,000,000 in compensatory damages and only $200,000 in punitive damages. That's $2 in punitive damages for every $250 in compensatory damages. The punitive damages are a fraction, not a multiple.

"Punitive damages punish blameworthy behavior and deter defendants from committing future bad acts – the more reprehensible a defendant's conduct and the more easily a defendant can conceal violations, the higher the punitive damages." *Beard v. Wexford Health Sources, Inc.*, 900 F.3d 951, 953 (7th Cir. 2018).

Punitive damages are available in a section 1983 action. *See Smith v. Wade*, 461 U.S. 30, 35 (1983); *see also Green v. Howser*, 942 F.3d 772, 781 (7th Cir. 2019). To receive punitive damages under section 1983, a plaintiff must show that "the defendants' conduct was motivated by 'evil motive or intent' or 'reckless or callous indifference.'" *Ollie v. Atchison*, 753 F. App'x 406, 407 (7th Cir. 2019) (citing *Smith*, 461 U.S. at 56).

The plaintiff can satisfy this requirement by showing that "the defendant actually derives satisfaction from hurting the plaintiff." *Soderbeck v. Burnett Cnty.*, 752 F.2d 285, 289 (7th Cir. 1985). Or the plaintiff can show that the defendant "while not having any particular desire to hurt the plaintiff, trample[d] on the plaintiff's rights, in a fashion that can fairly be called reckless, to accomplish his own aims." *Id.*; *see also Hardy v. City of Milwaukee*, 88 F. Supp. 3d 852, 860 (E.D. Wis. 2015).

Having sat through the trial, and listened to the testimony, the Court is left with the firm conviction that the jury heard enough evidence to support a finding of malice. The jury represented the community, and the record included lots of evidence that the conduct violated the community's sensibilities. After listening attentively to weeks of testimony, the jury was well positioned to evaluate what they heard and decide whether the conduct was out-of-bounds. In the end, when it was all said and done, the jury decided that the conduct was malicious.

In a separate ruling, this Court summarized the evidence that supported a finding of an unduly suggestive lineup. *See* 3/23/24 Mem. Opin. & Order (Dckt. No. 724). Any interested reader can look over there for more details. Suffice it to say that the jury heard plenty of evidence that the lineup was deeply problematic. That body of evidence provides the backdrop for a finding of malice.

But the jury heard darker evidence, too.

Consider, for example, Bolden's testimony about his conversation with the officers after the lineup. Bolden proclaimed his innocence, and told the officers that he didn't do it. According to Bolden, Detective Pesavento responded to Bolden that no one cared about him. The response was horrible:

> Q: Who took you to the booking area, Mr. Bolden?
>
> A: Detective Karl and Detective Pesavento.
>
> Q: On the way to the booking area, did you have a conversation with the two of them?
>
> A: Yes.
>
> Q: What did you say?
>
> A: I said, "You all know I didn't do this. You're not going to get away with it."

2

> Q: And after you said "You all know I didn't do this, you're not going to get away with it," what happened?
>
> A: Detective Pesavento looked at me, and he said – pardon my language – he said, "*You're just another nigger. No one gives a fuck about a nigger.*"

*See* 10/21/21 Trial Tr., at 2769:5-17 (Dckt. No. 646) (Bolden) (emphasis added).

The jury heard other evidence that could support a finding of malice, too. Bolden testified that the police told his mother that they would blow his brains out. *See* 10/21/21 Trial Tr., at 2757:4-11 (Dckt. No. 646) (Bolden).

Officer Oliver allegedly threatened Clifford Frazier (the witness from the lineup), and put pressure on him. Officer Oliver allegedly took keys to safe deposit box owned by Derrick Frazier, the murder victim. *See* 10/25/21 Trial Tr., at 3412:13 – 3413:3, 3415:20 – 3428:21 (Dckt. No. 653) (Frazier). Officer Oliver intimidated Frazier – the witness in the lineup – and scared Frazier to dissuade him from reporting any misconduct to Internal Affairs. *Id.*

The officers focused on Bolden from the get-go, and showed little interest in pursuing other leads. The jury heard lots and lots of evidence that called into question whether the officers investigated the murders in good faith.

And so on. A reasonable jury could reach the conclusion that the officers showed more interest in getting an answer than getting the *right* answer.

Again, the record was mixed, and no jury verdict was foreordained. The jury didn't have to find malice, but the jury heard enough to support a finding of malice.

During closing arguments, Bolden's counsel asked the jury to award punitive damages against each of the Defendants, totaling $25,000 (each). Bolden's counsel asked the jury *not* to award more than $100,000 in punitive damages per Defendant. "We would ask that you consider a damages amount for punitive damages of $25,000 for each of them, but *in no event more than $100,000* for each of them for punitive damages."[1] *See* 10/27/21 Trial Tr., at 4016:19-21 (Dckt. No. 656) (emphasis added).

In the end, the jury awarded the maximum amount of punitive damages requested by Bolden: $100,000 per Defendant. That award speaks volumes about what the jury thought about the evidence.

Defendants contend that, even if punitive damages were appropriate, the damages are excessive. *See* Defs.' Mtn., at 1–2 (Dckt. No. 682).

---

[1] Bolden's counsel also requested $2 million per year for the 22 years of incarceration, for a total of $44 million in compensatory damages. *See* 10/27/21 Trial Tr., at 4016:2-10 (Dckt. No. 656). The jury awarded $25 million.

Excessive punitive damages awards violate the Due Process Clause. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003). To put a fine point on it, an award of punitive damages violates due process if it is "grossly excessive" compared to a state's legitimate interest "in punishing unlawful conduct and deterring its repetition." *See BMW of North America, Inc. v. Gore*, 517 U.S. 559, 568 (1996).

