**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| EDDIE L. BOLDEN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17-cv-417 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| ANGELO PESAVENTO, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## **ORDER**

Plaintiff Eddie Bolden's motion for prejudgment interest (Dckt. No. 680) is hereby granted.

Bolden was incarcerated from 1994 until 2016 for double murder, before the convictions were vacated. He filed suit against four former Chicago Police Department officers for his decades of incarceration. The counts included four constitutional claims under 42 U.S.C. § 1983 and three claims under Illinois law.

After a three-week trial, a jury returned a verdict in favor of Bolden, and against the four officers, on all seven counts. Trial took place in 2021. Bolden spent a lot of time in prison, and then waited a long time for his day in court.

The jury awarded Bolden substantial damages. It awarded Bolden $25 million in compensatory damages, and punitive damages of $100,000 (each) against two of the former officers (Angelo Pesavento and James Oliver).

After the trial, Bolden filed the motion at hand under Rule 59(e). *See* Mtn., at 1 (Dckt. No. 680). He requests an award of prejudgment interest in the amount of $7,629,466.51. *Id.*

A district court enjoys discretion to grant a motion for prejudgment interest under Rule 59(e). *See Miller v. Safeco Ins. Co. of Am.*, 683 F.3d 805, 814–15 (7th Cir. 2012). "[W]hether and how to award prejudgment interest . . . lies in the discretion of the district court, although there is a presumption in favor of granting such interest." *Frey v. Coleman*, 903 F.3d 671, 682 (7th Cir. 2018) (citations omitted).

Prejudgment interest "restores a plaintiff to the position she would have been in but for the violation." *Id.* It "is intended to compensate a plaintiff for delay in receiving money it should have received much earlier or should not have been required to spend in the first place." *BRC Rubber & Plastics, Inc. v. Cont'l Carbon Co.*, 981 F.3d 618, 634 (7th Cir. 2020).

In other words, prejudgment interest accounts for the time-value of money. *See Matter of Oil Spill by Amoco Cadiz Off Coast of France on Mar. 16, 1978*, 954 F.2d 1279, 1331 (7th Cir. 1992) ("Money today is not a full substitute for the same sum that should have been paid years ago. Prejudgment interest therefore is an ordinary part of any award under federal law.").

Prejudgment interest promotes a number of important interests. It compensates the prevailing party for the wait, and the time value of money. Money tomorrow isn't worth the same as money today. Prejudgment interest also incentivizes parties to settle. And it disincentivizes parties from dragging their feet and delaying litigation. Otherwise, a defendant could string things out, kick the can down the road, and avoid the cost of the delay. It encourages good behavior if everyone knows that the meter is running.

"[P]rejudgment interest is presumptively available to victims of federal law violations." *McRoberts Software, Inc. v. Media 100, Inc.*, 329 F.3d 557, 572 (7th Cir. 2003) (quoting *Gorenstein Enterprises, Inc. v. Quality Care-U.S.A., Inc.*, 874 F.2d 431, 436 (7th Cir. 1989)). Courts have awarded prejudgment interest in section 1983 cases. *See, e.g.*, *Thorncreek Apartments III, LLC v. Mick*, 886 F.3d 626, 637 (7th Cir. 2018) (concluding that the district court did not err in awarding prejudgment interest in a section 1983 action); *Tate v. Troutman*, 683 F. Supp. 2d 897, 913 (E.D. Wis. 2010), *aff'd sub nom. Tate v. Riegert*, 380 F. App'x 550 (7th Cir. 2010) (awarding prejudgment interest on a section 1983 claim); *Cavada v. City of Chicago*, 2014 WL 4124273, at *6 (N.D. Ill. 2014) (same).

The Seventh Circuit has held that a district court, in its discretion, may award prejudgment interest for noneconomic harms. *See Hillier v. S. Towing Co.*, 740 F.2d 583, 586 (7th Cir. 1984) ("The district court erred its determination that 'the law does not allow for prejudgment interest for intangible damages (pain and suffering and loss of society).'") (cleaned up); *see also White v. Fincantieri Bay Shipbuilding Co. Inc.*, 2022 WL 294209, at *4 (E.D. Wis. 2022) (recognizing that "prejudgment interest may as a matter of law be awarded on all of the past damages the jury awarded, including pain and suffering . . ."). However, courts are not required to award prejudgment interest for noneconomic harms. *See Valencia v. City of Springfield*, 2023 WL 8827687, at *17 (C.D. Ill. 2023); *see also DeMauro v. Loren-Maltese*, 2007 WL 9821268, at *3 (N.D. Ill. 2007).

There is no apparent reason why noneconomic harms should be categorically treated like second-class injuries when it comes to prejudgment interest. If anything, noneconomic harms might be *worse*. They're more personal. Waiting for a recovery for human suffering is a harm unto itself. It is hard to see why some types of waiting are less worthy of compensation.

