CERTIFIED COPY

In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 24-1674

EDDIE L. BOLDEN,

*Plaintiff-Appellee,*

*v.*

ANGELO PESAVENTO, *et al.*,

*Defendants-Appellants.*

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:17-cv-00417 — **Steven C. Seeger,** *Judge.*

_____

ARGUED SEPTEMBER 4, 2025 — DECIDED NOVEMBER 6, 2025

_____

Before BRENNAN, *Chief Judge*, and KOLAR and MALDONADO, *Circuit Judges*.

KOLAR, *Circuit Judge*. Eddie Bolden brought a wrongful-conviction lawsuit under 42 U.S.C. § 1983 against the City of Chicago after his sentence for murder was vacated in April 2016. He prevailed at trial, and the jury awarded him $25 million in damages for pain, suffering, and the loss of a normal life. Then the district court awarded him another $7.6 million

2                                                              No. 24-1674

in prejudgment interest for the six years and five months it took him to obtain a judgment against the City.

Defendants now appeal the award of prejudgment interest. They contend that prejudgment interest is unavailable as a matter of law for noneconomic damages like Bolden's, and in the alternative that the district court abused its discretion in awarding interest. We affirm in almost all respects, but remand for the district court to recalculate the interest award after apportioning the jury's verdict between past (interest-eligible) and future (interest-ineligible) damages.

## I. Background

Bolden was arrested in February 1994 for the murders of Irving Clayton and Derrick Frazier and the attempted murder of Clifford Frazier. A jury found him guilty in October 1996, and he was sentenced to life in prison. After Bolden filed a petition for postconviction relief, the Illinois courts vacated his conviction based on ineffective assistance of counsel and ordered a new trial. The State voluntarily dismissed the charges against him on April 19, 2016; Bolden was released the same day. In total, Bolden spent over 22 years in prison.

Bolden sued the City and several police officers in January 2017, alleging that his arrest and wrongful conviction violated the Constitution and state law. His trial was originally slated for November 2019 but ran into several delays. First, his case was reassigned to Judge Seeger in September 2019, who rescheduled the trial date for July 2020. Then this date fell through when the COVID-19 pandemic forced a shutdown of all civil trials in 2020. Bolden's trial ultimately took place in October 2021.

No. 24-1674 3

At trial, Bolden testified about the harms he had suffered while incarcerated and his difficulties in readjusting to life outside prison. He stated that he had been robbed of experiences with family members, had trouble sleeping, and continued to suffer from depression and suicidal thoughts. Bolden offered corroborating testimony from his sister and aunt, who recounted their experiences meeting with Bolden in prison and helping him readjust to the outside world.

In his closing argument, Bolden's counsel urged the jury to award $44 million in compensatory damages—quantified as "a million dollars for what they took and a million dollars for what they made him endure," adding up to "$2 million for each of those 22 years" Bolden had spent incarcerated. He stressed that this amount was only a starting point that "doesn't even count how his life going forward has been forever changed" by the Defendants' conduct. The court instructed the jury that, upon a finding of liability, it should assess compensatory damages as "the physical and mental and emotional pain and suffering" and "loss of normal life" that Bolden "has experienced and is reasonably certain to experience in the future."

The jury found in Bolden's favor on all claims and awarded him $25 million in compensatory damages plus $100,000 in punitive damages against each of the two living individual Defendants. After resolving the parties' post-trial motions, the district court entered a final judgment on September 30, 2022.

Bolden moved to amend the judgment and add $7,629,466.51 in prejudgment interest. He calculated this amount as the total interest incurred from the date his sentence was vacated (April 19, 2016) through the entry of final

judgment, compounded monthly at the average prime rate over this period of 4.13%. The district court granted his motion, awarding Bolden the full amount requested. Defendants now appeal.