"In applying that standard, the district court should consider: (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the harm (or potential harm) suffered by the plaintiff and the punitive-damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *Sommerfield v. Knasiak*, 967 F.3d 617, 623 (7th Cir. 2020).

Reprehensibility is the first – and most important – consideration. "Perhaps the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *Gore*, 517 U.S. at 575; *see also Epic Sys. Corp. v. Tata Consultancy Servs. Ltd.*, 980 F.3d 1117, 1141 (7th Cir. 2020).

In assessing reprehensibility, the Court must consider whether "the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident." *Id.* (quoting *Campbell*, 538 U.S. at 419); *see also Kunz v. DeFelice*, 538 F.3d 667, 679 (7th Cir. 2008).

"If none of these factors weigh in favor of the plaintiff, the award is 'suspect.'" *Epic Sys. Corp.*, 980 F.3d at 1141. But if even "one factor weighs in the plaintiff's favor, that may be enough to sustain the punitive award." *Id.*

Again, on this record, the jury heard more than enough to conclude that Defendants engaged in reprehensible behavior. Bolden basically testified that the officers ginned up a phony lineup, and ignored the fact that the witness (Frazier) pointed to someone else. Defendants put all of their eggs in the Frazier basket. They built their case around Frazier's testimony, even though they knew that his testimony was riddled with problems.

On this record, a reasonable jury could conclude that the officers didn't think much about putting away Bolden for life. The evidence could support a conclusion that the officers simply wanted a conviction, and were not interested in hearing other evidence that stood in the way.

The next consideration is the ratio between the compensatory and punitive damages awards.

The Supreme Court has "been reluctant to identify concrete constitutional limits on the ratio between harm, or potential harm, to the plaintiff and the punitive damages award." *Campbell*, 538 U.S. at 424. To that end, it has "consistently rejected the notion that the constitutional line is marked by a simple mathematical formula." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 501 (2008).

4

The Supreme Court has determined that "in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." *See Campbell*, 538 U.S. at 425. When compensatory damages are high, a lesser ratio, "perhaps only equal to compensatory damages" may be required to satisfy due process. *See Baker*, 554 U.S. at 501 (quoting *Campbell*, 538 U.S. at 425).

Here, the compensatory damages far outweigh the punitive damages. As a reminder, the jury awarded $25 million in compensatory damages, compared with $100,000 (each) in punitive damages against Officers Pesavento and Oliver. That's a ratio of 250 to 2.

Defendants do not argue that the second guidepost supports a reduction in punitive damages. *See* Defs.' Mtn., at 3 (Dckt. No. 682) (arguing only that the first and third guideposts show that a reduction in punitive damages is warranted).

The third guidepost requires a consideration of the parallel remedies available to the plaintiff.

A court must compare the punitive damages in the case at hand to "civil or criminal penalties that could be imposed for comparable misconduct." *See Gore*, 517 U.S. at 583. The Supreme Court has instructed that civil penalties have more bearing on "determin[ing] the dollar amount of the award" than criminal penalties. *See Campbell*, 538 U.S. at 428.

"[T]his guidepost generally deserves less weight than the other two." *Rainey v. Taylor*, 941 F.3d 243, 255 (7th Cir. 2019) (citations omitted); *see also Epic Sys. Corp.*, 980 F.3d at 1145. Nonetheless, it plays an important role: allowing a court to show "substantial deference to legislative judgments concerning appropriate sanctions for the conduct at issue." *EEOC v. AutoZone, Inc.*, 707 F.3d 824, 840 (7th Cir. 2013) (citation omitted).

Defendants point out that "there are no comparable statutes or civil penalties" in the case at hand. *See* Defs.' Mtn., at 5 (Dckt. No. 682). Thus, "there is a $100,000 disparity between the punitive damages award in this case and any civil penalty." *Id.*

Given the lack of comparable statutes or civil penalties, Bolden believes the more appropriate comparator here would be other civil lawsuits involving wrongful convictions. *See* Pl.'s Resp., at 9 (Dckt. No. 699). He points out that courts in this district have denied remittitur in similar cases involving comparable – or greater – punitive damages awards. *See, e.g.*, *Wrice v. Byrne*, 488 F. Supp. 3d 646, 679 (N.D. Ill. 2020) (declining to reduce a punitive damages award of $1.2 million – $600,000 against each of two defendants – in a wrongful conviction suit); *Cooper v. City of Chicago*, 2018 WL 3970141, at *9 (N.D. Ill. 2018) (concluding that punitive damages ranging between $50,000 and $100,000 per defendant, and totaling $425,000, were "not out of step with awards in other [section 1983] cases").

As a threshold matter, Defendants seem to misconstrue the purpose of the third guidepost. The point is about deferring to the legislature when it has a scheme in place for

5

sanctioning the conduct at hand. *See AutoZone, Inc.*, 707 F.3d at 840. But the legislature hasn't acted here, so there's nothing to defer to.

Beyond that, Defendants " fail to point [the Court] to any comparable cases involving lower punitive awards." *See Green*, 942 F.3d at 782. "That failure deals the final blow" to their request for remittitur. By contrast, the fact that other courts have allowed *greater* punitive damages in like cases suggests that the punitive damages awarded by this jury were not "outlandish." *See AutoZone, Inc.*, 707 F.3d at 840.

In sum, all three *Gore* guideposts tilt the scales in favor of retaining the jury's punitive damages award. The jury didn't need to do what it did, but it had an evidentiary basis to do what it did.

For these reasons, the Court denies Defendants' motion for remittitur of punitive damages. In the grand scheme of things, $1 per hour in prison isn't a good bargain for anybody.

Date: March 24, 2024

Steven C. Seeger
United States District Judge

6