Imagine a car accident on the streets of Chicago, where a reckless driver smacks into another car, and then nails a pedestrian. Imagine if the other driver got their Tesla all smashed up. And imagine if the pedestrian broke some bones, and needed extensive physical therapy. And then, imagine if lawsuits followed, and the reckless driver lost.

Why treat the two plaintiffs differently? If the other driver receives compensation for the delay, why shouldn't the pedestrian, too? Both of them suffered an injury. Both of them had to

wait for what they were entitled to receive. And both of them deserve compensation for their wait.

This Court sees no reason to depart from the usual practice of awarding prejudgment interest. Bolden regained his freedom in 2016, and promptly filed suit in 2017. Bolden did not string things out, or sit on his hands. He pressed forward. Meanwhile, the delay of litigation imposed a cost.

It took a while for the case to get to trial, but the fault did not rest on Bolden's shoulders.

True, Defendants are not entirely to blame for the delay, either. The case was set for trial in early November 2019, but the case was reassigned to this Court upon taking the bench in mid-September 2019. The case was one of 342 new cases on this Court's overflowing plate. Trial in November 2019 was impracticable, so the Court had little choice but to move it.

And then, the pandemic struck. The reassignment of the case, plus the pandemic, meant that the trial took place in October 2021 instead of November 2019.

Meanwhile, Bolden waited.

Defendants aren't to blame for that delay. Even so, they could have avoided trial altogether by settling the case. By the look of things, Defendants did not put serious money on the table.

To be clear, Defendants had no obligation to settle. This Court does not fault Defendants for rolling the dice, and taking their chances. They had a right to fight the case. But one of the risks of rolling the dice is the possibility of losing, and a loss typically comes with prejudgment interest.

Defendants rolled the dice, and the jury rang them up with a verdict of $25 million. This Court will require Defendants to internalize the costs of their own decision-making. They decided to take their chances, and things went south. And now the bill has come due.

Defendants argue that an award of prejudgment interest would "override the will of the jury," and that "the jury's award fully compensates" Bolden for his loss. *See* Defs.' Resp., at 1 (Dckt. No. 694). Not so. The jury compensated Bolden for his incarceration. The jury did not compensate Bolden for the time value of the money since then.

In effect, the jury awarded damages for the 22 years that Bolden spent in prison, which ended on April 19, 2016. The jury did not compensate Bolden for the time value of the money after April 19, 2016.

Defendants point to the jury instructions. *Id.* at 7. But this Court did not instruct the jury to award compensation for the time value of money since his release from prison. After all, awarding prejudgment interest (or not) is the Court's job, not the jury's job.

This Court took a look at the transcript from closing arguments. As this Court reads it, Bolden's counsel asked for compensation for the incarceration. Counsel did not request compensation for the wait after incarceration ended.

The Court also agrees with Bolden's calculation, too. The claim accrued when the state dismissed the charges against him on April 19, 2016. This Court took a close look at the calculation, and adopts the proposed number.

The Seventh Circuit "practice has been to use the prime rate as the benchmark for prejudgment interest unless either there is a statutorily defined rate or the district court engages in 'refined rate-setting' directed at determining a more accurate market rate for interest. . . . [T]o set aside this practice and award something other than the prime rate is an abuse of discretion, unless the district court engages in such a refined calculation." *First Nat. Bank of Chicago v. Standard Bank & Tr.*, 172 F.3d 472, 480 (7th Cir. 1999); *see also Frey*, 903 F.3d at 682.

"As a general rule, the decision whether to award compound or simple prejudgment interest is left to the discretion of the trial court." *Am. Nat. Fire Ins. Co. ex rel. Tabacalera Contreras Cigar Co. v. Yellow Freight Sys., Inc.*, 325 F.3d 924, 937 (7th Cir. 2003). However, "compound prejudgment interest is the norm in federal litigation." *Id.* at 937–38 (citations omitted). This Court will go with the norm.

As an alternative to prejudgment interest under federal law, Bolden requests that this Court award prejudgment interest under Illinois law. There is no need to get into that issue, because this Court is awarding prejudgment interest under federal law.

At bottom, the case is largely about time. Bolden lost time as a free man, in the prime years of his life. Bolden spent time in prison – decades of time – for convictions that didn't hold up. Bolden waited a long time to get his liberty. And he spent more time waiting for justice.

At long last, the wait is over. The time has come. The compensation has arrived.

For these reasons, the Court grants Bolden's motion for prejudgment interest. The Court hereby awards prejudgment interest totaling $7,629,466.51. That amount reflects prejudgment interest running through September 30, 2022, when this Court entered final judgment. *See* Final Judgment Order (Dckt. No. 675). At that point, the prejudgment interest meter stopped running.

Date: April 2, 2024

Steven C. Seeger
United States District Judge