## II. Discussion

We pause at the outset to recount a few basic principles relevant to this appeal. Prejudgment interest "serves dual purposes: to fully compensate the plaintiff and to minimize a defendant's incentive to delay." *Thorncreek Apartments III, LLC v. Mick*, 886 F.3d 626, 637 (7th Cir. 2018). It is grounded in the recognition that "[c]ompensation deferred is compensation reduced by the time value of money." *Matter of Milwaukee Cheese Wis., Inc.*, 112 F.3d 845, 849 (7th Cir. 1997). By accounting for this lost value, "[p]rejudgment interest restores a plaintiff to the position she would have been in but for the violation." *Frey v. Coleman*, 903 F.3d 671, 682 (7th Cir. 2018). And by eliminating what would be, in effect, an interest-free loan to the defendant, prejudgment interest avoids unjust enrichment and disincentivizes foot-dragging in litigation. *Milwaukee Cheese*, 112 F.3d at 849. Otherwise, "the longer the case lasts, the more of the stakes the defendant keeps even if it loses (and the less the victorious plaintiff receives)[.]" *Id.*

We have long held that prejudgment interest is "presumptively available to victims of federal law violations." *Thorncreek Apartments*, 886 F.3d at 637 (quoting *Gorenstein Enters. v. Quality Care-USA, Inc.*, 874 F.2d 431, 436 (7th Cir. 1989)). But it is compensatory, not punitive: "prejudgment interest is not meant to penalize the party who caused the injury." *Id.*

Finally, prejudgment interest is measured "from the time the claim accrues until judgment is entered," using the

No. 24-1674 5

plaintiff's damages at the time of accrual as the principal. *City of Milwaukee v. Cement Div., Nat. Gypsum Co.*, 515 U.S. 189, 196 (1995) (citing *West Virginia v. United States*, 479 U.S. 305, 310 n.2 (1987)). Prejudgment interest is not assessed on future damages arising after the claim has already accrued. *Williamson v. Handy Button Mach. Co.*, 817 F.2d 1290, 1298 (7th Cir. 1987).

We generally review a district court's decision of whether to award prejudgment interest for abuse of discretion. *Frey*, 903 F.3d at 675. But Defendants' first issue presented on appeal—whether prejudgment interest is available as a matter of law for noneconomic damages—presents a purely legal question that we review *de novo*. *FDIC v. Chi. Tit. Ins.*, 12 F.4th 676, 682 (7th Cir. 2021). We turn to this question first.

### A. Availability of Prejudgment Interest on Noneconomic Damages

Defendants argue that the district court's award of prejudgment interest must be reversed because Bolden's damages for pain, suffering, and the loss of a normal life are noneconomic. They contend that in calculating Bolden's damages, the jury made a rough approximation of the intangible harms Bolden suffered, unlike cases involving contractual or wage-related disputes over specific and ascertainable sums. And since this intangible and undefined emotional harm could not have been "invested," it makes no sense to compensate him for its lost time value.

We held otherwise four decades ago. In *Hillier v. Southern Towing Co.*, an admiralty case, the plaintiff sued a towing company for the accidental death of her husband. 740 F.2d 583, 584 (7th Cir. 1984). After she prevailed at trial, the district

court awarded her prejudgment interest only on her damages for past loss of support and services, but not her damages for future loss of support and services, or her intangible damages for pain, suffering, and loss of society. *Id*. On appeal, we held that while the decision to exclude future harm was appropriate, the lower court had erred in finding noneconomic harms ineligible for prejudgment interest. *Id*. at 586.

This makes sense: the mere fact that noneconomic damages are inherently subjective does not warrant denying prejudgment interest on them. Defendants argue that since they could not have known the precise amount of Bolden's damages until the moment the verdict was rendered, they could not have "invest[ed] the funds while the litigation proceed[ed], then use[d] the interest they receive[d] to satisfy the obligation." *Milwaukee Cheese*, 112 F.3d at 849. But this argument would apply with equal force to many economic damages as well, which may also be uncertain and subject to dispute until later in the litigation. And in any event, this only goes to one of the traditional justifications for prejudgment interest (avoiding unjust enrichment that might encourage the defendant to delay) and not the other (fully compensating the plaintiff's losses). *Id.*

There is nothing special about noneconomic damages exempting them from the principle that money today is worth more to the plaintiff than money tomorrow. The law presumes that Defendants' liability to Bolden under Section 1983 accrued the moment the State's charges against him were dismissed in April 2016. *McDonough v. Smith*, 588 U.S. 109, 120 (2019); *see also Matter of Oil Spill by Amoco Cadiz*, 954 F.2d 1279, 1331 (7th Cir. 1992) ("By committing a tort, the wrongdoer creates an involuntary creditor. It may take time for the victim

No. 24-1674 7

to obtain an enforceable judgment, but once there is a judgment the obligation is dated as of the time of the injury."). Had Defendants immediately satisfied their obligation by handing Bolden a check as he stepped out of prison, he would have benefitted from this compensation sooner. The opportunity cost of interest is only one component of the time value of money; Bolden could have used these funds for "additional current consumption—perhaps by eating better, or driving a fancier car"—even if he could not prove he otherwise would have invested them. *Partington v. Broyhill Furniture Indus., Inc.*, 999 F.2d 269, 274 (7th Cir. 1993).

Defendants insist that if *Hillier*'s holding cannot be limited to the admiralty context, it must be reconsidered as inconsistent with the fundamental principles underlying prejudgment interest. We disagree. As an initial matter, nothing about *Hillier*'s holding as to damages depended on unique principles of admiralty law. The *Hillier* court cited the admiralty doctrine of *restitutio in integrum*, which "provides that a plaintiff is to be placed in the position previously enjoyed prior to the time he or she sustained damages[.]" 740 F.2d at 585. But this is merely an expression of the fundamental theory underlying all compensatory damages.

Since *Hillier*, we have consistently applied this remedial principle in awarding prejudgment interest across the spectrum of federal-law violations. *See, e.g., Thorncreek Apartments*, 886 F.3d at 637–38 (Section 1983 equal-protection claim); *Partington*, 999 F.2d at 274 (age discrimination claim); *Gorenstein Enters.*, 874 F.2d at 436 (trademark claim). While these cases did not involve purely noneconomic damages like Bolden's, the underlying principle—to make the injured party

whole—applies with equal force to damages for pain and suffering.

Other circuits have reached this same conclusion in awarding prejudgment interest on noneconomic damages outside admiralty. The Ninth Circuit in *Barnard v. Theobald* found a Section 1983 plaintiff's damages for "past pain and suffering and medical expenses" to be "just as much an 'actual loss' (for which prejudgment interest is in order) as purely economic damages." 721 F.3d 1069, 1078 (9th Cir. 2013) (citation omitted). And the Fifth Circuit held in *Thomas v. Texas Department of Criminal Justice* that "[p]rejudgment interest should apply to all past injuries, including past emotional injuries" such as the plaintiff's Title VII damages, since "[r]efusing to [do so] ignores the time value of money and fails to make the plaintiff whole." 297 F.3d 361, 372 (5th Cir. 2002). These cases are consistent with *Hillier*, and we see no reason to cabin *Hillier* to the admiralty context.

Perhaps recognizing the same, Defendants ask us instead to overrule *Hillier* entirely on the grounds that its reasoning does not withstand scrutiny. Even if we agreed—which we do not—we see no "compelling reasons," such as a substantial shift in authority or supervening statutory development, that would warrant such a departure from our settled precedent.[1] *United States v. Betts*, 99 F.4th 1048, 1055 (7th Cir. 2024).

---

[1] While our "outlier" status in a circuit split *may* sometimes justify revisiting past decisions, *Buchmeier v. United States*, 581 F.3d 561, 566 (7th Cir. 2009), we are not convinced that any such split exists here. Defendants contend that the Third, Fourth, and Tenth Circuits have found prejudgment interest unavailable as a matter of law for noneconomic damages. But the Third Circuit noted this only in dicta, *Poleto v. Consol. Rail Corp.*, 826 F.2d 1270, 1278 n.14 (3d Cir. 1987); the Fourth reached this conclusion

No. 24-1674 9

The district court did not err in holding that Bolden could, as a matter of law, recoup prejudgment interest on his noneconomic damages. We turn next to the question of whether choosing to award him this interest was an abuse of discretion.

### B.  Award of Prejudgment Interest

Our review of the district court's prejudgment interest award for abuse of discretion is deferential, and we start from the baseline that "there is a presumption in favor of granting [prejudgment] interest" in cases alleging violations of federal law. *Frey*, 903 F.3d at 682. Nevertheless, we have observed that awarding prejudgment interest "might be inappropriate" in some circumstances—for example, if the plaintiff shifts risk to the defendant by waiting to file suit, if the jury's award already accounts for interest, or if the amount of interest-

---

only in holding that the plaintiffs' *future* noneconomic damages could not be disaggregated from their past damages, *Gilliam v. Allen*, 62 F.4th 829, 848–50 (4th Cir. 2023); and the Tenth merely held that the district court did not abuse its discretion in denying prejudgment interest, *White v. Chafin*, 862 F.3d 1065, 1069 (10th Cir. 2017). Meanwhile, the First, Second, Sixth, and Eleventh Circuits have all held in the admiralty context that prejudgment interest *should* be available for noneconomic harms, and (as noted) the Fifth and Ninth have extended this holding beyond admiralty. *See Nevor v. Moneypenny Holdings, LLC*, 842 F.3d 113, 125 (1st Cir. 2016); *Petition of City of New York*, 332 F.2d 1006, 1008 (2d Cir. 1964); *Anderson v. Whittaker Corp.*, 894 F.2d 804, 807–10 (6th Cir. 1990); *Deakle v. John E. Graham & Sons*, 756 F.2d 821, 834 (11th Cir. 1985); *Thomas*, 297 F.3d at 372; *Barnard*, 721 F.3d at 1078. Even if there *were* an "established conflict among the circuits" on this issue, "it is rarely prudent to move from one side of a conflict to the other." *SEC v. EquityBuild, Inc.*, 101 F.4th 526, 535 (7th Cir. 2024) (Easterbrook, J., concurring). We are in good company in maintaining *Hillier*'s rule.

eligible damages is "not readily determinable." *Williamson*, 817 F.2d at 1297–98.

Defendants advance three grounds for why the district court abused its discretion in granting prejudgment interest: (1) the jury's verdict fully compensated Bolden; (2) the court lacked any basis to determine the portion of the verdict for which interest could be awarded; and (3) the interest was an improper penalty for delays outside their control. We address each in turn.

### 1. Full Compensation

Defendants first argue that the jury's $25 million award accounted for the lost time value of Bolden's compensation—in essence, that prejudgment interest was already "baked in" to the verdict. In *Thorncreek Apartments*, we observed that "[w]hen a plaintiff provides evidence of damages that includes interest, the presumption [in favor of awarding interest] flips and the judge will presume that the jury included the interest in its award." 886 F.3d at 637. To hold otherwise would impermissibly penalize defendants by allowing plaintiffs to recover twice over. *Id.*

But "the concept of prejudgment interest was at no point mentioned to the jury" in this case. *See Gierlinger v. Gleason*, 160 F.3d 858, 874 (2d Cir. 1998). Neither side's counsel raised it, and the court never instructed the jury on the concept of prejudgment interest or how it should be calculated. Lacking such evidence, Defendants point instead to language in the jury instructions that Bolden should be compensated for "any injury that you find he sustained *and is reasonably certain to sustain in the future*" (emphasis added), as well as statements by Bolden's counsel encouraging the jury to consider Bolden's

losses "to this day." While one could infer from these general instructions and statements that the jury adjusted for interest in deriving Bolden's $25 million award, the district court did not abuse its discretion in concluding otherwise.

Nor is the jury's verdict so large that "only the supposition that the jury has compensated plaintiff for the time value of money can explain the result." *Williamson*, 817 F.2d at 1298. Plaintiff's counsel asked the jury to award Bolden $44 million in compensatory damages; the jury awarded $25 million. The district court reasonably exercised its discretion in concluding, based on this outcome and the trial record, that the jury's award did not account for prejudgment interest.

### 2. *Ascertainability of Past and Future Damages*

The disaggregation of past from future damages in the jury's verdict presents a more challenging issue. Recall that prejudgment interest cannot be awarded on damages for future harms—those not yet suffered at the time the plaintiff's claim accrues—since "the time value of money is taken into account when these [damages] are discounted to present value." *Id.*; *Hillier*, 740 F.2d at 586. The parties agree that only Bolden's past damages (those he suffered while in prison) and not his future damages (those he suffered after release) could serve as a basis for an interest award.

The best practice to avoid issues with *post hoc* apportionment of past and future damages entirely, of course, is to allow the jury itself to separate these categories on a special verdict form. *See, e.g.*, *Poleto v. Consol. Rail Corp.*, 826 F.2d 1270, 1277 (3d Cir. 1987). But neither party raised this for the district court's attention in their jointly submitted verdict form at trial.

Instead, the verdict in this case was a single $25 million lump sum awarded on a general verdict form. The district court determined that interest on this entire amount was proper after determining "from the transcript at closing arguments" that "Bolden's counsel asked for compensation from the incarceration" alone, and not "for the wait after incarceration ended." It is not clear whether this statement is meant to indicate that the jury's entire award was for past damages, or simply that the jury did not account for prejudgment interest in its award (as already discussed). And based on the damages testimony at trial, as well as the language of the jury instructions, it seems possible that the jury intended at least some portion of its award to compensate Bolden not only for the 22 years he spent in prison, but also his ongoing harms after his release in April 2016.

The district judge can hardly be faulted for failing to address the issue of past versus future damages more directly where Defendants focused so much of their efforts post-trial on attempting to distinguish *Hillier* and render all of Bolden's noneconomic damages categorically ineligible for prejudgment interest. Still, Defendants also argued below—and again on appeal—that without any basis to determine the portion of the award consisting of past damages, the decision to grant interest on the whole sum was improper.

We addressed a similar situation in *Williamson v. Handy Button Machine Co.*, an employment case in which the plaintiff sought damages for backpay and future earnings. In that case, too, "the jury returned a verdict that d[id] not distinguish past and future sources of loss." 817 F.2d at 1298. The lower court had declined to award any prejudgment interest at all on separate grounds; we reversed, but observed that the issue of

apportionment would arise on remand. *Id.* at 1299. We rejected the notion that "unless the amount of [past damages] is *exactly* determinable no interest should be awarded." *Id.* Indeed, "[n]o purpose would be served by allowing the wrongdoer to keep the entire time value of the money, just because the exact amount is subject to fair dispute." *Id.* Rather, we held that the district court should do its best to ascertain the portion of the verdict attributable to past damages unless doing so would be "impossible or hopelessly speculative." *Id.* at 1298. We offered several potential methods that the district court could use on remand to apportion the award, based on the plaintiff's backpay estimates and other evidence from the trial record. *Id.*; *see also Hutchison v. Amateur Elec. Supply, Inc.*, 42 F.3d 1037, 1047 (7th Cir. 1994) (holding in another backpay case that district courts may not deny prejudgment interest solely because of "calculational ambiguities" as to the precise amount owed).

The question here is closer than in *Williamson* and *Hutchison*: unlike the backpay damages assessed in those cases, Bolden's damages are noneconomic, and he offered no precise calculations of his past versus future losses to the jury. In *Daniels v. Pipefitters' Association Local Union No. 597*, we held that prejudgment interest was appropriately denied where "the district judge ha[d] no means to parse the elements of the general verdict" whatsoever. 945 F.2d 906, 925 (7th Cir. 1991). Similarly, in *Gilliam v. Allen*, another wrongful-conviction case brought under Section 1983, the Fourth Circuit reversed an award of $36 million in prejudgment interest on multiple grounds, including that any interest calculation on the lump-sum jury verdict "could only be the product of speculation" without any concrete breakdown of past versus

future damages available from the record.[2] 62 F.4th 829, 849–50 (4th Cir. 2023).

But we do not think that the record in this case is so sparse that apportionment is impossible. The emphasis at trial was clearly on Bolden's damages from his imprisonment rather than his post-release damages. *Cf. Daniels*, 945 F.2d at 925 (affirming denial of interest where the jury "may well have rested the lion's share of its award on [future damages]"). And there is at least some evidence that could support apportionment: at trial, Bolden's counsel had asked the jury to use $44 million as a starting point for their damages, calculated as $2 million for each of his years of imprisonment. Defense counsel similarly commented that Bolden was seeking "1 to 2 million a year," and that he had "22 million reasons to lie to you. He wants $22 million."

One approach, therefore, could have been to apportion the $25 million award into $22 million for past damages and $3 million for future damages. Bolden concedes on appeal that "[t]his, too, would have been a reasonable exercise of the court's discretion."

We do not decide this question, however, as it is the district judge's prerogative based on his familiarity with the trial record. Rather, we remand for the district court to recalculate the prejudgment interest "on a prorated portion" of the jury's verdict after determining the percentage attributable to past

---

[2] We note, however, that the *Gilliam* court reached this conclusion only after finding that prejudgment interest was already improper since the jury's award fully accounted for the time value of money. 62 F.4th at 848–49. The interest award in that case—$36 million—also vastly exceeded the one at issue here.

damages. *Barnard*, 721 F.3d at 1078. In doing so, the district court may use any "reasonable method" of calculation based on a review of the record as a whole. *Hutchison*, 42 F.3d at 1048.

### 3. Improper Penalty

Defendants also argue that the district court's prejudgment interest award functioned as an improper penalty. They point out that the nearly two-year delay in trying the case arose through circumstances outside their control, namely the case's reassignment and the COVID-19 pandemic. But delays "attributable to the judicial branch … [whose] effect is neutral between the parties" do not warrant denying prejudgment interest. *Milwaukee Cheese*, 112 F.3d at 849. A purposeful delay by the party seeking the interest, which "injures the other side by forcing it to act as an uncompensated trustee or investment manager," might—but that is not the situation we are presented with here. *Id.* Bolden filed his claims well within the statute of limitations, and the delays cannot be laid at his feet either.

The district court also noted Defendants' settlement conduct in explaining its award of prejudgment interest, observing that they "could have avoided trial altogether by settling the case" and that "[b]y the look of things, Defendants did not put serious money on the table." It is true that prejudgment interest is not meant to penalize parties for "bad-faith conduct," including refusal to engage in settlement talks. *City of Milwaukee*, 515 U.S. at 197. But the district court expressly recognized this constraint, stating that Defendants "had no obligation to settle" and that it "d[id] not fault Defendants for rolling the dice, and taking their chances." The district court's remark that it would "require Defendants to internalize the

costs of their own decision-making" is not a statement of blame, but merely a recognition of reality: any defendant who chooses to litigate out a case rather than settle runs the risk of paying additional prejudgment interest down the line if they ultimately lose. The district court's acknowledgment of this fact was not an abuse of discretion.

Finally, Defendants contend that the decision to award monthly compounding interest was an abuse of discretion. But the method of calculating interest rests within the sound discretion of the district court, *Hutchison*, 42 F.3d at 1047, and Defendants have pointed to no authority suggesting this choice was unreasonable.

### III. Conclusion

We REVERSE IN PART the district court's order to the extent it did not apportion past and future damages in calculating prejudgment interest on the jury's verdict, and REMAND for further proceedings on that issue consistent with this opinion. In all other respects, the judgment of the district court is AFFIRMED.[3]

---

[3] We need not reach the question of whether Bolden was not entitled to prejudgment interest on his supplemental state-law claims: the district court held after reviewing the trial record that it was "awarding prejudgment interest under federal law," and we find no abuse of discretion in that result.